**Claim Coversheet Report**

| Find | Clear | Print | Save | New | Help |
|------|-------|-------|------|-----|------|

Admin Notes  Claim  Class  Correspond  Doc List  Medical  SPELL Letters

Claim Number 9291624     Claim Last Updated 03/17/2021     Printed On 9/30/2022

**Claimant Information**

Name JAN K MASON          SSN          Birth Date

Address                   Salary Amount $ 4581.22    Mode M

Date of Hire 08/01/2006

Last Work Date 04/16/2019

Federal Tax Employee Option   State Tax No

Phone                     Phys Demands Sedentary

JobDesc REP 3, CUST SVC BILLING

| Claim Status | Closed | Status Reason | Not TD Own Occ | Received Date | 09/06/2019 |
|---|---|---|---|---|---|
| Disability Date | 04/17/2019 | Close Date | 07/21/2020 | Reopen Date | |
| Sick Days Left | | Max Ben Date | 05/05/2039 | RTW FT / PT | |
| Ben Begin Date | 10/16/2019 | Apprv Thru Date | 07/20/2020 | Gross Ben $ | |

Diagnosis 1 Code/Desc M25.551    Pain in right hip

Diagnosis 2 Code/Desc

**Policyholder Information**

Customer ID 04 - 444809    CHARTER COMMUNICATIONS, INC.

Subsidiary CUSO           CUSTOMER OPERATIONS

Location 10000000         CUSTOMER OPERATIONS

Symb GF   Numeral 01   Product LTD   Funding CON   Bank Y   Calcs Y   Cntr Eff 01/01/2017

Class 02   ALL EMPLOYEES WITH BASE ANNUAL EARNINGS OF LESS THAN $100,000

Waiting Period: New/Mode-Current/Mode 12   Month   12   Month   Days in WRKWK

Elimination Period: Days/Type 182   Sickness   COLA: Mode/Duration

Successive Period: Period/Mode 6   Month   SS Integration:Type/Value FSS

Partial Disability Type/Pct QRP+   10.00   Survivor Ben Months/Wait Period 3   180

Non-Verifiable Symptoms Limit 24   Own Occupation Definition Limit 24   M/N Limit 24

Benefit %      Max Benefit $      Min Benefit $      Employer Contr % 100 00   Subro Ind N

**Selected Benefits**

| Symbol | Numeral | Product Type | Class | Eligibility Date | |
|--------|---------|--------------|-------|------------------|--|
| GF | 01 | LTD | 02 | 01/01/2007 | |

Additional Information:

EXHIBIT

3, part 1

**Lincoln/Mason 0068**

Page 1 of 21

**Note Report**

| Report | Clear | Print | Help |
| --- | --- | --- | --- |

AS Accom  AS Event  Add Note  Appeal  Claim  Coord Claim Note  Correspond  Doc List  Employee  Leave  Life Claim  Lve Addtl Info

Lve Correspondence  Lve Program  Lve Work Sched  Medical  Medical History  Note  SPELL Letters  Scheduled Pmt  Task Print  Task Rpt

Tasks

Claim

\* Claim/Event/Leave Number  9291624          Accommodation Number

Note type:

Primary Sort Order    Sec

Note Type    ●

Note Number

● Note Date/Time

Accm. No.

---

**09/29/2022 1:25 PM - CLAIM Note 124**
Claim/Event/Leave: 9291624
NoteSubject : Legal
Other Subject : LAWSUIT FILED
Text: [09/29/2022 - MAINELLI, DEBRA]CLAIMANT HAS FILED A LAWSUIT. PLEASE DIRECT ANY FURTHER INQUIRY ON THIS CLAIM TO THE LITIGATION MANAGER.

**09/07/2022 2:09 PM - PHONE Note 52**
Claim/Event/Leave: 9291624
NoteSubject : Other Called
Other Subject : ATTORNEYS OFFICE
Text: [09/07/2022 - LOWE, ERIC]ATTORNEY CALLED TO CX THE MAILING ADDRESS. DCM CX ADDRESS. ATT THANKED ASC. CALL ENDED.

**04/14/2021 3:28 PM - PHONE Note 51**
Claim/Event/Leave: 9291624
NoteSubject : Called EE
Other Subject : ATTORNEY
Text: [04/14/2021 - AVRETT, MARY]CALLED ATTORNEY GORMAN'S OFFICE AND SPOKE TO RECEPTIONIST TO ADVISE LINK SENT WITH FILE. SHE CONFIRMED RECEIPT AND WILL MAKE SURE THEY KNOW LINK IS GOOD FOR 24 HOURS.

**04/14/2021 1:44 PM - CLAIM Note 123**
Claim/Event/Leave: 9291624
NoteSubject : Other
Other Subject : FILE COPY
Text: [04/14/2021 - NILES, CATHY]REQUEST TO SEND A COPY OF THE COMPETE CLAIM FILE TO THE ATTY HAS BEEN COMPLETED. SENT TO EMAIL OFFICE@SHAKESHAFTANDGORMANLAW.COM THRU ONEDRIVE

**04/14/2021 7:39 AM - CLAIM Note 122**
Claim/Event/Leave: 9291624
NoteSubject : Other
Other Subject : ATTORNEY LTR
Text: [04/14/2021 - AVRETT, MARY]RECEIVED AND REVIEWED LTR FROM ATTORNEY GORMAN ADVISING OF REPRESENTATION OF CLMT AND REQUEST FOR A COMPLETE COPY OF THE FILE.

**03/17/2021 3:10 PM - CLAIM Note 121**
Claim/Event/Leave: 9291624
NoteSubject : Appeal
Other Subject : OUT/UPHOLD
Text: [03/17/2021 - AVRETT, MARY]THE DETERMINATION TO DENY BENEFITS IS BEING MAINTAINED. THE INFORMATION RECEIVED ON APPEAL DOES NOT OFFER FINDINGS TO ALTER THE PRIOR DECISION TO DENY BENEFITS. UPHOLD LETTER SENT TO CLAIMANT.

**03/17/2021 12:17 PM - CLAIM Note 120**
Claim/Event/Leave: 9291624
NoteSubject : Med Records Rcvd
Other Subject : CO SPRING ORTHO
Text: [03/17/2021 - AVRETT, MARY]RECEIVED AND REVIEWED OVN DATED 2/16/21

**03/15/2021 2:58 PM - CLAIM Note 119**
Claim/Event/Leave: 9291624
NoteSubject : Other
Other Subject : VENDOR PAYMENT

Lincoln/Mason 0069

Text: [03/15/2021 - YEREMIAN, KEVORK]INVOICE RECEIVED ON 03/15/2021 AND DATED 03/15/2021 FROM NETWORK MEDICAL REVIEW COMPANY, LTD. INV# 453513-1, IN THE AMOUNT OF $315.00. PAID INVOICE IN FULL

**03/15/2021 11:29 AM - CLAIM Note 118**
Claim/Event/Leave: 9291624
NoteSubject : Other
Other Subject : INVOICE
Text: [03/15/2021 - AVRETT, MARY]RECEIVED INVOICE 453513-1 FROM ECN FOR ADDENDUM. FORWARDED TO APPROPRIATE DEPT FOR PROCESSING

**03/15/2021 11:29 AM - CLAIM Note 117**
Claim/Event/Leave: 9291624
NoteSubject : Peer Review
Other Subject : PM&R/PAIN ADDENDUM
Text: [03/15/2021 - AVRETT, MARY]RECEIVED AND REVIEWED PM&R/PAIN ADDENDUN

**03/05/2021 8:50 PM - CLAIM Note 116**
Claim/Event/Leave: 9291624
NoteSubject : Ref to Other
Other Subject : SCORE REFERRAL
Text: 3/5/2021 - REFERRED TO NETWORK MEDICAL REVIEW FOR PEER REVIEW.

**03/05/2021 12:09 PM - CLAIM Note 115**
Claim/Event/Leave: 9291624
NoteSubject : Peer Review
Other Subject : REFER FOR ADDENDUM
Text: [03/05/2021 - AVRETT, MARY]REFERRING TO PM&R/PAIN FOR ADDENDUM.

**03/05/2021 12:08 PM - CLAIM Note 114**
Claim/Event/Leave: 9291624
NoteSubject : Ref to Other
Other Subject : CRT
Text: [03/05/2021 - AVRETT, MARY]REFERRED TO CRT FOR IM CONSULT

**03/04/2021 2:49 PM - PHONE Note 50**
Claim/Event/Leave: 9291624
NoteSubject : Called EE
Other Subject :
Text: [03/04/2021 - AVRETT, MARY]CALLED EE AT                    AND ADVISED WE RECEIVED DR. BRON'S OPERATIVE REPORT. SHE ASKED IF I WANTED THE PRIOR NOTES FROM DR. BRON. I ADVISED THAT IS UP TO HER AS WE ARE LOOKING FOR BENEFITS BACK TO 7/20/20. SHE ADVISED IT IS INCREDIBLE TO EVERYONE WE HAVEN'T PAID HER. SHE ADVISED THE OPERATIVE REPORT HAS ALL THE INFORMATION IN IT AND ADVISED TO MOVE FORWARD. SHE IS READY TO ROCK AND ROLL. THANKED HER AND ADVISED I WOULD BE IN TOUCH.

**03/04/2021 8:28 AM - CLAIM Note 113**
Claim/Event/Leave: 9291624
NoteSubject : Med Records Rcvd
Other Subject : DR. BRON
Text: [03/04/2021 - AVRETT, MARY]RECEIVED AND REVIEWED OPERATIVE REPORT BY DR. BRON DATED 2/22/2021

**03/03/2021 11:16 AM - CLAIM Note 112**
Claim/Event/Leave: 9291624
NoteSubject : Appeal
Other Subject : TOLLING
Text: [03/03/2021 - AVRETT, MARY]EXTENDED TOLLING ADDITIONAL 2 WEEKS TO 3/17/21

**03/03/2021 11:13 AM - PHONE Note 49**
Claim/Event/Leave: 9291624
NoteSubject : Called EE
Other Subject : F/U
Text: [03/03/2021 - AVRETT, MARY]CALLED EE AT                    TO F/U ON EXT. ADVISED ADDITIONAL INFO DUE 3/2. SHE ADVISED SHE HAD HIP SX AND THEY HAD TO DO A LOT MORE THAN THEY THOUGHT THEY WERE GOING TO HAVE TO. SHE ADVISED WE WILL NEED TO HAVE THE UPDATED RECORDS. .WE WILL EXTEND ANOTHER 2 WEEKS. WISHED HER WELL ON HER RECOVERY

**02/11/2021 11:39 AM - CLAIM Note 111**
Claim/Event/Leave: 9291624
NoteSubject : Appeal
Other Subject : STATUS
Text: [02/11/2021 - AVRETT, MARY]TOLLING EXTENDED TO 3/1/21. PEER SENT TO AP KENT X 2 FOR COMMENT

**02/11/2021 11:26 AM - PHONE Note 48**
Claim/Event/Leave: 9291624
NoteSubject : Called EE

**Lincoln/Mason 0070**

Other Subject :
Text: [02/11/2021 - AVRETT, MARY]CALLED EE AT                AND ADVISED WE HAD EXTENDED TIME TO RESPOND TO 2/10. ADVISED I HAVE RECEIVED ANY ADDITIONAL INFO. WENT OVER CALL FROM DR. KENT AND PEER SENT TO HIM ON 1/5. SHE INDICATED A PROBLEM WITH OUR OFFICE IS THAT HE DOCTORS DON'T RECEIVE CALL BACKS. ADVISED HER THAT PEERS ARE INDEPENDENT, NOT LINCOLN AND PEER REVIEWER DID MAKE CONTACT WITH BOTH DR. KENT AND DR. PHILLIPS. ADVISED PEER SENT TO BOTH ON 1/5 AND SHE WAS COPIED TO COMMENT TO MAKE SURECONVERSATION WAS ACCURATELY REPRESENTED. SHE ADVISED SHE SPOKE TO DR. KENT YESTERDAY. SHOULD BE A PEER TO PEER WITH DR. KENT. SHE ASKED THAT I HOLD OFF ADDITIONAL REVIEW AS SHE IS HAVING SX ON 2/22 AND NEEDS TIME AFTER SURGERY. THEN SHE CAN PROVIDE SX NOTE. SHE ASKED FOR EXTENSION TO 3/1/21. I ADVISED I AM HAPPY TO GIVE HER THAT EXTENSION BUT TO KEEP IN MIND, WE ARE LOOKING AT BENEFITS BACK TO 7/2/2/20 AND NEED DOCUMENTATION SHE WAS UNABLE TO PERFORM A SEDENTARY OCC. SHE ADVISED THAT DOESEXIST BUT WE ARE NOT GETTING THE INFORMATION. SHE ASKED THAT I RESEND REVIEW TO DR. KENT AND COPY HER. ADVISED I WOULD AND I WILL SEND HER A LETTER LETTING HER KNOW OF EXTENSION TO 3/1. SHE ADVISED X 2 THAT I WAS ABSOLUTELY WONDERFUL.

**02/11/2021 10:52 AM - PHONE Note 47**
Claim/Event/Leave: 9291624
NoteSubject : Called AP
Other Subject : MARC PHILLIPS
Text: [02/11/2021 - AVRETT, MARY]AP MARC PHILLIPS LEFT A MESSAGE IN VM REGARDING PEER TO PEER CONTACT. ASKED THAT I RETURN HIS CALL TO 719-232-8079. RETURNED THE CALL AND LEFT A MESSAGE IN VM ADVISING I RECEIVED HIS MESSAGE. YES, PEER TO PEER CONTACT WILL BE REQUESTED. ASKED THAT HE CONFIRM THIS IS THE NUMBER I SHOULD PROVIDE THE REVIEWER.

**02/02/2021 1:58 PM - PHONE Note 46**
Claim/Event/Leave: 9291624
NoteSubject : AP Called
Other Subject :
Text: [02/02/2021 - AVRETT, MARY]AP CALLED AGAIN. ADVISED SHE IS IN QUITE A BIT OF PAIN AND HEADED FOR A HIP REPLACEMENT THIS MONTH. DOESN'T DO WELL SITTING FOR ANY LENGTH OF TIME. CAN'T TELL IF SHE IS BEING RELEASED FROM THAT. HAS A LONG WORK HISTORY.SHE IS IN A LOT OF PAIN. GETS QUITE EMOTIONAL ABOUT IT ALL. SEEN QUITE A FEW DOCTORS OVER THE YEARS. WENT OVER WE SENT REVIEW TO HIM AS IT INDICATES REVIEWER SPOKE TO HIM. WE SENT HIM THE REPORT SO HE COULD COMMENT WHETHER CONVERSATION IS ACCURATELY REPRESENTED AND WHETHER HE AGREES WITH THE REVIEWERS CONCLUSIONS. ADVISED IF HE COULD RESPOND TO THAT. HE ADVISED SHE MAY BE ABLE TO DO SOME WORK, PROBABLY NOT FT. SHE HAS A HARD TIME SITTING OR STANDING FOR TOO LONG. SHE'S PRETTY FRAGILE.HE WAS HOPING PAIN MGT WOULD STEP IN AND I ADVISED WE DID SEND THEM THE REVIEW BUT THEY WILL NOT RESPOND WITHOUT A PRETTY SIGNIFICANT PAYMENT. HE CAN REVIEW THE NOTE AND SEE IF HE CAN RESPOND. ADVISED WE ARE LOOKING BACK TO JULY OF 2020 AND HER OCCUPATION IS SEDENTARY. HE SAYS IT COMES DOWN TO PAIN. HE SAID PAIN IS LIKE WHEN SOMEONE HAS A MIGRAINE. HAD DO YOU PROVE THAT. HE WILL TAKE ANOTHER LOOK AND RESPOND.

**02/02/2021 1:43 PM - PHONE Note 45**
Claim/Event/Leave: 9291624
NoteSubject : Called AP
Other Subject : DR. KENT
Text: [02/02/2021 - AVRETT, MARY]DR. KENT CALLED AND LEFT A MESSAGE IN VM ADVISING OF HIS CALL BACK NUMBER 719-799-0784 AND THAT HE TREATS MS. MASON FOR LABRAL TEARS, PAIN AND SHE IS GOING TO HAVE HIP REPLACEMENT. RETURNED THE CALL AND LEFT A MESSAGE IN VM THAT I RECEIVED HIS MESSAGE HOWEVER, I AM THE APPEALS CASE MANAGER, NOT A PHYSICIAN. ADVISED I PREVOUS PHYSICIAN REVIEW WAS SENT TO HIM BY FAX TO COMMENT ON 1/5. ADVISED IF I AM HAPPY TO REFAX IF HE DIDN'T RECEIVED IT. PROVIDED MY CONTACT INFO.

**01/27/2021 1:47 PM - CLAIM Note 110**
Claim/Event/Leave: 9291624
NoteSubject : Appeal
Other Subject : STATUS
Text: [01/27/2021 - AVRETT, MARY]EXTENDING RIGHT TO REVIEW TO 2/10/21

**01/27/2021 1:45 PM - PHONE Note 44**
Claim/Event/Leave: 9291624
NoteSubject : Called EE
Other Subject :
Text: [01/27/2021 - AVRETT, MARY]CALLED EE AT                AND ADVISED I WANTED TO GO OVER THE INFORMATION WE HAVE RECEIVED. ADVISED WE RECEIVED 10 PAGES FROM COLORADO SPRINGS TODAY THROUGH 1/19/21 SHE INDICATED WE WILL GET ANOTHER SET AS SHE HAD HERNEIGHBOR ALSO SEND THE INFORMATION TO INSURE WE GOT IT. ADVISED I RECEIVED PAPERWORK THIS AM REGARDING COVID TESTING BUT THAT EMAIL SEND IT WAS INFO REGARDING SURGERY. ADVISED I PREVIOIUSLY RECEIVED THE SURGERY DATE DOC. SHE ADVISED SX IS 2/22 FORHER HIPS. SHE INDICATED HAS ONE MORE PIECE OF PAPER TO SEND BUT IS HAVING TROUBLE GETTING IT SENT. ONLY ABOUT NEEDING COVID TEST BEFORE SX. SHE ASKED IF WE HAD EVERYTHING. ADVISED HER REPORT WAS SENT TO DR. KENT AS DURING PEER, DR. KENT INDICATED HE HADN'T EVALUATED HER FOR BEING OUT OF WORK. REVIEWERS REPORT WAS SENT TO HIM TO COMMENT AND SHE WAS COPIED. NO RESPONSE. SHE HAS AN OV WIHT HIM ON 2/3 AND WILL F/U WITH HIM. I WENT OVER HER OCC IS SEDENTARY SO THAT IS WHAT WE ARE LOOKING ATSHE ADVISED PAINFUL HIPS DUE LABRAL TEARS AND BACK - SITTING IS THE WORST. WALKING DRIVING STAIRS. HOPE IS SHE WILL HAVE HIP SX AND GET OUT OF THAT PAIN AND THEN SPINAL STIMULATOR AND POSSIBLEY SI SX. PLEASE WAIT TO FINISH REVIEW UNTIL SHE CAN SPEAK TO DR. KENT. SHE ASKED ABOUT PT DOCS AND I ADVISED HE SENT IN FCE WHICH IS JUST ONE PAGE. SHE ADVISED SHE WILL F/U WITH HIM. DOESN'T READ EVERYTHING WE SEND TO HER. SHE ADVISED IT SEEMS LIKE DOCTORS SAY ONE THING AND THEN WE GET SOMETHING ELSE. ADVISED THAT IS WHY REVIEW WAS SENT TO DR. KENT AS SHE

**Lincoln/Mason 0071**

SAY ONE THING AND THEN WE GET SOMETHING ELSE. ADVISED THAT IS WHY REVIEW WAS SENT TO DR. KENT AS SHE PREVIOUSLY ADVISE HE WAS KEEPING HER OOW. ASKED WHAT WE HAVE PLEASE EXTEND TO 2/10/21. SHE THANKED ME FOR BEING ON HER SIDE AND I ADVISED I AM JUST WANTING TO MAKE SURE WE HAVE EVERYTHINGSHE WANTS TO INCLUDE BEFORE ADDITONAL REVIEW. ADVISED I WILL SEND A LETTER WITH EXTENSION.

**01/27/2021 1:18 PM - CLAIM Note 109**
Claim/Event/Leave: 9291624
NoteSubject : Other
Other Subject :
Text: [01/27/2021 - AVRETT, MARY]RECEIVED RECORDS FROM COLORADO SPRINGS DATED 12/4/20 TO 1/19/21

**01/27/2021 9:43 AM - CLAIM Note 108**
Claim/Event/Leave: 9291624
NoteSubject : Other
Other Subject : COVID SWAB, EMAIL
Text: [01/27/2021 - AVRETT, MARY]RECEIVED EMAIL FROM CLMT ADVISING SENDING SURGERY INFO HOWEVER, COVID SWAB INFO ATTACHED.

**01/22/2021 7:30 AM - CLAIM Note 107**
Claim/Event/Leave: 9291624
NoteSubject : Other
Other Subject : SURGERY INFO
Text: [01/22/2021 - AVRETT, MARY]RECEIVED SURGERY INFO FORM

**01/21/2021 7:41 AM - CLAIM Note 106**
Claim/Event/Leave: 9291624
NoteSubject : LTR to EE
Other Subject :
Text: [01/21/2021 - AVRETT, MARY]LTR TO EE ADVISING OF RECEIPT OF FCE.

**01/21/2021 7:31 AM - CLAIM Note 105**
Claim/Event/Leave: 9291624
NoteSubject : Other
Other Subject : FCE
Text: [01/21/2021 - AVRETT, MARY]RECEIVED AND REVIEWED FCE FROM MARC PHILLIPS

**01/14/2021 3:17 PM - CLAIM Note 104**
Claim/Event/Leave: 9291624
NoteSubject : Other
Other Subject : VENDOR PAYMENT
Text: [01/14/2021 - NAI, TIMOTHY]INVOICE DATED 9/15/2020 FROM ECN. INV #BOCA91551 , IN THE AMT OF $660.00 FOR PEER REVIEW . INVOICE PAID IN FULL

**01/12/2021 2:10 PM - CLAIM Note 103**
Claim/Event/Leave: 9291624
NoteSubject : Appeal
Other Subject : STATUS
Text: [01/12/2021 - AVRETT, MARY]CLMT REQUESTED ADDITIONAL EXTENSION. EXTENDED TIME TO RESPOND TO R TO R TO 2/1/21

**01/12/2021 2:09 PM - CLAIM Note 102**
Claim/Event/Leave: 9291624
NoteSubject : Other
Other Subject : STATUS
Text: [01/12/2021 - AVRETT, MARY]RECEIVED EMAIL AND PHONE CALL FROM CLMT. ADVISED HAVING A FCE ON 1/20, MRI OF HIP TODAY AND OV WITH SOMEONE ON 1/19. CLMT WOULD LIKE AN EXTENSION TO THE END OF THE MONTH. SENDING LTR GRANTING EXTENSION TO 2/1/2020

**01/11/2021 1:59 PM - PHONE Note 43**
Claim/Event/Leave: 9291624
NoteSubject : Other Called
Other Subject : AP PHILLIPS
Text: [01/11/2021 - AVRETT, MARY]AP PHILIPS CALLED AND WANTED TO KNOW WHAT WE WERE LOOKING FOR. ADVISED REVIEW SENT TO HIM TO COMMENT ON HIS CONVERSATION WITH THE REVIEWER - DOES IT ACCURATELY REPRESENT THEIR CONVERSATION. HE ADVISED IT DOES, HE JUST DOES NOT AGREE WITH THE R&L'S. HE ASKED IF WE WOULD ACCEPT AN FCE AND I ADVISED YES, BUT DON'T REFER FOR FCE'S. ADVISED I DID PREVIOUSLY OFFER AND IME AND SHE DIDN'T WANT TO GO IN THAT DIRECTION. HE ADVISED HE WILL CONTACT HER AND RECOMMEND THE FCE.ADVISED RESPONSE IS DUE BY 1/21/21 HOWEVER, WE ARE HAPPY TO GIVE AN EXTENSION TO ALLOW FOR THE FCE. HE THANKED ME AND THE CALL ENDED.

**01/11/2021 1:20 PM - PHONE Note 42**
Claim/Event/Leave: 9291624
NoteSubject : Called AP
Other Subject : M. PHILLIP
Text: [01/11/2021 - AVRETT, MARY]MESSAGE LEFT IN VM FROM MARK PHILLIPS 719-232-8079 ADVISING HE RECEIVED

**Lincoln/Mason 0072**

CORRESPONDENCE AND WANTS CLARIFICATION TO OUR LETTER. ASKED THAT I RETURN THE CALL. RETURNED THE CALL AND LEFT A MESSAGE IN VM THAT I RECEIVED HIS MESSAGE. REPORT WAS SENT TO HIM TO REVIEW, INCLUDING SUMMARY OF STATEMENT WITH REVIEWER AND INDICATE AGREEMENT OR DISAGREEMENT WITH FINDINGS AND PROVIDE INFO TO SUPPORT. PROVIDED MY CONTACT INFO FOR A RETURN CALL.

**01/05/2021 12:57 PM - CLAIM Note 101**
Claim/Event/Leave: 9291624
NoteSubject : LTR to AP
Other Subject : DR. KENT
Text: [01/05/2021 - AVRETT, MARY]SENDING PEER BY PM&R/PAIN TO DR. KENT FOR REVIEW AND COMMENT. CLMT CC'ED ON LTR.

**01/04/2021 3:21 PM - CLAIM Note 100**
Claim/Event/Leave: 9291624
NoteSubject : Other
Other Subject : OA
Text: [01/04/2021 - AVRETT, MARY]RECEIVED AND REVIEWED OA

**01/04/2021 10:34 AM - CLAIM Note 99**
Claim/Event/Leave: 9291624
NoteSubject : Voc Rehab
Other Subject : OA
Text: [01/04/2021 - ASHWORTH, LORI]OA REFERRAL COMPLETED AND CLOSED. REPORT DROPPED IN DOC LIST. THE OCCUPATION IS MOST OFTEN PERFORMED AT THE SEDENTARY LEVEL IN THE NATIONAL ECONOMY, PER THE DOT WITH CONSTANT SITTING; OCCASIONAL REACHING, HANDLING, FINGERING, STANDING AND WALKING.[01/05/2021 - ASHWORTH, LORI]OA REPORT UPDATED WITH PART TIME INFORMATION AND DROPPED IN DOC LIST.

**12/31/2020 8:51 PM - CLAIM Note 98**
Claim/Event/Leave: 9291624
NoteSubject : Voc Rehab
Other Subject : CLAIM/EVENT TO VCM
Text: 12/31/2020-REFERRAL RECEIVED BY VCM AND ASSIGNED TO ASHWORTH, LORI. CLAIM/AS EVENT IS PENDING REVIEW.

**12/29/2020 10:32 AM - CLAIM Note 97**
Claim/Event/Leave: 9291624
NoteSubject : Other
Other Subject : VENDOR PAYMENT
Text: [12/29/2020 - HERTERICH, KIMBERLY]INVOICE DATED 12/22/2020 FROM NETWORK MEDICAL REVIEW COMPANY, LTD. INV #414082-1 IN THE AMT OF $1155.00 FOR PEER REVIEW. INVOICE PAID IN FULL.

**12/22/2020 8:51 PM - CLAIM Note 96**
Claim/Event/Leave: 9291624
NoteSubject : Ref to Voc Rehab
Other Subject : SCORE REFERRAL
Text: 12/22/2020 - REFERRED TO THE VOC UNIT FOR OCCUPATIONAL ANALYSIS.

**12/22/2020 2:36 PM - CLAIM Note 95**
Claim/Event/Leave: 9291624
NoteSubject : Ref to Voc Rehab
Other Subject : OA
Text: [12/22/2020 - AVRETT, MARY]REFERRING CLAIM FOR OA

**12/22/2020 2:36 PM - CLAIM Note 94**
Claim/Event/Leave: 9291624
NoteSubject : Peer Review
Other Subject : PM&R/PAIN
Text: [12/22/2020 - AVRETT, MARY]RECEIVED AND REVIEWED PEER BY PM&R/PAIN

**12/22/2020 2:21 PM - CLAIM Note 93**
Claim/Event/Leave: 9291624
NoteSubject : Other
Other Subject : INVOICE
Text: [12/22/2020 - AVRETT, MARY]RECEIVED INVOICE DATED 12/22/20 FROM NMR, INV #414082-1. FORWARDED TO APPROPRIATE DEPT FOR PROCESSING.

**12/11/2020 11:22 AM - CLAIM Note 92**
Claim/Event/Leave: 9291624
NoteSubject : Other
Other Subject : ADMIN
Text: [12/11/2020 - KEEFER, DAWN]REQUEST HAS BEEN COMPLETED TO INCLUDE ALL DOCUMENTS LABELED APPEAL, MEDICAL, EMPLOYEE FORMS IN DOC LIST FOR CLAIM # 9291624 VIA ONE DRIVE TO THE EMAIL ADDRESS PROVIDED ROCKFORDCCTEAMINITIALS@EXAMWORKS.COM

**12/09/2020 8:51 PM - CLAIM Note 91**
Claim/Event/Leave: 9291624

**Lincoln/Mason 0073**

Claim/Event/Leave: 9291624
NoteSubject : Ref to Other
Other Subject : SCORE REFERRAL
Text: 12/9/2020 - REFERRED TO NETWORK MEDICAL REVIEW FOR PEER REVIEW.

**12/08/2020 3:24 PM - CLAIM Note 90**
Claim/Event/Leave: 9291624
NoteSubject : Appeal
Other Subject : STATUS
Text: [12/08/2020 - AVRETT, MARY]RESUMING APPEAL REVIEW. REFERRING CLAIM TO CRT FOR PEER BY PM&R

**12/08/2020 3:21 PM - PHONE Note 41**
Claim/Event/Leave: 9291624
NoteSubject : EE Called
Other Subject :
Text: [12/08/2020 - AVRETT, MARY]EE RETURNED THE CALL AND ADVISED THAT IS EVERYTHING. SHE APOLOGIZED FOR ALL
THE TROUBLE. ADVISED I WILL REFER FOR A NEW PEER REVIEW AND BE IN TOUCH.

**12/08/2020 3:19 PM - PHONE Note 40**
Claim/Event/Leave: 9291624
NoteSubject : Called EE
Other Subject :
Text: [12/08/2020 - AVRETT, MARY]CALLED EE AND LEFT A MESSAGE IN VM ADVISING I RECEIVED DR. PHILLIPS STATEMENT
DATED 11/1/20. ADVISED I BELIEVED THIS COMPLETED ADDITIONAL DOCS SHE WAS PROVIDING AND THAT I WILL MOVE
FORWARD WITH HER APPEAL REVIEW. ADVISEDIF THIS IS INCORRECT TO PLEASE CONTACT ME AND PROVIDED MY
CONTACT INFO.

**12/08/2020 3:18 PM - CLAIM Note 89**
Claim/Event/Leave: 9291624
NoteSubject : Med Records Rcvd
Other Subject : DR. PHILLIPS
Text: [12/08/2020 - AVRETT, MARY]RECEIVED FAXED AND EMAIL STATEMENT OF DR. PHILLIPS DATED 11/1/20

**12/08/2020 12:44 PM - PHONE Note 39**
Claim/Event/Leave: 9291624
NoteSubject : EE Called
Other Subject :
Text: [12/08/2020 - AVRETT, MARY]EE CALLED AND ADVISED MARC PHILLIPS SAID THEY DEFINITELY FAXED AND EMAILED
TO AND WITH CORRECT INFO. THEY ARE EMAILING TO RECORDS TO HER AND SHE WILL FORWARD THEM MEANWHILE, PT
WILL FAX AGAIN. TOLD HER I'D LET HER KNOW ASSOON AS I RECEIVE THEM.

**12/08/2020 12:40 PM - CLAIM Note 88**
Claim/Event/Leave: 9291624
NoteSubject : Appeal
Other Subject : STATUS
Text: [12/08/2020 - AVRETT, MARY]EXTENDING RIGHT TO REVIEW TO 12/11/2020

**12/08/2020 12:32 PM - PHONE Note 38**
Claim/Event/Leave: 9291624
NoteSubject : Called EE
Other Subject :
Text: [12/08/2020 - AVRETT, MARY]EE CALLED AND LEFT A MESSAGE ADVISING PT TOLD HER HE WOULD FAX AND EMAIL
12/7. CALLED HER AT                  AND ADVISED I GOT HER VM BUT WAITED UNTIL TODAY TO RETURN HER CALL AS IT
CAN TAKE UP TO 24 HOURS FOR EMAIL TO BE DROPPED IN MY BOX. ADVISED I HAVE NOT RECEIVED A FAX OR AN EMAIL
WITH PT RECORDS. SHE ADVISED THAT'S SO WEIRD AS I HAVE GOTTEN STUFF FROM HER AND I ALSO ADVISED I'VE
GOTTEN DR. KENT. OFFERED TO SEND HER FOR AN IME AND SHE IS AGAINST THAT, ADVISINGSHE IS NOT GOING TO DO
THAT AS SHE HAS AWARD WINNING DOCTORS. SHE WILL F/U WITH PT AGAIN TODAY AND I ADVISED I WILL GIVE HER AN
ADDITIONAL EXTENSION AND SHE ADVISED UNTIL FRIDAY WHICH IS 12/11. ADVISED HER AS SOON AS PT RECORDS
RECEIVED, I WILL CALL HER. SHE ADVISED SHE IS NOT GETTING PAID AT ALL AND THIS NEEDS TO BE TAKE CARE OF.

**12/07/2020 10:06 AM - PHONE Note 37**
Claim/Event/Leave: 9291624
NoteSubject : EE Called
Other Subject :
Text: [12/07/2020 - AVRETT, MARY]EE CALLED AND CONFIRMED ALL WE HAVE RECEIVED. SHE WANTED TO KNOW IF WE
RECEIVED PT RECORDS. ADVISED NO AND SHE ADVISED SHE DOESN'T UNDERSTAND WHY HE KEEPS SENDING IT AND WE
AREN'T GETTING THEM. THAT IS STRANGE. ADVISEDAS I AM RECEIVING OTHER INFO, I DON'T KNOW WHY WE ARE NOT
RECEIVING HIS RECORDS. ADVISED HE CAN SEND THEM BY FAX, EMAIL AND IF THOSE ARE NOT SUCCESSFUL, HE CAN
PUT THEM IN THE MAIL. SHE ADVISE HE IS ANGRY WE ARE NOT RECEIVING HIS RECORDS SHE WILLREACH OUT TO HIM
AND GET BACK TO ME TODAY. ADVISED I AM IN THE OFFICE UNTIL 3:30.

**12/02/2020 11:45 AM - CLAIM Note 87**
Claim/Event/Leave: 9291624
NoteSubject : Other
Other Subject : STATEMENT

**Lincoln/Mason 0074**

Other Subject : STATEMENT
Text: [12/02/2020 - AVRETT, MARY]RECEIVED AND REVIEWED CLMT STATEMENT

**12/01/2020 5:51 PM - CLAIM Note 86**
Claim/Event/Leave: 9291624
NoteSubject : Medical Status
Other Subject : DR. KENT
Text: [12/01/2020 - AVRETT, MARY]RECEIVED LTR DATED 11/30/20 FROM DR. KENT

**11/28/2020 8:35 AM - CLAIM Note 85**
Claim/Event/Leave: 9291624
NoteSubject : Medical Status
Other Subject : DR. KENT
Text: [11/28/2020 - AVRETT, MARY]RECEIVED AND REVIEWED LTR FROM DR. KENT DATED 8/31/20[11/28/2020 - AVRETT, MARY]ALSO RECEIVED OVN 8/19 TO 10/14/20

**11/19/2020 3:08 PM - CLAIM Note 84**
Claim/Event/Leave: 9291624
NoteSubject : Appeal
Other Subject : STATUS
Text: [11/19/2020 - AVRETT, MARY]CLMT ASKED FOR ADDITIONAL EXTENSION OF TWO WEEKS FROM 11/20. INFO DUE 12/4/2020

**11/19/2020 3:07 PM - PHONE Note 36**
Claim/Event/Leave: 9291624
NoteSubject : Called EE
Other Subject :
Text: [11/19/2020 - AVRETT, MARY]EE CALLED AND LEFT A VM MESSAGE ASKING THAT I RETURN HER CALL TO
        RETURNED HER CALL AND SHE WANTED TO KNOW WHAT WE RECEIVED. CONFIRMED DR. REISSA, PA OVN DATED
11/10/20 AND HER EMAIL DATED 11/16/20 INDICATING HER NOV 12/4 AT 1. SHE ASKED IF WE GOT ANY OTHER RECORDS
FROM PT OR OTHER DOCTOR? ADVISED I HAVEN'T RECEIVED ANYTHING ELSE. SHE ADVISED SHE IS SHOCKED AS SHE
THOUGHT PT WAS GOING TO SEND RECORDS AND REQUEST A PEER TO PEER WITH OUR DOCTOR. ASKED IF SHE KNOWS
HOW THEY WERE GOING TO SEND THE RECORDS. SHE TEXTED PT WHILE WE WERE ON THE PHONE AND ASKED ME TO
WAIT. WANTED TO KNOW IF SHE NEEDS TO DRAFT A RESPONSE TO R TO R HERSELF. SHE THEN ADVISED PT INDICATED
HE DID SEND BUT CAN RESEND TOAN EMAIL ADDRESS. PROVIDED DISABILITY DOCUMENTS EMAIL AND THAT CLAIM
NUMBER, WHICH I PROVIDED TO HER SHOULD BE ON EMAIL AS IT GOES TO A MAIN EMAIL AND W/O CLAIM NUMBER, THEY
WILL NOT KNOW WHERE TO SEND IT. SHE ADVISED SHE DOESN'T GET IT AT ALL WHYWE CAN RECEIVE HER INFORMATION
AND NOT FROM HER PROVIDERS. ADVISED SHE IS EMAILING TO US AND IF HE IS FAXING, SHE SHOULD FIND OUT THE
DATE HE FAXED THEM AND TO WHAT NUMBER HE FAXED THE INFORMATION. SHE ADVISED IT IS A PROBLEM EVERYTINE.
SHE ADVISED SHE DOESN'T KNOWIF HE FAXED IT OR HOW SENT. CAN WE EXTEND DEADLINE FURTHER SINCE WE DON'T
HAVE ADDITIONAL RECORDS. ADVISED YES, HOW LONG DOES SHE NEED. SHE INDICATED 2 WEEKS AND IF INFO COMES
IN, WE DON'T HAVE TO WAIT THE TWO WEEKS. SHE ADVISEDJUST TO CLARIFY AGAIN, THEY CAN DO THEIR MEDICAL
RESPONSE AND SHE CAN SEND ONE AS WELL. ADVISED YES. SHE WILL CALL HER DOCTOR AGAIN. SHE ADVISED WE ARE
IN A PANDEMIC AND THEY ARE DEALING WITH HOSPITALS FULL OF PATIENTS WHO ARE VERY SICK BUT THAT DOESN'T
MAKE SINCE INFO HASN'T BEEN SENT. ADVISED HER THAT I CAN'T TELL HER WHY WE DON'T RECEIVE THEIR
INFORMATION BUT THAT I DO RECEIVE FAXES EVERY DAY. SHE ASKED IF SHE SHOULD HAVE A BACK UP FAX NUMBER
AND I ADVISED I WOULD BE HAPPY TO PROVIDE THATBUT SHE WENT RIGHT TO ASKING ABOUT SSDI STATUS AND I
ADVISED SHE SHOULD PROVIDE ANY STATUS UPDATES ON HER SSDI.

**11/16/2020 3:38 PM - CLAIM Note 83**
Claim/Event/Leave: 9291624
NoteSubject : Other
Other Subject : EMAIL FROM EE
Text: [11/16/2020 - AVRETT, MARY]RECEIVED EMAIL FROM EE DATED 11/16/20 ADVISING APPT. WITH DR. BRON IS 12/4/20

**11/13/2020 10:11 AM - CLAIM Note 82**
Claim/Event/Leave: 9291624
NoteSubject : Med Records Rcvd
Other Subject : COLORADO SPRINGS ORT
Text: [11/13/2020 - AVRETT, MARY]RECEIVED OVN DATED 11/10/20 FROM COLORADO SPRINGS ORTHO - KRISTEN REISS, PAC DATED 11/10/20

**10/21/2020 10:58 AM - CLAIM Note 81**
Claim/Event/Leave: 9291624
NoteSubject : Appeal
Other Subject : STATUS
Text: [10/21/2020 - AVRETT, MARY]RIGHT TO REVIEW EXTENDED TO 11/20 PER CLMT REQUEST.

**10/21/2020 10:30 AM - PHONE Note 35**
Claim/Event/Leave: 9291624
NoteSubject : EE Called
Other Subject :
Text: [10/21/2020 - AVRETT, MARY]EE CALLED AND WANTED TO KNOW IF THERE WAS A FORM WE NEED HER DOCTOR'S TO
FILL OUT. ADVISED NO FORM TO BE FILLED OUT. WE SENT TO PROVIDERS THE REVIEW IN HER CLAIM FOR COMMENT. SHE
ADVISED SHE TALKED TO A COUPLE OF PEOPLEAND WANTS INFORMATION. WENT OVER CALL THE OTHER DAY THAT WE

**Lincoln/Mason 0075**

DISCUSSED SHE HAD APPT YESTERDAY FROM DR. KUDRON AND WAS GOING TO SEND IT TO ME TODAY. SHE HAD THE APPOINTMENT AND HE AGREES WITH HER OTHER DOCTORS BUT SHE DOESN'T HAVE HIS REPORT YET. SHE WANTED TO KNOW ABOUT THE LETTERS SENT TO HER PROVIDERS AND I ADVISED SHE WAS COPIED TO HER EMAIL ON EACH OF THE LETTERS TO EACH PROVIDER. SHE ADVISED DOCTOR'S HAVEN'T GOTTEN ANYTHING THAT'S WHY SHE IS QUESTIONING ME SO MUCH. I ADVISED DR. SUNG'SOFFICE GOT THE LETTER AS THEY SENT AN INVOICE. ADVISED HER IF SHE LOOKS IN HER OWN EMAIL WE COPIED HER ON EVERY SINGLE EMAIL SO SHE CAN FOLLOW UP WITH HER DOCTOR. OFFERED IME AND SHE ADVISED SHE WANTS TO HOLD OFF ON THAT UNTIL SHE CHECKS WITH HERADVISOR. SHE WANTED TO KNOW EXACTLY WHAT WE ASKED HER PROVIDERS. ADVISED SHE WAS COPIED ON EACH LETTER AND READ THE EXACT PART OF THE LETTER - PLEASE REVIEW THE ENCLOSED REPORT BY OCTOBER 9, 2020, AND PROVIDE ANY COMMENTS YOU WISH TO HAVE CONSIDERED. IF YOU DISAGREE WITH SEPTEMBER 14, 2020 FINDINGS, PLEASE DETAIL THE SPECIFIC AREAS WITH WHICH YOU DISAGREE AND PROVIDE MEDICAL DOCUMENTATION TO SUPPORT YOUR POSITION.- SHE WANTS AN EXTENSION ON THE RIGHT TO REVIEW. ADVISED THE RESPONSE WAS DUE10/16 AND ASKED HOW LONG SHE WOULD NEED. SHE ADVISED SHE WANTED UNTIL 11/13 HOPING SHE CAN GET TO EVERYONE CONTACTED BY THEN AND SHE MIGHT NEED ADDITIONAL TIME. I SUGGESTED GIVING HER AN ADDITIONAL 30 DAYS SO SHE CAN HAVE ENOUGH TIME AND WHEN WE GET EVERYTHING IF BEFORE 30 DAYS WE WILL BEGIN. SHE IS RECEIVING EMAIL AND LOOKS AT IT ON A PHONE . SHE ADVISED WHAT IS VERY ODD IS THAT HER DOCTORS SAID THEY DIDN'T RECEIVE AN EMAIL. ADVISED WE FAXED TO THE DOCTOR AND COPIED HER BY EMAIL. ADVISEDALL LETTERS SENT TO PROVIDERS WERE ON 9/28. ADVISED 30 DAYS IS 11/20. ADVISED HER I WOULD SEND A LETTER. SHE ADVISED I HAVE ALWAYS BEEN VERY HELPFUL AND SHE APPRECIATES IT. CALL ENDED.

**10/19/2020 4:48 PM - PHONE Note 34**
Claim/Event/Leave: 9291624
NoteSubject : Called EE
Other Subject :
Text: [10/19/2020 - AVRETT, MARY]CALLED EE AT               ADVISED THE ORTHOPEDIC SPRINGS INVOICE WAS $2,000 AND THAT IS NOT REASONABLE. SHE ADVISED SHE HAS AN OV WITH DR. KUDRON TOMORROW AT 4 TO GO OVER HER OPTIONS. ADVISED HER OTHER PROVIDERS DIDN'T RESPOND TO OUR REQUEST. SHE INDICATED ORTHO SPRINGS IS VERY FRUSTRATING AS SHE HAD TWO FAILED SX THERE. SHE FEELS THEY WANT TO GIVE HER SPINAL CORD STIMULATOR TO COVER UP WHAT THEY DID. ADVISED HER INVOICE FROM DR. SUNG FOR $2,000. SHE ADVISED DR. SUNG KNOWS EVERYTHING AND HE WANTS HER TO DO THE SPINAL CORD STIMULATOR TO COVER IT ALL UP. ADVISED HER I WOULD LIKE TO HAVE DR. KUDRON'S UPDATED RECORDS AND I AM GOING TO SEND IT FOR A NEW MEDICAL REVIEW. SHE ADVISED HER DOCTOR'S ARE IRRITATEDWE ASK FOR SO MUCH MEDICAL AND WE HAVE EVERYTHING WE POSSIBLY NEED. I ADVISED LTD IS BASED ON ONGOING MEDICAL. SHE ADVISED THEY HAVE GIVEN US EVERYTHING THERE IS TO GIVE US. SHE STATED SHE WAS CONFIRMING THIS AND THAT THEY ARE CHARGING US TWO GRAND. SHE ADVISED OUR DOCTORS TRYING TO TALK TO HER DOCTORS AND TELLING THEM SHE SAW DR. KUDRON WHICH SHE DID NOT LET THEM KNOW. I ADVISED I HAVEN'T SPOKEN TO HER DOCTORS EXCEPT FOR THE CALL I GOT REGARDING THE INVOICE. SHE ADVISED SHE IS GOING TO HER FRIEND AT THE PAPER. SHE HAS LOST TEN POUNDS BECAUSE SHE CAN'T AFFORD TO EAT AND PAY FOR HER COPAYS TO GET HER TREATMENT. SHE ADVISED SHE WANTS MY MANAGER NAME AS SHE IS TURNING EVERYTHING OVER TO CORPORATE SO THAT THEY CAN SEE EXACTLY WHAT HAS GONE ON IN HER CLAIM. SHE ASKED FOR MANAGERS EMAIL ADDRESS AND I ADVISED WE DON'T USE OUR PERSONAL EMAILS BUT SHE CAN SEND IT TO THE DISABILITY MAILBOX. I ALSO ADVISED HER I AM HAPPY TO CONNECT HER TO MY MANAGER BUT SHE ADVISED SHE ONLY WANTS HER PHONE NUMBER AND EXTENSION WHICH I PROVIDED. SHE ADVISED SHE KNOWS THIS ISN'T MY FAULT. SHE ADVISED SHE WILL SEND UPDATED NOTE FROM DR. KUDRON. SHE INDICATED HER SISTER OR SISTER IN LAW WORKS FOR LINCOLN.

**10/06/2020 1:45 PM - CLAIM Note 80**
Claim/Event/Leave: 9291624
NoteSubject : Other
Other Subject : VENDOR PAYMENT
Text: [10/06/2020 - SRP041, SRP041]INVOICE RECEIVED FROM RELEASEPOINT. , INV #712618, IN THE AMOUNT OF $134.41 FOR MEDICAL RECORDS. INVOICE PAID IN FULL.

**09/29/2020 9:32 AM - CLAIM Note 79**
Claim/Event/Leave: 9291624
NoteSubject : Other
Other Subject : INVOICE
Text: [09/29/2020 - AVRETT, MARY]RECEIVED INVOICE IN THE AMT OF $2,000 FOR DR. SUNG TO RESPOND TO OUR REQUEST.

**09/29/2020 9:17 AM - PHONE Note 33**
Claim/Event/Leave: 9291624
NoteSubject : AP Called
Other Subject :
Text: [09/29/2020 - AVRETT, MARY]PHYLLIS FROM COLORADO SPRINGS (DR. SUNG AND HUANG) CALLED AND ADVISED SHE GOT OUR FAX REQUEST AND HAS FAXED AN INVOICE AND WILL PROVIDE A SCHEDULE OF FEES AND A W4. THANKED HER FOR LETTING ME KNOW. ASKED FOR HER CONTACT INFO INCASE I DON'T RECEIVE THE INVOICE AND SHE PROVIDED 719-632-7669, EXT. 1173

**09/28/2020 11:02 AM - CLAIM Note 78**
Claim/Event/Leave: 9291624
NoteSubject : LTR to AP
Other Subject : DR. KUDRON
Text: [09/28/2020 - AVRETT, MARY]COPY OF PEER SENT TO DR. KURON ASKING FOR REVIEW AND COMMENT.

09/28/2020 10:56 AM - PHONE Note 32

**Lincoln/Mason 0076**

**09/28/2020 10:56 AM - PHONE Note 32**
Claim/Event/Leave: 9291624
NoteSubject : EE Called
Other Subject :
Text: [09/28/2020 - AVRETT, MARY]PROVIDED DR. KUDRON FAX NUMBER (303) 831-3705. ADVISED I WILL FAX PEER REVIEW TO HIM TOO. ADVISED SHE WANTED TO BE SURE WE HAVE ALL THE INFORMATION. SHE WENT THROUGH THE HISTORY OF HER TREATMENT. SHE IS GOING TO HAVE A SPINE SURGERY SX. ADVISED HER MRI DATED 7/31/20 IS IN THE MEDICAL DOCUMENTATION. SHE ADVISED IN THE PAST, STUFF SHE PROVIDED DID NOT GET INTO FILE. DR. KENT OVERSEEING EVERYTHING. DR. HUANG DID FIRST HIP AND WILL BE DOING SECOND. DR. SALEK AND DR.SUNG SI JOINTS AND DR. KUDRON IS DOING HER NERVE COMPRESSIONS. SHE KEPT REFERRING TO NOTES I WROTE TO HER DOCTORS AND I TRIED TO CLARIFY SHE IS TALKING ABOUT THE ITALICIZED WRITING IN THE LETTER IS COMING RIGHT FROM THE REPORT OF THE PEER REVIEW. SHE THEN ASKED IT I WAS GOING TO SEND HIS REVIEW TO DR. KUDRON AND I ADVISED YES, I INDICATED THAT WHEN SHE GAVE ME HIS FAX NUMBER. SHE CONFIRMED WE HAVE 7/31/20 MRI AND I CONFIRMED WE DO, IT'S 4 PAGES AND I READ OFF THE TITLE TO THE MRI. SHE AGAINWANTED TO MAKE SURE WE UNDERSTOOD DR. KUDRON IS FOR THE NERVES IN HER BACK. I ADVISED REPORT NOT INITIALLY SENT TO HIM AS WE RECEIVED HIS RECORDS AFTER THE REPORT WAS COMPLETED. CONFIRMED I WILL SEND A COPY OF THE REPORT TO HIM

**09/28/2020 10:04 AM - CLAIM Note 77**
Claim/Event/Leave: 9291624
NoteSubject : LTR to AP
Other Subject :
Text: [09/28/2020 - AVRETT, MARY]REFAXED LETTERS TO DR. KENT (UPDATED FAX), DR. SUNG AND DR. HUANG FOR COMMENT ON PEER. ALSO FAXED A COPY OF PEER REVIEW TO DR. SALEK

**09/28/2020 9:40 AM - PHONE Note 31**
Claim/Event/Leave: 9291624
NoteSubject : EE Called
Other Subject :
Text: [09/28/2020 - AVRETT, MARY]EE CALLED AND SHE ADVISED SHE CHATTED WITH HER DOCTOR, DR KENT. SHE ADVISED DR. KENT'S FAX NUMBER IS 719-623-2102. ADVISED WE HAD 2101. UPDATED IN SYSTEM ONE AND ADVISED I WOULD RESEND THE REQUEST TO HIM. CONFIRMED WE HAVE THE CORRECT FAX FOR DR. SUNG AND HUANG AND ADVISED I WILL REFAX TO THEM. SHE WANTED TO CONFIRM WE HAVE DR. KUDRON'S INFO AND WANTED TO PROVIDE A FAX NUMBER BUT COULDN'T LOCATE ONE ELECTRONICALLY AND ATTEMPTED TO LOCATE HER PAPERWORK TO PROVIDE AFAX NUMBER. WANTS COPIES OF OUR LETTERS TO HER DOCTORS. ADVISED I WILL CC HER ON THOSE. SHE WANTS TO PROVIDE THEM TO HER HR SO THEY WILL KNOW THE STATUS OF WHAT IS HAPPENING IN HER CLAIM. ADVISED I WILL CC HER ON THE LETTERS. AS ON HOLD FOR A BIT, ASKED HER TO CALL ME BACK WITH THE INFO, BUT SHE ADVISED NO, IT WILL BE REAL QUICK TO LOOK UP. AFTER SOMETIME OF ADDITIONAL HOLDING, I ADVISED HER SHE WILL HAVE TO CALL ME BACK WITH THE INFO.

**09/25/2020 3:41 PM - CLAIM Note 76**
Claim/Event/Leave: 9291624
NoteSubject : Appeal
Other Subject : STATUS
Text: [09/25/2020 - AVRETT, MARY]RIGHT TO REVIEW LTR SENT TO EE. RESPONSE DUE 10/16/2020.

**09/25/2020 3:18 PM - PHONE Note 30**
Claim/Event/Leave: 9291624
NoteSubject : Called EE
Other Subject :
Text: [09/25/2020 - AVRETT, MARY]EE CALLED AND LEFT A MESSAGE IN VM ASKING THAT I RETURN HER CALL. RETURNED HER CALL TO                . ADVISED MEDICAL REVIEW DID NOT MAKE AP CONTACT SO I SENT TO DR. SUNG, DR. KENT AND DR. HUANG FOR REVIEW AND COMMENT.SHE ADVISED DR. KENT IS THE ONE PUTTING IT ALL TOGETHER AND SHE ASKED WHAT FAX NUMBER WE SENT THE REPORT TO. PROVIDED THAT TO HER. SHE ADVISED SHE WILL F/U. SHE ALSO HAS AN APPT. COMING UP IN DENVER THAT SHE WILL NEED TO CANCEL AS SHE WONT BE ABLETO PAY FOR IT WITHOUT HER BENEFIT. SHE ADVISED SHE CAN'T EVEN EAT. SHE INDICATED SHE WAS SURPRISED DR. KENT HADN'T RESPONDED SINCE WHEN HE WROTE HIS LETTER, HE STAYED UP UNTIL 1 AM. SHE WILL F/U AND I ASKED THAT SHE CONFIRM FAX NUMBER IF HE DIDN'TRECEIVE IT. SHE ASKED FOR A COPY OF THE REPORT AND I ADVISED I WOULD PROVIDE HER WITH A COPY BUT HADN'T AS I WANTED HER AP COMMENTS FIRST. ALSO ADVISED HER AFTER REPORT SENT TO HER DOCTORS, WE RECEIVED RECORDS OF DR. KUDRON AND DR. SALEK AND ONCEI RECEIPT DR. KENT INFO, WILL REFER FOR ADDITIONAL REVIEW.

**09/24/2020 12:17 PM - CLAIM Note 75**
Claim/Event/Leave: 9291624
NoteSubject : Other
Other Subject : EE EMAIL
Text: [09/24/2020 - AVRETT, MARY]RECEIVED AND REVIEWED EMAIL FROM CLMT ADVISING NEVE STUDIES SCHEDULED 10/8/20

**09/24/2020 12:15 PM - CLAIM Note 74**
Claim/Event/Leave: 9291624
NoteSubject : Med Records Rcvd
Other Subject : DR. SALEK
Text: [09/24/2020 - AVRETT, MARY]RECEIVED AND REVIEWED OVN DATED 9/8/20 FROM DR. SALEK

**09/22/2020 10:12 AM - CLAIM Note 73**

**Lincoln/Mason 0077**

Claim/Event/Leave: 9291624
NoteSubject : Med Records Rcvd
Other Subject : DR. KUDRON
Text: [09/22/2020 - AVRETT, MARY]RECEIVED AND REVIEWED OVN DATED 9/4/20 BY DR. KUDRON

**09/18/2020 7:31 AM - CLAIM Note 72**
Claim/Event/Leave: 9291624
NoteSubject : LTR to AP
Other Subject : PM&R REPORTS
Text: [09/18/2020 - AVRETT, MARY]SENDING PM&R REPORT TO PROVIDERS DR. HUANG, DR. SUNG AND DR. KENT ASKING
FOR REVIEW AND COMMENT. REPLY DUE 10/2

**09/18/2020 7:06 AM - CLAIM Note 71**
Claim/Event/Leave: 9291624
NoteSubject : Peer Review
Other Subject : PM&R
Text: [09/18/2020 - AVRETT, MARY]RECEIVED AND REVIEWED PEER BY PM&R

**09/02/2020 7:58 AM - CLAIM Note 70**
Claim/Event/Leave: 9291624
NoteSubject : Other
Other Subject : ADMIN
Text: [09/02/2020 - HOFFNER, FAYE]REQUEST FOR FILE TO BE SUBMITTED TO VENDOR, ADMIN COMPLETED REQUEST AND
RESPONDED OF COMPLETION: GOOD MORNING MARY, I COMPLETED YOUR REQUEST FOR FILE 9291624 TO BE
SUBMITTED VIA SECURE ONE DRIVE TO LEGACY@ECNIME.COMTHE LINK WILL BE ACCESSIBLE 24 HOURS OF SUBMISSION
AND THE P/W IS THE FIRST TWO INITIALS OF THE CLAIMANTS FIRST NAME AND DOB. EXAMPLE ONLY: MA0508220 CASE
SENSITIVE THESE INSTRUCTIONS ARE IN THE BODY OF THE EMAIL TO THE REQUESTOR.

**09/01/2020 8:50 PM - CLAIM Note 69**
Claim/Event/Leave: 9291624
NoteSubject : Ref to Other
Other Subject : SCORE REFERRAL
Text: 9/1/2020 - REFERRED TO EXAM COORDINATORS - ECN FOR PEER REVIEW.

**08/31/2020 2:56 PM - CLAIM Note 68**
Claim/Event/Leave: 9291624
NoteSubject : Appeal
Other Subject : STATUS
Text: [08/31/2020 - AVRETT, MARY]RESUMING APPEAL REVIEW. REFERRING CLAIM FOR PEER BY PM&R/PAIN. DAYS
REMAINING 86 OF 90

**08/31/2020 2:40 PM - PHONE Note 29**
Claim/Event/Leave: 9291624
NoteSubject : Called EE
Other Subject :
Text: [08/31/2020 - AVRETT, MARY]CALLED EE AND ADVISED I RECEIVED DR. KENT'S LETTER. CONFIRMED I HAVE
EVERYTHING FOR HER APPEAL AND ADVISED I WOULD GET IT REFERRED FOR A MEDICAL REVIEW

**08/31/2020 2:37 PM - CLAIM Note 67**
Claim/Event/Leave: 9291624
NoteSubject : Medical Status
Other Subject : DR. KENT
Text: [08/31/2020 - AVRETT, MARY]RECEIVED AND REVIEWED LETTER FROM DR. KENT

**08/31/2020 10:02 AM - PHONE Note 28**
Claim/Event/Leave: 9291624
NoteSubject : EE Called
Other Subject :
Text: [08/31/2020 - AVRETT, MARY]EE CALLED TO ADVISE DR. KENT'S OFFICE SENT SUMMARY TO DISABILITY DOCS EMAIL
THIS MORNING. ADVISED IT CAN TAKE UP TO 24 HRS TO UPLOAD. I WILL BE ON THE LOOK OUT FOR IT AND LET HER KNOW
WHEN I GET IT.

**08/27/2020 1:47 PM - CLAIM Note 66**
Claim/Event/Leave: 9291624
NoteSubject : Med Records Rcvd
Other Subject : PT
Text: [08/27/2020 - AVRETT, MARY]RECEIVED PT RECORDS FROM FYZICAL PT DATED 7/23/20 TO 8/20/20

**08/27/2020 11:37 AM - PHONE Note 27**
Claim/Event/Leave: 9291624
NoteSubject : Called EE
Other Subject :
Text: [08/27/2020 - AVRETT, MARY]CALLED EE AT                THINKS PCP - DR. KENT IS GOING TO BE SENDING IN
ADDITIONAL INFORMATION. HE IS THE ONE OVERSEEING ALL TREATMENT AND WILL HAVE DOCUMENT IN BY FRIDAY. 9/4

**Lincoln/Mason 0078**

AT 11:40 SHE HAS AN APPT. WITH DR. KUDRON IN NEURO AT KAISER AND 9/8 DR. SALEK TO TALK ABOUT A SPINAL CORD STIMULATOR. ADVISED HER TO SIGN AUTH WHILE AT KAISER BECAUSE GETTING RECORDS CAN BE DIFFICULT. DEPENDING ON WHAT DR. KUDRON SAYS DEPENDS ON HOW THEY PROCEED WITH THE SPINAL STIMULATOR. PENDING SSDI. HAS AN ATTORNEY HANDLING THAT. SHE BEGAN TO CRY AND ADVISED SHE HAS NOT HAD AN INCOME AND SHE IS ABOUT TO HAVE TO STOP TREATING BECAUSE SHE WONT BE ABLE TO AFFORD IT. TOLD HER AS SOON AS I GET DR. KENT INFO, I WILL GET HER APPEAL REVIEWED.

**08/26/2020 3:02 PM - CLAIM Note 65**
Claim/Event/Leave: 9291624
NoteSubject : Med Records Rcvd
Other Subject :
Text: [08/26/2020 - AVRETT, MARY]RECEIVED PT NOTE DATED AND OVN FROM DR. SUNG DATED 2/6/20 TO 8/19/20

**08/19/2020 7:26 AM - CLAIM Note 64**
Claim/Event/Leave: 9291624
NoteSubject : Med Records Rcvd
Other Subject : MRI
Text: [08/19/2020 - AVRETT, MARY]RECEIVED MRI REPORT DATED 7/31/2020

**08/18/2020 2:22 PM - CLAIM Note 63**
Claim/Event/Leave: 9291624
NoteSubject : Appeal
Other Subject : STATUS
Text: [08/18/2020 - AVRETT, MARY]EXTENDING TOLLING TO 8/31/20 FOR DR. SUNG AND MRI RECORDS.

**08/18/2020 2:17 PM - PHONE Note 26**
Claim/Event/Leave: 9291624
NoteSubject : Called EE
Other Subject :
Text: [08/18/2020 - AVRETT, MARY]CALLED EE AT                AND ADVISED NO FORMS IN APPEALS AND PT CAN SEND IN THEIR OVN. SHE ADVISED SHE SEES DR. SUNG ON THURSDAY AND NEEDS ADDITIONAL TIME TO SENT THE INFO IN. SHE ADVISED TEN DAYS AND I CONFIRMED THATWOULD BE 8/31. SHE ADVISED THINGS HAVE GOTTEN WORSE AND SHE HAS AN APPT. WITH A NEUROSURGEON ON 9/4/20 BUT DOES NOT WANT TO WAIT THAT LONG ON APPEAL AS SHE NEEDS MONEY. ADVISED I WOULD SEND HER A LETTER EXTENDING TIME TO 8/31 AND WILL LET HER KNOWWHEN I RECEIVE RECORDS.

**08/18/2020 1:30 PM - PHONE Note 25**
Claim/Event/Leave: 9291624
NoteSubject : EE Called
Other Subject :
Text: [08/18/2020 - AVRETT, MARY]EE CALLED AND LEFT A MESSAGE IN VM ADVISING HER PT PERSON WANTS TO SEE IF WE HAVE A FORM HE CAN COMPLETE. PLEASE EMAIL FORM TO HER AT                        AND ANY QUESTIONS, CALL HER AT

**08/10/2020 7:11 AM - CLAIM Note 62**
Claim/Event/Leave: 9291624
NoteSubject : Med Records Rcvd
Other Subject : SALEK
Text: [08/10/2020 - AVRETT, MARY]RECEIVED AND REVIEWED MEDICAL RECORDS FROM DR. SALEK DATED 2/12/20 TO 6/11/20

**08/07/2020 11:31 AM - CLAIM Note 61**
Claim/Event/Leave: 9291624
NoteSubject : LTR to AP
Other Subject : SPINAL DIAGNOSTICS
Text: [08/07/2020 - DEVLIN, TAMIE]SENT LETTER TO AP REQUESTING W9 IN ORDER TO PROCESS PAYMENT FOR INVOICE IN THE AMOUNT OF $200 FOR MEDICAL RECORDS

**08/03/2020 7:59 AM - CLAIM Note 60**
Claim/Event/Leave: 9291624
NoteSubject : LTR to ER
Other Subject : JOB DESCRIPTION
Text: [08/03/2020 - AVRETT, MARY]LTR TO ER FOR COPY OF JOB DESCRIPTION

**08/03/2020 7:21 AM - CLAIM Note 59**
Claim/Event/Leave: 9291624
NoteSubject : Med Records Rcvd
Other Subject : FYZICAL PT
Text: [08/03/2020 - AVRETT, MARY]RECEIVED AND REVIEWED OVN DATED 12/13/19 TO 7/16/20

**08/03/2020 7:20 AM - CLAIM Note 58**
Claim/Event/Leave: 9291624
NoteSubject : Med Records Rcvd
Other Subject : ASPEN CREEK
Text: [08/03/2020 - AVRETT, MARY]RECEIVED AND REVIEWED OVN FROM ASPEN CREEK DATED 10/7/19 TO 7/1/20

**Lincoln/Mason 0079**

Text: [08/03/2020 - AVRETT, MARY]RECEIVED AND REVIEWED OVN FROM ASPEN CREEK DATED 10/7/19 TO 7/1/20

**07/27/2020 7:10 AM - CLAIM Note 57**
Claim/Event/Leave: 9291624
NoteSubject : Peer Review
Other Subject : AP RESPONSE
Text: [07/27/2020 - AVRETT, MARY]RECEIVED AP SALEK RESPONSE TO PEER BY DR. MONTI

**07/24/2020 12:52 PM - CLAIM Note 56**
Claim/Event/Leave: 9291624
NoteSubject : Other
Other Subject : RECORDS REQUESTED
Text: [07/24/2020 - AVRETT, MARY]MEDICAL RECORDS REQUESTED THROUGH RELEASE PT FOR FYZICAL, DR. KENT AND DR. SELEK

**07/24/2020 12:50 PM - CLAIM Note 55**
Claim/Event/Leave: 9291624
NoteSubject : Appeal
Other Subject : TOLLING
Text: [07/24/2020 - AVRETT, MARY]TOLLING APPEAL FOR MISSING MEDICAL RECORDS FROM FYZICAL PT, DR. KENT AND DR. SELEK AND OVN FOR APPOINTMENTS IN AUGUST. TOLLING FOR 30 DAYS. INFO DUE AUGUST 22, 2020. 87 OF 90 DAYS REMAINING

**07/24/2020 12:15 PM - PHONE Note 24**
Claim/Event/Leave: 9291624
NoteSubject : Called EE
Other Subject : INITIAL X 2
Text: [07/24/2020 - AVRETT, MARY]CALLED EE AT              . ADVISED I RECEIVED HER FAX THIS MORNING AND I CAN SEE SHE HAS UPCOMING MRI ON 8/7 AND 8/19 WITH DR. SUNG. SHE INDICATED SHE WOULD LIKE THE RECORDS INCLUDED. SHE HAS A LOT OF COMPLAINTS ABOUTHOW HER CLAIM WAS HANDLED, SPECIFICALLY THE MEDICAL REVIEW USED TO CLOSE HER CLAIM AND HER CLAIM BEING CLOSED IN THE MIDDLE OF A PANDEMIC. SHE WANTED TO KNOW IF THAT WAS NORMAL AND I ADVISED HER CLAIM WAS REFERRED TO SEE IF SHE CONTINUED TO MEET THEDEFINITION OF DISABILITY. ADVISED I REALLY CAN'T SPEAK TO WHAT WENT ON BEFORE CLAIM CAME TO APPEALS BUT I'D BE HAPPY TO REFER HER TO A MANAGER IN THE FIELD. WE WENT OVER THE MEDICAL IN HER CLAIM AND DETERMINED WE DO NOT HAVE HER PT RECORDS FROM 2/1/20FORWARD AS SHE HAS CONTINUED THROUGH THE COVID CLOSURE, RECORDS OF DR. SELEK 1/1/20 FORWARD AND RECORDS FROM DR. KENT BEYOND 8/7/19. SHE ADVISED DR. HUANG IS HIP, DR. SUNG IS PELVIS AND FOR HER BACK, SHE NEEDS TO SEE A NEUROSURGEON BUT IS WAITING FOR THE MRI TO CONFIRM NEUROSURGEON OR CAN SHE GO BACK TO ORTHO. SHE ADVISED DR. SELEK GIVES SI JOINT SHOTS. WE AGEED THAT IT IS IMPORTANT TO HAVE THE RECORDS ALONG WITH UPDATED MRI IN AUGUST AND OV WITH DR. SUNG IN AUGUST. ADVISED WE WILL SUSPENDAPPEAL REVIEW FOR 30 DAYS. SHE THOUGHT WE HAD 180 DAYS PLUS SIX MONTHS TO REVIEW HER APPEAL. I ADVISED NO, THE 180 WAS HER TIME TO FILE APPEAL. WE HAVE 45 AND UP TO 90 IF NEEDED. HOWEVER, DURING SUSPENSION, THAT TIME IS NOT COUNTED. SHE UNDERSTOOD. CONFIRMED SHE HAS NOT MOVED AND WOULD LIKE CORRESPONDENCE FROM MAIL AND ADVISED HER TO CALL ANYTIME TO CONFIRM THE STATUS. RECOMMENDED IN THE FUTURE IF SHE SENDS A FAX, TO CONFIRM RECEIPT AFTER 24 HOURS AS SHE INDICATED SHE THOUGHT WE WERE MISSING RECORDS SHE SENT IN. SHE OFFERED TO SEND IN 1200 PAGES OF RECORDS DATING BACK TO CAR ACCIDENT IN 2017 AND I ADVISED SHE CAN SEND THEM IN, BUT WE ARE LOOKING AT DOD FORWARD. SHE UNDERSTOOD AND THE CALL ENDED.[07/24/2020 - AVRETT, MARY]*

**07/24/2020 7:12 AM - CLAIM Note 54**
Claim/Event/Leave: 9291624
NoteSubject : Other
Other Subject : DOCS RECEIVED
Text: [07/24/2020 - AVRETT, MARY]RECEIVED FAX FROM JAN MASON WITH DATES OF APPOINTMENTS, ASKING US TO CONTACT PT AND REQUEST RECORDS FROM DR. KENT AND MARC PHILLIPS. RECEIVED FULL OVN DATED 7/1/20

**07/24/2020 7:09 AM - PHONE Note 23**
Claim/Event/Leave: 9291624
NoteSubject : EE Called
Other Subject :
Text: [07/24/2020 - AVRETT, MARY]EE CALLED AND LEFT A MESSAGE IN VM APOLOGIZING FOR THE LATE RETURN CALL BUT SHE WAS AT PT. SHE INDICATED SHE WILL SEND COMPLETE 7/1 OVN. SHE ADVISED SHE HAS HAD PT NON-STOP. THERAPIST PROVIDED HIS CONTACT INFO IF WE WOULD LIKE TO SPEAK TO HIM 719-488-0120, EXT 361 OR HIS CELL 719-232-8079.. SHE HAS A NOV 8/19 WITH DR. SUNG TO DECIDE WHETHER TO PROCEED WITH FUSION OR SPS. 8/7 SHE HAS AN APPOINTMENT FOR A STAND UP MRI. SHE PROVIDED HER CONTACT INFO IF WE HAVE ANY QUESTIONS.

**07/23/2020 12:45 PM - PHONE Note 22**
Claim/Event/Leave: 9291624
NoteSubject : Called EE
Other Subject : INITAKE X 1
Text: [07/23/2020 - AVRETT, MARY]CALLED EE AT                AND LEFT A MESSAGE IN VM HER APPEAL HAS BEEN ASSIGNED TO ME. APPEAL DOCS RECEIVED 18 OF 21 AND APPEARS COMPLETE OVN FROM 7/1/20 OVN IS MISSING. ASKED THAT SHE FAX OR EMAIL IT TO ME AND PROVIDEDHER WITH CONTACT INFO AND DISABILITY EMAIL ADDRESS. ALSO ASKED THAT SHE RETURN MY CALL TO DISCUSS THE APPEAL PROCESS AND CONFIRM AFTER RECEIPT OF COMPLETE OVN FROM 7/1/20 THAT WE HAVE HER COMPLETE APPEAL.

**Lincoln/Mason 0080**

**07/23/2020 11:15 AM - CLAIM Note 53**
Claim/Event/Leave: 9291624
NoteSubject : Appeal
Other Subject : INITIAL REVIEW
Text: [07/23/2020 - AVRETT, MARY]PRESCREEN COMPLETED. CODING IS ACCURATE. LTD FI ERISA. CLAIM FILED 09/06/2019.
JD NOT ON FILE REQUESTED FROM DCM. AUTH NOT ON FILE REQUESTED FROM CLAIMANT. CLAIM DENIED NOT TD OO,
DATE OF DENIAL WAS 07/21/2020. APPEAL TIMEFRAME IS 180 DAYS, APPEAL DUE 01/17/2021. LETTER OF APPEAL RECEIVED
07/21/2020. ACTION PLAN: REVIEW APPEAL, FILE AND CONTACT CLMT TO CONFIRM COMPLETE APPEAL.

**07/23/2020 10:05 AM - CLAIM Note 52**
Claim/Event/Leave: 9291624
NoteSubject : Appeal
Other Subject : REFERRAL RECVD
Text: [07/23/2020 - AVERILL, REBECCA]ASSIGNED TO MARY AVRETT

**07/22/2020 8:50 PM - CLAIM Note 51**
Claim/Event/Leave: 9291624
NoteSubject : Ref to Appeals
Other Subject : SCORE REFERRAL
Text: 7/22/2020 - REFERRED TO APPEALS UNIT FOR CLAIM REVIEW AND DETERMINATION.

**07/22/2020 4:52 PM - PHONE Note 21**
Claim/Event/Leave: 9291624
NoteSubject : Called EE
Other Subject : RTN VMAIL
Text: [07/22/2020 - ABRAMS-WEAVER, COREY]CALLED EE TO RTN A VMAIL FROM 7/22; ADVISE EE THAT THE CLAIM WILL BE
SENT TO THE APPEALS UNIT; DCM ADVISED EE TO F/U WITH APPEALS UNTIL ONGOING ONCE CONTACT IS MADE; DCM LVM
FOR EE TO CONTACT DCM WITH ANY QUESTIONSOR CONCERNS;

**07/22/2020 1:45 PM - CLAIM Note 50**
Claim/Event/Leave: 9291624
NoteSubject : Other
Other Subject : MANAGER REVIEW
Text: [07/22/2020 - HILL, GABRIEL]AGREE WITH REFERRAL TO ARU

**07/22/2020 10:02 AM - CLAIM Note 49**
Claim/Event/Leave: 9291624
NoteSubject : Ref to Appeals
Other Subject : M1/ARU
Text: [07/22/2020 - ABRAMS-WEAVER, COREY]48YOF; REP 3, CUST SVC BILLING PHYSICAL DEMANDS: SEDENTARY JD; LDW:
4.16.2019; DOD: 4.17.2019, DIAGNOSIS: MVA IN 2017 AFTER HAD AN SI JOINT FUSION, EE HAS INJURIES TO PELVIS , HIPS, SI
JOINT, AND LOWER BACK; MOTOR VEHICLE ACCIDENT DATE 12.18.2017; ON 4.17.2019 EE HAD A HIP PROCEDURE THAT SHE
NEVER RECOVERED FROM; THE MEDICAL RECORD DOCUMENTATION AVAILABLE FOR REVIEW SUPPORTED THE
REASONABLE ASSESSMENT THAT THE CLAIMANT HAS HAD LESS THAN SEDENTARY CAPACITY UNTIL JANUARY 2020;
BASED ON THE RECENT REVIEW R/LS ARE NO LONGER SUPPORTIVE OF IMPAIRMENT; DCM RECOMMENDED CLOSURE
FOR NOT TD ONGOING ON 7/20/2020 ; THE NOTICE OF APPEAL LETTER WAS RECEIVED ON 7/21/2020; DCM RECOMMENDS
REFERRAL TO APPEALS UNIT AT THIS TIME;

**07/22/2020 9:58 AM - CLAIM Note 48**
Claim/Event/Leave: 9291624
NoteSubject : Appeal
Other Subject : NOTICE OF APPEAL
Text: [07/22/2020 - ABRAMS-WEAVER, COREY]NOTICE OF APPEAL LETTER RECEIVED ON 7/21/2020; WITH OFFICE VISIT
NOTES FROM COLORADO SPRINGS ORTHO , DOS 3.12.2020 THROUGH 7.1.2020

**07/21/2020 11:02 AM - PHONE Note 20**
Claim/Event/Leave: 9291624
NoteSubject : Called EE
Other Subject : DENIAL NOTICE
Text: [07/21/2020 - ABRAMS-WEAVER, COREY]CALLED EE TO ADVISE OF NOT TD CLOSURE FOR ONGOING BENEFITS; DCM
LVM FOR EE TO RETURN THE CALL WITH ANY QUESTIONS;

**07/20/2020 8:38 AM - CLAIM Note 47**
Claim/Event/Leave: 9291624
NoteSubject : Other
Other Subject : MANAGER REVIEW
Text: [07/20/2020 - HILL, GABRIEL]AGREE WITH CLOSURE BASED ON MEDICAL REVIEW

**07/20/2020 8:12 AM - CLAIM Note 46**
Claim/Event/Leave: 9291624
NoteSubject : Closed
Other Subject : NOT TD
Text: [07/20/2020 - ABRAMS-WEAVER, COREY]48YOF; REP 3, CUST SVC BILLING PHYSICAL DEMANDS: SEDENTARY JD; LDW:
4.16.2019; DOD: 4.17.2019, DIAGNOSIS: MVA IN 2017 AFTER HAD AN SI JOINT FUSION, EE HAS INJURIES TO PELVIS , HIPS, SI

**Lincoln/Mason 0081**

JOINT, AND LOWER BACK; MOTOR VEHICLE ACCIDENT DATE 12.18.2017; ON 4.17.2019 EE HAD A HIP PROCEDURE THAT SHE NEVER RECOVERED FROM; THE MEDICAL RECORD DOCUMENTATION AVAILABLE FOR REVIEW SUPPORTED THE REASONABLE ASSESSMENT THAT THE CLAIMANT HAS HAD LESS THAN SEDENTARY CAPACITY UP UNTIL JANUARY 2020; BASED ON THE RECENT REVIEW R/LS ARE NO LONGER SUPPORTIVE OF IMPAIRMENT; DCM RECOMMENDS CLOSURE FOR NOT TD ONGOING ;

**07/20/2020 8:12 AM - CLAIM Note 45**
Claim/Event/Leave: 9291624
NoteSubject : Med Records Rcvd
Other Subject : PM&R FFR
Text: [07/20/2020 - ABRAMS-WEAVER, COREY]CLINICAL PM&R FULL FILE REVIEW RECEIVED 7/16/2020

**07/20/2020 6:55 AM - CLAIM Note 44**
Claim/Event/Leave: 9291624
NoteSubject : Other
Other Subject : VENDOR PAYMENT
Text: [07/20/2020 - YEREMIAN, KEVORK]INVOICE RECEIVED ON 07/02/2020 FROM RELEASEPOINT. INV # 712221-1141, IN THE AMOUNT OF $26.50 FOR MEDICAL RECORDS. INVOICE PAID IN FULL.

**07/01/2020 1:32 PM - CLAIM Note 43**
Claim/Event/Leave: 9291624
NoteSubject : Ref to Managed Care
Other Subject : FFR/CRT/PM&R
Text: [07/01/2020 - ABRAMS-WEAVER, COREY]CLAIM REFERRED FOR PM&R PAIN SPECIALTY FILE REVIEW;

**07/01/2020 1:27 PM - CLAIM Note 42**
Claim/Event/Leave: 9291624
NoteSubject : Other
Other Subject : ORTHO CC
Text: [07/01/2020 - HENNING, ANDRE]CLAIM WAS REVIEWED IN ORTHO CC BY DR. WHIRLOW ON 7/1/2020. FOLLOWING THE REVIEW, CP CONCLUDES: EE HAS PAIN MANGEMENT ISSUES THAT ARE BEING MANAGED BY MEDIATIONS. HER OBJECTIVE FINDINGS FROM AN ORTHO PERSPECTIVE WOULD NOTPRECLUDE SEDENTARY CAPACITY. A FFR WITH PAIN MANAGEMENT WOULD BE APPROPRIATE FOR THIS CLAIM.

**06/23/2020 12:43 PM - CLAIM Note 41**
Claim/Event/Leave: 9291624
NoteSubject : Med Records Rcvd
Other Subject : DR. HUANG/DR. SUNG
Text: [06/23/2020 - ABRAMS-WEAVER, COREY]PROGRESS NOTES; COLORADO SPRINGS ORTHO GROUP / DR. HUANG/DR. SUNG

**06/12/2020 3:02 PM - CLAIM Note 40**
Claim/Event/Leave: 9291624
NoteSubject : LTR to EE
Other Subject : N&P
Text: [06/12/2020 - ABRAMS-WEAVER, COREY]DAY 30: 07/11/2020 DAY 45: 07/26/2020 DAY 75: 8/24/2020; DR. HUANG/ DR. SUNG

**06/12/2020 2:59 PM - CLAIM Note 39**
Claim/Event/Leave: 9291624
NoteSubject : LTR to AP
Other Subject : DR. HUANG/ DR. SUNG
Text: [06/12/2020 - ABRAMS-WEAVER, COREY]MEDICAL REQUEST SENT TO OBTAIN RECORDS FROM MAY 1, 2020 TO PRESENT FROM COLORADO SPRINGS ORTHO GROUP, DR. HUANG / DR. SUNG

**06/12/2020 2:58 PM - PHONE Note 19**
Claim/Event/Leave: 9291624
NoteSubject : EE Called
Other Subject : STATUS UPDATE
Text: [06/12/2020 - ABRAMS-WEAVER, COREY]EE CALLED; ADVISED THAT SHE IS STILL OOW AT THIS TIME; EE ADVISED THAT SHE STILL TREATS WITH PHYSICAL THERAPY ON A WEEKLY BASIS; EE STILL TREATING WITH DR. HUANG / DR. SUNG EE HAD AN INJECTION ON 6/11/2020; EE ADVISED THAT HER LOWER BACK, PELVIS, AND HIP PAIN THAT IS CAUSING IMPAIRMENT FROM WORKING AT THIS TIME; I ADVISED THE CLAIMANT THAT WE WILL NEED UPDATED RECORDS TO DETERMINE ONGOING R/LS; EE HAD NFQ; EE THANKED DCM;

**06/12/2020 2:50 PM - PHONE Note 18**
Claim/Event/Leave: 9291624
NoteSubject : Called EE
Other Subject : RTW INQUIRY
Text: [06/12/2020 - ABRAMS-WEAVER, COREY]CALLED EE TO OBTAIN AN UPDATE ON HER RETURN TO WORK STATUS AND ONGOING TREATMENT PLAN; I LEFT A MESSAGE FOR THE CLAIMANT TO RETURN THE CALL;

**05/28/2020 8:51 AM - PHONE Note 17**
Claim/Event/Leave: 9291624
NoteSubject : Called EE

**Lincoln/Mason 0082**

NoteSubject : Called EE
Other Subject : RTN VMAIL
Text: [05/28/2020 - ABRAMS-WEAVER, COREY]EE CALLED ON 5/21/2020 AND LEFT A MESSAGE ADVISING THAT SHE WAS DENIED FOR SOCIAL SECURITY DISABILITY; DCM RETURNED CALL ON 5/28 AND LEFT MESSAGE ADVISING EE TO RETURN CALL TO DCM;

**05/27/2020 8:08 AM - CLAIM Note 38**
Claim/Event/Leave: 9291624
NoteSubject : Med Records Rcvd
Other Subject : MULTIPLE
Text: [05/27/2020 - MILLER, SHAWN]EE SENT IN RECENT MEDICAL THAT INCLUDED MED RECS FROM DR. HUANG DATED 3/12 - 5/13 AND PT NOTES FROM 2/25 - 4/30.

**05/04/2020 10:44 AM - CLAIM Note 37**
Claim/Event/Leave: 9291624
NoteSubject : Other
Other Subject : VENDOR PAYMENT
Text: [05/04/2020 - NILES, CATHY]INVOICE RECEIVED ON 04/03/2020 FROM RELEASEPOINT . INVOICE #711615-1324 IN THE AMOUNT OF $ 41.50 . INVOICE PAID.

**04/21/2020 11:35 AM - CLAIM Note 36**
Claim/Event/Leave: 9291624
NoteSubject : Action Plan
Other Subject : RTW OO JUN 2020
Text: [04/21/2020 - ABRAMS-WEAVER, COREY]47YOF; REP 3, CUST SVC BILLING PHYSICAL DEMANDS: SEDENTARY JD; LDW: 4.16.2019; DOD: 4.17.2019, ESTIMATED RTW: EE DOES NOT HAVE A RTW DATE; DIAGNOSIS: MVA IN 2017 AFTER SHE HAD RECENTLY HAD AN SI JOINT FUSION, EE HAS INJURIES TO PELVIS , HIPS, SI JOINT, AND LOWER BACK; MOTOR VEHICLE ACCIDENT DATE 12.18.2017; ON 4.17.2019 EE HAD A HIP PROCEDURE THAT SHE NEVER RECOVERED FROM; THE MEDICAL RECORD DOCUMENTATION AVAILABLE FOR REVIEW SUPPORTS THE REASONABLEASSESSMENT THAT THE CLAIMANT HAS HAD LESS THAN SEDENTARY CAPACITY SINCE THE TIME OF HER DOD OF 4/17/19 THROUGH THE PRESENT DUE INITIALLY TO HER RIGHT HIP PAIN AND THEN POSTOPERATIVELY DUE TO HER IMPAIRING RIGHT LOW BACK PAIN AND RIGHT BUTTOCK PAIN DUE TO SACROILIITIS AND LUMBAR FACET ARTHROPATHY WHICH IS SEVERE ENOUGH AS TO REQUIRE CHRONIC PAIN MANAGEMENT INCLUDING CONSIDERATION FOR THE USE OF A STIMWAVE SPINAL CORD STIMULATOR. BASED ON LAST NOTE FROM DR. HUANG DATED 3.12.2020 EE ADVISED TOF/U BACK UP TO SEE IF THERE ARE ANY OPTIONS FOR TREATMENT; AP RECOMMENDED CONTINUED RANGE OF MOTION AND STRENGTHENING UNTIL AP CAN FIGURE OUT SACROILIAC JOINTS; DCM RECOMMENDS TO F/U IN JUNE 2020; DCM WILL OBTAIN UPDATED RECORDS AND REFER FOR FILE REVIEW TO DETERMINE ONGOING R/LS;

**04/14/2020 4:02 PM - PHONE Note 16**
Claim/Event/Leave: 9291624
NoteSubject : EE Called
Other Subject : STATUS UPDATE
Text: [04/14/2020 - ABRAMS-WEAVER, COREY]EE RETURNED CALL TO DCM; EE ADVISED HER TREATMENT PLAN WAS CHANGED; EE ADVISED HER PROVIDERS DON'T WANT HER TO DO THE SPINAL CORD STIMULATOR; EE ADVISED THAT AP WANTS TO GIVE HER ANOTHER FUSION PROCEDURE; EE CURRENTLY LOOKING FOR A PROVIDER TO REMOVE FUSION PINS; EE HAS CONTINUED TO DO PT FOR HER HIP, EE ADV THAT SHE THINK HER LABRUM IS TORN; EE THINKS SHE WILL NEED ANOTHER HIP REPLACEMENT; EE ADVISED THAT PHYSICAL THERAPY KNOWS ABOUT HER HIP CONDITION; EESTATED THAT SHE IS WAITING FOR UPDATE FROM DR. SUNG; EE ADVISED THAT THE DELAY IS DUE TO COVID-19; EE UNSURE OF WHEN DR. SUNG WILL SCHEDULE THE APPOINTMENT; ADV EE THAT DCM WILL F/U NEXT TO GET AN UPDATE ON F/U SCHEDULE WITH TREATING PROVIDERS; EE HAD NFQ;

**04/14/2020 3:27 PM - PHONE Note 15**
Claim/Event/Leave: 9291624
NoteSubject : Called EE
Other Subject : STATUS INQUIRY
Text: [04/14/2020 - ABRAMS-WEAVER, COREY]CALLED EE FOR STATUS UPDATE; LVM FOR EE TO RETURN CALL; DCM WILL INQUIRE ABOUT MOST RECENT F/U VISIT TO CONFIRM NEXT F/U DATE AND UPDATE ACTION PLAN;

**03/24/2020 9:06 AM - CLAIM Note 35**
Claim/Event/Leave: 9291624
NoteSubject : Med Records Rcvd
Other Subject : DR. HUANG
Text: [03/24/2020 - ABRAMS-WEAVER, COREY]PROGRESS NOTES ; DOS 12.18.2019 THRU 3.12.2020; DR. MICHAEL HUANG; COLORADO SPRINGS ORTHO GROUP

**03/10/2020 8:10 AM - CLAIM Note 34**
Claim/Event/Leave: 9291624
NoteSubject : Med Records Rcvd
Other Subject : DR. JOHN CAMPBELL
Text: [03/10/2020 - ABRAMS-WEAVER, COREY]OVN; EXAM FINDINGS; OP REPORT; TX PLAN; DOS 10.22.2019 THRU 2.17.2020; DR. JOHN CAMPBELL

**02/19/2020 3:20 PM - PHONE Note 14**
Claim/Event/Leave: 9291624
NoteSubject : EE Called

**Lincoln/Mason 0083**

Other Subject : 60DAY F/U
Text: [02/19/2020 - ABRAMS-WEAVER, COREY]EE CALLED; ADV THAT SHE DOES NOT HAVE A RETURN TO WORK DATE; EE
ONLY HAS HAD 1 OF 3 SURGERIES; EE HAS F/U WITH HIP SPECIALIST DR. HUANG 3.12.2020; EE TREATS WITH DR. ZHANG IN
REGARDS TO SPINAL STIMULATOR BUT HAS TOWAIT UNTIL HIP PROCEDURES ARE COMPLETE; EE STATED THAT SHE
JUST CONFIRMED SHE WILL NEED TO HAVE A PROCEDURE ON HER OTHER HIP WITH DR. HUANG; EE ADV THAT SHE WILL
SEND UPDATE MRI RESULTS TO DCM; EE HAD NFQ; EE THANKED DCM;

**02/19/2020 2:46 PM - PHONE Note 13**
Claim/Event/Leave: 9291624
NoteSubject : Called EE
Other Subject : 60DAY INQUIRY
Text: [02/19/2020 - ABRAMS-WEAVER, COREY]CALLED EE FOR 60DAY F/U; LVM FOR EE TO RETURN CALL TO DCM;

**01/27/2020 1:53 PM - CLAIM Note 33**
Claim/Event/Leave: 9291624
NoteSubject : Other
Other Subject : VENDOR PAYMENT
Text: [01/27/2020 - YEREMIAN, KEVORK]INVOICE RECEIVED ON 01/02/2020 FROM RELEASEPOINT. INV # 710977-1485, IN THE
AMOUNT OF $29.50 FOR MEDICAL RECORDS. INVOICE PAID IN FULL.

**01/06/2020 8:59 AM - CLAIM Note 32**
Claim/Event/Leave: 9291624
NoteSubject : Other
Other Subject : SSDI APP RCVD
Text: [01/06/2020 - ABRAMS-WEAVER, COREY]PROOF OF SSDI FILING RECEIVED FROM EE

**12/23/2019 1:13 PM - CLAIM Note 31**
Claim/Event/Leave: 9291624
NoteSubject : Med Records Rcvd
Other Subject : DR. HUANG
Text: [12/23/2019 - ABRAMS-WEAVER, COREY]PROGRESS NOTES, LABS/EXAM FINDINGS, TX PLAN; DOS 11.20.2019 THRU
12.13.2019; DR. HUANG;

**12/21/2019 8:42 AM - CLAIM Note 30**
Claim/Event/Leave: 9291624
NoteSubject : Other
Other Subject : FORMS RCVD
Text: [12/21/2019 - ABRAMS-WEAVER, COREY]3PL, ACCIDENT REPORT , FIQ, SURVIVOR ESTATE,

**12/19/2019 11:36 AM - CLAIM Note 29**
Claim/Event/Leave: 9291624
NoteSubject : Other
Other Subject : VENDOR PAYMENT
Text: [12/19/2019 - DEVLIN, TAMIE]INVOICE #710864-1962 RECEIVED ON 12/5/2019 FROM RELEASEPOINT IN THE AMOUNT OF
$28.75 FOR MEDICAL RECORDS. INVOICE PAID IN FULL

**12/18/2019 11:21 AM - CLAIM Note 28**
Claim/Event/Leave: 9291624
NoteSubject : LTR to AP
Other Subject : MED REQUEST/ RP
Text: [12/18/2019 - ABRAMS-WEAVER, COREY]MED REQUEST SENT TO OBTAIN RECORDS FROM OCTOBER 26, 2019 TO
PRESENT FOR THIS PATIENT ; DR. ROGER SUNG, DR. MICHAEL HUANG, DR. JAMES BEE, DR. TYLER BRAUN

**12/16/2019 2:05 PM - CLAIM Note 27**
Claim/Event/Leave: 9291624
NoteSubject : Other
Other Subject : BENEFIT CALCULATION
Text: [12/16/2019 - MILLS, DONNA]SET UP SCHEDULED PAYMENT BASED ON EARNING REPORT HRLY RATE IS
$26.43013245*40 HRS *52 WKS=$54974.6755/12=$4581.22. THE BENEFIT IS 60% OR $2,748.73. THE INITIAL PAYMENT
WORKSHEET HAS BEEN SAVED TO THE DOC LIST.

**12/10/2019 4:09 PM - CLAIM Note 26**
Claim/Event/Leave: 9291624
NoteSubject : Other
Other Subject : SALARY VERIFICATION
Text: [12/10/2019 - MILLS, DONNA]EMAIL TO ER FOR SAL VER

**12/10/2019 9:57 AM - CLAIM Note 25**
Claim/Event/Leave: 9291624
NoteSubject : Other
Other Subject : ADD DD
Text: [12/10/2019 - MENDUM, COURTNEY]ROUTING            ACC

**12/10/2019 9:27 AM - CLAIM Note 24**
Claim/Event/Leave: 9291624

**Lincoln/Mason 0084**

Claim/Event/Leave: 9291624
NoteSubject : Other
Other Subject : FORMS
Text: [12/10/2019 - ABRAMS-WEAVER, COREY]DD, 3PL , ACC REPORT, FIQ, REIM, SURV, ESTATE; FORMS

**12/09/2019 8:21 AM - CLAIM Note 23**
Claim/Event/Leave: 9291624
NoteSubject : Other
Other Subject : LTD AUTH
Text: [12/09/2019 - RANSOM, SEAN]DD, TEE, POLICE REPORT, FAM, SSRA, S/E

**12/02/2019 12:40 PM - PHONE Note 12**
Claim/Event/Leave: 9291624
NoteSubject : EE Called
Other Subject : FORMS/PAYMENT INQUIR
Text: [12/02/2019 - ABRAMS-WEAVER, COREY]EE CALLED; EE HAD QUESTIONS ABOUT LTD FORMS; ADV EE HOW EACH
FORM SHOULD BE COMPLETED; ADV EE OF PAYMENT STATUS; EE HAD NFQ;

**12/02/2019 7:07 AM - CLAIM Note 22**
Claim/Event/Leave: 9291624
NoteSubject : Med Records Rcvd
Other Subject : COLORADO SPRINGS ORT
Text: [12/02/2019 - ABRAMS-WEAVER, COREY]PROGRESS NOTES; EXAM FINDINGS; LABS; DOS 9.17.2019 THRU 10.25.2019;
COLORADO SPRINGS ORTHO GROUP

**11/18/2019 8:50 PM - CLAIM Note 21**
Claim/Event/Leave: 9291624
NoteSubject : Ref to Other
Other Subject : PMNT
Text: THE SCORE REFERRAL FOR PAYMENT SERVICES REFERRAL AND INITIAL PAYMENT CALCULATION HAS BEEN
RECEIVED AND ASSIGNED TO DONNA MILLS.

**11/18/2019 8:50 PM - CLAIM Note 20**
Claim/Event/Leave: 9291624
NoteSubject : Ref to Other
Other Subject : PMT SVC
Text: FOR INITIAL PAYMENT CALCULATION. COMMENTS: PLEASE CALC INITIAL PAYMENT

**11/18/2019 2:57 PM - PHONE Note 11**
Claim/Event/Leave: 9291624
NoteSubject : Called EE
Other Subject : APPROVAL NOTICE
Text: [11/18/2019 - ABRAMS-WEAVER, COREY]CALLED EE; LVM; ADV APPROVAL; ADV OF LTD FORMS TO BE MAILED WITH
APPROVAL LETTER; ADV OF PAYMENT SCHEDULE; LVM;

**11/18/2019 2:30 PM - CLAIM Note 19**
Claim/Event/Leave: 9291624
NoteSubject : Other
Other Subject : MANAGER REVIEW
Text: [11/18/2019 - HILL, GABRIEL]BASED ON CONFIRMATION OF EE UPCOMING SX, AGREE WITH APPROVAL AND ACTION
PLAN.

**11/18/2019 2:20 PM - CLAIM Note 18**
Claim/Event/Leave: 9291624
NoteSubject : Action Plan
Other Subject : RTW OO APR 2020
Text: [11/18/2019 - ABRAMS-WEAVER, COREY]47YOF; REP 3, CUST SVC BILLING PHYSICAL DEMANDS: SEDENTARY JD; LDW:
4.16.2019; DOD: 4.17.2019, ESTIMATED RTW: EE DOES NOT HAVE A RTW DATE; DIAGNOSIS: MVA IN 2017 AFTER SHE HAD
RECENTLY HAD AN SI JOINT FUSION, EE HAS INJURIES TO PELVIS , HIPS, SI JOINT, AND LOWER BACK; MOTOR VEHICLE
ACCIDENT DATE 12.18.2017; ON 4.17.2019 EE HAD A HIP PROCEDURE THAT SHE NEVER RECOVERED FROM; THE MEDICAL
RECORD DOCUMENTATION AVAILABLE FOR REVIEW SUPPORTS THE REASONABLEASSESSMENT THAT THE CLAIMANT HAS
HAD LESS THAN SEDENTARY CAPACITY SINCE THE TIME OF HER DOD OF 4/17/19 THROUGH THE PRESENT DUE INITIALLY
TO HER RIGHT HIP PAIN AND THEN POSTOPERATIVELY DUE TO HER IMPAIRING RIGHT LOW BACK PAIN AND RIGHT
BUTTOCK PAIN DUE TO SACROILIITIS AND LUMBAR FACET ARTHROPATHY WHICH IS SEVERE ENOUGH AS TO REQUIRE
CHRONIC PAIN MANAGEMENT INCLUDING CONSIDERATION FOR THE USE OF A STIMWAVE SPINAL CORD STIMULATOR.
THIS ASSESSMENT OF THE CLAIMANTS WORK CAPACITY WILL BE ONGOING UNTIL THE UPDATED MEDICAL RECORD
DOCUMENTATION SUPPORTS THAT THE CLAIMANT S RIGHT LOW BACK PAIN AND RIGHT BUTTOCK PAIN HAS IMPROVED
TO THE POINT WHERE SHE IS ABLE TO SIT, STAND, AND WALK WITHOUT DISCOMFORT; BASED ON CP REVIEW AND
UPDATE FROM EE CONFIRMING UPCOMING SURGERY SCHEDULED FOR UPCOMING RIGHT HIP ARTHROSCOPY AND
LABRAL RECONSTRUCTION ON 12.9.2019 TO BE PERFORMED BY DR. HUANG ; DCM RECOMMENDS APPROVAL AT THIS
TIME; DCM WILL OBTAIN UPDATED RECORDS AFTER SURGERY AND POST OP VISIT TO DETERMINE ONGOING R/LS;

**11/18/2019 2:19 PM - CLAIM Note 17**
Claim/Event/Leave: 9291624
NoteSubject : Approved

**Lincoln/Mason 0085**

NoteSubject : Approved
Other Subject : RTW OO APR 2020
Text: [11/18/2019 - ABRAMS-WEAVER, COREY]47YOF; REP 3, CUST SVC BILLING PHYSICAL DEMANDS: SEDENTARY JD; LDW: 4.16.2019; DOD: 4.17.2019, ESTIMATED RTW: EE DOES NOT HAVE A RTW DATE; DIAGNOSIS: MVA IN 2017 AFTER SHE HAD RECENTLY HAD AN SI JOINT FUSION, EE HAS INJURIES TO PELVIS , HIPS, SI JOINT, AND LOWER BACK; MOTOR VEHICLE ACCIDENT DATE 12.18.2017; ON 4.17.2019 EE HAD A HIP PROCEDURE THAT SHE NEVER RECOVERED FROM; THE MEDICAL RECORD DOCUMENTATION AVAILABLE FOR REVIEW SUPPORTS THE REASONABLEASSESSMENT THAT THE CLAIMANT HAS HAD LESS THAN SEDENTARY CAPACITY SINCE THE TIME OF HER DOD OF 4/17/19 THROUGH THE PRESENT DUE INITIALLY TO HER RIGHT HIP PAIN AND THEN POSTOPERATIVELY DUE TO HER IMPAIRING RIGHT LOW BACK PAIN AND RIGHT BUTTOCK PAIN DUE TO SACROILIITIS AND LUMBAR FACET ARTHROPATHY WHICH IS SEVERE ENOUGH AS TO REQUIRE CHRONIC PAIN MANAGEMENT INCLUDING CONSIDERATION FOR THE USE OF A STIMWAVE SPINAL CORD STIMULATOR. THIS ASSESSMENT OF THE CLAIMANTS WORK CAPACITY WILL BE ONGOING UNTIL THE UPDATED MEDICAL RECORD DOCUMENTATION SUPPORTS THAT THE CLAIMANT S RIGHT LOW BACK PAIN AND RIGHT BUTTOCK PAIN HAS IMPROVED TO THE POINT WHERE SHE IS ABLE TO SIT, STAND, AND WALK WITHOUT DISCOMFORT; BASED ON CP REVIEW AND UPDATE FROM EE CONFIRMING UPCOMING SURGERY SCHEDULED FOR UPCOMING RIGHT HIP ARTHROSCOPY AND LABRAL RECONSTRUCTION ON 12.9.2019 TO BE PERFORMED BY DR. HUANG ; DCM RECOMMENDS APPROVAL AT THIS TIME; DCM WILL OBTAIN UPDATED RECORDS AFTER SURGERY AND POST OP VISIT TO DETERMINE ONGOING R/LS;

**11/18/2019 1:00 PM - CLAIM Note 16**
Claim/Event/Leave: 9291624
NoteSubject : Other
Other Subject : VENDOR PAYMENT
Text: [11/18/2019 - NAI, TIMOTHY]INVOICE RECEIVED ON 10/10/2019 FROM RELEASEPOINT. INVOICE# 710535-4035 IN THE AMOUNT OF $79.78 INVOICE PAID.

**11/15/2019 2:06 PM - PHONE Note 10**
Claim/Event/Leave: 9291624
NoteSubject : AP Called
Other Subject : DR. HUANG
Text: [11/15/2019 - ABRAMS-WEAVER, COREY]AMY CALLED FROM DR. HUANG OFFICE; AP ADV EE SCHEDULED FOR HER PROCEDURE ON 12.9.2019, AP ADV THAT THEY WILL NOT FILL OUT ANY STD/LTD RESTRICTIONS FORMS AND ONLY PROVIDE MEDICAL RECORDS; AP THANKED DCM;[11/18/2019 -ABRAMS-WEAVER, COREY]*THE PROCEDURES DISCUSSED WERE RIGHT HIP ARTHROSCOPY AND LABRAL RECONSTRUCTION ON 12.9.2019 PERFORMED BY DR. HUANG

**11/15/2019 1:52 PM - PHONE Note 9**
Claim/Event/Leave: 9291624
NoteSubject : Called EE
Other Subject : STATUS UPDATE;
Text: [11/15/2019 - ABRAMS-WEAVER, COREY]CALLED EE; RTN VMAIL ; ADV EE THAT DR. HUANG OFFICE WILL NOT RELEASE INFORMATION WITHOUT A HIPPA OR VERBAL RELEASE; EE STATED SHE WILL CONTACT DR. HUANG AND SPEAK WITH AMY; EE STATED THAT SHE WILL ALSO HAVE A PROCEDURE TO HAVE A SPINAL CORD STIMULATOR WITH DR. SUNG, WILL SPEAK WITH DR. SUNG ABOUT THE PROCEDURE ON 11.20.2019; EE STATED THAT AFTER THE RIGHT HIP RECONSTRUCTION SHE WILL HAVE LEFT HIP RECONSTRUCTION; ADV EE THAT DCM WILL NEED SURGERY CONFIRMATION TO APPROVE CLAIM; EE UNDERSTOOD; EE HAD NFQ; EE THANKED DCM;

**11/13/2019 2:19 PM - PHONE Note 8**
Claim/Event/Leave: 9291624
NoteSubject : Called EE
Other Subject : STATUS UPDATE
Text: [11/13/2019 - ABRAMS-WEAVER, COREY]CALLED EE; ADV EE TO CONTACT DR. HUANG OFFICE TO COMPLETE BLANK AUTH FORM, LVM ADVISING EE TO CONTACT DR. HUANG TODAY IN ORDER FOR EE TO RELEASE INFO;

**11/13/2019 2:14 PM - PHONE Note 7**
Claim/Event/Leave: 9291624
NoteSubject : Called AP
Other Subject : DR. HUANG
Text: [11/13/2019 - ABRAMS-WEAVER, COREY]CALLED DR. HUANG, DCM SPOKE WITH AMY; AP ADVISED THAT EE WILL HAVE TO COMPLETE HIPPA RELEASE BEFORE ANY INFORMATION CAN BE PROVIDED TO DCM; AP THANKED DCM FOR CALL;

**10/31/2019 10:33 AM - PHONE Note 6**
Claim/Event/Leave: 9291624
NoteSubject : Called AP
Other Subject : DR. HUANG
Text: [10/31/2019 - ABRAMS-WEAVER, COREY]CALLED DR. HUANG; INQUIRED STATUS OF POTENTIAL SURGERY SCHEDULED FOR HIP ARTHROSCOPY AND LABRAL RECONSTRUCTION ON 12/9/2019; DCM LVM FOR AP TO RETURN CALL;

**10/31/2019 10:30 AM - CLAIM Note 15**
Claim/Event/Leave: 9291624
NoteSubject : LTR to AP
Other Subject : DR. HUANG
Text: [10/31/2019 - ABRAMS-WEAVER, COREY]MED REQUEST WITH RESTRICTIONS FORM SENT TO DR. HUANG;

**10/30/2019 11:32 AM - PHONE Note 5**
Claim/Event/Leave: 9291624
NoteSubject : Called AP

**Lincoln/Mason 0086**

Other Subject : DR. HUANG
Text: [10/30/2019 - ABRAMS-WEAVER, COREY]CALLED DR. HUANG; INQUIRED STATUS OF POTENTIAL SURGERY SCHEDULED
FOR HIP ARTHROSCOPY AND LABRAL RECONSTRUCTION ON 12/9/2019; DCM LVM FOR AP TO RETURN CALL;

**10/29/2019 6:38 AM - CLAIM Note 14**
Claim/Event/Leave: 9291624
NoteSubject : Med Records Rcvd
Other Subject : DR. HUANG
Text: [10/29/2019 - ABRAMS-WEAVER, COREY]OVN; EXAM FINDINGS; DOS 7.11.2018 THRU 10.25.2019; IMAGING / COLORADO
SPRINGS ORTHO ; DR. MICHAEL HUANG

**10/28/2019 2:31 PM - CLAIM Note 13**
Claim/Event/Leave: 9291624
NoteSubject : Other
Other Subject : MANAGER REVIEW
Text: [10/28/2019 - HILL, GABRIEL]PRIOR TO MAKING A DETERMINATION ON THE CLAIM, RECOMMEND DCM REACH OUT TO
DR. HUANG OFFICE AND CONFIRM TYPE OF SX. ORTHO FFR THAT WAS COMPLETED SUGGESTED PMR FFR BUT BASED ON
UPDATED INFORMATION FROM DR. HUANG OFFICE, IT COULD SUPPORT THE CLAIM THROUGH SX

**10/28/2019 1:50 PM - CLAIM Note 12**
Claim/Event/Leave: 9291624
NoteSubject : Action Plan
Other Subject : RTW OO APR 2020
Text: [10/28/2019 - ABRAMS-WEAVER, COREY]47YOF; REP 3, CUST SVC BILLING PHYSICAL DEMANDS: SEDENTARY JD; LDW:
4.16.2019; DOD: 4.17.2019, ESTIMATED RTW: EE DOES NOT HAVE A RTW DATE; DIAGNOSIS: MVA IN 2017 AFTER SHE HAD
RECENTLY HAD AN SI JOINT FUSION, EE HAS INJURIES TO PELVIS , HIPS, SI JOINT, AND LOWER BACK; MOTOR VEHICLE
ACCIDENT DATE 12.18.2017; ON 4.17.2019 EE HAD A HIP PROCEDURE THAT SHE NEVER RECOVERED FROM; THE MEDICAL
RECORD DOCUMENTATION AVAILABLE FOR REVIEW SUPPORTS THE REASONABLEASSESSMENT THAT THE CLAIMANT HAS
HAD LESS THAN SEDENTARY CAPACITY SINCE THE TIME OF HER DOD OF 4/17/19 THROUGH THE PRESENT DUE INITIALLY
TO HER RIGHT HIP PAIN AND THEN POSTOPERATIVELY DUE TO HER IMPAIRING RIGHT LOW BACK PAIN AND RIGHT
BUTTOCK PAIN DUE TO SACROILIITIS AND LUMBAR FACET ARTHROPATHY WHICH IS SEVERE ENOUGH AS TO REQUIRE
CHRONIC PAIN MANAGEMENT INCLUDING CONSIDERATION FOR THE USE OF A STIMWAVE SPINAL CORD STIMULATOR.
THIS ASSESSMENT OF THE CLAIMANTS WORK CAPACITY WILL BE ONGOING UNTIL THE UPDATED MEDICAL RECORD
DOCUMENTATION SUPPORTS THAT THE CLAIMANT S RIGHT LOW BACK PAIN AND RIGHT BUTTOCK PAIN HAS IMPROVED
TO THE POINT WHERE SHE IS ABLE TO SIT, STAND, AND WALK WITHOUT DISCOMFORT; BASED ON CP REVIEW AND
UPDATE FROM EE CONFIRMING UPCOMING SURGERY SCHEDULED FOR 12.9.2019 DCM RECOMMENDS APPROVAL AT THIS
TIME; DCM WILL OBTAIN UPDATED RECORDS AFTER SURGERY AND POST OP VISIT TO DETERMINE ONGOING R/LS;

**10/28/2019 1:49 PM - CLAIM Note 11**
Claim/Event/Leave: 9291624
NoteSubject : Action Plan
Other Subject : RTW OO APR 2020
Text: [10/28/2019 - ABRAMS-WEAVER, COREY]47YOF; REP 3, CUST SVC BILLING PHYSICAL DEMANDS: SEDENTARY JD; LDW:
4.16.2019; DOD: 4.17.2019, ESTIMATED RTW: EE DOES NOT HAVE A RTW DATE; DIAGNOSIS: MVA IN 2017 AFTER SHE HAD
RECENTLY HAD AN SI JOINT FUSION, EE HAS INJURIES TO PELVIS , HIPS, SI JOINT, AND LOWER BACK; MOTOR VEHICLE
ACCIDENT DATE 12.18.2017; ON 4.17.2019 EE HAD A HIP PROCEDURE THAT SHE NEVER RECOVERED FROM; THE MEDICAL
RECORD DOCUMENTATION AVAILABLE FOR REVIEW SUPPORTS THE REASONABLEASSESSMENT THAT THE CLAIMANT HAS
HAD LESS THAN SEDENTARY CAPACITY SINCE THE TIME OF HER DOD OF 4/17/19 THROUGH THE PRESENT DUE INITIALLY
TO HER RIGHT HIP PAIN AND THEN POSTOPERATIVELY DUE TO HER IMPAIRING RIGHT LOW BACK PAIN AND RIGHT
BUTTOCK PAINDUE TO SACROILIITIS AND LUMBAR FACET ARTHROPATHY WHICH IS SEVERE ENOUGH AS TO REQUIRE
CHRONIC PAIN MANAGEMENT INCLUDING CONSIDERATION FOR THE USE OF A STIMWAVE SPINAL CORD STIMULATOR.
THIS ASSESSMENT OF THE CLAIMANTS WORK CAPACITY WILL BE ONGOINGUNTIL THE UPDATED MEDICAL RECORD
DOCUMENTATION SUPPORTS THAT THE CLAIMANT S RIGHT LOW BACK PAIN AND RIGHT BUTTOCK PAIN HAS IMPROVED
TO THE POINT WHERE SHE IS ABLE TO SIT, STAND, AND WALK WITHOUT DISCOMFORT; BASED ON CP REVIEW AND
UPDATE FROM EE CONFIRMING UPCOMING SURGERY SCHEDULED FOR 12.9.2019 DCM RECOMMENDS APPROVAL AT THIS
TIME; DCM WILL OBTAIN UPDATED RECORDS AFTER SURGERY AND POST OP VISIT TO DETERMINE ONGOING R/LS;

**10/28/2019 1:10 PM - PHONE Note 4**
Claim/Event/Leave: 9291624
NoteSubject : EE Called
Other Subject : STATUS UPDATE;
Text: [10/28/2019 - ABRAMS-WEAVER, COREY]EE CALLED; ADV THAT SHE HAD AN MRI DONE ON HER HIP, EE STATED THAT
HER PROVIDER WILL HAVE TO RECONSTRUCT, EE HAS SURGERY SCHEDULED FOR 12.9.2019 PERFORMED BY DR.
MICHAEL HUANG (719)632-7669; EE STATED THAT SHE HASA TON OF IMAGES PULLED SINCE THE CAR WRECK; EE STATED
PENRAD IMAGING HAS EXAM FINDINGS; 1263 LAKE PLAZA DR, SUITE 100 , COLORADO SPRINGS, 80906 (719)785-9000; EE
STATED THE LAST IMAGE IN REGARDS TO THE UPCOMING SURGERY WAS DATED 10.22.2019, EE STATED EVERYTHING IS
IN REGARDS TO HER RIGHT HIP FIRST AND WILL HAVE TO RECONSTRUCT THE HIP ; EE HOPING TO GET APPROVED FOR
SPINAL CORD STIMULATOR; EE BELIEVES THAT THERE MAY HAVE BEEN A PROBLEM WITH HER SPINAL FUSION; EE HAD
NFQ; ; EE THANKED DCM;

**10/22/2019 3:32 PM - PHONE Note 3**
Claim/Event/Leave: 9291624
NoteSubject : Called EE
Other Subject : RTN VMAIL
Text: [10/22/2019 - ABRAMS-WEAVER, COREY]CALLED EE, RETURNED VMAIL, ADV EE THAT CLAIM IS CURRENTLY UNDER CP

**Lincoln/Mason 0087**

Text: [10/22/2019 - ABRAMS-WEAVER, COREY]CALLED EE; RETURNED VMAIL; ADV EE THAT CLAIM IS CURRENTLY UNDER CP REVIEW; ADV EE THAT DCM WILL F/U ONCE CP REVIEW IS COMPLETE; DCM LVM FOR EE TO CONTACT DCM WITH ANY QUESTIONS;

**10/07/2019 2:58 PM - MDS Note**
Claim/Leave: 9291624
Episode #: 1
Nurse Name: KILCOLLUM, CASSANDRA
Service #: 16839762
Service Date: 10/07/2019
Activity: SUMMARY, FINAL CASE SUMMARY
Contact Information: CLAIMS, COREY, ABRAMS-WEAVER
Note Type: INFORMATION OBTAINED DESC
Text: PLEASE REFER TO THE MDS REVIEW IN THE DOC LIST FOR SPECIFICS. CLAIM DISCUSSED WITH CCM. UPON FURTHER REVIEW, NDC WOULD RECOMMEND A FULL FILE REVIEW WITH AN ORTHOPEDIC SPECIALIST. FILE REFERRED THROUGH CRT AND REMOVED FROM ASSIGNMENT.

**10/04/2019 10:51 AM - MDS Note**
Claim/Leave: 9291624
Episode #: 1
Nurse Name: KILCOLLUM, CASSANDRA
Service #: 16838907
Service Date: 10/04/2019
Activity: NURSE REVIEW, FILE REVIEW
Contact Information: CLAIMS, COREY, ABRAMS-WEAVER
Note Type: INFORMATION OBTAINED DESC
Text: PLEASE SEE NURSE MEMORANDUM IN THE DOC LIST

**09/30/2019 9:02 AM - CLAIM Note 10**
Claim/Event/Leave: 9291624
NoteSubject : Ref to Managed Care
Other Subject : MDS
Text: [09/30/2019 - ABRAMS-WEAVER, COREY]47YOF; REP 3, CUST SVC BILLING PHYSICAL DEMANDS: SEDENTARY JD; LDW: 4.16.2019; DOD: 4.17.2019, ESTIMATED RTW: EE DOES NOT HAVE A RTW DATE; DIAGNOSIS: MVA IN 2017 AFTER SHE HAD RECENTLY HAD AN SI JOINT FUSION, EE HAS INJURIES TO PELVIS , HIPS, SI JOINT, AND LOWER BACK; MOTOR VEHICLE ACCIDENT DATE 12.18.2017; ON 4.17.2019 EE HAD A HIP PROCEDURE THAT SHE NEVER RECOVERED FROM; EE STATED SHE HAS SEVERE LUMBAR PAIN, EE IS CURRENTLY IN BETWEEN SURGERIES, EEPLANS TO HAVE A PROCEDURE ON HER OTHER HIP; EE CURRENTLY WAITING TO BE APPROVED FOR A NERVE BLOCKBEFORE SHE CAN HAVE ANOTHER PROCEDURE; EE NOT DOING PHYSICAL THERAPY DUE TO THE SEVERITY OF HER CONDITION; EE IS STILL EMPLOYED BY CHARTER COMMUNICATIONS; EE STATED THAT DR. JEFFERY KENT IS HANDLING ALL OF HER PAPERWORK, EE HAD LOV IN AUGUST 2019, EE STATED THAT SHE TREATS AT COLORADO SPRINGS ORTHOPEDIC GROUP , DR. ROGER SUNG, DR. MICHAEL HUANG, DR. JAMES BEE, DR. TYLER BRAUN ARE ALL IN THE SAMEGROUP; BASED ON CURRENT RECORDS ON FILE DCM WOULD LIKE TO KNOW IF R/LS ARE SUPPORTIVE AS OF BBD 10.16.2019

**09/30/2019 8:54 AM - CLAIM Note 9**
Claim/Event/Leave: 9291624
NoteSubject : Med Records Rcvd
Other Subject : DR. JEFFREY KENT
Text: [09/30/2019 - ABRAMS-WEAVER, COREY]PROGRESS NOTES; DOS 7.23.2019 THRU 8.6.2019; DR. JEFFREY KENT

**09/30/2019 8:52 AM - CLAIM Note 8**
Claim/Event/Leave: 9291624
NoteSubject : Med Records Rcvd
Other Subject : DR. SUNG
Text: [09/30/2019 - ABRAMS-WEAVER, COREY]PROGRESS NOTES, EXAM FINDINGS; DOS 1.9.2019 THRU 8.21.2019; DR. ROGER SUNG

**09/16/2019 2:47 PM - PHONE Note 2**
Claim/Event/Leave: 9291624
NoteSubject : Called EE
Other Subject : STATUS UPDATE
Text: [09/16/2019 - ABRAMS-WEAVER, COREY]CALLED EE; ADV NEED FOR SIGNED AUTH IN ORDER TO OBTAIN UPDATED RECORDS; ADV NEED TO HAVE RECORDS IN ORDER TO MAKE A DETERMINATION ON THE CLAIM; ADV BLANK AUTH SENT VIA EMAIL FROM RELEASEPOINT; EE STATED SHE WOULD GET FORMS SIGNED VIA EMAIL OR PHYSICALLY HAVE THEM COMPLETED; EE HAD NFQ; EE THANKED DCM;

**09/16/2019 2:33 PM - CLAIM Note 7**
Claim/Event/Leave: 9291624
NoteSubject : Med Records Rcvd
Other Subject : DR. DAVID SALEK
Text: [09/16/2019 - ABRAMS-WEAVER, COREY]PROGRESS NOTES ; DOS 8.28.2019; SPINAL DIAGNOSTIC AND PAIN MANAGEMENT ; DR. DAVID SALEK

**09/13/2019 12:05 PM - CLAIM Note 6**
Claim/Event/Leave: 9291624

**Lincoln/Mason 0088**

~~Claim/Event/Leave: 9291624~~
NoteSubject : Other
Other Subject : PAYMENTS
Text: [09/13/2019 - BLAIR, BRENDAN]REF REJ AS CLAIM PENDED AND BBD > 15 DAYS OUT.

**09/11/2019 2:27 AM - CLAIM Note 5**
Claim/Event/Leave: 9291624
NoteSubject : Ref to Other
Other Subject : PMNT
Text: THE SCORE REFERRAL FOR PAYMENT SERVICES REFERRAL AND INITIAL PAYMENT CALCULATION HAS BEEN
RECEIVED AND ASSIGNED TO BRENDAN BLAIR.

**09/10/2019 2:28 AM - CLAIM Note 4**
Claim/Event/Leave: 9291624
NoteSubject : Ref to Other
Other Subject : PMT SVC
Text: FOR INITIAL PAYMENT CALCULATION. COMMENTS: PLEASE CALC INITIAL PAYMENT

**09/09/2019 5:32 PM - CLAIM Note 3**
Claim/Event/Leave: 9291624
NoteSubject : LTR to EE
Other Subject : N&P
Text: [09/09/2019 - ABRAMS-WEAVER, COREY]DAY 21: 09/29/2019 DAY 30: 10/08/2019 DAY 45: 10/23/2019 ; DR. JEFFREY KENT,
COLORADO SPRINGS ORTHO GROUP, SPINAL DIAGNOSTIC AND PAIN MANAGEMENT

**09/09/2019 5:25 PM - CLAIM Note 2**
Claim/Event/Leave: 9291624
NoteSubject : LTR to AP
Other Subject : MED REQUEST/ RP
Text: [09/09/2019 - ABRAMS-WEAVER, COREY]MED REQUEST SENT VIA RELEASEPOINT FOR DOS 1.1.2019 THRU PRESENT;
DR. JEFFREY KENT, COLORADO SPRINGS ORTHO GROUP, SPINAL DIAGNOSTIC AND PAIN MANAGEMENT

**09/09/2019 5:18 PM - PHONE Note 1**
Claim/Event/Leave: 9291624
NoteSubject : Initial EE Interview
Other Subject : COMPLETE
Text: [09/09/2019 - ABRAMS-WEAVER, COREY]CALLED EE TO CONDUCT INITIAL INTERVIEW & STATUS UPDATE; CONFIRMED
DOB; ADDRESS, CONTACT NUMBER:                    , EMAIL:                         JOB DESCRIPTION: REP 3, CUST
SVC BILLING PHYSICAL DEMANDS: SEDENTARY JD;LDW: 4.16.2019; DOD: 4.17.2019, ESTIMATED RTW: EE DOES NOT HAVE A
RTW DATE; DIAGNOSIS: MVA IN 2017 AFTER SHE HAD RECENTLY HAD AN SI JOINT FUSION, EE HAS INJURIES TO PELVIS ,
HIPS, SI JOINT, AND LOWER BACK; MOTOR VEHICLE ACCIDENT DATE 12.18.2017; ON 4.17.2019 EE HAD A HIP PROCEDURE
THAT SHE NEVER RECOVERED FROM; EE STATED SHE HAS SEVERE LUMBAR PAIN, EE IS CURRENTLY IN BETWEEN
SURGERIES, EE PLANS TO HAVE A PROCEDURE ON HER OTHER HIP; EE CURRENTLY WAITING TO BE APPROVED FOR A
NERVE BLOCKBEFORE SHE CAN HAVE ANOTHER PROCEDURE; EE NOT DOING PHYSICAL THERAPY DUE TO THE SEVERITY
OF HER CONDITION; EE IS STILL EMPLOYED BY CHARTER COMMUNICATIONS; EE STATED THAT DR. JEFFERY KENT (719-
278-3627) IS HANDLING ALL OF HER PAPERWORK, EE HAD LOVIN AUGUST 2019, EE STATED THAT SHE TREATS AT
COLORADO SPRINGS ORTHOPEDIC GROUP 719-632-7669, DR. ROGER SUNG, DR. MICHAEL HUANG, DR. JAMES BEE, DR.
TYLER BRAUN ARE ALL IN THE SAME GROUP, EE TREATS WITH EACH PROVIDER; EE TREATS WITH PAIN MANAGEMENT
PROVIDER DR. DAVID SALEK 719-598-7562( , COMORBIDS: EE DOES NOT HAVE ANOTHER JOB OR FORM OF INCOME; EE
RECEIVES CHILD SUPPORT FOR HER SON; EE IS NOT MARRIED, NO OTHER CHILDREN IN THE HOME; HIGHEST LEVEL OF
EDUCATION COMPLETED: ASSOCIATES DEGREES ; ADV EE OF APPLYING FOR SSDB ; ADV EE OF LTD PAYMENT
SCHEDULE; ADV EE THAT DIRECT DEPOSIT WOULD BE AVAILABLE AFTER THE INITIAL PAYMENT HAS BEEN VIA LIVE
CHECK; ADV EE THAT DCM WILL NEED UPDATED RECORDS TO SUPPORT R/LS BEYOND BBD IN ORDER FOR THECLAIM TO
BE APPROVED; OFFERED DOHERTY ASSISTANCE TO FILING FOR SSDB; EE HAD NO FURTHER QUESTIONS; EE THANKED
DCM;

**09/06/2019 12:20 PM - CLAIM Note 1**
Claim/Event/Leave: 9291624
NoteSubject : Other
Other Subject :
Text: [09/06/2019 - FALLS, JENNIFER]DCM RCVD LTD CLAIM CREATION EMAIL (SEE DOC LIST). ASSIGNED TO LTD DCM

**Lincoln/Mason 0089**

Lincoln Life Assurance Company of Boston
Disability and Life Claims Appeal
PO Box 2578
Omaha, NE 68172-9688




JOSEPH GORMAN
SHAKESHAFT-GORMAN
627 NORTH WEBER STREET, STE 1
COLORADO SPRINGS CO 80903

**Lincoln/Mason 0090**



Lincoln Life Assurance Company of Boston
Disability and Life Claims Appeal
PO Box 2578
Omaha, NE 68172-9688
Phone No.: (888) 437-7611
Secure Fax No.: (603) 430-1926

April 14, 2021

Joseph Gorman
Shakeshaft-Gorman
627 NORTH WEBER STREET, STE 1
COLORADO SPRINGS, CO 80903

RE:    Long Term Disability (LTD) Benefits
       Charter Communications, Inc.
       Claim #: 9291624
       Claimant: Jan Mason

Dear Joseph Gorman:

In response to your letter dated March 29, 2021, please find a OneDrive link for a complete copy of
Ms. Mason's LTD claim file and a copy of the LTD Policy applicable to her claim.  **Please note the
OneDrive link will expire 24 hours after it is sent to you.**

If you have any questions regarding this matter, please contact me.

Sincerely,

Mary Avrett
Appeals Consultant
Phone No.: (888) 437-7611 Ext. 16371
Secure Fax No.: (603) 430-1926

**Lincoln/Mason 0091**

# SYSTEMONE FILE COPY REQUEST FORM

| Requested By: | Mary Avrett |
|---|---|
| Date of Request: | 4/14/2021 |
| Claimant Name: | Jan Mason |

**Claim number(s)** *Please list <u>only the claims required</u> for the file copy (i.e., LTD, STD, STAT, etc.)*

| 9291624 | | | | | | |
|---|---|---|---|---|---|---|

**Required for delivery via OneDrive:**

| Recipient Email Address: | OFFICE@SHAKESHAFTANDGORMANLAW.COM |
|---|---|
| Recipient Name (if other than claimant): | |

\*All SystemOne files copies are delivered via a secure link through OneDrive. If you require delivery by another method, please inquire with Claims Support by emailing ClaimsHOAdmin@lfg.com.

**Please select one of the following options:**

☒ **Request for Administrative Record (COMPLETE FILE)**
*Administrative Record will include the following for each claim number specified above.*
- ❖ Claim Note(s)
- ❖ Coversheet(s)
- ❖ ALL documents & letters in Doc List and Correspondence Link
- ❖ Surveillance video (*obtained by CE, if any*)
- ❖ Applicable policy (*obtained by CE*)

☐ **Request for Specific Records Only**
- ☐ Claim Note(s)
- ☐ Coversheet(s)
- ☐ Specific Letters in Correspondence Link/Doc List:

| Letter Name/date | Letter Name/date |
|---|---|
| Letter Name/date | Letter Name/date |

| **Special Requests or Handling Instructions** | |
|---|---|

**Please email completed file copy request to Claims Support team:** ClaimsHOAdmin@lfg.com
- o Requests will be completed within 2 business days.
- o Please Note: secure OneDrive links expire with 24 hours.
- o The password for the secure OneDrive link, unless otherwise specified in this request, is the first two letters of the claimant's first name followed by date of birth in the format **MMDDYYYY**. The first letter of the claimant name is uppercase, and password is case sensitive. **Ex: Ja08102010.**

Lincoln/Mason 0092

**From:**Avrett, Mary
**Sent:**Wed, 14 Apr 2021 12:20:23 +0000
**To:**ClaimsHOAdmin
**Subject:**File Copy Request Form - Claim 9291624
**Attachments:**File Copy Request Form.docx, 9291624-RESPOND-OTHERTHIRDPARTY-04.14.2021.pdf

Good Morning,

Attached is a File Copy Request Form and letter to the attorney in the referenced claim.

Please let me know if you have any questions.

Thank you!

**Please note: Liberty Life Assurance Company of Boston is now a Lincoln Financial Group company.**



**Mary Avrett**
Appeals Consultant
Lincoln Financial Group

1-888-437-7611
Extension 16371
PO Box 2578
Omaha, NE 68172-9688
Mary.Avrett@LFG.com
**LincolnFinancial.com**

**Follow us on:**

   

**Lincoln/Mason 0093**

# SG

## SHAKESHAFT-GORMAN
### LAW FIRM, LLP

| | | |
|---|---|---|
| **Kenneth J. Shakeshaft** | • Attorney at Law | **Main Office** |
| **Joseph M. Gorman** | • Attorney at Law | Shakeshaft - Gorman Law Firm |
| Cindy Maddox | • Paralegal | 627 North Weber Street, Suite 1 |
| Brandy Newton | • Paralegal | Colorado Springs, CO 80903 |

March 29, 2021

**Via Facsimile: 603-334-5994**

Lincoln Financial Group
Lincoln Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7207
London, KY 40742-7207

**RE:** **Claimant:**          **Jan K. Mason**
          **Claim No.:**          **9291624**
          **Charter Communications, Inc.**

Dear Mary Avrett,

Please be advised we have been retained to represent the Claimant, Jan K. Mason, in the claim for long-term disability benefits with Lincoln Financial Group/Lincoln Life Assurance Company of Boston.

We are in receipt of Lincoln Financial Group/Lincoln Life Assurance Company of Boston correspondence of March 17, 2021 denying Jan K. Mason's claim for LTD benefits.

If Lincoln Financial Group/Lincoln Life Assurance Company of Boston asserts Jan K. Mason's claim is governed by ERISA then please provide the legal and contractual basis for this claim.

Enclosed for your file is a Consent for Disclosure of confidential information signed by Jan K. Mason.

I request a complete copy of Ms. Mason's claim file, including correspondence, medical records, etc.

Sincerely,

*Joseph M. Gorman*

Joseph M. Gorman
JMG/bn
Enclosures – Consent for Disclosure

PHONE 719.635.5886 - FAX 719.635.0966 - TOLL FREE 1.800.383.5886
WWW.SHAKESHAFTANDGORMANLAW.COM - OFFICE@SHAKESHAFTANDGORMANLAW.COM

**Lincoln/Mason 0094**

## CONSENT & AUTHORIZATION FOR DISCLOSURE OF CONFIDENTIAL INFORMATION

I, __Jan Mason_____ (SSN:_____ __DOB:_____ ) DO HEREBY CONSENT TO
THE DISCLOSURE By:

Lincoln Financial Group
Lincoln Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7207
London, KY 40742-7207

to the following:    **SHAKESHAFT & GORMAN LAW FIRM, LLP**
**627 North Weber Street, Suite 1**
**Colorado Springs, CO 80903**
**Telephone 719.635.5886**
**Facsimile 719.635.0966**
**E-mail: office@shakeshaftandgormanlaw.com**

my attorney, of the hereinafter described information, which is protected from disclosure by virtue of the provisions of Federal Regulations (42 C.F.R., Part 2), as well as Colorado Revised Statutes, and/or applicable State law. The extent or nature of the information to be disclosed is as follows:

| *All Records and Information*, including the following: | | |
| --- | --- | --- |
| ✓ Psychotherapy Notes | ✓ History & Physical | ✓ Radiology Reports |
| ✓ Mental Health Records | ✓ Consultation Reports | ✓ Alcohol & Drug |
| ✓ Entire Medical Record | ✓ Laboratory Reports | Related Records |
| ✓ Pathology Report | ✓ Radiology Films | ✓ Operation Report |
| ✓ EKG Reports | ✓ Physician's Orders | ✓ Discharge Summary |
| ✓ All insurance records | ✓ Medical Bills, Statements. Payment Information, Write-offs, | |
| ✓ Correspondence, Notes | Insurance Information and Payment Information, Balance Due, Etc. | |
| ✓ MRI, X-Ray Films, CDs, including any Electronic Images and Reports | | |

The purpose of this Consent is for evaluation and presentation of the undersigned legal and insurance claims. I make this Consent pursuant to the authority granted by me. Oral disclosure is specifically permitted pursuant to this release. *I understand that pursuant to the HIPAA Privacy Regulation a covered entity cannot condition the provision of treatment, payment of health plan benefits, or eligibility for such benefits on the signing of an authorization. No such conditioning has occurred regarding this authorization.*

I have read this consent for disclosure of confidential information and I acknowledge I am familiar with and fully understand the terms and conditions of this consent, and direct the information requested by my attorney be released forthwith. A photocopy of this document may be used in place of the original. *This authorization shall expire upon either (a) termination of attorney, Kenneth J. Shakeshaft/Joseph M. Gorman, as my legal representative or (b) one year after the date of signature.* I acknowledge I have the right to revoke this authorization in writing at any point in time, except to the extent the provider has taken action in reliance of this authorization.

I understand if the provider is covered by the HIPAA Privacy Regulation, once the provider discloses the protective health information, it may no longer be protected by the regulation. The information disclosed pursuant to the authorization may be re-disclosed by the recipient and no longer protected by the federal privacy regulations. Privacy Rule 45 C.F.R. § 164.508(c)(2).

I understand I may inspect or copy the information to be used or disclosed, that I may refuse to sign the authorization and that the use or disclosure will result in payment to the facility by a third party payor, if applicable.

DATE SIGNED: 3/29/2021 _____ CLIENT SIGNATURE: _____

**Lincoln/Mason 0095**

**Medical Record Overview**

**ReleasePoint**

**Date:**     June 17, 2020

**Patient Name:**     MASON, JAN K

**Records From:**     COLORADO SPRINGS ORTHO GROUP
4110 BRIAR GATE PKWY STE 300
COLORADO SPRINGS, CO
(719) 632-7669

**RP ID:** 6590974

**Client ID:** 9291624

**Source:** LIBMT3

**Request Scope:**  From May 1, 2020 to Present

**Req By:**

**Chart Range:**     05/01/2020 - 05/15/2020

**SSN:**

| Classification | From | To | Total | Starts on Page |
|---|---|---|---|---|
| Progress Notes | May 1 2020 | May 15 2020 | 6 | 2 |
| Non Medical/Other | | | 1 | 8 |

**Total Page Count:**     7

**Notes From QC:**

**Lincoln/Mason 0096**

Progress Notes - 05/13/2020          L96320088          (7/12) 06/17/2020 10:35:38 AM -0600

**North Campus**
4110 Briargate Parkway, Suite 300
Colorado Springs, CO 80920
Phone: 719-632-7669
Fax: 719-632-0088

**Colorado Springs Orthopaedic Group**
www.csog.net

**South Campus**
1259 Lake Plaza Drive, Suite 100
Colorado Springs, CO 80906
Phone: 719-632-7669
Fax: 719-632-0088

Patient Name: Jan K Mason, 505296          Encounter Date: **5/13/2020**          Date of Birth:

## Chief Complaint

## History of Present Illness

Jan comes in for followup with chronic back pain. Dr. Huang repaired her labrum in April 2019. This failed and then she had a full reconstruction in December. She is now in rehabilitation and still has pain in the hip as well as across her lower back in both sacroiliac (SI) joints. She has had the right SI joint fusion and actually felt good up until her accident. The left side has been injected and she never had as good a response as the right.

## Medical History

**Medical Conditions:** Hypertension
**Surgical History:** Tubal ligation, Rhinoplasty
**Orthopedic Surgical History:** Rt SI Joint Fusion, Labral Repair, Labral Reconstruction
**Current Medications:** Claritin 10 mg tablet 1 oral, Ambien 5 mg tablet 1 oral, metoprolol succinate ER 50 mg tablet, extended release 24 hr 1 Tb24 oral, losartan 50 mg tablet 1 oral, Junel FE 1/20 (28) 1 mg-20 mcg tablet oral
**Medication and Allergic Reactions:** No known allergies
**Family History:** No significant family history.
**Personal and Social History:**
The patient does not smoke or use tobacco products. The patient does not use marijuana, CBD products, or illicit drugs. The patient currently does not consume alcohol. She is temporarily disabled.

## Review of Systems

**Constitutional:** The patient denies any unexplained weight loss, weight gain, fever, chills or fatigue.
**Eyes:** The patient denies any corrective lenses, blurred or double vision, eye pain, redness or watery eyes.
**Ear/Nose/Throat:** The patient denies any headaches, difficulty swallowing, nose bleeds, ringing in ears or earaches.
**Cardiovascular:** The patient denies any chest pain, palpitations, fainting or murmurs.
**Allergy:** The patient denies any allergic reactions to foods or the environment.
**Respiratory:** The patient denies any shortness of breath, wheezing, chronic coughing, tightness, inspiration pain or snoring.
**Gastrointestinal:** The patient denies any heartburn, nausea, vomiting, constipation, diarrhea, or bloody/tarry stools.
**Genitourinary:** The patient denies any difficult or painful urination, frequent urination or blood in urine.
**Musculoskeletal:** Admits joint pain and instability.
**Skin:** The patient denies skin changes, poor healing, rash, itching or redness.
**Neurological:** The patient denies numbness, tingling, unsteady gait, dizziness, tremors or seizures.
**Psychiatric:** The patient denies nervousness, anxiety, depression or hallucinations.
**Hematological:** The patient denies bleeding or bruising easily.

**ELECTRONICALLY SIGNED BY Roger Sung, M.D.**

1 of 3

**Lincoln/Mason 0097**

**Patient Name:** Mason, Jan K
**DOB:**

**Endocrine:** The patient denies excessive thirst, excessive urination or intolerance to heat and cold.

**Vital Signs:** Height: 5ft 8.00in, Weight: 185lbs BMI 28.13

## Lumbar Spine Examination

**1. Constitutional:**
• Vitals: Height 5 feet 8 inches, weight 185 pounds, respirations not labored.
• General appearance: Well developed, well nourished, with normal grooming.

**2. Psychiatric**
• Patient is oriented to time, place, person.
• Patient's memory is within normal limits.
• Mood and affect are appropriate.

**3. Skin**
• General inspection shows no visible rashes, lesions, ulcers.
• Palpation shows no tightness, induration, nodules.

**4. ENT**
• External inspection reveals normal appearance and no visible scars.
• Hearing is normal to varying sounds.

**5. Musculoskeletal**
• Station and gait are normal.
• Motor strength is intact with no obvious atrophy.
• Spine has normal ROM without crepitation. There is normal alignment and no pain to palpation.

**6. Neurologic**
• Reflexes are intact.
• Sensation is intact to light touch.

The physical examination includes the above body areas and defines normal parameters. For this patient the above detailed examination is within normal limits for all listed elements with exceptions and pertinent additional positive findings listed below:

She is tender over both SI joints.

**Imaging Orders:** 4 views of the lumbar spine were ordered, obtained and interpreted from an orthopedic standpoint.
**Lumbosacral Spine Xrays:** Imaging was reviewed once again.
## Assessment and Plan:

**Diagnosis Codes:**
M46.1 Sacroiliitis, not elsewhere classified, G89.4 Chronic pain syndrome, M54.30 Sciatica, unspecified side
**Impression:**
1. Chronic pain syndrome and sciatica.

**ELECTRONICALLY SIGNED BY Roger Sung, M.D.**

2 of 3

**Lincoln/Mason 0098**

Progress Notes - 05/15/2020          I96320088          (9/12) 06/17/2020 10:36:56 AM -0600

**Patient Name:** Mason, Jan K
**DOB:**

2. Status post right sacroiliac (SI) joint fusion, September 2017.
3. Status post motor vehicle accident (MVA), 12/18/2017.
4. Bilateral sacroiliitis.

**Treatment Plan:**
We talked about spinal cord stimulation and we talked about the left SI joint. I reviewed her CT of her pelvis after the surgery and there looks like there is a fusion across the SI joint on the right. At this point, we are going to proceed with a lidocaine-only injection in the left SI joint and see if this helps with her pain. I also talked to her about considering the stimulator as it can mask a lot of these symptoms.
CC: Jeffrey Kent, MD
David Salek, MD

**Clinical Quality Reporting:**
The patient has not received the influenza vaccination.

Electronically signed by: Roger Sung, M.D.
Date: 5/15/2020 Time: 5:37 AM

CC: A copy of the office visit notes will be forwarded to the patient's referring physician. Copies sent along with cover letter sent to the patient's primary care physician.

ELECTRONICALLY SIGNED BY Roger Sung, M.D.

Lincoln/Mason 0099

Progress Notes - 05/01/2020          196320088              (10/12) 06/17/2020 10:37:20 AM -0600



**North Campus**
4110 Briargate Parkway, Suite 300
Colorado Springs, CO 80920
Phone: 719-632-7669
Fax: 719-632-0088

**Colorado Springs
Orthopaedic Group**
www.csog.net

**South Campus**
1259 Lake Plaza Drive, Suite 100
Colorado Springs, CO 80906
Phone: 719-632-7669
Fax: 719-632-0088

Patient Name: Jan K Mason, 505296          Encounter Date: 5/1/2020          Date of Birth:

## Chief Complaint

## History of Present Illness

Jan Mason is a 47 year old female who presents today almost 5 months status post right hip labral reconstruction using allograft from 9:00 to 4:00 location, chondroplasty, debridement/shaving acetabulum, labral repair at 4:00 and 9:00 location, arthroscopic acetabuloplasty, arthroscopic femoroplasty, osteoplasty to remove cam lesion, synovectomy, capsular closure/plication performed on 12/09/2019. Since her last visit, she has been working with Mark Phillips, PT for continued sacroiliac pain, gluteal pain. She actually reports that her symptoms are worsening and now radiating more laterally and anteriorly towards the hip itself. She does continue to have significant posterior pain where she has had previous sacroiliac surgery by Dr. Sung. At the last visit, we had asked her to revisit with Dr. Sung but she was unable to do so due to the Corona virus situation. She has been working on walking around the block as she has not been able to get to pool therapy because of the closures throughout the city. She has difficulty going up and downstairs and even lying supine in bed. Her pain is rated at 8-9/10. She has been using rest, activity modification, physical therapy without benefit. She tried anti-inflammatories and even Celebrex without benefit and this caused significant gastrointestinal irritation. She continues to use crutches for weightbearing assistance. She denies nausea, vomiting, fever, chills, short of breath, chest pain or abdominal pain.

Date of Onset: December, 2017

## Medical History
**Medical Conditions:** Hypertension
**Surgical History:** Tubal 1994; Rhinoplast 2008
**Orthopedic Surgical History:** Right SI Fusion Right hip labral reconstruction
**Current Medications:** Claritin 10 mg tablet 1 oral, Ambien 5 mg tablet 1 oral, metoprolol succinate ER 50 mg tablet,extended release 24 hr 1 Tb24 oral, losartan 50 mg tablet 1 oral, indomethacin 50 mg capsule 1 by mouth BID Take with food.
**Medication and Allergic Reactions:** No known allergies
**Family History:** No significant family history
**Personal and Social History:**
Patient has children, denies tabacco, marijuana, and alcohol use

## Review of Systems

Patient denies fevers, chills, chest pain, shortness of breath, abdominal pain, nausea, diarrhea, constipation. Pertinent positives for review of systems are listed in HPI above, otherwise negative.

ELECTRONICALLY SIGNED BY Michael Huang, M.D.

1 of 3

**Lincoln/Mason 0100**

Progress Notes - 05/01/2020          |96320088          (11/12) 06/17/2020 10:38:04 AM -0600

**Patient Name:** Mason, Jan K
**DOB:**

**Vital Signs:** Height: 5ft 8.00in, Weight: 190lbs BMI 28.89

## General Exam:
**Constitutional:** Patient is adequately groomed with no evidence of malnutrition.
**Skin:** There are no rashes, ulcerations or lesions in the regions examined.
**Mental Status:** The patient is oriented to time, place and person. The patient's mood and affect are appropriate.
**Lymphatic:** The lymphatic examination bilaterally reveals all areas to be without enlargement or induration.
**Vascular:** Examination reveals no swelling or calf tenderness. Peripheral pulses are palpable and 2+.
**Neurological:** The patient has good coordination. There is no weakness or sensory deficit. Deep tendon reflexes are intact.

## Right Hip/Pelvis Examination
Patient is alert and oriented to time, place, medical situation without evidence of distress. Surgical wounds are well healed without signs of infectiontributions. Gait is antalgic. The patient is able to fire EHL, tibialis anterior, gastrocsoleus, peroneals. Dorsalis pedis pulse, 2+. There is no calf swelling or tenderness. Homans sign is negative. No evidence of DVT. Hip flexion to 115°, external rotation to 45°, internal rotation to 5°. Tenderness to palpation over the lateral hip and over the sacroiliac joint.

## Additional Exams:
**Left Lower Extremity:**Examination of the left lower extremity does not show any tenderness, deformity or injury. Range of motion is unremarkable. There is no gross instability. Strength and tone are normal.

**Diagnostic Test Findings:** X-RAYS, BILATERAL HIP, CSOG, 6/4/19: X-rays ordered, performed, and interpreted previously and reviewed today include AP pelvis, bilateral Dunn views, false profile, and cross table lateral views of the BILATERAL hip. They show well-preserved femoroacetabular joint spacing. Tonnis Grade 0. No evidence of fracture or dislocation. No evidence of avascular necrosis or heterotopic ossification in the right hip. On the left hip, there is evidence of femoroacetabular impingement, cam type with alpha angle measuring 63 degrees.

MR ARTHROGRAM, LEFT HIP, 1/30/2020, PENRAD: Focal Cam deformity of the anterior left femoral head neck junction with associated anterior/anterosuperior labral base tear. Small right hip joint effusion.

## Assessment and Plan:
**Diagnosis Codes:**
M24.151 Other articular cartilage disorders, right hip Right
M46.1 Sacroiliitis, not elsewhere classified Right
**Impression:**
1. status post right hip labral reconstruction using allograft from 9:00 to 4:00 location, chondroplasty, debridement/shaving acetabulum, labral repair at 4:00 and 9:00 location, arthroscopic acetabuloplasty, arthroscopic femoroplasty, osteoplasty to remove cam lesion, synovectomy, capsular closure/plication this was performed on 12/09/2019.
2. Left hip pain - possible labral tear/FAI
3. Bilateral sacroiliitis with history of previous right SI joint fusion

## Treatment Plan:
I reviewed the clinical and previous radiographic documentation with the patient. She we also went back and looked at her arthroscopic photos from her right hip surgery performed in December 2019. She had a revision at that time with significant labral damage which was what indicated the labral reconstruction. In addition, she had small area of chondral damage which could be contributing to some of her pain. However, most of her symptomatology seems to be coming from the SI

**ELECTRONICALLY SIGNED BY Michael Huang, M.D.**

Lincoln/Mason 0101

Progress Notes - 05/01/2020          I96320088          (12/12) 06/17/2020 10:38:56 AM -0600

**Patient Name:** Mason, Jan K
**DOB:**

joint and the gluteal muscular complex. She has not been able to control this with typical conservative management options. She has asked me about the possibility of hip replacement which is somewhat reasonable to consider but she is rather young to go forward with that. Prior to making any decision on possible hip replacement, I would recommend that she circle back with Dr. Sung to get his opinion regarding whether or not the SI joint could be improved over this area could be improved. She is on board with this plan. We will wait to see what he has to say about it. In the meantime, patient will · continue with physical therapy. All questions were answered.
Patient was provided with patient education on NSAIDs.
The patient is instructed to return if pain or symptoms arise.

**Clinical Quality Reporting:**
A stretching regimen was recommended to the patient. A strength training regimen was recommended to the patient. The patient was encouraged to exercise.

Electronically signed by: Michael Huang, M.D.
Date: 5/1/2020 Time: 12:44 PM

CC: Copies sent along with cover letter sent to the patient's primary care physician.

**ELECTRONICALLY SIGNED BY Michael Huang, M.D.**

3 of 3

Lincoln/Mason 0102

Non Medical/Other                    L96320088              (1/12) 06/17/2020 10:32:20 AM -0600



## Colorado Springs Orthopaedic Group



Date:    06/17/2020 10:31:20 AM

Subject:    COMPLETED RECORD REQUEST-MED REC-LINC

---

To:    LINCOLN FINANCIAL GROUP

Organization:

Fax Number:    12138676134

Phone Number:

From:    Jackson, Suzette

Organization:    Colorado Springs Orthopaedic C

Fax Number:

Phone Number:

Email:

Number of Pages: 11

---

Comments:

RP NO: 6590974

FAX CONFIDENTIALITY STATEMENT

The information contained in this facsimile transmission is intended solely for the addressee(s) named above and is privileged and/or confidential. If the reader of this message is not the intended recipient or the person responsible to deliver it to the intended recipient, you are prohibited from reading or disclosing the information in this transmission. Any examination, use, dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone for instructions.

Sent by Multi-Tech Systems
FaxFinder

---

If you received this fax in error, or would like to opt-out, please call  719-632-7669 , fax  719-632-0088
or email  info@csog.net

**Lincoln/Mason 0103**

# Quality Assurance Report

## Request Information

Report Date:    June 17, 2020                                    **RP ID:** 6590974

Patient Name:   MASON, JAN K

Provider Name: COLORADO SPRINGS ORTHO GROUP

## Quality Assurance Information

Scope Requested: **From May 1, 2020 to Present**

Special Request:
    Medical records from Dr. Huang & Dr. Sung - Seen By:
    COLORADO SPRINGS ORTHO GROUP

Special Request Included? NO

Secondary Request Confirmed? NO

QC Notes:

Chart Reviewed By:  DW

**Lincoln/Mason 0104**

Lincoln Life Assurance Company of Boston
Disability and Life Claims
PO Box 2578
Omaha, NE 68172-9688

MS  JAN MASON

**Lincoln/Mason 0116**



Lincoln Life Assurance Company of Boston
Disability and Life Claims
PO Box 2578
Omaha, NE 68172-9688
Phone No.: (888) 437-7611
Secure Fax No.: (603) 430-1926

March 18, 2021

Ms. Jan K. Mason

RE:    Long Term Disability (LTD) Benefits
       Charter Communications, Inc.
       Claim #: 9291624

Dear Ms. Jan Mason:

Attached is a copy of correspondence e-mailed to you on March 17, 2021.

If you have any questions regarding this matter, please contact me.

Sincerely,

Mary Avrett
Appeals Consultant
Phone No.: (888) 437-7611 Ext. 16371
Secure Fax No.: (603) 430-1926

Attachments:    9291624-DENY-FREEFORM-03.17.2021

Lincoln/Mason 0117

| | |
|---|---|
| From: | LFGNotifications@LFG.com |
| Sent: | Wednesday, March 17, 2021 3:29:01 PM |
| To: | |
| CC: | |
| BCC: | |
| Subject: | [Send Secure]Charter Communications, Inc. Claim No. 9291624 Jan Mason |
| Attachments: | sbigxm39sdyu7h1uebdo_10127548.pdf; |

This notification contains important information regarding a claim with Lincoln Financial Group company.
THIS IS AN AUTOMATED EMAIL. PLEASE DO NOT RESPOND. You may use the contact information in
the attached letter to respond if needed.

**Lincoln/Mason 0118**



Lincoln Life Assurance Company of Boston
Disability and Life Claims
PO Box 2578
Omaha, NE 68172-9688
Phone No.: (888) 437-7611
Secure Fax No.: (603) 430-1926

March 17, 2021

Ms. Jan K. Mason

RE:     Long Term Disability (LTD) Benefits
        Charter Communications, Inc.
        Claim #: 9291624

Dear Ms. Jan Mason:

We reviewed your appeal request for Long Term Disability ("LTD") benefits and maintain the decision to deny benefits beyond July 20, 2020.

**Initial Claim Decision**

You submitted a claim for your absence from work as of April 17, 2019, as a result of back and hip pain. LTD benefits were approved from October 16, 2019 through July 20, 2020. Benefits beyond July 20, 2020 were denied as the evaluation concluded you were no longer disabled as defined by the Policy.

The basis for the decision was outlined in a letter dated July 21, 2020. You were provided an opportunity to request an appeal review of the denial, stating the reasons why you felt your claim should not have been denied, and submit additional information to support your claim. Specifically, you were advised to submit the following information:

> *Office treatment notes, diagnostic test results, prescribed medications, procedure reports, exam findings, and specific restrictions/limitations given beyond July 20, 2020, that support your inability to perform one or more of the material and substantial duties of your Own Occupation.*
>
> *You should also provide any additional information that you feel will support your claim.*

**Appeal**

In your letter of appeal dated July 21, 2020, you indicated you were submitting a written request for review. You advised you have not been released by your surgeon and are completing six additional weeks of physical therapy so you can gain strength in your right hip to move forward with left SI joint fusion, left labral reconstruction and possible right hip replacement. You indicated you were being referred to an additional spine surgeon for continued and ongoing lumbar spine issues

**Lincoln/Mason 0119**

dating back to December of 2017.

In support of your claim, you submitted the following information:

- Form Major Dysfunction of a Weight Bearing Joint completed by Dr. Kent dated July 1, 2020;
- The Pelvis – Posterior View;
- Request for Reconsideration dated June 24, 2020;
- Medical records from Colorado Springs Orthopedic Group dated February 6, 2020 through August 19, 2020;
- Medical records from UC Health Aspen Creek Medical dated October 7, 2019 through July 1, 2020;
- Medical records from Fyzical Therapy and Balance Centers dated February 4, 2020 through August 20, 2020;
- Medical records from Dr. Salek dated February 12, 2020 through June 11, 2020;
- UpRight MRI of Colorado report dated July 21, 2020;
- Letter dated August 31, 2020 from Dr. Kent;

## Appeal Evaluation

During the claim evaluation of ongoing benefits, your claim was reviewed by Dr. David A. Monti, a physician Board Certified in Physical Medicine and Rehabilitation. Dr. Monti indicated you were a 48 -year-old female who had chronic pain in the right back and hip region. Dr. Monti stated in September of 2017, you underwent a right sacroiliac joint fusion and initially did very well postoperatively with excellent resolution of pain. Dr. Monti advised you were involved in a motor vehicle collision in December of 2017 and experienced exacerbation of you right low back, right buttocks, right groin and right hip pain.

Dr. Monti indicated you continued to work and on April 17, 2019 underwent arthroscopic acetabuloplasty/femoroplasty with labral repair. Dr. Monti advised you continued to have pain the right buttocks and right low back but had some decreased hip pain. Dr. Monti advised on December 9, 2019 you underwent labral reconstruction. Dr. Monti indicated by February you had improved, were off crutches but still using a cane. Dr. Monti stated by March 12, 2020, you did very well after the right hip surgery and would have no restrictions.

Dr. Monti advised in December of 2019, you also had left hip pain that did not worsen over time and thus any surgery for your left hip pain was put on hold.

Dr. Monti indicated you continued to have pain in the right low back and buttocks, but there was no evidence that there was a nonunion at the sacroiliac joint. Dr. Monti stated at one point you did have a spinal cord stimulator trial which worked, but you did not want permanent placement. Dr. Monti advised you were currently looking again into a possible spinal cord stimulator.

Dr. Monti advised your primary impairing diagnoses based on the medical records was: sacroiliitis; chronic pain syndrome; status post right sacroiliac joint fusion; other cartilage disorder right hip; other cartilage disorder left hip; low back pain; intervertebral disc disorder with radiculitis; lumbar intervertebral disc disorder; and status post labral repair and then reconstruction right hip.

**Lincoln/Mason 0120**

Dr. Monti concluded you had no restrictions or limitations related to your right hip pain beyond March 12, 2020. In addition, Dr. Monti advised because the findings in the low back are chronic and there was nothing new to suggest more impairment, you had no restrictions or limitations related to low back pain from January 20, 2020 to the current time and ongoing.

Dr. Monti attempted to discuss your ongoing treating status with Dr. Sung and Huang. Dr. Monti spoke to the nurse for both Dr Sung and Dr. Huang on July 16, 2020. She advised Dr. Huang had not seen you since May 1, you were on a follow-up as needed basis and you had been released without any specific restrictions and limitations. The nurse advised you were recently seen by Dr. Sung and released from his care and placed in a course of physical therapy. She advised there was a recommendation for possible left sided sacroiliac joint fusion versus spinal cord stimulator. The nurse advised you were released with no restrictions and limitations and to follow-up with Dr. Huang for your right hip pain.

During the review of your appeal, your claim was reviewed by Dr. Daniel Fung, an independent physician Board Certified in Physical Medicine & Rehabilitation and Pain Medicine. Dr. Fung advised the medical evidence supports the diagnoses of femoroacetabular impingement bilaterally, right hip labral tear, lumbar degenerative disc disease, lumbar spondylosis, and bilateral sacroiliitis.

Dr. Fung indicated the MRI findings of the lumbar spine on July 21, 2020 included degenerative disc disease, degenerative central spinal stenosis, and degenerative neuroforaminal stenosis. Dr. Fung noted the findings were all mild to moderate in degree, there was no obvious impingement of exiting nerve roots and no visualized myelomalacia. Dr. Fung advised you had two subsequent medical visits, one with Dr. Huang and one with Dr. Sung for your worsening pain and symptomatology. Dr Fung indicated there was no new physical examination findings and the most significant and consistent physical examination findings included tenderness and decreased range of motion. Dr. Fung advised you did not have any neurologic deficits and no new restrictions were given by either physician.

Dr. Fung stated while you have subjective complaints of pain and falls, there was a lack of function deficits on physical examination to support the need for restrictions. Dr. Fung concluded, based on the provided medical documentation since July 21, 2020, there was no evidence precluding you from sustained occupational functioning on a full-time basis.

Dr. Fung attempted to discuss your ongoing treating status with Dr. Sung/Dr. Huang on September 4, 2020 and September 10, 2020, leaving messages in Kirsten's general office voicemail. Dr. Fung did not receive a return call. Dr. Fung also attempted to discuss your ongoing treating status with Dr. Kent on September 4, 2020, speaking to Jennifer and leaving a message for a return call. On September 9, 2020, Dr. Kent returned the call and left a message with an alternate number. On September 10, 2020, Dr. Fung attempted to reach Dr. Kent at the alternate number, leaving a message in voice mail. Dr. Fung did not receive a return call.

On September 18, 2020, we faxed copies of Dr. Fung's review to Dr. Huang, Dr. Sung and Dr. Kent, with copies to you, asking that they review the report and provide any comments they wished to have considered, detailing specific areas of disagreement and providing medical documentation to support their position. We asked they provide their response by October 3, 2020.

Lincoln/Mason 0121

On September 25, 2020, we emailed you a letter which included a copy of Dr. Fung's clinical review performed in connection with your request for reconsideration. You were given an opportunity to review and respond with any additional information you would like considered before a final determination was made on your appeal. We asked you provide your response by October 16, 2020.

On September 28, 2020 at your request, we refaxed the report to Dr. Huang, Dr. Sung and Dr. Kent. In addition, at your request, the report was also faxed to Dr. Salek and Dr. Kudron. We did not receive a response from Dr. Huang, Dr. Sung, Dr. Salek or Dr. Kudron.

We received the following additional documentation:

- Medical record from Dr. Kudron dated September 4, 2020;
- Medical record from Dr. Salek dated September 8, 2020;
- Medical record from Colorado Springs Orthopedic Group dated November 10, 2020;
- Letters dated August 31, 2020 and November 30, 2020 from Dr. Kent;
- Medical record by UCHealth – Dr. Kent dated August 19, 2020 and October 14, 2020;
- Statement by you dated November 26, 2020;
- Letter dated December 7, 2020 from Marc Phillips, PT, DPT, OCS;

In order to insure a full and fair review of your claim, your file with the updated information was reviewed by Dr. Eric Kerstman, an independent physician Board Certified in Physical Medicine and Rehabilitation and Pain Medicine. Dr. Kerstman spoke to Dr. Kent on December 18, 2020 and relayed the conversation as follows:

> *I spoke with Jeffrey Kent, M.D. who said that he is the claimant's primary care physician. He said that he last evaluated the claimant on 10/22/2020, and that the claimant has chronic pain involving her low back and hips. He said that he has not addressed the claimant's work capacity, and that he has not outlined any work restrictions or limitations for the claimant. He said that the claimant is otherwise healthy and that she has no general medical conditions or medication side effects that would affect her work capacity. Dr. Kent said that he would defer to the claimant's orthopedist and pain management physician regarding her work capacity, restrictions, and limitations. He said that he expects to see the claimant for her follow-up next month. I reached consensus with Dr. Jeffrey Kent.*

In addition, Dr. Kerstman spoke to Marc Phillips, physical therapist and relayed the conversation as follows:

> *I spoke with Physical Therapist Marc Phillips, who said that the claimant has been under his care for the treatment of chronic low back pain and right hip pain. He said that the claimant was last treated on 11/3/2020, and that she plans to resume physical therapy in January of 2021. He said that the claimant was making progress with her hip pain, but that she still has severe low back pain. He said the she has a Trendelenburg gait pattern requiring the use of a cane secondary to pain and bilateral hip weakness. He said that the claimant has approximately 3+/5 weakness of both hips, and has had mild improvement in hip strength. He said that in his opinion, the claimant would have difficulty performing*

**Lincoln/Mason 0122**

*prolonged sitting, standing, and walking due to the severity of her pain, and that she
requires additional physical therapy, and possibly surgical treatment to obtain significant
improvement in her functional capacity. I reached consensus with Physical Therapist Marc
Phillips.*

Dr. Kerstman advised the diagnoses supported by the medical evidence are: chronic low back pain;
chronic bilateral hip pain; history of a right sacroiliac joint fusion; history of a right hip labral reconstruction;
femoroacetabular impingement of both hips; left acetabular labrum tear; lumbar spine spondylosis; and
hypertension.

Dr. Kerstman indicated taking into consideration the entire clinical picture, including standards of
care and evidence based medicine, you have the following restrictions and limitations for the period
July 21, 2020 to the present based on your conditions of chronic low back pain, chronic bilateral hip
pain, history of a right sacroiliac joint fusion, history of a right hip labral reconstruction,
femoroacetabular impingement of both hips, a left acetabular labrum tear, and lumbar spine
spondylosis due to associated pain and decreased mobility:

*The claimant can lift, carry, push, and pull up to a maximum of 10 pounds occasionally.
The claimant can sit for 1 hour at a time for a total of 6 hours in an 8 hour workday, with
the ability to change positions from sitting to standing or walking as needed for comfort.
The claimant can stand for 30 minutes at a time for a total of 2 hours in an 8 hour
workday.
The claimant can walk for 30 minutes at a time for a total of 2 hours in an 8 hour
workday.
The claimant can occasional bend, kneel, squat, stoop, and climb stairs,
No climbing ladders, exposure to unprotected heights, or operating dangerous machinery
while taking muscle relaxant medications or any other potentially sedating medications.
No restrictions or limitations in the use of the upper extremities to perform reaching,
handing, grasping, fingering, or keyboarding.*

In addition, Dr. Kerstman advised;

*The above noted restrictions and limitations are supported until the claimant undergoes
further treatment with a spinal cord stimulator and/or a possible right total hip
arthroplasty. If this has not occurred by 02/10/2021, the claimant should be reevaluated at
that time.*

*The medical rationale for the R/L is to prevent exacerbation of the claimant's symptoms
and to prevent further injury.*

Dr. Kerstman advised you are capable of full-time sustained occupational functioning within the
restrictions and limitations set forth above.

Dr. Kerstman was asked to address the restrictions indicated by Dr. Kent in his letter dated August
21, 2020.  Dr. Kerstman advised:

*No. I do not agree that the claimant has ongoing debility and that she needed to remain on
long-term disability throughout this year with reassessment at the end of the year. The*

**Lincoln/Mason 0123**

*abnormalities on physical examination and diagnostic testing are not of a severity to support that the claimant would be precluded from performing full-time work within the above noted restrictions and limitations.*

Dr. Kerstman was also asked to address Mr. Phillips restrictions.  Dr. Kerstman advised:

*No. I do not agree that the claimant would not be able to perform any occupation in any capacity since December of 2016 to the present. The abnormalities on physical examination and diagnostic testing are not of a severity to support that the claimant would be precluded from performing full-time work within the above noted restrictions and limitations.*

On January 5, 2021, copies of Dr. Kerstman's report were emailed to Dr. Kent and Mr. Smith with a copy to you, requesting they review the report and provide any comments they wished to have considered, including if they disagreed with the report, to provide specific areas with which they disagreed and provide medical documentation to support their position.  We asked that they respond by January 20, 2021.

In response, we received the following:

- Surgery Information  Form dated February 22 and email from you advising of hip surgery scheduled for February 22, 2021;
- Functional Capacity Evaluation by Mr. Phillips dated January 20, 2021;
- Cov-19 Screening and Clearance;
- Medical record from Colorado Springs Orthopedic Group dated  December 4, 2021 through January 19, 2021;
- Operative Report dated February 22, 2021.

The additional documentation was forwarded to Dr. Kerstman for review.  Dr. Kerstman advised he spoke to Dr. Bron on March 8, 2021 and relayed their conversation as follows:

*I spoke with Dr. Bron who said that the claimant underwent a right total hip replacement approximately 2 weeks ago. He said that she should remain off work in any capacity for approximately 6 weeks. Dr. Bron said that the claimant should be able to perform sedentary to light physical demand level work approximately 6 weeks postoperatively depending on her recovery. He said that he did not place the claimant on any restrictions or limitations prior to her surgery. He said that she is currently ambulating with a walker and is taking Oxycodone as needed for pain.*

Dr. Kerstman advised in his prior report you would have restrictions from July 21, 2020 to the present of:

*The claimant can lift, carry, push, and pull up to a maximum of 10 pounds occasionally. The claimant can sit for 1 hour at a time for a total of 6 hours in an 8 hour workday, with the ability to change
positions from sitting to standing or walking as needed for comfort.
The claimant can stand for 30 minutes at a time for a total of 2 hours in an 8 hour workday.*

6  of 10

**Lincoln/Mason 0124**

*The claimant can walk for 30 minutes at a time for a total of 2 hours in an 8 hour
workday.*
*The claimant can occasional bend, kneel, squat, stoop, and climb stairs.*
*No climbing ladders, exposure to unprotected heights, or operating dangerous machinery
while taking muscle relaxant medications or any other potentially sedating medications.*

Dr. Kerstman noted the restrictions and limitations were supported until you underwent further
treatment with a spinal cord stimulator and/or possible right total hip arthroplasty.

Dr. Kerstman was asked to review the updated documentation and indicate if you would have had
sustained occupational functioning on a full time basis for the period July 21, 2020 to the present.
Dr. Kerstman concluded:

> *Based on my review of the provided documentation, the above noted resections and
> limitations are supported from 7/21/2020 until the date of right total hip arthroplasty
> performed on 2/22/2021. The claimant would have been capable of sustained occupational
> functioning on a full time basis for the period 07/21/20 until 02/22/2021. The claimant
> would be unable to work in any capacity as of 2/22/2021 to the present secondary to the
> right total
> hip arthroplasty performed on 2/22/2021. The claimant's functional capacity should be
> evaluated approximately 6 weeks postoperatively.*

> *As per my conversation with the treating provider, Orthopedist Tyler Bron, M.D., he said
> that the claimant underwent a right total hip replacement approximately 2 weeks ago. He
> said that the claimant should remain off work in any capacity for approximately 6 weeks.
> Dr. Bron said that the claimant should be able to perform sedentary tol light physical
> demand level work approximately 6 weeks postoperatively depending on her recovery.*

Your claim was reviewed by a vocational consultant, who completed an occupational analysis in
order to identify the material and substantial duties of your occupation of Rep 3, Customer Service
Billing as it is normally performed in the national economy. The analysis showed your occupation is
performed at the sedentary level with constant sitting, occasional reaching, handling, fingering,
standing and walking.

Our role in reviewing your file is to determine whether your medical condition and the medical
documentation contained in your file supports you are unable to perform the material and substantial
duties of your own occupation beyond July 20, 2020. We are not required to ensure the availability
of this occupation or that you return to active employment with your former employer in the same
or different position.

It is important to clarify that the existence of a medical condition/diagnosis in and of itself does not
equate to eligibility for disability benefits. The focus of our assessment was not whether or not a
condition exists; but rather whether or not impairment exists that would preclude you from
performing the duties of any occupation.

We are aware your claim for Social Security Disability Income benefits is being processed. It
should be noted any ruling by the Social Security Administration, in and of itself, does not
determine entitlement to benefits under the terms and conditions of Charter Communications, Inc.'s

**Lincoln/Mason 0125**

Long Term Disability Policy.

## Conclusion

We conducted a thorough and independent review of your entire claim. In summary, we acknowledge you may have continued to experience some symptoms associated with your condition beyond July 20, 2020. However, the information does not contain physical exam findings, diagnostic test results or other forms of medical documentation supporting your impairments and symptoms remained of such severity, frequency and duration they resulted in restrictions or limitations rendering you unable to perform the duties of your occupation after that date.

Having carefully considered all of the information submitted in support of your claim, our position remains proof of your continued disability in accordance with the Policy provisions after July 20, 2020 has not been provided. While there is a period of disability after your hip procedure on February 22, 2021, that is well after your benefits ended. Therefore, no further benefits are payable.

This claim decision reflects an evaluation of the claim facts and Policy provisions.

## Policy Provisions

In order to continue receiving benefits, you must satisfy the requirements of all Policy provisions that state, in part:

*"**Disability**" or "**Disabled**", with respect to Long Term Disability, means:*
*1. For persons other than pilots, co-pilots, and crewmembers of an aircraft:*
*i. that during the Elimination Period and the next 24 months of Disability the Covered Person, as a result of Injury or Sickness, is unable to perform the Material and Substantial Duties of his Own Occupation; and*
*ii. thereafter, the Covered Person is unable to perform, with reasonable continuity, the Material and Substantial Duties of Any Occupation.*
*2. With respect to Covered Persons employed as pilots, co-pilots and crewmembers of an aircraft:*
*"**Disability**" or "**Disabled**" means as a result of Injury or Sickness: (a) the Covered Person cannot perform the material and substantial duties of his own occupation; and (b) after benefits have been paid for 12 months, the Covered Person is unable to perform the Material and Substantial Duties of Any Occupation*

*"**Own Occupation**", with respect to Long Term Disability, means the Covered Person's occupation that he was performing when his Disability or Partial Disability began. For the purposes of determining Disability under this policy, Liberty will consider the Covered Person's occupation as it is normally performed in the national economy.*

*"**Material and Substantial Duties**", with respect to Long Term Disability, means responsibilities that are normally required to perform the Covered Person's Own Occupation, or any other occupation, and cannot be reasonably eliminated or modified.*

*"**Proof**" means the evidence in support of a claim for benefits and includes, but is not limited to, the following:*

**Lincoln/Mason 0126**

*1. a claim form completed and signed (or otherwise formally submitted) by the Covered
Person claiming benefits;*
*2. an attending Physician's statement completed and signed (or otherwise formally
submitted) by the Covered Person's attending Physician; and*
*3. the provision by the attending Physician of standard diagnosis, chart notes, lab findings,
test results, x-rays and/or other forms of objective medical evidence in support of a claim
for benefits.*
*Proof must be submitted in a form or format satisfactory to Liberty.*

Under the Employee Retirement Income Security Act (ERISA) appeal guidelines, you were entitled
to appeal the decision made by Lincoln Financial Group, and to submit any additional information
you wished to be considered as part of the appeal.  Lincoln Financial Group has conducted a full and
fair review of your appeal and accompanying materials, and has concluded that the denial of benefits
will be maintained.

At this time, your administrative right to review has been exhausted; no further review will be
conducted by Lincoln Financial Group and your claim will remain closed.  You may request to
receive, free of charge, copies of all documents relevant to your claim.  You have the right to bring a
civil action under section 502(a) of ERISA following an adverse benefit determination on review.

### Legal Proceedings
*A claimant or the claimant's authorized representative cannot start any legal action:*
*1. until 60 days after Proof of claim has been given; or*
*2. more than three years after the time Proof of claim is required.*

If your plan is subject to ERISA, you may have other voluntary alternative dispute resolution
options, such as mediation.  One way to find out what may be available is to contact your local U.S.
Department of Labor Office or your state insurance regulatory agency.  In addition, once all required
reviews of your claim have been completed, you have the right to bring a civil action under
applicable law.  Your employer's plan has a contractual limitations period of three year 3, which
means that a lawsuit must be brought within three (3) years after the date written proof of claim or
proof of continued disability was required. The date on which the contractual limitations period
expires for this claim is June 15, 2024.

This information is provided for purposes of this claim only, as the time proof of claim is required
may differ based on claim specifics and applicable policy language.

Nothing in this letter should be construed as a waiver of any Lincoln Financial Group rights and
defenses under the above captioned Policy, and all of these rights and defenses are reserved to the
Company, whether or not they are specifically mentioned herein.

Decisions made by Lincoln Financial Group are based on the provisions outlined in Charter
Communications, Inc.'s Policy.  These provisions are not contingent on decisions made by either the
Social Security Administration or other disability-determining entities.  No internal rules, guidelines,
protocols, standard or other similar criteria were relied upon in rendering the claim determination.

*If you had planned to provide additional information to support your claim but have been unable
to do so in light of the COVID-19 emergency, please know that you may submit information for*

**Lincoln/Mason 0127**

*up to 60 days after the end of the National Emergency. If that is the case, please contact me at the number below as soon as possible."*

If you require language translation assistance, please contact Lincoln Financial Group to initiate a service provided free of charge to assist with understanding your claim and appeal rights.

如果您需要翻译方面的帮助，请联系我，我会免费为您服务以便了解您的要求和诉求。

Shá ata' hane'go shíká a'doowoł nínízingo saad hosinilį' dóó ná'ookąąh nííní'ąągo naaltsoos níiniłtsoozígíí hazho'ó bik'idi'deeshtįįł nínízingo doo bąąh ilinígóó níká a'doowoł éí biniiyé shił hodíílnih ako akwe'égí níká adeeshwoł.

Si necesita traducción, contácteme para iniciar un servicio gratuito a fin de ayudarle a entender sus derechos de reclamo y apelación.

Kung nangangailangan ka ng tulong sa translation, mangyaring makipag-ugnayan sa akin upang gumamit ng serbisyong ibinigay nang walang bayad upang matulungan kang maunawaan ang iyong mga karapatan sa paghahabol at pag-aapela.

If you have any questions regarding this matter, please contact me.

Sincerely,

Mary Avrett
Appeals Consultant
Phone No.: (888) 437-7611 Ext. 16371
Secure Fax No.: (603) 430-1926

Lincoln/Mason 0128

Subject:    FW: Hip F_U Exam.pdf
From:       DisabilityDocuments <DisabilityDocuments@lfg.com>
To:         S1MavroIngest <S1MavroIngest@lfg.com>
Date:       2021-03-16 16:03:49

From: Jana M
Sent: Tuesday, March 16, 2021 2:31 PM
To: DisabilityDocuments <DisabilityDocuments@lfg.com>
Subject: Hip F_U Exam.pdf

***This email is from an external source. Only open links and attachments from a
Trusted Sender.***

Attn:  Mary Avrett. #9291624. Jan Mason

**Lincoln/Mason 0129**



**North Campus**
4110 Briargate Parkway, Suite 300
Colorado Springs, CO 80920
Phone: 719-632-7669
Fax: 719-632-0088

Colorado Springs
Orthopaedic Group
www.csog.net

**South Campus**
1259 Lake Plaza Drive, Suite 100
Colorado Springs, CO 80906
Phone: 719-632-7669
Fax: 719-632-0088

Patient Name: Jan K Mason,
Patient Phone#:

Encounter Date: 2/16/2021

Date of Birth:
Patient Account#: 505296

## Chief Complaint Osteoarthritis right hip
## History of Present Illness
Jan K Mason returns today for follow up. Patient returns today to be evaluated for her right hip. I previously seen her and evaluated her for hip pain however previously suspected that it was primarily due to labral pathology. She subsequently underwent a labral repair by Dr. Huang and unfortunately has not had any pain relief from that. The pain in her groin and buttocks and lateral hip has progressed significantly she states that she has a hard time doing anything including walking around her house going up and down stairs. Patient's tearful today as the pain is continued to get worse and is very limiting to her. She was seen by my PA and given a intra-articular injection following her last visit, she states that she got 3 hours of complete pain relief in her hip following that her pain returned to its original level. She does have some degree of back pain as well she realizes this is a separate issue and may not get better if we fix her hip but by far the #1 thing right now is her hip pain. Patient was originally hospitalized on January 25, diagnosed at that time with pyelonephritis on the right side was done 10 days of antibiotics. States that the same time was diagnosed with a partial collapse of the right lung, was only given oxygen therapy for this. States recently on her ECG had a history of early left bundle branch block, PCP did clear her for this. We will monitor all these during the surgery, possibly limit her anti-inflammatories postoperatively has not stress her kidneys. She is on hormone replacement therapy and states she does not want to stop this postoperatively, therefore will require Xarelto for DVT prophylaxis. Has had no complications with the previous right hip arthroscopy and reconstruction, she has no history of blood clots, infection, or anesthetic complications. Patient states she would like to proceed with a right total hip placement at this time.

**Date of Onset:** 2-3 years

## Medical History
**Medical Conditions:** Hypertension
**Surgical History:** Tubal ligation, Rhinoplasty
**Orthopedic Surgical History:** Rt SI Joint Fusion, Labral Repair, Labral Reconstruction
**Current Medications:** Claritin 10 mg tablet 1 oral, Ambien 5 mg tablet 1 oral, metoprolol succinate ER 50 mg tablet,extended release 24 hr 1 Tb24 oral, losartan 50 mg tablet 1 oral, Junel FE 1/20 (28) 1 mg-20 mcg tablet oral, cyclobenzaprine 10 mg tablet 1 by mouth Q8h spasms, Valium 2 mg tablet 1 tablet(s) by mouth as directed TAKE ONE PILL, ONE HOUR PRIOR TO PROCEDURE
**Medication and Allergic Reactions:** No known allergies
**Family History:** No significant family history.
**Personal and Social History:**
The patient does not smoke or use tobacco products. The patient does not use marijuana, CBD products, or Illicit drugs. The patient currently does not consume alcohol. She is temporarily disabled.

**ELECTRONICALLY SIGNED BY Charles W. Dowell, PA**
**2/16/2021**

1 of 3

**Lincoln/Mason 0130**

**Patient Name:** Mason, Jan K
**DOB:**

## Review of Systems

General/constitutional: Denies unplanned weightloss, Denies constitutional symptoms
HEENT: No vision, hearing changes
Endocrine: Denies any current issues with the endocrine system
Respiratory: Denies shortness of breath or breathing problems. Denies cough.
Cardiovascular: Denies chest pain. Denies shortness of breath with exertion. Denies chest pain with exertion.
Gastrointestinal: Denies abdominal pain. Denies any bloody stool.
Hematology: Denies easy bruising or prolonged breathing. No history of blood clots
Skin: Denies discoloration or rashes.
Neurologic: Denies any problems with balance and dizziness or fainting
Psychiatric: Denies any current issues with psychiatric conditions

**Vital Signs:** Height: 5ft 8.00in, Weight: 188lbs

## General Exam:

**Constitutional:** Patient is adequately groomed with no evidence of malnutrition.
Gen: Appropriately groomed, no evidence of malnutrition, no acute distress
Skin: No rashes, ulcers, or lesions on regions examined
Mental status: Oriented to time, person, place and situation, mood and affect are appropriate
Cardio: Regular rate and rhythm
Vascular: No edema, no calf swelling or pain, peripheral pulses 2+
Pulm: Non-labored breathing
Abd: Soft, non-tender to palpation

## Right Hip/Pelvis Examination

Skin is clean and dry, without erythema or warmth. There are no superficial signs of infection. ROM is limited with flexion to 120, IR is 20 degrees and ER is 25 degrees. Flexion, internal rotation and external rotation elicit groin pain. Pain is most severe with internal rotation. Strength test shows quad and hamstring strength to be 5/5. Plantar and dorsiflexion strength 5/5. SILT diffuse lower extremity. Pulses are 2+/4 DP and PT. No peripheral edema noted.

**Imaging Orders:** 2-3 views of the right hip were ordered, obtained and interpreted from an orthopedic standpoint.

**Hip/Pelvis Xrays:** AP pelvis as well as AP and lateral radiographs of the right hip performed in the office today and reviewed by myself reveal significant degenerative changes. The patient has significant joint space narrowing with subchondral sclerosis noted on femoral and acetabular sides of joint. There is significant osteophyte as well as cystic formation on both the femoral and acetabular sides of the joint. No signs of joint subluxation.

## Assessment and Plan:

**Diagnosis Codes:**
M16.11 Unilateral primary osteoarthritis, right hip Right
**Impression:**
M16.11 Unilateral primary osteoarthritis, right hip Right M16.11 Unilateral primary osteoarthritis, right hip

**ELECTRONICALLY SIGNED BY Charles W. Dowell, PA**
**2/16/2021**

Lincoln/Mason 0131

**Patient Name:** Mason, Jan K
**DOB:**

Patient's a very pleasant 48-year-old female right hip pain previous history of 2 arthroscopies with labral reconstruction.

**Treatment Plan:**
The patient was seen today for their preoperative evaluation prior to their total hip arthroplasty. He had a long discussion with the patient today regarding her age, she understands that she may require further hip replacement in the future. She understands the limitations as far as her activity level after hip replacement. A extensive discussion was had with them today regarding what to expect during their operative day and post operative hospital course. We also discussed at length the risks, benefits, potential complications and alternatives of total hip replacement. The outcomes of the surgery were also addressed. A large majority of patients undergoing a total hip arthroplasty have favorable outcomes, however complications can and do occur. These complications include blood loss (possibly requiring transfusion), damage to nerves and blood vessels, blood clots, infection, continued pain, loss of motion, instability or dislocation, loosening or mechanical failure of implants, leg length discrepancy and fracture. In addition to these complications systemic complications can also occur, these include cardiopulmonary arrest, cardiac arrhythmia, pulmonary embolus and pneumonia. The patient verbalized understanding of the complications and that the overall success of the procedure is reliant on the patient closely following the post operative protocol. Patient's pre and post operative expectations were discussed. The patient can expect appropriate pain management and thromboprophylaxis while in the hospital and at discharge. While narcotic medications are often utilized, it is expected that the patient will be able to wean off these medications within the first several weeks after surgery. Often, physical therapy is not utilized in the early post-operative period, but may be incorporated if it is deemed necessary. We discussed the surgical approach used and the dislocation precautions utilized after surgery. Follow up in the office will be scheduled for 6 and 12 weeks post operatively. The patient expressed a good understanding of the discussion we had, and all of their questions were addressed prior to leaving the clinic today.
A NICE Cold + Compression Therapy System was prescribed.
Patient education on Fall prevention was provided to the patient. Patient was provided with patient education on NSAIDs. Patient was provided with patient education on X-Ray Exposure Safety.
The patient is instructed to return if pain or symptoms arise.
The patient was screened for COVID risk factors. These included respiratory symptoms, recent travel, and exposure to sick contacts. All questions asked were negative. The patient was brought back to a room that had been disinfected with germicidal surface wipes. This includes the counters, exam tables, chairs and door handles.

**Clinical Quality Reporting:**
The patient has received the influenza vaccination.

Electronically signed by: Charles W. Dowell, PA
Date: 2/16/2021 Time:8:45 AM

CC: A copy of the office visit notes will be forwarded to the patient's referring physician. Copies sent along with cover letter sent to the patient's primary care physician.

**Lincoln/Mason 0132**



**Network Medical Review Co. Ltd.**

**An ExamWorks Company**

| | |
|---|---|
| **REFERRED BY:** | Mary Avrett |
| **CLIENT:** | Lincoln Life Insurance |
| **NAME:** | Jan K Mason |
| **CLAIM #:** | 9291624 |
| **NMR #:** | 453513 |
| **DATE:** | 3/12/2021 |

**ADDENDUM:**

**RECORDS PROVIDED FOR REVIEW:**

| | | |
|---|---|---|
| PROGRESS NOTES | Colorado Springs Orthopaedic Group | 12/04/20 - 01/19/21 |
| PROGRESS NOTES | Orthopaedic And Spine Center of Southern Colorado | 02/22/21 - 02/23/21 |
| AME/IME/QME/FCE | Fyzical Therapy And Balance Centers | 01/20/21 |
| ROI | | 01/27/21 |
| MISC | | 01/20/21 - 03/05/21 & Undated |

TELECONFERENCE
    1) AP NAME: Dr. Bron
    2) PHONE: 719) 632-7669
    3) DATE(S): 3/8/2021, 3/8/2021
    4) TIME(S): 11:33 AM MST, 12:01 PM MST
    5) PERSON(S) SPOKEN WITH: Nicole, Tyler Bron, MD
    6) POSITION OF PERSON(S) SPOKEN WITH: MA, Orthopedist

SUMMARY OF DISCUSSION(S): I called Dr. Tyler Bron, M.D. and spoke with Nicole who said that Dr. Bron was currently with a patient but that she would give him a message requesting that he return my call.

I spoke with Dr. Bron who said that the claimant underwent a right total hip replacement approximately 2 weeks ago. He said that she should remain off work in any capacity for approximately 6 weeks. Dr. Bron said that the claimant should be able to perform sedentary to light physical demand level work approximately 6 weeks postoperatively depending on her recovery. He said that he did not place the claimant on any restrictions or limitations prior to her surgery. He said that she is currently ambulating with a walker and is taking Oxycodone as needed for pain.

**ASSESSMENT:** This is an addendum to my original report dated 12/22/20. I have been asked to make an additional teleconference attempt, review additional records, and answer new questions.

**4960 E. State Street ● Rockford, IL 61108 ● Phone 815.964.6334 ● Fax 815.964.1162**
*website* **www.nmrco.com** ■ *email* **info@nmrco.com**

**Lincoln/Mason 0133**

RE:  Jan  K Mason                                              NMR #: 453513
Page 2

The claimant is a 48 year old female (DOB        who has a diagnosis of pain in the right hip. She was involved in a motor vehicle accident on 12/18/17 and stopped working on 4/16/19.  All of the records provided have been reviewed from a PM&R perspective, and are summarized below.

The review period is from 07/21/20 to the present.

On 02/22/2021, the claimant underwent an anterior right total hip arthroplasty performed by Tyler Bron, M.D. for treatment of right hip osteoarthritis and a failed labral repair.

A Functional Capacity Evaluation performed on 1/20/2021 noted that the claimant could sit for 1 hour, stand for 1 hour, and walk for 1 hour. She could perform occasional twisting, climbing stairs, pushing, and pulling, and frequent cervical bending and reaching above shoulder level. It was noted that she could not bend, stoop, squat, crawl, crouch, kneel, balance, or climb ladders, and she could seldom carry 5 pounds. She was able to perform grasping and fine manipulation.

On 01/19/2021, she saw Tyler Bron, M.D. for right hip pain. It was noted that the claimant underwent a labral repair but had no improvement. Physical examination revealed painful limited range of motion of the right hip. X-rays of the right hip were noted to reveal moderate degenerative changes with moderate joint space narrowing and subchondral sclerosis. There was a mild osteophyte and cystic formation on both the femoral and acetabular sides of the joint. Assessment was right hip primary osteoarthritis.  The plan was to proceed with a right total hip arthroplasty.

On 01/12/2021, the claimant underwent a right hip fluoroscopic pain injection with bupivacaine.

Magnetic resonance imaging (MRI) of the right hip performed on 01/12/2021 revealed an extensive prior right labral tear. There was no high grade cartilage loss or large chondral defect, and no large joint effusion. There was a small focus of fluid at the undersurface of the right hamstring insertion that could represent a very small hamstring tendon tear. There were similar findings involving the left hamstring tendon insertion, and there was a previous arthrodesis of the right sacroiliac joint with no visualized acute complication.

**IN ANSWER TO YOUR SPECIFIC QUESTIONS:**

**1. Taking into consideration the additional medical documentation, the totality of her conditions and the surgical procedure performed on February 22, 2021, please indicate if the information changes the restrictions and limitations set forth in your report dated 12/22/20. If so, please provide updated restrictions and/or limitations. If not, please provide your medical rational as to why and provide a detailed explanation.**

On my prior report dated 12/22/2020, I concluded the following restrictions and limitations were supported from 7/21/2020 to the present:

The claimant can lift, carry, push, and pull up to a maximum of 10 pounds occasionally.

The claimant can sit for 1 hour at a time for a total of 6 hours in an 8 hour workday, with the ability to change positions from sitting to standing or walking as needed for comfort.

The claimant can stand for 30 minutes at a time for a total of 2 hours in an 8 hour workday.

**Lincoln/Mason 0134**

RE: Jan K Mason                                    NMR #: 453513
Page 3

The claimant can walk for 30 minutes at a time for a total of 2 hours in an 8 hour workday.

The claimant can occasional bend, kneel, squat, stoop, and climb stairs.

No climbing ladders, exposure to unprotected heights, or operating dangerous machinery while taking muscle relaxant medications or any other potentially sedating medications.

The above noted restrictions and limitations are supported until the claimant undergoes further treatment with a spinal cord stimulator and/or a possible right total hip arthroplasty. The medical rationale for the R/L is to prevent exacerbation of the claimant's symptoms and to prevent further injury.

**2. Please indicate if the claimant would have had sustained occupational functioning on a full time basis for the period July 21, 2020 to the present. Please provide your medical rational as to why or why not and provide a detailed explanation.**

Based on my review of the provided documentation, the above noted resections and limitations are supported from 7/21/2020 until the date of right total hip arthroplasty performed on 2/22/2021. The claimant would have been capable of sustained occupational functioning on a full time basis for the period 07/21/20 until 02/22/2021. The claimant would be unable to work in any capacity as of 2/22/2021 to the present secondary to the right total hip arthroplasty performed on 2/22/2021. The claimant's functional capacity should be evaluated approximately 6 weeks postoperatively.

As per my conversation with the treating provider, Orthopedist Tyler Bron, M.D., he said that the claimant underwent a right total hip replacement approximately 2 weeks ago. He said that the claimant should remain off work in any capacity for approximately 6 weeks. Dr. Bron said that the claimant should be able to perform sedentary tol light physical demand level work approximately 6 weeks postoperatively depending on her recovery.

**3. When contacting the treating provider please discuss the claimant's condition, treatment, and functional capacity. Please indicate the information reviewed and whether or not you reached consensus with the treating provider. If not, please discuss your final assessment after the call.**

I spoke with Dr. Bron who said that the claimant underwent a right total hip replacement approximately 2 weeks ago. He said that she should remain off work in any capacity for approximately 6 weeks. Dr. Bron said that the claimant should be able to perform sedentary to light physical demand level work approximately 6 weeks postoperatively depending on her recovery. He said that he did not place the claimant on any restrictions or limitations prior to her surgery. He said that she is currently ambulating with a walker and is taking Oxycodone as needed for pain.

**CONFLICT OF INTEREST ATTESTATION:** I certify that I do not accept compensation for review activities that is dependent in any way on the specific outcome of the case. To the best of my knowledge, I was not involved with the specific episode of care prior to referral of the case for review. I do not have a material professional, familial, or financial conflict of interest (financial conflict of interest is defined as ownership interest of greater than 5%) regarding any of the following: the referring entity; the insurance issuer or group health plan that is the subject of the review the covered person whose treatment is the subject of the review and the covered person's authorized representative, if applicable; any officer, director or management employee of the insurance issuer that is the subject of the review; any group health plan administrator, plan fiduciary, or plan employee; the health care provider, the health care provider's medical group or independent practice association

**Lincoln/Mason 0135**

RE:  Jan  K Mason                                                    NMR #: 453513
Page 4

recommending the health care service or treatment that is the subject of the review; the facility at which the recommended health care service or treatment would be provided; or the developer or manufacturer of the principle drug, device, procedure or other therapy being recommended for the covered person whose treatment is the subject of the review.

This attestation certifies that the peer reviewer named below has the appropriate scope of licensure or certification that typically manages the medical condition, procedure, treatment, or issue under review and has current, relevant experience and/or knowledge to render a determination for the case under review.

**ADVISING REVIEWER:**

Eric Kerstman M.D.
Board Certified in Aerospace Medicine
Board Certified in Pain Medicine
Board Certified in Physical Medicine and Rehabilitation
Licensed in State of TX #M1823

*NMR Conflict of Interest Attestation: NMR attests to the fact that there is no conflict of interest with this review for referring entity, benefit plan, enrollee/consumer, attending provider, facility, drug, device or procedure.  NMR attests that its compensation is not dependent on the specific outcome of this review or has had any involvement with this case prior to this referral.*

**Lincoln/Mason 0136**

**From:** regina.morris@nmrexamworks.com
**Sent:** Fri, 12 Mar 2021 16:01:20 -0600
**To:** Avrett, Mary;VendorReferrals
**Subject:** NMR report notification for case - Case : 9291624 - NMR 453513
**Attachments:** Report_NMR_Peer__LLAOBinv_453513-1_v1.doc, Report_NMR_Peer__LTD-R01_453513-1_v1.doc

***This email is from an external source. Only open links and attachments from a Trusted Sender.***

This is to inform you that the report for your case #9291624 (NMR # 453513) has been completed and is ready to be viewed on our website.

You can access the report via https://client.nmrco.com using your username and password.

Thank you for the referral,

Network Medical Review Co.

*"Privileged and Confidential: The information contained in this e-mail message, including any attachments, is intended only for the personal and confidential use of the intended recipient(s) and may contain confidential and privileged information as well as information protected by the Privacy Act of 1974. If the reader of this message is not the intended recipient or an agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please immediately contact the sender by reply e-mail and delete all copies of the original message."*

**Lincoln/Mason 0137**

# Network Medical Review Company, LTD.

*An ExamWorks Company*

### INVOICE

LINCOLN FINANCIAL GROUP - LLAOB

Attn:  AVRETT, MARY
8801 INDIAN HILLS DRIVE
OMAHA, NE 68114

Invoice Number:  453513-1
Invoice Date:
Account Number:  519193
File Number:  453513-1

Service Date:  7/21/2020 to the
Claim Number:  9291624
Claimant Name:  Jan  K Mason

| Description | | Amount |
|---|---|---|
| Initial | LTD | **$315.00** |

**Comments**

**Please pay this amount:**          **$315.00**

Remit to: Network Medical Review Company, LTD
         PO Box 492260
         Redding, Ca 96049-2260
   Tax ID 76-0711128

3/12/2021 9:12 PM
**Lincoln/Mason 0138**

**From:**Clinical Referral and Triage <Shelley.Plaisted@lfg.com>
**Sent:**Fri, 5 Mar 2021 17:04:02 +0000
**To:**Avrett, Mary
**Subject:**Claim Referral - Assignment Notification

Your referral request with requested specialty of Medicine - Internal or Family for claim number 9291624 has been assigned to Dr. Peggy Geimer. The anticipated due date for this request is 03/05/2021.

**Lincoln/Mason 0139**

# Lincoln Financial Group - Independent Evaluation

## Peer Review

Requested By:    Mary Avrett
Disability Claims
P O Box 7206
London, KY 40742-7206
(888) 437-7611 x16371
Fax:    (603) 430-1926

Return Report to: VendorReferrals@lfg.com

Document Locations

☑ Document List
☐ Correspondence
☐ Paper File

| | | | |
|---|---|---|---|
| Customer Name: | CHARTER COMMUNICATIONS, INC | Date Sent: | 3/5/2021 |
| Funding type: | CON | Coverage Type: | LTD |
| Claimant Name: | JAN K MASON | Claim #: | 9291624 |
| Claimant Address: | | Claimant SSN: | |
| | | Claimant DOB: | |
| City: | | Claimant Tel #: | |
| State: | | Claimant DOD: | 4/17/2019 |
| Zip: | | | |
| | | Primary Diagnosis: | Pain in right hip |
| Gender: | FEMALE | Att Physician: | |
| Specialist Type Requested: | Physical Medicine and Rehabilitation (PM&R) | Physician: Phone/Fax | Dr Bron (719) 632-7669, fax (719) 632-0088 |

Referral Questions:                    Vendor Chosen:    Network Medical Review

Claimant Name:    JAN K MASON

**Lincoln/Mason 0140**

# Lincoln Financial Group - Independent Evaluation

## Peer Review

Please review the additional documentation
1)Taking into consideration the additional medical documentation, the totality of her conditions and the surgical procedure performed on February 22, 2021,  please indicate if the information changes the restrictions and limitations set forth in your report dated 12/22/20   If so, please provide updated restrictions and/or limitations   If not, please provide your medical rational as to why and provide a detailed explanation
2)Please indicate if the claimant would have had sustained occupational functioning on a full time basis for the period July 21, 2020 to the present    Please provide your medical rational as to why or why not and provide a detailed explanation
3)When contacting the treating provider please discuss the claimant's condition, treatment, and functional capacity  Please indicate the information reviewed and whether or not you reached consensus with the treating provider  If not, please discuss your final assessment after the call

Instructions For Vendor:

Claimant Name:    JAN  K  MASON

**Lincoln/Mason 0141**

# Lincoln Financial Group - Independent Evaluation

## Peer Review

Please assign to Dr Kerstman for addendum to peer dated 12/22/20

Attorney Information (if applicable):

Claimant Name:    JAN  K  MASON

**Lincoln/Mason 0142**

| From: | LFGNotifications@LFG.com |
|---|---|
| Sent: | Wednesday, March 3, 2021 11:16:09 AM |
| To: | |
| CC: | |
| BCC: | |
| Subject: | [Send Secure]Charter Communications, Inc. Claim No. 9291624 Jan Mason |
| Attachments: | pjlmaxqnzcg7icbacdig_10036223.pdf; |

This notification contains important information regarding a claim with Lincoln Financial Group company. THIS IS AN AUTOMATED EMAIL. PLEASE DO NOT RESPOND. You may use the contact information in the attached letter to respond if needed.

**Lincoln/Mason 0143**



Lincoln Life Assurance Company of Boston
Disability and Life Claims
PO Box 2578
Omaha, NE 68172-9688
Phone No.: (888) 437-7611
Secure Fax No.: (603) 430-1926

March 3, 2021

Ms. Jan K. Mason

RE:     Long Term Disability (LTD) Benefits
        Charter Communications, Inc.
        Claim #: 9291624

Dear Ms. Jan Mason:

Pursuant to our telephone conversation today, March 3, 2021, we are extending your time to provide additional documentation 2 weeks to March 17, 2021.

Since we are waiting for you to submit additional documentation, the days from the date of this letter until we receive your submission are not counted as part of the appeal determination period.

If you have any questions regarding this matter, please contact me.

Sincerely,

Mary Avrett
Appeals Consultant
Phone No.: (888) 437-7611 Ext. 16371
Secure Fax No.: (603) 430-1926

1  of  1

**Lincoln/Mason 0144**

ORTHOPAEDIC AND SPINE CENTER OF SOUTHERN COLORADO
4110 BRIARGATE PARKWAY, SUITE 200
COLORADO SPRINGS, CO 80920

OPERATIVE REPORT

PATIENT NAME:        MASON, JAN
DATE OF SURGERY:     02/22/21
PATIENT MRN#:        11142
DATE OF BIRTH:
PHYSICIAN:           Tyler Bron, M.D.

PREOPERATIVE DIAGNOSES:
1.   Right hip osteoarthritis.
2.   Failed labral repair.

POSTOPERATIVE DIAGNOSES:
1.   Right hip osteoarthritis.
2.   Failed labral repair.

PROCEDURE PERFORMED:  Right total hip arthroplasty - anterior.

ASSISTANT:  Charles Dowell, P.A.-C.

ANESTHESIA:  Spinal anesthesia with conscious sedation.

INDICATIONS FOR THE PROCEDURE:  The patient is a very pleasant
48-year-old with severe right hip pain.  She has previously been
treated conservatively for arthritis as well as having had a
previous labral repair arthroscopically.  She elected to proceed
forth with a total hip due to persistent severe pain.

DESCRIPTION OF PROCEDURE:  The patient was seen preoperatively.
The right hip was marked.  Consent was reviewed.  All of her
questions were addressed.  She was taken to the operating room
and given a spinal.  She was laid supine.  Both hips were imaged
and sterilely prepped and draped in standard sterile fashion.  A
timeout was performed, identifying the patient, procedure,
antibiotics, allergies, and extremity.  An anterior incision was
marked out and made two fingerbreadths distal and lateral to the
ASIS, extending towards the fibular head, roughly 12 cm.  The
incision was made with a #10-blade scalpel.  That blade was
removed from the field.  Bovie cautery was used to get down to
the tensor fascia.  The tensor fascia was incised anterior to
the perforating vessels at the blue-white interface.  Blunt
dissection of the tensor fascia lata off the tensor fascia was
performed.  The muscle was taken laterally.  The fascia was
taken medially.  The deep fascia was encountered.  The ascending
branch of the lateral femoral circumflex was cauterized using
Aquamantys.  The deep fascia was then incised.  Blunt cobras

TB/SN/scribenet3/IPA-7862937
D:  02/22/21 02:25 P CST
T:  02/23/21 10:48 A CST

**Lincoln/Mason 0145**

RE:  MASON, JAN
OPERATIVE REPORT
PAGE 2

were placed around the femoral neck.  A capsulectomy was done.
The femoral neck cut was marked out and made with an oscillating
saw and then a napkin ring cut was done to facilitate extraction
of the head.  The head was removed and sized and found to be 48
mm to 49 mm.  Acetabular retractors were placed anteroinferior,
posteroinferior, and superior.  Soft tissue was removed from
around the cup.  Acetabular reamers were started at 47, going to
a 52, which gave good cancellous bleeding bone.  There was no
posterior wall.  It was severely dysplastic or hypoplastic
posteriorly.  For this reason, the decision was made to go with
the multi-hole cut.  A 52 multi-hole cup was then opened and
impacted just behind the anterior wall which put it in fairly
significant anteversion but matching the native anatomy.  It was
fully seated, and three screws were placed in the posterior
superior direction.  All had good purchase.  A neutral 36 liner
was then impacted.  We then turned our attention to the femur.
The contralateral leg was put onto a padded Mayo.  The foot of
the bed was lowered.  The operative leg was extended, externally
rotated, and adducted.  A femoral elevator was placed medially
along the calcar, a blunt cobra over the lateral shoulder, and a
bump on his proximal thigh.  No significant soft tissue release
was necessary.  A box cutter, rat tail, and chili pepper were
used to get into the canal.  Sequential broaching was then
performed up to a size 5.  This seemed rotationally stable.  We
then trialed with a 127, -5.  Leg length was slightly longer
compared to the contralateral side.  Imaging showed the 5 to be
appropriate, but to be in slight varus.  The decision was made
to try to sink it a few more millimeters and to take it out of
varus to equal lateral leg lengths and we got better purchase
with the stem.  The hip was dislocated and put back into a
broaching position.  We then re-broached with chili pepper 3, 4,
5, and ended up gaining roughly 4 mm of depth using the calcar
planer.  We trialed a 127 with -2.5.  The hip was reduced.  Leg
lengths were assessed and found to be within a millimeter.
Stability was good throughout range of motion.  The decision was
made to go forward with this construct.  The hip was dislocated
and put back in trialing position.  The trial broach was
removed.  The definitive Accolade II size 5, 127 stem was
implanted.  It sat at the same level as the trial and the
definitive 36, -2.5 ceramic ball was impacted on a clean, dry
trunnion.  The hip was reduced then irrigated out with sterile
normal saline and Betadine for three minutes followed by pulse
lavage.  Images were taken showing all implants well sized and
well positioned with good leg lengths and offset.  Periarticular
injection was performed.  Then, 3 L of sterile normal saline was
used to irrigate out the Betadine.  The tensor fascia was closed

TB/SN/scribenet3/IPA-7862937
D:  02/22/21 02:25 P CST
T:  02/23/21 10:48 A CST

**Lincoln/Mason 0146**

RE:    MASON, JAN
OPERATIVE REPORT
PAGE 3

with 0 Vicryl running followed by 0 PDS for the adipose, 2-0
Monocryl for the dermis, and 3-0 Stratafix running subcuticular
for the skin.  The leg was cleaned and dried.  Dermabond Prineo
was placed over the incision and allowed to dry followed by
Aquacel.  The patient was transferred to the PACU in a stable
condition.

**ESTIMATED BLOOD LOSS:**  200 mL.

**COMPLICATIONS:**  None.

**IMPLANTS:**  Stryker 52 Trident II multi-hole, three 6.5 screws,
neutral 36 liner, and Accolade II size 5, 127 with 36, -2.5
ceramic ball.

Charles Dowell, P.A.-C. was essential for positioning, exposure,
and completion of the critical portions of this case and
closure.  He was present throughout the entirety of the case.
The case could not have been done adequately without a skilled
assistant.

**TREATMENT PLAN:**  The patient will be made 50% weightbearing over
the next six weeks due to the decreased coverage posteriorly
from no posterior wall although I believe this is probably just
a safety measure and giving her time for the cup to grow in
would be appropriate.

.

_____

Tyler Bron, M.D.

TB/SN/scribenet3/IPA-7862937
D:  02/22/21 02:25 P CST
T:  02/23/21 10:48 A CST

**Lincoln/Mason 0147**

**From:**Jana M <
**Sent:**Wed, 3 Mar 2021 10:28:15 -0700
**To:**DisabilityDocuments
**Subject:**OP REPORT-RIGHT HIP-DR. BRON-OSCSC.pdf
**Attachments:**OP REPORT-RIGHT HIP-DR. BRON-OSCSC.pdf


***This email is from an external source. Only open links and attachments from a Trusted Sender.***

Attn:  Mary Avrett.  #9291624.  Jan Mason

**Lincoln/Mason 0148**



Lincoln Life Assurance Company of Boston
Disability and Life Claims
PO Box 2578
Omaha, NE 68172-9688
Phone No.: (888) 437-7611
Secure Fax No.: (603) 430-1926

| | |
|---|---|
| Date: | February 11, 2021 |
| To: | DR JEFFREY KENT<br>9480 BRIAR VILLAGE POINT STE 2<br>COLORADO SPRINGS CO 80920 |
| Attn: | Dr. Kent |
| Fax: | (719) 623-2102 |
| From: | Mary Avrett<br>Appeals Consultant<br>Phone No.: Phone No.: (888) 437-7611<br>Secure Fax No.: (603) 430-1926 |
| Total Pages<br>(Including Cover): | 18 |
| RE:<br><br>Claim #: 9291624<br>Claimant: Jan Mason<br><br>Charter Communications, Inc. | |

This fax, and any attachments thereto, is intended only for the use of the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this fax, you are hereby notified that any dissemination, distribution or copying of this fax, and any attachments thereto, is strictly prohibited. If you have received this fax in error, please notify me by telephone at (888) 437-7611 and permanently shred the original and any copy of any fax and any printout thereof.

**Lincoln/Mason 0149**



Lincoln Life Assurance Company of Boston
Disability and Life Claims
PO Box 2578
Omaha, NE 68172-9688
Phone No.: (888) 437-7611
Secure Fax No.: (603) 430-1926

February 11, 2021

Dr. Jeffrey Kent
9480 BRIAR VILLAGE POINT STE 2
COLORADO SPRINGS, CO 80920

RE:    Long Term Disability (LTD) Benefits
       Charter Communications, Inc.
       Claim #: 9291624
       Claimant: Jan Mason
       Claimant D.O.B.:

Dear Dr. Jeffrey Kent:

Ms. Mason requested we resend the attached correspondence dated January 5, 2021 to you.

If you have any questions regarding this matter, please contact me.

Sincerely,

Mary Avrett
Appeals Consultant
Phone No.: (888) 437-7611 Ext. 16371
Secure Fax No.: (603) 430-1926

CC:    Jan Mason


Attachments:   9291624-REQUEST-PROVIDER-01.05.2021

Lincoln/Mason 0150



Lincoln Life Assurance Company of Boston
Disability and Life Claims
PO Box 2578
Omaha, NE 68172-9688
Phone No.: (888) 437-7611
Secure Fax No.: (603) 430-1926

| | |
|---|---|
| Date: | January 5, 2021 |
| To: | DR JEFFREY KENT<br>9480 BRIAR VILLAGE POINT STE 2<br>COLORADO SPRINGS CO 80920 |
| Attn: | Dr. Kent - Urgent |
| Fax: | (719) 623-2102 |
| From: | Mary Avrett<br>Appeals Consultant<br>Phone No.: Phone No.: (888) 437-7611<br>Secure Fax No.: (603) 430-1926 |
| Total Pages<br>(Including Cover): | 16 |
| RE:<br><br>Claim #:   9291624<br>Claimant:  Jan Mason<br><br>Charter Communications, Inc. | |

This fax, and any attachments thereto, is intended only for the use of the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this fax, you are hereby notified that any dissemination, distribution or copying of this fax, and any attachments thereto, is strictly prohibited. If you have received this fax in error, please notify me by telephone at (888) 437-7611 and permanently shred the original and any copy of any fax and any printout thereof.

**Lincoln/Mason 0151**



Lincoln Life Assurance Company of Boston
Disability and Life Claims
PO Box 2578
Omaha, NE 68172-9688
Phone No.: (888) 437-7611
Secure Fax No.: (603) 430-1926

January 5, 2021

Dr. Jeffrey Kent
9480 BRIAR VILLAGE POINT STE 2
COLORADO SPRINGS, CO 80920

RE:    Long Term Disability (LTD) Benefits
       Charter Communications, Inc.
       Claim #: 9291624
       Claimant: Jan Mason
       Claimant D.O.B.:

Dear Dr. Jeffrey Kent:

We are the Disability Claim Administrator for your patient, Jan Mason.

Please find attached a copy of a medical review by Dr. Eric Kerstman, an independent physician Board Certified in Physical Medicine and Pain Medicine dated December 22, 2020. Please review the report and provide any comments you wish to have considered. If you disagree with the findings, please detail the specific areas with which you disagree and provide medical documentation to support your position.

We ask you provide this information by January 20, 2021. Failure to provide the requested information may result in an adverse benefit determination. The information can be faxed to our office at our secure fax number (603) 430-1926, mailed to the above address or emailed to disabilitydocuments@lfg.com. Please be sure to include the claim number above.

Although HIPAA does not apply to disability insurance carriers, we understand your responsibilities under HIPAA as a health care provider, and our associated responsibility of ensuring this information is protected against deliberate or inadvertent misuse or disclosure.

As the insurance carrier providing employer sponsored Long Term Disability (LTD) benefits coverage to your patient, we have enclosed a HIPAA compliant authorization signed by Ms. Mason allowing the release of information to our company. This authorization specifically allows you to release medical information to us and is valid for two years from the date of Ms. Mason's signature.

If you have any questions regarding this matter, please contact me.

1  of 2

**Lincoln/Mason 0152**

Sincerely,

Mary Avrett
Appeals Consultant
Phone No.: (888) 437-7611 Ext. 16371
Secure Fax No.: (603) 430-1926

CC:    Jan Mason


Attachments:    9291624-EMPLOYEE/CLAIMANT-AUTHORIZATION-09.25.2019
                9291624-MEDICAL-CP/PEER REVIEW-12.22.2020

**Lincoln/Mason 0153**

3L268190622



Liberty Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7207
London, KY 40742-7207
Phone No.: (844) 384-5858
Secure Fax No.: (603) 334-5994

## AUTHORIZATION FOR THE RELEASE OF INFORMATION INCLUDING PROTECTED HEALTH INFORMATION

**I HEREBY AUTHORIZE THE USE OR DISCLOSURE OF INFORMATION ABOUT ME AS DESCRIBED BELOW:**

**Person(s) or group(s) of persons authorized to use or disclose the information:** Any physicians, medical practitioners, hospitals, clinics, HMOs, long-term care facilities, medical or medically-related facilities, pharmacies, insurance companies, credit or consumer reporting agency, financial/educational institutions, current or former employer, governmental agency, MIB Inc., and any insurance support organizations.

**Person(s) or group(s) of persons authorized to collect or otherwise receive the information:** The particular Company in the Lincoln Financial Group of companies to which I am submitting a claim and its authorized representatives, agents and/or employees, the Plan Sponsor (if self-insured Plan) and other organizations providing claims management services.

**Description of the information that may be used or disclosed:** This Authorization specifically includes the release of all information related to:

* My physical and mental health and my insurance policies and claims, including, but not limited to, those containing diagnosis, treatments, prognosis, prescription drug information, alcohol or drug abuse or information regarding communicable or infectious conditions, including HIV/AIDS.
* Job duties, earnings, personnel records and other work related information and credit reports, bank records, and federal and state tax returns.
* Information concerning Social Security benefits, including any records pertaining to me and my dependents

**The information will be used or disclosed only for the following purpose(s):** For purposes of investigating, evaluating and processing my claim, and/or for insurance-related functions.

## STATEMENTS OF UNDERSTANDING & ACKNOWLEDGMENT:

**I understand** that information used or disclosed pursuant to this authorization could be subject to redisclosure as necessary by the recipient and, if so, may not be subject to federal or state law protecting its confidentiality.

**I understand** that I may revoke this authorization in writing at any time by sending a written revocation to the Company in the Lincoln Financial Group of companies to which I have submitted a claim, except to the extent that action has been taken in reliance on this authorization, or to the extent that other law provides the Company with the right to contest a claim. I also understand that the revocation of this authorization will not affect uses and disclosures of my health information for purposes of treatment, payment and health care operations.

**I understand** that authorizing the disclosure of my health information is voluntary and the provision of health care services to me is not conditioned on whether I sign this authorization. If I choose not to sign this authorization, insurance coverage or claim payments may be denied or delayed.

This authorization shall remain in force for 24 months from the date of signature, except to the extent applicable state law imposes or allows a different duration. The information obtained under this authorization will be retained in accordance with the Company's standard retention policy and applicable law. I understand that I may request a copy of this authorization.

Name of claimant (print) _____ JAN K MASON _____

Name of legal representative, if applicable (print) _____     Relationship _____

Signature of claimant or legal representative _____ Jan K Mason _____

Date of Birth: _____     _____     Claim Number: __9291624__     Date: __09/14/19__

**A copy of this authorization will be considered as valid as the original.**

**Lincoln/Mason 0154**

3L268190622


Lincoln
Financial Group®

Liberty Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7207
London, KY 40742-7207
Phone No.: (844) 384-5858
Secure Fax No.: (603) 334-5994

## AUTHORIZATION FOR THE RELEASE OF PROTECTED HEALTH INFORMATION

**I HEREBY AUTHORIZE THE USE OR DISCLOSURE OF HEALTH INFORMATION ABOUT ME AS DESCRIBED BELOW:**

**Person(s) or group(s) of persons authorized to use or disclose the information:** Any physicians, medical practitioners, hospitals, clinics, HMOs, long-term care facilities, medical or medically-related facilities, pharmacies, insurance companies, Plan Sponsor/ Administrator, governmental agency, MIB Inc., and any insurance support organizations.

**Person(s) or group(s) of persons authorized to collect or otherwise receive the information:** The particular Company in the Lincoln Financial Group of companies to which I am submitting a claim and its authorized representatives, agents and/or employees, the Plan Sponsor (if self-insured Plan) and other organizations providing claims management services.

**Description of the information that may be used or disclosed:** This Authorization specifically includes the release of all psychotherapy notes relating to me, without restriction, including psychotherapy notes recorded in any medium documenting or analyzing the contents of conversations during private counseling sessions and/or group, joint or family counseling sessions.

**The information will be used or disclosed only for the following purpose(s):** For purposes of investigating, evaluating and processing my claim, and/or for insurance-related functions.

## STATEMENTS OF UNDERSTANDING & ACKNOWLEDGMENT:

**I understand** that information used or disclosed pursuant to this authorization could be subject to redisclosure as necessary by the recipient and, if so, may not be subject to federal or state law protecting its confidentiality.

**I understand** that I may revoke this authorization in writing at any time by sending a written revocation to the Company in the Lincoln Financial Group of companies to which I have submitted a claim, except to the extent that action has been taken in reliance on this authorization, or to the extent that other law provides the Company with the right to contest a claim. I also understand that the revocation of this authorization will not affect uses and disclosures of my health information for purposes of treatment, payment and health care operations.

**I understand** that authorizing the disclosure of this health information is voluntary and the provision of health care services to me is not conditioned on whether I sign this authorization. If I choose not to sign this authorization, insurance coverage or claim payments may be denied or delayed.

**This authorization** shall remain in force for 24 months from the date of signature, except to the extent applicable state law imposes or allows a different duration. The information obtained under this authorization will be retained in accordance with the Company's standard retention policy and applicable law. I understand that I may request a copy of this authorization.

Name of claimant (print)    JAN K MASON

Name of legal representative, if applicable (print) _____    Relationship _____

Signature of claimant or legal representative    Jan K Mason

Date of Birth: _____    Claim Number: 9291624    Date: 09/14/19

**A copy of this authorization will be considered as valid as the original**

Lincoln/Mason 0155



## Network Medical Review Co. Ltd.

### An ExamWorks Company

**REFERRED BY:** MARY AVRETT
**CLIENT:** Lincoln Life Insurance
**NAME:** Jan K Mason
**CLAIM #:** 9291624
**NMR #:** 414082
**DATE:** 12/22/2020

**RECORDS PROVIDED FOR REVIEW:**

| | | |
|---|---|---|
| PROGRESS NOTES | Colorado Springs Orthopaedic Group | 01/09/19 - 11/10/20 |
| PROGRESS NOTES | J.R. Kent, MD | 07/01/20 |
| PROGRESS NOTES | UCHealth / Aspen Creek Medical Center | 07/23/19 - 11/30/20 |
| PROGRESS NOTES | D.R. Salek, MD | 08/28/19 - 09/08/20 & Undated |
| PROGRESS NOTES | C.M. Kudron, MD | 09/04/20 |
| PROGRESS NOTES | Unknown Provider | Undated |
| OPERATIVE NOTES | Orthopaedic & Spine Center of Spine of Southern Colorado | 04/17/19 - 12/09/19 |
| PHYSICAL / OCCUPATIONAL THERAPY | Colorado Springs Orthopaedic Group Physical Therapy | 09/17/19 |
| PHYSICAL / OCCUPATIONAL THERAPY | Fyzical Therapy & Balance Centers | 12/13/19 - 12/08/20 |
| PHYSICAL / OCCUPATIONAL THERAPY | Falcon Physical Therapy | 11/01/20 |
| FILE REVIEWS | D. Fung, MD | 09/14/20 |
| FILE REVIEWS | D.A. Monti, MD | 07/16/20 |
| FILE REVIEWS | R. Avioli, MD | 10/27/19 |
| MRI / MRI ARTHROGRAM | Penrad Imaging | 10/22/19 - 01/30/20 |
| MRI | Southwest Diagnostic Centers | 09/12/18 |
| MRI | UpRight MRI of Colorado | 07/31/20 |
| CT | Penrad Imaging | 11/27/18 |

**4960 E. State Street** ⬧ **Rockford, IL 61108** ⬧ **Phone 815.964.6334** ⬧ **Fax 815.964.1162**
*website* www.nmrco.com ⬛ *email* info@nmrco.com

**Lincoln/Mason 0156**

RE: Jan K Mason«@Claimant»                                    NMR #: 414082
Page 2

| RF ARTHROGRAPHY | Penrad Imaging | 10/22/19 - 01/30/20 |
|---|---|---|
| X-RAY | Orthopaedic & Spine Center of Spine of Southern Colorado | 12/09/19 |
| X-RAY | Penrad Imaging | 07/11/18 |
| ROI | | 09/14/19, 09/18/19 |
| MISC | | 12/19/17 - 12/09/20 & Undated |

TELECONFERENCE
    1) AP NAME: Dr. Kent
    2) PHONE: (719) 278 3627
    3) DATE(S): 12/17/2020, 12/18/2020
    4) TIME(S): 11:09 AM MST, 9:13 AM MST
    5) PERSON(S) SPOKEN WITH: Jade, Dr. Jeffrey Kent
    6) POSITION OF PERSON(S) SPOKEN WITH: Patient Access Liaison, Treating provider

SUMMARY OF DISCUSSION(S): I called Dr. Jeffrey Kent, M.D. (Internal Medicine) and spoke with Jade who said that Dr. Kent was currently with a patient, but that she would give him a message requesting that he return my call.

I spoke with Jeffrey Kent, M.D. who said that he is the claimant's primary care physician. He said that he last evaluated the claimant on 10/22/2020, and that the claimant has chronic pain involving her low back and hips. He said that he has not addressed the claimant's work capacity, and that he has not outlined any work restrictions or limitations for the claimant. He said that the claimant is otherwise healthy and that she has no general medical conditions or medication side effects that would affect her work capacity. Dr. Kent said that he would defer to the claimant's orthopedist and pain management physician regarding her work capacity, restrictions, and limitations. He said that he expects to see the claimant for her follow-up next month. I reached consensus with Dr. Jeffrey Kent.

TELECONFERENCE
    1) AP NAME: Marc Phillips PT
    2) PHONE: 719-488-0120
    3) DATE(S): 12/17/2020
    4) TIME(S): 11:18 AM MST
    5) PERSON(S) SPOKEN WITH: Marc Phillips
    6) POSITION OF PERSON(S) SPOKEN WITH: Physical Therapist

SUMMARY OF DISCUSSION(S): I spoke with Physical Therapist Marc Phillips, who said that the claimant has been under his care for the treatment of chronic low back pain and right hip pain. He said that the claimant was last treated on 11/3/2020, and that she plans to resume physical therapy in January of 2021. He said that the claimant was making progress with her hip pain, but that she still has severe low back pain. He said the she has a Trendelenburg gait pattern requiring the use of a cane secondary to pain and bilateral hip weakness. He said that the claimant has approximately 3+/5 weakness of both hips, and has had mild improvement in hip strength. He said that in his opinion, the claimant would have difficulty performing prolonged sitting, standing, and walking due to the severity of her pain, and that she requires additional physical therapy, and possibly surgical

**Lincoln/Mason 0157**

RE: Jan K Mason«@Claimant»                          NMR #: 414082
Page 3

treatment to obtain significant improvement in her functional capacity. I reached consensus with Physical Therapist Marc Phillips.

**ASSESSMENT:** The claimant is a 48 year old female (DOB          who has a diagnosis of pain in the right hip. The claimant was involved in a motor vehicle accident on 12/18/17. She stopped working on 4/16/19. All of the records provided have been reviewed from a PM&R perspective, and are summarized below.

The review period is from 07/21/20 to the present.

On 4/16/19, Dr. Huang performed an arthroscopic surgery to the right hip including a femoroplasty, chondroplasty, and acetabuloplasty for treatment of a right hip labral tear and impingement.

A magnetic resonance imaging (MRI) Arthrogram of the right hip performed on 10/22/19 revealed postoperative changes of acetabuloplasty, femoroplasty, and labral repair. There was mild chondral irregularity along the lateral acetabulum likely reflecting chondroplasty changes.

On 12/9/19, an operative report from Michael Huang, MD notes the claimant underwent a right hip labral reconstruction for treatment of a recurrent right hip labral tear and right hip impingement.

An MR Arthrogram of the Left Hip performed on 1/30/20 revealed a focal cam deformity of the anterior left femoral head junction with an associated labral base tear. There was a small hip joint effusion.

On 7/1/2020, Roger Sung, MD noted that the claimant had bilateral hip pain, right sided sacroiliac (SI) joint pain, and low back pain. It was noted that the claimant occasionally had pain radiating down her right leg. It was noted that the claimant had a history of hypertension. The claimant's medications were noted as Claritin, Ambien, Losartan, Metoprolol ER, Junel FE, and Cyclobenzaprine.

In a letter dated 7/21/20, the claimant indicated that she was currently completing 6 additional weeks of physical therapy so that she could gain strength in her right hip and move forward with a left SI joint fusion, left labral reconstruction, and possible right hip replacement. The claimant reported that she was also being referred to an additional spine surgeon due to ongoing lumbar spine issues.

An MRI of the lumbar spine performed on 7/31/20 revealed moderate spinal stenosis at L2-L3, a right L3-L4 disc herniation with right neural foraminal stenosis at L3-L4, and L5-S1 mild spinal stenosis due to a central disc herniation.

In a letter dated 8/31/20, Jeffrey Kent, MD indicated that the claimant had ongoing difficulties with mobility with chronic pain and was being considered for a spinal cord stimulator. Dr. Kent indicated that the claimant had ongoing debility, and that she needed to remain on long-term disability throughout this year with reassessment at the end of the year.

In a 10/14/2020 progress note from Jeffrey Kent, MD it was noted that the claimant had ongoing pain involving her low back, hip, leg, SI joint, and paresthesias. Physical examination revealed a blood pressure of 145/85 and a body mass index (BMI) of 29.80. The musculoskeletal examination revealed tenderness, and there was normal range of motion. The neurological examination revealed no focal deficits. Assessment was chronic low back

**Lincoln/Mason 0158**

RE: Jan  K Mason«@Claimant»                                    NMR #: 414082
Page 4

_____

pain with sciatica, paresthesia of the bilateral legs, sacroiliac joint inflammation, femoroacetabular impingement of both hips, and left acetabular labrum tear. The claimant was referred to orthopedic surgery. It was noted that the claimant was to proceed with a spinal cord stimulator.

In a letter dated 11/1/20, Physical Therapist Marc Phillips indicated that the claimant had significant deficits in physical ability. He indicated that she had a recent exacerbation of her lumbar pain that made it difficult for her to perform transfers, dressing, and driving. He indicated that in his professional opinion, the claimant would not be able to perform any occupation in any capacity from December, 2016 to the present.

On an 11/10/20 evaluation with Kristen Reiss, PA-C, it was noted that the claimant was 11 months status post right hip labral reconstruction, femoroplasty, chondroplasty, acetabuloplasty, and osteoplasty performed on 12/9/19. The claimant reported worsening pain, and that she had not benefited from rest, activity modification, medications, and physical therapy. She reported a pain intensity of 9/10. Physical examination revealed the claimant's surgical wounds to be well-healed without signs of infection. Hip flexion was 115 degrees, external rotation was 45 degrees, and internal rotation was 5 degrees. There was tenderness to palpation over the lateral hip and sacroiliac joints bilaterally. The claimant had an antalgic gait with the use of a cane. Assessment was right hip articular disorder, right sacroiliitis, left hip pain, bilateral sacroiliitis, and lumbar spine spondylosis. The claimant was referred for a possible right total hip arthroplasty.

In a letter dated 11/30/20, Jeffrey Kent, MD indicated that the claimant was unable to work due to her severe chronic pain. He indicated that she was unable to maintain any sitting or standing position for very long without increasing pain which affects her ability to do her job. It was noted that she would require bilateral hip replacement surgery and possibly a left SI joint fusion. Dr. Kent requested that the claimant's disability be extended at least through February of 2021.

All available medical documentation was reviewed.

**IN ANSWER TO YOUR SPECIFIC QUESTIONS:**

**1. What diagnoses are supported by the medical evidence?**

The following diagnoses are supported by the medical evidence.

1. Chronic low back pain
2. Chronic bilateral hip pain
3. History of a right sacroiliac joint fusion
4. History of a right hip labral reconstruction,
5. Femoroacetabular impingement of both hips
6. Left acetabular labrum tear
7. Lumbar spine spondylosis
8. Hypertension.

**2. Taking into consideration the entire clinical picture, including standards of care and evidence based medicine, and any medication or other treatment side effects, please describe if there are any supported**

**Lincoln/Mason 0159**

RE: Jan K Mason«@Claimant»                                    NMR #: 414082
Page 5

**level of impairments which translates into restrictions and limitations from 7/21/2020 to the present? Please explain your medical rationale as to why or why not and provide a detailed explanation.**

Taking into consideration the entire clinical picture, including standards of care and evidence based medicine, impairment is supported from 7/21/2020 to the present secondary to the claimant's medical conditions of chronic low back pain, chronic bilateral hip pain, history of a right sacroiliac joint fusion, history of a right hip labral reconstruction, femoroacetabular impingement of both hips, a left acetabular labrum tear, and lumbar spine spondylosis due to associated pain and decreased mobility.

**3. If functional impairment is supported, please describe how that translates into restrictions or limitations and for what period(s) of time. Please define in terms of frequency (never, occasional, frequent, constant) and task (sit, stand, lift/carry, type etc). Please explain your medical rationale for any restrictions or limitations or why restrictions or limitations are not supported.**

Taking into consideration the entire clinical picture, the following restrictions and limitations are supported from 7/21/2020 to the present:

The claimant can lift, carry, push, and pull up to a maximum of 10 pounds occasionally.

The claimant can sit for 1 hour at a time for a total of 6 hours in an 8 hour workday, with the ability to change positions from sitting to standing or walking as needed for comfort.

The claimant can stand for 30 minutes at a time for a total of 2 hours in an 8 hour workday.

The claimant can walk for 30 minutes at a time for a total of 2 hours in an 8 hour workday.

The claimant can occasional bend, kneel, squat, stoop, and climb stairs,

No climbing ladders, exposure to unprotected heights, or operating dangerous machinery while taking muscle relaxant medications or any other potentially sedating medications.

No restrictions or limitations in the use of the upper extremities to perform reaching, handing, grasping, fingering, or keyboarding.

The above noted restrictions and limitations are supported until the claimant undergoes further treatment with a spinal cord stimulator and/or a possible right total hip arthroplasty. If this has not occurred by 02/10/2021, the claimant should be reevaluated at that time.

The medical rationale for the R/L is to prevent exacerbation of the claimant's symptoms and to prevent further injury.

**4. Does the medical documentation support that any medical condition alone, or in combination would preclude the claimant from sustained occupational functioning on a full-time basis? Please explain why or why not.**

No. The claimant should be capable of sustained occupational functioning on a full-time basis. The abnormalities on physical examination and diagnostic testing are not of a severity to support that the claimant would be precluded from performing full-time work within the above noted restrictions and limitations.

**Lincoln/Mason 0160**

RE: Jan K Mason«@Claimant»                                  NMR #: 414082
Page 6

**5. Do you agree with the assessment of the claimant's capacity and the restrictions as noted by Dr. Jeffrey Kent dated 8/31/2020? If not, please explain.**

No. I do not agree that the claimant has ongoing debility and that she needed to remain on long-term disability throughout this year with reassessment at the end of the year. The abnormalities on physical examination and diagnostic testing are not of a severity to support that the claimant would be precluded from performing full-time work within the above noted restrictions and limitations.

**6. Do you agree with the assessment of the claimant's capacity and the restrictions as noted by Dr. Marc Phillips dated 11/1/2020? If not, please explain.**

No. I do not agree that the claimant would not be able to perform any occupation in any capacity since December of 2016 to the present. The abnormalities on physical examination and diagnostic testing are not of a severity to support that the claimant would be precluded from performing full-time work within the above noted restrictions and limitations.

**7. When contacting the treating provider please discuss the claimant's condition, treatment, and functional capacity. Please indicate the information reviewed and indicate whether or not you reached consensus with the treating provider. If not, please discuss your final assessment after the call.**

I spoke with Jeffrey Kent, M.D. who said that he is the claimant's primary care physician. He said that he last evaluated the claimant on 10/22/2020, and that the claimant has chronic pain involving her low back and hips. He said that he has not addressed the claimant's work capacity, and that he has not outlined any work restrictions or limitations for the claimant. He said that the claimant is otherwise healthy and that she has no general medical conditions or medication side effects that would affect her work capacity. Dr. Kent said that he would defer to the claimant's orthopedist and pain management physician regarding her work capacity, restrictions, and limitations. He said that he expects to see the claimant for her follow-up next month. I reached consensus with Dr. Jeffrey Kent.

I spoke with Physical Therapist Marc Phillips, who said that the claimant has been under his care for the treatment of chronic low back pain and right hip pain. He said that the claimant was last treated on 11/3/2020, and that she plans to resume physical therapy in January of 2021. He said that the claimant was making progress with her hip pain, but that she still has severe low back pain. He said the she has a Trendelenburg gait pattern requiring the use of a cane secondary to pain and bilateral hip weakness. He said that the claimant has approximately 3+/5 weakness of both hips, and has had mild improvement in hip strength. He said that in his opinion, the claimant would have difficulty performing prolonged sitting, standing, and walking due to the severity of her pain, and that she requires additional physical therapy, and possibly surgical treatment to obtain significant improvement in her functional capacity. I reached consensus with Physical Therapist Marc Phillips.

**8. If AP contact may clarify any significant areas such as diagnosis, R&L's, treatment opportunities, prognosis, or reason for work absence, the AP on the portal - Document 2 attempts within 5 business days with initial and final memorandum as indicated, as well as AP letter**

See Call Logs.

**Lincoln/Mason 0161**

RE: Jan K Mason«@Claimant»                           NMR #: 414082
Page 7

## CONFLICT OF INTEREST ATTESTATION:

I certify that I do not accept compensation for review activities that is dependent in any way on the specific outcome of the case. To the best of my knowledge, I was not involved with the specific episode of care prior to referral of the case for review. I do not have a material professional, familial, or financial conflict of interest (financial conflict of interest is defined as ownership interest of greater than 5%) regarding any of the following: the referring entity; the insurance issuer or group health plan that is the subject of the review the covered person whose treatment is the subject of the review and the covered person's authorized representative, if applicable; any officer, director or management employee of the insurance issuer that is the subject of the review; any group health plan administrator, plan fiduciary, or plan employee; the health care provider, the health care provider's medical group or independent practice association recommending the health care service or treatment that is the subject of the review; the facility at which the recommended health care service or treatment would be provided; or the developer or manufacturer of the principle drug, device, procedure or other therapy being recommended for the covered person whose treatment is the subject of the review.

This attestation certifies that the peer reviewer named below has the appropriate scope of licensure or certification that typically manages the medical condition, procedure, treatment, or issue under review and has current, relevant experience and/or knowledge to render a determination for the case under review.

## ADVISING REVIEWER:

Eric Kerstman M.D.
Board Certified in Aerospace Medicine
Board Certified in Pain Medicine
Board Certified in Physical Medicine and Rehabilitation
Licensed in State of TX #M1823

*NMR Conflict of Interest Attestation:*

*NMR attests to the fact that there is no conflict of interest with this review for referring entity, benefit plan, enrollee/consumer, attending provider, facility, drug, device or procedure. NMR attests that its compensation is not dependent on the specific outcome of this review or has had any involvement with this case prior to this referral.*

**Lincoln/Mason 0162**





**December 22, 2020**

**Attending Physician Confirmatory Letter**

Re: Jan K. Mason

Dear Mr. Marc Phillips PT,

I have completed an appeal review on Jan Mason, a patient you have treated. The patient had listed you as a contact provider. During the time I was reviewing the claim, I spoke with you on 12/17/2020 at 10:18 AM. You stated that the claimant has been under your care for the treatment of chronic low back pain and right hip pain. You said that the claimant was last treated on 11/3/2020, and that she plans to resume physical therapy in January of 2021. You said that the claimant was making progress with her hip pain, but that she still has severe low back pain, and that she has a Trendelenburg gait pattern requiring the use of a cane secondary to pain and bilateral hip weakness. You said that the claimant has approximately 3+/5 weakness of both hips, and has had mild improvement in hip strength. You said that in your opinion, the claimant would have difficulty performing prolonged sitting, standing, and walking due to the severity of her pain, and that she requires additional physical therapy, and possibly surgical treatment to obtain significant improvement in her functional capacity.

From a PM&R perspective, taking into consideration the entire clinical picture, including standards of care and evidence based medicine, impairment is supported from 7/21/2020 to the present secondary to the claimant's medical conditions of chronic low back pain, chronic bilateral hip pain, history of a right sacroiliac joint fusion, history of a right hip labral reconstruction, femoroacetabular impingement of both hips, a left acetabular labrum tear, and lumbar spine spondylosis due to associated pain and decreased mobility. The following restrictions and limitations are supported from 7/21/2020 to the present:

The claimant can lift, carry, push, and pull up to a maximum of 10 pounds occasionally.

The claimant can sit for 1 hour at a time for a total of 6 hours in an 8 hour workday, with the ability to change positions from sitting to standing or walking as needed for comfort.

The claimant can stand for 30 minutes at a time for a total of 2 hours in an 8 hour workday.

The claimant can walk for 30 minutes at a time for a total of 2 hours in an 8 hour workday.

The claimant can occasional bend, kneel, squat, stoop, and climb stairs,

No climbing ladders, exposure to unprotected heights, or operating dangerous machinery while taking muscle relaxant medications or any other potentially sedating medications.

No restrictions or limitations in the use of the upper extremities to perform reaching, handing, grasping, fingering, or keyboarding.

The above noted restrictions and limitations are supported until the claimant undergoes further treatment with a

**Lincoln/Mason 0163**

spinal cord stimulator and/or a possible right total hip arthroplasty. If this has not occurred by 02/10/2021, the claimant should be reevaluated at that time.

The medical rationale for the R/L is to prevent exacerbation of the claimant's symptoms and to prevent further injury.

Based on my review of the records, I believe the above-mentioned restrictions and limitations are supported.  Do you agree?  If you do not agree, why not?  Are there any underlying barriers that I was not made aware of that would preclude the patient from working as described above?  If so, please describe?

Please reply via fax within ten (10) business days by 01/7/21 to the fax number below.  If you have any questions or would like to discuss this case further, please do not hesitate to contact me.

Sincerely,

Eric Kerstman M.D.
Board Certified in Aerospace Medicine
Board Certified in Pain Medicine
Board Certified in Physical Medicine and Rehabilitation

_____                    _____
Name                                                                             Date

Respectfully Yours,
Dawn E Peterson
Client Coordinator

p. p. Eric Kerstman, M.D.

Voice:  1-815-964-6334
Fax:    1-815-964-1162

● Page 2

**Lincoln/Mason 0164**



**December 22, 2020**

**Attending Physician Confirmatory Letter**

Re: Jan  K. Mason

Dear Dr. Kent,

I have completed an appeal review on Jan Mason, a patient you have treated. The patient had listed you as a contact provider. During the time I was reviewing the claim, I spoke with you on 12/18/2020 at 8:13 AM. You stated that you are the claimant's primary care physician and that you last evaluated the claimant on 10/22/2020, and that the claimant has chronic pain involving her low back and hips. You said that you have not addressed the claimant's work capacity, and have not outlined any work restrictions or limitations. You said that the claimant is otherwise healthy and that she has no general medical conditions or medication side effects that would affect her work capacity. You would defer to the claimant's orthopedist and pain management physician regarding her work capacity, restrictions, and limitations. You are expecting to see the claimant for her follow-up next month.

From a PM&R perspective, taking into consideration the entire clinical picture, including standards of care and evidence based medicine, impairment is supported from 7/21/2020 to the present secondary to the claimant's medical conditions of chronic low back pain, chronic bilateral hip pain, history of a right sacroiliac joint fusion, history of a right hip labral reconstruction, femoroacetabular impingement of both hips, a left acetabular labrum tear, and lumbar spine spondylosis due to associated pain and decreased mobility. The following restrictions and limitations are supported from 7/21/2020 to the present:

The claimant can lift, carry, push, and pull up to a maximum of 10 pounds occasionally.

The claimant can sit for 1 hour at a time for a total of 6 hours in an 8 hour workday, with the ability to change positions from sitting to standing or walking as needed for comfort.

The claimant can stand for 30 minutes at a time for a total of 2 hours in an 8 hour workday.

The claimant can walk for 30 minutes at a time for a total of 2 hours in an 8 hour workday.

The claimant can occasional bend, kneel, squat, stoop, and climb stairs,

No climbing ladders, exposure to unprotected heights, or operating dangerous machinery while taking muscle relaxant medications or any other potentially sedating medications.

No restrictions or limitations in the use of the upper extremities to perform reaching, handing, grasping, fingering, or keyboarding.

The above noted restrictions and limitations are supported until the claimant undergoes further treatment with a spinal cord stimulator and/or a possible right total hip arthroplasty. If this has not occurred by 02/10/2021, the claimant should be reevaluated at that time.

The medical rationale for the R/L is to prevent exacerbation of the claimant's symptoms and to prevent further injury.

**Lincoln/Mason 0165**

Based on my review of the records, I believe the above-mentioned restrictions and limitations are supported. Do you agree? If you do not agree, why not? Are there any underlying barriers that I was not made aware of that would preclude the patient from working as described above? If so, please describe?

Please reply via fax within ten (10) business days by 01/7/21 to the fax number below. If you have any questions or would like to discuss this case further, please do not hesitate to contact me.

Sincerely,

Eric Kerstman M.D.
Board Certified in Aerospace Medicine
Board Certified in Pain Medicine
Board Certified in Physical Medicine and Rehabilitation

_____          _____
Name                                        Date

Respectfully Yours,
Dawn E Peterson
Client Coordinator

p. p. Eric Kerstman, M.D.

Voice:  1-815-964-6334
Fax:     1-815-964-1162

● Page 2

**Lincoln/Mason 0166**

| | |
|---|---|
| From: | LFGNotifications@LFG.com |
| Sent: | Thursday, February 11, 2021 11:32:36 AM |
| To: | |
| CC: | |
| BCC: | |
| Subject: | [Send Secure]Charter Communications, Inc. Claim No. 9291624 Jan Mason |
| Attachments: | cc_xstxommu41omn2s9ejmj_9918475_10193799.pdf; |

This notification contains important information regarding a claim with Lincoln Financial Group company. THIS IS AN AUTOMATED EMAIL. PLEASE DO NOT RESPOND. You may use the contact information in the attached letter to respond if needed.

**Lincoln/Mason 0167**



Lincoln Life Assurance Company of Boston
Disability and Life Claims
PO Box 2578
Omaha, NE 68172-9688
Phone No.: (888) 437-7611
Secure Fax No.: (603) 430-1926

February 11, 2021

Dr. Jeffrey Kent
9480 BRIAR VILLAGE POINT STE 2
COLORADO SPRINGS, CO 80920

RE:     Long Term Disability (LTD) Benefits
        Charter Communications, Inc.
        Claim #: 9291624
        Claimant: Jan Mason
        Claimant D.O.B.:

Dear Dr. Jeffrey Kent:

Ms. Mason requested we resend the attached correspondence dated January 5, 2021 to you.

If you have any questions regarding this matter, please contact me.

Sincerely,

Mary Avrett
Appeals Consultant
Phone No.: (888) 437-7611 Ext. 16371
Secure Fax No.: (603) 430-1926

CC:     Jan Mason


Attachments:    9291624-REQUEST-PROVIDER-01.05.2021

**Lincoln/Mason 0168**

| From: | LFGNotifications@LFG.com |
|---|---|
| Sent: | Thursday, February 11, 2021 11:37:22 AM |
| To: | |
| CC: | |
| BCC: | |
| Subject: | [Send Secure]Charter Communications, Inc. Claim No. 9291624 Jan Mason |
| Attachments: | uss5to9hzu9bnq8z8qeb_9918572.pdf; |

This notification contains important information regarding a claim with Lincoln Financial Group company. THIS IS AN AUTOMATED EMAIL. PLEASE DO NOT RESPOND. You may use the contact information in the attached letter to respond if needed.

**Lincoln/Mason 0169**



Lincoln Life Assurance Company of Boston
Disability and Life Claims
PO Box 2578
Omaha, NE 68172-9688
Phone No.: (888) 437-7611
Secure Fax No.: (603) 430-1926

February 11, 2021

Ms. Jan K. Mason

RE:    Long Term Disability (LTD) Benefits
       Charter Communications, Inc.
       Claim #: 9291624

Dear Ms. Jan Mason:

Pursuant to our telephone conversation today, February 11, 2021, we are extending your time to provide additional documentation to March 1, 2021.

Since we are waiting for you to submit additional documentation, the days from the date of this letter until we receive your submission are not counted as part of the appeal determination period.

If you have any questions regarding this matter, please contact me.

Sincerely,

Mary Avrett
Appeals Consultant
Phone No.: (888) 437-7611 Ext. 16371
Secure Fax No.: (603) 430-1926

1 of 1

**Lincoln/Mason 0170**

| | |
|---|---|
| From: | LFGNotifications@LFG.com |
| Sent: | Wednesday, January 27, 2021 1:47:13 PM |
| To: | |
| CC: | |
| BCC: | |
| Subject: | [Send Secure]Charter Communications, Inc. Claim No. 9291624 Jan Mason |
| Attachments: | vuob43ve7s8ewdpjhpld_9820816.pdf; |

This notification contains important information regarding a claim with Lincoln Financial Group company. THIS IS AN AUTOMATED EMAIL. PLEASE DO NOT RESPOND. You may use the contact information in the attached letter to respond if needed.

**Lincoln/Mason 0171**



Lincoln Life Assurance Company of Boston
Disability and Life Claims
PO Box 2578
Omaha, NE 68172-9688
Phone No.: (888) 437-7611
Secure Fax No.: (603) 430-1926

January 27, 2021

Ms. Jan K. Mason

RE:    Long Term Disability (LTD) Benefits
       Charter Communications, Inc.
       Claim #: 9291624

Dear Ms. Jan Mason:

Pursuant to our telephone conversation today, January 27, 2021,  we are extending your time to provide additional documentation to February 10, 2021.

Since we are waiting for you to submit additional documentation, the days from the date of this letter until we receive your submission are not counted as part of the appeal determination period.

If you have any questions regarding this matter, please contact me.

Sincerely,

Mary Avrett
Appeals Consultant
Phone No.: (888) 437-7611 Ext. 16371
Secure Fax No.: (603) 430-1926

1  of  1

**Lincoln/Mason 0172**

Lyles, Phyllis    CSOG7196320088                    (1/11) 01/27/2021 09:46:09 AM -0700



## Colorado Springs Orthopaedic Group

# FAX

Date:    01/27/2021 09:45:34 AM

Subject:  LINCOLN FINANCIAL MED RECS

---

To:  LINCOLN FINANCIAL

Organization:

Fax Number: 16034301926

Phone Number:

From: Lyles, Phyllis

Organization:  Colorado Springs Orthopaedic (

Fax Number:

Phone Number:

Email:

---

Number of Pages: 10

---

Comments:

CLAIM# 9291624

FAX CONFIDENTIALITY STATEMENT

The information contained in this facsimile transmission is intended solely for the addressee(s) named above and is privileged and/or confidential. If the reader of this message is not the intended recipient or the person responsible to deliver it to the intended recipient, you are prohibited from reading or disclosing the information in this transmission. Any examination, use, dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone for instructions.

Sent by Multi-Tech Systems

**FaxFinder**

If you received this fax in error, or would like to opt-out, please call 719-632-7669 , fax 719-632-0088
or email info@csog.net

PAGE 1/11 * RCVD AT 1/27/2021 11:45:55 AM [Eastern Standard Time] * SVR:VA1PWFAX101/1 * DNIS:6034301926 * CSID:CSOG 7196320088    * ANI:17194344425 * DURATION (mm-ss):(

**Lincoln/Mason 0173**

Lyles, Phyllis    CSOG7196320088                    (2/11) 01/27/2021 09:46:40 AM -0700

## AUTHORIZATION TO USE OR DISCLOSE ᶜˢᵒᵍ·ⁿᵉᵗ
## MY HEALTH INFORMATION

**Colorado Springs Orthopaedic Group**

Patient name: ___JAN MASON___ Date of birth: _____

Previous name: _____

**MY AUTHORIZATION**          **FOR: DISABILITY OR FMLA**

You may use or disclose the following health care information (check all that apply):

☒ My entire medical record maintained by Colorado Springs Orthopaedic Group

☐ My health information relating to the following treatment or condition _____

☐ My health information for the date(s): _____

You may disclose/request this health information to:

| Full Name | Phone | Fax | Medical Records | RX pick up |
|---|---|---|---|---|
| LINCOLN FINANCIAL GROUP | 888-437-7611 | 603-430-1926 | ☒Yes ☐ No | ☐ Yes ☒ No |
| | | | ☒Yes ☐ No | ☐ Yes ☒ No |

ATTN: Claim#
MARY
AVRETT
#9291624

Type of Records Requested (check all that apply):

☐ Complete Chart    ☒ Imaging/Radiology Disk    ☒ Imaging Reports    ☒ Test/Lab Reports

☒ Office Notes    ☐ Billing Records    ☒ Surgery Notes

Reason(s) for this authorization (check all that apply):

☐ At my request    ☐ Other (specify)_____

☒ Disability or FMLA Form

This authorization ends*:
*If no end date is provided, this authorization will expire one year from the date of signing.

☒ On (date): _____

☐ When the following event occurs: _____

**MY RIGHTS**

I understand I do not have to sign this authorization in order to get health care benefits (treatment, payment, enrollment or eligibility for benefits). However, I do have to sign an authorization form:
- To receive health care when the purpose is to create health information for a third party.

I may revoke this authorization in writing. If I revoke this authorization, it would not affect any actions already taken by the above-named practice based upon this authorization. I may not be able to revoke this authorization if its purpose was to obtain insurance. Two ways to revoke this authorization are:
- Fill out a revocation form. The form is available from the office;
  or
- Write a letter to the office.

Once the office discloses health information, the person or organization that receives it may be able to redisclose it. Privacy laws may no longer protect it.

_Jan K Mason_____    01/27/21_____

Patient or legally authorized individual signature    Date

_____
Printed name if signed on behalf of the patient    Relationship (parent, legal guardian, personal representative, etc.)

**STOP — For Office Use Only**

We attempted to obtain written acknowledgment of receipt of our Notice of Privacy Practices, but acknowledgment could not be obtained because:

☐ Individual refused to sign    ☐ An emergency situation prevented us from obtaining the acknowledgement

☐ Communication barriers prohibited obtaining the acknowledgement    ☐ Other _____

_____
Colorado Springs Orthopaedic Group Employee Signature

**Lincoln/Mason 0174**

**North Campus**
4110 Briargate Parkway, Suite 300
Colorado Springs, CO 80920
Phone: 719-632-7669
Fax:  719-632-0088

**Colorado Springs
Orthopaedic Group**

www.csog.net

**South Campus**
1259 Lake Plaza Drive, Suite 100
Colorado Springs, CO 80906
Phone: 719-632-7669
Fax:  719-632-0088

Patient Name: **Jan K Mason,**

Patient Phone#:

Encounter Date: **1/19/2021**

Date of Birth:

Patient Account#: 505296

---

## Chief Complaint Right hip pain.

## History of Present Illness

Jan K Mason returns today for follow up. Patient returns today to be evaluated for her right hip. I previously seen her and evaluated her for hip pain however previously suspected that it was primarily due to labral pathology. She subsequently underwent a labral repair by Dr. Huang and unfortunately has not had any pain relief from that. The pain in her groin and buttocks and lateral hip has progressed significantly she states that she has a hard time doing anything including walking around her house going up and down stairs. Patient's tearful today as the pain is continued to get worse and is very limiting to her. She was seen by Charles and given a intra-articular injection following her last visit, she states that she got 3 hours of complete pain relief in her hip following that her pain returned to its original level. She is here today interested in talking about replacement in stating that she's been doing research on the forms for labral repairs and that she believes is what she needs in order to feel better. She does have some degree of back pain as well she realizes this is a separate issue and may not get better if we fix her hip but by far the #1 thing right now is her hip pain.

**Date of Onset:** 2-3 years

## Medical History

**Medical Conditions:** Hypertension

**Surgical History:** Tubal ligation, Rhinoplasty

**Orthopedic Surgical History:** Rt SI Joint Fusion, Labral Repair, Labral Reconstruction

**Current Medications:** Claritin 10 mg tablet 1 oral, Ambien 5 mg tablet 1 oral, metoprolol succinate ER 50 mg tablet,extended release 24 hr 1 Tb24 oral, losartan 50 mg tablet 1 oral, Junel FE 1/20 (28) 1 mg-20 mcg tablet oral, cyclobenzaprine 10 mg tablet 1 by mouth Q8h spasms, Valium 2 mg tablet 1 tablet(s) by mouth as directed TAKE ONE PILL, ONE HOUR PRIOR TO PROCEDURE

**Medication and Allergic Reactions:** No known allergies

**Family History:** No significant family history.

**Personal and Social History:**

The patient does not smoke or use tobacco products. The patient does not use marijuana, CBD products, or illicit drugs. The patient currently does not consume alcohol. She is temporarily disabled.

## Review of Systems

**Constitutional:** The patient denies any unexplained weight loss, weight gain, fever, chills or fatigue.

**Eyes:** The patient denies any corrective lenses, blurred or double vision, eye pain, redness or watery eyes.

**Ear/Nose/Throat:** The patient denies any headaches, difficulty swallowing, nose bleeds, ringing in ears or earaches.

**Cardiovascular:** The patient denies any chest pain, palpitations, fainting or murmurs.

---

**ELECTRONICALLY SIGNED BY Tyler R. Bron, M.D.**

1 of 3

Lincoln/Mason 0175

**Patient Name:** Mason, Jan K
**DOB:**

---

**Respiratory:** The patient denies any shortness of breath, wheezing, chronic coughing, tightness, inspiration pain or snoring.
**Gastrointestinal:** The patient denies any heartburn, nausea, vomiting, constipation, diarrhea, or bloody/tarry stools
**Genitourinary:** The patient denies any difficult or painful urination, frequent urination or blood in urine.
**Musculoskeletal:** The patient denies any joint pain, swelling, instability, stiffness, redness or muscle pain.
**Skin:** The patient denies skin changes, poor healing, rash, itching or redness.
**Neurological:** The patient denies numbness, tingling, unsteady gait, dizziness, tremors or seizures.
**Psychiatric:** The patient denies nervousness, anxiety, depression or hallucinations.
**Hematological:** The patient denies bleeding or bruising easily.
**Endocrine:** The patient denies excessive thirst, excessive urination or intolerance to heat and cold.

**Vital Signs:** Height: 5ft 8.00in, Weight: 188lbs

## General Exam:
**Constitutional:** Gen: Appropriately groomed, no evidence of malnutrition, no acute distress
Skin: No rashes, ulcers, or lesions on regions examined
Mental status: Oriented to time, person, place and situation, mood and affect are appropriate
Cardio: Regular rate and rhythm
Vascular: No edema, no calf swelling or pain, peripheral pulses 2+
Pulm: Non-labored breathing
Abd: Soft, non-tender to palpation

## Right Hip/Pelvis Examination
Skin is clean and dry, without erythema or warmth. There are no superficial signs of infection. ROM is limited with flexion to 120, IR is 20 degrees and ER is 25 degrees. Flexion, internal rotation and external rotation elicit groin pain. Pain is most severe with internal rotation. Strength test shows quad and hamstring strength to be 5/5. Plantar and dorsiflexion strength 5/5. SILT diffuse lower extremity. Pulses are 2+/4 DP and PT. No peripheral edema noted.
**Previous Imaging Findings:** AP pelvis as well as AP and lateral radiographs of the Right hip performed in the office and reviewed by myself reveal moderate degenerative changes. The patient has moderate joint space narrowing with subchondral sclerosis noted on femoral and acetabular sides of joint. There is mild osteophyte as well as cystic formation on both the femoral and acetabular sides of the joint. No signs of joint subluxation.

**Diagnostic Test Findings:** MRI reviewed from January 2021 shows no significant chondral thinning difficult to assess the status labral repair although does not appear to grossly failed.

## Assessment and Plan:
**Diagnosis Codes:**
M16.11 Unilateral primary osteoarthritis, right hip Right
**Impression:**
M16.11 Unilateral primary osteoarthritis, right hip

Patient's a very pleasant 48-year-old female right hip pain previous history of 2 arthroscopies with labral reconstruction.

**Treatment Plan:**
Patient's pain is continued to be severe and this point I believe she has failed treatment with labral repair and reconstruction. The intra-articular injection did give her significant relief although it did not last very long. She is miserable

---

**ELECTRONICALLY SIGNED BY Tyler R. Bron, M.D.**

2 of 3

Lincoln/Mason 0176

**Patient Name:** Mason, Jan K
**DOB:**

has not had any significant improvement with previous treatment and states that her life is negatively impacted, she states that her quality of life at this time is very low. She'll like to proceed forward with total hip arthroplasty she left today to think about her options and will let us know how she would to proceed.
Patient education on Fall prevention was provided to the patient. Patient was provided with patient education on NSAIDs. The patient is instructed to return if pain or symptoms arise.
The patient was screened for COVID risk factors. These included respiratory symptoms, recent travel, and exposure to sick contacts. All questions asked were negative. The patient was brought back to a room that had been disinfected with germicidal surface wipes. This includes the counters, exam tables, chairs and door handles.

**Clinical Quality Reporting:**
The patient has received the influenza vaccination.

Electronically signed by: Tyler R. Bron, M.D.
Date: 1/19/2021 Time:1:45 PM

CC: A copy of the office visit notes will be forwarded to the patient's referring physician. Copies sent along with cover letter sent to the patient's primary care physician.

**ELECTRONICALLY SIGNED BY Tyler R. Bron, M.D.**

3 of 3

Lincoln/Mason 0177

Lyles, Phyllis    CSOG7196320088                    (6/11) 01/27/2021 09:50:13 AM -0700



**North Campus**
4110 Briargate Parkway, Suite 300
Colorado Springs, CO 80920
Phone: 719-632-7669

Fax: 719-632-0088

**Colorado Springs Orthopaedic Group**

www.csog.net

**South Campus**
1259 Lake Plaza Drive, Suite 100
Colorado Springs, CO 80906
Phone: 719-632-7669

Fax: 719-632-0088

Patient Name: **Jan K Mason,**

Patient Phone#:

Encounter Date: **1/12/2021**

Date of Birth:

Patient Account#: **505296**

Fluoro Guided Injection Right Hip
Ordering Provider: Tyler Bron, M.D.
Reading Radiologist: Adam Foster, D.O.

IMPRESSION:

1. Status post fluoroscopic pain injection with the patient's preprocedural pain level 5/10 and postprocedural pain level 0/10.

CLINICAL INDICATION:

Right hip pain. The orders stated that this injection was performed with bupivacaine only and no steroid. This was reviewed in length with the patient and she was in full agreement that this was the plan to go forward. I did emphasize that pain relief would only be expected to last for a few hours and she voiced her understanding.

TECHNICAL DATA:

Right hip fluoroscopic pain injection. Fluoroscopy time: 10 seconds. No saved images.

FINDINGS:

Comparison: None available.

The risks and benefits of the procedure including but not limited to pain, bleeding, infection, damage to surrounding soft tissues, and allergic reaction of varying severity were explained to the patient. Informed and written consent was obtained.

The patient was placed in an oblique position. The femoral artery was palpated. The skin site over the femoral head was prepped and draped in the usual sterile manner. Lidocaine was injected subcutaneously and deeply for local anesthesia. A 22-gauge spinal needle was advanced into the joint space. A small quantity of iodinated contrast was injected to confirm intra-articular position. Subsequently approximately 4 mL of 4 mL bupivacaine was injected without difficulty. The patient tolerated the procedure well. There are no immediate complications.

The patient's preprocedural pain level was 5/10 and postprocedural pain level was 0/10.

Electronically signed by Adam Foster, D.O.

Report E-Signed By: ADAM FOSTER at 1/12/2021 3:39 PM
WSN:CSOG_ISIGHT

**ELECTRONICALLY SIGNED**

**1 of 1**

**Lincoln/Mason 0178**

Lyles, Phyllis    CSOG7196320088                    (7/11) 01/27/2021 09:50:51 AM -0700

**North Campus**
4110 Briargate Parkway, Suite 300
Colorado Springs, CO 80920
Phone: 719-632-7669
Fax: 719-632-0088

**Colorado Springs
Orthopaedic Group**

www.csog.net

**South Campus**
1259 Lake Plaza Drive, Suite 100
Colorado Springs, CO 80906
Phone: 719-632-7669
Fax: 719-632-0088

Patient Name: **Jan K Mason,**

Patient Phone#:

Encounter Date: **1/12/2021**

Date of Birth:

Patient Account#: **505296**

---

MRI Right Hip W/O Contrast
Ordering Provider: Tyler Bron, M.D.
Reading Radiologist: Adam Foster, D.O.

**IMPRESSION:**
Extensive prior right labral repair extending from the 10-3 o'clock position through the superior labrum. There is no high-grade repeat tearing of the labrum. At the anterior and posterior margins of the repair there are small foci of fluid undercutting the labrum at the chondral labral junction. This could represent the far margins of previously repaired labral tear versus small sublabral recesses.

Suboptimal imaging of the articular surfaces secondary to the fixation tracts in the superior acetabulum. There is no high-grade cartilage loss or large chondral defect. No large joint effusion.

Small focus of fluid at the undersurface of the right hamstring tendon insertion. This could represent a very small hamstring tendon tear. There are similar findings involving the left hamstring tendon insertion.

Previous arthrodesis of the right sacroiliac joint. No visualized acute complication. Although there is limitation secondary to magnetic field distortion.

**CLINICAL INDICATION:**

Chronic high-grade hip pain. Patient point primarily to her posterior location of pain.

**TECHNICAL DATA:**

Multisequence, multiplanar MRI of the right hip and bony pelvis was performed without IV contrast.

Comparisons: December 4, 2020.

**FINDINGS:**

**Bones:**
Arthrodesis fixation hardware of the right sacroiliac joint. This creates magnetic field artifact surrounding the right SI joint. There are no signal changes of the osseous structures of the pelvis to suggest fracture or stress edema. There is marrow reconversion throughout the marrow space with a patchy-appearing T1 appearance.

Right femoral acetabular articulation:

---

**ELECTRONICALLY SIGNED**

1 of 2

PAGE 7/11 * RCVD AT 1/27/2021 11:45:55 AM [Eastern Standard Time] * SVR:VA1PWFAX101/1 * DNIS:6034301926 * CSID:CSOG 7196320088    * ANI:17194344425 * DURATION (mm-ss):(

Lincoln/Mason 0179

**Patient Name:** Mason, Jan K

**DOB:**

---

History of extensive right labral repair with fixation pin tracts extending from approximately 10-3 through the superior labrum. The repaired labrum appears intact without evidence of tear. At the anterior and posterior margins of the tear there are small foci of fluid that undercutting the labrum at the chondral labral junction. This could represent a small recess versus the edges of previously repaired tear. There is no evidence of a displaced labral tear or extensive tearing. No large joint effusion.There is a small amount of artifact within the superior acetabulum from the repaired tract was somewhat limits evaluation of the cartilage. There is no visualized high-grade chondral defect of the right hip.

Left femoral acetabular articulation:
Only seen on the wide field of view images. The labrum is poorly evaluated without a large tear or paravertebral labral cyst.No high-grade joint space loss. No joint effusion.

Muscles, tendons and bursa:
The rectus femoris and iliopsoas tendons are intact. The adductors are unremarkable.The gluteus minimus and medius insertions are intact. No large fluid collection along the greater trochanter to suggest high-grade bursitis. There is a small focus of fluid at the undersurface of the right hamstring tendon insertion. This likely represents a small partial-thickness tear. There are similar findings involving the left hamstring tendon insertion but slightly less prominent.

Partially visualized lumbar spine:
The partially visualized lower lumbar spine demonstrates only mild degenerative changes at the L5-S1 level.

Pubic symphysis joint:
The pubic symphysis articulation appears normal.

Other:No other significant findings.

Electronically signed by Adam Foster, D.O.

Report E-Signed By: ADAM FOSTER at 1/12/2021 3:36 PM
WSN:CSOG_ISIGHT

---

**ELECTRONICALLY SIGNED**

2 of 2

Lincoln/Mason 0180



**North Campus**
4110 Briargate Parkway, Suite 300
Colorado Springs, CO 80920
Phone: 719-632-7669
Fax: 719-632-0088

**Colorado Springs Orthopaedic Group**
www.csog.net

**South Campus**
1259 Lake Plaza Drive, Suite 100
Colorado Springs, CO 80906
Phone: 719-632-7669
Fax: 719-632-0088

| | | |
|---|---|---|
| Patient Name: Jan K Mason,<br>Patient Phone#: | Encounter Date: **12/4/2020** | Date of Birth:<br>Patient Account#: 505296 |

---

**Chief Complaint** Pain right hip pain.

## History of Present Illness

Jan K Mason is a 48 year old female being evaluated today for Pain of the right hip pain. She was referred to us to by Dr. Haung's clinic, has had increasing hip pain for the last few years. Originally saw Dr. Wong had labral repair chondroplasty performed in April 2019. Had revision surgery with reconstruction of the labrum performed in December 2019. States that when she started to weight-bear after the surgery she had immediate pain within her right groin area, focused within a C-shaped tight type pattern throughout her right hip. Since this time she has had discontinued C-shaped type pattern pain throughout the hip area as well as posterior gluteal and piriformis type pain. States she has occasional giving out sensations within the right hip especially with extensive walking and standing activities. Has had previous interarticular injection performed prior to both of these surgeries, states this injection did provide near complete pain relief with the groin, C-shaped type pattern pain and posterior gluteal pain as well. Has a previous history of SI joint fusion performed on the right side as well. Does occasionally have some SI joint pain on the right more significant on the left side, she is unsure if this is compensatory pain due to her change in gait be due to the hip pain. Presents today for discussion of further treatment and if she is a candidate for a total hip replacement at this time. Of note does have a known history of left hip labral tear with Cam deformity of the femoral head.

**Date of Onset:** 2-3 years

## Medical History

**Medical Conditions:** Hypertension
**Surgical History:** Tubal ligation, Rhinoplasty
**Orthopedic Surgical History:** Rt SI Joint Fusion, Labral Repair, Labral Reconstruction
**Current Medications:** Claritin 10 mg tablet 1 oral, Ambien 5 mg tablet 1 oral, metoprolol succinate ER 50 mg tablet,extended release 24 hr 1 Tb24 oral, losartan 50 mg tablet 1 oral, Junel FE 1/20 (28) 1 mg-20 mcg tablet oral, cyclobenzaprine 10 mg tablet 1 by mouth Q8h spasms
**Medication and Allergic Reactions:** No known allergies
**Family History:** No significant family history.
**Personal and Social History:**
The patient does not smoke or use tobacco products. The patient does not use marijuana, CBD products, or illicit drugs. The patient currently does not consume alcohol. She is temporarily disabled.

## Review of Systems

---

**ELECTRONICALLY SIGNED BY Charles W. Dowell, PA**

1 of 3

Lincoln/Mason 0181

Lyles, Phyllis   CSOG7196320088                    (10/11) 01/27/2021 09:52:55 AM -0700

**Patient Name:** Mason, Jan K
**DOB:**

General/constitutional: Denies unplanned weightloss, Denies constitutional symptoms
HEENT: No vision, hearing changes
Endocrine: Denies any current issues with the endocrine system
Respiratory: Denies shortness of breath or breathing problems. Denies cough.
Cardiovascular: Denies chest pain. Denies shortness of breath with exertion. Denies chest pain with exertion.
Gastrointestinal: Denies abdominal pain. Denies any bloody stool.
Hematology: Denies easy bruising or prolonged breathing. No history of blood clots
Skin: Denies discoloration or rashes.
Neurologic: Denies any problems with balance and dizziness or fainting
Psychiatric: Denies any current issues with psychiatric conditions

**Vital Signs:** Height: 5ft 8.00in, Weight: 188lbs

## General Exam:
**Constitutional:** Patient is adequately groomed with no evidence of malnutrition.
Gen: Appropriately groomed, no evidence of malnutrition, no acute distress
Skin: No rashes, ulcers, or lesions on regions examined
Mental status: Oriented to time, person, place and situation, mood and affect are appropriate
Cardio: Regular rate and rhythm
Vascular: No edema, no calf swelling or pain, peripheral pulses 2+
Pulm: Non-labored breathing
Abd: Soft, non-tender to palpation

## Right Hip/Pelvis Examination
Skin is clean and dry, without erythema or warmth. There are no superficial signs of infection. ROM is limited with flexion to 120, IR is 20 degrees and ER is 25 degrees. Flexion, internal rotation and external rotation elicit groin pain. Pain is most severe with internal rotation. Strength test shows quad and hamstring strength to be 5/5. Plantar and dorsiflexion strength 5/5. SILT diffuse lower extremity. Pulses are 2+/4 DP and PT. No peripheral edema noted.

**Imaging Orders:** 2-3 views of the right hip were ordered, obtained and interpreted from an orthopedic standpoint.

**Hip/Pelvis Xrays:** AP pelvis as well as AP and lateral radiographs of the Right hip performed in the office and reviewed by myself reveal moderate degenerative changes. The patient has moderate joint space narrowing with subchondral sclerosis noted on femoral and acetabular sides of joint. There is mild osteophyte as well as cystic formation on both the femoral and acetabular sides of the joint. No signs of joint subluxation.

## Assessment and Plan:

**Diagnosis Codes:**
M16.11 Unilateral primary osteoarthritis, right hip
**Impression:**
48-year-old female right hip pain previous history of 2 arthroscopies with labral reconstruction.

**Treatment Plan:**
Discussed the patient today that although her pain does seem to be consistent with progressive arthritic changes noted within her hip, she has moderate changes noted on the x-rays. We discussed for this reason we would like to obtain an MRI

**ELECTRONICALLY SIGNED BY Charles W. Dowell, PA**

2 of 3

PAGE 10/11 * RCVD AT 1/27/2021 11:45:55 AM [Eastern Standard Time] * SVR:VA1PWFAX101/1 * DNIS:6034301926 * CSID:CSOG 7196320088   * ANI:17194344425 * DURATION (mm-ss)

Lincoln/Mason 0182

Lyles, Phyllis    CSOG7196320088                    (11/11) 01/27/2021 09:53:46 AM -0700

Patient Name: Mason, Jan K
DOB:

to evaluate significant her cartilage loss is within the right hip area. We would also like to perform an intra-articular injection for diagnostic and therapeutic purposes. We want to ensure that this injection will relieve her groin and C-shaped type pattern pain but the most concerning we want to make sure this relieves her posterior gluteal pain which she states is her most significant pain at this time. If she gets no improvement from the intra-articular injection due within this posterior gluteal pain we discussed this could be referred pain from her low back or SI joint area and may need to be worked up prior to proceeding with any intervention regarding her hip. Patient was understandable and agree with this plan will obtain the MRI and the injection and report back to us.

An MRI of the Right Hip without contrast was ordered. A fiuroro guided injection was ordered for Right Hip.

Patient education on Fall prevention was provided to the patient. Patient was provided with patient education on NSAIDs. Patient was provided with patient education on X-Ray Exposure Safety.

The patient is instructed to return if pain or symptoms arise.

The patient was screened for COVID risk factors. These included respiratory symptoms, recent travel, and exposure to sick contacts. All questions asked were negative. The patient was brought back to a room that had been disinfected with germicidal surface wipes. This includes the counters, exam tables, chairs and door handles.

## Clinical Quality Reporting:
The patient has received the influenza vaccination.

Electronically signed by: Charles W. Dowell, PA
Date: 12/4/2020 Time:12:30 PM

CC: A copy of the office visit notes will be forwarded to the patient's referring physician. Copies sent along with cover letter sent to the patient's primary care physician.

ELECTRONICALLY SIGNED BY Charles W. Dowell, PA

3 of 3

Lincoln/Mason 0183

ATTN: MARY AVRETT

FROM: JAN MASON

CLAIM# 9291624

Lincoln/Mason 0184

**North Campus**
41 10 Briargate Parkway, Suite 300
Colorado Springs, CO 80920
Phone: 719-632-7669
Fax: 719-632-0088

**Colorado Springs
Orthopaedic Group**

www.csog.net

**South Campus**
1259 Lake Plaza Drive, Suite 100
Colorado Springs, CO 80906
Phone: 719-632-7669
Fax: 719-632-0088

Patient Name: **Jan K Mason,**
Patient Phone#:

Encounter Date: **1/19/2021**

Date of Birth:
Patient Account#: 505296

**Chief Complaint** Right hip pain.
**History of Present Illness**
Jan K Mason returns today for follow up. Patient returns today to be evaluated for her right hip. I previously seen her and evaluated her for hip pain however previously suspected that it was primarily due to labral pathology. She subsequently underwent a labral repair by Dr. Huang and unfortunately has not had any pain relief from that. The pain in her groin and buttocks and lateral hip has progressed significantly she states that she has a hard time doing anything including walking around her house going up and down stairs. Patient's tearful today as the pain is continued to get worse and is very limiting to her. She was seen by Charles and given a intra-articular injection following her last visit, she states that she got 3 hours of complete pain relief in her hip following that her pain returned to its original level. She is here today interested in talking about replacement in stating that she's been doing research on the forms for labral repairs and that she believes is what she needs in order to feel better. She does have some degree of back pain as well she realizes this is a separate issue and may not get better if we fix her hip but by far the #1 thing right now is her hip pain.

**Date of Onset:** 2-3 years

**Medical History**
**Medical Conditions:** Hypertension
**Surgical History:** Tubal ligation, Rhinoplasty
**Orthopedic Surgical History:** Rt SI Joint Fusion, Labral Repair, Labral Reconstruction
**Current Medications:** Claritin 10 mg tablet 1 oral, Ambien 5 mg tablet 1 oral, metoprolol succinate ER 50 mg tablet,extended release 24 hr 1 Tb24 oral, losartan 50 mg tablet 1 oral, Junel FE 1/20 (28) 1 mg-20 mcg tablet oral, cyclobenzaprine 10 mg tablet 1 by mouth Q8h spasms, Valium 2 mg tablet 1 tablet(s) by mouth as directed TAKE ONE PILL, ONE HOUR PRIOR TO PROCEDURE
**Medication and Allergic Reactions:** No known allergies
**Family History:** No significant family history.
**Personal and Social History:**
The patient does not smoke or use tobacco products. The patient does not use marijuana, CBD products, or illicit drugs. The patient currently does not consume alcohol. She is temporarily disabled.

**Review of Systems**

**Constitutional:** The patient denies any unexplained weight loss, weight gain, fever, chills or fatigue.
**Eyes:** The patient denies any corrective lenses, blurred or double vision, eye pain, redness or watery eyes.
**Ear/Nose/Throat:** The patient denies any headaches, difficulty swallowing, nose bleeds, ringing in ears or earaches.
**Cardiovascular:** The patient denies any chest pain, palpitations, fainting or murmurs.

**ELECTRONICALLY SIGNED BY Tyler R. Bron, M.D.**

**Lincoln/Mason 0185**

**Patient Name:** Mason, Jan K
**DOB:**

**Respiratory:** The patient denies any shortness of breath, wheezing, chronic coughing, tightness, inspiration pain or snoring.
**Gastrointestinal:** The patient denies any heartburn, nausea, vomiting, constipation, diarrhea, or bloody/tarry stools
**Genitourinary:** The patient denies any difficult or painful urination, frequent urination or blood in urine.
**Musculoskeletal:** The patient denies any joint pain, swelling, instability, stiffness, redness or muscle pain.
**Skin:** The patient denies skin changes, poor healing, rash, itching or redness.
**Neurological:** The patient denies numbness, tingling, unsteady gait, dizziness, tremors or seizures.
**Psychiatric:** The patient denies nervousness, anxiety, depression or hallucinations.
**Hematological:** The patient denies bleeding or bruising easily.
**Endocrine:** The patient denies excessive thirst, excessive urination or intolerance to heat and cold.

**Vital Signs:** Height: 5ft 8.00in, Weight: 188lbs

## General Exam:

**Constitutional:** Gen: Appropriately groomed, no evidence of malnutrition, no acute distress
Skin: No rashes, ulcers, or lesions on regions examined
Mental status: Oriented to time, person, place and situation, mood and affect are appropriate
Cardio: Regular rate and rhythm
Vascular: No edema, no calf swelling or pain, peripheral pulses 2+
Pulm: Non-labored breathing
Abd: Soft, non-tender to palpation

## Right Hip/Pelvis Examination

Skin is clean and dry, without erythema or warmth. There are no superficial signs of infection. ROM is limited with flexion to 120, IR is 20 degrees and ER is 25 degrees. Flexion, internal rotation and external rotation elicit groin pain. Pain is most severe with internal rotation. Strength test shows quad and hamstring strength to be 5/5. Plantar and dorsiflexion strength 5/5. SILT diffuse lower extremity. Pulses are 2+/4 DP and PT. No peripheral edema noted.

**Previous Imaging Findings:** AP pelvis as well as AP and lateral radiographs of the Right hip performed in the office and reviewed by myself reveal moderate degenerative changes. The patient has moderate joint space narrowing with subchondral sclerosis noted on femoral and acetabular sides of joint. There is mild osteophyte as well as cystic formation on both the femoral and acetabular sides of the joint. No signs of joint subluxation.

**Diagnostic Test Findings:** MRI reviewed from January 2021 shows no significant chondral thinning difficult to assess the status labral repair although does not appear to grossly failed.

## Assessment and Plan:
**Diagnosis Codes:**
M16.11 Unilateral primary osteoarthritis, right hip Right
**Impression:**
M16.11 Unilateral primary osteoarthritis, right hip

Patient's a very pleasant 48-year-old female right hip pain previous history of 2 arthroscopies with labral reconstruction.

## Treatment Plan:
Patient's pain is continued to be severe and this point I believe she has failed treatment with labral repair and reconstruction. The intra-articular injection did give her significant relief although it did not last very long. She is miserable

**ELECTRONICALLY SIGNED BY Tyler R. Bron. M.D.**
PAGE 3/10 * RCVD AT 1/27/2021 1:41:10 PM [Eastern Standard Time] * SVR:VA1PWFAX401/2 * DNIS:6034301926 * CSID: * ANI:17195279828 * DURATION (mm-ss):03-10  of 3

**Lincoln/Mason 0186**

**Patient Name:** Mason, Jan K
**DOB:**

has not had any significant improvement with previous treatment and states that her life is negatively impacted, she states that her quality of life at this time is very low. She'll like to proceed forward with total hip arthroplasty she left today to think about her options and will let us know how she would to proceed.

Patient education on Fall prevention was provided to the patient. Patient was provided with patient education on NSAIDs. The patient is instructed to return if pain or symptoms arise.

The patient was screened for COVID risk factors. These included respiratory symptoms, recent travel, and exposure to sick contacts. All questions asked were negative. The patient was brought back to a room that had been disinfected with germicidal surface wipes. This includes the counters, exam tables, chairs and door handles.

**Clinical Quality Reporting:**
The patient has received the influenza vaccination.

Electronically signed by: Tyler R. Bron, M.D.
Date: 1/19/2021 Time:1:45 PM

CC: A copy of the office visit notes will be forwarded to the patient's referring physician. Copies sent along with cover letter sent to the patient's primary care physician.

**ELECTRONICALLY SIGNED BY Tyler R. Bron, M.D.**

**Lincoln/Mason 0187**



**North Campus**
4110 Briargate Parkway, Suite 300
Colorado Springs, CO 80920
Phone: 719-632-7669
Fax: 719-632-0088

**Colorado Springs Orthopaedic Group**
www.csog.net

**South Campus**
1259 Lake Plaza Drive, Suite 100
Colorado Springs, CO 80906
Phone: 719-632-7669
Fax: 719-632-0088

Patient Name: Jan K Mason,

Patient Phone#:

Encounter Date: **1/12/2021**

Date of Birth:

Patient Account#: 505296

---

Fluoro Guided Injection Right Hip
Ordering Provider: Tyler Bron, M.D.
Reading Radiologist: Adam Foster, D.O.

IMPRESSION:

1. Status post fluoroscopic pain injection with the patient's preprocedural pain level 5/10 and postprocedural pain level 0/10.

CLINICAL INDICATION:

Right hip pain. The orders stated that this injection was performed with bupivacaine only and no steroid. This was reviewed in length with the patient and she was in full agreement that this was the plan to go forward. I did emphasize that pain relief would only be expected to last for a few hours and she voiced her understanding.

TECHNICAL DATA:

Right hip fluoroscopic pain injection. Fluoroscopy time: 10 seconds. No saved images.

FINDINGS:

Comparison: None available.

The risks and benefits of the procedure including but not limited to pain, bleeding, infection, damage to surrounding soft tissues, and allergic reaction of varying severity were explained to the patient. Informed and written consent was obtained.

The patient was placed in an oblique position. The femoral artery was palpated. The skin site over the femoral head was prepped and draped in the usual sterile manner. Lidocaine was injected subcutaneously and deeply for local anesthesia. A 22-gauge spinal needle was advanced into the joint space. A small quantity of iodinated contrast was injected to confirm intra-articular position. Subsequently approximately 4 mL of 4 mL bupivacaine was injected without difficulty. The patient tolerated the procedure well. There are no immediate complications.

The patient's preprocedural pain level was 5/10 and postprocedural pain level was 0/10.

Electronically signed by Adam Foster, D.O.

Report E-Signed By: ADAM FOSTER at 1/12/2021 3:39 PM
WSN:CSOG_ISIGHT

---

**ELECTRONICALLY SIGNED**

**Lincoln/Mason 0188**



**North Campus**
4110 Briargate Parkway, Suite 300
Colorado Springs, CO  80920
Phone: 719-632-7669
Fax:  719-632-0088

**Colorado Springs Orthopaedic Group**
www.csog.net

**South Campus**
1259 Lake Plaza Drive, Suite 100
Colorado Springs, CO  80906
Phone: 719-632-7669
Fax:  719-632-0088

Patient Name: Jan K Mason,

Patient Phone#:

Encounter Date: 1/12/2021

Date of Birth:

Patient Account#: 505296

MRI Right Hip W/O Contrast
Ordering Provider: Tyler Bron, M.D.
Reading Radiologist: Adam Foster, D.O.

**IMPRESSION:**

Extensive prior right labral repair extending from the 10-3 o'clock position through the superior labrum. There is no high-grade repeat tearing of the labrum. At the anterior and posterior margins of the repair there are small foci of fluid undercutting the labrum at the chondral labral junction. This could represent the far margins of previously repaired labral tear versus small sublabral recesses.

Suboptimal imaging of the articular surfaces secondary to the fixation tracts in the superior acetabulum. There is no high-grade cartilage loss or large chondral defect. No large joint effusion.

Small focus of fluid at the undersurface of the right hamstring tendon insertion. This could represent a very small hamstring tendon tear. There are similar findings involving the left hamstring tendon insertion.

Previous arthrodesis of the right sacroiliac joint. No visualized acute complication. Although there is limitation secondary to magnetic field distortion.

**CLINICAL INDICATION:**

Chronic high-grade hip pain. Patient point primarily to her posterior location of pain.

**TECHNICAL DATA:**

Multisequence, multiplanar MRI of the right hip and bony pelvis was performed without IV contrast.

Comparisons: December 4, 2020.

**FINDINGS:**

Bones:
Arthrodesis fixation hardware of the right sacroiliac joint. This creates magnetic field artifact surrounding the right SI joint. There are no signal changes of the osseous structures of the pelvis to suggest fracture or stress edema. There is marrow reconversion throughout the marrow space with a patchy-appearing T1 appearance.

Right femoral acetabular articulation:

**ELECTRONICALLY SIGNED**

**Lincoln/Mason 0189**

Patient Name: Mason, Jan K
DOB:

History of extensive right labral repair with fixation pin tracts extending from approximately 10-3 through the superior labrum. The repaired labrum appears intact without evidence of tear. At the anterior and posterior margins of the tear there are small foci of fluid that undercutting the labrum at the chondral labral junction. This could represent a small recess versus the edges of previously repaired tear. There is no evidence of a displaced labral tear or extensive tearing. No large joint effusion.There is a small amount of artifact within the superior acetabulum from the repaired tract was somewhat limits evaluation of the cartilage. There is no visualized high-grade chondral defect of the right hip.

Left femoral acetabular articulation:
Only seen on the wide field of view images. The labrum is poorly evaluated without a large tear or paravertebral labral cyst.No high-grade joint space loss. No joint effusion.

Muscles, tendons and bursa:
The rectus femoris and iliopsoas tendons are intact. The adductors are unremarkable.The gluteus minimus and medius insertions are intact. No large fluid collection along the greater trochanter to suggest high-grade bursitis. There is a small focus of fluid at the undersurface of the right hamstring tendon insertion. This likely represents a small partial-thickness tear. There are similar findings involving the left hamstring tendon insertion but slightly less prominent.

Partially visualized lumbar spine:
The partially visualized lower lumbar spine demonstrates only mild degenerative changes at the L5-S1 level.

Pubic symphysis joint:
The pubic symphysis articulation appears normal.

Other:No other significant findings.

Electronically signed by Adam Foster, D.O.

Report E-Signed By: ADAM FOSTER at 1/12/2021 3:36 PM
WSN:CSOG_ISIGHT

**ELECTRONICALLY SIGNED**
PAGE 7/10 * RCVD AT 1/27/2021 1:41:10 PM [Eastern Standard Time] * SVR:VA1PWFAX401/2 * DNIS:6034301926 * CSID: * ANI:17195279828 * DURATION (mm-ss):03-10    2 of 2

**Lincoln/Mason 0190**



**North Campus**
4110 Briargate Parkway, Suite 300
Colorado Springs, CO  80920
Phone: 719-632-7669
Fax:  719-632-0088

**Colorado Springs Orthopaedic Group**

www.csog.net

**South Campus**
1259 Lake Plaza Drive, Suite 100
Colorado Springs, CO  80906
Phone: 719-632-7669
Fax:  719-632-0088

Patient Name:  Jan K Mason,

Patient Phone#:

Encounter Date: 12/4/2020

Date of Birth:

Patient Account#: 505296

---

## Chief Complaint Pain right hip pain.

## History of Present Illness

Jan K Mason is a 48 year old female being evaluated today for Pain of the right hip pain. She was referred to us to by Dr. Haung's clinic, has had increasing hip pain for the last few years. Originally saw Dr. Wong had labral repair chondroplasty performed in April 2019. Had revision surgery with reconstruction of the labrum performed in December 2019. States that when she started to weight-bear after the surgery she had immediate pain within her right groin area, focused within a C-shaped tight type pattern throughout her right hip. Since this time she has had discontinued C-shaped type pattern pain throughout the hip area as well as posterior gluteal and piriformis type pain. States she has occasional giving out sensations within the right hip especially with extensive walking and standing activities. Has had previous interarticular injection performed prior to both of these surgeries, states this injection did provide near complete pain relief with the groin, C-shaped type pattern pain and posterior gluteal pain as well. Has a previous history of SI joint fusion performed on the right side as well. Does occasionally have some SI joint pain on the right more significant on the left side, she is unsure if this is compensatory pain due to her change in gait be due to the hip pain. Presents today for discussion of further treatment and if she is a candidate for a total hip replacement at this time. Of note does have a known history of left hip labral tear with Cam deformity of the femoral head.

**Date of Onset:** 2-3 years

## Medical History
**Medical Conditions:** Hypertension
**Surgical History:** Tubal ligation, Rhinoplasty
**Orthopedic Surgical History:** Rt SI Joint Fusion, Labral Repair, Labral Reconstruction
**Current Medications:** Claritin 10 mg tablet 1 oral, Ambien 5 mg tablet 1 oral, metoprolol succinate ER 50 mg tablet,extended release 24 hr 1 Tb24 oral, losartan 50 mg tablet 1 oral, Junel FE 1/20 (28) 1 mg-20 mcg tablet oral, cyclobenzaprine 10 mg tablet 1 by mouth Q8h spasms
**Medication and Allergic Reactions:** No known allergies
**Family History:** No significant family history.
**Personal and Social History:**
The patient does not smoke or use tobacco products. The patient does not use marijuana, CBD products, or illicit drugs. The patient currently does not consume alcohol. She is temporarily disabled.

## Review of Systems

---

**ELECTRONICALLY SIGNED BY Charles W. Dowell, PA**
PAGE 8/10 * RCVD AT 1/27/2021 1:41:10 PM [Eastern Standard Time] * SVR:VA1PWFAX401/2 * DNIS:6034301926 * CSID: * ANI:17195279828 * DURATION (mm-ss):03-10 **1 of 3**

**Lincoln/Mason 0191**

**Patient Name:** Mason, Jan K
**DOB:**

General/constitutional: Denies unplanned weightloss, Denies constitutional symptoms
HEENT: No vision, hearing changes
Endocrine: Denies any current issues with the endocrine system
Respiratory: Denies shortness of breath or breathing problems. Denies cough.
Cardiovascular: Denies chest pain. Denies shortness of breath with exertion. Denies chest pain with exertion.
Gastrointestinal: Denies abdominal pain. Denies any bloody stool.
Hematology: Denies easy bruising or prolonged breathing. No history of blood clots
Skin: Denies discoloration or rashes.
Neurologic: Denies any problems with balance and dizziness or fainting
Psychiatric: Denies any current issues with psychiatric conditions

**Vital Signs:** Height: 5ft 8.00in, Weight: 188lbs

## General Exam:
**Constitutional:** Patient is adequately groomed with no evidence of malnutrition.
Gen: Appropriately groomed, no evidence of malnutrition, no acute distress
Skin: No rashes, ulcers, or lesions on regions examined
Mental status: Oriented to time, person, place and situation, mood and affect are appropriate
Cardio: Regular rate and rhythm
Vascular: No edema, no calf swelling or pain, peripheral pulses 2+
Pulm: Non-labored breathing
Abd: Soft, non-tender to palpation

## Right Hip/Pelvis Examination
Skin is clean and dry, without erythema or warmth. There are no superficial signs of infection. ROM is limited with flexion to 120, IR is 20 degrees and ER is 25 degrees. Flexion, internal rotation and external rotation elicit groin pain. Pain is most severe with internal rotation. Strength test shows quad and hamstring strength to be 5/5. Plantar and dorsiflexion strength 5/5. SILT diffuse lower extremity. Pulses are 2+/4 DP and PT. No peripheral edema noted.

**Imaging Orders:** 2-3 views of the right hip were ordered, obtained and interpreted from an orthopedic standpoint.

**Hip/Pelvis Xrays:**AP pelvis as well as AP and lateral radiographs of the Right hip performed in the office and reviewed by myself reveal moderate degenerative changes. The patient has moderate joint space narrowing with subchondral sclerosis noted on femoral and acetabular sides of joint. There is mild osteophyte as well as cystic formation on both the femoral and acetabular sides of the joint. No signs of joint subluxation.

## Assessment and Plan:

**Diagnosis Codes:**
M16.11 Unilateral primary osteoarthritis, right hip
**Impression:**
48-year-old female right hip pain previous history of 2 arthroscopies with labral reconstruction.

**Treatment Plan:**
Discussed the patient today that although her pain does seem to be consistent with progressive arthritic changes noted within her hip, she has moderate changes noted on the x-rays. We discussed for this reason we would like to obtain an MRI

**ELECTRONICALLY SIGNED BY Charles W. Dowell, PA**

Lincoln/Mason 0192

**Patient Name:** Mason, Jan K
**DOB:**

to evaluate significant her cartilage loss is within the right hip area. We would also like to perform an intra-articular injection for diagnostic and therapeutic purposes. We want to ensure that this injection will relieve her groin and C-shaped type pattern pain but the most concerning we want to make sure this relieves her posterior gluteal pain which she states is her most significant pain at this time. If she gets no improvement from the intra-articular injection due within this posterior gluteal pain we discussed this could be referred pain from her low back or SI joint area and may need to be worked up prior to proceeding with any intervention regarding her hip. Patient was understandable and agree with this plan will obtain the MRI and the injection and report back to us.

An MRI of the Right Hip without contrast was ordered. A fluroro guided injection was ordered for Right Hip.

Patient education on Fall prevention was provided to the patient. Patient was provided with patient education on NSAIDs. Patient was provided with patient education on X-Ray Exposure Safety.

The patient is instructed to return if pain or symptoms arise.

The patient was screened for COVID risk factors. These included respiratory symptoms, recent travel, and exposure to sick contacts. All questions asked were negative. The patient was brought back to a room that had been disinfected with germicidal surface wipes. This includes the counters, exam tables, chairs and door handles.

**Clinical Quality Reporting:**
The patient has received the influenza vaccination.



Electronically signed by: Charles W. Dowell, PA
Date: 12/4/2020 Time:12:30 PM

CC: A copy of the office visit notes will be forwarded to the patient's referring physician. Copies sent along with cover letter sent to the patient's primary care physician.

Lincoln/Mason 0193

# uchealth

Laboratory Test Requisition

Memorial Hospital
1400 East Boulder
Colorado Springs, CO
80909
719-365-5260

Bill to:

Patient's Insurance

Orthopedic & Spine Ctr of
Southern CO
123031304
4110 Briargate Pkwy, #200
Colorado Springs, CO 80920

Phone: 719-282-8888

Result Fax: 719-282-1643

Memorial Central CLIA # 06D0663026 Memorial North CLIA # 06D1065861

## Patient Information

| Last Name: Mason | First Name: Jan | ICD: Z1150 |
|---|---|---|
| Sex: female  Birthdate: | Ordering Physician: Dr. Shawn Snow | ICD |
| Collection Date  Collection Time | Collected by: | |

| | LAB ID | Specimen Type | Test Description |
|---|---|---|---|
| X | LAB1918 | Nasopharyngeal Swab | COV-19 Screening and Clearance |

| | YES | NO | |
|---|---|---|---|
| Screening asymptomatic patient for admission, surgery including transplant, or designated procedure? | ☑ YES | ☐ NO | |
| Other screening (required for work, post-acute care, travel or due to exposure)? Do not test until 7 days following an exposure. A negative test should not be used to end the recommended 14-day quarantine following an exposure. | ☐ YES | ☑ NO | |
| Is the patient being tested 7 days following an exposure? | ☐ YES | ☑ NO | |
| Isolation clearance (e.g. inpatients, immunocompromised patients)? | ☐ YES | ☑ NO | |
| Convalescent plasma donation? | ☐ YES | ☑ NO | |
| *Is this the patient's first test? (HHS) | ☐ YES | ☐ NO ☐ UNKNOWN | |
| *Symptomatic as defined by CDC (fever or chills, cough, shortness of breath or difficulty breathing, fatigue, muscle or body aches, headache, new loss of taste or smell, sore throat, congestion or runny nose, nausea or vomiting, diarrhea)? (HHS) | ☐ YES | ☐ NO ☐ UNKNOWN | |
| Date of symptom onset? (HHS) | | | |
| *Does the patient currently work in a healthcare setting with direct patient contact (HHS) | ☐ YES | ☐ NO | |
| *Resident in a congregate care setting (nursing homes, residential care for people with intellectual and developmental disabilities, psychiatric treatment facilities, group homes, board and care homes, homeless shelter, foster care or other? (HHS) | ☐ YES | ☐ NO | |
| Is the patient currently pregnant? (HHS) | ☐ YES | ☑ NO | |
| Is the individual hospitalized with confirmed or suspected COVID-19? (HHS) | ☐ YES | ☑ NO | |
| Is the patient in an intensive care unit? (HHS) | ☐ YES | ☑ NO | |

Form 76986

Lincoln/Mason 0194

**From:**Jana M <
**Sent:**Tue, 26 Jan 2021 13:24:28 -0700
**To:**DisabilityDocuments
**Subject:**Attn Mary Avrett. #9291624 Jan Mason
**Attachments:**20210126_132155.jpg


***This email is from an external source. Only open links and attachments from a Trusted Sender.***

Surgery info attached

**Lincoln/Mason 0195**

| | |
|---|---|
| From: | LFGNotifications@LFG.com |
| Sent: | Thursday, January 21, 2021 7:40:51 AM |
| To: | |
| CC: | |
| BCC: | |
| Subject: | [Send Secure]Charter Communications, Inc. Claim No. 9291624 Jan Mason |
| Attachments: | dufk7flxvlipsrnhbbm2_9776767.pdf; |

This notification contains important information regarding a claim with Lincoln Financial Group company. THIS IS AN AUTOMATED EMAIL. PLEASE DO NOT RESPOND. You may use the contact information in the attached letter to respond if needed.

**Lincoln/Mason 0196**



Lincoln Life Assurance Company of Boston
Disability and Life Claims
PO Box 2578
Omaha, NE 68172-9688
Phone No.: (888) 437-7611
Secure Fax No.: (603) 430-1926

January 21, 2021

Ms. Jan K. Mason

RE:    Long Term Disability (LTD) Benefits
       Charter Communications, Inc.
       Claim #: 9291624

Dear Ms. Jan Mason:

We received a Functional Capacity Evaluation from Marc Phillips, PT, DPT, OCS dated January 20, 2021.  By letter dated January 12, 2021, we extended your time to provide additional documentation to February 1, 2021. We understand you may be providing MRI results and an updated office visit note.  Upon receipt of the additional documentation, we will contact you to advise of receipt.

If you have any questions regarding this matter, please contact me.

Sincerely,

Mary Avrett
Appeals Consultant
Phone No.: (888) 437-7611 Ext. 16371
Secure Fax No.: (603) 430-1926

1  of  1

**Lincoln/Mason 0197**

01/20/2021    17:11    (FAX)    P.001/002

# FAX

**FYZICAL Therapy and Balance Centers**
12229 Voyager Pkwy, # 150
Colorado Springs, CO 80921
719-488-0120

## FYZICAL™
Therapy & Balance Centers

To: *Attn Mary Avrett*

Fax number: 603·430·1926

From: Ally / Marc
Fax number: 719-488-1427

Date: 1/20/2021

Regarding: J. Mason

Phone number for follow-up:
719-488-0120

Comments:

[ ] Please REVIEW, sign, and fax back
[ ] Initial Evaluation/Plan of Care attached. Please REVIEW, SIGN, and FAX back
[ ] Progress Note attached. Please REVIEW, SIGN, and FAX back.
[ ] Discharge Note attached. No action required
[X] Other:

*If you have questions, feel free to call. Thank you.*

NUMBER OF PAGES ___2___ (INCLUDING COVER SHEET)

The information contained on the following pages contains private health information and is solely intended for the recipient listed below. If you have mistakenly received this information, please return via US Postal Service to the address above. Thank you.

PAGE 1/2 * RCVD AT 1/20/2021 5:18:02 PM [Eastern Standard Time] * SVR:VA1PWFAX201/1 * DNIS:6034301926 * CSID: * ANI:17194881427 * DURATION (mm-ss):00-59

**Lincoln/Mason 0198**

01/20/2021   17:12                                      (FAX)                    P.002/002

## Functional Capacity Evaluation

| NAME | SSN or WID | DATE OF INJURY | DATE OF BIRTH |
|---|---|---|---|
| JAN K MASON | | 12/18/17 | |

Client works on average of ☐ 8 ☐ 10 or ☐ 12 hours per day (check one)   N/A

1. In a work day, client can (check number of hours full capacity for each activity).

| | | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| a. | Sit | ☑ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| b. | Stand | ☑ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| c. | Walk | ☑ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |

Comments: (If appropriate, note frequency per hour or day)
Pt is unable to maintain any position for more than 30 minutes.

NOTE: For a full regular work day "Occasionally" equals 1% to 33%, "Frequently" equals 34% to 66%, "Continuously" equals 67% to 100%

2. Client is able to: (check one)

| | | Not at All | Occasionally | Frequently | Continuously |
|---|---|---|---|---|---|
| a. | Twist | ☐ | ☒ | ☐ | ☐ |
| b. | Bend/Stoop (lumbar) | ☒ | ☐ | ☐ | ☐ |
| c. | Cervical Bend | ☐ | ☐ | ☒ | ☐ |
| d. | Squat | ☒ | ☐ | ☐ | ☐ |
| e. | Crawl | ☒ | ☐ | ☐ | ☐ |
| f. | Climb Ladders | ☒ | ☐ | ☐ | ☐ |
| g. | Climb Stairs | ☐ | ☒ | ☐ | ☐ |
| h. | Reach Above Shoulder Level | ☐ | ☐ | ☒ | ☐ |
| i. | Crouch | ☒ | ☐ | ☐ | ☐ |
| j. | Kneel | ☒ | ☐ | ☐ | ☐ |
| k. | Balance | ☒ | ☐ | ☐ | ☐ |
| l. | Walk on Uneven Ground | ☒ | ☐ | ☐ | ☐ |
| m. | Work Above Ground | ☒ | ☐ | ☐ | ☐ |
| n. | Push/Pull | ☐ | ☒ | ☐ | ☐ |
| o. | Other: Transfers | ☐ | ☒ | ☐ | ☐ |

3. Client can carry (lbs.)
   5 lbs

| Seldom | Occasionally | Frequently | Continuously |
|---|---|---|---|
| X | | | |

4. Client can lift (lbs.):

| | | Seldom | Occasionally | Frequently | Continuously |
|---|---|---|---|---|---|
| a. | Floor to Waist | X | | | |
| b. | Waist to Shoulder Level | | X | | |
| c. | Shoulder to Overhead | | X | | |
| d. | Waist to Waist | X | | | |

5. Client can used hands for frequent action such as:

| | | Simple Grasping | Firm Grasping | Fine Manipulating | R | L |
|---|---|---|---|---|---|---|
| a. | Right | ☒ Yes ☐ No | ☒ Yes ☐ No | ☒ Yes ☐ No | Grip 75 lbs | 78 lbs |
| b. | Left | ☒ Yes ☐ No | ☒ Yes ☐ No | ☒ Yes ☐ No | Pinch 16 lbs | 18 lbs |

6. Client can use head and neck:

| | | Not at All | Occasionally | Frequently | Continuously |
|---|---|---|---|---|---|
| a. | Static position | ☐ | ☐ | ☐ | ☒ |
| b. | Flexing | ☐ | ☐ | ☐ | ☒ |
| c. | Rotating | ☐ | ☐ | ☐ | ☒ |

7. Restriction of Activities Required by Physical Impairment
☐ extreme cold    ☒ extreme heat    ☒ wet or humid    ☒ slippery floors
☐ vibration    ☒ near moving equipment    ☒ drive auto/equipment    ☐ other:

8. Comments/Recommendations
Please see Physical Therapy notes for further information.

SIGNATURE OF THERAPIST: Marc Phillips PT, DPT, OCS    DATE: 1/20/2021

SIGNATURE OF PHYSICIAN: _____    DATE: _____

FCE (10/29/09)

PAGE 2/2 * RCVD AT 1/20/2021 5:18:02 PM [Eastern Standard Time] * SVR:VA1PWFAX201/1 * DNIS:6034301926 * CSID: * ANI:17194881427 * DURATION (mm-ss):00-59

Lincoln/Mason 0199

## SURGERY INFORMATION

Enclosed are your appointment times for your pre and post surgical visits

NAME: _Sam_                    SURGERY DATE: _2/22_

### **SURGERY TIMES CAN CHANGE**

PLEASE PURCHASE HIBICLENS SKIN CLEANSER FROM CVS/WALGREENS AND CLEAN THE SURGICAL AREA THE NIGHT BEFORE AND THE MORNING OF SURGERY

DO NOT EAT OR DRINK ANYTHING AFTER MID-NIGHT BEFORE YOUR SURGERY

++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++

SURGERY AT GRANDVIEW: 5623 Pulpit Peak View, Colorado Springs, CO 80918, (719) 272-3600

SURGERY AT ST. FRANCIS MEDICAL CENTER: 6001 E Woodmen Rd, Colorado Springs, CO 80923, (719) 571-1000

SURGERY AT OSCSC: 4110 Briargate Parkway Ste 200, Colorado Springs, CO 80920 (719) 282-8888 OSCSC WILL CALL YOU THE DAY BEFORE WITH YOUR SURGERY TIME

PRE-OP APPT IN OUR OFFICE: _2/16    8:45_

POST-OP APPT IN OUR OFFICE: _3/5    12:30_

NORTH OFFICE: 4110 BRIARGATE PARKWAY, SUITE 300, COLORADO SPRINGS, CO 80920

SOUTH OFFICE: 1259 LAKE PLAZA DRIVE, SUITE 100, COLORADO SPRINGS, CO 80906

### **PLEASE VISIT OUR WEBSITE TO LEARN MORE ABOUT YOUR SURGERY AND OUR TEAM**

COLORADOHIPKNEEDOC.COM

IF YOU NEED TO RESCHEDULE ANY OF THE ABOVE APPOINTMENTS OR HAVE ANY QUESTIONS PLEASE CALL NICOLE @ 719-632-7669 EXT 1090

Lincoln/Mason 0200

**From:**Jana M <
**Sent:**Wed, 20 Jan 2021 14:37:43 -0700
**To:**DisabilityDocuments
**Subject:**Attn: Mary Avrett. 9291624. Jan Mason
**Attachments:**20210120_143257.jpg

***This email is from an external source. Only open links and attachments from a Trusted Sender.***

My hip surgery has been scheduled for 02/22/21 with Dr. Tyler Bron

**Lincoln/Mason 0201**

| From: | LFGNotifications@LFG.com |
|---|---|
| Sent: | Tuesday, January 12, 2021 2:47:14 PM |
| To: | |
| CC: | |
| BCC: | |
| Subject: | [Send Secure]Charter Communications, Inc. Claim No. 9291624 Jan Mason |
| Attachments: | mt9obh5z68ka7uti7nls_9726106.pdf; |

This notification contains important information regarding a claim with Lincoln Financial Group company. THIS IS AN AUTOMATED EMAIL. PLEASE DO NOT RESPOND. You may use the contact information in the attached letter to respond if needed.

**Lincoln/Mason 0202**



Lincoln Life Assurance Company of Boston
Disability and Life Claims
PO Box 2578
Omaha, NE 68172-9688
Phone No.: (888) 437-7611
Secure Fax No.: (603) 430-1926

January 12, 2021

Ms. Jan K. Mason

RE:     Long Term Disability (LTD) Benefits
        Charter Communications, Inc.
        Claim #: 9291624

Dear Ms. Jan Mason:

Purusant to your request received on January 12, 2021, we are extending your time to provide additional documentation to February 1, 2021.

Since we are waiting for you to submit additional documentation, the days from the date of this letter until we receive your submission are not counted as part of the appeal determination period.

If you have any questions regarding this matter, please contact me.

Sincerely,

Mary Avrett
Appeals Consultant
Phone No.: (888) 437-7611 Ext. 16371
Secure Fax No.: (603) 430-1926

1  of  1

**Lincoln/Mason 0203**

**From:**Jana M                       .com>
**Sent:**Tue, 12 Jan 2021 08:40:30 -0700
**To:**DisabilityDocuments
**Subject:**Jan Mason. Claim 9291624

***This email is from an external source. Only open links and attachments from a Trusted Sender.***

Hi!   I am moving forward with a functional exam and would like to have decision about my claim postponed to the end of the month.   Please contact me to let me know you got this at              or by return email j                    .com....Thank you

**Lincoln/Mason 0204**



Lincoln Life Assurance Company of Boston
Disability and Life Claims
PO Box 2578
Omaha, NE 68172-9688
Phone No.: (888) 437-7611
Secure Fax No.: (603) 430-1926

| | |
|---|---|
| Date: | January 5, 2021 |
| To: | DR. MARC PHILLIPS PT, DPT, OCS<br>FALCON PHYSICAL THERAPY<br>12229 VOYAGER PKWY<br>COLORADO SPRINGS, CO 80921 |
| Attn: | Dr. Phillips |
| Fax: | (719) 488-0059 |
| From: | Mary Avrett<br>Appeals Consultant<br>Phone No.: Phone No.: (888) 437-7611<br>Secure Fax No.: (603) 430-1926 |
| Total Pages<br>(Including Cover): | 16 |
| RE:<br><br>Claim #:    9291624<br>Claimant:   Jan Mason<br><br>Charter Communications, Inc. | |

This fax, and any attachments thereto, is intended only for the use of the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this fax, you are hereby notified that any dissemination, distribution or copying of this fax, and any attachments thereto, is strictly prohibited. If you have received this fax in error, please notify me by telephone at (888) 437-7611 and permanently shred the original and any copy of any fax and any printout thereof.

**Lincoln/Mason 0205**



Lincoln Life Assurance Company of Boston
Disability and Life Claims
PO Box 2578
Omaha, NE 68172-9688
Phone No.: (888) 437-7611
Secure Fax No.: (603) 430-1926

January 5, 2021

Dr. Marc Phillips Pt, Dpt, Ocs
Falcon Physical Therapy
12229 VOYAGER PKWY
COLORADO SPRINGS,, CO 80921

RE:    Long Term Disability (LTD) Benefits
       Charter Communications, Inc.
       Claim #: 9291624
       Claimant: Jan Mason
       Claimant D.O.B.:

Dear Dr. Marc Phillips Pt, Dpt, Ocs:

We are the Disability Claim Administrator for your patient, Jan Mason.

Please find attached a copy of a medical review by Dr. Eric Kerstman, an independent physician Board Certified in Physical Medicine and Pain Medicine dated December 22, 2020.  Please review the report and provide any comments you wish to have considered.  If you disagree with the findings, please detail the specific areas with which you disagree and provide medical documentation to support your position.

We ask you provide this information by January 20, 2021.  Failure to provide the requested information may result in an adverse benefit determination.  The information can be faxed to our office at our secure fax number (603) 430-1926, mailed to the above address or emailed to disabilitydocuments@lfg.com.  Please be sure to include the claim number above.

Although HIPAA does not apply to disability insurance carriers, we understand your responsibilities under HIPAA as a health care provider, and our associated responsibility of ensuring this information is protected against deliberate or inadvertent misuse or disclosure.

As the insurance carrier providing employer sponsored Long Term Disability (LTD) benefits coverage to your patient, we have enclosed a HIPAA compliant authorization signed by Ms. Mason allowing the release of information to our company. This authorization specifically allows you to release medical information to us and is valid for two years from the date of Ms. Mason's signature.

If you have any questions regarding this matter, please contact me.

1  of  2

**Lincoln/Mason 0206**

Sincerely,

Mary Avrett
Appeals Consultant
Phone No.: (888) 437-7611 Ext. 16371
Secure Fax No.: (603) 430-1926

CC:    Jan Mason


Attachments:    9291624-EMPLOYEE/CLAIMANT-AUTHORIZATION-09.25.2019
                9291624-MEDICAL-CP/PEER REVIEW-12.22.2020

**Lincoln/Mason 0207**

3L268190622

 **Lincoln** Financial Group®

Liberty Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7207
London, KY 40742-7207
Phone No.: (844) 384-5858
Secure Fax No.: (603) 334-5994

## AUTHORIZATION FOR THE RELEASE OF INFORMATION INCLUDING PROTECTED HEALTH INFORMATION

**I HEREBY AUTHORIZE THE USE OR DISCLOSURE OF INFORMATION ABOUT ME AS DESCRIBED BELOW:**
**Person(s) or group(s) of persons authorized to use or disclose the information:** Any physicians, medical practitioners, hospitals, clinics, HMOs, long-term care facilities, medical or medically-related facilities, pharmacies, insurance companies, credit or consumer reporting agency, financial/educational institutions, current or former employer, governmental agency, MIB Inc., and any insurance support organizations.
**Person(s) or group(s) of persons authorized to collect or otherwise receive the information:** The particular Company in the Lincoln Financial Group of companies to which I am submitting a claim and its authorized representatives, agents and/or employees, the Plan Sponsor (if self-insured Plan) and other organizations providing claims management services.
**Description of the information that may be used or disclosed:** This Authorization specifically includes the release of all information related to:
 * My physical and mental health and my insurance policies and claims, including, but not limited to, those containing diagnosis, treatments, prognosis, prescription drug information, alcohol or drug abuse or information regarding communicable or infectious conditions, including HIV/AIDS.
 * Job duties, earnings, personnel records and other work related information and credit reports, bank records, and federal and state tax returns.
 * Information concerning Social Security benefits, including any records pertaining to me and my dependents
**The information will be used or disclosed only for the following purpose(s):** For purposes of investigating, evaluating and processing my claim, and/or for insurance-related functions.

**STATEMENTS OF UNDERSTANDING & ACKNOWLEDGMENT:**
**I understand** that information used or disclosed pursuant to this authorization could be subject to redisclosure as necessary by the recipient and, if so, may not be subject to federal or state law protecting its confidentiality.
**I understand** that I may revoke this authorization in writing at any time by sending a written revocation to the Company in the Lincoln Financial Group of companies to which I have submitted a claim, except to the extent that action has been taken in reliance on this authorization, or to the extent that other law provides the Company with the right to contest a claim. I also understand that the revocation of this authorization will not affect uses and disclosures of my health information for purposes of treatment, payment and health care operations.
**I understand** that authorizing the disclosure of my health information is voluntary and the provision of health care services to me is not conditioned on whether I sign this authorization. If I choose not to sign this authorization, insurance coverage or claim payments may be denied or delayed.
This authorization shall remain in force for 24 months from the date of signature, except to the extent applicable state law imposes or allows a different duration. The information obtained under this authorization will be retained in accordance with the Company's standard retention policy and applicable law. I understand that I may request a copy of this authorization.

Name of claimant (print)  _JAK K MASON_

Name of legal representative, if applicable (print) _____  Relationship _____

Signature of claimant or legal representative  _Jank Mason_
Date of Birth: _ _____ Claim Number: _9291624_ Date: _09/14/19_

**A copy of this authorization will be considered as valid as the original.**

**Lincoln/Mason 0208**

3L268190622



Liberty Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7207
London, KY 40742-7207
Phone No.: (844) 384-5858
Secure Fax No.: (603) 334-5994

## AUTHORIZATION FOR THE RELEASE OF PROTECTED HEALTH INFORMATION

**I HEREBY AUTHORIZE THE USE OR DISCLOSURE OF HEALTH INFORMATION ABOUT ME AS DESCRIBED BELOW:**

**Person(s) or group(s) of persons authorized to use or disclose the information:** Any physicians, medical practitioners, hospitals, clinics, HMOs, long-term care facilities, medical or medically-related facilities, pharmacies, insurance companies, Plan Sponsor/ Administrator, governmental agency, MIB Inc., and any insurance support organizations.

**Person(s) or group(s) of persons authorized to collect or otherwise receive the information:** The particular Company in the Lincoln Financial Group of companies to which I am submitting a claim and its authorized representatives, agents and/or employees, the Plan Sponsor (if self-insured Plan) and other organizations providing claims management services.

**Description of the information that may be used or disclosed:** This Authorization specifically includes the release of all psychotherapy notes relating to me, without restriction, including psychotherapy notes recorded in any medium documenting or analyzing the contents of conversations during private counseling sessions and/or group, joint or family counseling sessions.

**The information will be used or disclosed only for the following purpose(s):** For purposes of investigating, evaluating and processing my claim, and/or for insurance-related functions.

## STATEMENTS OF UNDERSTANDING & ACKNOWLEDGMENT:

**I understand** that information used or disclosed pursuant to this authorization could be subject to redisclosure as necessary by the recipient and, if so, may not be subject to federal or state law protecting its confidentiality.

**I understand** that I may revoke this authorization in writing at any time by sending a written revocation to the Company in the Lincoln Financial Group of companies to which I have submitted a claim, except to the extent that action has been taken in reliance on this authorization, or to the extent that other law provides the Company with the right to contest a claim. I also understand that the revocation of this authorization will not affect uses and disclosures of my health information for purposes of treatment, payment and health care operations.

**I understand** that authorizing the disclosure of this health information is voluntary and the provision of health care services to me is not conditioned on whether I sign this authorization. If I choose not to sign this authorization, insurance coverage or claim payments may be denied or delayed.

**This authorization** shall remain in force for 24 months from the date of signature, except to the extent applicable state law imposes or allows a different duration. The information obtained under this authorization will be retained in accordance with the Company's standard retention policy and applicable law. I understand that I may request a copy of this authorization.

Name of claimant (print) _____ JAU K MASON _____

Name of legal representative, if applicable (print) _____ Relationship _____

Signature of claimant or legal representative _____ Jan K Mason _____

Date of Birth: __ _____ Claim Number: __9291624__ Date: ___08/14/19_____

**A copy of this authorization will be considered as valid as the original**

Lincoln/Mason 0209



Network Medical Review Co. Ltd.

An ExamWorks Company

**REFERRED BY:**   MARY AVRETT
**CLIENT:**   Lincoln Life Insurance
**NAME:**   Jan K Mason
**CLAIM #:**   9291624
**NMR #:**   414082
**DATE:**   12/22/2020

**RECORDS PROVIDED FOR REVIEW:**

| | | |
|---|---|---|
| PROGRESS NOTES | Colorado Springs Orthopaedic Group | 01/09/19 - 11/10/20 |
| PROGRESS NOTES | J.R. Kent, MD | 07/01/20 |
| PROGRESS NOTES | UCHealth / Aspen Creek Medical Center | 07/23/19 - 11/30/20 |
| PROGRESS NOTES | D.R. Salek, MD | 08/28/19 - 09/08/20 & Undated |
| PROGRESS NOTES | C.M. Kudron, MD | 09/04/20 |
| PROGRESS NOTES | Unknown Provider | Undated |
| OPERATIVE NOTES | Orthopaedic & Spine Center of Spine of Southern Colorado | 04/17/19 - 12/09/19 |
| PHYSICAL / OCCUPATIONAL THERAPY | Colorado Springs Orthopaedic Group Physical Therapy | 09/17/19 |
| PHYSICAL / OCCUPATIONAL THERAPY | Fyzical Therapy & Balance Centers | 12/13/19 - 12/08/20 |
| PHYSICAL / OCCUPATIONAL THERAPY | Falcon Physical Therapy | 11/01/20 |
| FILE REVIEWS | D. Fung, MD | 09/14/20 |
| FILE REVIEWS | D.A. Monti, MD | 07/16/20 |
| FILE REVIEWS | R. Avioli, MD | 10/27/19 |
| MRI / MRI ARTHROGRAM | Penrad Imaging | 10/22/19 - 01/30/20 |
| MRI | Southwest Diagnostic Centers | 09/12/18 |
| MRI | UpRight MRI of Colorado | 07/31/20 |
| CT | Penrad Imaging | 11/27/18 |

4960 E. State Street ⁂ Rockford, IL 61108 ⁂ Phone 815.964.6334 ⁂ Fax 815.964.1162
*website* www.nmrco.com ▪ *email* info@nmrco.com

**Lincoln/Mason 0210**

RE: Jan K Mason«@Claimant»                    NMR #: 414082
Page 2

| RF ARTHROGRAPHY | Penrad Imaging | 10/22/19 - 01/30/20 |
| X-RAY | Orthopaedic & Spine Center of Spine of Southern Colorado | 12/09/19 |
| X-RAY | Penrad Imaging | 07/11/18 |
| ROI | | 09/14/19, 09/18/19 |
| MISC | | 12/19/17 - 12/09/20 & Undated |

TELECONFERENCE
    1) AP NAME: Dr. Kent
    2) PHONE: (719) 278 3627
    3) DATE(S): 12/17/2020, 12/18/2020
    4) TIME(S): 11:09 AM MST, 9:13 AM MST
    5) PERSON(S) SPOKEN WITH: Jade, Dr. Jeffrey Kent
    6) POSITION OF PERSON(S) SPOKEN WITH: Patient Access Liaison, Treating provider

SUMMARY OF DISCUSSION(S): I called Dr. Jeffrey Kent, M.D. (Internal Medicine) and spoke with Jade who said that Dr. Kent was currently with a patient, but that she would give him a message requesting that he return my call.

I spoke with Jeffrey Kent, M.D. who said that he is the claimant's primary care physician. He said that he last evaluated the claimant on 10/22/2020, and that the claimant has chronic pain involving her low back and hips. He said that he has not addressed the claimant's work capacity, and that he has not outlined any work restrictions or limitations for the claimant. He said that the claimant is otherwise healthy and that she has no general medical conditions or medication side effects that would affect her work capacity. Dr. Kent said that he would defer to the claimant's orthopedist and pain management physician regarding her work capacity, restrictions, and limitations. He said that he expects to see the claimant for her follow-up next month. I reached consensus with Dr. Jeffrey Kent.

TELECONFERENCE
    1) AP NAME: Marc Phillips PT
    2) PHONE: 719-488-0120
    3) DATE(S): 12/17/2020
    4) TIME(S): 11:18 AM MST
    5) PERSON(S) SPOKEN WITH: Marc Phillips
    6) POSITION OF PERSON(S) SPOKEN WITH: Physical Therapist

SUMMARY OF DISCUSSION(S): I spoke with Physical Therapist Marc Phillips, who said that the claimant has been under his care for the treatment of chronic low back pain and right hip pain. He said that the claimant was last treated on 11/3/2020, and that she plans to resume physical therapy in January of 2021. He said that the claimant was making progress with her hip pain, but that she still has severe low back pain. He said the she has a Trendelenburg gait pattern requiring the use of a cane secondary to pain and bilateral hip weakness. He said that the claimant has approximately 3+/5 weakness of both hips, and has had mild improvement in hip strength. He said that in his opinion, the claimant would have difficulty performing prolonged sitting, standing, and walking due to the severity of her pain, and that she requires additional physical therapy, and possibly surgical

**Lincoln/Mason 0211**

RE: Jan K Mason«@Claimant»                                  NMR #: 414082
Page 3

treatment to obtain significant improvement in her functional capacity. I reached consensus with Physical Therapist Marc Phillips.

**ASSESSMENT:** The claimant is a 48 year old female (DOB        who has a diagnosis of pain in the right hip. The claimant was involved in a motor vehicle accident on 12/18/17. She stopped working on 4/16/19. All of the records provided have been reviewed from a PM&R perspective, and are summarized below.

The review period is from 07/21/20 to the present.

On 4/16/19, Dr. Huang performed an arthroscopic surgery to the right hip including a femoroplasty, chondroplasty, and acetabuloplasty for treatment of a right hip labral tear and impingement.

A magnetic resonance imaging (MRI) Arthrogram of the right hip performed on 10/22/19 revealed postoperative changes of acetabuloplasty, femoroplasty, and labral repair. There was mild chondral irregularity along the lateral acetabulum likely reflecting chondroplasty changes.

On 12/9/19, an operative report from Michael Huang, MD notes the claimant underwent a right hip labral reconstruction for treatment of a recurrent right hip labral tear and right hip impingement.

An MR Arthrogram of the Left Hip performed on 1/30/20 revealed a focal cam deformity of the anterior left femoral head junction with an associated labral base tear. There was a small hip joint effusion.

On 7/1/2020, Roger Sung, MD noted that the claimant had bilateral hip pain, right sided sacroiliac (SI) joint pain, and low back pain. It was noted that the claimant occasionally had pain radiating down her right leg. It was noted that the claimant had a history of hypertension. The claimant's medications were noted as Claritin, Ambien, Losartan, Metoprolol ER, Junel FE, and Cyclobenzaprine.

In a letter dated 7/21/20, the claimant indicated that she was currently completing 6 additional weeks of physical therapy so that she could gain strength in her right hip and move forward with a left SI joint fusion, left labral reconstruction, and possible right hip replacement. The claimant reported that she was also being referred to an additional spine surgeon due to ongoing lumbar spine issues.

An MRI of the lumbar spine performed on 7/31/20 revealed moderate spinal stenosis at L2-L3, a right L3-L4 disc herniation with right neural foraminal stenosis at L3-L4, and L5-S1 mild spinal stenosis due to a central disc herniation.

In a letter dated 8/31/20, Jeffrey Kent, MD indicated that the claimant had ongoing difficulties with mobility with chronic pain and was being considered for a spinal cord stimulator. Dr. Kent indicated that the claimant had ongoing debility, and that she needed to remain on long-term disability throughout this year with reassessment at the end of the year.

In a 10/14/2020 progress note from Jeffrey Kent, MD it was noted that the claimant had ongoing pain involving her low back, hip, leg, SI joint, and paresthesias. Physical examination revealed a blood pressure of 145/85 and a body mass index (BMI) of 29.80. The musculoskeletal examination revealed tenderness, and there was normal range of motion. The neurological examination revealed no focal deficits. Assessment was chronic low back

**Lincoln/Mason 0212**

RE: Jan K Mason«@Claimant»                                 NMR #: 414082
Page 4

pain with sciatica, paresthesia of the bilateral legs, sacroiliac joint inflammation, femoroacetabular impingement of both hips, and left acetabular labrum tear. The claimant was referred to orthopedic surgery. It was noted that the claimant was to proceed with a spinal cord stimulator.

In a letter dated 11/1/20, Physical Therapist Marc Phillips indicated that the claimant had significant deficits in physical ability. He indicated that she had a recent exacerbation of her lumbar pain that made it difficult for her to perform transfers, dressing, and driving. He indicated that in his professional opinion, the claimant would not be able to perform any occupation in any capacity from December, 2016 to the present.

On an 11/10/20 evaluation with Kristen Reiss, PA-C, it was noted that the claimant was 11 months status post right hip labral reconstruction, femoroplasty, chondroplasty, acetabuloplasty, and osteoplasty performed on 12/9/19. The claimant reported worsening pain, and that she had not benefited from rest, activity modification, medications, and physical therapy. She reported a pain intensity of 9/10. Physical examination revealed the claimant's surgical wounds to be well-healed without signs of infection. Hip flexion was 115 degrees, external rotation was 45 degrees, and internal rotation was 5 degrees. There was tenderness to palpation over the lateral hip and sacroiliac joints bilaterally. The claimant had an antalgic gait with the use of a cane. Assessment was right hip articular disorder, right sacroiliitis, left hip pain, bilateral sacroiliitis, and lumbar spine spondylosis. The claimant was referred for a possible right total hip arthroplasty.

In a letter dated 11/30/20, Jeffrey Kent, MD indicated that the claimant was unable to work due to her severe chronic pain. He indicated that she was unable to maintain any sitting or standing position for very long without increasing pain which affects her ability to do her job. It was noted that she would require bilateral hip replacement surgery and possibly a left SI joint fusion. Dr. Kent requested that the claimant's disability be extended at least through February of 2021.

All available medical documentation was reviewed.

**IN ANSWER TO YOUR SPECIFIC QUESTIONS:**

**1. What diagnoses are supported by the medical evidence?**

The following diagnoses are supported by the medical evidence.

1. Chronic low back pain
2. Chronic bilateral hip pain
3. History of a right sacroiliac joint fusion
4. History of a right hip labral reconstruction,
5. Femoroacetabular impingement of both hips
6. Left acetabular labrum tear
7. Lumbar spine spondylosis
8. Hypertension.

**2. Taking into consideration the entire clinical picture, including standards of care and evidence based medicine, and any medication or other treatment side effects, please describe if there are any supported**

**Lincoln/Mason 0213**

RE:  Jan  K Mason«@Claimant»                                    NMR #: 414082
Page 5

**level of impairments which translates into restrictions and limitations from 7/21/2020 to the present? Please explain your medical rationale as to why or why not and provide a detailed explanation.**

Taking into consideration the entire clinical picture, including standards of care and evidence based medicine, impairment is supported from 7/21/2020 to the present secondary to the claimant's medical conditions of chronic low back pain, chronic bilateral hip pain, history of a right sacroiliac joint fusion, history of a right hip labral reconstruction, femoroacetabular impingement of both hips, a left acetabular labrum tear, and lumbar spine spondylosis due to associated pain and decreased mobility.

**3. If functional impairment is supported, please describe how that translates into restrictions or limitations and for what period(s) of time. Please define in terms of frequency (never, occasional, frequent, constant) and task (sit, stand, lift/carry, type etc). Please explain your medical rationale for any restrictions or limitations or why restrictions or limitations are not supported.**

Taking into consideration the entire clinical picture, the following restrictions and limitations are supported from 7/21/2020 to the present:

The claimant can lift, carry, push, and pull up to a maximum of 10 pounds occasionally.

The claimant can sit for 1 hour at a time for a total of 6 hours in an 8 hour workday, with the ability to change positions from sitting to standing or walking as needed for comfort.

The claimant can stand for 30 minutes at a time for a total of 2 hours in an 8 hour workday.

The claimant can walk for 30 minutes at a time for a total of 2 hours in an 8 hour workday.

The claimant can occasional bend, kneel, squat, stoop, and climb stairs,

No climbing ladders, exposure to unprotected heights, or operating dangerous machinery while taking muscle relaxant medications or any other potentially sedating medications.

No restrictions or limitations in the use of the upper extremities to perform reaching, handing, grasping, fingering, or keyboarding.

The above noted restrictions and limitations are supported until the claimant undergoes further treatment with a spinal cord stimulator and/or a possible right total hip arthroplasty. If this has not occurred by 02/10/2021, the claimant should be reevaluated at that time.

The medical rationale for the R/L is to prevent exacerbation of the claimant's symptoms and to prevent further injury.

**4. Does the medical documentation support that any medical condition alone, or in combination would preclude the claimant from sustained occupational functioning on a full-time basis? Please explain why or why not.**

No. The claimant should be capable of sustained occupational functioning on a full-time basis. The abnormalities on physical examination and diagnostic testing are not of a severity to support that the claimant would be precluded from performing full-time work within the above noted restrictions and limitations.

**Lincoln/Mason 0214**

RE:  Jan  K Mason«@Claimant»                                    NMR #: 414082
Page 6
_____

**5. Do you agree with the assessment of the claimant's capacity and the restrictions as noted by Dr. Jeffrey Kent dated 8/31/2020? If not, please explain.**

No. I do not agree that the claimant has ongoing debility and that she needed to remain on long-term disability throughout this year with reassessment at the end of the year.  The abnormalities on physical examination and diagnostic testing are not of a severity to support that the claimant would be precluded from performing full-time work within the above noted restrictions and limitations.

**6. Do you agree with the assessment of the claimant's capacity and the restrictions as noted by Dr. Marc Phillips dated 11/1/2020? If not, please explain.**

No. I do not agree that the claimant would not be able to perform any occupation in any capacity since December of 2016 to the present. The abnormalities on physical examination and diagnostic testing are not of a severity to support that the claimant would be precluded from performing full-time work within the above noted restrictions and limitations.

**7. When contacting the treating provider please discuss the claimant's condition, treatment, and functional capacity. Please indicate the information reviewed and indicate whether or not you reached consensus with the treating provider. If not, please discuss your final assessment after the call.**

I spoke with Jeffrey Kent, M.D. who said that he is the claimant's primary care physician. He said that he last evaluated the claimant on 10/22/2020, and that the claimant has chronic pain involving her low back and hips. He said that he has not addressed the claimant's work capacity, and that he has not outlined any work restrictions or limitations for the claimant. He said that the claimant is otherwise healthy and that she has no general medical conditions or medication side effects that would affect her work capacity. Dr. Kent said that he would defer to the claimant's orthopedist and pain management physician regarding her work capacity, restrictions, and limitations. He said that he expects to see the claimant for her follow-up next month. I reached consensus with Dr. Jeffrey Kent.

I spoke with Physical Therapist Marc Phillips, who said that the claimant has been under his care for the treatment of chronic low back pain and right hip pain. He said that the claimant was last treated on 11/3/2020, and that she plans to resume physical therapy in January of 2021. He said that the claimant was making progress with her hip pain, but that she still has severe low back pain. He said the she has a Trendelenburg gait pattern requiring the use of a cane secondary to pain and bilateral hip weakness. He said that the claimant has approximately 3+/5 weakness of both hips, and has had mild improvement in hip strength. He said that in his opinion, the claimant would have difficulty performing prolonged sitting, standing, and walking due to the severity of her pain, and that she requires additional physical therapy, and possibly surgical treatment to obtain significant improvement in her functional capacity. I reached consensus with Physical Therapist Marc Phillips.

**8. If AP contact may clarify any significant areas such as diagnosis, R&L's, treatment opportunities, prognosis, or reason for work absence, the AP on the portal - Document 2 attempts within 5 business days with initial and final memorandum as indicated, as well as AP letter**

See Call Logs.

**Lincoln/Mason 0215**

RE: Jan K Mason«@Claimant»                    NMR #: 414082
Page 7

**CONFLICT OF INTEREST ATTESTATION:**

I certify that I do not accept compensation for review activities that is dependent in any way on the specific outcome of the case. To the best of my knowledge, I was not involved with the specific episode of care prior to referral of the case for review. I do not have a material professional, familial, or financial conflict of interest (financial conflict of interest is defined as ownership interest of greater than 5%) regarding any of the following: the referring entity; the insurance issuer or group health plan that is the subject of the review the covered person whose treatment is the subject of the review and the covered person's authorized representative, if applicable; any officer, director or management employee of the insurance issuer that is the subject of the review; any group health plan administrator, plan fiduciary, or plan employee; the health care provider, the health care provider's medical group or independent practice association recommending the health care service or treatment that is the subject of the review; the facility at which the recommended health care service or treatment would be provided; or the developer or manufacturer of the principle drug, device, procedure or other therapy being recommended for the covered person whose treatment is the subject of the review.

This attestation certifies that the peer reviewer named below has the appropriate scope of licensure or certification that typically manages the medical condition, procedure, treatment, or issue under review and has current, relevant experience and/or knowledge to render a determination for the case under review.

**ADVISING REVIEWER:**

Eric Kerstman M.D.
Board Certified in Aerospace Medicine
Board Certified in Pain Medicine
Board Certified in Physical Medicine and Rehabilitation
Licensed in State of TX #M1823

*NMR Conflict of Interest Attestation:*

*NMR attests to the fact that there is no conflict of interest with this review for referring entity, benefit plan, enrollee/consumer, attending provider, facility, drug, device or procedure. NMR attests that its compensation is not dependent on the specific outcome of this review or has had any involvement with this case prior to this referral.*

**Lincoln/Mason 0216**





**December 22, 2020**

**Attending Physician Confirmatory Letter**

Re: Jan K. Mason

Dear Mr. Marc Phillips PT,

I have completed an appeal review on Jan Mason, a patient you have treated. The patient had listed you as a contact provider. During the time I was reviewing the claim, I spoke with you on 12/17/2020 at 10:18 AM. You stated that the claimant has been under your care for the treatment of chronic low back pain and right hip pain. You said that the claimant was last treated on 11/3/2020, and that she plans to resume physical therapy in January of 2021. You said that the claimant was making progress with her hip pain, but that she still has severe low back pain, and that she has a Trendelenburg gait pattern requiring the use of a cane secondary to pain and bilateral hip weakness. You said that the claimant has approximately 3+/5 weakness of both hips, and has had mild improvement in hip strength. You said that in your opinion, the claimant would have difficulty performing prolonged sitting, standing, and walking due to the severity of her pain, and that she requires additional physical therapy, and possibly surgical treatment to obtain significant improvement in her functional capacity.

From a PM&R perspective, taking into consideration the entire clinical picture, including standards of care and evidence based medicine, impairment is supported from 7/21/2020 to the present secondary to the claimant's medical conditions of chronic low back pain, chronic bilateral hip pain, history of a right sacroiliac joint fusion, history of a right hip labral reconstruction, femoroacetabular impingement of both hips, a left acetabular labrum tear, and lumbar spine spondylosis due to associated pain and decreased mobility. The following restrictions and limitations are supported from 7/21/2020 to the present:

The claimant can lift, carry, push, and pull up to a maximum of 10 pounds occasionally.

The claimant can sit for 1 hour at a time for a total of 6 hours in an 8 hour workday, with the ability to change positions from sitting to standing or walking as needed for comfort.

The claimant can stand for 30 minutes at a time for a total of 2 hours in an 8 hour workday.

The claimant can walk for 30 minutes at a time for a total of 2 hours in an 8 hour workday.

The claimant can occasional bend, kneel, squat, stoop, and climb stairs,

No climbing ladders, exposure to unprotected heights, or operating dangerous machinery while taking muscle relaxant medications or any other potentially sedating medications.

No restrictions or limitations in the use of the upper extremities to perform reaching, handing, grasping, fingering, or keyboarding.

The above noted restrictions and limitations are supported until the claimant undergoes further treatment with a

**Lincoln/Mason 0217**

spinal cord stimulator and/or a possible right total hip arthroplasty. If this has not occurred by 02/10/2021, the claimant should be reevaluated at that time.

The medical rationale for the R/L is to prevent exacerbation of the claimant's symptoms and to prevent further injury.

Based on my review of the records, I believe the above-mentioned restrictions and limitations are supported.  Do you agree?  If you do not agree, why not?  Are there any underlying barriers that I was not made aware of that would preclude the patient from working as described above?  If so, please describe?

Please reply via fax within ten (10) business days by 01/7/21 to the fax number below.  If you have any questions or would like to discuss this case further, please do not hesitate to contact me.

Sincerely,

Eric Kerstman M.D.
Board Certified in Aerospace Medicine
Board Certified in Pain Medicine
Board Certified in Physical Medicine and Rehabilitation

_____          _____
Name                                                                          Date

Respectfully Yours,
Dawn E Peterson
Client Coordinator

p. p. Eric Kerstman, M.D.

Voice:  1-815-964-6334
Fax:     1-815-964-1162

● Page 2

**Lincoln/Mason 0218**



**December 22, 2020**

### Attending Physician Confirmatory Letter

Re: Jan  K. Mason

Dear Dr. Kent,

I have completed an appeal review on Jan Mason, a patient you have treated. The patient had listed you as a contact provider. During the time I was reviewing the claim, I spoke with you on 12/18/2020 at 8:13 AM. You stated that you are the claimant's primary care physician and that you last evaluated the claimant on 10/22/2020, and that the claimant has chronic pain involving her low back and hips. You said that you have not addressed the claimant's work capacity, and have not outlined any work restrictions or limitations. You said that the claimant is otherwise healthy and that she has no general medical conditions or medication side effects that would affect her work capacity. You would defer to the claimant's orthopedist and pain management physician regarding her work capacity, restrictions, and limitations. You are expecting to see the claimant for her follow-up next month.

From a PM&R perspective, taking into consideration the entire clinical picture, including standards of care and evidence based medicine, impairment is supported from 7/21/2020 to the present secondary to the claimant's medical conditions of chronic low back pain, chronic bilateral hip pain, history of a right sacroiliac joint fusion, history of a right hip labral reconstruction, femoroacetabular impingement of both hips, a left acetabular labrum tear, and lumbar spine spondylosis due to associated pain and decreased mobility. The following restrictions and limitations are supported from 7/21/2020 to the present:

The claimant can lift, carry, push, and pull up to a maximum of 10 pounds occasionally.

The claimant can sit for 1 hour at a time for a total of 6 hours in an 8 hour workday, with the ability to change positions from sitting to standing or walking as needed for comfort.

The claimant can stand for 30 minutes at a time for a total of 2 hours in an 8 hour workday.

The claimant can walk for 30 minutes at a time for a total of 2 hours in an 8 hour workday.

The claimant can occasional bend, kneel, squat, stoop, and climb stairs,

No climbing ladders, exposure to unprotected heights, or operating dangerous machinery while taking muscle relaxant medications or any other potentially sedating medications.

No restrictions or limitations in the use of the upper extremities to perform reaching, handing, grasping, fingering, or keyboarding.

The above noted restrictions and limitations are supported until the claimant undergoes further treatment with a spinal cord stimulator and/or a possible right total hip arthroplasty. If this has not occurred by 02/10/2021, the claimant should be reevaluated at that time.

The medical rationale for the R/L is to prevent exacerbation of the claimant's symptoms and to prevent further injury.

**Lincoln/Mason 0219**

Based on my review of the records, I believe the above-mentioned restrictions and limitations are supported. Do you agree? If you do not agree, why not? Are there any underlying barriers that I was not made aware of that would preclude the patient from working as described above? If so, please describe?

Please reply via fax within ten (10) business days by 01/7/21 to the fax number below. If you have any questions or would like to discuss this case further, please do not hesitate to contact me.

Sincerely,

Eric Kerstman M.D.
Board Certified in Aerospace Medicine
Board Certified in Pain Medicine
Board Certified in Physical Medicine and Rehabilitation

_____          _____
Name                                                              Date

Respectfully Yours,
Dawn E Peterson
Client Coordinator

p. p. Eric Kerstman, M.D.

Voice:  1-815-964-6334
Fax:     1-815-964-1162

● Page 2

**Lincoln/Mason 0220**

| | |
|---|---|
| From: | LFGNotifications@LFG.com |
| Sent: | Tuesday, January 5, 2021 1:08:48 PM |
| To: | |
| CC: | |
| BCC: | |
| Subject: | [Send Secure]Charter Communications, Inc. Claim No. 9291624 Jan Mason |
| Attachments: | cc_wah9dtxlwrs5krh3lbtw_9678798_9950138.pdf; |

This notification contains important information regarding a claim with Lincoln Financial Group company. THIS IS AN AUTOMATED EMAIL. PLEASE DO NOT RESPOND. You may use the contact information in the attached letter to respond if needed.

**Lincoln/Mason 0221**



Lincoln Life Assurance Company of Boston
Disability and Life Claims
PO Box 2578
Omaha, NE 68172-9688
Phone No.: (888) 437-7611
Secure Fax No.: (603) 430-1926

January 5, 2021

Dr. Marc Phillips Pt, Dpt, Ocs
Falcon Physical Therapy
12229 VOYAGER PKWY
COLORADO SPRINGS,, CO 80921

RE:    Long Term Disability (LTD) Benefits
       Charter Communications, Inc.
       Claim #: 9291624
       Claimant: Jan Mason
       Claimant D.O.B.:

Dear Dr. Marc Phillips Pt, Dpt, Ocs:

We are the Disability Claim Administrator for your patient, Jan Mason.

Please find attached a copy of a medical review by Dr. Eric Kerstman, an independent physician
Board Certified in Physical Medicine and Pain Medicine dated December 22, 2020.  Please review
the report and provide any comments you wish to have considered.  If you disagree with the
findings, please detail the specific areas with which you disagree and provide medical
documentation to support your position.

We ask you provide this information by January 20, 2021.  Failure to provide the requested
information may result in an adverse benefit determination.  The information can be faxed to our
office at our secure fax number (603) 430-1926, mailed to the above address or emailed to
disabilitydocuments@lfg.com.  Please be sure to include the claim number above.

Although HIPAA does not apply to disability insurance carriers, we understand your responsibilities
under HIPAA as a health care provider, and our associated responsibility of ensuring this
information is protected against deliberate or inadvertent misuse or disclosure.

As the insurance carrier providing employer sponsored Long Term Disability (LTD) benefits
coverage to your patient, we have enclosed a HIPAA compliant authorization signed by Ms.
Mason allowing the release of information to our company. This authorization specifically
allows you to release medical information to us and is valid for two years from the date of Ms.
Mason's signature.

If you have any questions regarding this matter, please contact me.

1  of  2

**Lincoln/Mason 0222**

Sincerely,

Mary Avrett
Appeals Consultant
Phone No.: (888) 437-7611 Ext. 16371
Secure Fax No.: (603) 430-1926

CC:    Jan Mason


Attachments:    9291624-EMPLOYEE/CLAIMANT-AUTHORIZATION-09.25.2019
                9291624-MEDICAL-CP/PEER REVIEW-12.22.2020

2  of  2

**Lincoln/Mason 0223**

Lincoln/Mason 0224

| | |
|---|---|
| From: | LFGNotifications@LFG.com |
| Sent: | Tuesday, January 5, 2021 3:09:21 PM |
| To: | MPHILLIPS@FYZICAL.COM; |
| CC: | |
| BCC: | |
| Subject: | [Send Secure]Charter Communications, Inc. Claim No. 9291624 Jan Mason |
| Attachments: | sq5pzlhjcpnapasbdgkj_9680810.pdf; |

This notification contains important information regarding a claim with Lincoln Financial Group company.
THIS IS AN AUTOMATED EMAIL. PLEASE DO NOT RESPOND. You may use the contact information in
the attached letter to respond if needed.



Lincoln Life Assurance Company of Boston
Disability and Life Claims
PO Box 2578
Omaha, NE 68172-9688
Phone No.: (888) 437-7611
Secure Fax No.: (603) 430-1926

January 5, 2021

Dr. Marc Phillips Pt, Dpt, Ocs
Falcon Physical Therapy
12229 VOYAGER PKWY
COLORADO SPRINGS,, CO 80921

RE:    Long Term Disability (LTD) Benefits
       Charter Communications, Inc.
       Claim #: 9291624
       Claimant: Jan Mason
       Claimant D.O.B.:

Dear Dr. Marc Phillips Pt, Dpt, Ocs:

Attached please find correspondence also faxed to you today.

If you have any questions regarding this matter, please contact me.

Sincerely,

Mary Avrett
Appeals Consultant
Phone No.: (888) 437-7611 Ext. 16371
Secure Fax No.: (603) 430-1926

Attachments:    9291624-RESPOND-PROVIDER-01.05.2021

Lincoln/Mason 0225



Lincoln Life Assurance Company of Boston
Disability and Life Claims
PO Box 2578
Omaha, NE 68172-9688
Phone No.: (888) 437-7611
Secure Fax No.: (603) 430-1926

| | |
|---|---|
| Date: | January 5, 2021 |
| To: | DR. MARC PHILLIPS PT, DPT, OCS<br>FALCON PHYSICAL THERAPY<br>12229 VOYAGER PKWY<br>COLORADO SPRINGS, CO 80921 |
| Attn: | Dr. Phillips |
| Fax: | (719) 488-0059 |
| From: | Mary Avrett<br>Appeals Consultant<br>Phone No.: Phone No.: (888) 437-7611<br>Secure Fax No.: (603) 430-1926 |
| Total Pages<br>(Including Cover): | 16 |
| RE:<br><br>Claim #: 9291624<br>Claimant: Jan Mason<br><br>Charter Communications, Inc. | |

This fax, and any attachments thereto, is intended only for the use of the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this fax, you are hereby notified that any dissemination, distribution or copying of this fax, and any attachments thereto, is strictly prohibited. If you have received this fax in error, please notify me by telephone at (888) 437-7611 and permanently shred the original and any copy of any fax and any printout thereof.

**Lincoln/Mason 0226**



Lincoln Life Assurance Company of Boston
Disability and Life Claims
PO Box 2578
Omaha, NE 68172-9688
Phone No.: (888) 437-7611
Secure Fax No.: (603) 430-1926

January 5, 2021

Dr. Marc Phillips Pt, Dpt, Ocs
Falcon Physical Therapy
12229 VOYAGER PKWY
COLORADO SPRINGS,, CO 80921

RE:    Long Term Disability (LTD) Benefits
       Charter Communications, Inc.
       Claim #: 9291624
       Claimant: Jan Mason
       Claimant D.O.B.:

Dear Dr. Marc Phillips Pt, Dpt, Ocs:

We are the Disability Claim Administrator for your patient, Jan Mason.

Please find attached a copy of a medical review by Dr. Eric Kerstman, an independent physician
Board Certified in Physical Medicine and Pain Medicine dated December 22, 2020. Please review
the report and provide any comments you wish to have considered. If you disagree with the
findings, please detail the specific areas with which you disagree and provide medical
documentation to support your position.

We ask you provide this information by January 20, 2021. Failure to provide the requested
information may result in an adverse benefit determination. The information can be faxed to our
office at our secure fax number (603) 430-1926, mailed to the above address or emailed to
disabilitydocuments@lfg.com. Please be sure to include the claim number above.

Although HIPAA does not apply to disability insurance carriers, we understand your responsibilities
under HIPAA as a health care provider, and our associated responsibility of ensuring this
information is protected against deliberate or inadvertent misuse or disclosure.

As the insurance carrier providing employer sponsored Long Term Disability (LTD) benefits
coverage to your patient, we have enclosed a HIPAA compliant authorization signed by Ms.
Mason allowing the release of information to our company. This authorization specifically
allows you to release medical information to us and is valid for two years from the date of Ms.
Mason's signature.

If you have any questions regarding this matter, please contact me.

1  of 2

**Lincoln/Mason 0227**

Sincerely,

Mary Avrett
Appeals Consultant
Phone No.: (888) 437-7611 Ext. 16371
Secure Fax No.: (603) 430-1926

CC:     Jan Mason


Attachments:    9291624-EMPLOYEE/CLAIMANT-AUTHORIZATION-09.25.2019
                9291624-MEDICAL-CP/PEER REVIEW-12.22.2020

**Lincoln/Mason 0228**

3L268190622



Liberty Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7207
London, KY 40742-7207
Phone No.: (844) 384-5858
Secure Fax No.: (603) 334-5994

## AUTHORIZATION FOR THE RELEASE OF INFORMATION INCLUDING PROTECTED HEALTH INFORMATION

**I HEREBY AUTHORIZE THE USE OR DISCLOSURE OF INFORMATION ABOUT ME AS DESCRIBED BELOW:**
**Person(s) or group(s) of persons authorized to use or disclose the information:** Any physicians, medical practitioners, hospitals, clinics, HMOs, long-term care facilities, medical or medically-related facilities, pharmacies, insurance companies, credit or consumer reporting agency, financial/educational institutions, current or former employer, governmental agency, MIB Inc., and any insurance support organizations.
**Person(s) or group(s) of persons authorized to collect or otherwise receive the information:** The particular Company in the Lincoln Financial Group of companies to which I am submitting a claim and its authorized representatives, agents and/or employees, the Plan Sponsor (if self-insured Plan) and other organizations providing claims management services.
**Description of the information that may be used or disclosed:** This Authorization specifically includes the release of all information related to:
* My physical and mental health and my insurance policies and claims, including, but not limited to, those containing diagnosis, treatments, prognosis, prescription drug information, alcohol or drug abuse or information regarding communicable or infectious conditions, including HIV/AIDS.
* Job duties, earnings, personnel records and other work related information and credit reports, bank records, and federal and state tax returns.
* Information concerning Social Security benefits, including any records pertaining to me and my dependents
The information will be used or disclosed only for the following purpose(s): For purposes of investigating, evaluating and processing my claim, and/or for insurance-related functions.

**STATEMENTS OF UNDERSTANDING & ACKNOWLEDGMENT:**
**I understand** that information used or disclosed pursuant to this authorization could be subject to redisclosure as necessary by the recipient and, if so, may not be subject to federal or state law protecting its confidentiality.
**I understand** that I may revoke this authorization in writing at any time by sending a written revocation to the Company in the Lincoln Financial Group of companies to which I have submitted a claim, except to the extent that action has been taken in reliance on this authorization, or to the extent that other law provides the Company with the right to contest a claim. I also understand that the revocation of this authorization will not affect uses and disclosures of my health information for purposes of treatment, payment and health care operations.
**I understand** that authorizing the disclosure of my health information is voluntary and the provision of health care services to me is not conditioned on whether I sign this authorization. If I choose not to sign this authorization, insurance coverage or claim payments may be denied or delayed.
This authorization shall remain in force for 24 months from the date of signature, except to the extent applicable state law imposes or allows a different duration. The information obtained under this authorization will be retained in accordance with the Company's standard retention policy and applicable law. I understand that I may request a copy of this authorization.

Name of claimant (print) _____ JAN K MASON _____

Name of legal representative, if applicable (print) _____  Relationship _____

Signature of claimant or legal representative _____ Jan K Mason _____

Date of Birth: _____  Claim Number: _9291624_  Date: _08/14/19_

**A copy of this authorization will be considered as valid as the original.**

**Lincoln/Mason 0229**

3L268190622

 **Lincoln** Financial Group®

Liberty Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7207
London, KY 40742-72097
Phone No.: (844) 384-5858
Secure Fax No.: (603) 334-5994

## AUTHORIZATION FOR THE RELEASE OF PROTECTED HEALTH INFORMATION

**I HEREBY AUTHORIZE THE USE OR DISCLOSURE OF HEALTH INFORMATION ABOUT ME AS DESCRIBED BELOW:**

**Person(s) or group(s) of persons authorized to use or disclose the information:** Any physicians, medical practitioners, hospitals, clinics, HMOs, long-term care facilities, medical or medically-related facilities, pharmacies, insurance companies, Plan Sponsor/ Administrator, governmental agency, MIB Inc., and any insurance support organizations.

**Person(s) or group(s) of persons authorized to collect or otherwise receive the information:** The particular Company in the Lincoln Financial Group of companies to which I am submitting a claim and its authorized representatives, agents and/or employees, the Plan Sponsor (if self-insured Plan) and other organizations providing claims management services.

**Description of the information that may be used or disclosed:** This Authorization specifically includes the release of all psychotherapy notes relating to me, without restriction, including psychotherapy notes recorded in any medium documenting or analyzing the contents of conversations during private counseling sessions and/or group, joint or family counseling sessions.

**The information will be used or disclosed only for the following purpose(s):** For purposes of investigating, evaluating and processing my claim, and/or for insurance-related functions.

## STATEMENTS OF UNDERSTANDING & ACKNOWLEDGMENT:

**I understand** that information used or disclosed pursuant to this authorization could be subject to redisclosure as necessary by the recipient and, if so, may not be subject to federal or state law protecting its confidentiality.

**I understand** that I may revoke this authorization in writing at any time by sending a written revocation to the Company in the Lincoln Financial Group of companies to which I have submitted a claim, except to the extent that action has been taken in reliance on this authorization, or to the extent that other law provides the Company with the right to contest a claim. I also understand that the revocation of this authorization will not affect uses and disclosures of my health information for purposes of treatment, payment and health care operations.

**I understand** that authorizing the disclosure of this health information is voluntary and the provision of health care services to me is not conditioned on whether I sign this authorization. If I choose not to sign this authorization, insurance coverage or claim payments may be denied or delayed.

**This authorization** shall remain in force for 24 months from the date of signature, except to the extent applicable state law imposes or allows a different duration. The information obtained under this authorization will be retained in accordance with the Company's standard retention policy and applicable law. I understand that I may request a copy of this authorization.

Name of claimant (print)  _JAN K MASON_

Name of legal representative, if applicable (print) _____  Relationship _____

Signature of claimant or legal representative  _Jan K Mason_

Date of Birth: _____  _____  Claim Number: _9291624_  Date: _09/14/19_

**A copy of this authorization will be considered as valid as the original**

Lincoln/Mason 0230



Network Medical Review Co. Ltd.

An ExamWorks Company

**REFERRED BY:**    MARY AVRETT
**CLIENT:**    Lincoln Life Insurance
**NAME:**    Jan K Mason
**CLAIM #:**    9291624
**NMR #:**    414082
**DATE:**    12/22/2020

**RECORDS PROVIDED FOR REVIEW:**

| | | |
|---|---|---|
| PROGRESS NOTES | Colorado Springs Orthopaedic Group | 01/09/19 - 11/10/20 |
| PROGRESS NOTES | J.R. Kent, MD | 07/01/20 |
| PROGRESS NOTES | UCHealth / Aspen Creek Medical Center | 07/23/19 - 11/30/20 |
| PROGRESS NOTES | D.R. Salek, MD | 08/28/19 - 09/08/20 & Undated |
| PROGRESS NOTES | C.M. Kudron, MD | 09/04/20 |
| PROGRESS NOTES | Unknown Provider | Undated |
| OPERATIVE NOTES | Orthopaedic & Spine Center of Spine of Southern Colorado | 04/17/19 - 12/09/19 |
| PHYSICAL / OCCUPATIONAL THERAPY | Colorado Springs Orthopaedic Group Physical Therapy | 09/17/19 |
| PHYSICAL / OCCUPATIONAL THERAPY | Fyzical Therapy & Balance Centers | 12/13/19 - 12/08/20 |
| PHYSICAL / OCCUPATIONAL THERAPY | Falcon Physical Therapy | 11/01/20 |
| FILE REVIEWS | D. Fung, MD | 09/14/20 |
| FILE REVIEWS | D.A. Monti, MD | 07/16/20 |
| FILE REVIEWS | R. Avioli, MD | 10/27/19 |
| MRI / MRI ARTHROGRAM | Penrad Imaging | 10/22/19 - 01/30/20 |
| MRI | Southwest Diagnostic Centers | 09/12/18 |
| MRI | UpRight MRI of Colorado | 07/31/20 |
| CT | Penrad Imaging | 11/27/18 |

4960 E. State Street ※ Rockford, IL 61108 ※ Phone 815.964.6334 ※ Fax 815.964.1162
website www.nmrco.com ※ email info@nmrco.com

**Lincoln/Mason 0231**

RE:  Jan  K Mason«@Claimant»                         NMR #: 414082
Page 2

| RF ARTHROGRAPHY | Penrad Imaging | 10/22/19 - 01/30/20 |
|---|---|---|
| X-RAY | Orthopaedic & Spine Center of Spine of Southern Colorado | 12/09/19 |
| X-RAY | Penrad Imaging | 07/11/18 |
| ROI | | 09/14/19, 09/18/19 |
| MISC | | 12/19/17 - 12/09/20 & Undated |

TELECONFERENCE
    1) AP NAME: Dr. Kent
    2) PHONE: (719) 278 3627
    3) DATE(S): 12/17/2020, 12/18/2020
    4) TIME(S): 11:09 AM MST, 9:13 AM MST
    5) PERSON(S) SPOKEN WITH: Jade, Dr. Jeffrey Kent
    6) POSITION OF PERSON(S) SPOKEN WITH: Patient Access Liaison, Treating provider

SUMMARY OF DISCUSSION(S): I called Dr. Jeffrey Kent, M.D. (Internal Medicine) and spoke with Jade who said that Dr. Kent was currently with a patient, but that she would give him a message requesting that he return my call.

I spoke with Jeffrey Kent, M.D. who said that he is the claimant's primary care physician. He said that he last evaluated the claimant on 10/22/2020, and that the claimant has chronic pain involving her low back and hips. He said that he has not addressed the claimant's work capacity, and that he has not outlined any work restrictions or limitations for the claimant. He said that the claimant is otherwise healthy and that she has no general medical conditions or medication side effects that would affect her work capacity. Dr. Kent said that he would defer to the claimant's orthopedist and pain management physician regarding her work capacity, restrictions, and limitations. He said that he expects to see the claimant for her follow-up next month. I reached consensus with Dr. Jeffrey Kent.

TELECONFERENCE
    1) AP NAME: Marc Phillips PT
    2) PHONE: 719-488-0120
    3) DATE(S): 12/17/2020
    4) TIME(S): 11:18 AM MST
    5) PERSON(S) SPOKEN WITH: Marc Phillips
    6) POSITION OF PERSON(S) SPOKEN WITH: Physical Therapist

SUMMARY OF DISCUSSION(S): I spoke with Physical Therapist Marc Phillips, who said that the claimant has been under his care for the treatment of chronic low back pain and right hip pain. He said that the claimant was last treated on 11/3/2020, and that she plans to resume physical therapy in January of 2021. He said that the claimant was making progress with her hip pain, but that she still has severe low back pain. He said the she has a Trendelenburg gait pattern requiring the use of a cane secondary to pain and bilateral hip weakness. He said that the claimant has approximately 3+/5 weakness of both hips, and has had mild improvement in hip strength. He said that in his opinion, the claimant would have difficulty performing prolonged sitting, standing, and walking due to the severity of her pain, and that she requires additional physical therapy, and possibly surgical

**Lincoln/Mason 0232**

RE: Jan K Mason«@Claimant»                          NMR #: 414082
Page 3

treatment to obtain significant improvement in her functional capacity. I reached consensus with Physical Therapist Marc Phillips.

**ASSESSMENT:** The claimant is a 48 year old female (DOB        who has a diagnosis of pain in the right hip. The claimant was involved in a motor vehicle accident on 12/18/17. She stopped working on 4/16/19. All of the records provided have been reviewed from a PM&R perspective, and are summarized below.

The review period is from 07/21/20 to the present.

On 4/16/19, Dr. Huang performed an arthroscopic surgery to the right hip including a femoroplasty, chondroplasty, and acetabuloplasty for treatment of a right hip labral tear and impingement.

A magnetic resonance imaging (MRI) Arthrogram of the right hip performed on 10/22/19 revealed postoperative changes of acetabuloplasty, femoroplasty, and labral repair. There was mild chondral irregularity along the lateral acetabulum likely reflecting chondroplasty changes.

On 12/9/19, an operative report from Michael Huang, MD notes the claimant underwent a right hip labral reconstruction for treatment of a recurrent right hip labral tear and right hip impingement.

An MR Arthrogram of the Left Hip performed on 1/30/20 revealed a focal cam deformity of the anterior left femoral head junction with an associated labral base tear. There was a small hip joint effusion.

On 7/1/2020, Roger Sung, MD noted that the claimant had bilateral hip pain, right sided sacroiliac (SI) joint pain, and low back pain. It was noted that the claimant occasionally had pain radiating down her right leg. It was noted that the claimant had a history of hypertension. The claimant's medications were noted as Claritin, Ambien, Losartan, Metoprolol ER, Junel FE, and Cyclobenzaprine.

In a letter dated 7/21/20, the claimant indicated that she was currently completing 6 additional weeks of physical therapy so that she could gain strength in her right hip and move forward with a left SI joint fusion, left labral reconstruction, and possible right hip replacement. The claimant reported that she was also being referred to an additional spine surgeon due to ongoing lumbar spine issues.

An MRI of the lumbar spine performed on 7/31/20 revealed moderate spinal stenosis at L2-L3, a right L3-L4 disc herniation with right neural foraminal stenosis at L3-L4, and L5-S1 mild spinal stenosis due to a central disc herniation.

In a letter dated 8/31/20, Jeffrey Kent, MD indicated that the claimant had ongoing difficulties with mobility with chronic pain and was being considered for a spinal cord stimulator. Dr. Kent indicated that the claimant had ongoing debility, and that she needed to remain on long-term disability throughout this year with reassessment at the end of the year.

In a 10/14/2020 progress note from Jeffrey Kent, MD it was noted that the claimant had ongoing pain involving her low back, hip, leg, SI joint, and paresthesias. Physical examination revealed a blood pressure of 145/85 and a body mass index (BMI) of 29.80. The musculoskeletal examination revealed tenderness, and there was normal range of motion. The neurological examination revealed no focal deficits. Assessment was chronic low back

**Lincoln/Mason 0233**

RE: Jan K Mason«@Claimant»                           NMR #: 414082
Page 4
_____

pain with sciatica, paresthesia of the bilateral legs, sacroiliac joint inflammation, femoroacetabular impingement of both hips, and left acetabular labrum tear. The claimant was referred to orthopedic surgery. It was noted that the claimant was to proceed with a spinal cord stimulator.

In a letter dated 11/1/20, Physical Therapist Marc Phillips indicated that the claimant had significant deficits in physical ability. He indicated that she had a recent exacerbation of her lumbar pain that made it difficult for her to perform transfers, dressing, and driving. He indicated that in his professional opinion, the claimant would not be able to perform any occupation in any capacity from December, 2016 to the present.


On an 11/10/20 evaluation with Kristen Reiss, PA-C, it was noted that the claimant was 11 months status post right hip labral reconstruction, femoroplasty, chondroplasty, acetabuloplasty, and osteoplasty performed on 12/9/19. The claimant reported worsening pain, and that she had not benefited from rest, activity modification, medications, and physical therapy. She reported a pain intensity of 9/10. Physical examination revealed the claimant's surgical wounds to be well-healed without signs of infection. Hip flexion was 115 degrees, external rotation was 45 degrees, and internal rotation was 5 degrees. There was tenderness to palpation over the lateral hip and sacroiliac joints bilaterally. The claimant had an antalgic gait with the use of a cane. Assessment was right hip articular disorder, right sacroiliitis, left hip pain, bilateral sacroiliitis, and lumbar spine spondylosis. The claimant was referred for a possible right total hip arthroplasty.


In a letter dated 11/30/20, Jeffrey Kent, MD indicated that the claimant was unable to work due to her severe chronic pain. He indicated that she was unable to maintain any sitting or standing position for very long without increasing pain which affects her ability to do her job. It was noted that she would require bilateral hip replacement surgery and possibly a left SI joint fusion. Dr. Kent requested that the claimant's disability be extended at least through February of 2021.

All available medical documentation was reviewed.

**IN ANSWER TO YOUR SPECIFIC QUESTIONS:**

**1. What diagnoses are supported by the medical evidence?**

The following diagnoses are supported by the medical evidence.

1. Chronic low back pain
2. Chronic bilateral hip pain
3. History of a right sacroiliac joint fusion
4. History of a right hip labral reconstruction,
5. Femoroacetabular impingement of both hips
6. Left acetabular labrum tear
7. Lumbar spine spondylosis
8. Hypertension.


**2. Taking into consideration the entire clinical picture, including standards of care and evidence based medicine, and any medication or other treatment side effects, please describe if there are any supported**

**Lincoln/Mason 0234**

RE: Jan  K Mason«@Claimant»                                    NMR #: 414082
Page 5

**level of impairments which translates into restrictions and limitations from 7/21/2020 to the present? Please explain your medical rationale as to why or why not and provide a detailed explanation.**

Taking into consideration the entire clinical picture, including standards of care and evidence based medicine, impairment is supported from 7/21/2020 to the present secondary to the claimant's medical conditions of chronic low back pain, chronic bilateral hip pain, history of a right sacroiliac joint fusion, history of a right hip labral reconstruction, femoroacetabular impingement of both hips, a left acetabular labrum tear, and lumbar spine spondylosis due to associated pain and decreased mobility.

**3. If functional impairment is supported, please describe how that translates into restrictions or limitations and for what period(s) of time. Please define in terms of frequency (never, occasional, frequent, constant) and task (sit, stand, lift/carry, type etc). Please explain your medical rationale for any restrictions or limitations or why restrictions or limitations are not supported.**

Taking into consideration the entire clinical picture, the following restrictions and limitations are supported from 7/21/2020 to the present:

The claimant can lift, carry, push, and pull up to a maximum of 10 pounds occasionally.

The claimant can sit for 1 hour at a time for a total of 6 hours in an 8 hour workday, with the ability to change positions from sitting to standing or walking as needed for comfort.

The claimant can stand for 30 minutes at a time for a total of 2 hours in an 8 hour workday.

The claimant can walk for 30 minutes at a time for a total of 2 hours in an 8 hour workday.

The claimant can occasional bend, kneel, squat, stoop, and climb stairs,

No climbing ladders, exposure to unprotected heights, or operating dangerous machinery while taking muscle relaxant medications or any other potentially sedating medications.

No restrictions or limitations in the use of the upper extremities to perform reaching, handing, grasping, fingering, or keyboarding.

The above noted restrictions and limitations are supported until the claimant undergoes further treatment with a spinal cord stimulator and/or a possible right total hip arthroplasty. If this has not occurred by 02/10/2021, the claimant should be reevaluated at that time.

The medical rationale for the R/L is to prevent exacerbation of the claimant's symptoms and to prevent further injury.

**4. Does the medical documentation support that any medical condition alone, or in combination would preclude the claimant from sustained occupational functioning on a full-time basis? Please explain why or why not.**

No. The claimant should be capable of sustained occupational functioning on a full-time basis. The abnormalities on physical examination and diagnostic testing are not of a severity to support that the claimant would be precluded from performing full-time work within the above noted restrictions and limitations.

**Lincoln/Mason 0235**

RE:  Jan  K Mason«@Claimant»                                   NMR #: 414082
Page 6

**5. Do you agree with the assessment of the claimant's capacity and the restrictions as noted by Dr. Jeffrey Kent dated 8/31/2020? If not, please explain.**

No. I do not agree that the claimant has ongoing debility and that she needed to remain on long-term disability throughout this year with reassessment at the end of the year.  The abnormalities on physical examination and diagnostic testing are not of a severity to support that the claimant would be precluded from performing full-time work within the above noted restrictions and limitations.

**6. Do you agree with the assessment of the claimant's capacity and the restrictions as noted by Dr. Marc Phillips dated 11/1/2020? If not, please explain.**

No. I do not agree that the claimant would not be able to perform any occupation in any capacity since December of 2016 to the present. The abnormalities on physical examination and diagnostic testing are not of a severity to support that the claimant would be precluded from performing full-time work within the above noted restrictions and limitations.

**7. When contacting the treating provider please discuss the claimant's condition, treatment, and functional capacity. Please indicate the information reviewed and indicate whether or not you reached consensus with the treating provider. If not, please discuss your final assessment after the call.**

I spoke with Jeffrey Kent, M.D. who said that he is the claimant's primary care physician. He said that he last evaluated the claimant on 10/22/2020, and that the claimant has chronic pain involving her low back and hips. He said that he has not addressed the claimant's work capacity, and that he has not outlined any work restrictions or limitations for the claimant. He said that the claimant is otherwise healthy and that she has no general medical conditions or medication side effects that would affect her work capacity. Dr. Kent said that he would defer to the claimant's orthopedist and pain management physician regarding her work capacity, restrictions, and limitations. He said that he expects to see the claimant for her follow-up next month. I reached consensus with Dr. Jeffrey Kent.

I spoke with Physical Therapist Marc Phillips, who said that the claimant has been under his care for the treatment of chronic low back pain and right hip pain. He said that the claimant was last treated on 11/3/2020, and that she plans to resume physical therapy in January of 2021. He said that the claimant was making progress with her hip pain, but that she still has severe low back pain. He said the she has a Trendelenburg gait pattern requiring the use of a cane secondary to pain and bilateral hip weakness. He said that the claimant has approximately 3+/5 weakness of both hips, and has had mild improvement in hip strength. He said that in his opinion, the claimant would have difficulty performing prolonged sitting, standing, and walking due to the severity of her pain, and that she requires additional physical therapy, and possibly surgical treatment to obtain significant improvement in her functional capacity. I reached consensus with Physical Therapist Marc Phillips.

**8. If AP contact may clarify any significant areas such as diagnosis, R&L's, treatment opportunities, prognosis, or reason for work absence, the AP on the portal - Document 2 attempts within 5 business days with initial and final memorandum as indicated, as well as AP letter**

See Call Logs.

**Lincoln/Mason 0236**

RE: Jan  K Mason«@Claimant»                         NMR #: 414082
Page 7

## CONFLICT OF INTEREST ATTESTATION:

I certify that I do not accept compensation for review activities that is dependent in any way on the specific outcome of the case. To the best of my knowledge, I was not involved with the specific episode of care prior to referral of the case for review. I do not have a material professional, familial, or financial conflict of interest (financial conflict of interest is defined as ownership interest of greater than 5%) regarding any of the following: the referring entity; the insurance issuer or group health plan that is the subject of the review the covered person whose treatment is the subject of the review and the covered person's authorized representative, if applicable; any officer, director or management employee of the insurance issuer that is the subject of the review; any group health plan administrator, plan fiduciary, or plan employee; the health care provider, the health care provider's medical group or independent practice association recommending the health care service or treatment that is the subject of the review; the facility at which the recommended health care service or treatment would be provided; or the developer or manufacturer of the principle drug, device, procedure or other therapy being recommended for the covered person whose treatment is the subject of the review.

This attestation certifies that the peer reviewer named below has the appropriate scope of licensure or certification that typically manages the medical condition, procedure, treatment, or issue under review and has current, relevant experience and/or knowledge to render a determination for the case under review.

## ADVISING REVIEWER:

Eric Kerstman M.D.
Board Certified in Aerospace Medicine
Board Certified in Pain Medicine
Board Certified in Physical Medicine and Rehabilitation
Licensed in State of TX #M1823

*NMR Conflict of Interest Attestation:*

*NMR attests to the fact that there is no conflict of interest with this review for referring entity, benefit plan, enrollee/consumer, attending provider, facility, drug, device or procedure. NMR attests that its compensation is not dependent on the specific outcome of this review or has had any involvement with this case prior to this referral.*

**Lincoln/Mason 0237**



December 22, 2020

**Attending Physician Confirmatory Letter**

Re: Jan K. Mason

Dear Mr. Marc Phillips PT,

I have completed an appeal review on Jan Mason, a patient you have treated. The patient had listed you as a contact provider. During the time I was reviewing the claim, I spoke with you on 12/17/2020 at 10:18 AM. You stated that the claimant has been under your care for the treatment of chronic low back pain and right hip pain. You said that the claimant was last treated on 11/3/2020, and that she plans to resume physical therapy in January of 2021. You said that the claimant was making progress with her hip pain, but that she still has severe low back pain, and that she has a Trendelenburg gait pattern requiring the use of a cane secondary to pain and bilateral hip weakness. You said that the claimant has approximately 3+/5 weakness of both hips, and has had mild improvement in hip strength. You said that in your opinion, the claimant would have difficulty performing prolonged sitting, standing, and walking due to the severity of her pain, and that she requires additional physical therapy, and possibly surgical treatment to obtain significant improvement in her functional capacity.

From a PM&R perspective, taking into consideration the entire clinical picture, including standards of care and evidence based medicine, impairment is supported from 7/21/2020 to the present secondary to the claimant's medical conditions of chronic low back pain, chronic bilateral hip pain, history of a right sacroiliac joint fusion, history of a right hip labral reconstruction, femoroacetabular impingement of both hips, a left acetabular labrum tear, and lumbar spine spondylosis due to associated pain and decreased mobility. The following restrictions and limitations are supported from 7/21/2020 to the present:

The claimant can lift, carry, push, and pull up to a maximum of 10 pounds occasionally.

The claimant can sit for 1 hour at a time for a total of 6 hours in an 8 hour workday, with the ability to change positions from sitting to standing or walking as needed for comfort.

The claimant can stand for 30 minutes at a time for a total of 2 hours in an 8 hour workday.

The claimant can walk for 30 minutes at a time for a total of 2 hours in an 8 hour workday.

The claimant can occasional bend, kneel, squat, stoop, and climb stairs,

No climbing ladders, exposure to unprotected heights, or operating dangerous machinery while taking muscle relaxant medications or any other potentially sedating medications.

No restrictions or limitations in the use of the upper extremities to perform reaching, handing, grasping, fingering, or keyboarding.

The above noted restrictions and limitations are supported until the claimant undergoes further treatment with a

4960 E. State Street ● Rockford, IL 61108 ● Phone  815.964.6334 ● Fax  815.964.1162

Lincoln/Mason 0238

spinal cord stimulator and/or a possible right total hip arthroplasty. If this has not occurred by 02/10/2021, the claimant should be reevaluated at that time.

The medical rationale for the R/L is to prevent exacerbation of the claimant's symptoms and to prevent further injury.

Based on my review of the records, I believe the above-mentioned restrictions and limitations are supported.  Do you agree?  If you do not agree, why not?  Are there any underlying barriers that I was not made aware of that would preclude the patient from working as described above?  If so, please describe?

Please reply via fax within ten (10) business days by 01/7/21 to the fax number below.  If you have any questions or would like to discuss this case further, please do not hesitate to contact me.

Sincerely,

Eric Kerstman M.D.
Board Certified in Aerospace Medicine
Board Certified in Pain Medicine
Board Certified in Physical Medicine and Rehabilitation

_____          _____
Name                                        Date

Respectfully Yours,
Dawn E Peterson
Client Coordinator

p. p. Eric Kerstman, M.D.

Voice:  1-815-964-6334
Fax:    1-815-964-1162

● Page 2

**Lincoln/Mason 0239**

**December 22, 2020**

**Attending Physician Confirmatory Letter**

Re: Jan K. Mason

Dear Dr. Kent,

I have completed an appeal review on Jan Mason, a patient you have treated. The patient had listed you as a contact provider. During the time I was reviewing the claim, I spoke with you on 12/18/2020 at 8:13 AM. You stated that you are the claimant's primary care physician and that you last evaluated the claimant on 10/22/2020, and that the claimant has chronic pain involving her low back and hips. You said that you have not addressed the claimant's work capacity, and have not outlined any work restrictions or limitations. You said that the claimant is otherwise healthy and that she has no general medical conditions or medication side effects that would affect her work capacity. You would defer to the claimant's orthopedist and pain management physician regarding her work capacity, restrictions, and limitations. You are expecting to see the claimant for her follow-up next month.

From a PM&R perspective, taking into consideration the entire clinical picture, including standards of care and evidence based medicine, impairment is supported from 7/21/2020 to the present secondary to the claimant's medical conditions of chronic low back pain, chronic bilateral hip pain, history of a right sacroiliac joint fusion, history of a right hip labral reconstruction, femoroacetabular impingement of both hips, a left acetabular labrum tear, and lumbar spine spondylosis due to associated pain and decreased mobility. The following restrictions and limitations are supported from 7/21/2020 to the present:

The claimant can lift, carry, push, and pull up to a maximum of 10 pounds occasionally.

The claimant can sit for 1 hour at a time for a total of 6 hours in an 8 hour workday, with the ability to change positions from sitting to standing or walking as needed for comfort.

The claimant can stand for 30 minutes at a time for a total of 2 hours in an 8 hour workday.

The claimant can walk for 30 minutes at a time for a total of 2 hours in an 8 hour workday.

The claimant can occasional bend, kneel, squat, stoop, and climb stairs,

No climbing ladders, exposure to unprotected heights, or operating dangerous machinery while taking muscle relaxant medications or any other potentially sedating medications.

No restrictions or limitations in the use of the upper extremities to perform reaching, handing, grasping, fingering, or keyboarding.

The above noted restrictions and limitations are supported until the claimant undergoes further treatment with a spinal cord stimulator and/or a possible right total hip arthroplasty. If this has not occurred by 02/10/2021, the claimant should be reevaluated at that time.

The medical rationale for the R/L is to prevent exacerbation of the claimant's symptoms and to prevent further injury.

**Lincoln/Mason 0240**

Based on my review of the records, I believe the above-mentioned restrictions and limitations are supported. Do you agree? If you do not agree, why not? Are there any underlying barriers that I was not made aware of that would preclude the patient from working as described above? If so, please describe?

Please reply via fax within ten (10) business days by 01/7/21 to the fax number below. If you have any questions or would like to discuss this case further, please do not hesitate to contact me.

Sincerely,

Eric Kerstman M.D.
Board Certified in Aerospace Medicine
Board Certified in Pain Medicine
Board Certified in Physical Medicine and Rehabilitation

_____          _____
Name                                      Date

Respectfully Yours,
Dawn E Peterson
Client Coordinator

p. p. Eric Kerstman, M.D.

Voice:  1-815-964-6334
Fax:    1-815-964-1162

● Page 2

**Lincoln/Mason 0241**



Lincoln Life Assurance Company of Boston
Disability and Life Claims
PO Box 2578
Omaha, NE 68172-9688
Phone No.: (888) 437-7611
Secure Fax No.: (603) 430-1926

| | |
|---|---|
| Date: | January 5, 2021 |
| To: | DR JEFFREY KENT<br>9480 BRIAR VILLAGE POINT STE 2<br>COLORADO SPRINGS CO 80920 |
| Attn: | Dr. Kent - Urgent |
| Fax: | (719) 623-2102 |
| From: | Mary Avrett<br>Appeals Consultant<br>Phone No.: Phone No.: (888) 437-7611<br>Secure Fax No.: (603) 430-1926 |
| Total Pages<br>(Including Cover): | 16 |
| RE:<br><br>Claim #:    9291624<br>Claimant:   Jan Mason<br><br>Charter Communications, Inc. | |

This fax, and any attachments thereto, is intended only for the use of the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this fax, you are hereby notified that any dissemination, distribution or copying of this fax, and any attachments thereto, is strictly prohibited. If you have received this fax in error, please notify me by telephone at (888) 437-7611 and permanently shred the original and any copy of any fax and any printout thereof.

**Lincoln/Mason 0242**



Lincoln Life Assurance Company of Boston
Disability and Life Claims
PO Box 2578
Omaha, NE 68172-9688
Phone No.: (888) 437-7611
Secure Fax No.: (603) 430-1926

January 5, 2021

Dr. Jeffrey Kent
9480 BRIAR VILLAGE POINT STE 2
COLORADO SPRINGS, CO 80920

RE:    Long Term Disability (LTD) Benefits
       Charter Communications, Inc.
       Claim #: 9291624
       Claimant: Jan Mason
       Claimant D.O.B.:

Dear Dr. Jeffrey Kent:

We are the Disability Claim Administrator for your patient, Jan Mason.

Please find attached a copy of a medical review by Dr. Eric Kerstman, an independent physician Board Certified in Physical Medicine and Pain Medicine dated December 22, 2020.  Please review the report and provide any comments you wish to have considered.  If you disagree with the findings, please detail the specific areas with which you disagree and provide medical documentation to support your position.

We ask you provide this information by January 20, 2021.  Failure to provide the requested information may result in an adverse benefit determination.  The information can be faxed to our office at our secure fax number (603) 430-1926, mailed to the above address or emailed to disabilitydocuments@lfg.com.  Please be sure to include the claim number above.

Although HIPAA does not apply to disability insurance carriers, we understand your responsibilities under HIPAA as a health care provider, and our associated responsibility of ensuring this information is protected against deliberate or inadvertent misuse or disclosure.

As the insurance carrier providing employer sponsored Long Term Disability (LTD) benefits coverage to your patient, we have enclosed a HIPAA compliant authorization signed by Ms. Mason allowing the release of information to our company. This authorization specifically allows you to release medical information to us and is valid for two years from the date of Ms. Mason's signature.

If you have any questions regarding this matter, please contact me.

1  of 2

**Lincoln/Mason 0243**

Sincerely,

Mary Avrett
Appeals Consultant
Phone No.: (888) 437-7611 Ext. 16371
Secure Fax No.: (603) 430-1926

CC:    Jan Mason


Attachments:   9291624-EMPLOYEE/CLAIMANT-AUTHORIZATION-09.25.2019
                 9291624-MEDICAL-CP/PEER REVIEW-12.22.2020

**Lincoln/Mason 0244**

3L268190622



Liberty Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7207
London, KY 40742-7207
Phone No.: (844) 384-5858
Secure Fax No.: (603) 334-5994

## AUTHORIZATION FOR THE RELEASE OF INFORMATION INCLUDING PROTECTED HEALTH INFORMATION

**I HEREBY AUTHORIZE THE USE OR DISCLOSURE OF INFORMATION ABOUT ME AS DESCRIBED BELOW:**
**Person(s) or group(s) of persons authorized to use or disclose the information:** Any physicians, medical practitioners, hospitals, clinics, HMOs, long-term care facilities, medical or medically-related facilities, pharmacies, insurance companies, credit or consumer reporting agency, financial/educational institutions, current or former employer, governmental agency, MIB Inc., and any insurance support organizations.
**Person(s) or group(s) of persons authorized to collect or otherwise receive the information:** The particular Company in the Lincoln Financial Group of companies to which I am submitting a claim and its authorized representatives, agents and/or employees, the Plan Sponsor (if self-insured Plan) and other organizations providing claims management services.
**Description of the information that may be used or disclosed:** This Authorization specifically includes the release of all information related to:
* My physical and mental health and my insurance policies and claims, including, but not limited to, those containing diagnosis, treatments, prognosis, prescription drug information, alcohol or drug abuse or information regarding communicable or infectious conditions, including HIV/AIDS.
* Job duties, earnings, personnel records and other work related information and credit reports, bank records, and federal and state tax returns.
* Information concerning Social Security benefits, including any records pertaining to me and my dependents
**The information will be used or disclosed only for the following purpose(s):** For purposes of investigating, evaluating and processing my claim, and/or for insurance-related functions.

## STATEMENTS OF UNDERSTANDING & ACKNOWLEDGMENT:

**I understand** that information used or disclosed pursuant to this authorization could be subject to redisclosure as necessary by the recipient and, if so, may not be subject to federal or state law protecting its confidentiality.
**I understand** that I may revoke this authorization in writing at any time by sending a written revocation to the Company in the Lincoln Financial Group of companies to which I have submitted a claim, except to the extent that action has been taken in reliance on this authorization, or to the extent that other law provides the Company with the right to contest a claim. I also understand that the revocation of this authorization will not affect uses and disclosures of my health information for purposes of treatment, payment and health care operations.
**I understand** that authorizing the disclosure of my health information is voluntary and the provision of health care services to me is not conditioned on whether I sign this authorization. If I choose not to sign this authorization, insurance coverage or claim payments may be denied or delayed.
This authorization shall remain in force for 24 months from the date of signature, except to the extent applicable state law imposes or allows a different duration. The information obtained under this authorization will be retained in accordance with the Company's standard retention policy and applicable law. I understand that I may request a copy of this authorization.

Name of claimant (print) _____ JAK K MASON _____

Name of legal representative, if applicable (print) _____ — _____    Relationship _____ — _____

Signature of claimant or legal representative _____ Jank Mason _____

Date of Birth: _____ _____    Claim Number: _9291624_    Date: _09/14/19_

**A copy of this authorization will be considered as valid as the original.**

**Lincoln/Mason 0245**

3L268190622

 **Lincoln**
Financial Group®

Liberty Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7207
London, KY 40742-72097
Phone No.: (844) 384-5858
Secure Fax No.: (603) 334-5994

## AUTHORIZATION FOR THE RELEASE OF PROTECTED HEALTH INFORMATION

**I HEREBY AUTHORIZE THE USE OR DISCLOSURE OF HEALTH INFORMATION ABOUT ME AS DESCRIBED BELOW:**

**Person(s) or group(s) of persons authorized to use or disclose the information:**  Any physicians, medical practitioners, hospitals, clinics, HMOs, long-term care facilities, medical or medically-related facilities, pharmacies, insurance companies, Plan Sponsor/ Administrator, governmental agency, MIB Inc., and any insurance support organizations.

**Person(s) or group(s) of persons authorized to collect or otherwise receive the information:** The particular Company in the Lincoln Financial Group of companies to which I am submitting a claim and its authorized representatives, agents and/or employees, the Plan Sponsor (if self-insured Plan) and other organizations providing claims management services.

**Description of the information that may be used or disclosed:** This Authorization specifically includes the release of all psychotherapy notes relating to me, without restriction, including psychotherapy notes recorded in any medium documenting or analyzing the contents of conversations during private counseling sessions and/or group, joint or family counseling sessions.

**The information will be used or disclosed only for the following purpose(s):** For purposes of investigating, evaluating and processing my claim, and/or for insurance-related functions.

## STATEMENTS OF UNDERSTANDING & ACKNOWLEDGMENT:

**I** understand that information used or disclosed pursuant to this authorization could be subject to redisclosure as necessary by the recipient and, if so, may not be subject to federal or state law protecting its confidentiality.

**I** understand that I may revoke this authorization in writing at any time by sending a written revocation to the Company in the Lincoln Financial Group of companies to which I have submitted a claim, except to the extent that action has been taken in reliance on this authorization, or to the extent that other law provides the Company with the right to contest a claim. I also understand that the revocation of this authorization will not affect uses and disclosures of my health information for purposes of treatment, payment and health care operations.

**I** understand that authorizing the disclosure of this health information is voluntary and the provision of health care services to me is not conditioned on whether I sign this authorization.  If I choose not to sign this authorization, insurance coverage or claim payments may be denied or delayed.

**This authorization** shall remain in force for 24 months from the date of signature, except to the extent applicable state law imposes or allows a different duration.  The information obtained under this authorization will be retained in accordance with the Company's standard retention policy and applicable law. I understand that I may request a copy of this authorization.

Name of claimant (print) ___JAN K MASON_____

Name of legal representative, if applicable (print) _____   Relationship _____

Signature of claimant or legal representative ___Jan K Mason_____

Date of Birth: __    _____   Claim Number: __9291624__   Date: ___08/14/19___

**A copy of this authorization will be considered as valid as the original**

Lincoln/Mason 0246



Network Medical Review Co. Ltd.

An ExamWorks Company

**REFERRED BY:** MARY AVRETT
**CLIENT:** Lincoln Life Insurance
**NAME:** Jan K Mason
**CLAIM #:** 9291624
**NMR #:** 414082
**DATE:** 12/22/2020

**RECORDS PROVIDED FOR REVIEW:**

| | | |
|---|---|---|
| PROGRESS NOTES | Colorado Springs Orthopaedic Group | 01/09/19 - 11/10/20 |
| PROGRESS NOTES | J.R. Kent, MD | 07/01/20 |
| PROGRESS NOTES | UCHealth / Aspen Creek Medical Center | 07/23/19 - 11/30/20 |
| PROGRESS NOTES | D.R. Salek, MD | 08/28/19 - 09/08/20 & Undated |
| PROGRESS NOTES | C.M. Kudron, MD | 09/04/20 |
| PROGRESS NOTES | Unknown Provider | Undated |
| OPERATIVE NOTES | Orthopaedic & Spine Center of Spine of Southern Colorado | 04/17/19 - 12/09/19 |
| PHYSICAL / OCCUPATIONAL THERAPY | Colorado Springs Orthopaedic Group Physical Therapy | 09/17/19 |
| PHYSICAL / OCCUPATIONAL THERAPY | Fyzical Therapy & Balance Centers | 12/13/19 - 12/08/20 |
| PHYSICAL / OCCUPATIONAL THERAPY | Falcon Physical Therapy | 11/01/20 |
| FILE REVIEWS | D. Fung, MD | 09/14/20 |
| FILE REVIEWS | D.A. Monti, MD | 07/16/20 |
| FILE REVIEWS | R. Avioli, MD | 10/27/19 |
| MRI / MRI ARTHROGRAM | Penrad Imaging | 10/22/19 - 01/30/20 |
| MRI | Southwest Diagnostic Centers | 09/12/18 |
| MRI | UpRight MRI of Colorado | 07/31/20 |
| CT | Penrad Imaging | 11/27/18 |

**4960 E. State Street ⁕ Rockford, IL 61108 ⁕ Phone 815.964.6334 ⁕ Fax 815.964.1162**
*website* www.nmrco.com ◼ *email* info@nmrco.com

**Lincoln/Mason 0247**

RE: Jan K Mason«@Claimant»                          NMR #: 414082
Page 2

| RF ARTHROGRAPHY | Penrad Imaging | 10/22/19 - 01/30/20 |
|---|---|---|
| X-RAY | Orthopaedic & Spine Center of Spine of Southern Colorado | 12/09/19 |
| X-RAY | Penrad Imaging | 07/11/18 |
| ROI | | 09/14/19, 09/18/19 |
| MISC | | 12/19/17 - 12/09/20 & Undated |

TELECONFERENCE
    1) AP NAME: Dr. Kent
    2) PHONE: (719) 278 3627
    3) DATE(S): 12/17/2020, 12/18/2020
    4) TIME(S): 11:09 AM MST, 9:13 AM MST
    5) PERSON(S) SPOKEN WITH: Jade, Dr. Jeffrey Kent
    6) POSITION OF PERSON(S) SPOKEN WITH: Patient Access Liaison, Treating provider

SUMMARY OF DISCUSSION(S): I called Dr. Jeffrey Kent, M.D. (Internal Medicine) and spoke with Jade who said that Dr. Kent was currently with a patient, but that she would give him a message requesting that he return my call.

I spoke with Jeffrey Kent, M.D. who said that he is the claimant's primary care physician. He said that he last evaluated the claimant on 10/22/2020, and that the claimant has chronic pain involving her low back and hips. He said that he has not addressed the claimant's work capacity, and that he has not outlined any work restrictions or limitations for the claimant. He said that the claimant is otherwise healthy and that she has no general medical conditions or medication side effects that would affect her work capacity. Dr. Kent said that he would defer to the claimant's orthopedist and pain management physician regarding her work capacity, restrictions, and limitations. He said that he expects to see the claimant for her follow-up next month. I reached consensus with Dr. Jeffrey Kent.

TELECONFERENCE
    1) AP NAME: Marc Phillips PT
    2) PHONE: 719-488-0120
    3) DATE(S): 12/17/2020
    4) TIME(S): 11:18 AM MST
    5) PERSON(S) SPOKEN WITH: Marc Phillips
    6) POSITION OF PERSON(S) SPOKEN WITH: Physical Therapist

SUMMARY OF DISCUSSION(S): I spoke with Physical Therapist Marc Phillips, who said that the claimant has been under his care for the treatment of chronic low back pain and right hip pain. He said that the claimant was last treated on 11/3/2020, and that she plans to resume physical therapy in January of 2021. He said that the claimant was making progress with her hip pain, but that she still has severe low back pain. He said the she has a Trendelenburg gait pattern requiring the use of a cane secondary to pain and bilateral hip weakness. He said that the claimant has approximately 3+/5 weakness of both hips, and has had mild improvement in hip strength. He said that in his opinion, the claimant would have difficulty performing prolonged sitting, standing, and walking due to the severity of her pain, and that she requires additional physical therapy, and possibly surgical

**Lincoln/Mason 0248**

RE: Jan K Mason«@Claimant»                                      NMR #: 414082
Page 3

---

treatment to obtain significant improvement in her functional capacity. I reached consensus with Physical Therapist Marc Phillips.

**ASSESSMENT:** The claimant is a 48 year old female (DOB          who has a diagnosis of pain in the right hip. The claimant was involved in a motor vehicle accident on 12/18/17. She stopped working on 4/16/19. All of the records provided have been reviewed from a PM&R perspective, and are summarized below.

The review period is from 07/21/20 to the present.

On 4/16/19, Dr. Huang performed an arthroscopic surgery to the right hip including a femoroplasty, chondroplasty, and acetabuloplasty for treatment of a right hip labral tear and impingement.

A magnetic resonance imaging (MRI) Arthrogram of the right hip performed on 10/22/19 revealed postoperative changes of acetabuloplasty, femoroplasty, and labral repair. There was mild chondral irregularity along the lateral acetabulum likely reflecting chondroplasty changes.

On 12/9/19, an operative report from Michael Huang, MD notes the claimant underwent a right hip labral reconstruction for treatment of a recurrent right hip labral tear and right hip impingement.

An MR Arthrogram of the Left Hip performed on 1/30/20 revealed a focal cam deformity of the anterior left femoral head junction with an associated labral base tear. There was a small hip joint effusion.

On 7/1/2020, Roger Sung, MD noted that the claimant had bilateral hip pain, right sided sacroiliac (SI) joint pain, and low back pain. It was noted that the claimant occasionally had pain radiating down her right leg. It was noted that the claimant had a history of hypertension. The claimant's medications were noted as Claritin, Ambien, Losartan, Metoprolol ER, Junel FE, and Cyclobenzaprine.

In a letter dated 7/21/20, the claimant indicated that she was currently completing 6 additional weeks of physical therapy so that she could gain strength in her right hip and move forward with a left SI joint fusion, left labral reconstruction, and possible right hip replacement. The claimant reported that she was also being referred to an additional spine surgeon due to ongoing lumbar spine issues.

An MRI of the lumbar spine performed on 7/31/20 revealed moderate spinal stenosis at L2-L3, a right L3-L4 disc herniation with right neural foraminal stenosis at L3-L4, and L5-S1 mild spinal stenosis due to a central disc herniation.

In a letter dated 8/31/20, Jeffrey Kent, MD indicated that the claimant had ongoing difficulties with mobility with chronic pain and was being considered for a spinal cord stimulator. Dr. Kent indicated that the claimant had ongoing debility, and that she needed to remain on long-term disability throughout this year with reassessment at the end of the year.

In a 10/14/2020 progress note from Jeffrey Kent, MD it was noted that the claimant had ongoing pain involving her low back, hip, leg, SI joint, and paresthesias. Physical examination revealed a blood pressure of 145/85 and a body mass index (BMI) of 29.80. The musculoskeletal examination revealed tenderness, and there was normal range of motion. The neurological examination revealed no focal deficits. Assessment was chronic low back

**Lincoln/Mason 0249**

RE: Jan K Mason«@Claimant»                        NMR #: 414082
Page 4

pain with sciatica, paresthesia of the bilateral legs, sacroiliac joint inflammation, femoroacetabular impingement of both hips, and left acetabular labrum tear. The claimant was referred to orthopedic surgery. It was noted that the claimant was to proceed with a spinal cord stimulator.

In a letter dated 11/1/20, Physical Therapist Marc Phillips indicated that the claimant had significant deficits in physical ability. He indicated that she had a recent exacerbation of her lumbar pain that made it difficult for her to perform transfers, dressing, and driving. He indicated that in his professional opinion, the claimant would not be able to perform any occupation in any capacity from December, 2016 to the present.

On an 11/10/20 evaluation with Kristen Reiss, PA-C, it was noted that the claimant was 11 months status post right hip labral reconstruction, femoroplasty, chondroplasty, acetabuloplasty, and osteoplasty performed on 12/9/19. The claimant reported worsening pain, and that she had not benefited from rest, activity modification, medications, and physical therapy. She reported a pain intensity of 9/10. Physical examination revealed the claimant's surgical wounds to be well-healed without signs of infection. Hip flexion was 115 degrees, external rotation was 45 degrees, and internal rotation was 5 degrees. There was tenderness to palpation over the lateral hip and sacroiliac joints bilaterally. The claimant had an antalgic gait with the use of a cane. Assessment was right hip articular disorder, right sacroiliitis, left hip pain, bilateral sacroiliitis, and lumbar spine spondylosis. The claimant was referred for a possible right total hip arthroplasty.

In a letter dated 11/30/20, Jeffrey Kent, MD indicated that the claimant was unable to work due to her severe chronic pain. He indicated that she was unable to maintain any sitting or standing position for very long without increasing pain which affects her ability to do her job. It was noted that she would require bilateral hip replacement surgery and possibly a left SI joint fusion. Dr. Kent requested that the claimant's disability be extended at least through February of 2021.

All available medical documentation was reviewed.

**IN ANSWER TO YOUR SPECIFIC QUESTIONS:**

**1. What diagnoses are supported by the medical evidence?**

The following diagnoses are supported by the medical evidence.

1. Chronic low back pain
2. Chronic bilateral hip pain
3. History of a right sacroiliac joint fusion
4. History of a right hip labral reconstruction,
5. Femoroacetabular impingement of both hips
6. Left acetabular labrum tear
7. Lumbar spine spondylosis
8. Hypertension.

**2. Taking into consideration the entire clinical picture, including standards of care and evidence based medicine, and any medication or other treatment side effects, please describe if there are any supported**

**Lincoln/Mason 0250**

RE: Jan K Mason«@Claimant»                                    NMR #: 414082
Page 5

level of impairments which translates into restrictions and limitations from 7/21/2020 to the present? Please explain your medical rationale as to why or why not and provide a detailed explanation.

Taking into consideration the entire clinical picture, including standards of care and evidence based medicine, impairment is supported from 7/21/2020 to the present secondary to the claimant's medical conditions of chronic low back pain, chronic bilateral hip pain, history of a right sacroiliac joint fusion, history of a right hip labral reconstruction, femoroacetabular impingement of both hips, a left acetabular labrum tear, and lumbar spine spondylosis due to associated pain and decreased mobility.

**3. If functional impairment is supported, please describe how that translates into restrictions or limitations and for what period(s) of time. Please define in terms of frequency (never, occasional, frequent, constant) and task (sit, stand, lift/carry, type etc). Please explain your medical rationale for any restrictions or limitations or why restrictions or limitations are not supported.**

Taking into consideration the entire clinical picture, the following restrictions and limitations are supported from 7/21/2020 to the present:

The claimant can lift, carry, push, and pull up to a maximum of 10 pounds occasionally.

The claimant can sit for 1 hour at a time for a total of 6 hours in an 8 hour workday, with the ability to change positions from sitting to standing or walking as needed for comfort.

The claimant can stand for 30 minutes at a time for a total of 2 hours in an 8 hour workday.

The claimant can walk for 30 minutes at a time for a total of 2 hours in an 8 hour workday.

The claimant can occasional bend, kneel, squat, stoop, and climb stairs,

No climbing ladders, exposure to unprotected heights, or operating dangerous machinery while taking muscle relaxant medications or any other potentially sedating medications.

No restrictions or limitations in the use of the upper extremities to perform reaching, handing, grasping, fingering, or keyboarding.

The above noted restrictions and limitations are supported until the claimant undergoes further treatment with a spinal cord stimulator and/or a possible right total hip arthroplasty. If this has not occurred by 02/10/2021, the claimant should be reevaluated at that time.

The medical rationale for the R/L is to prevent exacerbation of the claimant's symptoms and to prevent further injury.

**4. Does the medical documentation support that any medical condition alone, or in combination would preclude the claimant from sustained occupational functioning on a full-time basis? Please explain why or why not.**

No. The claimant should be capable of sustained occupational functioning on a full-time basis. The abnormalities on physical examination and diagnostic testing are not of a severity to support that the claimant would be precluded from performing full-time work within the above noted restrictions and limitations.

**Lincoln/Mason 0251**

RE:  Jan  K Mason«@Claimant»                                        NMR #: 414082
Page 6

**5. Do you agree with the assessment of the claimant's capacity and the restrictions as noted by Dr. Jeffrey Kent dated 8/31/2020? If not, please explain.**

No. I do not agree that the claimant has ongoing debility and that she needed to remain on long-term disability throughout this year with reassessment at the end of the year.  The abnormalities on physical examination and diagnostic testing are not of a severity to support that the claimant would be precluded from performing full-time work within the above noted restrictions and limitations.

**6. Do you agree with the assessment of the claimant's capacity and the restrictions as noted by Dr. Marc Phillips dated 11/1/2020? If not, please explain.**

No. I do not agree that the claimant would not be able to perform any occupation in any capacity since December of 2016 to the present. The abnormalities on physical examination and diagnostic testing are not of a severity to support that the claimant would be precluded from performing full-time work within the above noted restrictions and limitations.

**7. When contacting the treating provider please discuss the claimant's condition, treatment, and functional capacity. Please indicate the information reviewed and indicate whether or not you reached consensus with the treating provider. If not, please discuss your final assessment after the call.**

I spoke with Jeffrey Kent, M.D. who said that he is the claimant's primary care physician. He said that he last evaluated the claimant on 10/22/2020, and that the claimant has chronic pain involving her low back and hips. He said that he has not addressed the claimant's work capacity, and that he has not outlined any work restrictions or limitations for the claimant. He said that the claimant is otherwise healthy and that she has no general medical conditions or medication side effects that would affect her work capacity. Dr. Kent said that he would defer to the claimant's orthopedist and pain management physician regarding her work capacity, restrictions, and limitations. He said that he expects to see the claimant for her follow-up next month. I reached consensus with Dr. Jeffrey Kent.

I spoke with Physical Therapist Marc Phillips, who said that the claimant has been under his care for the treatment of chronic low back pain and right hip pain. He said that the claimant was last treated on 11/3/2020, and that she plans to resume physical therapy in January of 2021. He said that the claimant was making progress with her hip pain, but that she still has severe low back pain. He said the she has a Trendelenburg gait pattern requiring the use of a cane secondary to pain and bilateral hip weakness. He said that the claimant has approximately 3+/5 weakness of both hips, and has had mild improvement in hip strength. He said that in his opinion, the claimant would have difficulty performing prolonged sitting, standing, and walking due to the severity of her pain, and that she requires additional physical therapy, and possibly surgical treatment to obtain significant improvement in her functional capacity. I reached consensus with Physical Therapist Marc Phillips.

**8. If AP contact may clarify any significant areas such as diagnosis, R&L's, treatment opportunities, prognosis, or reason for work absence, the AP on the portal - Document 2 attempts within 5 business days with initial and final memorandum as indicated, as well as AP letter**

See Call Logs.

**Lincoln/Mason 0252**

RE: Jan K Mason«@Claimant»                               NMR #: 414082
Page 7

**CONFLICT OF INTEREST ATTESTATION:**

I certify that I do not accept compensation for review activities that is dependent in any way on the specific outcome of the case. To the best of my knowledge, I was not involved with the specific episode of care prior to referral of the case for review. I do not have a material professional, familial, or financial conflict of interest (financial conflict of interest is defined as ownership interest of greater than 5%) regarding any of the following: the referring entity; the insurance issuer or group health plan that is the subject of the review the covered person whose treatment is the subject of the review and the covered person's authorized representative, if applicable; any officer, director or management employee of the insurance issuer that is the subject of the review; any group health plan administrator, plan fiduciary, or plan employee; the health care provider, the health care provider's medical group or independent practice association recommending the health care service or treatment that is the subject of the review; the facility at which the recommended health care service or treatment would be provided; or the developer or manufacturer of the principle drug, device, procedure or other therapy being recommended for the covered person whose treatment is the subject of the review.

This attestation certifies that the peer reviewer named below has the appropriate scope of licensure or certification that typically manages the medical condition, procedure, treatment, or issue under review and has current, relevant experience and/or knowledge to render a determination for the case under review.

**ADVISING REVIEWER:**

Eric Kerstman M.D.
Board Certified in Aerospace Medicine
Board Certified in Pain Medicine
Board Certified in Physical Medicine and Rehabilitation
Licensed in State of TX #M1823

*NMR Conflict of Interest Attestation:*

*NMR attests to the fact that there is no conflict of interest with this review for referring entity, benefit plan, enrollee/consumer, attending provider, facility, drug, device or procedure. NMR attests that its compensation is not dependent on the specific outcome of this review or has had any involvement with this case prior to this referral.*

**Lincoln/Mason 0253**





**December 22, 2020**

**Attending Physician Confirmatory Letter**

Re: Jan K. Mason

Dear Mr. Marc Phillips PT,

I have completed an appeal review on Jan Mason, a patient you have treated. The patient had listed you as a contact provider. During the time I was reviewing the claim, I spoke with you on 12/17/2020 at 10:18 AM. You stated that the claimant has been under your care for the treatment of chronic low back pain and right hip pain. You said that the claimant was last treated on 11/3/2020, and that she plans to resume physical therapy in January of 2021. You said that the claimant was making progress with her hip pain, but that she still has severe low back pain, and that she has a Trendelenburg gait pattern requiring the use of a cane secondary to pain and bilateral hip weakness. You said that the claimant has approximately 3+/5 weakness of both hips, and has had mild improvement in hip strength. You said that in your opinion, the claimant would have difficulty performing prolonged sitting, standing, and walking due to the severity of her pain, and that she requires additional physical therapy, and possibly surgical treatment to obtain significant improvement in her functional capacity.

From a PM&R perspective, taking into consideration the entire clinical picture, including standards of care and evidence based medicine, impairment is supported from 7/21/2020 to the present secondary to the claimant's medical conditions of chronic low back pain, chronic bilateral hip pain, history of a right sacroiliac joint fusion, history of a right hip labral reconstruction, femoroacetabular impingement of both hips, a left acetabular labrum tear, and lumbar spine spondylosis due to associated pain and decreased mobility. The following restrictions and limitations are supported from 7/21/2020 to the present:

The claimant can lift, carry, push, and pull up to a maximum of 10 pounds occasionally.

The claimant can sit for 1 hour at a time for a total of 6 hours in an 8 hour workday, with the ability to change positions from sitting to standing or walking as needed for comfort.

The claimant can stand for 30 minutes at a time for a total of 2 hours in an 8 hour workday.

The claimant can walk for 30 minutes at a time for a total of 2 hours in an 8 hour workday.

The claimant can occasional bend, kneel, squat, stoop, and climb stairs,

No climbing ladders, exposure to unprotected heights, or operating dangerous machinery while taking muscle relaxant medications or any other potentially sedating medications.

No restrictions or limitations in the use of the upper extremities to perform reaching, handing, grasping, fingering, or keyboarding.

The above noted restrictions and limitations are supported until the claimant undergoes further treatment with a

---

4960 E. State Street ● Rockford, IL 61108 ● Phone  815.964.6334 ● Fax  815.964.1162

**Lincoln/Mason 0254**

spinal cord stimulator and/or a possible right total hip arthroplasty. If this has not occurred by 02/10/2021, the claimant should be reevaluated at that time.

The medical rationale for the R/L is to prevent exacerbation of the claimant's symptoms and to prevent further injury.

Based on my review of the records, I believe the above-mentioned restrictions and limitations are supported. Do you agree? If you do not agree, why not? Are there any underlying barriers that I was not made aware of that would preclude the patient from working as described above? If so, please describe?

Please reply via fax within ten (10) business days by 01/7/21 to the fax number below. If you have any questions or would like to discuss this case further, please do not hesitate to contact me.

Sincerely,

Eric Kerstman M.D.
Board Certified in Aerospace Medicine
Board Certified in Pain Medicine
Board Certified in Physical Medicine and Rehabilitation

_____          _____
Name                                                            Date

Respectfully Yours,
Dawn E Peterson
Client Coordinator

p. p. Eric Kerstman, M.D.

Voice:  1-815-964-6334
Fax:    1-815-964-1162

● Page 2

**Lincoln/Mason 0255**

**NMR**
Network Medical Review

An ExamWorks Company

**December 22, 2020**

**Attending Physician Confirmatory Letter**

Re: Jan  K. Mason

Dear Dr. Kent,

I have completed an appeal review on Jan Mason, a patient you have treated. The patient had listed you as a contact provider. During the time I was reviewing the claim, I spoke with you on 12/18/2020 at 8:13 AM. You stated that you are the claimant's primary care physician and that you last evaluated the claimant on 10/22/2020, and that the claimant has chronic pain involving her low back and hips. You said that you have not addressed the claimant's work capacity, and have not outlined any work restrictions or limitations. You said that the claimant is otherwise healthy and that she has no general medical conditions or medication side effects that would affect her work capacity. You would defer to the claimant's orthopedist and pain management physician regarding her work capacity, restrictions, and limitations. You are expecting to see the claimant for her follow-up next month.

From a PM&R perspective, taking into consideration the entire clinical picture, including standards of care and evidence based medicine, impairment is supported from 7/21/2020 to the present secondary to the claimant's medical conditions of chronic low back pain, chronic bilateral hip pain, history of a right sacroiliac joint fusion, history of a right hip labral reconstruction, femoroacetabular impingement of both hips, a left acetabular labrum tear, and lumbar spine spondylosis due to associated pain and decreased mobility. The following restrictions and limitations are supported from 7/21/2020 to the present:

The claimant can lift, carry, push, and pull up to a maximum of 10 pounds occasionally.

The claimant can sit for 1 hour at a time for a total of 6 hours in an 8 hour workday, with the ability to change positions from sitting to standing or walking as needed for comfort.

The claimant can stand for 30 minutes at a time for a total of 2 hours in an 8 hour workday.

The claimant can walk for 30 minutes at a time for a total of 2 hours in an 8 hour workday.

The claimant can occasional bend, kneel, squat, stoop, and climb stairs,

No climbing ladders, exposure to unprotected heights, or operating dangerous machinery while taking muscle relaxant medications or any other potentially sedating medications.

No restrictions or limitations in the use of the upper extremities to perform reaching, handing, grasping, fingering, or keyboarding.

The above noted restrictions and limitations are supported until the claimant undergoes further treatment with a spinal cord stimulator and/or a possible right total hip arthroplasty. If this has not occurred by 02/10/2021, the claimant should be reevaluated at that time.

The medical rationale for the R/L is to prevent exacerbation of the claimant's symptoms and to prevent further injury.

☐    4960 E. State Street ● Rockford, IL 61108 ● Phone  815.964.6334 ● Fax  815.964.1162    ☐

**Lincoln/Mason 0256**

Based on my review of the records, I believe the above-mentioned restrictions and limitations are supported. Do you agree? If you do not agree, why not? Are there any underlying barriers that I was not made aware of that would preclude the patient from working as described above? If so, please describe?

Please reply via fax within ten (10) business days by 01/7/21 to the fax number below. If you have any questions or would like to discuss this case further, please do not hesitate to contact me.

Sincerely,

Eric Kerstman M.D.
Board Certified in Aerospace Medicine
Board Certified in Pain Medicine
Board Certified in Physical Medicine and Rehabilitation

_____          _____
Name                                               Date

Respectfully Yours,
Dawn E Peterson
Client Coordinator

p. p. Eric Kerstman, M.D.

Voice:  1-815-964-6334
Fax:    1-815-964-1162

● Page 2

**Lincoln/Mason 0257**

| From: | LFGNotifications@LFG.com |
|---|---|
| Sent: | Tuesday, January 5, 2021 1:03:05 PM |
| To: | |
| CC: | |
| BCC: | |
| Subject: | [Send Secure]Charter Communications, Inc. Claim No. 9291624 Jan Mason |
| Attachments: | cc_m9djdlx06c8eivreaf9j_9678671_9950009.pdf; |

This notification contains important information regarding a claim with Lincoln Financial Group company. THIS IS AN AUTOMATED EMAIL. PLEASE DO NOT RESPOND. You may use the contact information in the attached letter to respond if needed.

**Lincoln/Mason 0258**



Lincoln Life Assurance Company of Boston
Disability and Life Claims
PO Box 2578
Omaha, NE 68172-9688
Phone No.: (888) 437-7611
Secure Fax No.: (603) 430-1926

January 5, 2021

Dr. Jeffrey Kent
9480 BRIAR VILLAGE POINT STE 2
COLORADO SPRINGS, CO 80920

RE:    Long Term Disability (LTD) Benefits
       Charter Communications, Inc.
       Claim #: 9291624
       Claimant: Jan Mason
       Claimant D.O.B.:

Dear Dr. Jeffrey Kent:

We are the Disability Claim Administrator for your patient, Jan Mason.

Please find attached a copy of a medical review by Dr. Eric Kerstman, an independent physician Board Certified in Physical Medicine and Pain Medicine dated December 22, 2020.  Please review the report and provide any comments you wish to have considered.  If you disagree with the findings, please detail the specific areas with which you disagree and provide medical documentation to support your position.

We ask you provide this information by January 20, 2021.  Failure to provide the requested information may result in an adverse benefit determination.  The information can be faxed to our office at our secure fax number (603) 430-1926, mailed to the above address or emailed to disabilitydocuments@lfg.com.  Please be sure to include the claim number above.

Although HIPAA does not apply to disability insurance carriers, we understand your responsibilities under HIPAA as a health care provider, and our associated responsibility of ensuring this information is protected against deliberate or inadvertent misuse or disclosure.

As the insurance carrier providing employer sponsored Long Term Disability (LTD) benefits coverage to your patient, we have enclosed a HIPAA compliant authorization signed by Ms. Mason allowing the release of information to our company. This authorization specifically allows you to release medical information to us and is valid for two years from the date of Ms. Mason's signature.

If you have any questions regarding this matter, please contact me.

1  of  2

**Lincoln/Mason 0259**

Sincerely,

Mary Avrett
Appeals Consultant
Phone No.: (888) 437-7611 Ext. 16371
Secure Fax No.: (603) 430-1926

CC:    Jan Mason

Attachments:   9291624-EMPLOYEE/CLAIMANT-AUTHORIZATION-09.25.2019
               9291624-MEDICAL-CP/PEER REVIEW-12.22.2020

**Lincoln/Mason 0260**



## Occupational Analysis

**Date: 1/4/2021**
**Name: Jan Mason**
**Claim Number: 9291624**
**Policy Holder: Charter Communications, Inc.**

An Occupational Analysis was completed to compare the job, Rep 3, Customer Service Billing to the occupation in the National Economy, per the DOT of Customer Complaint Clerk (241.367-014, Sedentary/ONET 43-4051.00.

Documents Reviewed:
- Job Description

Per DCM, restrictions and limitations within Peer Review by Eric Kerstman, MD dated 12/22/2020
- The claimant can lift, carry, push, and pull up to a maximum of 10 pounds occasionally.
- The claimant can sit for 1 hour at a time for a total of 6 hours in an 8 hour workday, with the ability to change positions from sitting to standing or walking as needed for comfort.
- The claimant can stand for 30 minutes at a time for a total of 2 hours in an 8 hour workday.
- The claimant can walk for 30 minutes at a time for a total of 2 hours in an 8 hour workday.
- The claimant can occasional bend, kneel, squat, stoop, and climb stairs.
- No climbing ladders, exposure to unprotected heights, or operating dangerous machinery while taking muscle relaxant medications or any other potentially sedating medications.
- No restrictions or limitations in the use of the upper extremities to perform reaching, handing, grasping, fingering, or keyboarding.

The following resources were utilized in this comparison:
- OASYS
- ONET
- ERI

The comparison to the position with the employer to the national economy is as follows:

**Essential Duties**:
Comparable between the employer and the National Economy, per the DOT, investigates customer complaints about merchandise, service, billing, or credit rating. Examines records, such as bills, computer printouts, microfilm, meter readings, bills of lading, and related documents and correspondence, and converses or corresponds with customer and other company personnel, such as billing, credit, sales, service, or shipping, to obtain facts regarding customer complaint. Per employer, provides superior customer support related to Charter services, including complex billing inquiries and resolving escalated customer situations. Employees in this role are responsible for establishing and maintaining professional and positive relationships with customers and ensuring issues are addressed consistently with company policies and practices. Works independently with minimal supervision.

**Physical Demands**:
The employer did not indicate job demands.

The occupation is typically performed as sedentary in the National Economy, per the DOT. National Economy demand levels include:

**Lincoln/Mason 0261**

Per the DOT:
- Occasional reaching, handling, fingering

Per ERI:
- Constant sitting
- Occasional standing, walking, sit/stand option
- Never bending/stooping, kneeling, crouching/squatting, climbing

**Summary**:
The occupation is most often performed at the sedentary level in the National Economy, per the DOT with constant sitting; occasional reaching, handling, fingering, standing and walking.

Part-time opportunity does exist for this occupation in the National Economy.

I have not met with Ms. Mason for the purpose of this review. All opinions are based on a review of medical records and resources listed only.

Respectfully submitted,

Electronically Signed

Lori Ashworth, MEd, CRC
Vocational Case Manager

**Title:**  Customer-Complaint Clerk                                    **DOT Code:**  241.367-014

Investigates customer complaints about merchandise, service, billing, or credit rating:

**Tasks**

1. Examines records, such as bills, computer printouts, microfilm, meter readings, bills of lading, and related documents and correspondence, and converses or corresponds with customer and other company personnel, such as billing, credit, sales, service, or shipping, to obtain facts regarding customer complaint.

2. Examines pertinent information to determine accuracy of customer complaint and to determine responsibility for errors.

3. Notifies customer and designated personnel of findings, adjustments, and recommendations, such as exchange of merchandise, refund of money, credit of customer's account, or adjustment of customer's bill.

**May Also Include:**

1. May recommend to management improvements in product, packaging, shipping methods, service, or billing methods and procedures to prevent future complaints of similar nature.

2. May examine merchandise to determine accuracy of complaint.

3. May follow up on recommended adjustments to ensure customer satisfaction.

4. May key information into computer to obtain computerized records.

**Alternate Titles:**  Adjustment Clerk; Consumer-Relations-Complaint Clerk

**Lincoln/Mason 0262**

**Undefined Related Titles:**

1. May trace missing merchandise and be designated Tracer Clerk (clerical).

2. May investigate overdue and damaged shipments or shortages in shipments for common carrier and be designated Over-Short-And-Damage Clerk (clerical).

3. May be designated according to type of complaint adjusted as Bill Adjuster (clerical); Merchandise-Adjustment Clerk (retail trade); Service Investigator (utilities; tel. & tel.).

DLU: 1989

## OCCUPATIONAL REQUIREMENTS

**Title:**    Customer-Complaint Clerk  **DOT Code:**       241.367-014
**Industry:**       Clerical and Kindred

**Specific Vocational Preparation:**  Level 5 (6 months to 1 year)

**General Educational Development:**  Reasoning  Grades 9-12
Mathematics  Grades 7-8
Language  Grades 9-12

**Strength:**    Sedentary        Lifting, Carrying, Pushing, Pulling 10 Lbs. occasionally. Mostly sitting, may involve standing or walking for brief periods of time.

| Physical Demands: | | Environmental Conditions: | |
|---|---|---|---|
| Climbing | Never | Noise Intensity Level | Moderate |
| Balancing | Never | Exposure to Weather | Never |
| Stooping | Never | Extreme Cold | Never |
| Kneeling | Never | Extreme Heat | Never |
| Crouching | Never | Wet and/or Humid | Never |
| Crawling | Never | Vibration | Never |
| Reaching | Occasionally | Atmospheric Conditions | Never |
| Handling | Occasionally | Proximity to Moving Mechanical Parts | Never |
| Fingering | Occasionally | Exposure to Electrical Shock | Never |
| Feeling | Never | Working in High Exposed Places | Never |
| Talking | Frequently | Exposure to Radiation | Never |
| Hearing | Frequently | Working with Explosives | Never |
| Tasting/Smelling | Never | Exposure to Toxic or Caustic Chemicals | Never |
| Near Acuity | Occasionally | Other Environmental Conditions | Never |
| Far Acuity | Never | | |
| Depth Perception | Never | | |
| Accommodation | Occasionally | | |
| Color Vision | Never | | |
| Field of Vision | Never | | |

| **Work Situations:** | Making judgments and decisions. | **Data:** | 3 Compiling |
|---|---|---|---|
| | Dealing with people. | **People:** | 6 Speaking- |
| Signaling | | | |
| | Performing a variety of duties. | **Things:** | 7 Handling |

| **Aptitudes:** | **DOT** | **OAP** |
|---|---|---|
| General Learning Ability | 3  (34-66 Percentile) | 3- (34 - 44 |

**Lincoln/Mason 0263**

Percentile)
Verbal Aptitude                        3  (34-66 Percentile)       Not Included
Numerical Aptitude                     3  (34-66 Percentile)       Not Included
Spatial Aptitude                       4  (11-33 Percentile)       Not Included
Form Perception                        4  (11-33 Percentile)       Not Included
Clerical Aptitude                      2  (67-89 Percentile)       3- (34 - 44
Percentile)
Motor Coordination                     4  (11-33 Percentile)       Not Included
Finger Dexterity                       4  (11-33 Percentile)       Not Included
Manual Dexterity                       4  (11-33 Percentile)       Not Included
Eye-Hand-Foot Coordination             5  (Below 11 Percentile)
Color Discrimination                   5  (Below 11 Percentile)

**Lincoln/Mason 0264**

VOC Suite

# VOCATIONAL CASE MANAGEMENT
## Occupational Analysis

### PLEASE HAVE THE FOLLOWING IN THE CLAIM FILE BEFORE REFERRING

☑ JOB DESCRIPTION  (if cannot obtain in writing, must have phone doc from discussions with EE/ER
detailing job duties)

☐ PHYSICAL JOB EVALUATION FORM (if available)

☑ UPDATED MEDICAL WITH CLEAR R&L'S          ☐ TRAINING-EDUCATION-EXPERIENCE FORM

☐ MANAGER APPROVAL (if required)          ☐ ATTORNEY INFO (if applicable)

FROM:    Mary Avrett          DATE:    Tuesday, December 22, 2020

## CLAIM BACKGROUND

Claimant Name:    JAN MASON          Claim Number:    9291624

☐ STD  ☑ FULLY INSURED          ( THRESHOLD $ )

☑ LTD  ☐ ASO  ☐ LIFE          Has MDS worked the claim? ☑ YES ☐ NO

Employer:  CHARTER COMMUNICATIONS, INC.

Change In DEF. Date:    10/15/2021

Pre-Disability Earnings:    $4,581.22  / M          Claim Service Type:    ADOP
(mode)

**Document Locations**

☑ Document List          ☐ Correspondence          ☐ Paper File

### Case Manager's Recommendations / Reason For Referral:

ARU OA.  Please see peer in EDM 12/22/20 by pm&r/pain.

DP 512

**Lincoln/Mason 0265**

| From: | LFGNotifications@LFG.com |
|---|---|
| Sent: | Tuesday, December 22, 2020 3:04:01 PM |
| To: | |
| CC: | |
| BCC: | |
| Subject: | [Send Secure]Charter Communications, Inc. Claim No. 9291624 Jan Mason |
| Attachments: | uhqlgbqfwgk10am39nij_9621340.pdf; |

This notification contains important information regarding a claim with Lincoln Financial Group company. THIS IS AN AUTOMATED EMAIL. PLEASE DO NOT RESPOND. You may use the contact information in the attached letter to respond if needed.

**Lincoln/Mason 0266**



Lincoln Life Assurance Company of Boston
Disability and Life Claims
PO Box 2578
Omaha, NE 68172-9688
Phone No.: (888) 437-7611
Secure Fax No.: (603) 430-1926

December 22, 2020

Ms. Jan K. Mason

RE:    Long Term Disability (LTD) Benefits
       Charter Communications, Inc.
       Claim #: 9291624

Dear Ms. Jan Mason:

Lincoln Financial Group is responsible for managing claims for benefits under Charter
Communications, Inc.'s (LTD) Policy.

The purpose of this letter is to inform you we require additional time to render a determination on
your appeal. (Under the Employee Retirement Income Security Act of 1974 (ERISA), an appeal
determination should be rendered within 45 days of receipt of the appeal, unless there are special
circumstances which require a delay in making an appeal determination.  If additional time is
needed, ERISA allows for a 45-day extension to evaluate and render an appeal decision.)

At this time, we need additional information which is necessary to render a full and fair
determination on your  LTD appeal for benefits under the Policy.  Currently, we are awaiting a
vocational review.

We will make every effort to render a determination as soon as possible.

If you have any questions regarding this matter, please contact me.

Sincerely,

Mary Avrett
Appeals Consultant
Phone No.: (888) 437-7611 Ext. 16371
Secure Fax No.: (603) 430-1926

1  of 1

**Lincoln/Mason 0267**



Network Medical Review Co. Ltd.

**An ExamWorks Company**

| | | |
|---|---|---|
| **REFERRED BY:** | MARY AVRETT | |
| **CLIENT:** | Lincoln Life Insurance | |
| **NAME:** | Jan K Mason | |
| **CLAIM #:** | 9291624 | |
| **NMR #:** | 414082 | |
| **DATE:** | 12/22/2020 | |

**RECORDS PROVIDED FOR REVIEW:**

| | | |
|---|---|---|
| PROGRESS NOTES | Colorado Springs Orthopaedic Group | 01/09/19 - 11/10/20 |
| PROGRESS NOTES | J.R. Kent, MD | 07/01/20 |
| PROGRESS NOTES | UCHealth / Aspen Creek Medical Center | 07/23/19 - 11/30/20 |
| PROGRESS NOTES | D.R. Salek, MD | 08/28/19 - 09/08/20 & Undated |
| PROGRESS NOTES | C.M. Kudron, MD | 09/04/20 |
| PROGRESS NOTES | Unknown Provider | Undated |
| OPERATIVE NOTES | Orthopaedic & Spine Center of Spine of Southern Colorado | 04/17/19 - 12/09/19 |
| PHYSICAL / OCCUPATIONAL THERAPY | Colorado Springs Orthopaedic Group Physical Therapy | 09/17/19 |
| PHYSICAL / OCCUPATIONAL THERAPY | Fyzical Therapy & Balance Centers | 12/13/19 - 12/08/20 |
| PHYSICAL / OCCUPATIONAL THERAPY | Falcon Physical Therapy | 11/01/20 |
| FILE REVIEWS | D. Fung, MD | 09/14/20 |
| FILE REVIEWS | D.A. Monti, MD | 07/16/20 |
| FILE REVIEWS | R. Avioli, MD | 10/27/19 |
| MRI / MRI ARTHROGRAM | Penrad Imaging | 10/22/19 - 01/30/20 |
| MRI | Southwest Diagnostic Centers | 09/12/18 |
| MRI | UpRight MRI of Colorado | 07/31/20 |
| CT | Penrad Imaging | 11/27/18 |

**4960 E. State Street** ● **Rockford, IL 61108** ● **Phone 815.964.6334** ● **Fax 815.964.1162**
*website* **www.nmrco.com** ■ *email* **info@nmrco.com**

**Lincoln/Mason 0268**

RE: Jan K Mason«@Claimant»                              NMR #: 414082
Page 2

| RF ARTHROGRAPHY | Penrad Imaging | 10/22/19 - 01/30/20 |
|---|---|---|
| X-RAY | Orthopaedic & Spine Center of Spine of Southern Colorado | 12/09/19 |
| X-RAY | Penrad Imaging | 07/11/18 |
| ROI | | 09/14/19, 09/18/19 |
| MISC | | 12/19/17 - 12/09/20 & Undated |

TELECONFERENCE
   1) AP NAME: Dr. Kent
   2) PHONE: (719) 278 3627
   3) DATE(S): 12/17/2020, 12/18/2020
   4) TIME(S): 11:09 AM MST, 9:13 AM MST
   5) PERSON(S) SPOKEN WITH: Jade, Dr. Jeffrey Kent
   6) POSITION OF PERSON(S) SPOKEN WITH: Patient Access Liaison, Treating provider

SUMMARY OF DISCUSSION(S): I called Dr. Jeffrey Kent, M.D. (Internal Medicine) and spoke with Jade who said that Dr. Kent was currently with a patient, but that she would give him a message requesting that he return my call.

I spoke with Jeffrey Kent, M.D. who said that he is the claimant's primary care physician. He said that he last evaluated the claimant on 10/22/2020, and that the claimant has chronic pain involving her low back and hips. He said that he has not addressed the claimant's work capacity, and that he has not outlined any work restrictions or limitations for the claimant. He said that the claimant is otherwise healthy and that she has no general medical conditions or medication side effects that would affect her work capacity. Dr. Kent said that he would defer to the claimant's orthopedist and pain management physician regarding her work capacity, restrictions, and limitations. He said that he expects to see the claimant for her follow-up next month. I reached consensus with Dr. Jeffrey Kent.

TELECONFERENCE
   1) AP NAME: Marc Phillips PT
   2) PHONE: 719-488-0120
   3) DATE(S): 12/17/2020
   4) TIME(S): 11:18 AM MST
   5) PERSON(S) SPOKEN WITH: Marc Phillips
   6) POSITION OF PERSON(S) SPOKEN WITH: Physical Therapist

SUMMARY OF DISCUSSION(S): I spoke with Physical Therapist Marc Phillips, who said that the claimant has been under his care for the treatment of chronic low back pain and right hip pain. He said that the claimant was last treated on 11/3/2020, and that she plans to resume physical therapy in January of 2021. He said that the claimant was making progress with her hip pain, but that she still has severe low back pain. He said the she has a Trendelenburg gait pattern requiring the use of a cane secondary to pain and bilateral hip weakness. He said that the claimant has approximately 3+/5 weakness of both hips, and has had mild improvement in hip strength. He said that in his opinion, the claimant would have difficulty performing prolonged sitting, standing, and walking due to the severity of her pain, and that she requires additional physical therapy, and possibly surgical

**Lincoln/Mason 0269**

treatment to obtain significant improvement in her functional capacity. I reached consensus with Physical Therapist Marc Phillips.

**ASSESSMENT:** The claimant is a 48 year old female (DOB          who has a diagnosis of pain in the right hip. The claimant was involved in a motor vehicle accident on 12/18/17.  She stopped working on 4/16/19.  All of the records provided have been reviewed from a PM&R perspective, and are summarized below.

The review period is from 07/21/20 to the present.

On 4/16/19, Dr. Huang performed an arthroscopic surgery to the right hip including a femoroplasty, chondroplasty, and acetabuloplasty for treatment of a right hip labral tear and impingement.

A magnetic resonance imaging (MRI) Arthrogram of the right hip performed on 10/22/19 revealed postoperative changes of acetabuloplasty, femoroplasty, and labral repair. There was mild chondral irregularity along the lateral acetabulum likely reflecting chondroplasty changes.

On 12/9/19, an operative report from Michael Huang, MD notes the claimant underwent a right hip labral reconstruction for treatment of a recurrent right hip labral tear and right hip impingement.

An MR Arthrogram of the Left Hip performed on 1/30/20 revealed a focal cam deformity of the anterior left femoral head junction with an associated labral base tear. There was a small hip joint effusion.

On 7/1/2020, Roger Sung, MD noted that the claimant had bilateral hip pain, right sided sacroiliac (SI) joint pain, and low back pain. It was noted that the claimant occasionally had pain radiating down her right leg. It was noted that the claimant had a history of hypertension. The claimant's medications were noted as Claritin, Ambien, Losartan, Metoprolol ER, Junel FE, and Cyclobenzaprine.

In a letter dated 7/21/20, the claimant indicated that she was currently completing 6 additional weeks of physical therapy so that she could gain strength in her right hip and move forward with a left SI joint fusion, left labral reconstruction, and possible right hip replacement. The claimant reported that she was also being referred to an additional spine surgeon due to ongoing lumbar spine issues.

An MRI of the lumbar spine performed on 7/31/20 revealed moderate spinal stenosis at L2-L3, a right L3-L4 disc herniation with right neural foraminal stenosis at L3-L4, and L5-S1 mild spinal stenosis due to a central disc herniation.

In a letter dated 8/31/20, Jeffrey Kent, MD indicated that the claimant had ongoing difficulties with mobility with chronic pain and was being considered for a spinal cord stimulator. Dr. Kent indicated that the claimant had ongoing debility, and that she needed to remain on long-term disability throughout this year with reassessment at the end of the year.

In a 10/14/2020 progress note from Jeffrey Kent, MD it was noted that the claimant had ongoing pain involving her low back, hip, leg, SI joint, and paresthesias. Physical examination revealed a blood pressure of 145/85 and a body mass index (BMI) of 29.80. The musculoskeletal examination revealed tenderness, and there was normal range of motion. The neurological examination revealed no focal deficits. Assessment was chronic low back

**Lincoln/Mason 0270**

RE:  Jan  K Mason«@Claimant»                           NMR #: 414082
Page 4

pain with sciatica, paresthesia of the bilateral legs, sacroiliac joint inflammation, femoroacetabular impingement of both hips, and left acetabular labrum tear. The claimant was referred to orthopedic surgery. It was noted that the claimant was to proceed with a spinal cord stimulator.

In a letter dated 11/1/20, Physical Therapist Marc Phillips indicated that the claimant had significant deficits in physical ability. He indicated that she had a recent exacerbation of her lumbar pain that made it difficult for her to perform transfers, dressing, and driving. He indicated that in his professional opinion, the claimant would not be able to perform any occupation in any capacity from December, 2016 to the present.

On an 11/10/20 evaluation with Kristen Reiss, PA-C, it was noted that the claimant was 11 months status post right hip labral reconstruction, femoroplasty, chondroplasty, acetabuloplasty, and osteoplasty performed on 12/9/19. The claimant reported worsening pain, and that she had not benefited from rest, activity modification, medications, and physical therapy. She reported a pain intensity of 9/10. Physical examination revealed the claimant's surgical wounds to be well-healed without signs of infection. Hip flexion was 115 degrees, external rotation was 45 degrees, and internal rotation was 5 degrees. There was tenderness to palpation over the lateral hip and sacroiliac joints bilaterally. The claimant had an antalgic gait with the use of a cane. Assessment was right hip articular disorder, right sacroiliitis, left hip pain, bilateral sacroiliitis, and lumbar spine spondylosis. The claimant was referred for a possible right total hip arthroplasty.

In a letter dated 11/30/20, Jeffrey Kent, MD indicated that the claimant was unable to work due to her severe chronic pain. He indicated that she was unable to maintain any sitting or standing position for very long without increasing pain which affects her ability to do her job. It was noted that she would require bilateral hip replacement surgery and possibly a left SI joint fusion. Dr. Kent requested that the claimant's disability be extended at least through February of 2021.

All available medical documentation was reviewed.

**IN ANSWER TO YOUR SPECIFIC QUESTIONS:**

**1. What diagnoses are supported by the medical evidence?**

The following diagnoses are supported by the medical evidence.

1. Chronic low back pain
2. Chronic bilateral hip pain
3. History of a right sacroiliac joint fusion
4. History of a right hip labral reconstruction,
5. Femoroacetabular impingement of both hips
6. Left acetabular labrum tear
7. Lumbar spine spondylosis
8. Hypertension.

**2. Taking into consideration the entire clinical picture, including standards of care and evidence based medicine, and any medication or other treatment side effects, please describe if there are any supported**

**Lincoln/Mason 0271**

RE:  Jan  K Mason«@Claimant»                                    NMR #: 414082
Page 5

level of impairments which translates into restrictions and limitations from 7/21/2020 to the present? Please explain your medical rationale as to why or why not and provide a detailed explanation.

Taking into consideration the entire clinical picture, including standards of care and evidence based medicine, impairment is supported from 7/21/2020 to the present secondary to the claimant's medical conditions of chronic low back pain, chronic bilateral hip pain, history of a right sacroiliac joint fusion, history of a right hip labral reconstruction, femoroacetabular impingement of both hips, a left acetabular labrum tear, and lumbar spine spondylosis due to associated pain and decreased mobility.

**3. If functional impairment is supported, please describe how that translates into restrictions or limitations and for what period(s) of time. Please define in terms of frequency (never, occasional, frequent, constant) and task (sit, stand, lift/carry, type etc). Please explain your medical rationale for any restrictions or limitations or why restrictions or limitations are not supported.**

Taking into consideration the entire clinical picture, the following restrictions and limitations are supported from 7/21/2020 to the present:

The claimant can lift, carry, push, and pull up to a maximum of 10 pounds occasionally.

The claimant can sit for 1 hour at a time for a total of 6 hours in an 8 hour workday, with the ability to change positions from sitting to standing or walking as needed for comfort.

The claimant can stand for 30 minutes at a time for a total of 2 hours in an 8 hour workday.

The claimant can walk for 30 minutes at a time for a total of 2 hours in an 8 hour workday.

The claimant can occasional bend, kneel, squat, stoop, and climb stairs,

No climbing ladders, exposure to unprotected heights, or operating dangerous machinery while taking muscle relaxant medications or any other potentially sedating medications.

No restrictions or limitations in the use of the upper extremities to perform reaching, handing, grasping, fingering, or keyboarding.

The above noted restrictions and limitations are supported until the claimant undergoes further treatment with a spinal cord stimulator and/or a possible right total hip arthroplasty. If this has not occurred by 02/10/2021, the claimant should be reevaluated at that time.

The medical rationale for the R/L is to prevent exacerbation of the claimant's symptoms and to prevent further injury.

**4. Does the medical documentation support that any medical condition alone, or in combination would preclude the claimant from sustained occupational functioning on a full-time basis? Please explain why or why not.**

No. The claimant should be capable of sustained occupational functioning on a full-time basis. The abnormalities on physical examination and diagnostic testing are not of a severity to support that the claimant would be precluded from performing full-time work within the above noted restrictions and limitations.

**Lincoln/Mason 0272**

RE: Jan  K Mason«@Claimant»                                    NMR #: 414082
Page 6

---

**5. Do you agree with the assessment of the claimant's capacity and the restrictions as noted by Dr. Jeffrey Kent dated 8/31/2020? If not, please explain.**

No. I do not agree that the claimant has ongoing debility and that she needed to remain on long-term disability throughout this year with reassessment at the end of the year.  The abnormalities on physical examination and diagnostic testing are not of a severity to support that the claimant would be precluded from performing full-time work within the above noted restrictions and limitations.

**6. Do you agree with the assessment of the claimant's capacity and the restrictions as noted by Dr. Marc Phillips dated 11/1/2020? If not, please explain.**

No. I do not agree that the claimant would not be able to perform any occupation in any capacity since December of 2016 to the present. The abnormalities on physical examination and diagnostic testing are not of a severity to support that the claimant would be precluded from performing full-time work within the above noted restrictions and limitations.

**7. When contacting the treating provider please discuss the claimant's condition, treatment, and functional capacity. Please indicate the information reviewed and indicate whether or not you reached consensus with the treating provider. If not, please discuss your final assessment after the call.**

I spoke with Jeffrey Kent, M.D. who said that he is the claimant's primary care physician. He said that he last evaluated the claimant on 10/22/2020, and that the claimant has chronic pain involving her low back and hips. He said that he has not addressed the claimant's work capacity, and that he has not outlined any work restrictions or limitations for the claimant. He said that the claimant is otherwise healthy and that she has no general medical conditions or medication side effects that would affect her work capacity. Dr. Kent said that he would defer to the claimant's orthopedist and pain management physician regarding her work capacity, restrictions, and limitations. He said that he expects to see the claimant for her follow-up next month. I reached consensus with Dr. Jeffrey Kent.

I spoke with Physical Therapist Marc Phillips, who said that the claimant has been under his care for the treatment of chronic low back pain and right hip pain. He said that the claimant was last treated on 11/3/2020, and that she plans to resume physical therapy in January of 2021. He said that the claimant was making progress with her hip pain, but that she still has severe low back pain. He said the she has a Trendelenburg gait pattern requiring the use of a cane secondary to pain and bilateral hip weakness. He said that the claimant has approximately 3+/5 weakness of both hips, and has had mild improvement in hip strength. He said that in his opinion, the claimant would have difficulty performing prolonged sitting, standing, and walking due to the severity of her pain, and that she requires additional physical therapy, and possibly surgical treatment to obtain significant improvement in her functional capacity. I reached consensus with Physical Therapist Marc Phillips.

**8. If AP contact may clarify any significant areas such as diagnosis, R&L's, treatment opportunities, prognosis, or reason for work absence, the AP on the portal - Document 2 attempts within 5 business days with initial and final memorandum as indicated, as well as AP letter**

See Call Logs.

**Lincoln/Mason 0273**

RE: Jan K Mason«@Claimant»                                   NMR #: 414082
Page 7

**CONFLICT OF INTEREST ATTESTATION:**

I certify that I do not accept compensation for review activities that is dependent in any way on the specific outcome of the case. To the best of my knowledge, I was not involved with the specific episode of care prior to referral of the case for review. I do not have a material professional, familial, or financial conflict of interest (financial conflict of interest is defined as ownership interest of greater than 5%) regarding any of the following: the referring entity; the insurance issuer or group health plan that is the subject of the review the covered person whose treatment is the subject of the review and the covered person's authorized representative, if applicable; any officer, director or management employee of the insurance issuer that is the subject of the review; any group health plan administrator, plan fiduciary, or plan employee; the health care provider, the health care provider's medical group or independent practice association recommending the health care service or treatment that is the subject of the review; the facility at which the recommended health care service or treatment would be provided; or the developer or manufacturer of the principle drug, device, procedure or other therapy being recommended for the covered person whose treatment is the subject of the review.

This attestation certifies that the peer reviewer named below has the appropriate scope of licensure or certification that typically manages the medical condition, procedure, treatment, or issue under review and has current, relevant experience and/or knowledge to render a determination for the case under review.

**ADVISING REVIEWER:**

Eric Kerstman M.D.
Board Certified in Aerospace Medicine
Board Certified in Pain Medicine
Board Certified in Physical Medicine and Rehabilitation
Licensed in State of TX #M1823

*NMR Conflict of Interest Attestation:*

*NMR attests to the fact that there is no conflict of interest with this review for referring entity, benefit plan, enrollee/consumer, attending provider, facility, drug, device or procedure. NMR attests that its compensation is not dependent on the specific outcome of this review or has had any involvement with this case prior to this referral.*

**Lincoln/Mason 0274**





December 22, 2020

## Attending Physician Confirmatory Letter

Re: Jan K. Mason

Dear Mr. Marc Phillips PT,

I have completed an appeal review on Jan Mason, a patient you have treated. The patient had listed you as a contact provider. During the time I was reviewing the claim, I spoke with you on 12/17/2020 at 10:18 AM. You stated that the claimant has been under your care for the treatment of chronic low back pain and right hip pain. You said that the claimant was last treated on 11/3/2020, and that she plans to resume physical therapy in January of 2021. You said that the claimant was making progress with her hip pain, but that she still has severe low back pain, and that she has a Trendelenburg gait pattern requiring the use of a cane secondary to pain and bilateral hip weakness. You said that the claimant has approximately 3+/5 weakness of both hips, and has had mild improvement in hip strength. You said that in your opinion, the claimant would have difficulty performing prolonged sitting, standing, and walking due to the severity of her pain, and that she requires additional physical therapy, and possibly surgical treatment to obtain significant improvement in her functional capacity.

From a PM&R perspective, taking into consideration the entire clinical picture, including standards of care and evidence based medicine, impairment is supported from 7/21/2020 to the present secondary to the claimant's medical conditions of chronic low back pain, chronic bilateral hip pain, history of a right sacroiliac joint fusion, history of a right hip labral reconstruction, femoroacetabular impingement of both hips, a left acetabular labrum tear, and lumbar spine spondylosis due to associated pain and decreased mobility. The following restrictions and limitations are supported from 7/21/2020 to the present:

The claimant can lift, carry, push, and pull up to a maximum of 10 pounds occasionally.

The claimant can sit for 1 hour at a time for a total of 6 hours in an 8 hour workday, with the ability to change positions from sitting to standing or walking as needed for comfort.

The claimant can stand for 30 minutes at a time for a total of 2 hours in an 8 hour workday.

The claimant can walk for 30 minutes at a time for a total of 2 hours in an 8 hour workday.

The claimant can occasional bend, kneel, squat, stoop, and climb stairs,

No climbing ladders, exposure to unprotected heights, or operating dangerous machinery while taking muscle relaxant medications or any other potentially sedating medications.

No restrictions or limitations in the use of the upper extremities to perform reaching, handing, grasping, fingering, or keyboarding.

The above noted restrictions and limitations are supported until the claimant undergoes further treatment with a

**Lincoln/Mason 0275**

spinal cord stimulator and/or a possible right total hip arthroplasty. If this has not occurred by 02/10/2021, the claimant should be reevaluated at that time.

The medical rationale for the R/L is to prevent exacerbation of the claimant's symptoms and to prevent further injury.

Based on my review of the records, I believe the above-mentioned restrictions and limitations are supported.  Do you agree?  If you do not agree, why not?  Are there any underlying barriers that I was not made aware of that would preclude the patient from working as described above?  If so, please describe?

Please reply via fax within ten (10) business days by 01/7/21 to the fax number below.  If you have any questions or would like to discuss this case further, please do not hesitate to contact me.

Sincerely,

Eric Kerstman M.D.
Board Certified in Aerospace Medicine
Board Certified in Pain Medicine
Board Certified in Physical Medicine and Rehabilitation


_____                    _____
Name                                                   Date

Respectfully Yours,
Dawn E Peterson
Client Coordinator

p. p. Eric Kerstman, M.D.

Voice:  1-815-964-6334
Fax:    1-815-964-1162

● Page 2

**Lincoln/Mason 0276**



An ExamWorks Company

**December 22, 2020**

**Attending Physician Confirmatory Letter**

Re: Jan  K. Mason

Dear Dr. Kent,

I have completed an appeal review on Jan Mason, a patient you have treated. The patient had listed you as a contact provider. During the time I was reviewing the claim, I spoke with you on 12/18/2020 at 8:13 AM. You stated that you are the claimant's primary care physician and that you last evaluated the claimant on 10/22/2020, and that the claimant has chronic pain involving her low back and hips. You said that you have not addressed the claimant's work capacity, and have not outlined any work restrictions or limitations. You said that the claimant is otherwise healthy and that she has no general medical conditions or medication side effects that would affect her work capacity. You would defer to the claimant's orthopedist and pain management physician regarding her work capacity, restrictions, and limitations. You are expecting to see the claimant for her follow-up next month.

From a PM&R perspective, taking into consideration the entire clinical picture, including standards of care and evidence based medicine, impairment is supported from 7/21/2020 to the present secondary to the claimant's medical conditions of chronic low back pain, chronic bilateral hip pain, history of a right sacroiliac joint fusion, history of a right hip labral reconstruction, femoroacetabular impingement of both hips, a left acetabular labrum tear, and lumbar spine spondylosis due to associated pain and decreased mobility. The following restrictions and limitations are supported from 7/21/2020 to the present:

The claimant can lift, carry, push, and pull up to a maximum of 10 pounds occasionally.

The claimant can sit for 1 hour at a time for a total of 6 hours in an 8 hour workday, with the ability to change positions from sitting to standing or walking as needed for comfort.

The claimant can stand for 30 minutes at a time for a total of 2 hours in an 8 hour workday.

The claimant can walk for 30 minutes at a time for a total of 2 hours in an 8 hour workday.

The claimant can occasional bend, kneel, squat, stoop, and climb stairs,

No climbing ladders, exposure to unprotected heights, or operating dangerous machinery while taking muscle relaxant medications or any other potentially sedating medications.

No restrictions or limitations in the use of the upper extremities to perform reaching, handing, grasping, fingering, or keyboarding.

The above noted restrictions and limitations are supported until the claimant undergoes further treatment with a spinal cord stimulator and/or a possible right total hip arthroplasty. If this has not occurred by 02/10/2021, the claimant should be reevaluated at that time.

The medical rationale for the R/L is to prevent exacerbation of the claimant's symptoms and to prevent further injury.

**Lincoln/Mason 0277**

Based on my review of the records, I believe the above-mentioned restrictions and limitations are supported.  Do you agree?  If you do not agree, why not?  Are there any underlying barriers that I was not made aware of that would preclude the patient from working as described above?  If so, please describe?

Please reply via fax within ten (10) business days by 01/7/21 to the fax number below.  If you have any questions or would like to discuss this case further, please do not hesitate to contact me.

Sincerely,

Eric Kerstman M.D.
Board Certified in Aerospace Medicine
Board Certified in Pain Medicine
Board Certified in Physical Medicine and Rehabilitation


_____          _____
Name                                                                       Date

Respectfully Yours,
Dawn E Peterson
Client Coordinator

p. p. Eric Kerstman, M.D.

Voice:  1-815-964-6334
Fax:    1-815-964-1162

● Page 2

**Lincoln/Mason 0278**

**From:**nancy.miller@nmrexamworks.com
**Sent:**Tue, 22 Dec 2020 12:28:18 -0600
**To:**Avrett, Mary;VendorReferrals
**Subject:**NMR report notification for case - Case : 9291624 - NMR 414082
**Attachments:**QA_TC Letter - Rev01 AP01_414082-1.doc_v1.doc, QA_TC Letter - Rev01 AP02_414082-1.doc_v1.doc, Report_NMR_Peer__LTD-R01_414082-1_v1.doc

***This email is from an external source. Only open links and attachments from a Trusted Sender.***

This is to inform you that the report for your case #9291624 (NMR # 414082) has been completed and is ready to be viewed on our website.

You can access the report via https://client.nmrco.com using your username and password.

Thank you for the referral,

Network Medical Review Co.

*"Privileged and Confidential: The information contained in this e-mail message, including any attachments, is intended only for the personal and confidential use of the intended recipient(s) and may contain confidential and privileged information as well as information protected by the Privacy Act of 1974. If the reader of this message is not the intended recipient or an agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please immediately contact the sender by reply e-mail and delete all copies of the original message."*

**Lincoln/Mason 0279**

**From:**nancy.miller@nmrexamworks.com
**Sent:**Tue, 22 Dec 2020 13:05:59 -0600
**To:**Avrett, Mary;VendorReferrals
**Subject:**NMR report notification for case - Case 9291624 - NMR 414082
**Attachments:**Invoice_414082-1_v1.pdf

***This email is from an external source. Only open links and attachments from a Trusted Sender.***

This is to inform you that the report for your case #9291624 (NMR # 414082) has been completed and is ready to be viewed on our website.

You can access the report via https://client.nmrco.com using your username and password.

Thank you for the referral,

Network Medical Review Co.

*"Privileged and Confidential: The information contained in this e-mail message, including any attachments, is intended only for the personal and confidential use of the intended recipient(s) and may contain confidential and privileged information as well as information protected by the Privacy Act of 1974. If the reader of this message is not the intended recipient or an agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please immediately contact the sender by reply e-mail and delete all copies of the original message."*

**Lincoln/Mason 0280**

# Network Medical Review Company, LTD.

*An ExamWorks Company*

**INVOICE**

LINCOLN FINANCIAL GROUP - LLAOB

Attn:  AVRETT, MARY
8801 INDIAN HILLS DRIVE
OMAHA, NE 68114

Invoice Number:  414082-1
Invoice Date:  12/22/2020
Account Number:  519193
File Number:  414082-1

Service Date:  7/21/2020 to the
Claim Number:  9291624
Claimant Name:  Jan   K Mason

| Description | | Amount |
| --- | --- | --- |
| Initial | LTD | **$1155.00** |

**Comments**

**Please pay this amount:**          $1155.00

Remit to: Network Medical Review Company, LTD
PO Box 492260
Redding, Ca 96049-2260
Tax ID 76-0711128

12/22/2020 12:25 PM
**Lincoln/Mason 0281**

| | |
|---|---|
| From: | LFGNotifications@LFG.com |
| Sent: | Tuesday, December 8, 2020 12:39:46 PM |
| To: | |
| CC: | |
| BCC: | |
| Subject: | [Send Secure]Charter Communications, Inc. Claim No. 9291624 Jan Mason |
| Attachments: | bg8qdhdaxav0fkmbkhvs_9526894.pdf; |

This notification contains important information regarding a claim with Lincoln Financial Group company. THIS IS AN AUTOMATED EMAIL. PLEASE DO NOT RESPOND. You may use the contact information in the attached letter to respond if needed.

**Lincoln/Mason 0282**



Lincoln Life Assurance Company of Boston
Disability and Life Claims
PO Box 2578
Omaha, NE 68172-9688
Phone No.: (888) 437-7611
Secure Fax No.: (603) 430-1926

December 8, 2020

Ms. Jan K. Mason

RE:    Long Term Disability (LTD) Benefits
       Charter Communications, Inc.
       Claim #: 9291624

Dear Ms. Jan Mason:

Pursuant to our telephone conversation today, December 8, 2020, we agreed to an extension to Friday, December 11, 2020 to provide additional response to our letter of September 25, 2020.

If you have any questions regarding this matter, please contact me.

Sincerely,

Mary Avrett
Appeals Consultant
Phone No.: (888) 437-7611 Ext. 16371
Secure Fax No.: (603) 430-1926

1  of  1

**Lincoln/Mason 0283**

ICP Memo

| Customer Name | Claimant Name | Claim Number |
|---|---|---|
| CHARTER COMMUNICATIONS, INC. | JAN MASON | 9291624 |

| Referred By: | Mary Avrett | Claimant DOB: | |
|---|---|---|---|
| Referral Date: | 12/08/2020 | Job Title: | REP 3, CUST SVC BILLING |
| Due Date: | 12/22/2020 | Medical/ Surgical Condition: | bilateral hip and back pain |
| Referral Type: | Appeal Referral | Disability Occupational Type: | |
| Reason for Priority Handling: | | Product Type: | LTD |
| Other Considerations | | LDW: | 04/16/2019 |
| Report Date: | | DOD: | 04/17/2019 |
| Physical Demands: | | BBD: | 10/16/2019 |
| Non-Medical Issue: | No | Non-Medical Issue Details: | |

Core Questions

6. If AP contact may clarify any significant areas such as diagnosis, R&L's, treatment opportunities, prognosis, or reason for work absence, the AP contact information is:

Name: Dr. Kent        Phone Number: 1 (719) 278 3627 ex -----     Fax Number: 719-623-2101
Document 2 attempts within 5 business days with initial and final memorandum as indicated, as well as AP letter

Other Dr. Marc Phillips 719-488-0120, fax 719-488-0059

Additional Questions

Other 1) What diagnoses are supported by the medical evidence? 2) Taking into consideration the entire clinical picture, including standards of care and evidence based medicine, and any medication or other treatment side effects, please describe if there are any supported level of impairments which translates into restrictions and limitations from 7/21/2020 to the present? Please explain your medical rationale as to why or why not and provide a detailed explanation. 3) If functional impairment is supported, please describe how that translates into restrictions or limitations and for what period(s) of time. Please define in terms of frequency (never, occasional, frequent, constant) and task (sit, stand, lift/carry, type etc). Please explain your medical rationale for any restrictions or limitations

**Lincoln/Mason 0284**

or why restrictions or limitations are not supported. 4) Does the medical documentation support that any medical condition alone, or in combination would preclude the claimant from sustained occupational functioning on a full-time basis?  Please explain why or why not. 5) Do you agree with the assessment of the claimant's capacity and the restrictions as noted by Dr. Jeffrey Kent dated 8/31/2020? If not, please explain. 6) Do you agree with the assessment of the claimant's capacity and the restrictions as noted by Dr. Marc Phillips dated 11/1/2020? If not, please explain. 7) When contacting the treating provider please discuss the claimant's condition, treatment, and functional capacity. Please indicate the information reviewed and indicate whether or not you reached consensus with the treating provider. If not, please discuss your final assessment after the call.


Other Comments
Other Comments - null

**Lincoln/Mason 0285**

12/08/2020    13:04    (FAX)    P.001/003

# FAX

**FYZICAL Therapy and Balance Centers**
12229 Voyager Pkwy, # 150
Colorado Springs, CO 80921
719-488-0120

## FYZICAL™
Therapy & Balance Centers

To: Disability
Fax number: 603-430-1926

From: Ally / Marc
Fax number: 719-488-1427

Date: 12/8/2020

Regarding: Jan Mason
**CLAIM #: 9291624**

Phone number for follow-up:
719-488-0120

Comments:

[ ] Please REVIEW, sign, and fax back
[ ] Initial Evaluation/Plan of Care attached. Please REVIEW, SIGN, and FAX back
[ ] Progress Note attached. Please REVIEW, SIGN, and FAX back .
[ ] Discharge Note attached. No action required
[X] Other:

Hello, attached is a letter from the physical therapist who has treated Jan Mason.

Thank you!

NUMBER OF PAGES __3__ (INCLUDING COVER SHEET)

The information contained on the following pages contains private health information and is solely intended for the recipient listed below. If you have mistakenly received this information, please return via US Postal Service to the address above. Thank you.

PAGE 1/3 * RCVD AT 12/8/2020 1:10:32 PM [Eastern Standard Time] * SVR:VA1PWFAX401/4 * DNIS:6034301926 * CSID: * ANI:7194881427 * DURATION (mm-ss):01-04

**Lincoln/Mason 0286**

**Fw: Jan Mason Claim # 9291624**

Marc Phillips <mphillips@fyzical.com>
Tue 12/8/2020 10:53 AM
To: Allyssa Bost <allyssa.bost@fyzical.com>

---

**From:** Marc Phillips
**Sent:** Monday, December 7, 2020 9:09 PM
**To:** disabilitydocuments@lfg.com <disabilitydocuments@lfg.com>
**Subject:** Jan Mason Claim # 9291624

To whom it may concern,

I have attempted to fax and email this document previously and have been told it has not been received so I have cut and pasted the letter to the body of this email. Please reply to this email upon receipt.

November 1, 2020

Long Term Disability
ATTN: Mary Avrett

Re: Ms. Jan Mason
Claim number is #9291624

To whom it may concern,

When completing the physical assessment I found significant deficits in physical ability. Additionally, Jan presents with multi-faceted deficits including psychological, which impede her ability to complete difficult tasks. Jan has been seen by numerous specialists and has gone through significant diagnostic testing demonstrating significant disability. My ability to discuss this with another physical therapist or occupational nurse/physician would be very beneficial to support Jan's claim.

She has had a recent exacerbation of her lumbar spine pain that has made it difficult for her to even perform very simple tasks like bed and car transfers, sit to stand transfers as well as dressing and driving. Sheri is also having increased difficulty sleeping and due to the severity of her pain is having difficulty with basic activities of daily living.

It is my professional opinion that since December 2016 to the present, there is no occupation that Jan would be able to perform in any capacity, not even on the most minimal amount of time, in any given work week. Jan struggles, at best, to perform ADL's at home and drive to medical appointments, some of which, she needs assistance much of the time. I conduct assessments for patients of multiple occupations and do not know of any employer that would hire Jan in her current status. And, I can attest that Jan would not be able to consistently report to duty nor fulfill the responsibilities of the most simple part-time job.

I would like the opportunity to speak with or provide any additional documentation to support my professional opinion in support of Jan. I have provided my notes, assessments, and requested additional forms to do so. Thank you for allowing me to provide additional information.

Sincerely,

**Lincoln/Mason 0287**

Dr. Marc Phillips PT, DPT, OCS
Falcon Physical Therapy
12229 Voyager Pkwy
Colorado Springs, CO 80921
Phone: 719-488-0120
Fax: 719-488-0059

*Marc Phillips* PT, DPT, OCS

Lincoln/Mason 0288

**From:** Jana M <
**Sent:** Tue, 8 Dec 2020 10:41:02 -0700
**To:** DisabilityDocuments
**Subject:** Fwd: Fw: Jan Mason Claim 9291624

***This email is from an external source. Only open links and attachments from a Trusted Sender.***

---------- Forwarded message ---------
From: **Marc Phillips** <mphillips@fyzical.com>
Date: Tue, Dec 8, 2020, 10:38 AM
Subject: Fw: Jan Mason Claim # 9291624
To: Jana M <

**From:** Marc Phillips
**Sent:** Monday, December 7, 2020 9:09 PM
**To:** disabilitydocuments@lfg.com <disabilitydocuments@lfg.com>
**Subject:** Jan Mason Claim # 9291624

To whom it may concern,

I have attempted to fax and email this document previously and have been told it has not been received so I have cut and pasted the letter to the body of this email.  Please reply to this email upon receipt.

November 1, 2020

Long Term Disability
ATTN: Mary Avrett

Re:  Ms. Jan Mason
Claim number is #9291624

To whom it may concern,

**Lincoln/Mason 0289**

When completing the physical assessment I found significant deficits in physical ability. Additionally, Jan presents with multi-faceted deficits including psychological, which impede her ability to complete difficult tasks. Jan has been seen by numerous specialists and has gone through significant diagnostic testing demonstrating significant disability. My ability to discuss this with another physical therapist or occupational nurse/physician would be very beneficial to support Jan's claim.

She has had a recent exacerbation of her lumbar spine pain that has made it difficult for her to even perform very simple tasks like bed and car transfers, sit to stand transfers as well as dressing and driving. Sheri is also having increased difficulty sleeping and due to the severity of her pain is having difficulty with basic activities of daily living.

It is my professional opinion that since December 2016 to the present, there is no occupation that Jan would be able to perform in any capacity, not even on the most minimal amount of time, in any given work week. Jan struggles, at best, to perform ADL's at home and drive to medical appointments, some of which, she needs assistance much of the time. I conduct assessments for patients of multiple occupations and do not know of any employer that would hire Jan in her current status. And, I can attest that Jan would not be able to consistently report to duty nor fulfill the responsibilities of the most simple part-time job.

I would like the opportunity to speak with or provide any additional documentation to support my professional opinion in support of Jan. I have provided my notes, assessments, and requested additional forms to do so. Thank you for allowing me to provide additional information.

Sincerely,

Dr. Marc Phillips PT, DPT, OCS
Falcon Physical Therapy
12229 Voyager Pkwy
Colorado Springs, CO  80921
Phone:  719-488-0120
Fax:  719-488-0059

**Lincoln/Mason 0290**

**From:**Marc Phillips <mphillips@fyzical.com>
**Sent:**Tue, 8 Dec 2020 04:09:01 +0000
**To:**DisabilityDocuments
**Subject:**Jan Mason Claim 9291624

***This email is from an external source. Only open links and attachments from a Trusted Sender.***

To whom it may concern,

I have attempted to fax and email this document previously and have been told it has not been received so I have cut and pasted the letter to the body of this email.  Please reply to this email upon receipt.

November 1, 2020

Long Term Disability
ATTN: Mary Avrett

Re:  Ms. Jan Mason
Claim number is #9291624

To whom it may concern,

When completing the physical assessment I found significant deficits in physical ability. Additionally, Jan presents with multi-faceted deficits including psychological, which impede her ability to complete difficult tasks. Jan has been seen by numerous specialists and has gone through significant diagnostic testing demonstrating significant disability. My ability to discuss this with another physical therapist or occupational nurse/physician would be very beneficial to support Jan's claim.

She has had a recent exacerbation of her lumbar spine pain that has made it difficult for her to even perform very simple tasks like bed and car transfers, sit to stand transfers as well as dressing and driving. Sheri is also having increased difficulty sleeping and due to the severity of her pain is having difficulty with basic activities of daily living.

**Lincoln/Mason 0291**

It is my professional opinion that since December 2016 to the present, there is no occupation that Jan would be able to perform in any capacity, not even on the most minimal amount of time, in any given work week. Jan struggles, at best, to perform ADL's at home and drive to medical appointments, some of which, she needs assistance much of the time. I conduct assessments for patients of multiple occupations and do not know of any employer that would hire Jan in her current status. And, I can attest that Jan would not be able to consistently report to duty nor fulfill the responsibilities of the most simple part-time job.

I would like the opportunity to speak with or provide any additional documentation to support my professional opinion in support of Jan. I have provided my notes, assessments, and requested additional forms to do so. Thank you for allowing me to provide additional information.

Sincerely,

Dr. Marc Phillips PT, DPT, OCS
Falcon Physical Therapy
12229 Voyager Pkwy
Colorado Springs, CO  80921
Phone:  719-488-0120
Fax:  719-488-0059

**Lincoln/Mason 0292**

**From:**Jana M <
**Sent:**Tue, 1 Dec 2020 11:48:50 -0700
**To:**DisabilityDocuments
**Subject:**Jan Mason. Claim 9291624. Attn: Mary Avrett
**Attachments:**20201201_114352.jpg, 20201201_114304.jpg, 20201201_114340.jpg

***This email is from an external source. Only open links and attachments from a Trusted Sender.***

**Lincoln/Mason 0293**



1/3

JAN K MASON
CLAIM # 9291634
ATTN: MARY AVRETT
11/26/20

AN AVERAGE DAY IN MY LIFE UNFORTUNATELY CONSISTS OF MOSTLY LAYING DOWN FLAT ON MY BACK. I CANNOT MAINTAIN ANY JOB OR SCHEDULE, NOR PARTICIPATE IN ANY ACTIVITIES, DUE TO DEBILITATING PAIN AND ONGOING INJURIES. EVEN A FEW MINUTES OF SITTING, STANDING, STAIRS, TURNING, BENDING FORWARD OR BACKWARDS ALL CAUSE IMMEDIATE AND INTENSE PAIN. IT HAS BECOME CONSTANT, AROUND THE CLOCK AND LIFE ALTERING. THE SIMPLEST OF TASKS FROM EASY FOOD PREP, TO FEEDING THE DOG, TO SITTING AT THE TABLE FOR DINNER, TO STANDING TO BRUSH MY TEETH, ARE BECOMING SO DIFFICULT, SOME I CANT EVEN DO ANYMORE. I AM EXHAUSTED MENTALLY AND PHYSICALLY FROM THE CONSTANT PAIN. THE ONLY INSIGNIFICANT AMOUNT OF RELIEF

**Lincoln/Mason 0294**



I GET IS LYING DOWN FLAT
ON MY BACK WITH ICE AND
A IOS UNIT. SLEEP IS
BECOMING NON EXISTANT,
EVEN WITH SLEEP MEDICATION
DUE TO EVER INCREASING
DISCOMFORT. NSAIDS ARE
NO LONGER AN OPTION FOR
ME BECAUSE OF HEALTH ISSUES
CAUSED BY CONTINOUS USE.
I AM HAVING INCREASED
PERIODS OF HIGH BLOOD PRESSURE
AND ANXIETY FROM PAIN. I
AM ABLE TO DO LESS AND LESS
AS THE DAYS GO BY. GOING TO
DOCTOR APPOINTMENTS AND
GETTING NECESSITIES ARE
ABOUT ALL I AM ABLE TO DO.
I AM BECOMING MORE AND
MORE ISOLATED FROM FAMILY,
FRIENDS AND NEIGHBORS, WHISH
IS DISTRESSING DURING THE
HOLIDAY SEASON... I FEEL LIKE
YOUR COMPANY, LINCOLN FINANCIAL
GROUP, HAS TREATED ME
UNREASONABLY BY DISCONTINUING
ANY LONG TERM PAYMENTS... I
AM HAVING ECONOMIC HARDSHIP,
AND SIGNIFICANT PERIODS OF STRESS

**Lincoln/Mason 0295**



3/3

DUE TO THE STOPPAGE OF PAYMENTS. I HAVE HAD TO BORROW FROM FAMILY, FRIENDS AND TAKE AN EARLY DISPURSEMENT OF MY HARD EARNED RETIREMENT CAUSING SIGNIFICANT FUTURE LOSSES. I FEEL THAT YOU NEED TO RECONSIDER THE EXPERT OPINIONS OF MY MEDICAL TEAM.. THANK YOU

JAN K MASON

**Lincoln/Mason 0296**

Mason, Jan K (MRN 3925160) DOB:                              Encounter Date: 11/30/2020

Letter by Kent, Jeffrey Roy, MD on 11/30/2020

*disability documents @ Hfg.com*
*fx 603 430. 1926*

uchealth

UCHealth Aspen Creek Medical
Center
9480 Briar Village Point STE 200
COLORADO SPRINGS CO 80920
O: 719-278-3627
F: 719-623-2101

uchealth.org

November 30, 2020

Patient:     Jan K Mason "Jan" (DOB:

To Whom it May Concern,/Lincoln financial group
Claim #9291624
Attention Mary Avrett
Fax number 603-430-1926

I am the primary care physician for Ms. Jan Mason. Patient has had a complicated past
medical history involving chronic back and hip pain, paresthesias, bursitis, anxiety, depression.
Patient was involved in a motor vehicle accident.

We are asking that patient be continued on long-term disability due to severe debility. Patient
has had a history of a bilateral labral tears of her hips. Patient has had these repaired but pain
persists. Patient is needing to have hip replacement surgery that is expected to begin in early
January.
She has history of bursitis anxiety insomnia and depression in addition to his buzzing
paresthesias into the left greater than right leg.

Patient did have an injection involving the left SI joint which did resolve her pain for a few hours.

Patient is heading for bilateral hip replacement surgery and then possible left SI joint fusion.

She is unable to work due to her severe chronic pain. She is unable to maintain any sitting or
standing position for very long without increasing pain which affects her ability to do her job.

Please extend her disability at least through February 2021.

If you have questions, please do not hesitate to contact the clinic.

Sincerely,

Printed by Smith, Brandi, MA at 11/30/20 7:33 AM                    Page 1 of 2

**Lincoln/Mason 0297**

**From:**CSBBVP2PACM01@uchealth.org
**Sent:**Mon, 30 Nov 2020 15:41:31 -0700
**To:**DisabilityDocuments
**Subject:**Attached Image
**Attachments:**2061_001.pdf

**Lincoln/Mason 0298**

11/24/2020 TUE 16:24 FAX

## uchealth

# Fax

Aspen Creek Medical Center
UCHealth

9480 Briar Village Point
Suite 200

O 719.278.3627
F 719.623.2102

uchealth.org

☐ Urgent    ☐ Please reply    ☐ Please review    ☐ For your records    ☐ Recycle

Date                                    Number of pages

To Attn                                 From
   Mary Avrett
       fx 603.430.1926 /Email disability documents@
                                                    lfg.com
Subject     Lincoln financial
            Claim # 9291624

Comments (if necessary)

Confidentiality Notice: The information contained in this facsimile message is privileged and confidential intended only for use by the individual names above and others who may have been specifically authorized to receive it. If you are not the intended recipient you are hereby notified that any dissemination, distribution, or copying of this communication is prohibited. If you have received this communication in error, or if any problems occur with transmission, please notify us immediately at the number listed above and return the original message to us at the listed address via postal mail. Thank you for your cooperation.

Lincoln/Mason 0299

11/24/2020 TUE 16:24 FAX                                                          ☑002/016

Mason, Jan K (MRN 3925160) DOB:                          Encounter Date: 08/31/2020

Letter by Kent, Jeffrey R, MD on 8/31/2020



UCHealth Aspen Creek Medical
Center
9480 Briar Village Point STE 200
COLORADO SPRINGS CO 80920
O: 719-278-3627
F: 719-623-2101

uchealth.org

August 31, 2020
Lincoln financial group
Group benefits disability claims
PO Box 7213
London, KY 40742-7213
Fax 6034301926

Re:                    **Jan K Mason** (DOB:

To Whom It May Concern:

I am the primary care physician for Ms. Jan Mason. This kind but unfortunate woman has had numerous injuries and chronic low back pain. Patient has a low back pain related to multiple injuries and the surgery. She has had a history of a fall on her tailbone with subsequent SI joint fusion on her R side. She unfortunately had a motor vehicle accident 2 weeks after her SI fusion surgery. This is set her back as significantly. She has gone on to 2 hip surgeries to repair labral tear of the right hip.

All the above injuries and problems have led to continued to difficulties throughout this entire year with her daily tasks. He has ongoing difficulties with mobility with chronic pain. He is being considered for spinal cord stimulator. She has been on numerous other medications but this has been minimized. She continues to have difficulties.

Ms. Mason has had ongoing debility with severe disability out this entire year. He has been unable to work in 2020 and I do not anticipate return to work prior to the end of this year. She needs to remain on long-term disability.

Recent imaging has shown central disc herniations at L1-L2 with spinal stenosis as well as broad central disc herniation at L2-L3 causing moderate spinal stenosis and right neural foraminal disc herniation at L3-L4 and a central disc herniation at L5-S1 with annular tearing and impingement on the thecal sac. These findings are in addition to chronic SI joint pain bilateral hip pain and chronic lower back pain. Please continue her long-term disability benefits throughout this year with reassessment at the end of the year.

If you have any questions or concerns, please don't hesitate to call.

Sincerely,

Printed by Smith, Brandi, MA at 11/24/20 10:24 AM                    Page 1 of 2

**Lincoln/Mason 0300**

11/24/2020 TUE 16:24  FAX                                                    ☑003/016

Mason, Jan K (MRN 3925160) DOB:                          Encounter Date: 08/31/2020

Electronically signed by:
Jeffrey Kent, MD
Dept: 719-278-3627
8/31/2020, 12:35 AM

Jan K Mason                        DOB:                        1 of 1

## Letters from 11/25/2017 to 11/24/2020

| Letter On | Letter From | Letter Template | Reason for Letter | Letter Status |
|---|---|---|---|---|
| 8/31/2020 | KENT, JEFFREY | AMB GEN BLANK | Other | Sent |
| 2/24/2020 | GONZALEZ, KARLA | AMB HEALTH PROMOTION LETTER | Letter to Patient | Sent |
| 7/5/2018 | SERVICES, BUSINESS | PB MG CREDIT CARD REFUND FOR PRINTING | Refund Letter | Sent |
| 5/7/2018 | KAUFMANSCHER, JONATHAN | AMB LTR TO PROVIDER | Letter to Referring/PCP | Sent |

Printed by Smith, Brandi, MA at 11/24/20 10:24 AM                          Page 2 of 2

**Lincoln/Mason 0301**

11/24/2020 TUE 16:25 FAX                                                    ☑004/016

Mason, Jan K (MRN 3925160) DOB:                                        Page 1 of 8

# uchealth

# Mason, Jan K

Description: Female DOB:          Provider: Kent, Jeffrey R, MD Department: Aspen Clk Prim Care Op
Dept Phone: 719-273-3627  Encounter #: 189292691

10/14/2020 - Preventative Visit
MRN: 3925160

## ⚡ Reason for Visit

Annual Exam                pt gets her paps with blue skies. july 2020 normal

## Progress Notes                      Kent, Jeffrey R, MD (Physician) - Family Medicine

### Plan

**Assessment and Plan:**

| # | | ICD-10-CM | |
|---|---|---|---|
| 1. | Annual physical exam | Z00.00 | CBC with Auto Differential<br>Comprehensive Metabolic Panel<br>Hemoglobin A1c<br>Lipid Panel<br>TSH Ultrasensitive<br>Erythrocyte Sedimentation Rate<br>C-Reactive Protein<br>ANA Reflex Profile<br>RPR |

routine anticipatory guidance; fasting labs; pt needs paperwork completed.

| # | | ICD | |
|---|---|---|---|
| 2. | Paresthesia of bilateral legs | R20.2 | Vitamin B12<br>Rapid Plasma Reagin Antibody<br>Erythrocyte Sedimentation Rate<br>C-Reactive Protein<br>ANA Reflex Profile<br>RPR |

supportive care.  rec proceeding with L si joint fixation as trial worked so well.

| # | | ICD | |
|---|---|---|---|
| 3. | Chronic low back pain with sciatica, sciatica laterality unspecified, unspecified back pain laterality | M54.40 | Vitamin B12 |
| | | G89.29 | Rapid Plasma Reagin Antibody<br>Erythrocyte Sedimentation Rate<br>C-Reactive Protein<br>ANA Reflex Profile<br>RPR |

cont supportive care; check labs.  cont with specialists.

Mason, Jan K (MRN 3925160) Printed by [84810] at 11/24/20 10:24 AM

Lincoln/Mason 0302

11/24/2020 TUE 16:25 FAX                                            ☑005/016

Mason, Jan K (MRN 3925160) DOB:                                Page 2 of 8

| | | | |
|---|---|---|---|
| 4. | Essential hypertension | I10 | Erythrocyte Sedimentation Rate<br>C-Reactive Protein<br>ANA Reflex Profile<br>RPR |
| | cont losartan; metoprolol | | |
| 5. | Inflammation of sacroiliac joint (HC code) | M46.1 | Erythrocyte Sedimentation Rate<br>C-Reactive Protein<br>ANA Reflex Profile<br>RPR |
| | proceed with eval | | |
| 6. | Femoroacetabular impingement of both hips | M25.851<br>M25.852 | Erythrocyte Sedimentation Rate<br>C-Reactive Protein<br>ANA Reflex Profile<br>RPR |
| | cont with dr huang | | |
| 7. | Tear of left acetabular labrum, subsequent encounter | S73.192D | Erythrocyte Sedimentation Rate<br>C-Reactive Protein<br>ANA Reflex Profile<br>RPR |
| | as above | | |

No medications were added in this encounter.

**Subjective**

**Subjective:**

Chief Complaint
Patient presents with
• Annual Exam
*pt gets her paps with blue skies. july 2020 normal*

**History of Present Illness:**

Jan K Mason is a 48 y.o. female here for her routine health maintenance exam. Specific medical issues she wishes to also address today are listed here:

Pt is here for cpe

Pt with ongoing low back/hip leg pain with si joint pain

Buzzing paresthesias.; neuralgia

emg studies----unremarkable

Pt had a block placed in her L si joint and pt did very well for couple of hours. Able to walk around without difficulty. The r si joint did not hurt during this trial.

Mason, Jan K (MRN 3925160) Printed by [84810] at 11/24/20 10:24 AM

**Lincoln/Mason 0303**

Mason, Jan K (MRN 3925160) DOB:                                          Page 3 of 8

| PHQ 9 DEPRESSION SCALE | 10/14/2020 | 6/27/2019 | 2/2/2018 |
|---|---|---|---|
| **Little interest or pleasure** | 0 - Not at all | 0 - Not at all | 0 - Not at all |
| **Feeling down/depressed/ hopeless** | 0 - Not at all | 0 - Not at all | 0 - Not at all |

No flowsheet data found.
PHQ9 Score Scale
0-9    no or mild depression
10-14  moderate depression
15-19  moderately severe depression
20-27  severe depression

Pending Health Maintenance

| | Date Due | Completion Date |
|---|---|---|
| Mammography | 02/14/2021 (Originally 1/22/2020) | 1/22/2019 |
| Override on 5/27/2016: Done | | |
| Diabetes Screening | 10/14/2023 | 10/14/2020 |
| PAP | 07/01/2025 | 7/1/2020 (Done) |
| Override on 7/1/2020: Done (blue skies) | | |
| Lipids | 10/14/2025 | 10/14/2020 |
| Override on 4/26/2016: Done (Abnormal) | | |
| Tdap/Td (2 - Td) | 04/26/2026 | 4/26/2016 |
| Colon Cancer Screening | 06/10/2026 | 6/10/2016 (Done) |
| Override on 6/10/2016: Done (Normal) | | |

NOTE ALL HISTORIES COMPLETELY REVIEWED AND UPDATED TODAY
Past Medical History:

| Diagnosis | Date |
|---|---|
| • Anxiety | |
| • Arthritis | |
| • Cervicalgia | |
| • Hayfever | |
| • Headache | |
| • Hypertension | |
| • Lumbago | |

Past Surgical History:

| Procedure | Laterality | Date |
|---|---|---|
| • HIP SURGERY | Right | |
| • HIP SURGERY | Right | |
| • rhinoplasty | | |
| • SI joint fusion | | |

Mason, Jan K (MRN 3925160) Printed by [84810] at 11/24/20 10:24 AM

Lincoln/Mason 0304

11/24/2020 TUE 16:25 FAX                                                    ☑007/016

Mason, Jan K. (MRN 3925160) DOB:                                    Page 4 of 8

- TUBAL LIGATION

Family History
Problem                              Relation                Age of Onset
- No Known Problems                  Mother
- No Known Problems                  Father
- Diabetes                           Paternal Grandfather
- No Known Problems                  Brother
- Alcohol abuse                      Neg Hx
- Depression                         Neg Hx

No Known Allergies
Social History

Tobacco Use
Smoking Status                       Never Smoker
Smokeless Tobacco                    Never Used

Social History

Social History Narrative
- Not on file

**CURRENT MEDICATIONS:**
Current Outpatient Medications
Medication                           Sig
- ALPRAZolam (XANAX) 0.5 mg          1-2 1 hour before procedure
  tablet
- cyclobenzaprine (FLEXERIL) 10      Take 1 tablet by mouth 2 times daily as needed for
  mg tablet                          Muscle spasms.
- fluCONazole (DIFLUCAN) 150 mg      1 by mouth now then 2nd pill in 3 day.
  tablet
- LORATADINE (CLARITIN PO)
- losartan (COZAAR) 100 mg tablet    Take 1 tablet by mouth daily.
- metoprolol succinate (TOPROL-      Take 1 tablet by mouth daily.
  XL) 100 mg 24 hr tablet
- norethindrone-e estrad-iron        Take 1 tablet by mouth daily.
  (MICROGESTIN FE 1/20, 28,) 1
  mg-20 mcg (21)/75 mg (7) per
  tablet
- zolpidem (AMBIEN) 10 mg tablet     Take 1 tablet by mouth nightly at bedtime for Sleep-
                                     Onset Insomnia.
- omega-3 acid ethyl esters, fish oil,   Take 1 capsule by mouth 2 times daily.
  (LOVAZA) 1 gram capsule

No current facility-administered medications for this visit.

**ALLERGIES:** Patient has no known allergies.
I have reviewed, verified and personally updated the past medical, surgical, birth, family, social and ROS
history.
Review of Systems
Constitutional: Negative for fatigue, fever and unexpected weight change.
HENT: Negative for ear pain, hearing loss, rhinorrhea and tinnitus.
Eyes: Negative for discharge and visual disturbance.
Respiratory: Negative for cough and shortness of breath.
Cardiovascular: Negative for chest pain and palpitations.

Mason, Jan K. (MRN 3925160) Printed by [84810] at 11/24/20 10:24 AM

Lincoln/Mason 0305

Mason, Jan K (MRN 3925160) DOB:                                    Page 5 of 8

Gastrointestinal: Negative for abdominal pain, blood in stool, constipation, diarrhea, nausea and vomiting.
Genitourinary: Negative for dysuria and hematuria.
Musculoskeletal: Positive for arthralgias, back pain, gait problem and myalgias.
Skin: Negative for rash.
Neurological: Negative for dizziness, syncope and headaches.
Hematological: Negative for adenopathy. Does not bruise/bleed easily.
Psychiatric/Behavioral: Negative for confusion, dysphoric mood and sleep disturbance. The patient is not nervous/anxious

### Objective

**Objective:**
Vital Signs:
**Visit Vitals**

| | |
|---|---|
| BP | 145/85 |
| Pulse | 66 |
| Temp | 36.6 °C (97.8 °F) (Tympanic) |
| Ht | 1.727 m (5' 8") |
| Wt | 88.9 kg (196 lb) |
| SpO2 | 96% |
| BMI | 29.80 kg/m² |

**Physical Exam**
Constitutional:
  Appearance: Normal appearance. She is well-developed.
HENT:
  Head: Normocephalic and atraumatic.
  Right Ear: External ear normal.
  Left Ear: External ear normal.
  Nose: Nose normal.
Eyes:
  Conjunctiva/sclera: Conjunctivae normal.
  Pupils: Pupils are equal, round, and reactive to light.
Neck:
  Musculoskeletal: Normal range of motion and neck supple.
Cardiovascular:
  Rate and Rhythm: Normal rate and regular rhythm.
  Heart sounds: Normal heart sounds.
Pulmonary:
  Effort: Pulmonary effort is normal.
  Breath sounds: Normal breath sounds.
Abdominal:
  General: Abdomen is flat. Bowel sounds are normal.
  Palpations: Abdomen is soft.
Musculoskeletal: Normal range of motion.
  General: Tenderness present.

Skin:
  General: Skin is warm and dry.
Neurological:
  General: No focal deficit present.
  Mental Status: She is alert and oriented to person, place, and time.
  Deep Tendon Reflexes: Reflexes are normal and symmetric.
Psychiatric:
  Mood and Affect: Mood normal.

Mason, Jan K (MRN 3925160) Printed by [84810] at 11/24/20 10:24 AM

**Lincoln/Mason 0306**

11/24/2020 TUE 16:26  FAX                                                    ☑009/016

Mason, Jan K (MRN 3925160) DOB:                                        Page 6 of 8

Behavior: Behavior normal.
Thought Content: Thought content normal.
Judgment: Judgment normal.

## DATA:
### Lab Results

| Component | Value | Date |
|---|---|---|
| White Blood Cell Count | 4.7 | 10/14/2020 |
| Hemoglobin | 14.3 | 10/14/2020 |
| Hematocrit | 41.5 | 10/14/2020 |
| Platelet Count | 268 | 10/14/2020 |

### Lab Results

| Component | Value | Date |
|---|---|---|
| Sodium Serum/Plasma | 138 | 10/14/2020 |
| Potassium Serum/Plasma | 4.3 | 10/14/2020 |
| Chloride Serum/Plasma | 103 | 10/14/2020 |
| Blood Urea Nitrogen | 15 | 10/14/2020 |
| Creatinine Serum/Plasma | 0.76 | 10/14/2020 |
| Glucose Random Serum/Plasma | 94 | 10/14/2020 |
| Calcium, Serum/Plasma | 9.7 | 10/14/2020 |
| Aspartate Aminotransferase | 41 (H) | 10/14/2020 |
| Protein Total Serum/Plasma | 7.5 | 10/14/2020 |

### Lab Results

| Component | Value | Date |
|---|---|---|
| Bilirubin Total | 0.6 | 10/14/2020 |
| Carbon Dioxide | 23 | 10/14/2020 |
| ALANINE AMINOTRANSFERASE | 41 (H) | 10/14/2020 |
| ALBUMIN | 4.5 | 10/14/2020 |

### Lab Results

| Component | Value | Date |
|---|---|---|
| Cholesterol | 250 (H) | 10/14/2020 |
| Triglycerides | 479 (H) | 10/14/2020 |
| LDL | 127 (H) | 10/14/2020 |

### Lab Results

| Component | Value | Date |
|---|---|---|
| TSH | 2.120 | 10/14/2020 |

We recommend annual mammograms and pap smears every 3 years(unless specified otherwise). A colonoscopy is based on personal and family history but generally is every 5-10 years after age 50. Please ask your PCP or GI doctor for your individual schedule.

We recommend low fat diet or Mediterranean diet and 150 minutes/week of aerobic exercise. We recommend using sunscreen and wearing sun protective clothing.

**TIME/COMMUNICATION:**
N/A
Jeffrey Kent, MD

**Result QuickNote**                        Kent, Jeffrey R. MD (Physician) • Family Medicine

Mason, Jan K (MRN 3925160) Printed by [84810] at 11/24/20 10:24 AM

**Lincoln/Mason 0307**

Mason, Jan K (MRN 3925160) DOB:                                    Page 7 of 8

ANA is negative. C-reactive protein is normal. Sed rate is normal. B12 is low normal at 332. Recommend 1 cc IM monthly. Patient may also take B12 oral supplements. TSH is normal. Lipid profile is very high with a cholesterol 250, triglycerides 479, LDL 127. Recommend trial of low-fat diet. Recommend starting Lovaza 1 g 2 p.o. twice daily #360. Recheck lipid profile in 2 months. A1c is normal at 5.6. CMP is normal. CBC is normal. RPR is negative..jk

## Instructions

After Visit Summary (Automatic SnapShot taken 10/17/2020)

## Medications Reviewed As Of This Encounter

Reviewed by Kent, Jeffrey R, MD (Physician) on 10/17/20 at 1357

## Additional Documentation

| Vitals: | BP 145/85 Pulse 66 Temp 36.6 °C (97.8 °F) (Tympanic) Ht 1.727 m (5' 8") |
| | Wt 88.9 kg (196 lb) SpO2 96% BMI 29.80 kg/m² BSA 2.07 m²   More Vitals |
| Flowsheets: | PDMP NARxCHECK Scores, HT/WT & Screenings, Anthropometrics, Screening Data, |
| | Vitals & Pain, RT Asmt/Tx |
| Smartforms: | AMB TELEHEALTH VIDEO VISIT ASSESSMENT |
| Encounter Info: | Billing Info, History, Allergies, Detailed Report, All Encounter Vitals |

## Chart Review Routing History

No routing history on file.

## All Charges for This Encounter

| Code | Description | Service Date | Service Provider | Modifiers | Qty |
|---|---|---|---|---|---|
| 99396 | PR PREVENTIVE VISIT,EST,40-64 | 10/14/2020 | Kent, Jeffrey R, MD | | 1 |
| | Billing Provider: Kent, Jeffrey R, MD | | | | |
| 99214 | 99214 PR OFFICE/OUTPT VISIT,EST,LEVL IV | 10/14/2020 | Kent, Jeffrey R, MD | 25, CNP | 1 |
| | Billing Provider: Kent, Jeffrey R, MD | | | | |

## Orders Placed

Labs:
**Comprehensive Metabolic Panel** (Resulted 10/14/2020, Abnormal)
**Lipid Panel** (Resulted 10/14/2020, Abnormal)
ANA Reflex Profile (Resulted 10/14/2020)
C-Reactive Protein (Resulted 10/14/2020)
CBC with Auto Differential (Resulted 10/14/2020)
Erythrocyte Sedimentation Rate (Resulted 10/14/2020)
Hemoglobin A1c (Resulted 10/14/2020)
RPR (Resulted 10/14/2020)
TSH Ultrasensitive (Resulted 10/14/2020)
Vitamin B12 (Resulted 10/14/2020)
Rapid Plasma Reagin Antibody

## Medication Changes

Mason, Jan K (MRN 3925160) Printed by [84810] at 11/24/20 10:24 AM

Lincoln/Mason 0308

11/24/2020 TUE 16:26  FAX                                                    ☒011/016

Mason, Jan K (MRN 3925160) DOB:                                    Page 8 of 8

As of 10/17/2020  1:57 PM

None

## Instructions

After Visit Summary (Automatic SnapShot taken 10/17/2020)

## Visit Diagnoses

**Annual physical exam** Z00.00 - routine anticipatory guidance; fasting labs; pt needs paperwork completed.
**Paresthesia of bilateral legs** R20.2 - supportive care - rec proceeding with SI joint fixation as trial worked so well.
**Chronic low back pain with sciatica, sciatica laterality unspecified, unspecified back pain laterality** M54.40, G89.29 - cont supportive care; check labs; cont with specialist.
**Essential hypertension** I10 - cont losartan; metoprolol
**Inflammation of sacroiliac joint (HC code)** M46.1 - proceed with eval
**Femoroacetabular impingement of both hips** M25.851, M25.852 - cont with dr Irmano
**Tear of left acetabular labrum, subsequent encounter** S73.192D - as above

Mason, Jan K (MRN 3925160) Printed by [84810] at 11/24/20 10:24 AM

**Lincoln/Mason 0309**

11/24/2020 TUE 16:27 FAX                                                    ☒012/016

Mason, Jan K (MRN 3925160) DOB:                                    Page 1 of 5



# Mason, Jan K

8/19/2020   Office Visit
MRN: 3925160

Description: Female DOB:           Provider: Kent, Jeffrey R, MD  Department: Aspen Ck Prim Care Op
Dept Phone: 719-278-5627  Encounter #: 182821509

## ⚕ Reason for Visit

| | |
|---|---|
| Follow-up | back pain, SI joint, getting spinal stimulator placed. feeling worse. |
| Paperwork | needs letter to be written for long term medical leave. |

## Progress Notes

Kent, Jeffrey R, MD (Physician) - Family Medicine

### Plan

**Assessment and Plan:**

|  |  | ICD-10-CM |  |
|---|---|---|---|
| 1. | Sacroiliac joint pain | M53.3 | AMB REF TO ORTHOPEDIC SURGERY - Spine Center (Memorial Hospital North) |

Patient to continue lab work-up by her pain management team. Proceed with the spinal cord stimulator. Proceed with second opinion

| 2. | Osteoarthritis of spine with radiculopathy, lumbar region | M47.26 | AMB REF TO ORTHOPEDIC SURGERY - Spine Center (Memorial Hospital North) |

Paperwork for charter communications to be completed.

Medications Placed This Encounter
Medications
• fluCONazole (DIFLUCAN) 150 mg tablet

.

### Subjective

**Subjective:**

Patient presents with ongoing back pain and hip pain.

Patient has been seen Dr. Sung. Patient does likely need to get a second opinion with her insurance Kaiser

Mention Dr. Botolin locally or a Kaiser specialist up in Denver

Mason, Jan K (MRN 3925160) Printed by [84810] at 11/24/20 10:25 AM

Lincoln/Mason 0310

Mason, Jan K (MRN 3925160) DOB:  Page 2 of 5

Patient has been on long-term disability. She has chronic low back pain and hip pain. Patient has had some labral tear surgery by Dr. Huang

Patient is currently being evaluated for spinal cord stimulator.

Patient with a history of some SI joint fusion

Patient is needing some letter written for work. This needs a state that she is not able to return to work at this time. Patient states that her surgeons do not do such paperwork.

HPI

## CURRENT MEDICATIONS:

Current Outpatient Medications

| Medication | Sig |
|---|---|
| • ALPRAZolam (XANAX) 0.5 mg tablet | 1-2 1 hour before procedure |
| • cyclobenzaprine (FLEXERIL) 10 mg tablet | Take 1 tablet by mouth 2 times daily as needed for Muscle spasms. |
| • fluCONazole (DIFLUCAN) 150 mg tablet | 1 by mouth now then 2nd pill in 3 day. |
| • LORATADINE (CLARITIN PO) | |
| • losartan (COZAAR) 100 mg tablet | Take 1 tablet by mouth daily. |
| • metoprolol succinate (TOPROL-XL) 100 mg 24 hr tablet | Take 1 tablet by mouth daily. |
| • norethindrone-e estrad-iron (MICROGESTIN FE 1/20, 28,) 1 mg-20 mcg (21)/75 mg (7) per tablet | Take 1 tablet by mouth daily. |
| • zolpidem (AMBIEN) 10 mg tablet | Take 1 tablet by mouth nightly at bedtime for Sleep-Onset Insomnia. |

No current facility-administered medications for this visit.

**ALLERGIES:** Patient has no known allergies.

I have reviewed, verified and personally updated the past medical, social and ROS history.
reports that she has never smoked. She has never used smokeless tobacco. She reports previous alcohol use. She reports that she does not use drugs.
Review of Systems

## Objective

**Objective:**
Vital Signs:
**Visit Vitals**
BP        120/86
Pulse     88
Ht        1.727 m (5' 8")
Wt        89.8 kg (198 lb)
SpO2      97%
BMI       30.11 kg/m²

Mason, Jan K (MRN 3925160) Printed by [84810] at 11/24/20 10:25 AM

Lincoln/Mason 0311

Mason, Jan K (MRN 3925160) DOB: Page 3 of 5

Physical Exam

Procedures

**DATA:**
Results for orders placed or performed in visit on 10/07/19
POCT URINALYSIS AUTOMATED READER CPT 81003-MANUAL RESULT ENTRY

| Result | Value | Ref Range |
|---|---|---|
| Color Urine | yellow | |
| Appearance Urine | Clear | Clear - Clear |
| Glucose Urine POC | Negative | Negative - Negative |
| Bilirubin Urine POC | Negative | negative - negative |
| Ketones Urine POC | Negative | Negative |
| Specific Gravity Urine POC | 1.020 | 1.001 - 1.03 |
| Blood Urine POC | Negative | Negative - Negative |
| pH Urine POC | 5.0 | 4.6 - 8.0 |
| Protein Urine POC | Negative | Negative - Negative mg/dL |
| Urobilinogen Urine POC | 0.2 | 0.2 - 1.0 E.U./dl |
| Nitrite Urine POC | Negative | Negative - Negative |
| Leukocyte Esterase Urine POC | Negative | Negative |

**TIME/COUNSELING:**
N/A
Return to clinic if condition does not improve or worsens
Jeffrey Kent, MD

# Consults

External, Physician (Physician)

Consult Orders
1. AMB REF TO ORTHOPEDIC SURGERY - Spine Center (Memorial Hospital North) [565066887] ordered by Kent, Jeffrey R, MD at 08/19/20 1402
Document on 9/1/2020 2:00 PM by Roybal, Kristen: CSOG

# Consults

External, Physician (Physician)

Consult Orders
1. AMB REF TO ORTHOPEDIC SURGERY - Spine Center (Memorial Hospital North) [565066887] ordered by Kent, Jeffrey R, MD at 08/19/20 1402
Document on 8/19/2020 2:35 PM by Roybal, Kristen: FYZICAL

# Consults

External, Physician (Physician)

Consult Orders
1. AMB REF TO ORTHOPEDIC SURGERY - Spine Center (Memorial Hospital North) [565066887] ordered by Kent, Jeffrey R, MD at 08/19/20 1402
Document on 9/3/2020 10:37 AM by Roybal, Kristen: CSOG

# Consults

External, Physician (Physician)

Mason, Jan K (MRN 3925160) Printed by [84810] at 11/24/20 10:25 AM

**Lincoln/Mason 0312**

11/24/2020 TUE 16:27 FAX                                                    ☑015/016

Mason, Jan K (MRN 3925160) DOB:                                       Page 4 of 5

Consult Orders
   1. AMB REF TO ORTHOPEDIC SURGERY - Spine Center (Memorial Hospital North) [565066887] ordered by
   Kent, Jeffrey R, MD at 08/19/20 1402
Document on 9/3/2020 9:50 AM by Roybal, Kristen: CSOG

## Instructions

After Visit Summary (Automatic SnapShot taken 8/21/2020)

## Medications Ordered This Encounter

| | Disp. | Refills | Start | End |
|---|---|---|---|---|
| fluCONazole (DIFLUCAN) 150 mg tablet (Discontinued) | 2 tablet | 0 | 8/19/2020 | 10/22/2020 |

   1 by mouth now then 2nd pill in 3 day.
   Reason for Discontinue: Therapy completed

## Medications Reviewed As Of This Encounter

**Reviewed by Zimic, Meliha, MA (Medical Assistant) on 08/19/20 at 1321**

## Additional Documentation

| Vitals: | BP 120/86 Pulse 88 Ht 1.727 m (5' 8") Wt 89.8 kg (198 lb) SpO2 97% BMI 30.11 kg/m² |
| | BSA 2.08 m²   More Vitals |
| Flowsheets: | HT/WT & Screenings, Anthropometrics, Vitals & Pain, RT Asmt/Tx, |
| | PDMP NARxCHECK Scores |
| Encounter Info: | Billing Info, History, Allergies, Detailed Report, All Encounter Vitals |

## Communications

📠 Summary of care document sent to Sergiu Botolin, MD
   Sent 8/21/2020

## Chart Review Routing History

No routing history on file.

## All Charges for This Encounter

| Code | Description | Service Date | Service Provider | Modifiers | Qty |
|---|---|---|---|---|---|
| 99214 | 99214 PR OFFICE/OUTPT VISIT,EST,LEVL IV | 8/19/2020 | Kent, Jeffrey R, MD | | 1 |
| | Billing Provider: Kent, Jeffrey R, MD | | | | |

## Orders Placed

AMB REF TO ORTHOPEDIC SURGERY   Spine Center (Memorial Hospital North) Closed (Resulted
8/17/2020)

## Medication Changes

As of 8/19/2020 2:02 PM

| | Refills | Start Date | End Date |
|---|---|---|---|

Mason, Jan K (MRN 3925160) Printed by [84810] at 11/24/20 10:25 AM

Lincoln/Mason 0313

11/24/2020 TUE 16:27 FAX                                                                    ☑016/016

Mason, Jan K (MRN 3925160) DOB:                                                     Page 5 of 5

|                                                                  | Refills | Start Date | End Date |
|------------------------------------------------------------------|---------|------------|----------|
| **cyclobenzaprine HCl**                                          |         |            |          |

Discontinued or Completed: cyclobenzaprine (FLEXERIL) 10 mg tablet (Therapy completed)
  Patient reported medication

Unchanged: cyclobenzaprine (FLEXERIL) 10 mg         1            7/1/2020        10/22/2020
tablet
  Take 1 tablet by mouth 2 times daily as needed for Muscle spasms. - Oral

## Instructions

After Visit Summary (Automatic SnapShot taken 8/21/2020)

## Visit Diagnoses

**Sacroiliac joint pain** M53.3 - Patient to continue lab work-up by her pain management team. Proceed with the spinal cord stimulator. Proceed with second opinion

**Osteoarthritis of spine with radiculopathy, lumbar region** M47.26 - Paperwork for charter communications to be completed

Mason, Jan K (MRN 3925160) Printed by [84810] at 11/24/20 10:25 AM

**Lincoln/Mason 0314**

## uchealth

Aspen Creek Medical Center
UCHealth

9480 Briar Village Point
Suite 200

O 719.278.3627
F 719.623.2102

uchealth.org

# Fax

☐ Urgent    ☐ Please reply    ☐ Please review    ☐ For your records    ☐ Recycle

Date

Number of pages

To **Attn**
**Mary Avrett**
   **fx 603.430.1926 / Email disability documents @**
                                                      **lfg.com**

Subject **Lincoln financial**
              **Claim #9291624**

Comments (if necessary)

Confidentiality Notice: The information contained in this facsimile message is privileged and confidential intended only for use by the individual names above and others who may have been specifically authorized to receive it. If you are not the intended recipient you are hereby notified that any dissemination, distribution, or copying of this communication is prohibited. If you have received this communication in error, or if any problems occur with transmission, please notify us immediately at the number listed above and return the original message to us at the listed address via postal mail. Thank you for your cooperation.

**Lincoln/Mason 0315**

Mason, Jan K (MRN 3925160) DOB:                           Encounter Date: 08/31/2020

Letter by Kent, Jeffrey R, MD on 8/31/2020



UCHealth Aspen Creek Medical
Center
9480 Briar Village Point STE 200
COLORADO SPRINGS CO 80920
O: 719-278-3627
F: 719-623-2101

uchealth.org

August 31, 2020
Lincoln financial group
Group benefits disability claims
PO Box 7213
London, KY 40742–7213
Fax 6034301926

Re:            **Jan K Mason** (DOB:

To Whom It May Concern:

I am the primary care physician for Ms. Jan Mason. This kind but unfortunate woman has had numerous injuries and chronic low back pain. Patient has a low back pain related to multiple injuries and the surgery. She has had a history of a fall on her tailbone with subsequent SI joint fusion on her R side. She unfortunately had a motor vehicle accident 2 weeks after her SI fusion surgery. This is set her back as significantly. She has gone on to 2 hip surgeries to repair labral tear of the right hip.

All the above injuries and problems have led to continued to difficulties throughout this entire year with her daily tasks. He has ongoing difficulties with mobility with chronic pain. He is being considered for spinal cord stimulator. She has been on numerous other medications but this has been minimized. She continues to have difficulties.

Ms. Mason has had ongoing debility with severe disability out this entire year. He has been unable to work in 2020 and I do not anticipate return to work prior to the end of this year. She needs to remain on long-term disability.

Recent imaging has shown central disc herniations at L1-L2 with spinal stenosis as well as broad central disc herniation at L2-L3 causing moderate spinal stenosis and right neural foraminal disc herniation at L3-L4 and a central disc herniation at L5-S1 with annular tearing and impingement on the thecal sac. These findings are in addition to chronic SI joint pain bilateral hip pain and chronic lower back pain. Please continue her long-term disability benefits throughout this year with reassessment at the end of the year.

If you have any questions or concerns, please don't hesitate to call.

Sincerely,

Printed by Smith, Brandi, MA at 11/24/20 10:24 AM                    Page 1 of 2

**Lincoln/Mason 0316**

Mason, Jan K (MRN 3925160) DOB:                                    Encounter Date: 08/31/2020

Electronically signed by:
Jeffrey Kent, MD
Dept: 719-278-3627
8/31/2020, 12:35 AM

Jan K Mason                          DOB:                          1 of 1

## Letters from 11/25/2017 to 11/24/2020

| Letter On | Letter From | Letter Template | Recipient/Relation | Communication |
|---|---|---|---|---|
| 8/31/2020 | KENT, JEFFREY | AMB GEN BLANK | Other | Sent |
| 2/24/2020 | GONZALEZ, KARLA | AMB HEALTH PROMOTION LETTER | Letter to Patient | Sent |
| 7/3/2018 | SERVICES, BUSINESS | PB MG CREDIT CARD REFUND FOR PRINTING | Refund Letter | Sent |
| 5/7/2018 | KAUFMANSCHER, JONATHAN | AMB LTR TO PROVIDER | Letter to Referring/PCP | Sent |

Printed by Smith, Brandi, MA at 11/24/20 10:24 AM                          Page 2 of 2

**Lincoln/Mason 0317**

Mason, Jan K (MRN 3925160) DOB:                                    Page 1 of 8



# Mason, Jan K

## Reason for Visit

Annual Exam                pt gets her paps with blue skies, july 2020 normal

## Progress Notes

Plan

Assessment and Plan:

| | | | |
|---|---|---|---|
| 1. | Annual physical exam | Z00.00 | CBC with Auto Differential<br>Comprehensive Metabolic Panel<br>Hemoglobin A1c<br>Lipid Panel<br>TSH Ultrasensitive<br>Erythrocyte Sedimentation Rate<br>C-Reactive Protein<br>ANA Reflex Profile<br>RPR |

routine anticipatory guidance; fasting labs; pt needs paperwork completed.

| | | | |
|---|---|---|---|
| 2. | Paresthesia of bilateral legs | R20.2 | Vitamin B12<br>Rapid Plasma Reagin Antibody<br>Erythrocyte Sedimentation Rate<br>C-Reactive Protein<br>ANA Reflex Profile<br>RPR |

supportive care.  rec proceeding with L si joint fixation as trial worked so well.

| | | | |
|---|---|---|---|
| 3. | Chronic low back pain with sciatica, sciatica laterality unspecified, unspecified back pain laterality | M54.40 | Vitamin B12 |
| | | G89.29 | Rapid Plasma Reagin Antibody<br>Erythrocyte Sedimentation Rate<br>C-Reactive Protein<br>ANA Reflex Profile<br>RPR |

cont supportive care; check labs.  cont with specialists.

Mason, Jan K (MRN 3925160) Printed by [84810] at 11/24/20 10:24 AM

Lincoln/Mason 0318

Mason, Jan K (MRN 3925160) DOB:                                                     Page 2 of 8

| 4. | Essential hypertension | I10 | Erythrocyte Sedimentation Rate C-Reactive Protein ANA Reflex Profile RPR |
|---|---|---|---|
| | cont losartan; metoprolol | | |
| 5. | Inflammation of sacroiliac joint (HC code) | M46.1 | Erythrocyte Sedimentation Rate C-Reactive Protein ANA Reflex Profile RPR |
| | proceed with eval | | |
| 6 | Femoroacetabular impingement of both hips | M25.851 M25.852 | Erythrocyte Sedimentation Rate C-Reactive Protein ANA Reflex Profile RPR |
| | cont with dr huang | | |
| 7 | Tear of left acetabular labrum, subsequent encounter | S73.192D | Erythrocyte Sedimentation Rate C-Reactive Protein ANA Reflex Profile RPR |

as above
No medications were added in this encounter.

Subjective

**Subjective:**

Chief Complaint
Patient presents with
• Annual Exam
   pt gets her paps with blue skies  july 2020 normal

**History of Present Illness:**

Jan K Mason is a 48 y.o. female here for her routine health maintenance exam.  Specific medical issues she wishes to also address today are listed here:

Pt is here for cpe

Pt with ongoing low back/hip leg pain with si joint pain

Buzzing paresthesias.; neuralgia

emg studies---unremarkable

Pt had a block placed in her L si joint and pt did very well for couple of hours.  Able to walk around without difficulty.  The r si joint did not hurt during this trial.

Mason, Jan K (MRN 3925160) Printed by [84810] at 11/24/20 10:24 AM

**Lincoln/Mason 0319**

Mason, Jan K (MRN 3925160) DOB:                                    Page 3 of 8

| PHQ-9 DEPRESSION SCALE | 10/14/2020 | 6/27/2019 | 2/2/2018 |
|---|---|---|---|
| Little interest or pleasure | 0 - Not at all | 0 - Not at all | 0 - Not at all |
| Feeling down/depressed/hopeless | 0 - Not at all | 0 - Not at all | 0 - Not at all |

No flowsheet data found.
PHQ9 Score Scale
0-9    no or mild depression
10-14  moderate depression
15-19  moderately severe depression
20-27  severe depression

Pending Health Maintenance

| | Last Due | Completion Date |
|---|---|---|
| Mammography | 02/14/2021 (Originally 1/22/2020) | 1/22/2019 |
| **Override on 5/27/2016:** Done | | |
| Diabetes Screening | 10/14/2023 | 10/14/2020 |
| PAP | 07/01/2025 | 7/1/2020 (Done) |
| **Override on 7/1/2020:** Done (blue skies) | | |
| Lipids | 10/14/2025 | 10/14/2020 |
| **Override on 4/26/2016:** Done (Abnormal) | | |
| Tdap/Td (2 – Td) | 04/26/2026 | 4/26/2016 |
| Colon Cancer Screening | 06/10/2026 | 6/10/2016 (Done) |
| **Override on 6/10/2016:** Done (Normal) | | |

NOTE ALL HISTORIES COMPLETELY REVIEWED AND UPDATED TODAY
Past Medical History:
Diagnosis                                                         Date
   • Anxiety
   • Arthritis
   • Cervicalgia
   • Hayfever
   • Headache
   • Hypertension
   • Lumbago

Past Surgical History
Procedure                                                    Laterality    Date
   • HIP SURGERY                                          Right
   • HIP SURGERY                                          Right
   • rhinoplasty
   • SI joint fusion

Mason, Jan K (MRN 3925160) Printed by [84810] at 11/24/20 10:24 AM

**Lincoln/Mason 0320**

Mason, Jan K (MRN 3925160) DOB:                                                    Page 4 of 8

- TUBAL LIGATION

Family History
Problem                              J Person
- No Known Problems          Mother
- No Known Problems          Father
- Diabetes                            Paternal Grandfather
- No Known Problems          Brother
- Alcohol abuse                   Neg Hx
- Depression                       Neg Hx

No Known Allergies

- Not on file

**CURRENT MEDICATIONS:**
Medication                                              Sig
- ALPRAZolam (XANAX) 0.5 mg          1-2 1 hour before procedure
  tablet
- cyclobenzaprine (FLEXERIL) 10         Take 1 tablet by mouth 2 times daily as needed for
  mg tablet                                           Muscle spasms.
- fluCONazole (DIFLUCAN) 150 mg       1 by mouth now then 2nd pill in 3 day.
  tablet
- LORATADINE (CLARITIN PO)
- losartan (COZAAR) 100 mg tablet      Take 1 tablet by mouth daily.
- metoprolol succinate (TOPROL-        Take 1 tablet by mouth daily.
  XL) 100 mg 24 hr tablet
- norethindrone-e estrad-iron            Take 1 tablet by mouth daily.
  (MICROGESTIN FE 1/20, 28,) 1
  mg-20 mcg (21)/75 mg (7) per
  tablet
- zolpidem (AMBIEN) 10 mg tablet       Take 1 tablet by mouth nightly at bedtime for Sleep-
                                                         Onset Insomnia.
- omega-3 acid ethyl esters, fish oil,    Take 1 capsule by mouth 2 times daily.
  (LOVAZA) 1 gram capsule

No current facility-administered medications for this visit.

**ALLERGIES:** Patient has no known allergies.
I have reviewed, verified and personally updated the past medical, surgical, birth, family, social  and ROS
history.
Review of Systems
Constitutional: Negative for fatigue, fever and unexpected weight change.
HENT: Negative for ear pain, hearing loss, rhinorrhea and tinnitus.
Eyes: Negative for discharge and visual disturbance.
Respiratory: Negative for cough and shortness of breath.
Cardiovascular: Negative for chest pain and palpitations.

Mason, Jan K (MRN 3925160) Printed by [84810] at 11/24/20 10:24 AM

**Lincoln/Mason 0321**

Mason, Jan K (MRN 3925160) DOB:                                    Page 5 of 8

Gastrointestinal: Negative for abdominal pain, blood in stool, constipation, diarrhea, nausea and vomiting.
Genitourinary: Negative for dysuria and hematuria.
Musculoskeletal: Positive for arthralgias, back pain, gait problem and myalgias.
Skin: Negative for rash.
Neurological: Negative for dizziness, syncope and headaches.
Hematological: Negative for adenopathy. Does not bruise/bleed easily.
Psychiatric/Behavioral: Negative for confusion, dysphoric mood and sleep disturbance. The patient is not nervous/anxious

Objective

**Objective:**
Vital Signs:
**Visit Vitals**
BP            145/85
Pulse         66
Temp          36.6 °C (97.8 °F) (Tympanic)
Ht            1.727 m (5' 8")
Wt            88.9 kg (196 lb)
SpO2          96%
BMI           29.80 kg/m²

**Physical Exam**
Constitutional:
   Appearance: Normal appearance. She is well-developed.
HENT:
   Head: Normocephalic and atraumatic.
   Right Ear: External ear normal.
   Left Ear: External ear normal.
   Nose: Nose normal.
Eyes:
   Conjunctiva/sclera: Conjunctivae normal.
   Pupils: Pupils are equal, round, and reactive to light.
Neck:
   Musculoskeletal: Normal range of motion and neck supple.
Cardiovascular:
   Rate and Rhythm: Normal rate and regular rhythm.
   Heart sounds: Normal heart sounds.
Pulmonary:
   Effort: Pulmonary effort is normal.
   Breath sounds: Normal breath sounds.
Abdominal:
   General: Abdomen is flat. Bowel sounds are normal.
   Palpations: Abdomen is soft.
Musculoskeletal: Normal range of motion
   General: Tenderness present.

Skin:
   General: Skin is warm and dry.
Neurological:
   General: No focal deficit present.
   Mental Status: She is alert and oriented to person, place, and time.
   Deep Tendon Reflexes: Reflexes are normal and symmetric.
Psychiatric:
   Mood and Affect: Mood normal.

Mason, Jan K (MRN 3925160) Printed by [84810] at 11/24/20 10:24 AM

**Lincoln/Mason 0322**

Mason, Jan K (MRN 3925160) DOB:                                                    Page 6 of 8

Behavior: Behavior normal.
Thought Content: Thought content normal.
Judgment: Judgment normal.

DATA:

| | | |
|---|---|---|
| White Blood Cell Count | 4.7 | 10/14/2020 |
| Hemoglobin | 14.3 | 10/14/2020 |
| Hematocrit | 41.5 | 10/14/2020 |
| Platelet Count | 268 | 10/14/2020 |

| | | |
|---|---|---|
| Sodium Serum/Plasma | 138 | 10/14/2020 |
| Potassium Serum/Plasma | 4.3 | 10/14/2020 |
| Chloride Serum/Plasma | 103 | 10/14/2020 |
| Blood Urea Nitrogen | 15 | 10/14/2020 |
| Creatinine Serum/Plasma | 0.76 | 10/14/2020 |
| Glucose Random Serum/Plasma | 94 | 10/14/2020 |
| Calcium, Serum/Plasma | 9.7 | 10/14/2020 |
| Aspartate Aminotransferase | 41 (H) | 10/14/2020 |
| Protein Total Serum/Plasma | 7.5 | 10/14/2020 |

| | | |
|---|---|---|
| Bilirubin Total | 0.6 | 10/14/2020 |
| Carbon Dioxide | 23 | 10/14/2020 |
| ALANINE AMINOTRANSFERASE | 41 (H) | 10/14/2020 |
| ALBUMIN | 4.5 | 10/14/2020 |

| | | |
|---|---|---|
| Cholesterol | 209 (H) | 10/14/2020 |
| Triglycerides | 177 (H) | 10/14/2020 |
| LDL | 107 (H) | 10/14/2020 |

| | | |
|---|---|---|
| TSH | 2.120 | 10/14/2020 |

We recommend annual mammograms and pap smears every 3 years(unless specified otherwise). A colonoscopy is based on personal and family history but generally is every 5-10 years after age 50. Please ask your PCP or GI doctor for your individual schedule.

We recommend low fat diet or Mediterranean diet and 150 minutes/week of aerobic exercise. We recommend using sunscreen and wearing sun protective clothing.
TIME/COMMUNICATION:
N/A
Jeffrey Kent, MD

## Result QuickNote

Mason, Jan K (MRN 3925160) Printed by [84810] at 11/24/20 10:24 AM

**Lincoln/Mason 0323**

Mason, Jan K (MRN 3925160) DOB:                                    Page 7 of 8

ANA is negative. C-reactive protein is normal. Sed rate is normal. B12 is low normal at 332. Recommend 1 cc IM monthly. Patient may also take B12 oral supplements. TSH is normal. Lipid profile is very high with a cholesterol 250, triglycerides 479, LDL 127. Recommend trial of low-fat diet. Recommend starting Lovaza 1 g 2 p.o. twice daily #360. Recheck lipid profile in 2 months. A1c is normal at 5.6. CMP is normal. CBC is normal. RPR is negative..jk

## Instructions

After Visit Summary (Automatic SnapShot taken 10/17/2020)

## Medications Reviewed As Of This Encounter

Reviewed by Kent, Jeffrey R, MD (Physician) on 10/17/20 at 1357

## Additional Documentation

145/85    66    36.6 °C (97.8 °F) (Tympanic)    1.727 m (5' 8")
88.9 kg (196 lb)    96%    29.80 kg/m²    2.07 m²    More Vitals

PDMP NARxCHECK Scores, HT/WT & Screenings, Anthropometrics, Screening Data Vitals & Pain, RT Asmt/Tx

AMB TELEHEALTH VIDEO VISIT ASSESSMENT

Billing Info, History, Allergies, Detailed Report, All Encounter Vitals

## Chart Review Routing History

No routing history on file.

## All Charges for This Encounter

| Code | Description | Service Date | Servicing Provider | Modifiers | Qty |
|------|-------------|--------------|--------------------|-----------|-----|
| 99396 | PR PREVENTIVE VISIT,EST,40-64 | 10/14/2020 | Kent, Jeffrey R, MD | | 1 |
| 99214 | 99214 PR OFFICE/OUTPT VISIT,EST,LEVL IV | 10/14/2020 | Kent, Jeffrey R, MD | 25, CNP | 1 |

## Orders Placed

Labs
**Comprehensive Metabolic Panel** (Resulted 10/14/2020 Urgent Abnormal)
**Lipid Panel** (Resulted 10/14/2020 Abnormal)
**ANA Reflex Profile** (Resulted 10/15/2020)
**C-Reactive Protein** (Resulted 10/14/2020)
**CBC with Auto Differential** (Resulted 10/14/2020)
**Erythrocyte Sedimentation Rate** (Resulted 10/14/2020)
**Hemoglobin A1c** (Resulted 10/14/2020)
**RPR** (Resulted 10/19/2020)
**TSH Ultrasensitive** (Resulted 10/14/2020)
**Vitamin B12** (Resulted 10/14/2020)
**Rapid Plasma Reagin Antibody**

## Medication Changes

Mason, Jan K (MRN 3925160) Printed by [84810] at 11/24/20 10:24 AM

**Lincoln/Mason 0324**

Mason, Jan K (MRN 3925160) DOB:                                      Page 8 of 8

As of 10/17/2020 1:57 PM

None

## Instructions

After Visit Summary (Automatic SnapShot taken 10/17/2020)

## Visit Diagnoses

Annual physical exam Z00.00   routine anticipatory guidance fasting labs; pt needs paperwork completed.
Paresthesia of bilateral legs R20.2   supportive care   rec proceeding with L si joint fixation as trial worked so well
Chronic low back pain with sciatica, sciatica laterality unspecified, unspecified back pain laterality M54.40, G89.29   cont supportive care; check labs.   cont with specialists.
Essential hypertension I10   cont losartan, metoprolol
Inflammation of sacroiliac joint (HC code) M46.1   proceed with eval
Femoroacetabular impingement of both hips M25.851, M25.852   cont with di huang
Tear of left acetabular labrum, subsequent encounter S73.192D   as above

Mason, Jan K (MRN 3925160) Printed by [84810] at 11/24/20 10:24 AM

**Lincoln/Mason 0325**

Mason, Jan K (MRN 3925160) DOB:                                    Page 1 of 5



# Mason, Jan K

## Reason for Visit

Follow-up          back pain, SI joint, getting spinal stimulator placed, feeling worse.
Paperwork          needs letter to be written for long term medical leave.

## Progress Notes

Plan

Assessment and Plan:

ICD-10-CM

| # | | ICD-10-CM | |
|---|---|---|---|
| 1. | Sacroiliac joint pain | M53.3 | AMB REF TO ORTHOPEDIC SURGERY - Spine Center (Memorial Hospital North) |

Patient to continue lab work-up by her pain management team.  Proceed with the spinal cord stimulator.  Proceed with second opinion

| 2. | Osteoarthritis of spine with radiculopathy, lumbar region | M47.26 | AMB REF TO ORTHOPEDIC SURGERY - Spine Center (Memorial Hospital North) |

Paperwork for charter communications to be completed.

Medications Placed This Encounter
Medications
• fluCONazole (DIFLUCAN) 150 mg tablet

## Subjective

Subjective:

Patient presents with ongoing back pain and hip pain.

Patient has been seen Dr. Sung.  Patient does likely need to get a second opinion with her insurance Kaiser

Mention Dr. Botolin locally or a Kaiser specialist up in Denver

Mason, Jan K (MRN 3925160) Printed by [84810] at 11/24/20 10:25 AM

Lincoln/Mason 0326

Mason, Jan K (MRN 3925160) DOB:                                    Page 2 of 5

Patient has been on long-term disability. She has chronic low back pain and hip pain. Patient has had some labral tear surgery by Dr. Huang

Patient is currently being evaluated for spinal cord stimulator.

Patient with a history of some SI joint fusion

Patient is needing some letter written for work. This needs a state that she is not able to return to work at this time. Patient states that her surgeons do not do such paperwork.

HPI

## CURRENT MEDICATIONS:

Current Outpatient Medications

| Medication | |
|---|---|
| • ALPRAZolam (XANAX) 0.5 mg tablet | 1-2 1 hour before procedure |
| • cyclobenzaprine (FLEXERIL) 10 mg tablet | Take 1 tablet by mouth 2 times daily as needed for Muscle spasms. |
| • fluCONazole (DIFLUCAN) 150 mg tablet | 1 by mouth now then 2nd pill in 3 day. |
| • LORATADINE (CLARITIN PO) | |
| • losartan (COZAAR) 100 mg tablet | Take 1 tablet by mouth daily. |
| • metoprolol succinate (TOPROL-XL) 100 mg 24 hr tablet | Take 1 tablet by mouth daily. |
| • norethindrone-e estrad-iron (MICROGESTIN FE 1/20, 28,) 1 mg-20 mcg (21)/75 mg (7) per tablet | Take 1 tablet by mouth daily. |
| • zolpidem (AMBIEN) 10 mg tablet | Take 1 tablet by mouth nightly at bedtime for Sleep-Onset Insomnia. |

No current facility-administered medications for this visit.

**ALLERGIES:** Patient has no known allergies.

I have reviewed, verified and personally updated the past medical, social and ROS history. reports that she has never smoked. She has never used smokeless tobacco. She reports previous alcohol use. She reports that she does not use drugs.
Review of Systems

Objective

**Objective:**
Vital Signs:
**Visit Vitals**
BP                  120/86
Pulse               88
Ht                  1.727 m (5' 8")
Wt                  89.8 kg (198 lb)
SpO2                97%
BMI                 30.11 kg/m²

Mason, Jan K (MRN 3925160) Printed by [84810] at 11/24/20 10:25 AM

**Lincoln/Mason 0327**

Mason, Jan K (MRN 3925160) DOB:                                          Page 3 of 5

Physical Exam

Procedures

**DATA:**
Results for orders placed or performed in visit on 10/07/19
POCT URINALYSIS AUTOMATED READER CPT 81003 MANUAL RESULT ENTRY
Result                                          Value                   Ref Range

| | | |
|---|---|---|
| Color Urine | yellow | |
| Appearance Urine | Clear | Clear - Clear |
| Glucose Urine POC | Negative | Negative - Negative |
| Bilirubin Urine POC | Negative | negative - negative |
| Ketones Urine POC | Negative | Negative |
| Specific Gravity Urine POC | 1.020 | 1.001 – 1.03 |
| Blood Urine POC | Negative | Negative - Negative |
| pH Urine POC | 5.0 | 4.6 - 8.0 |
| Protein Urine POC | Negative | Negative - Negative mg/dL |
| Urobilinogen Urine POC | 0.2 | 0.2 - 1.0 E.U./dl |
| Nitrite Urine POC | Negative | Negative - Negative |
| Leukocyte Esterase Urine POC | Negative | Negative |

**TIME/COUNSELING:**
N/A
Return to clinic if condition does not improve or worsens
Jeffrey Kent, MD

Consults                                                    Internal Physician (Physician)

1. AMB REF TO ORTHOPEDIC SURGERY - Spine Center (Memorial Hospital North) [565066887] ordered by
Kent, Jeffrey R, MD at 08/19/20 1402
Document on 9/1/2020 2:00 PM by Roybal, Kristen, CSOG

Consults                                                    Internal Physician (Physician)

1. AMB REF TO ORTHOPEDIC SURGERY - Spine Center (Memorial Hospital North) [565066887] ordered by
Kent, Jeffrey R, MD at 08/19/20 1402
Document on 8/19/2020 2:35 PM by Roybal, Kristen, FYZICAL

Consults                                                    Internal Physician (Physician)

1. AMB REF TO ORTHOPEDIC SURGERY - Spine Center (Memorial Hospital North) [565066887] ordered by
Kent, Jeffrey R, MD at 08/19/20 1402
Document on 9/3/2020 10:37 AM by Roybal, Kristen, CSOG

Consults                                                    Internal Physician (Physician)

Mason, Jan K (MRN 3925160) Printed by [84810] at 11/24/20 10:25 AM

**Lincoln/Mason 0328**

Mason, Jan K (MRN 3925160) DOB:                                                    Page 4 of 5

1. AMB REF TO ORTHOPEDIC SURGERY – Spine Center (Memorial Hospital North) [565066887] ordered by
Kent, Jeffrey R, MD at 08/19/20 1402
Document on 9/3/2020 9:50 AM by Roybal, Kristen, CSOG

## Instructions

After Visit Summary (Automatic SnapShot taken 8/21/20/0)

## Medications Ordered This Encounter

| | Disp. | Refills | Start | End |
|---|---|---|---|---|
| fluCONazole (DIFLUCAN) 150 mg tablet (Discontinued) | 2 tablet | 0 | 8/19/2020 | 10/22/2020 |

1 by mouth now then 2nd pill in 3 day.
Reason for Discontinue: **Therapy completed**

## Medications Reviewed As Of This Encounter

Reviewed by Zimic, Meliha, MA (Medical Assistant) on 08/19/20 at 1321

## Additional Documentation

| Vitals | BP 120/86 Pulse 88 HT 1.727 m (5' 8") WT 89.8 kg (198 lb) SpO2 97% BMI 30.11 kg/m² BSA 2.08 m²  More Vitals |
|---|---|
| Diagnoses | HT/WT & Screenings, Anthropometrics, Vitals & Pain, RT Asmt/Tx, PDMP NARxCHECK Scores |
| Encounter Info | Billing Info, History, Allergies, Detailed Report, All Encounter Vitals |

## Communications

Summary of care document sent to Sergiu Botolin, MD
Sent 8/21/2020

## Chart Review Routing History

No routing history on file.

## All Charges for This Encounter

| Code | Procedure | Service Date | Service Provider | Modifiers | Qty |
|---|---|---|---|---|---|
| 99214 | 99214 PR OFFICE/OUTPT VISIT,EST,LEVL IV | 8/19/2020 | Kent, Jeffrey R, MD | | 1 |

Billing Provider: Kent, Jeffrey R, MD

## Orders Placed

AMB REF TO ORTHOPEDIC SURGERY – Spine Center (Memorial Hospital North) [Routed/Completed]

## Medication Changes

Mason, Jan K (MRN 3925160) Printed by [84810] at 11/24/20 10:25 AM

**Lincoln/Mason 0329**

Mason, Jan K (MRN 3925160) DOB:                                           Page 5 of 5

|  | Refills | Start Date | End Date |
|---|---|---|---|
| cyclobenzaprine HCl | | | |
| Discontinued or Completed: cyclobenzaprine (FLEXERIL) 10 mg tablet (Therapy completed) | | | |
| Patient reported medication | | | |
| Unchanged: cyclobenzaprine (FLEXERIL) 10 mg tablet | 1 | 7/1/2020 | 10/22/2020 |

Take 1 tablet by mouth 2 times daily as needed for Muscle spasms. – Oral

## Instructions

After Visit Summary (Automatic SnapShot taken 8/21/2020)

## Visit Diagnoses

Sacroiliac joint pain M53.3    Patient to continue full work up by the pain management team.  Proceed with the spinal cord stimulator.  Proceed with second opinion.
Osteoarthritis of spine with radiculopathy, lumbar region M47.26.  Paperwork for disability communication to be completed.

Mason, Jan K (MRN 3925160) Printed by [84810] at 11/24/20 10:25 AM

**Lincoln/Mason 0330**

**From:**CSBBVP2PACM01@uchealth.org
**Sent:**Tue, 24 Nov 2020 16:25:20 -0700
**To:**DisabilityDocuments
**Subject:**Attached Image
**Attachments:**2036_001.pdf

**Lincoln/Mason 0331**



UCHealth Aspen Creek Medical Center
9480 Briar Village Point STE 200
COLORADO SPRINGS CO 80920
O: 719-278-3627
F: 719-623-2101

uchealth.org

August 31, 2020
Lincoln financial group
Group benefits disability claims
PO Box 7213
London, KY 40742–7213
Fax 6034301926

Re:          **Jan K Mason** (DOB:

To Whom It May Concern:

I am the primary care physician for Ms. Jan Mason. This kind but unfortunate woman has had numerous injuries and chronic low back pain. Patient has a low back pain related to multiple injuries and the surgery. She has had a history of a fall on her tailbone with subsequent SI joint fusion on her R side. She unfortunately had a motor vehicle accident 2 weeks after her SI fusion surgery. This is set her back as significantly. She has gone on to 2 hip surgeries to repair labral tear of the right hip.

All the above injuries and problems have led to continued to difficulties throughout this entire year with her daily tasks. He has ongoing difficulties with mobility with chronic pain. He is being considered for spinal cord stimulator. She has been on numerous other medications but this has been minimized. She continues to have difficulties.

Ms. Mason has had ongoing debility with severe disability out this entire year. He has been unable to work in 2020 and I do not anticipate return to work prior to the end of this year. She needs to remain on long-term disability.

Recent imaging has shown central disc herniations at L1-L2 with spinal stenosis as well as broad central disc herniation at L2-L3 causing moderate spinal stenosis and right neural foraminal disc herniation at L3-L4 and a central disc herniation at L5-S1 with annular tearing and impingement on the thecal sac. These findings are in addition to chronic SI joint pain bilateral hip pain and chronic lower back pain. Please continue her long-term disability benefits throughout this year with reassessment at the end of the year.

If you have any questions or concerns, please don't hesitate to call.

Sincerely,

Electronically signed by:
Jeffrey Kent, MD
Dept: 719-278-3627
8/31/2020, 12:35 AM

| Jan K Mason | DOB: 5/6/1972 | 1 of 1 |

Lincoln/Mason 0332

**From:**Jana M <
**Sent:**Mon, 23 Nov 2020 16:09:12 -0700
**To:**DisabilityDocuments
**Subject:**Claim 9291624. ATTN: Mary Avrett
**Attachments:**Screenshot_2020-11-23-15-54-12(2).png

***This email is from an external source. Only open links and attachments from a Trusted Sender.***

**Lincoln/Mason 0333**

| | |
|---|---|
| From: | LFGNotifications@LFG.com |
| Sent: | Thursday, November 19, 2020 3:12:16 PM |
| To: | |
| CC: | |
| BCC: | |
| Subject: | [Send Secure]Charter Communications, Inc. Claim No. 9291624 Jan Mason |
| Attachments: | d4saorwla3phw3rlvjyh_9431626.pdf; |

This notification contains important information regarding a claim with Lincoln Financial Group company. THIS IS AN AUTOMATED EMAIL. PLEASE DO NOT RESPOND. You may use the contact information in the attached letter to respond if needed.

**Lincoln/Mason 0334**



Lincoln Life Assurance Company of Boston
Disability and Life Claims
PO Box 2578
Omaha, NE 68172-9688
Phone No.: (888) 437-7611
Secure Fax No.: (603) 430-1926

November 19, 2020

Ms. Jan K. Mason

RE:    Long Term Disability (LTD) Benefits
       Charter Communications, Inc.
       Claim #: 9291624

Dear Ms. Jan Mason:

Lincoln Life Assurance Company of Boston (Lincoln) is responsible for managing claims for Long Term Disability (LTD) benefits under Charter Communications, Inc.' Group Disability Policy. We are writing regarding your claim for LTD benefits.

Pursuant to our telephone conversation today, November 19, 2020, we agreed to an extension of 2 weeks to December 4, 2020 for you to provide a response to our letter of September 25, 2020.

If you have any questions regarding this matter, please contact me.

Sincerely,

Mary Avrett
Appeals Consultant
Phone No.: (888) 437-7611 Ext. 16371
Secure Fax No.: (603) 430-1926

1 of 1

**Lincoln/Mason 0335**

**From:**Jana M <
**Sent:**Mon, 16 Nov 2020 10:00:45 -0700
**To:**DisabilityDocuments
**Subject:**Attn: Mary Avrett for Jan Mason 9291624

***This email is from an external source. Only open links and attachments from a Trusted Sender.***

My appt with Dr Tyler Bron is scheduled for Dec 4, 2020 at 1pm.  Thank you!

**Lincoln/Mason 0336**



**North Campus**
4110 Briargate Parkway, Suite 300
Colorado Springs, CO  80920
Phone: 719-632-7669
Fax:  719-632-0088

www.csog.net

**South Campus**
1259 Lake Plaza Drive, Suite 100
Colorado Springs, CO  80906
Phone: 719-632-7669
Fax:  719-632-0088

Patient Name:  Jan K Mason,
Patient Phone#:

Encounter Date:  11/10/2020

Date of Birth:
Patient Account#: 505296

---

## Chief Complaint Right hip pain.

## History of Present Illness

Jan Mason is a 48 year old female who presents today 11 months status post right hip labral reconstruction using allograft from 9:00 to 4:00 location, chondroplasty, debridement/shaving acetabulum, labral repair at 4:00 and 9:00 location, arthroscopic acetabuloplasty, arthroscopic femoroplasty, osteoplasty to remove cam lesion, synovectomy, capsular closure/plication performed on 12/09/2019. She presents today with continued worsening pain. She states she now has recurrent groin pain. She is now experiencing giving way episodes and increased pain with walking. She states that her pain is constant and she is unable to sleep. She continues to report more significant pain over bilateral SI joints and lumbar spine. She is also under the care of Dr. Sung and has previously undergone right sacroiliac joint fusion in 2017. She has undergone EMG since her previous visit which came back with normal results. She has also recently undergone a diagnostic injection into the left SI joint which gave her 2 hours of complete relief in that location. She has continue with physical therapy but unfortunately this has not improved her symptoms. She continues to have bilateral lower extremity symptoms including pain, numbness and tingling radiating down to both feet. Her pain is rated at 8–9/10. She has been using rest, activity modification, physical therapy without benefit. She tried anti-inflammatories and even Celebrex without benefit and this caused significant gastrointestinal irritation. She continues to use crutches for weightbearing assistance. She denies nausea, vomiting, fever, chills, short of breath, chest pain or abdominal pain.

**Date of Onset:** December, 2017

## Medical History

**Medical Conditions:** Hypertension

**Surgical History:** Tubal ligation, Rhinoplasty

**Current Medications:** Claritin 10 mg tablet 1 oral, Ambien 5 mg tablet 1 oral, metoprolol succinate ER 50 mg tablet,extended release 24 hr 1 Tb24 oral, losartan 50 mg tablet 1 oral, Junel FE 1/20 (28) 1 mg-20 mcg tablet oral, cyclobenzaprine 10 mg tablet 1 by mouth Q8h spasms

**Medication and Allergic Reactions:** No known allergies

**Family History:** No significant family history.

## Personal and Social History:

The patient does not smoke or use tobacco products. The patient does not use marijuana, CBD products, or Illicit drugs. The patient currently does not consume alcohol. She is temporarily disabled.

## Review of Systems

**Constitutional:** The patient denies any unexplained weight loss, weight gain, fever, chills or fatigue.

---

**ELECTRONICALLY SIGNED BY Kristen E. Reiss, PA-C
11/11/2020**

**Lincoln/Mason 0337**

**Patient Name:** Mason, Jan K
**DOB:**

**Eyes:** The patient denies any corrective lenses, blurred or double vision, eye pain, redness or watery eyes.
**Ear/Nose/Throat:** The patient denies any headaches, difficulty swallowing, nose bleeds, ringing in ears or earaches.
**Cardiovascular:** The patient denies any chest pain, palpitations, fainting or murmurs.
**Respiratory:** The patient denies any shortness of breath, wheezing, chronic coughing, tightness, inspiration pain or snoring.
**Gastrointestinal:** The patient denies any heartburn, nausea, vomiting, constipation, diarrhea, or bloody/tarry stools
**Genitourinary:** The patient denies any difficult or painful urination, frequent urination or blood in urine.
**Musculoskeletal:** Admits joint pain and instability.
**Skin:** The patient denies skin changes, poor healing, rash, itching or redness.
**Neurological:** The patient denies numbness, tingling, unsteady gait, dizziness, tremors or seizures.
**Psychiatric:** The patient denies nervousness, anxiety, depression or hallucinations.
**Hematological:** The patient denies bleeding or bruising easily.
**Endocrine:** The patient denies excessive thirst, excessive urination or intolerance to heat and cold.

**Vital Signs:** Height: 5ft 8.00in, Weight: 188lbs

## General Exam:
**Constitutional:** Patient is adequately groomed with no evidence of malnutrition.
**Skin:** There are no rashes, ulcerations or lesions in the regions examined.
**Mental Status:** The patient is oriented to time, place and person. The patient's mood and affect are appropriate.
**Lymphatic:** The lymphatic examination bilaterally reveals all areas to be without enlargement or induration.
**Vascular:** Examination reveals no swelling or calf tenderness. Peripheral pulses are palpable and 2+.
**Neurological:** The patient has good coordination. There is no weakness or sensory deficit. Deep tendon reflexes are intact.

## Right Hip/Pelvis Examination
Patient is alert and oriented to time, place, medical situation. Normal mood and affect. Gait is antalgic as she utilizes a cane. No pelvic obliquity. Bilateral lower extremity alignment is neutral. Normal sensibility to moving light touch in the superficial and deep peroneal nerve distribution, tibial nerve distribution bilaterally. Able to fire EHL, FHL, tibialis anterior, gastroc-soleus, quadriceps and hamstrings without difficulty bilaterally. Dorsalis pedis pulse 2+ bilaterally.

Patient is alert and oriented to time, place, medical situation without evidence of distress. Surgical wounds are well healed without signs of infectiontributions. Gait is antalgic. The patient is able to fire EHL, tibialis anterior, gastrocsoleus, peroneals. Dorsalis pedis pulse, 2+. There is no calf swelling or tenderness. Homans sign is negative. No evidence of DVT. Hip flexion to 115°, external rotation to 45°, internal rotation to 5°. She really does not have any impingement testing signs at the hip with passive range of motion. Tenderness to palpation over the lateral hip and over the sacroiliac joint bilaterally and lumbar spine.

## Additional Exams:
**Left Lower Extremity:** Examination of the left lower extremity does not show any tenderness, deformity or injury. Range of motion is unremarkable. There is no gross instability. Strength and tone are normal.
**Previous Imaging Findings:** X-RAYS, BILATERAL HIP, CSOG, 6/4/19: X-rays ordered, performed, and interpreted previously and reviewed today include AP pelvis, bilateral Dunn views, false profile, and cross table lateral views of the

**ELECTRONICALLY SIGNED BY Kristen E. Reiss, PA-C**
**11/11/2020**

**Lincoln/Mason 0338**

**Patient Name:** Mason, Jan K
**DOB:**

---

BILATERAL hip. They show well-preserved femoroacetabular joint spacing. Tonnis Grade 0. No evidence of fracture or dislocation. No evidence of avascular necrosis or heterotopic ossification in the right hip. On the left hip, there is evidence of femoroacetabular impingement, cam type with alpha angle measuring 63 degrees.

MR ARTHROGRAM, LEFT HIP, 1/30/2020, PENRAD: Focal Cam deformity of the anterior left femoral head neck junction with associated anterior/anterosuperior labral base tear. Small right hip joint effusion.

MRI, LUMBAR SPINE, 7/31/2020: MRI available for review from an outside facility, upright MRI of Colorado dated July 31, 2020 demonstrates moderate spinal stenosis at L2-3, right-sided proximal neuroforaminal disc herniation with right neural foraminal stenosis at L3-4 and L5-S1 mild spinal stenosis due to central disc herniation.

## Assessment and Plan:
### Diagnosis Codes:
M24.151 Other articular cartilage disorders, right hip Right
M46.1 Sacroiliitis, not elsewhere classified Right
### Impression:
1. 11 months status post right hip labral reconstruction using allograft from 9:00 to 4:00 location, chondroplasty, debridement/shaving acetabulum, labral repair at 4:00 and 9:00 location, arthroscopic acetabuloplasty, arthroscopic femoroplasty, osteoplasty to remove cam lesion, synovectomy, capsular closure/plication this was performed on 12/09/2019.
2. Left hip pain - possible labral tear/FAI
3. Bilateral sacroiliitis with history of previous right SI joint fusion
4. Lumbar spine spondylosis

### Treatment Plan:
I discussed the findings of the clinical examination with the patient at today's visit, we did review her previous imaging results. Unfortunately, the patient continues to experience significant posterior buttock and lumbar spine pain despite significant treatment of her hip and her lumbar spine. The patient is now complaining of recurrent right groin pain and she states that she feels the pain is coming from her hip joint. We discussed various conservative options which would include continued rest, activity modification, anti-inflammatory medication, physical therapy, and possible further injection treatment. The patient feels that she has exhausted all of these conservative measures. Surgically, she could consider possible right hip arthroscopy with revision labral reconstruction, revision osteochondral plasty. She is aware that this procedure is less predictable as she has failed previous labral repair and labral reconstruction. We also discussed the possibility of total hip arthroplasty. The patient understands that these hip surgeries will not alleviate any pain that is originating from her lumbar spine or sacroiliac joints. She verbalizes understanding of this fact. The patient is requesting referral to Dr. Bron for further evaluation and discussion regarding possible total hip arthroplasty. She verbalizes agreement understanding with today's discussion, all questions were answered.
Patient was provided with patient education on NSAIDs.
Internal referral was ordered.
The patient is instructed to return if pain or symptoms arise.
The patient was screened for COVID risk factors. These included respiratory symptoms, recent travel, and exposure to sick contacts. All questions asked were negative. The patient was brought back to a room that had been disinfected with germicidal surface wipes. This includes the counters, exam tables, chairs and door handles.

### Clinical Quality Reporting:
A stretching regimen was recommended to the patient. A strength training regimen was recommended to the patient. The patient was encouraged to exercise.

---

**ELECTRONICALLY SIGNED BY Kristen E. Reiss, PA-C**
**11/11/2020**

**Lincoln/Mason 0339**

Electronically signed by: Kristen E. Reiss, PA-C
Date: 11/10/2020 Time:11:00 AM

CC: Copies sent along with cover letter sent to the patient's primary care physician. A copy of the office visit notes will be forwarded to the patient's referring physician.

Lincoln/Mason 0340

**From:**Jana M <
**Sent:**Thu, 12 Nov 2020 13:50:00 -0700
**To:**DisabilityDocuments
**Subject:**Right Hip F_U Exam.pdf
**Attachments:**Right Hip F_U Exam.pdf

***This email is from an external source. Only open links and attachments from a Trusted Sender.***

Attn:  Mary Avrett
Claim # 9291624

**Lincoln/Mason 0341**

| | |
|---|---|
| From: | LFGNotifications@LFG.com |
| Sent: | Wednesday, October 21, 2020 10:54:18 AM |
| To: | |
| CC: | |
| BCC: | |
| Subject: | [Send Secure]Charter Communications, Inc. Claim No. 9291624 Jan Mason |
| Attachments: | m6puts505nzssgso1ofb_9251792.pdf; |

This notification contains important information regarding a claim with Lincoln Financial Group company. THIS IS AN AUTOMATED EMAIL. PLEASE DO NOT RESPOND. You may use the contact information in the attached letter to respond if needed.

**Lincoln/Mason 0342**



Lincoln Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7213
London, KY 40742-7213
Phone No.: (888) 437-7611
Secure Fax No.: (603) 430-1926

October 21, 2020

Ms. Jan K. Mason

RE:    Long Term Disability (LTD) Benefits
       Charter Communications, Inc.
       Claim #: 9291624

Dear Ms. Jan Mason:

Lincoln Life Assurance Company of Boston (Lincoln) is responsible for managing claims for Long Term Disability (LTD) benefits under Charter Communications, Inc.'s Group Disability Policy. We are writing regarding your claim for LTD benefits.

In a letter dated September 25, 2020, we provided you with a copy of the medical review performed in connection with your appeal.  You were given 21 days from the date of the letter or to October 16, 2020 to provide a response to us which you would like considered in making a decision on your appeal.

Pursuant to our telephone conversation today, October 21, 2020, you requested an additional 30 days to provide your response.  If we do not hear from you and do not receive additional information by November 20, 2020, we will proceed with our appeal review and make a final determination based on the information currently contained in your file.

Since we are waiting for you to submit additional documentation, the days from the date of this letter until we receive your submission are not counted as part of the appeal determination period.

If you have any questions regarding this matter, please contact me.

Sincerely,

Mary Avrett
Appeals Consultant
Phone No.: (888) 437-7611 Ext. 16371
Secure Fax No.: (603) 430-1926

1  of  1

**Lincoln/Mason 0343**

**From:** Jana M <
**Sent:** Wed, 21 Oct 2020 12:25:58 -0600
**To:** DisabilityDocuments
**Subject:** Fwd: Claim #9291624. Attn: Mary Avrett

***This email is from an external source. Only open links and attachments from a Trusted Sender.***

---------- Forwarded message ---------
From: **Jana M** <
Date: Wed, Oct 21, 2020, 12:20 PM
Subject:
To: <gaylekpieper@gmail.com>

Clinical Notes
Christopher M Kudron, MD at 10/20/2020  4:22 PM
Status: Signed
Telephone Visit
I spent at least 21 minutes on the telephone with the patient.
This visit occurred during COVID-19.

Reason for visit:  Follow-up after electrodiagnostic testing

Interval History:  The patient was seen in spine clinic on 9/4/20 for chronic low back and leg pain.  She has had extensive symptoms over years ultimately resulting in right-sided sacroiliac joint fusion.  She underwent electrodiagnostic testing on 10/8/20.

Subjective:  She has no significant change in symptoms.  She was seen in the spine clinic on 9/4/24 a variety of symptoms over years.  She has had chronic low back and SI joint region pain ultimately resulting in a right sacroiliac joint fusion.  She had a motor vehicle accident in 2017 with worsened pain symptoms since that time.  She has pain and across the lumbar region, left and right posterior sacroiliac joint/pelvis, bilateral legs.  She feels much of her symptoms are rising from the hip joint.  She has had multiple right hip surgeries with persistent symptoms.  She has been working with a pain management physician in Colorado Springs.

She feels she has 3 separate areas of pain.  She has chronic, lumbar region pain.  This pain is aching and dull in nature.  She has bilateral posterior pelvis/sacroiliac joint pain.  She has a prior right SI joint fusion.  She has had injections at the sacroiliac joint on left and sacroiliac joint complex on right with benefit.  Finally, she has right hip and thigh pain.  She feels these symptoms arise from the hip joint itself and notes she has had multiple surgeries and is interested in additional surgery.  She denies any new or progressive weakness affecting lower limbs.  She feels overall her symptoms are worsening.  She feels more functionally limited than in the past.

Prior Treatment:

**Lincoln/Mason 0344**

Tried:  Chiropractic, physical therapy, massage
Prior injections:  Numerous procedures outside Kaiser
She reports benefit with left SIJ (articular) and right SIJ complex recently

Prior lumbar spine surgery: Right SIJ fusion 9/2017

Objective:
MRI lumbar spine 7/31/20:  The study was performed outside Kaiser with upright MRI.  These are non optimal images.  Overall mild multilevel degenerative changes.  L5-S1 annular tear.  Mild thecal sac narrowing L2-3.  No high-grade foraminal stenosis.
X-ray lumbar spine 6/4/20:  Reduced range of motion.  Mild retrolisthesis at L2-3 and L3-4 without instability.
MRI pelvis SI joints 9/12/18:  Sacrum intact with uncomplicated right sacroiliac fusion.

EMG/NCS lower limb: Normal study of right lower limb

Impression:
CHRONIC PAIN SYNDROME  (primary encounter diagnosis)
ESSENTIAL HTN
CHRONIC LOW BACK PAIN > 3 MONTHS
BILAT SACROILIAC JOINT PAIN
RIGHT HIP JOINT PAIN

She has several pain symptoms affecting the hip in spine.  She has chronic pain syndrome due to the unresponsive nature, duration, and impact of her pain symptoms.  She has chronic low back pain, bilateral sacroiliac joint pain, and right hip joint pain.  She is status post right sacroiliac joint fusion.

Hypertension:  She takes losartan.  Last blood pressure obtained 9/4/20 132/83.  She should follow up with her primary care doctor.

Plan:
1. We discussed her pain symptoms at length.  We reviewed the multiple potential sources of her pain symptoms including the sacroiliac joints, hip, and multifactorial chronic low back pain.
2. I reviewed prior diagnostic testing including lumbar spine MRI.  MRI does not demonstrate any nerve impingement, significant alignment abnormality, disc herniation, or other concerning finding.  She does not have advanced facet arthrosis.  We also reviewed her electrodiagnostic testing revealing a normal study of the right lower limb.
3. We discussed additional options.  She has a pain management physician she has worked with for a variety of diagnostic and therapeutic injections.  She will continue to work for further information and potential therapeutic value of injections.  She has had extensive procedures in the past without significant, prolonged benefit.  If she would like to pursue further interventional treatments with me, she may contact our office.
4. I would not recommend any surgical intervention for the lumbar spine.  If she has progressive radicular symptoms or new weakness, we can obtain a updated lumbar spine MRI.
5. I would advise she continue to work with orthopedic surgery regarding her hip concerns.  She

**Lincoln/Mason 0345**

has had multiple hip surgeries with persistent pain.
6. She could consider spinal cord stimulation given location, duration, intensity of pain symptoms.  She has considered this the past and will pursue if she does not have more significant improvement using other methods of treatment.

Follow up as needed

Chris Kudron, MD
Board Certified Physical Medicine and Rehabilitation and Pain Medicine
Department of Neurosurgery


Back

**Lincoln/Mason 0346**



# Colorado Springs
# Orthopaedic Group

# FAX

Date: 09/29/2020 07:17:31 AM

Subject: FEE SCHEDULE & W-9 LINCOLN FINANCIAL(SUN(

To: LINCOLN FINANCIAL

Organization: _____

Fax Number: 16034301926

Phone Number: _____

From: Lyles, Phyllis

Organization: Colorado Springs Orthopaedic (

Fax Number: _____

Phone Number: _____

Email: _____

Number of Pages: 2

Comments:

MARY AVRETT

FAX CONFIDENTIALITY STATEMENT

The information contained in this facsimile transmission is intended solely for the addressee(s) named above and is privileged and/or confidential. If the reader of this message is not the intended recipient or the person responsible to deliver it to the intended recipient, you are prohibited from reading or disclosing the information in this transmission. Any examination, use, dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone for instructions.

Sent by Multi-Tech Systems
FaxFinder

If you received this fax in error, or would like to opt-out, please call 719-632-7669 , fax 719-632-0088
or email info@csog.net

**Lincoln/Mason 0347**

| Form **W-9**<br>(Rev. October 2018)<br>Department of the Treasury<br>Internal Revenue Service | **Request for Taxpayer**<br>**Identification Number and Certification**<br>▶ Go to *www.irs.gov/FormW9* for instructions and the latest information. | **Give Form to the**<br>**requester. Do not**<br>**send to the IRS.** |

**1** Name (as shown on your income tax return). Name is required on this line; do not leave this line blank.

**Colorado Springs Orthopaedic Group**

**2** Business name/disregarded entity name, if different from above

**3** Check appropriate box for federal tax classification of the person whose name is entered on line 1. Check only one of the following seven boxes.

☐ Individual/sole proprietor or single-member LLC      ☐ C Corporation      ☐ S Corporation      ☑ Partnership      ☐ Trust/estate

☐ Limited liability company. Enter the tax classification (C=C corporation, S=S corporation, P=Partnership) ▶ _____

Note: Check the appropriate box in the line above for the tax classification of the single-member owner. Do not check LLC if the LLC is classified as a single-member LLC that is disregarded from the owner unless the owner of the LLC is another LLC that is not disregarded from the owner for U.S. federal tax purposes. Otherwise, a single-member LLC that is disregarded from the owner should check the appropriate box for the tax classification of its owner.

☐ Other (see instructions) ▶

**4** Exemptions (codes apply only to certain entities, not individuals; see instructions on page 3):

Exempt payee code (if any) _____

Exemption from FATCA reporting code (if any) _____

*(Applies to accounts maintained outside the U.S.)*

**5** Address (number, street, and apt. or suite no.) See instructions.

**4110 Briargate Parkway, Suite 300**

**6** City, state, and ZIP code

**Colorado Springs, CO 80920**

Requester's name and address (optional)

**7** List account number(s) here (optional)

### Part I    Taxpayer Identification Number (TIN)

Enter your TIN in the appropriate box. The TIN provided must match the name given on line 1 to avoid backup withholding. For individuals, this is generally your social security number (SSN). However, for a resident alien, sole proprietor, or disregarded entity, see the instructions for Part I, later. For other entities, it is your employer identification number (EIN). If you do not have a number, see *How to get a TIN*, later.

Note: If the account is in more than one name, see the instructions for line 1. Also see *What Name and Number To Give the Requester* for guidelines on whose number to enter.

Social security number

| | | | – | | | – | | | | |

or

Employer identification number

| 8 | 4 | – | 1 | 2 | 7 | 6 | 9 | 5 | 6 |

### Part II    Certification

Under penalties of perjury, I certify that:

1. The number shown on this form is my correct taxpayer identification number (or I am waiting for a number to be issued to me); and
2. I am not subject to backup withholding because: (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding; and
3. I am a U.S. citizen or other U.S. person (defined below); and
4. The FATCA code(s) entered on this form (if any) indicating that I am exempt from FATCA reporting is correct.

Certification instructions. You must cross out item 2 above if you have been notified by the IRS that you are currently subject to backup withholding because you have failed to report all interest and dividends on your tax return. For real estate transactions, item 2 does not apply. For mortgage interest paid, acquisition or abandonment of secured property, cancellation of debt, contributions to an individual retirement arrangement (IRA), and generally, payments other than interest and dividends, you are not required to sign the certification, but you must provide your correct TIN. See the instructions for Part II, later.

**Sign Here**    Signature of U.S. person ▶ _[signature]_    Date ▶ **9/28/2020**

## General Instructions

Section references are to the Internal Revenue Code unless otherwise noted.

**Future developments.** For the latest information about developments related to Form W-9 and its instructions, such as legislation enacted after they were published, go to *www.irs.gov/FormW9*.

## Purpose of Form

An individual or entity (Form W-9 requester) who is required to file an information return with the IRS must obtain your correct taxpayer identification number (TIN) which may be your social security number (SSN), individual taxpayer identification number (ITIN), adoption taxpayer identification number (ATIN), or employer identification number (EIN), to report on an information return the amount paid to you, or other amount reportable on an information return. Examples of information returns include, but are not limited to, the following.

• Form 1099-INT (interest earned or paid)

• Form 1099-DIV (dividends, including those from stocks or mutual funds)

• Form 1099-MISC (various types of income, prizes, awards, or gross proceeds)

• Form 1099-B (stock or mutual fund sales and certain other transactions by brokers)

• Form 1099-S (proceeds from real estate transactions)

• Form 1099-K (merchant card and third party network transactions)

• Form 1098 (home mortgage interest), 1098-E (student loan interest), 1098-T (tuition)

• Form 1099-C (canceled debt)

• Form 1099-A (acquisition or abandonment of secured property)

Use Form W-9 only if you are a U.S. person (including a resident alien), to provide your correct TIN.

*If you do not return Form W-9 to the requester with a TIN, you might be subject to backup withholding. See What is backup withholding, later.*

Cat. No. 10231X                    Form **W-9** (Rev. 10-2018)

Lincoln/Mason 0348

Lyles, Phyllis    CSOG7196320088                    (3/3) 09/29/2020 07:19:44 AM -0600



## Colorado Springs Orthopaedic Group

### CSOG TIN ~ 84-1276956

## FEE SCHEDULE FOR COLORADO SPRINGS ORTHOPAEDIC GROUP

**_Depositions:_** **Fee is $1,000/hour, 2-hour minimum, plus $1,000.00/hour review/prep., 1-hour minimum for Review/Prep of Records.** Partial hours will be charged in 30-minute increments with additional fees for travel from portal to portal if necessary.

**_Narrative/Questionnaire Reports_:** Fee is $1,000 plus "**Review of Records**" or films if needed.

**_Attorney/Telephone Conferences:_** _Fee_ is $1,000 per hour with 30-minute minimum. Partial hours are charged in **15-minute increments.**

**_Review of Records/Preparation:_** Fee is $1,000 per hour-(1-hour minimum) with or without report. Additional time will be charged in 30 minute increments.

**_Video Surveillance Review_:** Fee is $1,000.00/hour with 1-hour minimum. Partial hours are charged in 30-minute increments. **Plus $1,000.00/hour, 1-hour min. for summary of video review.**

**_Trial Testimony or Arbitration Hearings:_** **Fee is $5,000 per half day-(minimum half day) or $10,000.00/full day-(full day is any time over 4 hours) plus preparation and travel from portal to portal.**

**_Imaging CD's_:** **Fee is $10.00** plus $1.25 postage **with records. No fee without records.**

**_Lien Companies:_** Same as above

_WE REQUIRE THAT THE **ENTIRE FEE** BE **PREPAID PRIOR TO SCHEDULING THE EVENT**. WE WILL BALANCE BILL ANY ADDITIONAL CHARGES._

**Cancellation Policy:** _Cancellation of any of the above listed services is required at least **5 business days** prior to the scheduled event. If cancellation **IS** received before the **5 business days**, CSOG will refund the **ENTIRE** fee. If cancellation **IS NOT** received before the **5 business days**, CSOG will retain **50%** of the fee. If cancellation is received **less than 48 hours** prior to the scheduled event, CSOG will retain and/or bill **100% of the fee**._

**Thank you,**
**Colorado Springs Orthopaedic Group**                    **Revised September 2019**

**Lincoln/Mason 0349**

# Billing Statement:

⊕ **ReleasePoint**

**Invoice Date: 09/02/2020**        **Invoice #: 712618-1154**
**Lincoln Financial Group**

**Invoice for Requests for Medical Information completed between Aug 1 2020 and Aug 31 2020**

**LIBMTN**                                    **Bill Code: LIBSFU**

| RP #<br>Cust ID | Patient Name<br>Provider Name | Status | Date<br>Req By | RP Fee | Med Fee | Rush | QC Amt<br>Pages | Total |
|---|---|---|---|---|---|---|---|---|
| 6749555<br>9291624 | MASON, JAN<br>UC HEALTH ASPEN CREEK MEDICAL | Complete | 07/31/20<br>M AVRETT | $ 8.00 | $ 67.40 | $ 0.00 | $ 0.00<br>86 | **$ 75.40** |
| 6749556<br>9291624 | MASON, JAN<br>FYZICAL THERAPY AND BALANCE CE... | Complete | 07/31/20<br>M AVRETT | $ 8.00 | $ 24.48 | $ 0.00 | $ 0.00<br>17 | **$ 32.48** |
| 6749554<br>9291624 | MASON, JAN<br>SPINAL DIAGNOSTIC AND PAIN MANA... | Complete | 08/07/20<br>M AVRETT | $ 8.00 | $ 18.53 | $ 0.00 | $ 0.00<br>9 | **$ 26.53** |

**ReleasePoint**

**405 W. Foothill Blvd**
**Suite 204**
**Claremont, CA 91711**

**Total Amount Due:**        **$ 134.41**

**Tax ID: 95-2843455**

**Lincoln/Mason 0350**



## Colorado Springs Orthopaedic Group



# FAX

Date:    09/29/2020 07:10:52 AM

Subject:   NARRATIVE INVOICE LINCOLN FINANCIAL (SUNG

---

To:   LINCOLN FINANCIAL GROUP

Organization: _____

Fax Number: 16034301926

Phone Number: _____

From: Lyles, Phyllis

Organization:  Colorado Springs Orthopaedic (

Fax Number: _____

Phone Number: _____

Email: _____

Number of Pages: 6

---

Comments:

ATTN MARY AVRETT

FAX CONFIDENTIALITY STATEMENT

The information contained in this facsimile transmission is intended solely for the addressee(s) named above and is privileged and/or confidential. If the reader of this message is not the intended recipient or the person responsible to deliver it to the intended recipient, you are prohibited from reading or disclosing the information in this transmission. Any examination, use, dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone for instructions.

Sent by Multi-Tech Systems
FaxFinder

If you received this fax in error, or would like to opt-out, please call 719-632-7669 , fax 719-632-0088 or email info@csog.net

**Lincoln/Mason 0351**



**Colorado Springs
Orthopaedic Group**

Phone: 719-632-7669
Fax: 719-632-0088
CSOG TIN: 84-1276956

# INVOICE-NARRATIVE

**Date: 9/28/2020**

**ATTENTION: Lincoln Financial Group/Mary Avrett**
**Phone: 888-437-7611**
**Fax:    603-430-1926**

**RE:  Jan Mason -- DOB:          to be completed by Dr. SUNG**

**TOTAL COST: *$2,000.00 which includes review/prep of records.***

**Prepayment of the <u>entire</u> fee is required prior to dictation of the narrative.**

If we do not receive payment in full by <u>**30 days**</u> after the date above, the request may be cancelled.

*Please let us know in writing if you cancel. Thank you*

## **<u>PAYMENT OPTIONS</u>**

<u>**Pay over the phone with a Credit Card**</u>          <u>**OR**</u                    **Mail Check To:**
                                                *Colorado Springs Orthopaedic Group*
   *Medical Records: 719-632-7669*                      *Attention Medical Records*
      *Suzette or Cheryl*                           *4110 BRIARGATE PKWY #300*
                                                   *Colorado Springs, CO 80920*

Thank you,
**Phyllis  719-632-7669 ext-1173**
**Colorado Springs Orthopaedic Group**

Lincoln/Mason 0352

Lyles, Phyllis    CSOG7196320088                    (3/7) 09/29/2020 07:12:28 AM -0600

09/28/20  18:84:85  Lincoln Financial    -> CSOG 7196320888    Lincoln Financial Gr Page 882



Lincoln Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7213
London, KY 40742-7213
Phone No.: (888) 437-7611
Secure Fax No.: (603) 430-1926

September 28, 2020

Roger Sung
4110 BRIARGATE DR PARKWAY #300
COLORADO SPRINGS, CO 80920

RE:    Long Term Disability (LTD) Benefits
       Charter Communications, Inc.
       Claim #: 9291624
       Claimant: Jan Mason
       Claimant D.O.B.:

Dear Roger Sung:

We are the Disability Claim Administrator for your patient, Jan Mason.

On September 14, 2020 a/an Independent Medical Review was performed to assist us in determining Ms. Mason' eligibility for Long Term Disability (LTD) benefits. The results of this assessment demonstrate the following:

*Since 07/21/2020, the claimant had an MRI of the lumbar spine, which according to Roger Sung, MD was stable from the previous. The findings included degenerative disc disease, degenerative central spinal stenosis, and degenerative neuroforaminal stenosis. These were all mild to moderate in degree. There was no obvious impingement of exiting nerve roots. There was no visualized myelomalacia.*

*She had two subsequent medical visits, one with Michael Huang, MD, and one with Roger Sung, MD. She had been feeling worse in terms of her pain and symptomatology. However, there were no new physical examination findings. Her most significant and consistent physical examination findings include tenderness and decreased range of motion. She does not have any neurologic deficits. No new restrictions were given by either of the physicians.*

*Although the claimant has subjective complaints of pain and falls, there was a lack of functional deficits on physical examination to support the need for restrictions.*

Please review the enclosed report by October 9, 2020, and provide any comments you wish to have considered. If you disagree with September 14, 2020' findings, please detail the specific areas with which you disagree and provide medical documentation to support your position.

We ask that you provide this information by October 9, 2020. Failure to provide the requested

1 of 2

Lincoln/Mason 0353

09/28/20  10:05:04  Lincoln Financial    -> CSOG 7196320088    Lincoln Financial Gr Page 003

information may result in an adverse benefit determination. The information can be faxed to our office at our secure fax number (603) 430-1926 or mailed to the above address.

Although HIPAA does not apply to disability insurance carriers, we understand your responsibilities under HIPAA as a health care provider, and our associated responsibility of ensuring this information is protected against deliberate or inadvertent misuse or disclosure.

As the insurance carrier providing employer sponsored Long Term Disability (LTD) benefits coverage to your patient, we have enclosed a HIPAA compliant authorization signed by Ms. Mason allowing the release of information to our company. This authorization specifically allows you to release medical information to us and is valid for two years from the date of Ms. Mason' signature.

If you have any questions regarding this matter, please contact me.

Sincerely,

Mary Avrett
Appeals Consultant
Phone No.: (888) 437-7611 Ext. 16371
Secure Fax No.: (603) 430-1926

CC:    Jan Mason


Attachments:    9291624-EMPLOYEE/CLAIMANT-AUTHORIZATION-09.25.2019
                9291624-MEDICAL-MEDICAL RECORDS-09.15.2020

.

2  of 2

Lincoln/Mason 0354

Lyles, Phyllis    CSOG7196320088                    (5/7) 09/29/2020 07:13:37 AM -0600

09/28/20  10:05:42  Lincoln Financial      -> CSOG 7196320088      Lincoln Financial Gr Page 004



Liberty Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7207
London, KY 40742-7207
Phone No.: (844) 384-5858
Secure Fax No.: (603) 334-5994

## AUTHORIZATION FOR THE RELEASE OF INFORMATION INCLUDING PROTECTED HEALTH INFORMATION

**I HEREBY AUTHORIZE THE USE OR DISCLOSURE OF INFORMATION ABOUT ME AS DESCRIBED BELOW:**

Person(s) or group(s) of persons authorized to use or disclose the information:   Any physicians, medical practitioners, hospitals, clinics, HMOs, long-term care facilities, medical or medically-related facilities, pharmacies, insurance companies, credit or consumer reporting agency, financial/educational institutions, current or former employer, governmental agency, MIB Inc., and any insurance support organizations.

Person(s) or group(s) of persons authorized to collect or otherwise receive the information: The particular Company in the Lincoln Financial Group of companies to which I am submitting a claim and its authorized representatives, agents and/or employees, the Plan Sponsor (if self-insured Plan) and other organizations providing claims management services.

Description of the information that may be used or disclosed: This Authorization specifically includes the release of all information related to:

* My physical and mental health and my insurance policies and claims, including, but not limited to, those containing diagnosis, treatments, prognosis, prescription drug information, alcohol or drug abuse or information regarding communicable or infectious conditions, including HIV/AIDS.

* Job duties, earnings, personnel records and other work related information and credit reports, bank records, and federal and state tax returns.

* Information concerning Social Security benefits, including any records pertaining to me and my dependents

The information will be used or disclosed only for the following purpose(s):  For purposes of investigating, evaluating and processing my claim, and/or for insurance-related functions.

**STATEMENTS OF UNDERSTANDING & ACKNOWLEDGMENT:**

I understand that information used or disclosed pursuant to this authorization could be subject to redisclosure as necessary by the recipient and, if so, may not be subject to federal or state law protecting its confidentiality.

I understand that I may revoke this authorization in writing at any time by sending a written revocation to the Company in the Lincoln Financial Group of companies to which I have submitted a claim, except to the extent that action has been taken in reliance on this authorization, or to the extent that other law provides the Company with the right to contest a claim. I also understand that the revocation of this authorization will not affect uses and disclosures of my health information for purposes of treatment, payment and health care operations.

I understand that authorizing the disclosure of my health information is voluntary and the provision of health care services to me is not conditioned on whether I sign this authorization. If I choose not to sign this authorization, insurance coverage or claim payments may be denied or delayed.

This authorization shall remain in force for 24 months from the date of signature, except to the extent applicable state law imposes or allows a different duration. The information obtained under this authorization will be retained in accordance with the Company's standard retention policy and applicable law. I understand that I may request a copy of this authorization.

Name of claimant (print)  ___JAU K MASON___

Name of legal representative, if applicable (print) _____  Relationship _____

Signature of claimant or legal representative  _____

Date of Birth: __  _____  Claim Number: __9291624__  Date: __08/14/19__

**A copy of this authorization will be considered as valid as the original.**

**Lincoln/Mason 0355**

Lyles, Phyllis   CSOG7196320088                    (6/7) 09/29/2020 07:14:33 AM -0600

09/28/20  10:07:19  Lincoln Financial      -> CSOG 7196320088      Lincoln Financial Gr Page 005



Liberty Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7207
London, KY 40742-72097
Phone No.: (844) 384-5858
Secure Fax No.: (603) 334-5994

## AUTHORIZATION FOR THE RELEASE OF PROTECTED HEALTH INFORMATION

**I HEREBY AUTHORIZE THE USE OR DISCLOSURE OF HEALTH INFORMATION ABOUT ME AS DESCRIBED BELOW:**

Person(s) or group(s) of persons authorized to use or disclose the information:  Any physicians, medical practitioners, hospitals, clinics, HMOs, long-term care facilities, medical or medically-related facilities, pharmacies, insurance companies, Plan Sponsor/Administrator, governmental agency, MIB Inc., and any insurance support organizations.

Person(s) or group(s) of persons authorized to collect or otherwise receive the information: The particular Company in the Lincoln Financial Group of companies to which I am submitting a claim and its authorized representatives, agents and/or employees, the Plan Sponsor (if self-insured Plan) and other organizations providing claims management services.

Description of the information that may be used or disclosed: This Authorization specifically includes: the release of all psychotherapy notes relating to me, without restriction, including psychotherapy notes recorded in any medium documenting or analyzing the contents of conversations during private counseling sessions and/or group, joint or family counseling sessions.

The information will be used or disclosed only for the following purpose(s):  For purposes of investigating, evaluating and processing my claim, and/or for insurance-related functions.

## STATEMENTS OF UNDERSTANDING & ACKNOWLEDGMENT:

I understand that information used or disclosed pursuant to this authorization could be subject to redisclosure as necessary by the recipient and, if so, may not be subject to federal or state law protecting its confidentiality.

I understand that I may revoke this authorization in writing at any time by sending a written revocation to the Company in the Lincoln Financial Group of companies to which I have submitted a claim, except to the extent that action has been taken in reliance on this authorization, or to the extent that other law provides the Company with the right to contest a claim. I also understand that the revocation of this authorization will not affect uses and disclosures of my health information for purposes of treatment, payment and health care operations.

I understand that authorizing the disclosure of this health information is voluntary and the provision of health care services to me is not conditioned on whether I sign this authorization.  If I choose not to sign this authorization, insurance coverage or claim payments may be denied or delayed.

This authorization shall remain in force for 24 months from the date of signature, except to the extent applicable state law imposes or allows a different duration. The information obtained under this authorization will be retained in accordance with the Company's standard retention policy and applicable law. I understand that I may request a copy of this authorization.

Name of claimant (print)  _JAN K MASON_____

Name of legal representative, if applicable (print) _____  Relationship _____

Signature of claimant or legal representative  _Jan K Mason_____

Date of Birth: __        _____  Claim Number: _9291624___  Date: _08/14/19_____

**A copy of this authorization will be considered as valid as the original**

Lincoln/Mason 0356

09/28/20  10:03:24  Lincoln Financial    -> CSOG 7196320088    Lincoln Financial Gr Page 001



Lincoln Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7213
London, KY 40742-7213
Phone No.: (888) 437-7611
Secure Fax No.: (603) 430-1926

| Date: | September 28, 2020 |
|---|---|
| To: | ROGER SUNG<br>4110 BRIARGATE DR PARKWAY #300<br>COLORADO SPRINGS CO 80920 |
| Attn: | Urgent - Dr Sung<br>Second Request |
| Fax: | (719) 632-0088 |
| From: | Mary Avrett<br>Appeals Consultant<br>Phone No.: Phone No.: (888) 437-7611<br>Secure Fax No.: (603) 430-1926 |
| Total Pages (Including Cover): | 20 |
| Claim #: | 9291624 |
| Claimant: | Jan Mason |
| Charter Communications, Inc. | |

This fax, and any attachments thereto, is intended only for the use of the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this fax, you are hereby notified that any dissemination, distribution or copying of this fax, and any attachments thereto, is strictly prohibited. If you have received this fax in error, please notify me by telephone at (888) 437-7611 and permanently shred the original and any copy of any fax and any printout thereof.

09/28/20  10:03:24  Lincoln Financial    -> CSOG 7196320088    Lincoln Financial Gr Page 001

Lincoln/Mason 0357



Lincoln Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7213
London, KY 40742-7213
Phone No.: (888) 437-7611
Secure Fax No.: (603) 430-1926

| | |
|---|---|
| Date: | September 28, 2020 |
| To: | DR JEFFREY KENT<br>9480 BRIAR VILLAGE POINT STE 2<br>COLORADO SPRINGS CO 80920 |
| Attn: | Urgent - Dr. Jeffrey Kent |
| Fax: | (719) 623-2102 |
| From: | Mary Avrett<br>Appeals Consultant<br>Phone No.: Phone No.: (888) 437-7611<br>Secure Fax No.: (603) 430-1926 |
| Total Pages<br>(Including Cover):    20 | |
| RE:<br><br>Claim #:    9291624<br>Claimant:   Jan Mason<br><br>Charter Communications, Inc. | |

This fax, and any attachments thereto, is intended only for the use of the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this fax, you are hereby notified that any dissemination, distribution or copying of this fax, and any attachments thereto, is strictly prohibited. If you have received this fax in error, please notify me by telephone at (888) 437-7611 and permanently shred the original and any copy of any fax and any printout thereof.

**Lincoln/Mason 0358**



Lincoln Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7213
London, KY 40742-7213
Phone No.: (888) 437-7611
Secure Fax No.: (603) 430-1926

September 28, 2020

Dr. Jeffrey Kent
9480 BRIAR VILLAGE POINT STE 2
COLORADO SPRINGS, CO 80920

RE:    Long Term Disability (LTD) Benefits
       Charter Communications, Inc.
       Claim #: 9291624
       Claimant: Jan Mason
       Claimant D.O.B.:

Dear Dr. Jeffrey Kent:

We are the Disability Claim Administrator for your patient, Jan Mason.

On September 14, 2020 an Independent Medical Review was performed to assist us in determining Ms. Mason' eligibility for Long Term Disability (LTD) benefits. The results of this assessment demonstrate the following:

*Since 07/21/2020, the claimant had an MRI of the lumbar spine, which according to Roger Sung, MD was stable from the previous. The findings included degenerative disc disease, degenerative central spinal stenosis, and degenerative neuroforaminal stenosis. These were all mild to moderate in degree. There was no obvious impingement of exiting nerve roots. There was no visualized myelomalacia.*

*She had two subsequent medical visits, one with Michael Huang, MD, and one with Roger Sung, MD. She had been feeling worse in terms of her pain and symptomatology. However, there were no new physical examination findings. Her most significant and consistent physical examination findings include tenderness and decreased range of motion. She does not have any neurologic deficits. No new restrictions were given by either of the physicians.*

*Although the claimant has subjective complaints of pain and falls, there was a lack of functional deficits on physical examination to support the need for restrictions.*

Please review the enclosed report by October 9, 2020, and provide any comments you wish to have considered. If you disagree with September 14, 2020 findings, please detail the specific areas with which you disagree and provide medical documentation to support your position.

We ask that you provide this information by October 9, 2020. Failure to provide the requested

1  of  2

**Lincoln/Mason 0359**

information may result in an adverse benefit determination. The information can be faxed to our office at our secure fax number (603) 430-1926 or mailed to the above address.

Although HIPAA does not apply to disability insurance carriers, we understand your responsibilities under HIPAA as a health care provider, and our associated responsibility of ensuring this information is protected against deliberate or inadvertent misuse or disclosure.

As the insurance carrier providing employer sponsored Long Term Disability (LTD) benefits coverage to your patient, we have enclosed a HIPAA compliant authorization signed by Ms. Mason allowing the release of information to our company. This authorization specifically allows you to release medical information to us and is valid for two years from the date of Ms. Mason' signature.

If you have any questions regarding this matter, please contact me.

Sincerely,

Mary Avrett
Appeals Consultant
Phone No.: (888) 437-7611 Ext. 16371
Secure Fax No.: (603) 430-1926

CC:     Jan Mason


Attachments:   9291624-EMPLOYEE/CLAIMANT-AUTHORIZATION-09.25.2019
                       9291624-MEDICAL-MEDICAL RECORDS-09.15.2020

2  of 2

**Lincoln/Mason 0360**

3L268190622

 **Lincoln Financial Group®**

Liberty Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7207
London, KY 40742-7207
Phone No.: (844) 384-5858
Secure Fax No.: (603) 334-5994

## AUTHORIZATION FOR THE RELEASE OF INFORMATION INCLUDING PROTECTED HEALTH INFORMATION

**I HEREBY AUTHORIZE THE USE OR DISCLOSURE OF INFORMATION ABOUT ME AS DESCRIBED BELOW:**

**Person(s) or group(s) of persons authorized to use or disclose the information:** Any physicians, medical practitioners, hospitals, clinics, HMOs, long-term care facilities, medical or medically-related facilities, pharmacies, insurance companies, credit or consumer reporting agency, financial/educational institutions, current or former employer, governmental agency, MIB Inc., and any insurance support organizations.

**Person(s) or group(s) of persons authorized to collect or otherwise receive the information:** The particular Company in the Lincoln Financial Group of companies to which I am submitting a claim and its authorized representatives, agents and/or employees, the Plan Sponsor (if self-insured Plan) and other organizations providing claims management services.

**Description of the information that may be used or disclosed:** This Authorization specifically includes the release of all information related to:

   * My physical and mental health and my insurance policies and claims, including, but not limited to, those containing diagnosis, treatments, prognosis, prescription drug information, alcohol or drug abuse or information regarding communicable or infectious conditions, including HIV/AIDS.
   * Job duties, earnings, personnel records and other work related information and credit reports, bank records, and federal and state tax returns.
   * Information concerning Social Security benefits, including any records pertaining to me and my dependents

**The information will be used or disclosed only for the following purpose(s):** For purposes of investigating, evaluating and processing my claim, and/or for insurance-related functions.

### STATEMENTS OF UNDERSTANDING & ACKNOWLEDGMENT:

**I understand** that information used or disclosed pursuant to this authorization could be subject to redisclosure as necessary by the recipient and, if so, may not be subject to federal or state law protecting its confidentiality.

**I understand** that I may revoke this authorization in writing at any time by sending a written revocation to the Company in the Lincoln Financial Group of companies to which I have submitted a claim, except to the extent that action has been taken in reliance on this authorization, or to the extent that other law provides the Company with the right to contest a claim. I also understand that the revocation of this authorization will not affect uses and disclosures of my health information for purposes of treatment, payment and health care operations.

**I understand** that authorizing the disclosure of my health information is voluntary and the provision of health care services to me is not conditioned on whether I sign this authorization. If I choose not to sign this authorization, insurance coverage or claim payments may be denied or delayed.

This authorization shall remain in force for 24 months from the date of signature, except to the extent applicable state law imposes or allows a different duration. The information obtained under this authorization will be retained in accordance with the Company's standard retention policy and applicable law. I understand that I may request a copy of this authorization.

Name of claimant (print) _____ JAN K MASON _____

Name of legal representative, if applicable (print) _____    Relationship _____

Signature of claimant or legal representative _____ Jan K Mason _____

Date of Birth: _____    _____    Claim Number: __9291624__    Date: __09/14/19__

**A copy of this authorization will be considered as valid as the original.**

**Lincoln/Mason 0361**

3L268190622

 **Lincoln**
Financial Group®

Liberty Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7207
London, KY 40742-7207
Phone No.: (844) 384-5858
Secure Fax No.: (603) 334-5994

## AUTHORIZATION FOR THE RELEASE OF PROTECTED HEALTH INFORMATION

**I HEREBY AUTHORIZE THE USE OR DISCLOSURE OF HEALTH INFORMATION ABOUT ME AS DESCRIBED BELOW:**

**Person(s) or group(s) of persons authorized to use or disclose the information:** Any physicians, medical practitioners, hospitals, clinics, HMOs, long-term care facilities, medical or medically-related facilities, pharmacies, insurance companies, Plan Sponsor/ Administrator, governmental agency, MIB Inc., and any insurance support organizations.

**Person(s) or group(s) of persons authorized to collect or otherwise receive the information:** The particular Company in the Lincoln Financial Group of companies to which I am submitting a claim and its authorized representatives, agents and/or employees, the Plan Sponsor (if self-insured Plan) and other organizations providing claims management services.

**Description of the information that may be used or disclosed:** This Authorization specifically includes the release of all psychotherapy notes relating to me, without restriction, including psychotherapy notes recorded in any medium documenting or analyzing the contents of conversations during private counseling sessions and/or group, joint or family counseling sessions.

**The information will be used or disclosed only for the following purpose(s):** For purposes of investigating, evaluating and processing my claim, and/or for insurance-related functions.

### STATEMENTS OF UNDERSTANDING & ACKNOWLEDGMENT:

**I understand** that information used or disclosed pursuant to this authorization could be subject to redisclosure as necessary by the recipient and, if so, may not be subject to federal or state law protecting its confidentiality.

**I understand** that I may revoke this authorization in writing at any time by sending a written revocation to the Company in the Lincoln Financial Group of companies to which I have submitted a claim, except to the extent that action has been taken in reliance on this authorization, or to the extent that other law provides the Company with the right to contest a claim. I also understand that the revocation of this authorization will not affect uses and disclosures of my health information for purposes of treatment, payment and health care operations.

**I understand** that authorizing the disclosure of this health information is voluntary and the provision of health care services to me is not conditioned on whether I sign this authorization. If I choose not to sign this authorization, insurance coverage or claim payments may be denied or delayed.

**This authorization** shall remain in force for 24 months from the date of signature, except to the extent applicable state law imposes or allows a different duration. The information obtained under this authorization will be retained in accordance with the Company's standard retention policy and applicable law. I understand that I may request a copy of this authorization.

Name of claimant (print) _Jau K Mason_

Name of legal representative, if applicable (print) _____ Relationship _____

Signature of claimant or legal representative _Jan K Mason_

Date of Birth: __ _____ Claim Number: _9291624_ Date: _08/14/19_

**A copy of this authorization will be considered as valid as the original**

Lincoln/Mason 0362

...................................................................................................................................................................................................

**Daniel Fung, M.D.**
**Board Certified Physical Medicine & Rehabilitation**
**Board Certified Pain Medicine**

**CLAIMANT NAME:** Jan Mason
**ECN #:** 156002-1
**CLAIM #:** 9291624
**DATE OF LOSS:** 04/17/2019
**DATE OF REVIEW:** 09/14/2020
**CASE TYPE:** Long-Term Disability

**DIAGNOSIS:** Pain in right hip

**MEDICAL RECORDS REVIEWED:**
11/11/2015, Job Description, Charter Communications.
12/19/2017, State of Colorado Traffic Accident Report, Richard DuVall, Credentials Not
Provided.
07/11/2018, X-Ray Lumbar Spine, Jon Snider, MD.
09/12/2018, MRI Pelvis and Sacroiliac Joints, Joseph Ugorji, DO.
11/27/2018, CT Pelvis, Nicholas Moore, MD.
01/09/2019, Fluoroscopically Guided Injection of the Right Hip Imaging, Jacob Becker, MD.
01/09/2019, Fluoroscopically Guided Injection of the Left Hip Imaging, Jacob Becker, MD.
01/31/2019, Progress Note, Tyler Bron, MD.
02/11/2019, MRI Arthrogram Right Hip, Craig LaBuda, MD.
02/18/2019, Progress Note, Tyler Bron, MD.
03/07/2019, Progress Note, Michael Huang, MD.
04/17/2019, Operative Report, Michael Huang, MD, MD.
04/18/2019, Progress Note, Kristen Reiss, PA-C.
05/02/2019, Progress Note, Kristen Reiss, PA-C.
06/04/2019, Progress Note, Michael Huang, MD.
07/09/2019, Progress Note, Michael Huang, MD.
07/23/2019, Progress Note, Jeffrey Kent, MD.
07/29/2019, Progress Note, James Bee, MD.
08/06/2019, Progress Note, Jeffrey Kent, MD.
08/08/2019, MRI Lumbar Spine, Jacob Becker, MD.
08/19/2019, Progress Note, James Bee, MD.
08/21/2019, Progress Note, Roger Sung, MD.
08/28/2019, Progress Note, David Salek, MD.
09/03/2019, Long-Term Disability Claim Creation Request, Ethan Crockett, Credentials Not
Provided.
09/14/2019, Disability Questionnaires an Application for Benefits, Jan Mason.
09/17/2019, Physical Therapy Evaluation, Catherine Bottorff, PT, DPT.
10/03/2019, Nursing Memorandum, Cassandra K., RN.
10/04/2019, Disability Questionnaires an Application for Benefits, Jan Mason.
10/07/2019, Progress Note, Jeffrey Kent, MD.
10/11/2019, Progress Note, Kristen Reiss, PA-C.

1

**Lincoln/Mason 0363**

10/22/2019, MRI Right Hip Arthrogram, John Campbell, MD.
10/25/2019, Progress Note, Michael Huang, MD.
10/27/2019, Peer Review, Richard Avioli, MD.
11/20/2019, Progress Note, Roger Sung, MD.
12/09/2019, Operative Report, Michael Huang, MD.
12/10/2019, Progress Note, Michael Huang, MD.
12/13/2019, Physical Therapy Initial Examination, Taylor Mark Pfeifer, PT, DPT.
12/13/2019, Physical Therapy Plan of Care, Taylor Mark Pfeifer, PT, DPT.
12/13/2019, Physical Therapy Daily Note, Taylor Mark Pfeifer, PT, DPT.
12/17/2019, Physical Therapy Daily Note, Jennifer Mulligan, PT, DPT.
12/23/2019, Progress Note, Phillip Falender, PA-C.
12/24/2019, Physical Therapy Daily Note, Kerri Anne Tiller, PT, DPT.
12/27/2019, Physical Therapy Daily Note, Taylor Mark Pfeifer, PT, DPT.
12/30/2019, Physical Therapy Daily Note, Kerri Anne Tiller, PT, DPT.
12/30/2019, Progress Note, Jeffrey Kent, MD.
01/02/2020, Physical Therapy Note, Sandi Feeney, PT, DPT.
01/06/2020, Physical Therapy Daily Note, Kerri Anne Tiller, PT, DPT.
01/10/2020, Physical Therapy Daily Note, Kerri Anne Tiller, PT, DPT.
01/14/2020, Physical Therapy Daily Note, Jennifer Mulligan, PT, DPT.
01/17/2020, Physical Therapy Daily Note, Taylor Mark Pfeifer, PT, DPT.
01/20/2020, Physical Therapy Daily Note, Kerri Anne Tiller, PT, DPT.
01/21/2020, Progress Note, Kristen Reiss, PA-C.
01/23/2020, Physical Therapy Daily Note, Kerri Anne Tiller, PT, DPT.
01/27/2020, Physical Therapy Daily Note, Kerri Anne Tiller, PT, DPT.
01/29/2020, Physical Therapy Daily Note, Taylor Mark Pfeifer, PT, DPT.
01/30/2020, MRI Left Hip Arthrogram, Nicholas Moore, MD.
01/31/2020, Progress Note, Kelsey Chrane, PA-C.
02/04/2020, Physical Therapy Daily Note, That Jennifer Mulligan, PT, DPT.
02/06/2020, Progress Note, Michael Huang, MD.
02/11/2020, Physical Therapy Daily Note, Ellen Jackson, PT.
02/12/2020, Progress Note, David Salek, MD.
02/20/2020, Physical Therapy Progress Note, Scott Moser, PT, DPT.
02/20/2020, Physical Therapy Daily Note, Scott Moser, PT, DPT.
02/25/2020, Physical Therapy Daily Note, Marc Phillips, PT, DPT.
03/03/2020, Progress Note, Jeffrey Kent, MD.
03/05/2020, Physical Therapy Daily Note, Marc Phillips, PT, DPT.
03/12/2020, Progress Note, Michael Huang, MD.
03/12/2020, Physical Therapy Daily Note, Marc Phillips, PT, DPT.
03/17/2020, Physical Therapy Daily Note, Marc Phillips, PT, DPT.
04/02/2020, Physical Therapy Note, Marc Phillips, PT, DPT.
04/09/2020, Physical Therapy Daily Note, Marc Phillips, PT, DPT.
04/16/2020, Physical Therapy Daily Note, Marc Phillips, PT, DPT.
04/23/2020, Physical Therapy Daily Note, Marc Phillips, PT, DPT.
04/30/2020, Physical Therapy Daily Note, Marc Phillips, PT, DPT.
05/01/2020, Progress Note, Michael Huang, MD.
05/07/2020, Physical Therapy Daily Note, Marc Phillips, PT, DPT.

**Lincoln/Mason 0364**

05/13/2020, Progress Note, Roger Sung, MD.
05/21/2020, Physical Therapy Daily Note, Marc Phillips, PT, DPT.
05/22/2020, Progress Note, Jeffrey Kent, MD.
06/11/2020, Procedure Note, David Salek, MD.
06/18/2020, Physical Therapy Daily Note, Marc Phillips, PT, DPT.
06/23/2020, Disability Questionnaires an Application for Benefits, Jan Mason.
07/01/2020, Progress Note, Roger Sung, MD.
07/01/2020, Medical Questionnaire, Jeffrey Kent, MD.
07/01/2020, Progress Note, Jeffrey Kent, MD.
07/09/2020, Physical Therapy Initial Examination, Marc Phillips, PT, DPT.
07/16/2020, Letter Correspondences, David Monti, MD.
07/16/2020, Peer Review, David Monti, MD.
07/16/2020, Physical Therapy Daily Note, Marc Phillips, PT, DPT.
07/21/2020, Written Request for Review, Jan Mason.
07/23/2020, Letter Correspondence, David Salek, MD.
07/23/2020, Physical Therapy Daily Note, Marc Phillips, PT, DPT.
07/31/2020, MRI Lumbar Spine, José Pizarro, MD.
08/06/2020, Physical Therapy Daily Note, Marc Phillips, PT, DPT.
08/13/2020, Physical Therapy Recertification Note, Marc Phillips, PT, DPT.
08/13/2020, Physical Therapy Daily Note, Marc Phillips, PT, DPT.
08/17/2020, Progress Note, Michael Huang, MD.
08/19/2020, Progress Note, Roger Sung, MD.
08/20/2020, Physical Therapy Daily Note, Marc Phillips, PT, DPT.
08/31/2020, Letter Correspondence, Jeffrey Kent, MD.

**HISTORY:**

I have been asked to review the medical records on behalf of ECN regarding Jan Mason. The
claimant is a now 48-year-old female with a long-term disability claim from 04/17/2019. Her job
title was Representative 3, Customer Service Billing. This was a sedentary position. Her primary
diagnosis was pain in right hip.

On 12/18/2017, the claimant was involved in a motor vehicle accident. She was stopped in heavy
traffic in the right through lane when another driver failed to come to a complete stop and
collided with the rear passenger side bumper. She complained of hip and lower back pain.
Moderate to severe damage was sustained to the rear passenger side bumper and quarter panel of
the vehicle.

On 07/11/2018, the claimant had an x-ray the lumbosacral spine interpreted by Jon Snider, MD.
This showed L3-L4 retrolisthesis and multilevel spondylosis. There was a metallic fixation of the
sacroiliac joint.

On 09/12/2018, the claimant had an MRI of the pelvis and sacroiliac joints interpreted by Joseph
Ugorji, DO. The report provided was not completely legible.

3

**Lincoln/Mason 0365**

On 11/27/2018, the claimant had a CT of the pelvis. This was interpreted by Nicholas Moore, MD. This demonstrated a right sacroiliac joint internal fixation without evidence of a hardware failure. There was bilateral cam type femoroacetabular impingement.

On 01/09/2019, the claimant had a fluoroscopically guided joint injection of the right hip. Her pain went from 5-6/10 to 0/10 in severity after the procedure. This was performed by Tyler Bron, MD.

On 01/09/2019, the claimant had a fluoroscopically guided joint injection of the left hip. Her pain went from 4/10 to 0/10 in severity after the procedure. This was performed by Tyler Bron, MD.

On 01/31/2019, the claimant was evaluated by Tyler Bron, MD. She complained of bilateral hip pain. She was following up after bilateral corticosteroid injections in her hips. For the initial 4-6 hours after the injection she had complete relief of her hip pain. This was only temporary and overall had not noticed any significant improvement from the injection. Her pain was worsening in the right greater than the left. She was also complaining of back pain. On physical examination of the right hip and pelvis, range of motion was limited with flexion 100°, internal rotation 0°, external rotation 15°. Range of motion elicited groin pain. Her pain was most severe with internal rotation. Her quadricep and hamstring strength was 5/5. Plantar and dorsiflexion strength was 5/5. Her sensation was intact over the lower extremity. Physical examination of the left hip and pelvis demonstrated range of motion limited with flexion 100°, internal rotation 0°, external rotation 15°. Range of motion elicited groin pain. Her pain was most severe with internal rotation. Her strength and sensory examination were intact. Her diagnostic testing was reviewed. The diagnoses were pain in right hip and pain in the left hip. Her pain was likely due to osteoarthritis versus labral pathology. An MRI arthrogram of the right hip was ordered.
On 02/11/2019, the claimant had an MRI arthrogram of the right hip. This was interpreted by Craig LaBuda, MD. This demonstrated a right hip anterior superior labral tear. There was mild, superior hip joint space narrowing and small anterior lateral femoral head-neck-osseous bump. There was a right sacroiliac joint fusion.

On 02/18/2019, the claimant followed up with Tyler Bron, MD. Her hip was still very painful. On physical examination of the right hip and pelvis, range of motion was limited with flexion to 100°, internal rotation 0°, external rotation 15°. Range of motion elicited groin pain. Her pain was most severe with internal rotation. Her quadricep and hamstring strength was 5/5. Plantar and dorsiflexion strength was 5/5. Her sensation was intact over the lower extremity. Physical examination of the left hip and pelvis demonstrated range of motion limited with flexion to 100°, internal rotation 0°, external rotation 15°. Range of motion elicited groin pain. Her pain was most severe with internal rotation. Her strength and sensory examination were intact. The MRI arthrogram was reviewed showing an anterior superior labral tear with minimal joint space narrowing, as well as signs of femoral acetabular impingement. The diagnoses were pain in the left hip, and pain in the right hip. She was referred to another physician for possible arthroscopic labral repair.

On 03/07/2019, the claimant was seen by Michael Huang, MD. She reported right hip pain over the posterior buttock area for about two years. She was treated initially for sacroiliac joint pain in

4

**Lincoln/Mason 0366**

September 2017 with sacroiliac joint fusion. She had recovered extremely well with resolution of her symptoms until she was involved in a car accident where she was rear-ended in December 2017. She reported some groin pain but mostly felt her pain in the posterior buttock area. Her symptoms were worse with sitting, but now consistently bothering her with standing and walking. She denied numbness or tingling. She had tried rest, activity modification, anti-inflammatories including ibuprofen without benefit. She tried physical therapy without benefit. She tried chiropractic treatment and massage therapy with limited benefit. She underwent an intra-articular injection and she had four hours of complete pain resolution but did not get any benefit long-term. Her symptoms were sharp, dull, and aching and made worse with sitting and walking. She also had associated stiffness and weakness. On physical examination, her gait was antalgic. Right hip range of motion demonstrated flexion to 115°, external rotation to 55°, and internal rotation to 10°. The anterior impingement test was positive reproducing her posterior buttock pain and somewhat reproducing groin pain. There was tenderness to palpation of the posterior buttock. She had a negative straight leg raise and negative posterior impingement test. At the left hip, range of motion demonstrated flexion to 25°, external rotation to 65°, and internal rotation to 10°. Anterior and posterior impingement tests and straight leg raise were negative. There was no tenderness to palpation. Her diagnostics were reviewed. The diagnoses were pain in the right hip, and other articular cartilage disorders of the right hip. This was further discussed as right hip pain secondary to labral tear and femoral acetabular impingement. Surgical intervention was discussed and planned for.

On 04/17/2019, the claimant had a right hip labral repair, arthroscopic acetabuloplasty, femoroplasty, osteoplasty to remove cam lesion, chondroplasty, synovectomy, capsular plication performed by Michael Huang, MD.

On 04/18/2019, the claimant followed up with Kristen Reiss, PA-C. She was a one-day status post-surgery. Her pain was well-controlled. She was utilizing her post-operative hip braces and crutches. On physical examination, the right hip wounds had minimal drainage. There was mild swelling which was expected. There were no signs of infection. The diagnosis was one-day status post right hip surgery. She was given postoperative instructions and advised to follow-up in two weeks.

On 05/02/2019, the claimant followed up with Kristen Reiss, PA-C. She was two weeks status post hip surgery. Her pain was well-controlled. She was doing well with physical therapy. On physical examination, the surgical wounds were healed without signs of infection. Her sensation was intact. The diagnoses were pain in the right hip, and other articular cartilage disorders of the right hip. Her sutures were removed. She was given further instructions for routine postoperative management. She was given oxycodone.

On 06/04/2019, the claimant followed up with Michael Huang, MD. She was six weeks status post right hip surgery. She reported increasing hip pain worse than her preoperative pain. It began after she started to discontinue the crutches two weeks prior. She also presented with a new complaint of left hip pain. She states having had this since December 2017, with progressive worsening. Her left was feeling worse after bearing more weight after her surgery. The pain was in the groin and worsened with prolonged sitting, prolonged standing, and squatting. Rotational activities also increased pain. She had tried rest, activity modification and ibuprofen. She was

5

**Lincoln/Mason 0367**

attending physical therapy. On physical examination of the left hip, flexion was to 115°, external rotation to 65° and internal rotation to 10°. The anterior impingement test was positive. She had tenderness in the anterior groin.

The right hip surgical wounds were well healed without signs of infection. Range of motion of the right hip was flexion to 115°, external rotation to 50° and internal rotation to 5° with continued positive anterior impingement test. X-rays of the bilateral hips were ordered. There was well-preserved femoral acetabular joint spacing. At the left hip there was evidence of femoral, acetabular impingement cam type with alpha angle measuring 63°. The diagnoses were pain in the right hip, and other articular cartilage disorders of the right hip. She was advised to go back on crutches for about two weeks. She was given indomethacin for inflammation. In terms of the left hip, there was suspicion for underlying labral tear. They were considering MRI arthrogram of the left hip.

On 07/09/2019, the claimant followed up with Michael Huang, MD. She reported increasing right posterior buttock and lumbar spine pain. She had minimal anterior hip pain. Her hip pain was much better since her previous visit. She was doing physical therapy. She was concerned about her lumbar spine and felt her pain was radiating down her buttock to the posterior thigh and into her calf. At one point in her history, she was considering a spinal stimulator for low back pain. She described her pain as nerve pain and burning. She had occasional mild anterior groin pain with activity which she was tolerating well. On physical examination, the right hip surgical wounds were well healed. Range of motion included flexion to 110°, external rotation to 50°, internal rotation to 10° and abduction of 40°. She had minimal anterior pain with any of these tests. She had significant posterior hip pain over the sacroiliac joint and lumbar spine. Straight leg raise was negative for radicular symptoms but increased her posterior hip buttock and spine pain. She was directly tender over the superior aspect of the sacroiliac joint and the right lumbosacral junction. The diagnoses were pain in right hip and other articular alleged disorders of the right hip. She was advised to continue with physical therapy. She planned on following up with her spine surgeon for an opinion. She was continued on indomethacin.

On 07/23/2019, the claimant was evaluated by Jeffrey Kent, MD. She reported recent labral tear repair. She was having worsening pain since starting to bear weight. She reported pain in her lower back with burning pain into her right leg more than her left leg. She requested a parking pass, Xanax, and Ambien. No physical examination was provided. The diagnoses were osteoarthritis of the spine with radiculopathy, tear of the right acetabular labrum, femoral acetabular impingement of both hips, primary insomnia, and anxiety. She was advised to continue to follow with her specialists, and to continue gabapentin, Xanax, and Ambien.

On 07/29/2019, the claimant was evaluated by James Bee, MD. She complained of pain in her buttock and back. The pain was sharp, burning, and constant. It was made worse with activity such as sitting, standing, walking, and bending. It was made better by lying down. She had done physical therapy, which was stopped due to worsening symptoms. She was taking indomethacin. Her pain was 8/10. Her activities of daily living were limited secondary to her complaints. On physical examination of the lumbar spine, there was no tenderness. The flexion of the lumbar spine brought the fingertips 6 inches from the floor. Extension was approximately 15°. There was some pain at the extremes of flexion and extension. There was pain with palpation along the gluteal musculature right greater than left. There was no pain with axial compression of the head

6

**Lincoln/Mason 0368**

and no pain with trunk rotation through the hips. She had a slow reciprocating gait. She was able to walk on the toes and heels. She moved easily to the examination table without assistance. Her strength throughout the lower extremities was 5/5. Her sensation was intact bilaterally. There were no upper motor signs. Her reflexes were normal. Straight leg raise was negative bilaterally. X-rays of the lumbosacral spine demonstrated a right sacroiliac joint fusion device. There was a collapse of the disc space at L2-L3. There was subtle retrolisthesis of L3 on L4. On flexion and extension, there was no instability. Her previous MRI of the lumbar spine from 05/12/2018 was also reviewed showing degenerative changes. There was no stenosis. The diagnoses were spinal stenosis in the lumbar region with neurogenic claudication, spondylosis without myelopathy or radiculopathy lumbar region, other intervertebral disc degeneration lumbar region, other intervertebral disc degeneration lumbosacral region, and pain in the right hip. A new MRI was ordered.

On 08/06/2019, the claimant was seen by Jeffrey Kent, MD. She continued with back pain that was worse on the right and made worse with walking. Driving and bending also worsened her pain.  She was taking Ambien to facilitate sleep. She was scheduled to have her MRI the next day. She was taking indomethacin. She was requesting FMLA paperwork. She was out of work. On physical examination, she had tenderness over the sacroiliac joints worse on the right. She was referred to physiatry. The diagnosis was acute right-sided low back pain with sciatica. On 08/08/2019, the claimant had an MRI of the lumbar spine interpreted by Jacob Becker, MD. This demonstrated stability since the previous MRI from 05/12/2018. There was mild multilevel degenerative disc disease with bulges and protrusions without high-grade spinal canal or neural foraminal stenosis at any level.

On 08/19/2019, the claimant followed up with James Bee, MD. She had undergone a spinal cord stimulator trial. It had helped some of her complaints but not her mid-back problems. On physical examination, there were no significant abnormalities. Her MRI of the lumbar spine was reviewed showing degenerative changes without obvious stenosis. The diagnoses were spinal stenosis in the lumbar region with neurogenic claudication, spondylosis without myelopathy or radiculopathy lumbar region, other intervertebral disc degeneration lumbar region, other intervertebral disc degeneration lumbosacral region. She was referred back for possible permanent spinal cord stimulator.

On 08/21/2019, the claimant followed up with Roger Sung, MD. She was requesting to go ahead with a spinal cord stimulator. On physical examination, she had diffuse lumbar tenderness extending into the buttock which was not specific to the sacroiliac joint. The diagnoses were low back pain, chronic pain syndrome, and sciatica. A trial for a different spinal cord stimulator.

On 08/28/2019, the claimant was seen by David Salek, MD. Her history was summarized and consistent with previous accounts. She reported pain that was constant, sharp, and burning with radiation down her right leg into the top of her toe. Her buttock pain was more severe than the leg pain. On physical examination, she had full painless range of motion of all major muscle groups and joints. She had a positive Faber test and a positive Fortin finger test. She had positive lumbar quadrant testing. Her strength and sensation were normal. Her reflexes were normal. The diagnoses were status post right sacroiliac joint fusion, status post right hip labral tear repair, low

7

**Lincoln/Mason 0369**

back pain, right lower extremity radicular features, and positive spinal cord stimulator trial with Boston Scientific. A trial for Stimwave was requested.

On 10/07/2019, the claimant followed up with Jeffrey Kent, MD. She complained of chronic low back pain and sacroiliac joint pain. She was considering a spinal cord stimulator. She was requesting FMLA paperwork and a flu vaccine. On physical examination, she had pain and tenderness in the sacroiliac joint areas and the right inguinal region. She had a normal urinalysis. She had x-rays of the hips, which were normal. The diagnoses were chronic low back pain with sciatica. She was advised to continue with her current treatment plan. She was given a flu shot.

On 10/11/2019, the claimant was evaluated by Kristen Reiss, PA-C. She reported pain that was worse than it was prior to her surgery. She was being evaluated for possible spinal cord stimulator. The pain in the posterior buttock radiated down the posterior thigh into her calf and foot. She had a burning pain in the groin area and lateral hip pain. This seemed to increase about a month prior when she started increasing her walking. She was only walking about 2 miles a week. On physical examination, she had an antalgic gait. Her surgical wounds of the right hip were well healed. Right hip flexion was to 110°, external rotation to 50°, internal rotation to 10° and abduction to 40°. She had negative anterior and posterior impingement tests. Her straight leg raise was negative for radicular symptoms but would increase her posterior hip and buttock pain. She was tender over the superior aspect of the sacroiliac joint on the right and lumbosacral junction as well as over the anterior hip and laterally over the greater trochanter. X-rays were completed showing evidence of previous sacroiliac joint fusion in the right sacroiliac joint. The diagnoses were pain in right hip and other articular cartilage disorders of the right hip. An MRI of the right hip was ordered.

On 10/22/2019, the claimant had an MRI of the right hip with arthrogram. This was interpreted by John Campbell, MD. This demonstrated postoperative changes within the right hip. The anterior aspect of the superior labrum was diminutive and blunted. The superior aspect of the anterior labrum was diminutive and irregular. These were likely postoperative. There was no recurrent tear. There was focal intermediate signal nodularity along the acetabular articular surface adjacent to a suture anchor track at the 12 o'clock position. There was a thin linear signal along the anterior capsule just lateral to the superior aspect of the anterior labrum, which could be related to capsular plication. Mild chondral irregularity along the lateral acetabulum likely reflecting postoperative change.

On 10/25/2019, the claimant followed up with Michael Huang, MD. She was there to discuss her recent MRI. On physical examination, she had an antalgic gait. Her surgical wounds of the right hip were well healed. Right hip flexion was to 110°, external rotation to 50°, internal rotation to 10° and abduction to 40°. She had negative anterior and posterior impingement tests. Her straight leg raise was negative for radicular symptoms but would increase her posterior hip and buttock pain. She was tender over the superior aspect of the sacroiliac joint on the right and lumbosacral junction as well as over the anterior hip and laterally over the greater trochanter. Due to the MRI findings, it was felt that she should undergo surgery to repair the labral tissue. The diagnoses were pain in right hip and other articular cartilage disorders of the right hip.

Lincoln/Mason 0370

On 11/20/2019, the claimant followed up with Roger Sung, MD. She was scheduled for a right hip labrum repair for 12/09/2019. The authorization for the stimulator trial was still pending. On physical examination, she was diffusely tender across her buttocks and lower back. Thoracic and lumbosacral x-rays showing multiple levels of lumbar degeneration.
The diagnoses were pain in the thoracic spine, low back pain, other intervertebral disc degeneration lumbar region, and sciatica. It was recommended that she try the Boston Scientific spinal cord stimulator since her insurance was denying the Stimwave.

On 12/09/2019, the claimant underwent a right hip labral reconstruction, chondroplasty, acetabuloplasty, femoroplasty, osteoplasty to remove cam lesion, synovectomy, capsular closure/plication by Michael Huang, MD.

On 12/10/2019, the claimant followed up with Michael Huang, MD. She was one-day status post right hip labral reconstruction surgery. Her pain was well-controlled. She was utilizing the postoperative crutches and braces. On physical examination, the wounds were intact with minimal drainage. There was mild swelling. The diagnosis was other articular cartilage disorders of the right hip. Physical therapy was initiated.

On 12/23/2019, the claimant followed up with Phillip Falender, PA-C. She was at two weeks status post right hip labral reconstruction surgery. She was progressing well with physical therapy. On physical examination, there were no signs of infection. Hip flexion was to 90°. The Steri-Strips were removed without difficulty. The diagnosis was other articular cartilage disorders of the right hip. She was given further instruction for increasing weight-bearing and advised to continue physical therapy.

On 12/30/2019, the claimant followed up with Jeffrey Kent, MD. She had her right labral repair. She felt worse. Her pain was increased with therapy. She was still considering a spinal stimulator. She had issues with her other hip. She resigned from her cable job. On physical examination, she was tearful at times and in a brace for her right hip. Diagnoses were chronic low back pain with sciatica, sacroiliac joint pain, and tear of the right acetabular labrum. She was advised to continue her current treatment plan.

On 01/21/2020, the claimant was evaluated by Kristen Reiss, PA-C. She was six weeks status post right hip labral reconstruction. She reported her hip pain was improving. Her lower back pain, pain over the sacroiliac joint and radicular symptoms had worsened. She was also following up for her left hip pain. Physical therapy was not helpful for the left hip. On physical examination, right hip flexion was to 100°, external rotation to 40°, and internal rotation to 5°. There was tenderness over the lateral right hip and right sacroiliac joint. The left hip range of motion included flexion to 110°, external rotation to 50°, internal rotation to 5°. She had a positive anterior impingement test. The straight leg raise produced low back pain. There was tenderness over the anterior hip and laterally over the greater trochanter. X-rays were again performed of the right hip. There were no obvious abnormalities other than the previous sacroiliac joint fusion. The diagnoses were other articular cartilage disorders of the right hip, lumbar region radiculopathy, and pain in the left hip. She was advised to continue physical therapy for the right hip. She was advised to follow-up with Roger Sung, MD regarding worsening low back and sacroiliac joint pain. An MR arthrogram of the left hip was ordered.

9

**Lincoln/Mason 0371**

On 01/30/2020, the claimant had an MRI left hip with arthrogram interpreted by Nicholas Moore, MD.
This demonstrated a focal cam deformity of the anterior left femoral head neck junction with associated anterior/anterior superior labral based tear. There was a small right hip joint effusion.

On 01/31/2020, the claimant followed up with Kelsey Chrane, PA-C. Her right hip pain has significantly improved. She continued to have lower back pain interfering with her participation in physical therapy. She had imaging of her left hip. She was still anticipating a spinal cord stimulator placement. On physical examination, there was tenderness along the spinous processes and paraspinal musculature and diffusely throughout the lower back including over the right sacroiliac joint. Motor strength of the lower extremities was intact. There was pain with range of motion, primarily extension. The diagnoses were low back pain, lumbar region spinal stenosis with neurogenic claudication, other intervertebral disc degeneration of the lumbar region, intervertebral disc disorders with radiculopathy lumbar region, sacroiliitis, pain in the right hip, and pain in the left hip. She was advised to call when she was ready to proceed with the spinal cord stimulator.

On 02/06/2020, the claimant followed up with Michael Huang, MD. She was eight weeks status post-surgery. She was now using a cane. She reported achiness of the anterior hip. She had an MR arthrogram of the left hip and had returned to discuss the findings. On physical examination, hip flexion on the right was to 105°, external rotation 40°, internal rotation 5°. There was tenderness of the right lateral hip and over the sacroiliac joint. The left hip range of motion had flexion 115°, external rotation to 55°, internal rotation to 5°. There was a positive anterior impingement test. Straight leg raise caused low back pain. There was tenderness over the anterior hip and laterally over the greater trochanter. The diagnoses were other articular cartilage disorders right hip, other articular cartilage disorders left hip, and pain in the left hip. They discussed options for managing her left hip. It was decided she would continue focusing on her right hip rehabilitation program and manage her left hip pain with anti-inflammatories.

On 02/12/2020, the claimant followed up with David Salek, MD. She was referred back for pain management. She did not want opiates and was looking for alternative care. She inquired about the use of CBD. On physical examination, she had full painless range of motion of all major muscle groups and joints. She had a positive Faber test and a positive Fortin finger test. She had positive lumbar quadrant testing. The diagnoses were status post right sacroiliac joint fusion, status post right hip labral repair, low back pain, right lower extremity radicular features, and positive spinal cord stimulator trial with Boston Scientific. She was prescribed Celebrex and Tylenol.

On 03/12/2020, the claimant followed up with Michael Huang, MD. She was 12 weeks status post right hip labral reconstruction. The right hip was doing well. Her biggest issue was tremendous pain over the right greater than left sacroiliac joint and lumbar spine. She had been in physical therapy but was having difficulty weight-bearing and was using crutches. The left hip also continued to be painful, unchanged since her last visit. On physical examination, hip flexion on the right was to 110°, external rotation 45°, internal rotation 5°. There was tenderness of the right lateral hip and over the sacroiliac joint. The left hip range of motion had flexion 120°,

10

**Lincoln/Mason 0372**

external rotation to 55°, internal rotation to 5°. There was a positive anterior impingement test. Straight leg raise caused low back pain. There was tenderness over the anterior hip and laterally over the greater trochanter.

The diagnoses were other articular cartilage disorders right hip, other articular cartilage disorders left hip, and pain in the left hip. The claimant decided to return to Roger Sung, MD to discuss any further options regarding her sacroiliac joints.

On 03/03/2020, the claimant followed up with Jeffrey Kent, MD. She continued to have worsening pain in the lower back along the sacroiliac joints. She was considering a consultation with Mayo Clinic. On physical examination, she had pain with range of motion of the hip and pain in the lower back and sacroiliac joints. The diagnoses were sacroiliac joint pain, chronic midline low back pain with sciatica, and tear of the right acetabular labrum. She was advised to continue to follow with her specialists.

On 05/01/2020, the claimant followed up with Michael Huang, MD. She had been working at physical therapy on the sacroiliac joints, which had been worsening her pain. The pain was radiating laterally and anteriorly towards the hip. She continued to have significant posterior pain. She had not yet returned to Roger Sung, MD, due to the coronavirus. She was working on walking around the block. She continued to have difficulty going up and down stairs and lying supine. Her pain was 8-9/10. On physical examination, hip flexion on the right was to 115°, external rotation 45°, internal rotation 5°. There was tenderness of the right lateral hip and over the sacroiliac joint. The left lower extremity was normal with unremarkable range of motion. The diagnoses were other articular cartilage disorders right hip, and right sacroiliitis. She was advised to return to Roger Sung, MD for further evaluation and treatment of the sacroiliac joints, and to continue physical therapy.

On 05/13/2020, the claimant followed up with Roger Sung, MD. She complained of bilateral sacroiliac joint pain. On physical examination, she had tenderness over both sacroiliac joints. The diagnoses were sacroiliitis, chronic pain syndrome, and sciatica. They were going to proceed with a lidocaine-only injection in the left sacroiliac joint. She was advised to continue considering a spinal cord stimulator.

On 05/22/2020, the claimant had a follow-up with Jeffrey Kent, MD. She was doing physical therapy. She reported having a vaginal yeast infection. Her physical examination was done via video conference and was normal. The diagnoses were osteoarthritis of the spine with radiculopathy in the lumbar region, tear of the right acetabular labrum, sacroiliac joint pain, and acute vaginitis. She was given Diflucan and advised to continue following with her specialists.

On 06/11/2020, the claimant underwent a sacroiliac joint injection on the left for the diagnosis of sacroiliitis. This was performed by David Salek, MD.

On 07/01/2020, the claimant followed up with Roger Sung, MD. She had the left sacroiliac joint injection and was pain free for about two hours. On physical examination, she continued to have tenderness along bilateral sacroiliac joints. The diagnoses were other intervertebral disc degeneration lumbar region, low back pain, and sacroiliitis. She was referred back to physical therapy because her treatment was interrupted by Covid-19.

11

**Lincoln/Mason 0373**

.........................................................................................................................................................................

On 07/01/2020, the claimant followed up with Jeffrey Kent, MD. She discussed the left-sided diagnostic sacroiliac joint injection.
They discussed needing rehab on the right sacroiliac joint and a possibility of fusing the left sacroiliac joint. She was considering a labral reconstruction on the left hip and a spinal cord stimulator. She continued having the right sacroiliac joint pain. She was applying to Social Security and had been denied. She requested a cyclobenzaprine refill. On physical examination, she had abnormal lower back and sacroiliac joints. The diagnoses were osteoarthritis of the spine with radiculopathy in the lumbar region, sacroiliac joint pain, and femoral acetabular impingement of both hips. Her cyclobenzaprine was refilled. She was advised to continue her current treatment plan with her specialists.

MRI of the lumbar spine from 07/31/2020 interpreted by José Pizarro, MD, demonstrated straightening of the normal lumbar lordosis. There was kyphosis L2-L3. At L1-L2, there was a central disc herniation impinging on the thecal sac causing mild spinal stenosis. At L2-L3, there was a broad central disc herniation causing mild to moderate spinal stenosis. At L3-L4, there was disc desiccation and right proximal neural foraminal disc herniation which were focal. There was mild right neural foraminal stenosis. At L5-S1, there was a central disc herniation with annular tearing, elevating the posterior longitudinal ligament causing mild spinal stenosis.

On 08/17/2020, the claimant followed up with Michael Huang, MD. She reported continued worsening pain. The pain was located over bilateral sacroiliac joint and lumbar spine. Since her last visit she had a diagnostic injection in the left sacroiliac joint, which gave her two hours a complete relief of pain. She has continued physical therapy without improvement. She continued to have bilateral lower extremity symptoms including pain, numbness, and tingling down to both feet. She had an MRI of the lumbar spine. She denied significant groin pain. She had an episode where the right lower extremity gave way resulting in a fall causing temporary numbness in her vaginal area. She rated her pain 8-9/10. She continued to use crutches for weight-bearing.  On physical examination, her gait was antalgic. Hip flexion on the right was to 115°, external rotation 45°, internal rotation 5°. There was tenderness of the right lateral hip and over the sacroiliac joint bilaterally, and lumbar spine. There were no impingement testing signs at the hip with passive range of motion. The left lower extremity was normal with unremarkable range of motion. Her most recent MRI of the lumbar spine from 07/31/2020 was reviewed. The diagnoses were other articular cartilage disorders right hip, and right sacroiliitis. She was advised to continue following with Roger Sung, MD.

On 08/19/2020, the claimant followed up with Roger Sung, MD. She felt worse with physical therapy. Her pain was in the back, both sacroiliac joint and now radiating down her legs. She had a new MRI ordered by her physical therapist. Her physical examination was normal. Her MRI was reviewed and without significant changes from her previous MRI. The diagnoses were low back pain, other intervertebral disc degeneration lumbar region, sacroiliitis, chronic pain syndrome, and sciatica. She was advised to have a new spinal cord stimulator trial due to changes in her pain pattern.

12

**Lincoln/Mason 0374**

**RESPONSE TO QUESTIONS:**

**1. What diagnoses are supported by the medical evidence?**

The medical evidence provided supports the diagnoses of femoroacetabular impingement bilaterally, right hip labral tear, lumbar degenerative disc disease, lumbar spondylosis, and bilateral sacroiliitis.

**2. Taking into consideration the entire clinical picture, including standards of care and evidence-based medicine, and any medication or other treatment side effects, please describe if there are any supported level of impairments which translates into restrictions and limitations from 7/21/2020 to the present? Please explain your medical rationale as to why or why not and provide a detailed explanation.**

Since 07/21/2020, the claimant had an MRI of the lumbar spine, which according to Roger Sung, MD was stable from the previous. The findings included degenerative disc disease, degenerative central spinal stenosis, and degenerative neuroforaminal stenosis. These were all mild to moderate in degree. There was no obvious impingement of exiting nerve roots. There was no visualized myelomalacia.

She had two subsequent medical visits, one with Michael Huang, MD, and one with Roger Sung, MD. She had been feeling worse in terms of her pain and symptomatology. However, there were no new physical examination findings. Her most significant and consistent physical examination findings include tenderness and decreased range of motion. She does not have any neurologic deficits. No new restrictions were given by either of the physicians.

Although the claimant has subjective complaints of pain and falls, there was a lack of functional deficits on physical examination to support the need for restrictions.

**3. If functional impairment is supported, please describe how that translates into restrictions or limitations and for what period(s) of time. Please define in terms of frequency (never, occasional, frequent, constant) and task (sit, stand, lift/carry, type etc.). Please explain your medical rationale for any restrictions or limitations or why restrictions and limitations are not supported.**

Functional impairment is not supported by the documentation from 07/21/2020 to present.

**4. Does the medical documentation support that any medical condition alone, or in combination would preclude the claimant from sustained occupational functioning on a full-time basis? Please explain why or why not.**

Based on the provided medical documentation since 07/21/2020, there is no evidence that would preclude the claimant from sustained occupational functioning on a full-time basis.

**5. When contacting the treating provider please discuss the claimant's condition, treatment, and functional capacity. Please indicate the information reviewed and indicate**

13

**Lincoln/Mason 0375**

**whether or not you reach consensus with the treating provider. If not, please discuss your
final assessment after the call.**

**AP CONTACT:**

I called the number listed (719-632-7669) on 9/4/20 at 11:08am CST and left a message for a
return call on Kirsten's general office voicemail.

I called the number listed (719-632-7669) on 9/10/20 at 11:10am CST and left a message for a
return call on Kirsten's general office voicemail.

I called the number listed (719-278-3627) on 9/4/20 at 11:47am CST and spoke with Jennifer
and left a message for a return call.

My staff received a return call from Dr. Kent on 9/9/20 at 4:10pm CST and I was unable to take
the call. A message was left for a return call to an alternate number (719-799-0784).

I called the alternate number (719-799-0784) on 9/10/20 at 11:15am CST and left a message for
a return call on Dr. Kent's general voicemail.

At the time of submission, no return calls have been received.

**Daniel Fung, M.D.**
**Board Certified Physical Medicine & Rehabilitation**
**Board Certified Pain Medicine**
**License: A107358 CA**

14

**Lincoln/Mason 0376**



**Corporate Office**

*Exam Coordinators Network   A division of Genex Services, LLC*

Claimant Name: Jan Mason
Claim Number: 9291624
Case Number: 156002-1

"I, Daniel Fung, MD, am a physician duly licensed to practice medicine in the State of **CA**_____. I am an independent contractor and I am paid to review claim files and render medical opinions. I am not responsible for deciding whether a claimant is entitled to insurance benefits. My role is to provide objective medical opinions to Genex Services, LLC.

I hereby attest that the following statements are true:

- I have the scope of licensure or certification that typically manages the medical condition, procedure, treatment or issue under review
- I have current, relevant knowledge to render an opinion for the case under review
- No financial incentive was received based on the outcome of the opinion
- No delegation of the examination rendered

I attest that no conflict of interest exists, this includes any situation where an individual has a material, professional, familial, or financial conflict of interest regarding any of the following:

- Compensation for IME/Peer Review activities that are dependent in any way on the specific outcome of the case
- Have involvement with the case prior to its referral for review
- The referring entity
- The health benefit plan
- The consumer
- The attending provider or any other advisor previously involved in the case
- The facility at which the recommended healthcare service(s) would be provided
- The developer or manufacturer of the principal drug, device, procedure, or other therapy being recommended for the customer

I declare that the information contained in the above-referenced report was prepared by and is the work product of the undersigned and is true to the best of my knowledge and information. I certify that my medical/professional license is current and is in good standing in the jurisdiction in which my practice is located.

_____     9.14.2020
Signature of Physician                                              Date

Medical/Professional License # **A107358 CA**_____

**Lincoln/Mason 0377**

| From: | LFGNotifications@LFG.com |
|---|---|
| Sent: | Monday, September 28, 2020 9:48:14 AM |
| To: | |
| CC: | |
| BCC: | |
| Subject: | [Send Secure]Charter Communications, Inc. Claim No. 9291624 Jan Mason |
| Attachments: | cc_v35schykuqcumtraadwv_9105512_9367557.pdf; |

This notification contains important information regarding a claim with Lincoln Financial Group company. THIS IS AN AUTOMATED EMAIL. PLEASE DO NOT RESPOND. You may use the contact information in the attached letter to respond if needed.

**Lincoln/Mason 0378**



Lincoln Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7213
London, KY 40742-7213
Phone No.: (888) 437-7611
Secure Fax No.: (603) 430-1926

September 28, 2020

Dr. Jeffrey Kent
9480 BRIAR VILLAGE POINT STE 2
COLORADO SPRINGS, CO 80920

RE:    Long Term Disability (LTD) Benefits
       Charter Communications, Inc.
       Claim #: 9291624
       Claimant: Jan Mason
       Claimant D.O.B.:

Dear Dr. Jeffrey Kent:

We are the Disability Claim Administrator for your patient, Jan Mason.

On September 14, 2020 an Independent Medical Review was performed to assist us in determining Ms. Mason' eligibility for Long Term Disability (LTD) benefits. The results of this assessment demonstrate the following:

> *Since 07/21/2020, the claimant had an MRI of the lumbar spine, which according to Roger Sung, MD was stable from the previous. The findings included degenerative disc disease, degenerative central spinal stenosis, and degenerative neuroforaminal stenosis. These were all mild to moderate in degree. There was no obvious impingement of exiting nerve roots. There was no visualized myelomalacia.*

> *She had two subsequent medical visits, one with Michael Huang, MD, and one with Roger Sung, MD. She had been feeling worse in terms of her pain and symptomatology. However, there were no new physical examination findings. Her most significant and consistent physical examination findings include tenderness and decreased range of motion. She does not have any neurologic deficits. No new restrictions were given by either of the physicians.*

> *Although the claimant has subjective complaints of pain and falls, there was a lack of functional deficits on physical examination to support the need for restrictions.*

Please review the enclosed report by October 9, 2020, and provide any comments you wish to have considered. If you disagree with September 14, 2020 findings, please detail the specific areas with which you disagree and provide medical documentation to support your position.

We ask that you provide this information by October 9, 2020. Failure to provide the requested

1  of  2

**Lincoln/Mason 0379**

information may result in an adverse benefit determination. The information can be faxed to our office at our secure fax number (603) 430-1926 or mailed to the above address.

Although HIPAA does not apply to disability insurance carriers, we understand your responsibilities under HIPAA as a health care provider, and our associated responsibility of ensuring this information is protected against deliberate or inadvertent misuse or disclosure.

As the insurance carrier providing employer sponsored Long Term Disability (LTD) benefits coverage to your patient, we have enclosed a HIPAA compliant authorization signed by Ms. Mason allowing the release of information to our company. This authorization specifically allows you to release medical information to us and is valid for two years from the date of Ms. Mason' signature.

If you have any questions regarding this matter, please contact me.

Sincerely,

Mary Avrett
Appeals Consultant
Phone No.: (888) 437-7611 Ext. 16371
Secure Fax No.: (603) 430-1926

CC:    Jan Mason


Attachments:    9291624-EMPLOYEE/CLAIMANT-AUTHORIZATION-09.25.2019
               9291624-MEDICAL-MEDICAL RECORDS-09.15.2020

2  of 2

**Lincoln/Mason 0380**



Lincoln Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7213
London, KY 40742-7213
Phone No.: (888) 437-7611
Secure Fax No.: (603) 430-1926

| | |
|---|---|
| Date:  September 28, 2020 | |
| To:  DAVID SALEK<br>PAIN MANAGEMENT<br>6685 DELMONICO DR SUITE C<br>COLORADO SPRINGS CO 80919 | |
| Attn:  Urgent - Dr. Salek | |
| Fax:  (719) 598-2775 | |
| From:  Mary Avrett<br>Appeals Consultant<br>Phone No.: Phone No.: (888) 437-7611<br>Secure Fax No.: (603) 430-1926 | |
| Total Pages<br>(Including Cover):     20 | |
| RE:<br><br>Claim #:     9291624<br>Claimant:   Jan Mason<br><br>Charter Communications, Inc. | |

This fax, and any attachments thereto, is intended only for the use of the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this fax, you are hereby notified that any dissemination, distribution or copying of this fax, and any attachments thereto, is strictly prohibited. If you have received this fax in error, please notify me by telephone at (888) 437-7611 and permanently shred the original and any copy of any fax and any printout thereof.

**Lincoln/Mason 0381**



Lincoln Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7213
London, KY 40742-7213
Phone No.: (888) 437-7611
Secure Fax No.: (603) 430-1926

September 28, 2020

David Salek
Pain Management
6685 DELMONICO DR SUITE C
COLORADO SPRINGS, CO 80919

RE:    Long Term Disability (LTD) Benefits
       Charter Communications, Inc.
       Claim #: 9291624
       Claimant: Jan Mason
       Claimant D.O.B.:

Dear David Salek:

We are the Disability Claim Administrator for your patient, Jan Mason.
On September 14, 2020 a/an Independent Medical Review was performed to assist us in determining
Ms. Mason' eligibility for Long Term Disability (LTD) benefits. The results of this assessment
demonstrate the following:

> *Since 07/21/2020, the claimant had an MRI of the lumbar spine, which according to Roger
> Sung, MD was stable from the previous. The findings included degenerative disc disease,
> degenerative central spinal stenosis, and degenerative neuroforaminal stenosis. These were all
> mild to moderate in degree. There was no obvious impingement of exiting nerve roots. There
> was no visualized myelomalacia.*

> *She had two subsequent medical visits, one with Michael Huang, MD, and one with Roger
> Sung, MD. She had been feeling worse in terms of her pain and symptomatology. However,
> there were no new physical examination findings. Her most significant and consistent physical
> examination findings include tenderness and decreased range of motion. She does not have any
> neurologic deficits. No new restrictions were given by either of the physicians.*

> *Although the claimant has subjective complaints of pain and falls, there was a lack of
> functional deficits on physical examination to support the need for restrictions.*

Please review the enclosed report by October 9, 2020, and provide any comments you wish to
have considered. If you disagree with September 14, 2020 findings, please detail the specific areas
with which you disagree and provide medical documentation to support your position.

We ask that you provide this information by October 9, 2020. Failure to provide the requested
information may result in an adverse benefit determination. The information can be faxed to our

**Lincoln/Mason 0382**

office at our secure fax number (603) 430-1926 or mailed to the above address.

Although HIPAA does not apply to disability insurance carriers, we understand your responsibilities under HIPAA as a health care provider, and our associated responsibility of ensuring this information is protected against deliberate or inadvertent misuse or disclosure.

As the insurance carrier providing employer sponsored Long Term Disability (LTD) benefits coverage to your patient, we have enclosed a HIPAA compliant authorization signed by Ms. Mason allowing the release of information to our company. This authorization specifically allows you to release medical information to us and is valid for two years from the date of Ms. Mason' signature.

If you have any questions regarding this matter, please contact me.

Sincerely,

Mary Avrett
Appeals Consultant
Phone No.: (888) 437-7611 Ext. 16371
Secure Fax No.: (603) 430-1926

CC:    Jan Mason


Attachments:   9291624-EMPLOYEE/CLAIMANT-AUTHORIZATION-09.25.2019
               9291624-MEDICAL-MEDICAL RECORDS-09.15.2020

**Lincoln/Mason 0383**

3L268190622


# Lincoln
**Financial Group**®

Liberty Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7207
London, KY 40742-7207
Phone No.: (844) 384-5858
Secure Fax No.: (603) 334-5994

## AUTHORIZATION FOR THE RELEASE OF INFORMATION INCLUDING PROTECTED HEALTH INFORMATION

**I HEREBY AUTHORIZE THE USE OR DISCLOSURE OF INFORMATION ABOUT ME AS DESCRIBED BELOW:**

**Person(s) or group(s) of persons authorized to use or disclose the information:** Any physicians, medical practitioners, hospitals, clinics, HMOs, long-term care facilities, medical or medically-related facilities, pharmacies, insurance companies, credit or consumer reporting agency, financial/educational institutions, current or former employer, governmental agency, MIB Inc., and any insurance support organizations.

**Person(s) or group(s) of persons authorized to collect or otherwise receive the information:** The particular Company in the Lincoln Financial Group of companies to which I am submitting a claim and its authorized representatives, agents and/or employees, the Plan Sponsor (if self-insured Plan) and other organizations providing claims management services.

**Description of the information that may be used or disclosed:** This Authorization specifically includes the release of all information related to:

* My physical and mental health and my insurance policies and claims, including, but not limited to, those containing diagnosis, treatments, prognosis, prescription drug information, alcohol or drug abuse or information regarding communicable or infectious conditions, including HIV/AIDS.
* Job duties, earnings, personnel records and other work related information and credit reports, bank records, and federal and state tax returns.
* Information concerning Social Security benefits, including any records pertaining to me and my dependents

**The information will be used or disclosed only for the following purpose(s):** For purposes of investigating, evaluating and processing my claim, and/or for insurance-related functions.

## STATEMENTS OF UNDERSTANDING & ACKNOWLEDGMENT:

**I understand** that information used or disclosed pursuant to this authorization could be subject to redisclosure as necessary by the recipient and, if so, may not be subject to federal or state law protecting its confidentiality.

**I understand** that I may revoke this authorization in writing at any time by sending a written revocation to the Company in the Lincoln Financial Group of companies to which I have submitted a claim, except to the extent that action has been taken in reliance on this authorization, or to the extent that other law provides the Company with the right to contest a claim. I also understand that the revocation of this authorization will not affect uses and disclosures of my health information for purposes of treatment, payment and health care operations.

**I understand** that authorizing the disclosure of my health information is voluntary and the provision of health care services to me is not conditioned on whether I sign this authorization. If I choose not to sign this authorization, insurance coverage or claim payments may be denied or delayed.

This authorization shall remain in force for 24 months from the date of signature, except to the extent applicable state law imposes or allows a different duration. The information obtained under this authorization will be retained in accordance with the Company's standard retention policy and applicable law. I understand that I may request a copy of this authorization.

Name of claimant (print) _____ JAN K MASON _____

Name of legal representative, if applicable (print) _____   Relationship _____

Signature of claimant or legal representative _____ Jan K Mason _____

Date of Birth: __ _____ Claim Number: __9291624__ Date: __09/14/19__

**A copy of this authorization will be considered as valid as the original.**

**Lincoln/Mason 0384**

3L268190622



Liberty Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7207
London, KY 40742-72097
Phone No.: (844) 384-5858
Secure Fax No.: (603) 334-5994

### AUTHORIZATION FOR THE RELEASE OF PROTECTED HEALTH INFORMATION

**I HEREBY AUTHORIZE THE USE OR DISCLOSURE OF HEALTH INFORMATION ABOUT ME AS DESCRIBED BELOW:**

**Person(s) or group(s) of persons authorized to use or disclose the information:** Any physicians, medical practitioners, hospitals, clinics, HMOs, long-term care facilities, medical or medically-related facilities, pharmacies, insurance companies, Plan Sponsor/ Administrator, governmental agency, MIB Inc., and any insurance support organizations.

**Person(s) or group(s) of persons authorized to collect or otherwise receive the information:** The particular Company in the Lincoln Financial Group of companies to which I am submitting a claim and its authorized representatives, agents and/or employees, the Plan Sponsor (if self-insured Plan) and other organizations providing claims management services.

**Description of the information that may be used or disclosed:** This Authorization specifically includes the release of all psychotherapy notes relating to me, without restriction, including psychotherapy notes recorded in any medium documenting or analyzing the contents of conversations during private counseling sessions and/or group, joint or family counseling sessions.

**The information will be used or disclosed only for the following purpose(s):** For purposes of investigating, evaluating and processing my claim, and/or for insurance-related functions.

**STATEMENTS OF UNDERSTANDING & ACKNOWLEDGMENT:**

I understand that information used or disclosed pursuant to this authorization could be subject to redisclosure as necessary by the recipient and, if so, may not be subject to federal or state law protecting its confidentiality.

I understand that I may revoke this authorization in writing at any time by sending a written revocation to the Company in the Lincoln Financial Group of companies to which I have submitted a claim, except to the extent that action has been taken in reliance on this authorization, or to the extent that other law provides the Company with the right to contest a claim. I also understand that the revocation of this authorization will not affect uses and disclosures of my health information for purposes of treatment, payment and health care operations.

I understand that authorizing the disclosure of this health information is voluntary and the provision of health care services to me is not conditioned on whether I sign this authorization. If I choose not to sign this authorization, insurance coverage or claim payments may be denied or delayed.

This authorization shall remain in force for 24 months from the date of signature, except to the extent applicable state law imposes or allows a different duration. The information obtained under this authorization will be retained in accordance with the Company's standard retention policy and applicable law. I understand that I may request a copy of this authorization.

Name of claimant (print) _____ JAN K MASON _____

Name of legal representative, if applicable (print) _____ Relationship _____

Signature of claimant or legal representative _____ Jan K Mason _____

Date of Birth: __ _____ Claim Number: __9291624__ Date: ___08/14/19___

**A copy of this authorization will be considered as valid as the original**

Lincoln/Mason 0385

**Daniel Fung, M.D.**
**Board Certified Physical Medicine & Rehabilitation**
**Board Certified Pain Medicine**

**CLAIMANT NAME:** Jan Mason
**ECN #:** 156002-1
**CLAIM #:** 9291624
**DATE OF LOSS:** 04/17/2019
**DATE OF REVIEW:** 09/14/2020
**CASE TYPE:** Long-Term Disability

**DIAGNOSIS:** Pain in right hip

**MEDICAL RECORDS REVIEWED:**
11/11/2015, Job Description, Charter Communications.
12/19/2017, State of Colorado Traffic Accident Report, Richard DuVall, Credentials Not Provided.
07/11/2018, X-Ray Lumbar Spine, Jon Snider, MD.
09/12/2018, MRI Pelvis and Sacroiliac Joints, Joseph Ugorji, DO.
11/27/2018, CT Pelvis, Nicholas Moore, MD.
01/09/2019, Fluoroscopically Guided Injection of the Right Hip Imaging, Jacob Becker, MD.
01/09/2019, Fluoroscopically Guided Injection of the Left Hip Imaging, Jacob Becker, MD.
01/31/2019, Progress Note, Tyler Bron, MD.
02/11/2019, MRI Arthrogram Right Hip, Craig LaBuda, MD.
02/18/2019, Progress Note, Tyler Bron, MD.
03/07/2019, Progress Note, Michael Huang, MD.
04/17/2019, Operative Report, Michael Huang, MD, MD.
04/18/2019, Progress Note, Kristen Reiss, PA-C.
05/02/2019, Progress Note, Kristen Reiss, PA-C.
06/04/2019, Progress Note, Michael Huang, MD.
07/09/2019, Progress Note, Michael Huang, MD.
07/23/2019, Progress Note, Jeffrey Kent, MD.
07/29/2019, Progress Note, James Bee, MD.
08/06/2019, Progress Note, Jeffrey Kent, MD.
08/08/2019, MRI Lumbar Spine, Jacob Becker, MD.
08/19/2019, Progress Note, James Bee, MD.
08/21/2019, Progress Note, Roger Sung, MD.
08/28/2019, Progress Note, David Salek, MD.
09/03/2019, Long-Term Disability Claim Creation Request, Ethan Crockett, Credentials Not Provided.
09/14/2019, Disability Questionnaires an Application for Benefits, Jan Mason.
09/17/2019, Physical Therapy Evaluation, Catherine Bottorff, PT, DPT.
10/03/2019, Nursing Memorandum, Cassandra K., RN.
10/04/2019, Disability Questionnaires an Application for Benefits, Jan Mason.
10/07/2019, Progress Note, Jeffrey Kent, MD.
10/11/2019, Progress Note, Kristen Reiss, PA-C.

1

**Lincoln/Mason 0386**

10/22/2019, MRI Right Hip Arthrogram, John Campbell, MD.
10/25/2019, Progress Note, Michael Huang, MD.
10/27/2019, Peer Review, Richard Avioli, MD.
11/20/2019, Progress Note, Roger Sung, MD.
12/09/2019, Operative Report, Michael Huang, MD.
12/10/2019, Progress Note, Michael Huang, MD.
12/13/2019, Physical Therapy Initial Examination, Taylor Mark Pfeifer, PT, DPT.
12/13/2019, Physical Therapy Plan of Care, Taylor Mark Pfeifer, PT, DPT.
12/13/2019, Physical Therapy Daily Note, Taylor Mark Pfeifer, PT, DPT.
12/17/2019, Physical Therapy Daily Note, Jennifer Mulligan, PT, DPT.
12/23/2019, Progress Note, Phillip Falender, PA-C.
12/24/2019, Physical Therapy Daily Note, Kerri Anne Tiller, PT, DPT.
12/27/2019, Physical Therapy Daily Note, Taylor Mark Pfeifer, PT, DPT.
12/30/2019, Physical Therapy Daily Note, Kerri Anne Tiller, PT, DPT.
12/30/2019, Progress Note, Jeffrey Kent, MD.
01/02/2020, Physical Therapy Note, Sandi Feeney, PT, DPT.
01/06/2020, Physical Therapy Daily Note, Kerri Anne Tiller, PT, DPT.
01/10/2020, Physical Therapy Daily Note, Kerri Anne Tiller, PT, DPT.
01/14/2020, Physical Therapy Daily Note, Jennifer Mulligan, PT, DPT.
01/17/2020, Physical Therapy Daily Note, Taylor Mark Pfeifer, PT, DPT.
01/20/2020, Physical Therapy Daily Note, Kerri Anne Tiller, PT, DPT.
01/21/2020, Progress Note, Kristen Reiss, PA-C.
01/23/2020, Physical Therapy Daily Note, Kerri Anne Tiller, PT, DPT.
01/27/2020, Physical Therapy Daily Note, Kerri Anne Tiller, PT, DPT.
01/29/2020, Physical Therapy Daily Note, Taylor Mark Pfeifer, PT, DPT.
01/30/2020, MRI Left Hip Arthrogram, Nicholas Moore, MD.
01/31/2020, Progress Note, Kelsey Chrane, PA-C.
02/04/2020, Physical Therapy Daily Note, That Jennifer Mulligan, PT, DPT.
02/06/2020, Progress Note, Michael Huang, MD.
02/11/2020, Physical Therapy Daily Note, Ellen Jackson, PT.
02/12/2020, Progress Note, David Salek, MD.
02/20/2020, Physical Therapy Progress Note, Scott Moser, PT, DPT.
02/20/2020, Physical Therapy Daily Note, Scott Moser, PT, DPT.
02/25/2020, Physical Therapy Daily Note, Marc Phillips, PT, DPT.
03/03/2020, Progress Note, Jeffrey Kent, MD.
03/05/2020, Physical Therapy Daily Note, Marc Phillips, PT, DPT.
03/12/2020, Progress Note, Michael Huang, MD.
03/12/2020, Physical Therapy Daily Note, Marc Phillips, PT, DPT.
03/17/2020, Physical Therapy Daily Note, Marc Phillips, PT, DPT.
04/02/2020, Physical Therapy Note, Marc Phillips, PT, DPT.
04/09/2020, Physical Therapy Daily Note, Marc Phillips, PT, DPT.
04/16/2020, Physical Therapy Daily Note, Marc Phillips, PT, DPT.
04/23/2020, Physical Therapy Daily Note, Marc Phillips, PT, DPT.
04/30/2020, Physical Therapy Daily Note, Marc Phillips, PT, DPT.
05/01/2020, Progress Note, Michael Huang, MD.
05/07/2020, Physical Therapy Daily Note, Marc Phillips, PT, DPT.

**Lincoln/Mason 0387**

05/13/2020, Progress Note, Roger Sung, MD.
05/21/2020, Physical Therapy Daily Note, Marc Phillips, PT, DPT.
05/22/2020, Progress Note, Jeffrey Kent, MD.
06/11/2020, Procedure Note, David Salek, MD.
06/18/2020, Physical Therapy Daily Note, Marc Phillips, PT, DPT.
06/23/2020, Disability Questionnaires an Application for Benefits, Jan Mason.
07/01/2020, Progress Note, Roger Sung, MD.
07/01/2020, Medical Questionnaire, Jeffrey Kent, MD.
07/01/2020, Progress Note, Jeffrey Kent, MD.
07/09/2020, Physical Therapy Initial Examination, Marc Phillips, PT, DPT.
07/16/2020, Letter Correspondences, David Monti, MD.
07/16/2020, Peer Review, David Monti, MD.
07/16/2020, Physical Therapy Daily Note, Marc Phillips, PT, DPT.
07/21/2020, Written Request for Review, Jan Mason.
07/23/2020, Letter Correspondence, David Salek, MD.
07/23/2020, Physical Therapy Daily Note, Marc Phillips, PT, DPT.
07/31/2020, MRI Lumbar Spine, José Pizarro, MD.
08/06/2020, Physical Therapy Daily Note, Marc Phillips, PT, DPT.
08/13/2020, Physical Therapy Recertification Note, Marc Phillips, PT, DPT.
08/13/2020, Physical Therapy Daily Note, Marc Phillips, PT, DPT.
08/17/2020, Progress Note, Michael Huang, MD.
08/19/2020, Progress Note, Roger Sung, MD.
08/20/2020, Physical Therapy Daily Note, Marc Phillips, PT, DPT.
08/31/2020, Letter Correspondence, Jeffrey Kent, MD.

**HISTORY:**

I have been asked to review the medical records on behalf of ECN regarding Jan Mason. The claimant is a now 48-year-old female with a long-term disability claim from 04/17/2019. Her job title was Representative 3, Customer Service Billing. This was a sedentary position. Her primary diagnosis was pain in right hip.

On 12/18/2017, the claimant was involved in a motor vehicle accident. She was stopped in heavy traffic in the right through lane when another driver failed to come to a complete stop and collided with the rear passenger side bumper. She complained of hip and lower back pain. Moderate to severe damage was sustained to the rear passenger side bumper and quarter panel of the vehicle.

On 07/11/2018, the claimant had an x-ray the lumbosacral spine interpreted by Jon Snider, MD. This showed L3-L4 retrolisthesis and multilevel spondylosis. There was a metallic fixation of the sacroiliac joint.

On 09/12/2018, the claimant had an MRI of the pelvis and sacroiliac joints interpreted by Joseph Ugorji, DO. The report provided was not completely legible.

3

**Lincoln/Mason 0388**

On 11/27/2018, the claimant had a CT of the pelvis. This was interpreted by Nicholas Moore, MD. This demonstrated a right sacroiliac joint internal fixation without evidence of a hardware failure. There was bilateral cam type femoroacetabular impingement.

On 01/09/2019, the claimant had a fluoroscopically guided joint injection of the right hip. Her pain went from 5-6/10 to 0/10 in severity after the procedure. This was performed by Tyler Bron, MD.

On 01/09/2019, the claimant had a fluoroscopically guided joint injection of the left hip. Her pain went from 4/10 to 0/10 in severity after the procedure. This was performed by Tyler Bron, MD.

On 01/31/2019, the claimant was evaluated by Tyler Bron, MD. She complained of bilateral hip pain. She was following up after bilateral corticosteroid injections in her hips. For the initial 4-6 hours after the injection she had complete relief of her hip pain. This was only temporary and overall had not noticed any significant improvement from the injection. Her pain was worsening in the right greater than the left. She was also complaining of back pain. On physical examination of the right hip and pelvis, range of motion was limited with flexion 100°, internal rotation 0°, external rotation 15°. Range of motion elicited groin pain. Her pain was most severe with internal rotation. Her quadricep and hamstring strength was 5/5. Plantar and dorsiflexion strength was 5/5. Her sensation was intact over the lower extremity. Physical examination of the left hip and pelvis demonstrated range of motion limited with flexion 100°, internal rotation 0°, external rotation 15°. Range of motion elicited groin pain. Her pain was most severe with internal rotation. Her strength and sensory examination were intact. Her diagnostic testing was reviewed. The diagnoses were pain in right hip and pain in the left hip. Her pain was likely due to osteoarthritis versus labral pathology. An MRI arthrogram of the right hip was ordered.
On 02/11/2019, the claimant had an MRI arthrogram of the right hip. This was interpreted by Craig LaBuda, MD. This demonstrated a right hip anterior superior labral tear. There was mild, superior hip joint space narrowing and small anterior lateral femoral head-neck-osseous bump. There was a right sacroiliac joint fusion.

On 02/18/2019, the claimant followed up with Tyler Bron, MD. Her hip was still very painful. On physical examination of the right hip and pelvis, range of motion was limited with flexion to 100°, internal rotation 0°, external rotation 15°. Range of motion elicited groin pain. Her pain was most severe with internal rotation. Her quadricep and hamstring strength was 5/5. Plantar and dorsiflexion strength was 5/5. Her sensation was intact over the lower extremity. Physical examination of the left hip and pelvis demonstrated range of motion limited with flexion to 100°, internal rotation 0°, external rotation 15°. Range of motion elicited groin pain. Her pain was most severe with internal rotation. Her strength and sensory examination were intact. The MRI arthrogram was reviewed showing an anterior superior labral tear with minimal joint space narrowing, as well as signs of femoral acetabular impingement. The diagnoses were pain in the left hip, and pain in the right hip. She was referred to another physician for possible arthroscopic labral repair.

On 03/07/2019, the claimant was seen by Michael Huang, MD. She reported right hip pain over the posterior buttock area for about two years. She was treated initially for sacroiliac joint pain in

4

Lincoln/Mason 0389

September 2017 with sacroiliac joint fusion. She had recovered extremely well with resolution of her symptoms until she was involved in a car accident where she was rear-ended in December 2017. She reported some groin pain but mostly felt her pain in the posterior buttock area. Her symptoms were worse with sitting, but now consistently bothering her with standing and walking. She denied numbness or tingling. She had tried rest, activity modification, anti-inflammatories including ibuprofen without benefit. She tried physical therapy without benefit. She tried chiropractic treatment and massage therapy with limited benefit. She underwent an intra-articular injection and she had four hours of complete pain resolution but did not get any benefit long-term. Her symptoms were sharp, dull, and aching and made worse with sitting and walking. She also had associated stiffness and weakness. On physical examination, her gait was antalgic. Right hip range of motion demonstrated flexion to 115°, external rotation to 55°, and internal rotation to 10°. The anterior impingement test was positive reproducing her posterior buttock pain and somewhat reproducing groin pain. There was tenderness to palpation of the posterior buttock. She had a negative straight leg raise and negative posterior impingement test. At the left hip, range of motion demonstrated flexion to 25°, external rotation to 65°, and internal rotation to 10°. Anterior and posterior impingement tests and straight leg raise were negative. There was no tenderness to palpation. Her diagnostics were reviewed. The diagnoses were pain in the right hip, and other articular cartilage disorders of the right hip. This was further discussed as right hip pain secondary to labral tear and femoral acetabular impingement. Surgical intervention was discussed and planned for.

On 04/17/2019, the claimant had a right hip labral repair, arthroscopic acetabuloplasty, femoroplasty, osteoplasty to remove cam lesion, chondroplasty, synovectomy, capsular plication performed by Michael Huang, MD.

On 04/18/2019, the claimant followed up with Kristen Reiss, PA-C. She was a one-day status post-surgery. Her pain was well-controlled. She was utilizing her post-operative hip braces and crutches. On physical examination, the right hip wounds had minimal drainage. There was mild swelling which was expected. There were no signs of infection. The diagnosis was one-day status post right hip surgery. She was given postoperative instructions and advised to follow-up in two weeks.

On 05/02/2019, the claimant followed up with Kristen Reiss, PA-C. She was two weeks status post hip surgery. Her pain was well-controlled. She was doing well with physical therapy. On physical examination, the surgical wounds were healed without signs of infection. Her sensation was intact. The diagnoses were pain in the right hip, and other articular cartilage disorders of the right hip. Her sutures were removed. She was given further instructions for routine postoperative management. She was given oxycodone.

On 06/04/2019, the claimant followed up with Michael Huang, MD. She was six weeks status post right hip surgery. She reported increasing hip pain worse than her preoperative pain. It began after she started to discontinue the crutches two weeks prior. She also presented with a new complaint of left hip pain. She states having had this since December 2017, with progressive worsening. Her left was feeling worse after bearing more weight after her surgery. The pain was in the groin and worsened with prolonged sitting, prolonged standing, and squatting. Rotational activities also increased pain. She had tried rest, activity modification and ibuprofen. She was

5

**Lincoln/Mason 0390**

attending physical therapy. On physical examination of the left hip, flexion was to 115°, external rotation to 65° and internal rotation to 10°. The anterior impingement test was positive. She had tenderness in the anterior groin.

The right hip surgical wounds were well healed without signs of infection. Range of motion of the right hip was flexion to 115°, external rotation to 50° and internal rotation to 5° with continued positive anterior impingement test. X-rays of the bilateral hips were ordered. There was well-preserved femoral acetabular joint spacing. At the left hip there was evidence of femoral, acetabular impingement cam type with alpha angle measuring 63°. The diagnoses were pain in the right hip, and other articular cartilage disorders of the right hip. She was advised to go back on crutches for about two weeks. She was given indomethacin for inflammation. In terms of the left hip, there was suspicion for underlying labral tear. They were considering MRI arthrogram of the left hip.

On 07/09/2019, the claimant followed up with Michael Huang, MD. She reported increasing right posterior buttock and lumbar spine pain. She had minimal anterior hip pain. Her hip pain was much better since her previous visit. She was doing physical therapy. She was concerned about her lumbar spine and felt her pain was radiating down her buttock to the posterior thigh and into her calf. At one point in her history, she was considering a spinal stimulator for low back pain. She described her pain as nerve pain and burning. She had occasional mild anterior groin pain with activity which she was tolerating well. On physical examination, the right hip surgical wounds were well healed. Range of motion included flexion to 110°, external rotation to 50°, internal rotation to 10° and abduction of 40°. She had minimal anterior pain with any of these tests. She had significant posterior hip pain over the sacroiliac joint and lumbar spine. Straight leg raise was negative for radicular symptoms but increased her posterior hip buttock and spine pain. She was directly tender over the superior aspect of the sacroiliac joint and the right lumbosacral junction. The diagnoses were pain in right hip and other articular alleged disorders of the right hip. She was advised to continue with physical therapy. She planned on following up with her spine surgeon for an opinion. She was continued on indomethacin.

On 07/23/2019, the claimant was evaluated by Jeffrey Kent, MD. She reported recent labral tear repair. She was having worsening pain since starting to bear weight. She reported pain in her lower back with burning pain into her right leg more than her left leg. She requested a parking pass, Xanax, and Ambien. No physical examination was provided. The diagnoses were osteoarthritis of the spine with radiculopathy, tear of the right acetabular labrum, femoral acetabular impingement of both hips, primary insomnia, and anxiety. She was advised to continue to follow with her specialists, and to continue gabapentin, Xanax, and Ambien.

On 07/29/2019, the claimant was evaluated by James Bee, MD. She complained of pain in her buttock and back. The pain was sharp, burning, and constant. It was made worse with activity such as sitting, standing, walking, and bending. It was made better by lying down. She had done physical therapy, which was stopped due to worsening symptoms. She was taking indomethacin. Her pain was 8/10. Her activities of daily living were limited secondary to her complaints. On physical examination of the lumbar spine, there was no tenderness. The flexion of the lumbar spine brought the fingertips 6 inches from the floor. Extension was approximately 15°. There was some pain at the extremes of flexion and extension. There was pain with palpation along the gluteal musculature right greater than left. There was no pain with axial compression of the head

6

Lincoln/Mason 0391

and no pain with trunk rotation through the hips. She had a slow reciprocating gait. She was able to walk on the toes and heels. She moved easily to the examination table without assistance. Her strength throughout the lower extremities was 5/5. Her sensation was intact bilaterally. There were no upper motor signs. Her reflexes were normal. Straight leg raise was negative bilaterally. X-rays of the lumbosacral spine demonstrated a right sacroiliac joint fusion device. There was a collapse of the disc space at L2-L3. There was subtle retrolisthesis of L3 on L4. On flexion and extension, there was no instability. Her previous MRI of the lumbar spine from 05/12/2018 was also reviewed showing degenerative changes. There was no stenosis. The diagnoses were spinal stenosis in the lumbar region with neurogenic claudication, spondylosis without myelopathy or radiculopathy lumbar region, other intervertebral disc degeneration lumbar region, other intervertebral disc degeneration lumbosacral region, and pain in the right hip. A new MRI was ordered.

On 08/06/2019, the claimant was seen by Jeffrey Kent, MD. She continued with back pain that was worse on the right and made worse with walking. Driving and bending also worsened her pain.  She was taking Ambien to facilitate sleep. She was scheduled to have her MRI the next day. She was taking indomethacin. She was requesting FMLA paperwork. She was out of work. On physical examination, she had tenderness over the sacroiliac joints worse on the right. She was referred to physiatry. The diagnosis was acute right-sided low back pain with sciatica. On 08/08/2019, the claimant had an MRI of the lumbar spine interpreted by Jacob Becker, MD. This demonstrated stability since the previous MRI from 05/12/2018. There was mild multilevel degenerative disc disease with bulges and protrusions without high-grade spinal canal or neural foraminal stenosis at any level.

On 08/19/2019, the claimant followed up with James Bee, MD. She had undergone a spinal cord stimulator trial. It had helped some of her complaints but not her mid-back problems. On physical examination, there were no significant abnormalities. Her MRI of the lumbar spine was reviewed showing degenerative changes without obvious stenosis. The diagnoses were spinal stenosis in the lumbar region with neurogenic claudication, spondylosis without myelopathy or radiculopathy lumbar region, other intervertebral disc degeneration lumbar region, other intervertebral disc degeneration lumbosacral region. She was referred back for possible permanent spinal cord stimulator.

On 08/21/2019, the claimant followed up with Roger Sung, MD. She was requesting to go ahead with a spinal cord stimulator. On physical examination, she had diffuse lumbar tenderness extending into the buttock which was not specific to the sacroiliac joint. The diagnoses were low back pain, chronic pain syndrome, and sciatica. A trial for a different spinal cord stimulator.

On 08/28/2019, the claimant was seen by David Salek, MD. Her history was summarized and consistent with previous accounts. She reported pain that was constant, sharp, and burning with radiation down her right leg into the top of her toe. Her buttock pain was more severe than the leg pain. On physical examination, she had full painless range of motion of all major muscle groups and joints. She had a positive Faber test and a positive Fortin finger test. She had positive lumbar quadrant testing. Her strength and sensation were normal. Her reflexes were normal. The diagnoses were status post right sacroiliac joint fusion, status post right hip labral tear repair, low

7

Lincoln/Mason 0392

back pain, right lower extremity radicular features, and positive spinal cord stimulator trial with Boston Scientific. A trial for Stimwave was requested.

On 10/07/2019, the claimant followed up with Jeffrey Kent, MD. She complained of chronic low back pain and sacroiliac joint pain. She was considering a spinal cord stimulator. She was requesting FMLA paperwork and a flu vaccine. On physical examination, she had pain and tenderness in the sacroiliac joint areas and the right inguinal region. She had a normal urinalysis. She had x-rays of the hips, which were normal. The diagnoses were chronic low back pain with sciatica. She was advised to continue with her current treatment plan. She was given a flu shot.

On 10/11/2019, the claimant was evaluated by Kristen Reiss, PA-C. She reported pain that was worse than it was prior to her surgery. She was being evaluated for possible spinal cord stimulator. The pain in the posterior buttock radiated down the posterior thigh into her calf and foot. She had a burning pain in the groin area and lateral hip pain. This seemed to increase about a month prior when she started increasing her walking. She was only walking about 2 miles a week. On physical examination, she had an antalgic gait. Her surgical wounds of the right hip were well healed. Right hip flexion was to 110°, external rotation to 50°, internal rotation to 10° and abduction to 40°. She had negative anterior and posterior impingement tests. Her straight leg raise was negative for radicular symptoms but would increase her posterior hip and buttock pain. She was tender over the superior aspect of the sacroiliac joint on the right and lumbosacral junction as well as over the anterior hip and laterally over the greater trochanter. X-rays were completed showing evidence of previous sacroiliac joint fusion in the right sacroiliac joint. The diagnoses were pain in right hip and other articular cartilage disorders of the right hip. An MRI of the right hip was ordered.

On 10/22/2019, the claimant had an MRI of the right hip with arthrogram. This was interpreted by John Campbell, MD. This demonstrated postoperative changes within the right hip. The anterior aspect of the superior labrum was diminutive and blunted. The superior aspect of the anterior labrum was diminutive and irregular. These were likely postoperative. There was no recurrent tear. There was focal intermediate signal nodularity along the acetabular articular surface adjacent to a suture anchor track at the 12 o'clock position. There was a thin linear signal along the anterior capsule just lateral to the superior aspect of the anterior labrum, which could be related to capsular plication. Mild chondral irregularity along the lateral acetabulum likely reflecting postoperative change.

On 10/25/2019, the claimant followed up with Michael Huang, MD. She was there to discuss her recent MRI. On physical examination, she had an antalgic gait. Her surgical wounds of the right hip were well healed. Right hip flexion was to 110°, external rotation to 50°, internal rotation to 10° and abduction to 40°. She had negative anterior and posterior impingement tests. Her straight leg raise was negative for radicular symptoms but would increase her posterior hip and buttock pain. She was tender over the superior aspect of the sacroiliac joint on the right and lumbosacral junction as well as over the anterior hip and laterally over the greater trochanter. Due to the MRI findings, it was felt that she should undergo surgery to repair the labral tissue. The diagnoses were pain in right hip and other articular cartilage disorders of the right hip.

8

**Lincoln/Mason 0393**

On 11/20/2019, the claimant followed up with Roger Sung, MD. She was scheduled for a right hip labrum repair for 12/09/2019. The authorization for the stimulator trial was still pending. On physical examination, she was diffusely tender across her buttocks and lower back. Thoracic and lumbosacral x-rays showing multiple levels of lumbar degeneration.
The diagnoses were pain in the thoracic spine, low back pain, other intervertebral disc degeneration lumbar region, and sciatica. It was recommended that she try the Boston Scientific spinal cord stimulator since her insurance was denying the Stimwave.

On 12/09/2019, the claimant underwent a right hip labral reconstruction, chondroplasty, acetabuloplasty, femoroplasty, osteoplasty to remove cam lesion, synovectomy, capsular closure/plication by Michael Huang, MD.

On 12/10/2019, the claimant followed up with Michael Huang, MD. She was one-day status post right hip labral reconstruction surgery. Her pain was well-controlled. She was utilizing the postoperative crutches and braces. On physical examination, the wounds were intact with minimal drainage. There was mild swelling. The diagnosis was other articular cartilage disorders of the right hip. Physical therapy was initiated.

On 12/23/2019, the claimant followed up with Phillip Falender, PA-C. She was at two weeks status post right hip labral reconstruction surgery. She was progressing well with physical therapy. On physical examination, there were no signs of infection. Hip flexion was to 90°. The Steri-Strips were removed without difficulty. The diagnosis was other articular cartilage disorders of the right hip. She was given further instruction for increasing weight-bearing and advised to continue physical therapy.

On 12/30/2019, the claimant followed up with Jeffrey Kent, MD. She had her right labral repair. She felt worse. Her pain was increased with therapy. She was still considering a spinal stimulator. She had issues with her other hip. She resigned from her cable job. On physical examination, she was tearful at times and in a brace for her right hip. Diagnoses were chronic low back pain with sciatica, sacroiliac joint pain, and tear of the right acetabular labrum. She was advised to continue her current treatment plan.

On 01/21/2020, the claimant was evaluated by Kristen Reiss, PA-C. She was six weeks status post right hip labral reconstruction. She reported her hip pain was improving. Her lower back pain, pain over the sacroiliac joint and radicular symptoms had worsened. She was also following up for her left hip pain. Physical therapy was not helpful for the left hip. On physical examination, right hip flexion was to 100°, external rotation to 40°, and internal rotation to 5°. There was tenderness over the lateral right hip and right sacroiliac joint. The left hip range of motion included flexion to 110°, external rotation to 50°, internal rotation to 5°. She had a positive anterior impingement test. The straight leg raise produced low back pain. There was tenderness over the anterior hip and laterally over the greater trochanter. X-rays were again performed of the right hip. There were no obvious abnormalities other than the previous sacroiliac joint fusion. The diagnoses were other articular cartilage disorders of the right hip, lumbar region radiculopathy, and pain in the left hip. She was advised to continue physical therapy for the right hip. She was advised to follow-up with Roger Sung, MD regarding worsening low back and sacroiliac joint pain. An MR arthrogram of the left hip was ordered.

9

Lincoln/Mason 0394

On 01/30/2020, the claimant had an MRI left hip with arthrogram interpreted by Nicholas Moore, MD.

This demonstrated a focal cam deformity of the anterior left femoral head neck junction with associated anterior/anterior superior labral based tear. There was a small right hip joint effusion.

On 01/31/2020, the claimant followed up with Kelsey Chrane, PA-C. Her right hip pain has significantly improved. She continued to have lower back pain interfering with her participation in physical therapy. She had imaging of her left hip. She was still anticipating a spinal cord stimulator placement. On physical examination, there was tenderness along the spinous processes and paraspinal musculature and diffusely throughout the lower back including over the right sacroiliac joint. Motor strength of the lower extremities was intact. There was pain with range of motion, primarily extension. The diagnoses were low back pain, lumbar region spinal stenosis with neurogenic claudication, other intervertebral disc degeneration of the lumbar region, intervertebral disc disorders with radiculopathy lumbar region, sacroiliitis, pain in the right hip, and pain in the left hip. She was advised to call when she was ready to proceed with the spinal cord stimulator.

On 02/06/2020, the claimant followed up with Michael Huang, MD. She was eight weeks status post-surgery. She was now using a cane. She reported achiness of the anterior hip. She had an MR arthrogram of the left hip and had returned to discuss the findings. On physical examination, hip flexion on the right was to 105°, external rotation 40°, internal rotation 5°. There was tenderness of the right lateral hip and over the sacroiliac joint. The left hip range of motion had flexion 115°, external rotation to 55°, internal rotation to 5°. There was a positive anterior impingement test. Straight leg raise caused low back pain. There was tenderness over the anterior hip and laterally over the greater trochanter. The diagnoses were other articular cartilage disorders right hip, other articular cartilage disorders left hip, and pain in the left hip. They discussed options for managing her left hip. It was decided she would continue focusing on her right hip rehabilitation program and manage her left hip pain with anti-inflammatories.

On 02/12/2020, the claimant followed up with David Salek, MD. She was referred back for pain management. She did not want opiates and was looking for alternative care. She inquired about the use of CBD. On physical examination, she had full painless range of motion of all major muscle groups and joints. She had a positive Faber test and a positive Fortin finger test. She had positive lumbar quadrant testing. The diagnoses were status post right sacroiliac joint fusion, status post right hip labral repair, low back pain, right lower extremity radicular features, and positive spinal cord stimulator trial with Boston Scientific. She was prescribed Celebrex and Tylenol.

On 03/12/2020, the claimant followed up with Michael Huang, MD. She was 12 weeks status post right hip labral reconstruction. The right hip was doing well. Her biggest issue was tremendous pain over the right greater than left sacroiliac joint and lumbar spine. She had been in physical therapy but was having difficulty weight-bearing and was using crutches. The left hip also continued to be painful, unchanged since her last visit. On physical examination, hip flexion on the right was to 110°, external rotation 45°, internal rotation 5°. There was tenderness of the right lateral hip and over the sacroiliac joint. The left hip range of motion had flexion 120°,

10

**Lincoln/Mason 0395**

external rotation to 55°, internal rotation to 5°. There was a positive anterior impingement test. Straight leg raise caused low back pain. There was tenderness over the anterior hip and laterally over the greater trochanter.

The diagnoses were other articular cartilage disorders right hip, other articular cartilage disorders left hip, and pain in the left hip. The claimant decided to return to Roger Sung, MD to discuss any further options regarding her sacroiliac joints.

On 03/03/2020, the claimant followed up with Jeffrey Kent, MD. She continued to have worsening pain in the lower back along the sacroiliac joints. She was considering a consultation with Mayo Clinic. On physical examination, she had pain with range of motion of the hip and pain in the lower back and sacroiliac joints. The diagnoses were sacroiliac joint pain, chronic midline low back pain with sciatica, and tear of the right acetabular labrum. She was advised to continue to follow with her specialists.

On 05/01/2020, the claimant followed up with Michael Huang, MD. She had been working at physical therapy on the sacroiliac joints, which had been worsening her pain. The pain was radiating laterally and anteriorly towards the hip. She continued to have significant posterior pain. She had not yet returned to Roger Sung, MD, due to the coronavirus. She was working on walking around the block. She continued to have difficulty going up and down stairs and lying supine. Her pain was 8-9/10. On physical examination, hip flexion on the right was to 115°, external rotation 45°, internal rotation 5°. There was tenderness of the right lateral hip and over the sacroiliac joint. The left lower extremity was normal with unremarkable range of motion. The diagnoses were other articular cartilage disorders right hip, and right sacroiliitis. She was advised to return to Roger Sung, MD for further evaluation and treatment of the sacroiliac joints, and to continue physical therapy.

On 05/13/2020, the claimant followed up with Roger Sung, MD. She complained of bilateral sacroiliac joint pain. On physical examination, she had tenderness over both sacroiliac joints. The diagnoses were sacroiliitis, chronic pain syndrome, and sciatica. They were going to proceed with a lidocaine-only injection in the left sacroiliac joint. She was advised to continue considering a spinal cord stimulator.

On 05/22/2020, the claimant had a follow-up with Jeffrey Kent, MD. She was doing physical therapy. She reported having a vaginal yeast infection. Her physical examination was done via video conference and was normal. The diagnoses were osteoarthritis of the spine with radiculopathy in the lumbar region, tear of the right acetabular labrum, sacroiliac joint pain, and acute vaginitis. She was given Diflucan and advised to continue following with her specialists.

On 06/11/2020, the claimant underwent a sacroiliac joint injection on the left for the diagnosis of sacroiliitis. This was performed by David Salek, MD.

On 07/01/2020, the claimant followed up with Roger Sung, MD. She had the left sacroiliac joint injection and was pain free for about two hours. On physical examination, she continued to have tenderness along bilateral sacroiliac joints. The diagnoses were other intervertebral disc degeneration lumbar region, low back pain, and sacroiliitis. She was referred back to physical therapy because her treatment was interrupted by Covid-19.

11

**Lincoln/Mason 0396**

On 07/01/2020, the claimant followed up with Jeffrey Kent, MD. She discussed the left-sided diagnostic sacroiliac joint injection.
They discussed needing rehab on the right sacroiliac joint and a possibility of fusing the left sacroiliac joint. She was considering a labral reconstruction on the left hip and a spinal cord stimulator. She continued having the right sacroiliac joint pain. She was applying to Social Security and had been denied. She requested a cyclobenzaprine refill. On physical examination, she had abnormal lower back and sacroiliac joints. The diagnoses were osteoarthritis of the spine with radiculopathy in the lumbar region, sacroiliac joint pain, and femoral acetabular impingement of both hips. Her cyclobenzaprine was refilled. She was advised to continue her current treatment plan with her specialists.

MRI of the lumbar spine from 07/31/2020 interpreted by José Pizarro, MD, demonstrated straightening of the normal lumbar lordosis. There was kyphosis L2-L3. At L1-L2, there was a central disc herniation impinging on the thecal sac causing mild spinal stenosis. At L2-L3, there was a broad central disc herniation causing mild to moderate spinal stenosis. At L3-L4, there was disc desiccation and right proximal neural foraminal disc herniation which were focal. There was mild right neural foraminal stenosis. At L5-S1, there was a central disc herniation with annular tearing, elevating the posterior longitudinal ligament causing mild spinal stenosis.

On 08/17/2020, the claimant followed up with Michael Huang, MD. She reported continued worsening pain. The pain was located over bilateral sacroiliac joint and lumbar spine. Since her last visit she had a diagnostic injection in the left sacroiliac joint, which gave her two hours a complete relief of pain. She has continued physical therapy without improvement. She continued to have bilateral lower extremity symptoms including pain, numbness, and tingling down to both feet. She had an MRI of the lumbar spine. She denied significant groin pain. She had an episode where the right lower extremity gave way resulting in a fall causing temporary numbness in her vaginal area. She rated her pain 8-9/10. She continued to use crutches for weight-bearing.  On physical examination, her gait was antalgic. Hip flexion on the right was to 115°, external rotation 45°, internal rotation 5°. There was tenderness of the right lateral hip and over the sacroiliac joint bilaterally, and lumbar spine. There were no impingement testing signs at the hip with passive range of motion. The left lower extremity was normal with unremarkable range of motion. Her most recent MRI of the lumbar spine from 07/31/2020 was reviewed. The diagnoses were other articular cartilage disorders right hip, and right sacroiliitis. She was advised to continue following with Roger Sung, MD.

On 08/19/2020, the claimant followed up with Roger Sung, MD. She felt worse with physical therapy. Her pain was in the back, both sacroiliac joint and now radiating down her legs. She had a new MRI ordered by her physical therapist. Her physical examination was normal. Her MRI was reviewed and without significant changes from her previous MRI. The diagnoses were low back pain, other intervertebral disc degeneration lumbar region, sacroiliitis, chronic pain syndrome, and sciatica. She was advised to have a new spinal cord stimulator trial due to changes in her pain pattern.

12

**Lincoln/Mason 0397**

**RESPONSE TO QUESTIONS:**

**1. What diagnoses are supported by the medical evidence?**

The medical evidence provided supports the diagnoses of femoroacetabular impingement bilaterally, right hip labral tear, lumbar degenerative disc disease, lumbar spondylosis, and bilateral sacroiliitis.

**2. Taking into consideration the entire clinical picture, including standards of care and evidence-based medicine, and any medication or other treatment side effects, please describe if there are any supported level of impairments which translates into restrictions and limitations from 7/21/2020 to the present? Please explain your medical rationale as to why or why not and provide a detailed explanation.**

Since 07/21/2020, the claimant had an MRI of the lumbar spine, which according to Roger Sung, MD was stable from the previous. The findings included degenerative disc disease, degenerative central spinal stenosis, and degenerative neuroforaminal stenosis. These were all mild to moderate in degree. There was no obvious impingement of exiting nerve roots. There was no visualized myelomalacia.

She had two subsequent medical visits, one with Michael Huang, MD, and one with Roger Sung, MD. She had been feeling worse in terms of her pain and symptomatology. However, there were no new physical examination findings. Her most significant and consistent physical examination findings include tenderness and decreased range of motion. She does not have any neurologic deficits. No new restrictions were given by either of the physicians.

Although the claimant has subjective complaints of pain and falls, there was a lack of functional deficits on physical examination to support the need for restrictions.

**3. If functional impairment is supported, please describe how that translates into restrictions or limitations and for what period(s) of time. Please define in terms of frequency (never, occasional, frequent, constant) and task (sit, stand, lift/carry, type etc.). Please explain your medical rationale for any restrictions or limitations or why restrictions and limitations are not supported.**

Functional impairment is not supported by the documentation from 07/21/2020 to present.

**4. Does the medical documentation support that any medical condition alone, or in combination would preclude the claimant from sustained occupational functioning on a full-time basis? Please explain why or why not.**

Based on the provided medical documentation since 07/21/2020, there is no evidence that would preclude the claimant from sustained occupational functioning on a full-time basis.

**5. When contacting the treating provider please discuss the claimant's condition, treatment, and functional capacity. Please indicate the information reviewed and indicate**

13

**Lincoln/Mason 0398**

**whether or not you reach consensus with the treating provider. If not, please discuss your final assessment after the call.**

**AP CONTACT:**

I called the number listed (719-632-7669) on 9/4/20 at 11:08am CST and left a message for a return call on Kirsten's general office voicemail.

I called the number listed (719-632-7669) on 9/10/20 at 11:10am CST and left a message for a return call on Kirsten's general office voicemail.

I called the number listed (719-278-3627) on 9/4/20 at 11:47am CST and spoke with Jennifer and left a message for a return call.

My staff received a return call from Dr. Kent on 9/9/20 at 4:10pm CST and I was unable to take the call. A message was left for a return call to an alternate number (719-799-0784).

I called the alternate number (719-799-0784) on 9/10/20 at 11:15am CST and left a message for a return call on Dr. Kent's general voicemail.

At the time of submission, no return calls have been received.

**Daniel Fung, M.D.**
**Board Certified Physical Medicine & Rehabilitation**
**Board Certified Pain Medicine**
**License: A107358 CA**

14

**Lincoln/Mason 0399**



**Corporate Office**

Exam Coordinators Network   A division of Genex Services, LLC.

Claimant Name: Jan Mason
Claim Number: 9291624
Case Number: 156002-1

"I, Daniel Fung, MD, am a physician duly licensed to practice medicine in the State of ___CA_____. I am an independent contractor and I am paid to review claim files and render medical opinions. I am not responsible for deciding whether a claimant is entitled to insurance benefits. My role is to provide objective medical opinions to Genex Services, LLC.

I hereby attest that the following statements are true:

- I have the scope of licensure or certification that typically manages the medical condition, procedure, treatment or issue under review
- I have current, relevant knowledge to render an opinion for the case under review
- No financial incentive was received based on the outcome of the opinion
- No delegation of the examination rendered

I attest that no conflict of interest exists, this includes any situation where an individual has a material, professional, familial, or financial conflict of interest regarding any of the following:

- Compensation for IME/Peer Review activities that are dependent in any way on the specific outcome of the case
- Have involvement with the case prior to its referral for review
- The referring entity
- The health benefit plan
- The consumer
- The attending provider or any other advisor previously involved in the case
- The facility at which the recommended healthcare service(s) would be provided
- The developer or manufacturer of the principal drug, device, procedure, or other therapy being recommended for the customer

I declare that the information contained in the above-referenced report was prepared by and is the work product of the undersigned and is true to the best of my knowledge and information. I certify that my medical/professional license is current and is in good standing in the jurisdiction in which my practice is located.

_____    9.14.2020

Signature of Physician                                                    Date

Medical/Professional License # __A107358 CA_____

**Lincoln/Mason 0400**

| | |
|---|---|
| From: | LFGNotifications@LFG.com |
| Sent: | Monday, September 28, 2020 9:54:40 AM |
| To: | |
| CC: | |
| BCC: | |
| Subject: | [Send Secure]Charter Communications, Inc. Claim No. 9291624 Jan Mason |
| Attachments: | cc_ipxqzuyvk4rtnrzkccbl_9105604_9367656.pdf; |

This notification contains important information regarding a claim with Lincoln Financial Group company. THIS IS AN AUTOMATED EMAIL. PLEASE DO NOT RESPOND. You may use the contact information in the attached letter to respond if needed.

**Lincoln/Mason 0401**



Lincoln Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7213
London, KY 40742-7213
Phone No.: (888) 437-7611
Secure Fax No.: (603) 430-1926

September 28, 2020

David Salek
Pain Management
6685 DELMONICO DR SUITE C
COLORADO SPRINGS, CO 80919

RE:    Long Term Disability (LTD) Benefits
       Charter Communications, Inc.
       Claim #: 9291624
       Claimant: Jan Mason
       Claimant D.O.B.:

Dear David Salek:

We are the Disability Claim Administrator for your patient, Jan Mason.
On September 14, 2020 a/an Independent Medical Review was performed to assist us in determining
Ms. Mason' eligibility for Long Term Disability (LTD) benefits. The results of this assessment
demonstrate the following:

> *Since 07/21/2020, the claimant had an MRI of the lumbar spine, which according to Roger
> Sung, MD was stable from the previous. The findings included degenerative disc disease,
> degenerative central spinal stenosis, and degenerative neuroforaminal stenosis. These were all
> mild to moderate in degree. There was no obvious impingement of exiting nerve roots. There
> was no visualized myelomalacia.*
>
> *She had two subsequent medical visits, one with Michael Huang, MD, and one with Roger
> Sung, MD. She had been feeling worse in terms of her pain and symptomatology. However,
> there were no new physical examination findings. Her most significant and consistent physical
> examination findings include tenderness and decreased range of motion. She does not have any
> neurologic deficits. No new restrictions were given by either of the physicians.*
>
> *Although the claimant has subjective complaints of pain and falls, there was a lack of
> functional deficits on physical examination to support the need for restrictions.*

Please review the enclosed report by October 9, 2020, and provide any comments you wish to
have considered. If you disagree with September 14, 2020 findings, please detail the specific areas
with which you disagree and provide medical documentation to support your position.

We ask that you provide this information by October 9, 2020. Failure to provide the requested
information may result in an adverse benefit determination. The information can be faxed to our

1  of  2

**Lincoln/Mason 0402**

office at our secure fax number (603) 430-1926 or mailed to the above address.

Although HIPAA does not apply to disability insurance carriers, we understand your responsibilities under HIPAA as a health care provider, and our associated responsibility of ensuring this information is protected against deliberate or inadvertent misuse or disclosure.

As the insurance carrier providing employer sponsored Long Term Disability (LTD) benefits coverage to your patient, we have enclosed a HIPAA compliant authorization signed by Ms. Mason allowing the release of information to our company. This authorization specifically allows you to release medical information to us and is valid for two years from the date of Ms. Mason' signature.

If you have any questions regarding this matter, please contact me.

Sincerely,

Mary Avrett
Appeals Consultant
Phone No.: (888) 437-7611 Ext. 16371
Secure Fax No.: (603) 430-1926

CC:     Jan Mason


Attachments:    9291624-EMPLOYEE/CLAIMANT-AUTHORIZATION-09.25.2019
                9291624-MEDICAL-MEDICAL RECORDS-09.15.2020

Lincoln/Mason 0403



Lincoln Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7213
London, KY 40742-7213
Phone No.: (888) 437-7611
Secure Fax No.: (603) 430-1926

| | |
|---|---|
| Date: September 28, 2020 | |
| To: MICHAEL HUANG<br>4110 BRIAR GATE PARKWAY STE 30<br>COLORADO SPRING CO 80920 | |
| Attn: Urgent - Dr. Huang<br>Second Request | |
| Fax: (719) 632-0088 | |
| From: Mary Avrett<br>Appeals Consultant<br>Phone No.: Phone No.: (888) 437-7611<br>Secure Fax No.: (603) 430-1926 | |
| Total Pages<br>(Including Cover): 20 | |
| RE:<br><br>Claim #: 9291624<br>Claimant: Jan Mason<br><br>Charter Communications, Inc. | |

This fax, and any attachments thereto, is intended only for the use of the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this fax, you are hereby notified that any dissemination, distribution or copying of this fax, and any attachments thereto, is strictly prohibited. If you have received this fax in error, please notify me by telephone at (888) 437-7611 and permanently shred the original and any copy of any fax and any printout thereof.

**Lincoln/Mason 0404**



Lincoln Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7213
London, KY 40742-7213
Phone No.: (888) 437-7611
Secure Fax No.: (603) 430-1926

September 28, 2020

Michael J. Huang
4110 BRIAR GATE PARKWAY STE 30
COLORADO SPRING, CO 80920

RE:    Long Term Disability (LTD) Benefits
       Charter Communications, Inc.
       Claim #: 9291624
       Claimant: Jan Mason
       Claimant D.O.B.:

Dear Michael Huang:

We are the Disability Claim Administrator for your patient, Jan Mason.
On September 14, 2020 a/an Independent Medical Review was performed to assist us in determining
Ms. Mason' eligibility for Long Term Disability (LTD) benefits. The results of this assessment
demonstrate the following:

*Since 07/21/2020, the claimant had an MRI of the lumbar spine, which according to Roger
Sung, MD was stable from the previous. The findings included degenerative disc disease,
degenerative central spinal stenosis, and degenerative neuroforaminal stenosis. These were all
mild to moderate in degree. There was no obvious impingement of exiting nerve roots. There
was no visualized myelomalacia.*

*She had two subsequent medical visits, one with Michael Huang, MD, and one with Roger
Sung, MD. She had been feeling worse in terms of her pain and symptomatology. However,
there were no new physical examination findings. Her most significant and consistent physical
examination findings include tenderness and decreased range of motion. She does not have any
neurologic deficits. No new restrictions were given by either of the physicians.*

*Although the claimant has subjective complaints of pain and falls, there was a lack of
functional deficits on physical examination to support the need for restrictions.*

Please review the enclosed report by October 9, 2020, and provide any comments you wish to
have considered. If you disagree with September 14, 2020 findings, please detail the specific areas
with which you disagree and provide medical documentation to support your position.

We ask that you provide this information by October 9, 2020. Failure to provide the requested
information may result in an adverse benefit determination. The information can be faxed to our

1  of  2

**Lincoln/Mason 0405**

office at our secure fax number (603) 430-1926 or mailed to the above address.

Although HIPAA does not apply to disability insurance carriers, we understand your responsibilities under HIPAA as a health care provider, and our associated responsibility of ensuring this information is protected against deliberate or inadvertent misuse or disclosure.

As the insurance carrier providing employer sponsored Long Term Disability (LTD) benefits coverage to your patient, we have enclosed a HIPAA compliant authorization signed by Ms. Mason allowing the release of information to our company. This authorization specifically allows you to release medical information to us and is valid for two years from the date of Ms. Mason' signature.

If you have any questions regarding this matter, please contact me.

Sincerely,

Mary Avrett
Appeals Consultant
Phone No.: (888) 437-7611 Ext. 16371
Secure Fax No.: (603) 430-1926

CC:    Jan Mason


Attachments:    9291624-EMPLOYEE/CLAIMANT-AUTHORIZATION-09.25.2019
                9291624-MEDICAL-MEDICAL RECORDS-09.15.2020

2  of  2

**Lincoln/Mason 0406**

3L268190622



Liberty Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7207
London, KY 40742-7207
Phone No.: (844) 384-5858
Secure Fax No.: (603) 334-5994

## AUTHORIZATION FOR THE RELEASE OF INFORMATION INCLUDING PROTECTED HEALTH INFORMATION

**I HEREBY AUTHORIZE THE USE OR DISCLOSURE OF INFORMATION ABOUT ME AS DESCRIBED BELOW:**

**Person(s) or group(s) of persons authorized to use or disclose the information:** Any physicians, medical practitioners, hospitals, clinics, HMOs, long-term care facilities, medical or medically-related facilities, pharmacies, insurance companies, credit or consumer reporting agency, financial/educational institutions, current or former employer, governmental agency, MIB Inc., and any insurance support organizations.

**Person(s) or group(s) of persons authorized to collect or otherwise receive the information:** The particular Company in the Lincoln Financial Group of companies to which I am submitting a claim and its authorized representatives, agents and/or employees, the Plan Sponsor (if self-insured Plan) and other organizations providing claims management services.

**Description of the information that may be used or disclosed:** This Authorization specifically includes the release of all information related to:

* My physical and mental health and my insurance policies and claims, including, but not limited to, those containing diagnosis, treatments, prognosis, prescription drug information, alcohol or drug abuse or information regarding communicable or infectious conditions, including HIV/AIDS.
* Job duties, earnings, personnel records and other work related information and credit reports, bank records, and federal and state tax returns.
* Information concerning Social Security benefits, including any records pertaining to me and my dependents

**The information will be used or disclosed only for the following purpose(s):** For purposes of investigating, evaluating and processing my claim, and/or for insurance-related functions.

### STATEMENTS OF UNDERSTANDING & ACKNOWLEDGMENT:

**I understand** that information used or disclosed pursuant to this authorization could be subject to redisclosure as necessary by the recipient and, if so, may not be subject to federal or state law protecting its confidentiality.

**I understand** that I may revoke this authorization in writing at any time by sending a written revocation to the Company in the Lincoln Financial Group of companies to which I have submitted a claim, except to the extent that action has been taken in reliance on this authorization, or to the extent that other law provides the Company with the right to contest a claim. I also understand that the revocation of this authorization will not affect uses and disclosures of my health information for purposes of treatment, payment and health care operations.

**I understand** that authorizing the disclosure of my health information is voluntary and the provision of health care services to me is not conditioned on whether I sign this authorization. If I choose not to sign this authorization, insurance coverage or claim payments may be denied or delayed.

This authorization shall remain in force for 24 months from the date of signature, except to the extent applicable state law imposes or allows a different duration. The information obtained under this authorization will be retained in accordance with the Company's standard retention policy and applicable law. I understand that I may request a copy of this authorization.

Name of claimant (print) ___JAN K MASON___

Name of legal representative, if applicable (print) _____ — _____    Relationship _____ — _____

Signature of claimant or legal representative _____Jan K Mason_____

Date of Birth: __ _____    Claim Number: __9291624__    Date: __09/14/19__

**A copy of this authorization will be considered as valid as the original.**

**Lincoln/Mason 0407**

3L268190622



Liberty Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7207
London, KY 40742-72097
Phone No.: (844) 384-5858
Secure Fax No.: (603) 334-5994

### AUTHORIZATION FOR THE RELEASE OF PROTECTED HEALTH INFORMATION

**I HEREBY AUTHORIZE THE USE OR DISCLOSURE OF HEALTH INFORMATION ABOUT ME AS DESCRIBED BELOW:**

**Person(s) or group(s) of persons authorized to use or disclose the information:** Any physicians, medical practitioners, hospitals, clinics, HMOs, long-term care facilities, medical or medically-related facilities, pharmacies, insurance companies, Plan Sponsor/ Administrator, governmental agency, MIB Inc., and any insurance support organizations.

**Person(s) or group(s) of persons authorized to collect or otherwise receive the information:** The particular Company in the Lincoln Financial Group of companies to which I am submitting a claim and its authorized representatives, agents and/or employees, the Plan Sponsor (if self-insured Plan) and other organizations providing claims management services.

**Description of the information that may be used or disclosed:** This Authorization specifically includes the release of all psychotherapy notes relating to me, without restriction, including psychotherapy notes recorded in any medium documenting or analyzing the contents of conversations during private counseling sessions and/or group, joint or family counseling sessions.

**The information will be used or disclosed only for the following purpose(s):** For purposes of investigating, evaluating and processing my claim, and/or for insurance-related functions.

**STATEMENTS OF UNDERSTANDING & ACKNOWLEDGMENT:**

**I understand** that information used or disclosed pursuant to this authorization could be subject to redisclosure as necessary by the recipient and, if so, may not be subject to federal or state law protecting its confidentiality.

**I understand** that I may revoke this authorization in writing at any time by sending a written revocation to the Company in the Lincoln Financial Group of companies to which I have submitted a claim, except to the extent that action has been taken in reliance on this authorization, or to the extent that other law provides the Company with the right to contest a claim. I also understand that the revocation of this authorization will not affect uses and disclosures of my health information for purposes of treatment, payment and health care operations.

**I understand** that authorizing the disclosure of this health information is voluntary and the provision of health care services to me is not conditioned on whether I sign this authorization. If I choose not to sign this authorization, insurance coverage or claim payments may be denied or delayed.

**This authorization** shall remain in force for 24 months from the date of signature, except to the extent applicable state law imposes or allows a different duration. The information obtained under this authorization will be retained in accordance with the Company's standard retention policy and applicable law. I understand that I may request a copy of this authorization.

Name of claimant (print)  ___JAU K MASON_____

Name of legal representative, if applicable (print)  _____  Relationship _____

Signature of claimant or legal representative  _Jan K Mason_____

Date of Birth: __  _____  Claim Number: __9291624__  Date: ___08/14/19___

**A copy of this authorization will be considered as valid as the original**

Lincoln/Mason 0408

........................................................................................................................................................................................................................

**Daniel Fung, M.D.**
**Board Certified Physical Medicine & Rehabilitation**
**Board Certified Pain Medicine**

**CLAIMANT NAME:** Jan Mason
**ECN #:** 156002-1
**CLAIM #:** 9291624
**DATE OF LOSS:** 04/17/2019
**DATE OF REVIEW:** 09/14/2020
**CASE TYPE:** Long-Term Disability

**DIAGNOSIS:** Pain in right hip

**MEDICAL RECORDS REVIEWED:**
11/11/2015, Job Description, Charter Communications.
12/19/2017, State of Colorado Traffic Accident Report, Richard DuVall, Credentials Not Provided.
07/11/2018, X-Ray Lumbar Spine, Jon Snider, MD.
09/12/2018, MRI Pelvis and Sacroiliac Joints, Joseph Ugorji, DO.
11/27/2018, CT Pelvis, Nicholas Moore, MD.
01/09/2019, Fluoroscopically Guided Injection of the Right Hip Imaging, Jacob Becker, MD.
01/09/2019, Fluoroscopically Guided Injection of the Left Hip Imaging, Jacob Becker, MD.
01/31/2019, Progress Note, Tyler Bron, MD.
02/11/2019, MRI Arthrogram Right Hip, Craig LaBuda, MD.
02/18/2019, Progress Note, Tyler Bron, MD.
03/07/2019, Progress Note, Michael Huang, MD.
04/17/2019, Operative Report, Michael Huang, MD, MD.
04/18/2019, Progress Note, Kristen Reiss, PA-C.
05/02/2019, Progress Note, Kristen Reiss, PA-C.
06/04/2019, Progress Note, Michael Huang, MD.
07/09/2019, Progress Note, Michael Huang, MD.
07/23/2019, Progress Note, Jeffrey Kent, MD.
07/29/2019, Progress Note, James Bee, MD.
08/06/2019, Progress Note, Jeffrey Kent, MD.
08/08/2019, MRI Lumbar Spine, Jacob Becker, MD.
08/19/2019, Progress Note, James Bee, MD.
08/21/2019, Progress Note, Roger Sung, MD.
08/28/2019, Progress Note, David Salek, MD.
09/03/2019, Long-Term Disability Claim Creation Request, Ethan Crockett, Credentials Not Provided.
09/14/2019, Disability Questionnaires an Application for Benefits, Jan Mason.
09/17/2019, Physical Therapy Evaluation, Catherine Bottorff, PT, DPT.
10/03/2019, Nursing Memorandum, Cassandra K., RN.
10/04/2019, Disability Questionnaires an Application for Benefits, Jan Mason.
10/07/2019, Progress Note, Jeffrey Kent, MD.
10/11/2019, Progress Note, Kristen Reiss, PA-C.

1

**Lincoln/Mason 0409**

10/22/2019, MRI Right Hip Arthrogram, John Campbell, MD.
10/25/2019, Progress Note, Michael Huang, MD.
10/27/2019, Peer Review, Richard Avioli, MD.
11/20/2019, Progress Note, Roger Sung, MD.
12/09/2019, Operative Report, Michael Huang, MD.
12/10/2019, Progress Note, Michael Huang, MD.
12/13/2019, Physical Therapy Initial Examination, Taylor Mark Pfeifer, PT, DPT.
12/13/2019, Physical Therapy Plan of Care, Taylor Mark Pfeifer, PT, DPT.
12/13/2019, Physical Therapy Daily Note, Taylor Mark Pfeifer, PT, DPT.
12/17/2019, Physical Therapy Daily Note, Jennifer Mulligan, PT, DPT.
12/23/2019, Progress Note, Phillip Falender, PA-C.
12/24/2019, Physical Therapy Daily Note, Kerri Anne Tiller, PT, DPT.
12/27/2019, Physical Therapy Daily Note, Taylor Mark Pfeifer, PT, DPT.
12/30/2019, Physical Therapy Daily Note, Kerri Anne Tiller, PT, DPT.
12/30/2019, Progress Note, Jeffrey Kent, MD.
01/02/2020, Physical Therapy Note, Sandi Feeney, PT, DPT.
01/06/2020, Physical Therapy Daily Note, Kerri Anne Tiller, PT, DPT.
01/10/2020, Physical Therapy Daily Note, Kerri Anne Tiller, PT, DPT.
01/14/2020, Physical Therapy Daily Note, Jennifer Mulligan, PT, DPT.
01/17/2020, Physical Therapy Daily Note, Taylor Mark Pfeifer, PT, DPT.
01/20/2020, Physical Therapy Daily Note, Kerri Anne Tiller, PT, DPT.
01/21/2020, Progress Note, Kristen Reiss, PA-C.
01/23/2020, Physical Therapy Daily Note, Kerri Anne Tiller, PT, DPT.
01/27/2020, Physical Therapy Daily Note, Kerri Anne Tiller, PT, DPT.
01/29/2020, Physical Therapy Daily Note, Taylor Mark Pfeifer, PT, DPT.
01/30/2020, MRI Left Hip Arthrogram, Nicholas Moore, MD.
01/31/2020, Progress Note, Kelsey Chrane, PA-C.
02/04/2020, Physical Therapy Daily Note, That Jennifer Mulligan, PT, DPT.
02/06/2020, Progress Note, Michael Huang, MD.
02/11/2020, Physical Therapy Daily Note, Ellen Jackson, PT.
02/12/2020, Progress Note, David Salek, MD.
02/20/2020, Physical Therapy Progress Note, Scott Moser, PT, DPT.
02/20/2020, Physical Therapy Daily Note, Scott Moser, PT, DPT.
02/25/2020, Physical Therapy Daily Note, Marc Phillips, PT, DPT.
03/03/2020, Progress Note, Jeffrey Kent, MD.
03/05/2020, Physical Therapy Daily Note, Marc Phillips, PT, DPT.
03/12/2020, Progress Note, Michael Huang, MD.
03/12/2020, Physical Therapy Daily Note, Marc Phillips, PT, DPT.
03/17/2020, Physical Therapy Daily Note, Marc Phillips, PT, DPT.
04/02/2020, Physical Therapy Note, Marc Phillips, PT, DPT.
04/09/2020, Physical Therapy Daily Note, Marc Phillips, PT, DPT.
04/16/2020, Physical Therapy Daily Note, Marc Phillips, PT, DPT.
04/23/2020, Physical Therapy Daily Note, Marc Phillips, PT, DPT.
04/30/2020, Physical Therapy Daily Note, Marc Phillips, PT, DPT.
05/01/2020, Progress Note, Michael Huang, MD.
05/07/2020, Physical Therapy Daily Note, Marc Phillips, PT, DPT.

2

**Lincoln/Mason 0410**

05/13/2020, Progress Note, Roger Sung, MD.
05/21/2020, Physical Therapy Daily Note, Marc Phillips, PT, DPT.
05/22/2020, Progress Note, Jeffrey Kent, MD.
06/11/2020, Procedure Note, David Salek, MD.
06/18/2020, Physical Therapy Daily Note, Marc Phillips, PT, DPT.
06/23/2020, Disability Questionnaires an Application for Benefits, Jan Mason.
07/01/2020, Progress Note, Roger Sung, MD.
07/01/2020, Medical Questionnaire, Jeffrey Kent, MD.
07/01/2020, Progress Note, Jeffrey Kent, MD.
07/09/2020, Physical Therapy Initial Examination, Marc Phillips, PT, DPT.
07/16/2020, Letter Correspondences, David Monti, MD.
07/16/2020, Peer Review, David Monti, MD.
07/16/2020, Physical Therapy Daily Note, Marc Phillips, PT, DPT.
07/21/2020, Written Request for Review, Jan Mason.
07/23/2020, Letter Correspondence, David Salek, MD.
07/23/2020, Physical Therapy Daily Note, Marc Phillips, PT, DPT.
07/31/2020, MRI Lumbar Spine, José Pizarro, MD.
08/06/2020, Physical Therapy Daily Note, Marc Phillips, PT, DPT.
08/13/2020, Physical Therapy Recertification Note, Marc Phillips, PT, DPT.
08/13/2020, Physical Therapy Daily Note, Marc Phillips, PT, DPT.
08/17/2020, Progress Note, Michael Huang, MD.
08/19/2020, Progress Note, Roger Sung, MD.
08/20/2020, Physical Therapy Daily Note, Marc Phillips, PT, DPT.
08/31/2020, Letter Correspondence, Jeffrey Kent, MD.

**HISTORY:**

I have been asked to review the medical records on behalf of ECN regarding Jan Mason. The claimant is a now 48-year-old female with a long-term disability claim from 04/17/2019. Her job title was Representative 3, Customer Service Billing. This was a sedentary position. Her primary diagnosis was pain in right hip.

On 12/18/2017, the claimant was involved in a motor vehicle accident. She was stopped in heavy traffic in the right through lane when another driver failed to come to a complete stop and collided with the rear passenger side bumper. She complained of hip and lower back pain. Moderate to severe damage was sustained to the rear passenger side bumper and quarter panel of the vehicle.

On 07/11/2018, the claimant had an x-ray the lumbosacral spine interpreted by Jon Snider, MD. This showed L3-L4 retrolisthesis and multilevel spondylosis. There was a metallic fixation of the sacroiliac joint.

On 09/12/2018, the claimant had an MRI of the pelvis and sacroiliac joints interpreted by Joseph Ugorji, DO. The report provided was not completely legible.

Lincoln/Mason 0411

On 11/27/2018, the claimant had a CT of the pelvis. This was interpreted by Nicholas Moore, MD. This demonstrated a right sacroiliac joint internal fixation without evidence of a hardware failure. There was bilateral cam type femoroacetabular impingement.

On 01/09/2019, the claimant had a fluoroscopically guided joint injection of the right hip. Her pain went from 5-6/10 to 0/10 in severity after the procedure. This was performed by Tyler Bron, MD.

On 01/09/2019, the claimant had a fluoroscopically guided joint injection of the left hip. Her pain went from 4/10 to 0/10 in severity after the procedure. This was performed by Tyler Bron, MD.

On 01/31/2019, the claimant was evaluated by Tyler Bron, MD. She complained of bilateral hip pain. She was following up after bilateral corticosteroid injections in her hips. For the initial 4-6 hours after the injection she had complete relief of her hip pain. This was only temporary and overall had not noticed any significant improvement from the injection. Her pain was worsening in the right greater than the left. She was also complaining of back pain. On physical examination of the right hip and pelvis, range of motion was limited with flexion 100°, internal rotation 0°, external rotation 15°. Range of motion elicited groin pain. Her pain was most severe with internal rotation. Her quadricep and hamstring strength was 5/5. Plantar and dorsiflexion strength was 5/5. Her sensation was intact over the lower extremity. Physical examination of the left hip and pelvis demonstrated range of motion limited with flexion 100°, internal rotation 0°, external rotation 15°. Range of motion elicited groin pain. Her pain was most severe with internal rotation. Her strength and sensory examination were intact. Her diagnostic testing was reviewed. The diagnoses were pain in right hip and pain in the left hip. Her pain was likely due to osteoarthritis versus labral pathology. An MRI arthrogram of the right hip was ordered.
On 02/11/2019, the claimant had an MRI arthrogram of the right hip. This was interpreted by Craig LaBuda, MD. This demonstrated a right hip anterior superior labral tear. There was mild, superior hip joint space narrowing and small anterior lateral femoral head-neck-osseous bump. There was a right sacroiliac joint fusion.

On 02/18/2019, the claimant followed up with Tyler Bron, MD. Her hip was still very painful. On physical examination of the right hip and pelvis, range of motion was limited with flexion to 100°, internal rotation 0°, external rotation 15°. Range of motion elicited groin pain. Her pain was most severe with internal rotation. Her quadricep and hamstring strength was 5/5. Plantar and dorsiflexion strength was 5/5. Her sensation was intact over the lower extremity. Physical examination of the left hip and pelvis demonstrated range of motion limited with flexion to 100°, internal rotation 0°, external rotation 15°. Range of motion elicited groin pain. Her pain was most severe with internal rotation. Her strength and sensory examination were intact. The MRI arthrogram was reviewed showing an anterior superior labral tear with minimal joint space narrowing, as well as signs of femoral acetabular impingement. The diagnoses were pain in the left hip, and pain in the right hip. She was referred to another physician for possible arthroscopic labral repair.

On 03/07/2019, the claimant was seen by Michael Huang, MD. She reported right hip pain over the posterior buttock area for about two years. She was treated initially for sacroiliac joint pain in

4

**Lincoln/Mason 0412**

September 2017 with sacroiliac joint fusion. She had recovered extremely well with resolution of her symptoms until she was involved in a car accident where she was rear-ended in December 2017. She reported some groin pain but mostly felt her pain in the posterior buttock area. Her symptoms were worse with sitting, but now consistently bothering her with standing and walking. She denied numbness or tingling. She had tried rest, activity modification, anti-inflammatories including ibuprofen without benefit. She tried physical therapy without benefit. She tried chiropractic treatment and massage therapy with limited benefit. She underwent an intra-articular injection and she had four hours of complete pain resolution but did not get any benefit long-term. Her symptoms were sharp, dull, and aching and made worse with sitting and walking. She also had associated stiffness and weakness. On physical examination, her gait was antalgic. Right hip range of motion demonstrated flexion to 115°, external rotation to 55°, and internal rotation to 10°. The anterior impingement test was positive reproducing her posterior buttock pain and somewhat reproducing groin pain. There was tenderness to palpation of the posterior buttock. She had a negative straight leg raise and negative posterior impingement test. At the left hip, range of motion demonstrated flexion to 25°, external rotation to 65°, and internal rotation to 10°. Anterior and posterior impingement tests and straight leg raise were negative. There was no tenderness to palpation. Her diagnostics were reviewed. The diagnoses were pain in the right hip, and other articular cartilage disorders of the right hip. This was further discussed as right hip pain secondary to labral tear and femoral acetabular impingement. Surgical intervention was discussed and planned for.

On 04/17/2019, the claimant had a right hip labral repair, arthroscopic acetabuloplasty, femoroplasty, osteoplasty to remove cam lesion, chondroplasty, synovectomy, capsular plication performed by Michael Huang, MD.

On 04/18/2019, the claimant followed up with Kristen Reiss, PA-C. She was a one-day status post-surgery. Her pain was well-controlled. She was utilizing her post-operative hip braces and crutches. On physical examination, the right hip wounds had minimal drainage. There was mild swelling which was expected. There were no signs of infection. The diagnosis was one-day status post right hip surgery. She was given postoperative instructions and advised to follow-up in two weeks.

On 05/02/2019, the claimant followed up with Kristen Reiss, PA-C. She was two weeks status post hip surgery. Her pain was well-controlled. She was doing well with physical therapy. On physical examination, the surgical wounds were healed without signs of infection. Her sensation was intact. The diagnoses were pain in the right hip, and other articular cartilage disorders of the right hip. Her sutures were removed. She was given further instructions for routine postoperative management. She was given oxycodone.

On 06/04/2019, the claimant followed up with Michael Huang, MD. She was six weeks status post right hip surgery. She reported increasing hip pain worse than her preoperative pain. It began after she started to discontinue the crutches two weeks prior. She also presented with a new complaint of left hip pain. She states having had this since December 2017, with progressive worsening. Her left was feeling worse after bearing more weight after her surgery. The pain was in the groin and worsened with prolonged sitting, prolonged standing, and squatting. Rotational activities also increased pain. She had tried rest, activity modification and ibuprofen. She was

5

**Lincoln/Mason 0413**

attending physical therapy. On physical examination of the left hip, flexion was to 115°, external rotation to 65° and internal rotation to 10°. The anterior impingement test was positive. She had tenderness in the anterior groin.

The right hip surgical wounds were well healed without signs of infection. Range of motion of the right hip was flexion to 115°, external rotation to 50° and internal rotation to 5° with continued positive anterior impingement test. X-rays of the bilateral hips were ordered. There was well-preserved femoral acetabular joint spacing. At the left hip there was evidence of femoral, acetabular impingement cam type with alpha angle measuring 63°. The diagnoses were pain in the right hip, and other articular cartilage disorders of the right hip. She was advised to go back on crutches for about two weeks. She was given indomethacin for inflammation. In terms of the left hip, there was suspicion for underlying labral tear. They were considering MRI arthrogram of the left hip.

On 07/09/2019, the claimant followed up with Michael Huang, MD. She reported increasing right posterior buttock and lumbar spine pain. She had minimal anterior hip pain. Her hip pain was much better since her previous visit. She was doing physical therapy. She was concerned about her lumbar spine and felt her pain was radiating down her buttock to the posterior thigh and into her calf. At one point in her history, she was considering a spinal stimulator for low back pain. She described her pain as nerve pain and burning. She had occasional mild anterior groin pain with activity which she was tolerating well. On physical examination, the right hip surgical wounds were well healed. Range of motion included flexion to 110°, external rotation to 50°, internal rotation to 10° and abduction of 40°. She had minimal anterior pain with any of these tests. She had significant posterior hip pain over the sacroiliac joint and lumbar spine. Straight leg raise was negative for radicular symptoms but increased her posterior hip buttock and spine pain. She was directly tender over the superior aspect of the sacroiliac joint and the right lumbosacral junction. The diagnoses were pain in right hip and other articular alleged disorders of the right hip. She was advised to continue with physical therapy. She planned on following up with her spine surgeon for an opinion. She was continued on indomethacin.

On 07/23/2019, the claimant was evaluated by Jeffrey Kent, MD. She reported recent labral tear repair. She was having worsening pain since starting to bear weight. She reported pain in her lower back with burning pain into her right leg more than her left leg. She requested a parking pass, Xanax, and Ambien. No physical examination was provided. The diagnoses were osteoarthritis of the spine with radiculopathy, tear of the right acetabular labrum, femoral acetabular impingement of both hips, primary insomnia, and anxiety. She was advised to continue to follow with her specialists, and to continue gabapentin, Xanax, and Ambien.

On 07/29/2019, the claimant was evaluated by James Bee, MD. She complained of pain in her buttock and back. The pain was sharp, burning, and constant. It was made worse with activity such as sitting, standing, walking, and bending. It was made better by lying down. She had done physical therapy, which was stopped due to worsening symptoms. She was taking indomethacin. Her pain was 8/10. Her activities of daily living were limited secondary to her complaints. On physical examination of the lumbar spine, there was no tenderness. The flexion of the lumbar spine brought the fingertips 6 inches from the floor. Extension was approximately 15°. There was some pain at the extremes of flexion and extension. There was pain with palpation along the gluteal musculature right greater than left. There was no pain with axial compression of the head

6

**Lincoln/Mason 0414**

and no pain with trunk rotation through the hips. She had a slow reciprocating gait. She was able to walk on the toes and heels. She moved easily to the examination table without assistance. Her strength throughout the lower extremities was 5/5. Her sensation was intact bilaterally. There were no upper motor signs. Her reflexes were normal. Straight leg raise was negative bilaterally. X-rays of the lumbosacral spine demonstrated a right sacroiliac joint fusion device. There was a collapse of the disc space at L2-L3. There was subtle retrolisthesis of L3 on L4. On flexion and extension, there was no instability. Her previous MRI of the lumbar spine from 05/12/2018 was also reviewed showing degenerative changes. There was no stenosis. The diagnoses were spinal stenosis in the lumbar region with neurogenic claudication, spondylosis without myelopathy or radiculopathy lumbar region, other intervertebral disc degeneration lumbar region, other intervertebral disc degeneration lumbosacral region, and pain in the right hip. A new MRI was ordered.

On 08/06/2019, the claimant was seen by Jeffrey Kent, MD. She continued with back pain that was worse on the right and made worse with walking. Driving and bending also worsened her pain.  She was taking Ambien to facilitate sleep. She was scheduled to have her MRI the next day. She was taking indomethacin. She was requesting FMLA paperwork. She was out of work. On physical examination, she had tenderness over the sacroiliac joints worse on the right. She was referred to physiatry. The diagnosis was acute right-sided low back pain with sciatica. On 08/08/2019, the claimant had an MRI of the lumbar spine interpreted by Jacob Becker, MD. This demonstrated stability since the previous MRI from 05/12/2018. There was mild multilevel degenerative disc disease with bulges and protrusions without high-grade spinal canal or neural foraminal stenosis at any level.

On 08/19/2019, the claimant followed up with James Bee, MD. She had undergone a spinal cord stimulator trial. It had helped some of her complaints but not her mid-back problems. On physical examination, there were no significant abnormalities. Her MRI of the lumbar spine was reviewed showing degenerative changes without obvious stenosis. The diagnoses were spinal stenosis in the lumbar region with neurogenic claudication, spondylosis without myelopathy or radiculopathy lumbar region, other intervertebral disc degeneration lumbar region, other intervertebral disc degeneration lumbosacral region. She was referred back for possible permanent spinal cord stimulator.

On 08/21/2019, the claimant followed up with Roger Sung, MD. She was requesting to go ahead with a spinal cord stimulator. On physical examination, she had diffuse lumbar tenderness extending into the buttock which was not specific to the sacroiliac joint. The diagnoses were low back pain, chronic pain syndrome, and sciatica. A trial for a different spinal cord stimulator.

On 08/28/2019, the claimant was seen by David Salek, MD. Her history was summarized and consistent with previous accounts. She reported pain that was constant, sharp, and burning with radiation down her right leg into the top of her toe. Her buttock pain was more severe than the leg pain. On physical examination, she had full painless range of motion of all major muscle groups and joints. She had a positive Faber test and a positive Fortin finger test. She had positive lumbar quadrant testing. Her strength and sensation were normal. Her reflexes were normal. The diagnoses were status post right sacroiliac joint fusion, status post right hip labral tear repair, low

Lincoln/Mason 0415

back pain, right lower extremity radicular features, and positive spinal cord stimulator trial with Boston Scientific. A trial for Stimwave was requested.

On 10/07/2019, the claimant followed up with Jeffrey Kent, MD. She complained of chronic low back pain and sacroiliac joint pain. She was considering a spinal cord stimulator. She was requesting FMLA paperwork and a flu vaccine. On physical examination, she had pain and tenderness in the sacroiliac joint areas and the right inguinal region. She had a normal urinalysis. She had x-rays of the hips, which were normal. The diagnoses were chronic low back pain with sciatica. She was advised to continue with her current treatment plan. She was given a flu shot.

On 10/11/2019, the claimant was evaluated by Kristen Reiss, PA-C. She reported pain that was worse than it was prior to her surgery. She was being evaluated for possible spinal cord stimulator. The pain in the posterior buttock radiated down the posterior thigh into her calf and foot. She had a burning pain in the groin area and lateral hip pain. This seemed to increase about a month prior when she started increasing her walking. She was only walking about 2 miles a week. On physical examination, she had an antalgic gait. Her surgical wounds of the right hip were well healed. Right hip flexion was to 110°, external rotation to 50°, internal rotation to 10° and abduction to 40°. She had negative anterior and posterior impingement tests. Her straight leg raise was negative for radicular symptoms but would increase her posterior hip and buttock pain. She was tender over the superior aspect of the sacroiliac joint on the right and lumbosacral junction as well as over the anterior hip and laterally over the greater trochanter. X-rays were completed showing evidence of previous sacroiliac joint fusion in the right sacroiliac joint. The diagnoses were pain in right hip and other articular cartilage disorders of the right hip. An MRI of the right hip was ordered.

On 10/22/2019, the claimant had an MRI of the right hip with arthrogram. This was interpreted by John Campbell, MD. This demonstrated postoperative changes within the right hip. The anterior aspect of the superior labrum was diminutive and blunted. The superior aspect of the anterior labrum was diminutive and irregular. These were likely postoperative. There was no recurrent tear. There was focal intermediate signal nodularity along the acetabular articular surface adjacent to a suture anchor track at the 12 o'clock position. There was a thin linear signal along the anterior capsule just lateral to the superior aspect of the anterior labrum, which could be related to capsular plication. Mild chondral irregularity along the lateral acetabulum likely reflecting postoperative change.

On 10/25/2019, the claimant followed up with Michael Huang, MD. She was there to discuss her recent MRI. On physical examination, she had an antalgic gait. Her surgical wounds of the right hip were well healed. Right hip flexion was to 110°, external rotation to 50°, internal rotation to 10° and abduction to 40°. She had negative anterior and posterior impingement tests. Her straight leg raise was negative for radicular symptoms but would increase her posterior hip and buttock pain. She was tender over the superior aspect of the sacroiliac joint on the right and lumbosacral junction as well as over the anterior hip and laterally over the greater trochanter. Due to the MRI findings, it was felt that she should undergo surgery to repair the labral tissue. The diagnoses were pain in right hip and other articular cartilage disorders of the right hip.

8

**Lincoln/Mason 0416**

On 11/20/2019, the claimant followed up with Roger Sung, MD. She was scheduled for a right hip labrum repair for 12/09/2019. The authorization for the stimulator trial was still pending. On physical examination, she was diffusely tender across her buttocks and lower back. Thoracic and lumbosacral x-rays showing multiple levels of lumbar degeneration.
The diagnoses were pain in the thoracic spine, low back pain, other intervertebral disc degeneration lumbar region, and sciatica. It was recommended that she try the Boston Scientific spinal cord stimulator since her insurance was denying the Stimwave.

On 12/09/2019, the claimant underwent a right hip labral reconstruction, chondroplasty, acetabuloplasty, femoroplasty, osteoplasty to remove cam lesion, synovectomy, capsular closure/plication by Michael Huang, MD.

On 12/10/2019, the claimant followed up with Michael Huang, MD. She was one-day status post right hip labral reconstruction surgery. Her pain was well-controlled. She was utilizing the postoperative crutches and braces. On physical examination, the wounds were intact with minimal drainage. There was mild swelling. The diagnosis was other articular cartilage disorders of the right hip. Physical therapy was initiated.

On 12/23/2019, the claimant followed up with Phillip Falender, PA-C. She was at two weeks status post right hip labral reconstruction surgery. She was progressing well with physical therapy. On physical examination, there were no signs of infection. Hip flexion was to 90°. The Steri-Strips were removed without difficulty. The diagnosis was other articular cartilage disorders of the right hip. She was given further instruction for increasing weight-bearing and advised to continue physical therapy.

On 12/30/2019, the claimant followed up with Jeffrey Kent, MD. She had her right labral repair. She felt worse. Her pain was increased with therapy. She was still considering a spinal stimulator. She had issues with her other hip. She resigned from her cable job. On physical examination, she was tearful at times and in a brace for her right hip. Diagnoses were chronic low back pain with sciatica, sacroiliac joint pain, and tear of the right acetabular labrum. She was advised to continue her current treatment plan.

On 01/21/2020, the claimant was evaluated by Kristen Reiss, PA-C. She was six weeks status post right hip labral reconstruction. She reported her hip pain was improving. Her lower back pain, pain over the sacroiliac joint and radicular symptoms had worsened. She was also following up for her left hip pain. Physical therapy was not helpful for the left hip. On physical examination, right hip flexion was to 100°, external rotation to 40°, and internal rotation to 5°. There was tenderness over the lateral right hip and right sacroiliac joint. The left hip range of motion included flexion to 110°, external rotation to 50°, internal rotation to 5°. She had a positive anterior impingement test. The straight leg raise produced low back pain. There was tenderness over the anterior hip and laterally over the greater trochanter. X-rays were again performed of the right hip. There were no obvious abnormalities other than the previous sacroiliac joint fusion. The diagnoses were other articular cartilage disorders of the right hip, lumbar region radiculopathy, and pain in the left hip. She was advised to continue physical therapy for the right hip. She was advised to follow-up with Roger Sung, MD regarding worsening low back and sacroiliac joint pain. An MR arthrogram of the left hip was ordered.

9

**Lincoln/Mason 0417**

On 01/30/2020, the claimant had an MRI left hip with arthrogram interpreted by Nicholas Moore, MD.
This demonstrated a focal cam deformity of the anterior left femoral head neck junction with associated anterior/anterior superior labral based tear. There was a small right hip joint effusion.

On 01/31/2020, the claimant followed up with Kelsey Chrane, PA-C. Her right hip pain has significantly improved. She continued to have lower back pain interfering with her participation in physical therapy. She had imaging of her left hip. She was still anticipating a spinal cord stimulator placement. On physical examination, there was tenderness along the spinous processes and paraspinal musculature and diffusely throughout the lower back including over the right sacroiliac joint. Motor strength of the lower extremities was intact. There was pain with range of motion, primarily extension. The diagnoses were low back pain, lumbar region spinal stenosis with neurogenic claudication, other intervertebral disc degeneration of the lumbar region, intervertebral disc disorders with radiculopathy lumbar region, sacroiliitis, pain in the right hip, and pain in the left hip. She was advised to call when she was ready to proceed with the spinal cord stimulator.

On 02/06/2020, the claimant followed up with Michael Huang, MD. She was eight weeks status post-surgery. She was now using a cane. She reported achiness of the anterior hip. She had an MR arthrogram of the left hip and had returned to discuss the findings. On physical examination, hip flexion on the right was to 105°, external rotation 40°, internal rotation 5°. There was tenderness of the right lateral hip and over the sacroiliac joint. The left hip range of motion had flexion 115°, external rotation to 55°, internal rotation to 5°. There was a positive anterior impingement test. Straight leg raise caused low back pain. There was tenderness over the anterior hip and laterally over the greater trochanter. The diagnoses were other articular cartilage disorders right hip, other articular cartilage disorders left hip, and pain in the left hip. They discussed options for managing her left hip. It was decided she would continue focusing on her right hip rehabilitation program and manage her left hip pain with anti-inflammatories.

On 02/12/2020, the claimant followed up with David Salek, MD. She was referred back for pain management. She did not want opiates and was looking for alternative care. She inquired about the use of CBD. On physical examination, she had full painless range of motion of all major muscle groups and joints. She had a positive Faber test and a positive Fortin finger test. She had positive lumbar quadrant testing. The diagnoses were status post right sacroiliac joint fusion, status post right hip labral repair, low back pain, right lower extremity radicular features, and positive spinal cord stimulator trial with Boston Scientific. She was prescribed Celebrex and Tylenol.

On 03/12/2020, the claimant followed up with Michael Huang, MD. She was 12 weeks status post right hip labral reconstruction. The right hip was doing well. Her biggest issue was tremendous pain over the right greater than left sacroiliac joint and lumbar spine. She had been in physical therapy but was having difficulty weight-bearing and was using crutches. The left hip also continued to be painful, unchanged since her last visit. On physical examination, hip flexion on the right was to 110°, external rotation 45°, internal rotation 5°. There was tenderness of the right lateral hip and over the sacroiliac joint. The left hip range of motion had flexion 120°,

10

**Lincoln/Mason 0418**

external rotation to 55°, internal rotation to 5°. There was a positive anterior impingement test. Straight leg raise caused low back pain. There was tenderness over the anterior hip and laterally over the greater trochanter.
The diagnoses were other articular cartilage disorders right hip, other articular cartilage disorders left hip, and pain in the left hip. The claimant decided to return to Roger Sung, MD to discuss any further options regarding her sacroiliac joints.

On 03/03/2020, the claimant followed up with Jeffrey Kent, MD. She continued to have worsening pain in the lower back along the sacroiliac joints. She was considering a consultation with Mayo Clinic. On physical examination, she had pain with range of motion of the hip and pain in the lower back and sacroiliac joints. The diagnoses were sacroiliac joint pain, chronic midline low back pain with sciatica, and tear of the right acetabular labrum. She was advised to continue to follow with her specialists.

On 05/01/2020, the claimant followed up with Michael Huang, MD. She had been working at physical therapy on the sacroiliac joints, which had been worsening her pain. The pain was radiating laterally and anteriorly towards the hip. She continued to have significant posterior pain. She had not yet returned to Roger Sung, MD, due to the coronavirus. She was working on walking around the block. She continued to have difficulty going up and down stairs and lying supine. Her pain was 8-9/10. On physical examination, hip flexion on the right was to 115°, external rotation 45°, internal rotation 5°. There was tenderness of the right lateral hip and over the sacroiliac joint. The left lower extremity was normal with unremarkable range of motion. The diagnoses were other articular cartilage disorders right hip, and right sacroiliitis. She was advised to return to Roger Sung, MD for further evaluation and treatment of the sacroiliac joints, and to continue physical therapy.

On 05/13/2020, the claimant followed up with Roger Sung, MD. She complained of bilateral sacroiliac joint pain. On physical examination, she had tenderness over both sacroiliac joints. The diagnoses were sacroiliitis, chronic pain syndrome, and sciatica. They were going to proceed with a lidocaine-only injection in the left sacroiliac joint. She was advised to continue considering a spinal cord stimulator.

On 05/22/2020, the claimant had a follow-up with Jeffrey Kent, MD. She was doing physical therapy. She reported having a vaginal yeast infection. Her physical examination was done via video conference and was normal. The diagnoses were osteoarthritis of the spine with radiculopathy in the lumbar region, tear of the right acetabular labrum, sacroiliac joint pain, and acute vaginitis. She was given Diflucan and advised to continue following with her specialists.

On 06/11/2020, the claimant underwent a sacroiliac joint injection on the left for the diagnosis of sacroiliitis. This was performed by David Salek, MD.

On 07/01/2020, the claimant followed up with Roger Sung, MD. She had the left sacroiliac joint injection and was pain free for about two hours. On physical examination, she continued to have tenderness along bilateral sacroiliac joints. The diagnoses were other intervertebral disc degeneration lumbar region, low back pain, and sacroiliitis. She was referred back to physical therapy because her treatment was interrupted by Covid-19.

11

**Lincoln/Mason 0419**

On 07/01/2020, the claimant followed up with Jeffrey Kent, MD. She discussed the left-sided diagnostic sacroiliac joint injection.
They discussed needing rehab on the right sacroiliac joint and a possibility of fusing the left sacroiliac joint. She was considering a labral reconstruction on the left hip and a spinal cord stimulator. She continued having the right sacroiliac joint pain. She was applying to Social Security and had been denied. She requested a cyclobenzaprine refill. On physical examination, she had abnormal lower back and sacroiliac joints. The diagnoses were osteoarthritis of the spine with radiculopathy in the lumbar region, sacroiliac joint pain, and femoral acetabular impingement of both hips. Her cyclobenzaprine was refilled. She was advised to continue her current treatment plan with her specialists.

MRI of the lumbar spine from 07/31/2020 interpreted by José Pizarro, MD, demonstrated straightening of the normal lumbar lordosis. There was kyphosis L2-L3. At L1-L2, there was a central disc herniation impinging on the thecal sac causing mild spinal stenosis. At L2-L3, there was a broad central disc herniation causing mild to moderate spinal stenosis. At L3-L4, there was disc desiccation and right proximal neural foraminal disc herniation which were focal. There was mild right neural foraminal stenosis. At L5-S1, there was a central disc herniation with annular tearing, elevating the posterior longitudinal ligament causing mild spinal stenosis.

On 08/17/2020, the claimant followed up with Michael Huang, MD. She reported continued worsening pain. The pain was located over bilateral sacroiliac joint and lumbar spine. Since her last visit she had a diagnostic injection in the left sacroiliac joint, which gave her two hours a complete relief of pain. She has continued physical therapy without improvement. She continued to have bilateral lower extremity symptoms including pain, numbness, and tingling down to both feet. She had an MRI of the lumbar spine. She denied significant groin pain. She had an episode where the right lower extremity gave way resulting in a fall causing temporary numbness in her vaginal area. She rated her pain 8-9/10. She continued to use crutches for weight-bearing.  On physical examination, her gait was antalgic. Hip flexion on the right was to 115°, external rotation 45°, internal rotation 5°. There was tenderness of the right lateral hip and over the sacroiliac joint bilaterally, and lumbar spine. There were no impingement testing signs at the hip with passive range of motion. The left lower extremity was normal with unremarkable range of motion. Her most recent MRI of the lumbar spine from 07/31/2020 was reviewed. The diagnoses were other articular cartilage disorders right hip, and right sacroiliitis. She was advised to continue following with Roger Sung, MD.

On 08/19/2020, the claimant followed up with Roger Sung, MD. She felt worse with physical therapy. Her pain was in the back, both sacroiliac joint and now radiating down her legs. She had a new MRI ordered by her physical therapist. Her physical examination was normal. Her MRI was reviewed and without significant changes from her previous MRI. The diagnoses were low back pain, other intervertebral disc degeneration lumbar region, sacroiliitis, chronic pain syndrome, and sciatica. She was advised to have a new spinal cord stimulator trial due to changes in her pain pattern.

12

**Lincoln/Mason 0420**

**RESPONSE TO QUESTIONS:**

**1.  What diagnoses are supported by the medical evidence?**

The medical evidence provided supports the diagnoses of femoroacetabular impingement
bilaterally, right hip labral tear, lumbar degenerative disc disease, lumbar spondylosis, and
bilateral sacroiliitis.

**2.  Taking into consideration the entire clinical picture, including standards of care and
evidence-based medicine, and any medication or other treatment side effects, please
describe if there are any supported level of impairments which translates into restrictions
and limitations from 7/21/2020 to the present? Please explain your medical rationale as to
why or why not and provide a detailed explanation.**

Since 07/21/2020, the claimant had an MRI of the lumbar spine, which according to Roger Sung,
MD was stable from the previous. The findings included degenerative disc disease, degenerative
central spinal stenosis, and degenerative neuroforaminal stenosis. These were all mild to
moderate in degree. There was no obvious impingement of exiting nerve roots. There was no
visualized myelomalacia.

She had two subsequent medical visits, one with Michael Huang, MD, and one with Roger Sung,
MD. She had been feeling worse in terms of her pain and symptomatology. However, there were
no new physical examination findings. Her most significant and consistent physical examination
findings include tenderness and decreased range of motion. She does not have any neurologic
deficits. No new restrictions were given by either of the physicians.

Although the claimant has subjective complaints of pain and falls, there was a lack of functional
deficits on physical examination to support the need for restrictions.

**3.  If functional impairment is supported, please describe how that translates into
restrictions or limitations and for what period(s) of time. Please define in terms of
frequency (never, occasional, frequent, constant) and task (sit, stand, lift/carry, type etc.).
Please explain your medical rationale for any restrictions or limitations or why restrictions
and limitations are not supported.**

Functional impairment is not supported by the documentation from 07/21/2020 to present.

**4.  Does the medical documentation support that any medical condition alone, or in
combination would preclude the claimant from sustained occupational functioning on a
full-time basis? Please explain why or why not.**

Based on the provided medical documentation since 07/21/2020, there is no evidence that would
preclude the claimant from sustained occupational functioning on a full-time basis.

**5.  When contacting the treating provider please discuss the claimant's condition,
treatment, and functional capacity. Please indicate the information reviewed and indicate**

13

**Lincoln/Mason 0421**

**whether or not you reach consensus with the treating provider. If not, please discuss your final assessment after the call.**

**AP CONTACT:**

I called the number listed (719-632-7669) on 9/4/20 at 11:08am CST and left a message for a return call on Kirsten's general office voicemail.

I called the number listed (719-632-7669) on 9/10/20 at 11:10am CST and left a message for a return call on Kirsten's general office voicemail.

I called the number listed (719-278-3627) on 9/4/20 at 11:47am CST and spoke with Jennifer and left a message for a return call.

My staff received a return call from Dr. Kent on 9/9/20 at 4:10pm CST and I was unable to take the call. A message was left for a return call to an alternate number (719-799-0784).

I called the alternate number (719-799-0784) on 9/10/20 at 11:15am CST and left a message for a return call on Dr. Kent's general voicemail.

At the time of submission, no return calls have been received.

**Daniel Fung, M.D.**
**Board Certified Physical Medicine & Rehabilitation**
**Board Certified Pain Medicine**
**License: A107358 CA**

14

**Lincoln/Mason 0422**



**Corporate Office**

Exam Coordinators Network – A division of Genex Services, LLC

Claimant Name: Jan Mason
Claim Number: 9291624
Case Number: 156002-1

"I, Daniel Fung, MD, am a physician duly licensed to practice medicine in the State of **CA**_____. I am an independent contractor and I am paid to review claim files and render medical opinions. I am not responsible for deciding whether a claimant is entitled to insurance benefits. My role is to provide objective medical opinions to Genex Services, LLC.

I hereby attest that the following statements are true:

- I have the scope of licensure or certification that typically manages the medical condition, procedure, treatment or issue under review
- I have current, relevant knowledge to render an opinion for the case under review
- No financial incentive was received based on the outcome of the opinion
- No delegation of the examination rendered

I attest that no conflict of interest exists, this includes any situation where an individual has a material, professional, familial, or financial conflict of interest regarding any of the following:

- Compensation for IME/Peer Review activities that are dependent in any way on the specific outcome of the case
- Have involvement with the case prior to its referral for review
- The referring entity
- The health benefit plan
- The consumer
- The attending provider or any other advisor previously involved in the case
- The facility at which the recommended healthcare service(s) would be provided
- The developer or manufacturer of the principal drug, device, procedure, or other therapy being recommended for the customer

I declare that the information contained in the above-referenced report was prepared by and is the work product of the undersigned and is true to the best of my knowledge and information. I certify that my medical/professional license is current and is in good standing in the jurisdiction in which my practice is located.

_____    9.14.2020
Signature of Physician                                        Date

Medical/Professional License # **A107358 CA**_____

**Lincoln/Mason 0423**

| From: | LFGNotifications@LFG.com |
|---|---|
| Sent: | Monday, September 28, 2020 9:58:48 AM |
| To: | |
| CC: | |
| BCC: | |
| Subject: | [Send Secure]Charter Communications, Inc. Claim No. 9291624 Jan Mason |
| Attachments: | cc_d2nzuvvrp5i7tqnp3mxf_9105638_9367694.pdf; |

This notification contains important information regarding a claim with Lincoln Financial Group company. THIS IS AN AUTOMATED EMAIL. PLEASE DO NOT RESPOND. You may use the contact information in the attached letter to respond if needed.

**Lincoln/Mason 0424**



Lincoln Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7213
London, KY 40742-7213
Phone No.: (888) 437-7611
Secure Fax No.: (603) 430-1926

September 28, 2020

Michael J. Huang
4110 BRIAR GATE PARKWAY STE 30
COLORADO SPRING, CO 80920

RE:     Long Term Disability (LTD) Benefits
        Charter Communications, Inc.
        Claim #: 9291624
        Claimant: Jan Mason
        Claimant D.O.B.:

Dear Michael Huang:

We are the Disability Claim Administrator for your patient, Jan Mason.
On September 14, 2020 a/an Independent Medical Review was performed to assist us in determining
Ms. Mason' eligibility for Long Term Disability (LTD) benefits. The results of this assessment
demonstrate the following:

*Since 07/21/2020, the claimant had an MRI of the lumbar spine, which according to Roger
Sung, MD was stable from the previous. The findings included degenerative disc disease,
degenerative central spinal stenosis, and degenerative neuroforaminal stenosis. These were all
mild to moderate in degree. There was no obvious impingement of exiting nerve roots. There
was no visualized myelomalacia.*

*She had two subsequent medical visits, one with Michael Huang, MD, and one with Roger
Sung, MD. She had been feeling worse in terms of her pain and symptomatology. However,
there were no new physical examination findings. Her most significant and consistent physical
examination findings include tenderness and decreased range of motion. She does not have any
neurologic deficits. No new restrictions were given by either of the physicians.*

*Although the claimant has subjective complaints of pain and falls, there was a lack of
functional deficits on physical examination to support the need for restrictions.*

Please review the enclosed report by October 9, 2020, and provide any comments you wish to
have considered. If you disagree with September 14, 2020 findings, please detail the specific areas
with which you disagree and provide medical documentation to support your position.

We ask that you provide this information by October 9, 2020. Failure to provide the requested
information may result in an adverse benefit determination. The information can be faxed to our

1  of  2

**Lincoln/Mason 0425**

office at our secure fax number (603) 430-1926 or mailed to the above address.

Although HIPAA does not apply to disability insurance carriers, we understand your responsibilities under HIPAA as a health care provider, and our associated responsibility of ensuring this information is protected against deliberate or inadvertent misuse or disclosure.

As the insurance carrier providing employer sponsored Long Term Disability (LTD) benefits coverage to your patient, we have enclosed a HIPAA compliant authorization signed by Ms. Mason allowing the release of information to our company. This authorization specifically allows you to release medical information to us and is valid for two years from the date of Ms. Mason' signature.

If you have any questions regarding this matter, please contact me.

Sincerely,

Mary Avrett
Appeals Consultant
Phone No.: (888) 437-7611 Ext. 16371
Secure Fax No.: (603) 430-1926

CC:    Jan Mason

Attachments:   9291624-EMPLOYEE/CLAIMANT-AUTHORIZATION-09.25.2019
                9291624-MEDICAL-MEDICAL RECORDS-09.15.2020

**Lincoln/Mason 0426**



Lincoln Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7213
London, KY 40742-7213
Phone No.: (888) 437-7611
Secure Fax No.: (603) 430-1926

| | |
|---|---|
| Date: | September 28, 2020 |
| To: | ROGER SUNG<br>4110 BRIARGATE DR PARKWAY #300<br>COLORADO SPRINGS CO 80920 |
| Attn: | Urgent - Dr Sung<br>Second Request |
| Fax: | (719) 632-0088 |
| From: | Mary Avrett<br>Appeals Consultant<br>Phone No.: Phone No.: (888) 437-7611<br>Secure Fax No.: (603) 430-1926 |
| Total Pages<br>(Including Cover): 20 | |
| RE:<br><br>Claim #: 9291624<br>Claimant: Jan Mason<br><br>Charter Communications, Inc. | |

This fax, and any attachments thereto, is intended only for the use of the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this fax, you are hereby notified that any dissemination, distribution or copying of this fax, and any attachments thereto, is strictly prohibited. If you have received this fax in error, please notify me by telephone at (888) 437-7611 and permanently shred the original and any copy of any fax and any printout thereof.

**Lincoln/Mason 0427**



Lincoln Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7213
London, KY 40742-7213
Phone No.: (888) 437-7611
Secure Fax No.: (603) 430-1926

September 28, 2020

Roger Sung
4110 BRIARGATE DR PARKWAY #300
COLORADO SPRINGS, CO 80920

RE:     Long Term Disability (LTD) Benefits
        Charter Communications, Inc.
        Claim #: 9291624
        Claimant: Jan Mason
        Claimant D.O.B.:

Dear Roger Sung:

We are the Disability Claim Administrator for your patient, Jan Mason.

On September 14, 2020 a/an Independent Medical Review was performed to assist us in determining Ms. Mason' eligibility for Long Term Disability (LTD) benefits. The results of this assessment demonstrate the following:

*Since 07/21/2020, the claimant had an MRI of the lumbar spine, which according to Roger Sung, MD was stable from the previous. The findings included degenerative disc disease, degenerative central spinal stenosis, and degenerative neuroforaminal stenosis. These were all mild to moderate in degree. There was no obvious impingement of exiting nerve roots. There was no visualized myelomalacia.*

*She had two subsequent medical visits, one with Michael Huang, MD, and one with Roger Sung, MD. She had been feeling worse in terms of her pain and symptomatology. However, there were no new physical examination findings. Her most significant and consistent physical examination findings include tenderness and decreased range of motion. She does not have any neurologic deficits. No new restrictions were given by either of the physicians.*

*Although the claimant has subjective complaints of pain and falls, there was a lack of functional deficits on physical examination to support the need for restrictions.*

Please review the enclosed report by October 9, 2020, and provide any comments you wish to have considered. If you disagree with September 14, 2020' findings, please detail the specific areas with which you disagree and provide medical documentation to support your position.

We ask that you provide this information by October 9, 2020. Failure to provide the requested

1  of  2

**Lincoln/Mason 0428**

information may result in an adverse benefit determination. The information can be faxed to our office at our secure fax number (603) 430-1926 or mailed to the above address.

Although HIPAA does not apply to disability insurance carriers, we understand your responsibilities under HIPAA as a health care provider, and our associated responsibility of ensuring this information is protected against deliberate or inadvertent misuse or disclosure.

As the insurance carrier providing employer sponsored Long Term Disability (LTD) benefits coverage to your patient, we have enclosed a HIPAA compliant authorization signed by Ms. Mason allowing the release of information to our company. This authorization specifically allows you to release medical information to us and is valid for two years from the date of Ms. Mason' signature.

If you have any questions regarding this matter, please contact me.

Sincerely,

Mary Avrett
Appeals Consultant
Phone No.: (888) 437-7611 Ext. 16371
Secure Fax No.: (603) 430-1926

CC:    Jan Mason


Attachments:    9291624-EMPLOYEE/CLAIMANT-AUTHORIZATION-09.25.2019
                9291624-MEDICAL-MEDICAL RECORDS-09.15.2020

**Lincoln/Mason 0429**

3L268190622

 **Lincoln** Financial Group®

Liberty Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7207
London, KY 40742-7207
Phone No.: (844) 384-5858
Secure Fax No.: (603) 334-5994

### AUTHORIZATION FOR THE RELEASE OF INFORMATION INCLUDING PROTECTED HEALTH INFORMATION

**I HEREBY AUTHORIZE THE USE OR DISCLOSURE OF INFORMATION ABOUT ME AS DESCRIBED BELOW:**

**Person(s) or group(s) of persons authorized to use or disclose the information:** Any physicians, medical practitioners, hospitals, clinics, HMOs, long-term care facilities, medical or medically-related facilities, pharmacies, insurance companies, credit or consumer reporting agency, financial/educational institutions, current or former employer, governmental agency, MIB Inc., and any insurance support organizations.

**Person(s) or group(s) of persons authorized to collect or otherwise receive the information:** The particular Company in the Lincoln Financial Group of companies to which I am submitting a claim and its authorized representatives, agents and/or employees, the Plan Sponsor (if self-insured Plan) and other organizations providing claims management services.

**Description of the information that may be used or disclosed:** This Authorization specifically includes the release of all information related to:

* My physical and mental health and my insurance policies and claims, including, but not limited to, those containing diagnosis, treatments, prognosis, prescription drug information, alcohol or drug abuse or information regarding communicable or infectious conditions, including HIV/AIDS.
* Job duties, earnings, personnel records and other work related information and credit reports, bank records, and federal and state tax returns.
* Information concerning Social Security benefits, including any records pertaining to me and my dependents

**The information will be used or disclosed only for the following purpose(s):** For purposes of investigating, evaluating and processing my claim, and/or for insurance-related functions.

### STATEMENTS OF UNDERSTANDING & ACKNOWLEDGMENT:

**I understand** that information used or disclosed pursuant to this authorization could be subject to redisclosure as necessary by the recipient and, if so, may not be subject to federal or state law protecting its confidentiality.

**I understand** that I may revoke this authorization in writing at any time by sending a written revocation to the Company in the Lincoln Financial Group of companies to which I have submitted a claim, except to the extent that action has been taken in reliance on this authorization, or to the extent that other law provides the Company with the right to contest a claim. I also understand that the revocation of this authorization will not affect uses and disclosures of my health information for purposes of treatment, payment and health care operations.

**I understand** that authorizing the disclosure of my health information is voluntary and the provision of health care services to me is not conditioned on whether I sign this authorization. If I choose not to sign this authorization, insurance coverage or claim payments may be denied or delayed.

This authorization shall remain in force for 24 months from the date of signature, except to the extent applicable state law imposes or allows a different duration. The information obtained under this authorization will be retained in accordance with the Company's standard retention policy and applicable law. I understand that I may request a copy of this authorization.

Name of claimant (print)    ___JAU K MASON___

Name of legal representative, if applicable (print) _____    Relationship _____

Signature of claimant or legal representative    ___Jack Mason___

Date of Birth: __ _____ Claim Number: __9291624__ Date: __09/14/19__

**A copy of this authorization will be considered as valid as the original.**

**Lincoln/Mason 0430**

3L268190622

 **Lincoln** Financial Group®

Liberty Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7207
London, KY 40742-7207
Phone No.: (844) 384-5858
Secure Fax No.: (603) 334-5994

### AUTHORIZATION FOR THE RELEASE OF PROTECTED HEALTH INFORMATION

**I HEREBY AUTHORIZE THE USE OR DISCLOSURE OF HEALTH INFORMATION ABOUT ME AS DESCRIBED BELOW:**

**Person(s) or group(s) of persons authorized to use or disclose the information:** Any physicians, medical practitioners, hospitals, clinics, HMOs, long-term care facilities, medical or medically-related facilities, pharmacies, insurance companies, Plan Sponsor/ Administrator, governmental agency, MIB Inc., and any insurance support organizations.

**Person(s) or group(s) of persons authorized to collect or otherwise receive the information:** The particular Company in the Lincoln Financial Group of companies to which I am submitting a claim and its authorized representatives, agents and/or employees, the Plan Sponsor (if self-insured Plan) and other organizations providing claims management services.

**Description of the information that may be used or disclosed:** This Authorization specifically includes the release of all psychotherapy notes relating to me, without restriction, including psychotherapy notes recorded in any medium documenting or analyzing the contents of conversations during private counseling sessions and/or group, joint or family counseling sessions.

**The information will be used or disclosed only for the following purpose(s):** For purposes of investigating, evaluating and processing my claim, and/or for insurance-related functions.

### STATEMENTS OF UNDERSTANDING & ACKNOWLEDGMENT:

**I understand** that information used or disclosed pursuant to this authorization could be subject to redisclosure as necessary by the recipient and, if so, may not be subject to federal or state law protecting its confidentiality.

**I understand** that I may revoke this authorization in writing at any time by sending a written revocation to the Company in the Lincoln Financial Group of companies to which I have submitted a claim, except to the extent that action has been taken in reliance on this authorization, or to the extent that other law provides the Company with the right to contest a claim. I also understand that the revocation of this authorization will not affect uses and disclosures of my health information for purposes of treatment, payment and health care operations.

**I understand** that authorizing the disclosure of this health information is voluntary and the provision of health care services to me is not conditioned on whether I sign this authorization. If I choose not to sign this authorization, insurance coverage or claim payments may be denied or delayed.

**This authorization** shall remain in force for 24 months from the date of signature, except to the extent applicable state law imposes or allows a different duration. The information obtained under this authorization will be retained in accordance with the Company's standard retention policy and applicable law. I understand that I may request a copy of this authorization.

Name of claimant (print)   JAU K MASON

Name of legal representative, if applicable (print) _____   Relationship _____

Signature of claimant or legal representative   Jau K Mason

Date of Birth: _____   Claim Number: __9291624__   Date: __08/14/19__

**A copy of this authorization will be considered as valid as the original**

Lincoln/Mason 0431

....................................................................................................................................................................................................................

**Daniel Fung, M.D.**
**Board Certified Physical Medicine & Rehabilitation**
**Board Certified Pain Medicine**

**CLAIMANT NAME:** Jan Mason
**ECN #:** 156002-1
**CLAIM #:** 9291624
**DATE OF LOSS:** 04/17/2019
**DATE OF REVIEW:** 09/14/2020
**CASE TYPE:** Long-Term Disability

**DIAGNOSIS:** Pain in right hip

**MEDICAL RECORDS REVIEWED:**
11/11/2015, Job Description, Charter Communications.
12/19/2017, State of Colorado Traffic Accident Report, Richard DuVall, Credentials Not Provided.
07/11/2018, X-Ray Lumbar Spine, Jon Snider, MD.
09/12/2018, MRI Pelvis and Sacroiliac Joints, Joseph Ugorji, DO.
11/27/2018, CT Pelvis, Nicholas Moore, MD.
01/09/2019, Fluoroscopically Guided Injection of the Right Hip Imaging, Jacob Becker, MD.
01/09/2019, Fluoroscopically Guided Injection of the Left Hip Imaging, Jacob Becker, MD.
01/31/2019, Progress Note, Tyler Bron, MD.
02/11/2019, MRI Arthrogram Right Hip, Craig LaBuda, MD.
02/18/2019, Progress Note, Tyler Bron, MD.
03/07/2019, Progress Note, Michael Huang, MD.
04/17/2019, Operative Report, Michael Huang, MD, MD.
04/18/2019, Progress Note, Kristen Reiss, PA-C.
05/02/2019, Progress Note, Kristen Reiss, PA-C.
06/04/2019, Progress Note, Michael Huang, MD.
07/09/2019, Progress Note, Michael Huang, MD.
07/23/2019, Progress Note, Jeffrey Kent, MD.
07/29/2019, Progress Note, James Bee, MD.
08/06/2019, Progress Note, Jeffrey Kent, MD.
08/08/2019, MRI Lumbar Spine, Jacob Becker, MD.
08/19/2019, Progress Note, James Bee, MD.
08/21/2019, Progress Note, Roger Sung, MD.
08/28/2019, Progress Note, David Salek, MD.
09/03/2019, Long-Term Disability Claim Creation Request, Ethan Crockett, Credentials Not Provided.
09/14/2019, Disability Questionnaires an Application for Benefits, Jan Mason.
09/17/2019, Physical Therapy Evaluation, Catherine Bottorff, PT, DPT.
10/03/2019, Nursing Memorandum, Cassandra K., RN.
10/04/2019, Disability Questionnaires an Application for Benefits, Jan Mason.
10/07/2019, Progress Note, Jeffrey Kent, MD.
10/11/2019, Progress Note, Kristen Reiss, PA-C.

1

**Lincoln/Mason 0432**

10/22/2019, MRI Right Hip Arthrogram, John Campbell, MD.
10/25/2019, Progress Note, Michael Huang, MD.
10/27/2019, Peer Review, Richard Avioli, MD.
11/20/2019, Progress Note, Roger Sung, MD.
12/09/2019, Operative Report, Michael Huang, MD.
12/10/2019, Progress Note, Michael Huang, MD.
12/13/2019, Physical Therapy Initial Examination, Taylor Mark Pfeifer, PT, DPT.
12/13/2019, Physical Therapy Plan of Care, Taylor Mark Pfeifer, PT, DPT.
12/13/2019, Physical Therapy Daily Note, Taylor Mark Pfeifer, PT, DPT.
12/17/2019, Physical Therapy Daily Note, Jennifer Mulligan, PT, DPT.
12/23/2019, Progress Note, Phillip Falender, PA-C.
12/24/2019, Physical Therapy Daily Note, Kerri Anne Tiller, PT, DPT.
12/27/2019, Physical Therapy Daily Note, Taylor Mark Pfeifer, PT, DPT.
12/30/2019, Physical Therapy Daily Note, Kerri Anne Tiller, PT, DPT.
12/30/2019, Progress Note, Jeffrey Kent, MD.
01/02/2020, Physical Therapy Note, Sandi Feeney, PT, DPT.
01/06/2020, Physical Therapy Daily Note, Kerri Anne Tiller, PT, DPT.
01/10/2020, Physical Therapy Daily Note, Kerri Anne Tiller, PT, DPT.
01/14/2020, Physical Therapy Daily Note, Jennifer Mulligan, PT, DPT.
01/17/2020, Physical Therapy Daily Note, Taylor Mark Pfeifer, PT, DPT.
01/20/2020, Physical Therapy Daily Note, Kerri Anne Tiller, PT, DPT.
01/21/2020, Progress Note, Kristen Reiss, PA-C.
01/23/2020, Physical Therapy Daily Note, Kerri Anne Tiller, PT, DPT.
01/27/2020, Physical Therapy Daily Note, Kerri Anne Tiller, PT, DPT.
01/29/2020, Physical Therapy Daily Note, Taylor Mark Pfeifer, PT, DPT.
01/30/2020, MRI Left Hip Arthrogram, Nicholas Moore, MD.
01/31/2020, Progress Note, Kelsey Chrane, PA-C.
02/04/2020, Physical Therapy Daily Note, That Jennifer Mulligan, PT, DPT.
02/06/2020, Progress Note, Michael Huang, MD.
02/11/2020, Physical Therapy Daily Note, Ellen Jackson, PT.
02/12/2020, Progress Note, David Salek, MD.
02/20/2020, Physical Therapy Progress Note, Scott Moser, PT, DPT.
02/20/2020, Physical Therapy Daily Note, Scott Moser, PT, DPT.
02/25/2020, Physical Therapy Daily Note, Marc Phillips, PT, DPT.
03/03/2020, Progress Note, Jeffrey Kent, MD.
03/05/2020, Physical Therapy Daily Note, Marc Phillips, PT, DPT.
03/12/2020, Progress Note, Michael Huang, MD.
03/12/2020, Physical Therapy Daily Note, Marc Phillips, PT, DPT.
03/17/2020, Physical Therapy Daily Note, Marc Phillips, PT, DPT.
04/02/2020, Physical Therapy Note, Marc Phillips, PT, DPT.
04/09/2020, Physical Therapy Daily Note, Marc Phillips, PT, DPT.
04/16/2020, Physical Therapy Daily Note, Marc Phillips, PT, DPT.
04/23/2020, Physical Therapy Daily Note, Marc Phillips, PT, DPT.
04/30/2020, Physical Therapy Daily Note, Marc Phillips, PT, DPT.
05/01/2020, Progress Note, Michael Huang, MD.
05/07/2020, Physical Therapy Daily Note, Marc Phillips, PT, DPT.

2

**Lincoln/Mason 0433**

05/13/2020, Progress Note, Roger Sung, MD.
05/21/2020, Physical Therapy Daily Note, Marc Phillips, PT, DPT.
05/22/2020, Progress Note, Jeffrey Kent, MD.
06/11/2020, Procedure Note, David Salek, MD.
06/18/2020, Physical Therapy Daily Note, Marc Phillips, PT, DPT.
06/23/2020, Disability Questionnaires an Application for Benefits, Jan Mason.
07/01/2020, Progress Note, Roger Sung, MD.
07/01/2020, Medical Questionnaire, Jeffrey Kent, MD.
07/01/2020, Progress Note, Jeffrey Kent, MD.
07/09/2020, Physical Therapy Initial Examination, Marc Phillips, PT, DPT.
07/16/2020, Letter Correspondences, David Monti, MD.
07/16/2020, Peer Review, David Monti, MD.
07/16/2020, Physical Therapy Daily Note, Marc Phillips, PT, DPT.
07/21/2020, Written Request for Review, Jan Mason.
07/23/2020, Letter Correspondence, David Salek, MD.
07/23/2020, Physical Therapy Daily Note, Marc Phillips, PT, DPT.
07/31/2020, MRI Lumbar Spine, José Pizarro, MD.
08/06/2020, Physical Therapy Daily Note, Marc Phillips, PT, DPT.
08/13/2020, Physical Therapy Recertification Note, Marc Phillips, PT, DPT.
08/13/2020, Physical Therapy Daily Note, Marc Phillips, PT, DPT.
08/17/2020, Progress Note, Michael Huang, MD.
08/19/2020, Progress Note, Roger Sung, MD.
08/20/2020, Physical Therapy Daily Note, Marc Phillips, PT, DPT.
08/31/2020, Letter Correspondence, Jeffrey Kent, MD.

**HISTORY:**

I have been asked to review the medical records on behalf of ECN regarding Jan Mason. The claimant is a now 48-year-old female with a long-term disability claim from 04/17/2019. Her job title was Representative 3, Customer Service Billing. This was a sedentary position. Her primary diagnosis was pain in right hip.

On 12/18/2017, the claimant was involved in a motor vehicle accident. She was stopped in heavy traffic in the right through lane when another driver failed to come to a complete stop and collided with the rear passenger side bumper. She complained of hip and lower back pain. Moderate to severe damage was sustained to the rear passenger side bumper and quarter panel of the vehicle.

On 07/11/2018, the claimant had an x-ray the lumbosacral spine interpreted by Jon Snider, MD. This showed L3-L4 retrolisthesis and multilevel spondylosis. There was a metallic fixation of the sacroiliac joint.

On 09/12/2018, the claimant had an MRI of the pelvis and sacroiliac joints interpreted by Joseph Ugorji, DO. The report provided was not completely legible.

3

**Lincoln/Mason 0434**

On 11/27/2018, the claimant had a CT of the pelvis. This was interpreted by Nicholas Moore, MD. This demonstrated a right sacroiliac joint internal fixation without evidence of a hardware failure. There was bilateral cam type femoroacetabular impingement.

On 01/09/2019, the claimant had a fluoroscopically guided joint injection of the right hip. Her pain went from 5-6/10 to 0/10 in severity after the procedure. This was performed by Tyler Bron, MD.

On 01/09/2019, the claimant had a fluoroscopically guided joint injection of the left hip. Her pain went from 4/10 to 0/10 in severity after the procedure. This was performed by Tyler Bron, MD.

On 01/31/2019, the claimant was evaluated by Tyler Bron, MD. She complained of bilateral hip pain. She was following up after bilateral corticosteroid injections in her hips. For the initial 4-6 hours after the injection she had complete relief of her hip pain. This was only temporary and overall had not noticed any significant improvement from the injection. Her pain was worsening in the right greater than the left. She was also complaining of back pain. On physical examination of the right hip and pelvis, range of motion was limited with flexion 100°, internal rotation 0°, external rotation 15°. Range of motion elicited groin pain. Her pain was most severe with internal rotation. Her quadricep and hamstring strength was 5/5. Plantar and dorsiflexion strength was 5/5. Her sensation was intact over the lower extremity. Physical examination of the left hip and pelvis demonstrated range of motion limited with flexion 100°, internal rotation 0°, external rotation 15°. Range of motion elicited groin pain. Her pain was most severe with internal rotation. Her strength and sensory examination were intact. Her diagnostic testing was reviewed. The diagnoses were pain in right hip and pain in the left hip. Her pain was likely due to osteoarthritis versus labral pathology. An MRI arthrogram of the right hip was ordered.
On 02/11/2019, the claimant had an MRI arthrogram of the right hip. This was interpreted by Craig LaBuda, MD. This demonstrated a right hip anterior superior labral tear. There was mild, superior hip joint space narrowing and small anterior lateral femoral head-neck-osseous bump. There was a right sacroiliac joint fusion.

On 02/18/2019, the claimant followed up with Tyler Bron, MD. Her hip was still very painful. On physical examination of the right hip and pelvis, range of motion was limited with flexion to 100°, internal rotation 0°, external rotation 15°. Range of motion elicited groin pain. Her pain was most severe with internal rotation. Her quadricep and hamstring strength was 5/5. Plantar and dorsiflexion strength was 5/5. Her sensation was intact over the lower extremity. Physical examination of the left hip and pelvis demonstrated range of motion limited with flexion to 100°, internal rotation 0°, external rotation 15°. Range of motion elicited groin pain. Her pain was most severe with internal rotation. Her strength and sensory examination were intact. The MRI arthrogram was reviewed showing an anterior superior labral tear with minimal joint space narrowing, as well as signs of femoral acetabular impingement. The diagnoses were pain in the left hip, and pain in the right hip. She was referred to another physician for possible arthroscopic labral repair.

On 03/07/2019, the claimant was seen by Michael Huang, MD. She reported right hip pain over the posterior buttock area for about two years. She was treated initially for sacroiliac joint pain in

4

Lincoln/Mason 0435

September 2017 with sacroiliac joint fusion. She had recovered extremely well with resolution of her symptoms until she was involved in a car accident where she was rear-ended in December 2017. She reported some groin pain but mostly felt her pain in the posterior buttock area. Her symptoms were worse with sitting, but now consistently bothering her with standing and walking. She denied numbness or tingling. She had tried rest, activity modification, anti-inflammatories including ibuprofen without benefit. She tried physical therapy without benefit. She tried chiropractic treatment and massage therapy with limited benefit. She underwent an intra-articular injection and she had four hours of complete pain resolution but did not get any benefit long-term. Her symptoms were sharp, dull, and aching and made worse with sitting and walking. She also had associated stiffness and weakness. On physical examination, her gait was antalgic. Right hip range of motion demonstrated flexion to 115°, external rotation to 55°, and internal rotation to 10°. The anterior impingement test was positive reproducing her posterior buttock pain and somewhat reproducing groin pain. There was tenderness to palpation of the posterior buttock. She had a negative straight leg raise and negative posterior impingement test. At the left hip, range of motion demonstrated flexion to 25°, external rotation to 65°, and internal rotation to 10°. Anterior and posterior impingement tests and straight leg raise were negative. There was no tenderness to palpation. Her diagnostics were reviewed. The diagnoses were pain in the right hip, and other articular cartilage disorders of the right hip. This was further discussed as right hip pain secondary to labral tear and femoral acetabular impingement. Surgical intervention was discussed and planned for.

On 04/17/2019, the claimant had a right hip labral repair, arthroscopic acetabuloplasty, femoroplasty, osteoplasty to remove cam lesion, chondroplasty, synovectomy, capsular plication performed by Michael Huang, MD.

On 04/18/2019, the claimant followed up with Kristen Reiss, PA-C. She was a one-day status post-surgery. Her pain was well-controlled. She was utilizing her post-operative hip braces and crutches. On physical examination, the right hip wounds had minimal drainage. There was mild swelling which was expected. There were no signs of infection. The diagnosis was one-day status post right hip surgery. She was given postoperative instructions and advised to follow-up in two weeks.

On 05/02/2019, the claimant followed up with Kristen Reiss, PA-C. She was two weeks status post hip surgery. Her pain was well-controlled. She was doing well with physical therapy. On physical examination, the surgical wounds were healed without signs of infection. Her sensation was intact. The diagnoses were pain in the right hip, and other articular cartilage disorders of the right hip. Her sutures were removed. She was given further instructions for routine postoperative management. She was given oxycodone.

On 06/04/2019, the claimant followed up with Michael Huang, MD. She was six weeks status post right hip surgery. She reported increasing hip pain worse than her preoperative pain. It began after she started to discontinue the crutches two weeks prior. She also presented with a new complaint of left hip pain. She states having had this since December 2017, with progressive worsening. Her left was feeling worse after bearing more weight after her surgery. The pain was in the groin and worsened with prolonged sitting, prolonged standing, and squatting. Rotational activities also increased pain. She had tried rest, activity modification and ibuprofen. She was

5

**Lincoln/Mason 0436**

attending physical therapy. On physical examination of the left hip, flexion was to 115°, external rotation to 65° and internal rotation to 10°. The anterior impingement test was positive. She had tenderness in the anterior groin.

The right hip surgical wounds were well healed without signs of infection. Range of motion of the right hip was flexion to 115°, external rotation to 50° and internal rotation to 5° with continued positive anterior impingement test. X-rays of the bilateral hips were ordered. There was well-preserved femoral acetabular joint spacing. At the left hip there was evidence of femoral, acetabular impingement cam type with alpha angle measuring 63°. The diagnoses were pain in the right hip, and other articular cartilage disorders of the right hip. She was advised to go back on crutches for about two weeks. She was given indomethacin for inflammation. In terms of the left hip, there was suspicion for underlying labral tear. They were considering MRI arthrogram of the left hip.

On 07/09/2019, the claimant followed up with Michael Huang, MD. She reported increasing right posterior buttock and lumbar spine pain. She had minimal anterior hip pain. Her hip pain was much better since her previous visit. She was doing physical therapy. She was concerned about her lumbar spine and felt her pain was radiating down her buttock to the posterior thigh and into her calf. At one point in her history, she was considering a spinal stimulator for low back pain. She described her pain as nerve pain and burning. She had occasional mild anterior groin pain with activity which she was tolerating well. On physical examination, the right hip surgical wounds were well healed. Range of motion included flexion to 110°, external rotation to 50°, internal rotation to 10° and abduction of 40°. She had minimal anterior pain with any of these tests. She had significant posterior hip pain over the sacroiliac joint and lumbar spine. Straight leg raise was negative for radicular symptoms but increased her posterior hip buttock and spine pain. She was directly tender over the superior aspect of the sacroiliac joint and the right lumbosacral junction. The diagnoses were pain in right hip and other articular alleged disorders of the right hip. She was advised to continue with physical therapy. She planned on following up with her spine surgeon for an opinion. She was continued on indomethacin.

On 07/23/2019, the claimant was evaluated by Jeffrey Kent, MD. She reported recent labral tear repair. She was having worsening pain since starting to bear weight. She reported pain in her lower back with burning pain into her right leg more than her left leg. She requested a parking pass, Xanax, and Ambien. No physical examination was provided. The diagnoses were osteoarthritis of the spine with radiculopathy, tear of the right acetabular labrum, femoral acetabular impingement of both hips, primary insomnia, and anxiety. She was advised to continue to follow with her specialists, and to continue gabapentin, Xanax, and Ambien.

On 07/29/2019, the claimant was evaluated by James Bee, MD. She complained of pain in her buttock and back. The pain was sharp, burning, and constant. It was made worse with activity such as sitting, standing, walking, and bending. It was made better by lying down. She had done physical therapy, which was stopped due to worsening symptoms. She was taking indomethacin. Her pain was 8/10. Her activities of daily living were limited secondary to her complaints. On physical examination of the lumbar spine, there was no tenderness. The flexion of the lumbar spine brought the fingertips 6 inches from the floor. Extension was approximately 15°. There was some pain at the extremes of flexion and extension. There was pain with palpation along the gluteal musculature right greater than left. There was no pain with axial compression of the head

6

**Lincoln/Mason 0437**

and no pain with trunk rotation through the hips. She had a slow reciprocating gait. She was able to walk on the toes and heels. She moved easily to the examination table without assistance. Her strength throughout the lower extremities was 5/5. Her sensation was intact bilaterally. There were no upper motor signs. Her reflexes were normal. Straight leg raise was negative bilaterally. X-rays of the lumbosacral spine demonstrated a right sacroiliac joint fusion device. There was a collapse of the disc space at L2-L3. There was subtle retrolisthesis of L3 on L4. On flexion and extension, there was no instability. Her previous MRI of the lumbar spine from 05/12/2018 was also reviewed showing degenerative changes. There was no stenosis. The diagnoses were spinal stenosis in the lumbar region with neurogenic claudication, spondylosis without myelopathy or radiculopathy lumbar region, other intervertebral disc degeneration lumbar region, other intervertebral disc degeneration lumbosacral region, and pain in the right hip. A new MRI was ordered.

On 08/06/2019, the claimant was seen by Jeffrey Kent, MD. She continued with back pain that was worse on the right and made worse with walking. Driving and bending also worsened her pain.  She was taking Ambien to facilitate sleep. She was scheduled to have her MRI the next day. She was taking indomethacin. She was requesting FMLA paperwork. She was out of work. On physical examination, she had tenderness over the sacroiliac joints worse on the right. She was referred to physiatry. The diagnosis was acute right-sided low back pain with sciatica. On 08/08/2019, the claimant had an MRI of the lumbar spine interpreted by Jacob Becker, MD. This demonstrated stability since the previous MRI from 05/12/2018. There was mild multilevel degenerative disc disease with bulges and protrusions without high-grade spinal canal or neural foraminal stenosis at any level.

On 08/19/2019, the claimant followed up with James Bee, MD. She had undergone a spinal cord stimulator trial. It had helped some of her complaints but not her mid-back problems. On physical examination, there were no significant abnormalities. Her MRI of the lumbar spine was reviewed showing degenerative changes without obvious stenosis. The diagnoses were spinal stenosis in the lumbar region with neurogenic claudication, spondylosis without myelopathy or radiculopathy lumbar region, other intervertebral disc degeneration lumbar region, other intervertebral disc degeneration lumbosacral region. She was referred back for possible permanent spinal cord stimulator.

On 08/21/2019, the claimant followed up with Roger Sung, MD. She was requesting to go ahead with a spinal cord stimulator. On physical examination, she had diffuse lumbar tenderness extending into the buttock which was not specific to the sacroiliac joint. The diagnoses were low back pain, chronic pain syndrome, and sciatica. A trial for a different spinal cord stimulator.

On 08/28/2019, the claimant was seen by David Salek, MD. Her history was summarized and consistent with previous accounts. She reported pain that was constant, sharp, and burning with radiation down her right leg into the top of her toe. Her buttock pain was more severe than the leg pain. On physical examination, she had full painless range of motion of all major muscle groups and joints. She had a positive Faber test and a positive Fortin finger test. She had positive lumbar quadrant testing. Her strength and sensation were normal. Her reflexes were normal. The diagnoses were status post right sacroiliac joint fusion, status post right hip labral tear repair, low

7

**Lincoln/Mason 0438**

back pain, right lower extremity radicular features, and positive spinal cord stimulator trial with Boston Scientific. A trial for Stimwave was requested.

On 10/07/2019, the claimant followed up with Jeffrey Kent, MD. She complained of chronic low back pain and sacroiliac joint pain. She was considering a spinal cord stimulator. She was requesting FMLA paperwork and a flu vaccine. On physical examination, she had pain and tenderness in the sacroiliac joint areas and the right inguinal region. She had a normal urinalysis. She had x-rays of the hips, which were normal. The diagnoses were chronic low back pain with sciatica. She was advised to continue with her current treatment plan. She was given a flu shot.

On 10/11/2019, the claimant was evaluated by Kristen Reiss, PA-C. She reported pain that was worse than it was prior to her surgery. She was being evaluated for possible spinal cord stimulator. The pain in the posterior buttock radiated down the posterior thigh into her calf and foot. She had a burning pain in the groin area and lateral hip pain. This seemed to increase about a month prior when she started increasing her walking. She was only walking about 2 miles a week. On physical examination, she had an antalgic gait. Her surgical wounds of the right hip were well healed. Right hip flexion was to 110°, external rotation to 50°, internal rotation to 10° and abduction to 40°. She had negative anterior and posterior impingement tests. Her straight leg raise was negative for radicular symptoms but would increase her posterior hip and buttock pain. She was tender over the superior aspect of the sacroiliac joint on the right and lumbosacral junction as well as over the anterior hip and laterally over the greater trochanter. X-rays were completed showing evidence of previous sacroiliac joint fusion in the right sacroiliac joint. The diagnoses were pain in right hip and other articular cartilage disorders of the right hip. An MRI of the right hip was ordered.

On 10/22/2019, the claimant had an MRI of the right hip with arthrogram. This was interpreted by John Campbell, MD. This demonstrated postoperative changes within the right hip. The anterior aspect of the superior labrum was diminutive and blunted. The superior aspect of the anterior labrum was diminutive and irregular. These were likely postoperative. There was no recurrent tear. There was focal intermediate signal nodularity along the acetabular articular surface adjacent to a suture anchor track at the 12 o'clock position. There was a thin linear signal along the anterior capsule just lateral to the superior aspect of the anterior labrum, which could be related to capsular plication. Mild chondral irregularity along the lateral acetabulum likely reflecting postoperative change.

On 10/25/2019, the claimant followed up with Michael Huang, MD. She was there to discuss her recent MRI. On physical examination, she had an antalgic gait. Her surgical wounds of the right hip were well healed. Right hip flexion was to 110°, external rotation to 50°, internal rotation to 10° and abduction to 40°. She had negative anterior and posterior impingement tests. Her straight leg raise was negative for radicular symptoms but would increase her posterior hip and buttock pain. She was tender over the superior aspect of the sacroiliac joint on the right and lumbosacral junction as well as over the anterior hip and laterally over the greater trochanter. Due to the MRI findings, it was felt that she should undergo surgery to repair the labral tissue. The diagnoses were pain in right hip and other articular cartilage disorders of the right hip.

**Lincoln/Mason 0439**

On 11/20/2019, the claimant followed up with Roger Sung, MD. She was scheduled for a right hip labrum repair for 12/09/2019. The authorization for the stimulator trial was still pending. On physical examination, she was diffusely tender across her buttocks and lower back. Thoracic and lumbosacral x-rays showing multiple levels of lumbar degeneration.
The diagnoses were pain in the thoracic spine, low back pain, other intervertebral disc degeneration lumbar region, and sciatica. It was recommended that she try the Boston Scientific spinal cord stimulator since her insurance was denying the Stimwave.

On 12/09/2019, the claimant underwent a right hip labral reconstruction, chondroplasty, acetabuloplasty, femoroplasty, osteoplasty to remove cam lesion, synovectomy, capsular closure/plication by Michael Huang, MD.

On 12/10/2019, the claimant followed up with Michael Huang, MD. She was one-day status post right hip labral reconstruction surgery. Her pain was well-controlled. She was utilizing the postoperative crutches and braces. On physical examination, the wounds were intact with minimal drainage. There was mild swelling. The diagnosis was other articular cartilage disorders of the right hip. Physical therapy was initiated.

On 12/23/2019, the claimant followed up with Phillip Falender, PA-C. She was at two weeks status post right hip labral reconstruction surgery. She was progressing well with physical therapy. On physical examination, there were no signs of infection. Hip flexion was to 90°. The Steri-Strips were removed without difficulty. The diagnosis was other articular cartilage disorders of the right hip. She was given further instruction for increasing weight-bearing and advised to continue physical therapy.

On 12/30/2019, the claimant followed up with Jeffrey Kent, MD. She had her right labral repair. She felt worse. Her pain was increased with therapy. She was still considering a spinal stimulator. She had issues with her other hip. She resigned from her cable job. On physical examination, she was tearful at times and in a brace for her right hip. Diagnoses were chronic low back pain with sciatica, sacroiliac joint pain, and tear of the right acetabular labrum. She was advised to continue her current treatment plan.

On 01/21/2020, the claimant was evaluated by Kristen Reiss, PA-C. She was six weeks status post right hip labral reconstruction. She reported her hip pain was improving. Her lower back pain, pain over the sacroiliac joint and radicular symptoms had worsened. She was also following up for her left hip pain. Physical therapy was not helpful for the left hip. On physical examination, right hip flexion was to 100°, external rotation to 40°, and internal rotation to 5°. There was tenderness over the lateral right hip and right sacroiliac joint. The left hip range of motion included flexion to 110°, external rotation to 50°, internal rotation to 5°. She had a positive anterior impingement test. The straight leg raise produced low back pain. There was tenderness over the anterior hip and laterally over the greater trochanter. X-rays were again performed of the right hip. There were no obvious abnormalities other than the previous sacroiliac joint fusion. The diagnoses were other articular cartilage disorders of the right hip, lumbar region radiculopathy, and pain in the left hip. She was advised to continue physical therapy for the right hip. She was advised to follow-up with Roger Sung, MD regarding worsening low back and sacroiliac joint pain. An MR arthrogram of the left hip was ordered.

9

**Lincoln/Mason 0440**

On 01/30/2020, the claimant had an MRI left hip with arthrogram interpreted by Nicholas Moore, MD.
This demonstrated a focal cam deformity of the anterior left femoral head neck junction with associated anterior/anterior superior labral based tear. There was a small right hip joint effusion.

On 01/31/2020, the claimant followed up with Kelsey Chrane, PA-C. Her right hip pain has significantly improved. She continued to have lower back pain interfering with her participation in physical therapy. She had imaging of her left hip. She was still anticipating a spinal cord stimulator placement. On physical examination, there was tenderness along the spinous processes and paraspinal musculature and diffusely throughout the lower back including over the right sacroiliac joint. Motor strength of the lower extremities was intact. There was pain with range of motion, primarily extension. The diagnoses were low back pain, lumbar region spinal stenosis with neurogenic claudication, other intervertebral disc degeneration of the lumbar region, intervertebral disc disorders with radiculopathy lumbar region, sacroiliitis, pain in the right hip, and pain in the left hip. She was advised to call when she was ready to proceed with the spinal cord stimulator.

On 02/06/2020, the claimant followed up with Michael Huang, MD. She was eight weeks status post-surgery. She was now using a cane. She reported achiness of the anterior hip. She had an MR arthrogram of the left hip and had returned to discuss the findings. On physical examination, hip flexion on the right was to 105°, external rotation 40°, internal rotation 5°. There was tenderness of the right lateral hip and over the sacroiliac joint. The left hip range of motion had flexion 115°, external rotation to 55°, internal rotation to 5°. There was a positive anterior impingement test. Straight leg raise caused low back pain. There was tenderness over the anterior hip and laterally over the greater trochanter. The diagnoses were other articular cartilage disorders right hip, other articular cartilage disorders left hip, and pain in the left hip. They discussed options for managing her left hip. It was decided she would continue focusing on her right hip rehabilitation program and manage her left hip pain with anti-inflammatories.

On 02/12/2020, the claimant followed up with David Salek, MD. She was referred back for pain management. She did not want opiates and was looking for alternative care. She inquired about the use of CBD. On physical examination, she had full painless range of motion of all major muscle groups and joints. She had a positive Faber test and a positive Fortin finger test. She had positive lumbar quadrant testing. The diagnoses were status post right sacroiliac joint fusion, status post right hip labral repair, low back pain, right lower extremity radicular features, and positive spinal cord stimulator trial with Boston Scientific. She was prescribed Celebrex and Tylenol.

On 03/12/2020, the claimant followed up with Michael Huang, MD. She was 12 weeks status post right hip labral reconstruction. The right hip was doing well. Her biggest issue was tremendous pain over the right greater than left sacroiliac joint and lumbar spine. She had been in physical therapy but was having difficulty weight-bearing and was using crutches. The left hip also continued to be painful, unchanged since her last visit. On physical examination, hip flexion on the right was to 110°, external rotation 45°, internal rotation 5°. There was tenderness of the right lateral hip and over the sacroiliac joint. The left hip range of motion had flexion 120°,

10

**Lincoln/Mason 0441**

external rotation to 55°, internal rotation to 5°. There was a positive anterior impingement test. Straight leg raise caused low back pain. There was tenderness over the anterior hip and laterally over the greater trochanter.

The diagnoses were other articular cartilage disorders right hip, other articular cartilage disorders left hip, and pain in the left hip. The claimant decided to return to Roger Sung, MD to discuss any further options regarding her sacroiliac joints.

On 03/03/2020, the claimant followed up with Jeffrey Kent, MD. She continued to have worsening pain in the lower back along the sacroiliac joints. She was considering a consultation with Mayo Clinic. On physical examination, she had pain with range of motion of the hip and pain in the lower back and sacroiliac joints. The diagnoses were sacroiliac joint pain, chronic midline low back pain with sciatica, and tear of the right acetabular labrum. She was advised to continue to follow with her specialists.

On 05/01/2020, the claimant followed up with Michael Huang, MD. She had been working at physical therapy on the sacroiliac joints, which had been worsening her pain. The pain was radiating laterally and anteriorly towards the hip. She continued to have significant posterior pain. She had not yet returned to Roger Sung, MD, due to the coronavirus. She was working on walking around the block. She continued to have difficulty going up and down stairs and lying supine. Her pain was 8-9/10. On physical examination, hip flexion on the right was to 115°, external rotation 45°, internal rotation 5°. There was tenderness of the right lateral hip and over the sacroiliac joint. The left lower extremity was normal with unremarkable range of motion. The diagnoses were other articular cartilage disorders right hip, and right sacroiliitis. She was advised to return to Roger Sung, MD for further evaluation and treatment of the sacroiliac joints, and to continue physical therapy.

On 05/13/2020, the claimant followed up with Roger Sung, MD. She complained of bilateral sacroiliac joint pain. On physical examination, she had tenderness over both sacroiliac joints. The diagnoses were sacroiliitis, chronic pain syndrome, and sciatica. They were going to proceed with a lidocaine-only injection in the left sacroiliac joint. She was advised to continue considering a spinal cord stimulator.

On 05/22/2020, the claimant had a follow-up with Jeffrey Kent, MD. She was doing physical therapy. She reported having a vaginal yeast infection. Her physical examination was done via video conference and was normal. The diagnoses were osteoarthritis of the spine with radiculopathy in the lumbar region, tear of the right acetabular labrum, sacroiliac joint pain, and acute vaginitis. She was given Diflucan and advised to continue following with her specialists.

On 06/11/2020, the claimant underwent a sacroiliac joint injection on the left for the diagnosis of sacroiliitis. This was performed by David Salek, MD.

On 07/01/2020, the claimant followed up with Roger Sung, MD. She had the left sacroiliac joint injection and was pain free for about two hours. On physical examination, she continued to have tenderness along bilateral sacroiliac joints. The diagnoses were other intervertebral disc degeneration lumbar region, low back pain, and sacroiliitis. She was referred back to physical therapy because her treatment was interrupted by Covid-19.

11

**Lincoln/Mason 0442**

On 07/01/2020, the claimant followed up with Jeffrey Kent, MD. She discussed the left-sided diagnostic sacroiliac joint injection.
They discussed needing rehab on the right sacroiliac joint and a possibility of fusing the left sacroiliac joint. She was considering a labral reconstruction on the left hip and a spinal cord stimulator. She continued having the right sacroiliac joint pain. She was applying to Social Security and had been denied. She requested a cyclobenzaprine refill. On physical examination, she had abnormal lower back and sacroiliac joints. The diagnoses were osteoarthritis of the spine with radiculopathy in the lumbar region, sacroiliac joint pain, and femoral acetabular impingement of both hips. Her cyclobenzaprine was refilled. She was advised to continue her current treatment plan with her specialists.

MRI of the lumbar spine from 07/31/2020 interpreted by José Pizarro, MD, demonstrated straightening of the normal lumbar lordosis. There was kyphosis L2-L3. At L1-L2, there was a central disc herniation impinging on the thecal sac causing mild spinal stenosis. At L2-L3, there was a broad central disc herniation causing mild to moderate spinal stenosis. At L3-L4, there was disc desiccation and right proximal neural foraminal disc herniation which were focal. There was mild right neural foraminal stenosis. At L5-S1, there was a central disc herniation with annular tearing, elevating the posterior longitudinal ligament causing mild spinal stenosis.

On 08/17/2020, the claimant followed up with Michael Huang, MD. She reported continued worsening pain. The pain was located over bilateral sacroiliac joint and lumbar spine. Since her last visit she had a diagnostic injection in the left sacroiliac joint, which gave her two hours a complete relief of pain. She has continued physical therapy without improvement. She continued to have bilateral lower extremity symptoms including pain, numbness, and tingling down to both feet. She had an MRI of the lumbar spine. She denied significant groin pain. She had an episode where the right lower extremity gave way resulting in a fall causing temporary numbness in her vaginal area. She rated her pain 8-9/10. She continued to use crutches for weight-bearing.  On physical examination, her gait was antalgic. Hip flexion on the right was to 115°, external rotation 45°, internal rotation 5°. There was tenderness of the right lateral hip and over the sacroiliac joint bilaterally, and lumbar spine. There were no impingement testing signs at the hip with passive range of motion. The left lower extremity was normal with unremarkable range of motion. Her most recent MRI of the lumbar spine from 07/31/2020 was reviewed. The diagnoses were other articular cartilage disorders right hip, and right sacroiliitis. She was advised to continue following with Roger Sung, MD.

On 08/19/2020, the claimant followed up with Roger Sung, MD. She felt worse with physical therapy. Her pain was in the back, both sacroiliac joint and now radiating down her legs. She had a new MRI ordered by her physical therapist. Her physical examination was normal. Her MRI was reviewed and without significant changes from her previous MRI. The diagnoses were low back pain, other intervertebral disc degeneration lumbar region, sacroiliitis, chronic pain syndrome, and sciatica. She was advised to have a new spinal cord stimulator trial due to changes in her pain pattern.

12

**Lincoln/Mason 0443**

**RESPONSE TO QUESTIONS:**

**1. What diagnoses are supported by the medical evidence?**

The medical evidence provided supports the diagnoses of femoroacetabular impingement bilaterally, right hip labral tear, lumbar degenerative disc disease, lumbar spondylosis, and bilateral sacroiliitis.

**2. Taking into consideration the entire clinical picture, including standards of care and evidence-based medicine, and any medication or other treatment side effects, please describe if there are any supported level of impairments which translates into restrictions and limitations from 7/21/2020 to the present? Please explain your medical rationale as to why or why not and provide a detailed explanation.**

Since 07/21/2020, the claimant had an MRI of the lumbar spine, which according to Roger Sung, MD was stable from the previous. The findings included degenerative disc disease, degenerative central spinal stenosis, and degenerative neuroforaminal stenosis. These were all mild to moderate in degree. There was no obvious impingement of exiting nerve roots. There was no visualized myelomalacia.

She had two subsequent medical visits, one with Michael Huang, MD, and one with Roger Sung, MD. She had been feeling worse in terms of her pain and symptomatology. However, there were no new physical examination findings. Her most significant and consistent physical examination findings include tenderness and decreased range of motion. She does not have any neurologic deficits. No new restrictions were given by either of the physicians.

Although the claimant has subjective complaints of pain and falls, there was a lack of functional deficits on physical examination to support the need for restrictions.

**3. If functional impairment is supported, please describe how that translates into restrictions or limitations and for what period(s) of time. Please define in terms of frequency (never, occasional, frequent, constant) and task (sit, stand, lift/carry, type etc.). Please explain your medical rationale for any restrictions or limitations or why restrictions and limitations are not supported.**

Functional impairment is not supported by the documentation from 07/21/2020 to present.

**4. Does the medical documentation support that any medical condition alone, or in combination would preclude the claimant from sustained occupational functioning on a full-time basis? Please explain why or why not.**

Based on the provided medical documentation since 07/21/2020, there is no evidence that would preclude the claimant from sustained occupational functioning on a full-time basis.

**5. When contacting the treating provider please discuss the claimant's condition, treatment, and functional capacity. Please indicate the information reviewed and indicate**

13

**Lincoln/Mason 0444**

**whether or not you reach consensus with the treating provider. If not, please discuss your final assessment after the call.**

**AP CONTACT:**

I called the number listed (719-632-7669) on 9/4/20 at 11:08am CST and left a message for a return call on Kirsten's general office voicemail.

I called the number listed (719-632-7669) on 9/10/20 at 11:10am CST and left a message for a return call on Kirsten's general office voicemail.

I called the number listed (719-278-3627) on 9/4/20 at 11:47am CST and spoke with Jennifer and left a message for a return call.

My staff received a return call from Dr. Kent on 9/9/20 at 4:10pm CST and I was unable to take the call. A message was left for a return call to an alternate number (719-799-0784).

I called the alternate number (719-799-0784) on 9/10/20 at 11:15am CST and left a message for a return call on Dr. Kent's general voicemail.

At the time of submission, no return calls have been received.

**Daniel Fung, M.D.**
**Board Certified Physical Medicine & Rehabilitation**
**Board Certified Pain Medicine**
**License: A107358 CA**

14

**Lincoln/Mason 0445**



Exam Coordinators Network · A division of Genex Services, LLC

Corporate Office

Claimant Name: Jan Mason
Claim Number: 9291624
Case Number: 156002-1

"I, Daniel Fung, MD, am a physician duly licensed to practice medicine in the State of ___CA_____. I am an independent contractor and I am paid to review claim files and render medical opinions. I am not responsible for deciding whether a claimant is entitled to insurance benefits. My role is to provide objective medical opinions to Genex Services, LLC.

I hereby attest that the following statements are true:

- I have the scope of licensure or certification that typically manages the medical condition, procedure, treatment or issue under review
- I have current, relevant knowledge to render an opinion for the case under review
- No financial incentive was received based on the outcome of the opinion
- No delegation of the examination rendered

I attest that no conflict of interest exists, this includes any situation where an individual has a material, professional, familial, or financial conflict of interest regarding any of the following:

- Compensation for IME/Peer Review activities that are dependent in any way on the specific outcome of the case
- Have involvement with the case prior to its referral for review
- The referring entity
- The health benefit plan
- The consumer
- The attending provider or any other advisor previously involved in the case
- The facility at which the recommended healthcare service(s) would be provided
- The developer or manufacturer of the principal drug, device, procedure, or other therapy being recommended for the customer

I declare that the information contained in the above-referenced report was prepared by and is the work product of the undersigned and is true to the best of my knowledge and information. I certify that my medical/professional license is current and is in good standing in the jurisdiction in which my practice is located.

_____        9.14.2020
Signature of Physician                                             Date

Medical/Professional License # A107358 CA _____

**Lincoln/Mason 0446**

| From: | LFGNotifications@LFG.com |
|---|---|
| Sent: | Monday, September 28, 2020 10:02:31 AM |
| To: | |
| CC: | |
| BCC: | |
| Subject: | [Send Secure]Charter Communications, Inc. Claim No. 9291624 Jan Mason |
| Attachments: | cc_aopmn4ljsgvihdgg8jvj_9105689_9367747.pdf; |

This notification contains important information regarding a claim with Lincoln Financial Group company. THIS IS AN AUTOMATED EMAIL. PLEASE DO NOT RESPOND. You may use the contact information in the attached letter to respond if needed.

**Lincoln/Mason 0447**



Lincoln Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7213
London, KY 40742-7213
Phone No.: (888) 437-7611
Secure Fax No.: (603) 430-1926

September 28, 2020

Roger Sung
4110 BRIARGATE DR PARKWAY #300
COLORADO SPRINGS, CO 80920

RE:     Long Term Disability (LTD) Benefits
        Charter Communications, Inc.
        Claim #: 9291624
        Claimant: Jan Mason
        Claimant D.O.B.:

Dear Roger Sung:

We are the Disability Claim Administrator for your patient, Jan Mason.

On September 14, 2020 a/an Independent Medical Review was performed to assist us in determining Ms. Mason' eligibility for Long Term Disability (LTD) benefits. The results of this assessment demonstrate the following:

*Since 07/21/2020, the claimant had an MRI of the lumbar spine, which according to Roger Sung, MD was stable from the previous. The findings included degenerative disc disease, degenerative central spinal stenosis, and degenerative neuroforaminal stenosis. These were all mild to moderate in degree. There was no obvious impingement of exiting nerve roots. There was no visualized myelomalacia.*

*She had two subsequent medical visits, one with Michael Huang, MD, and one with Roger Sung, MD. She had been feeling worse in terms of her pain and symptomatology. However, there were no new physical examination findings. Her most significant and consistent physical examination findings include tenderness and decreased range of motion. She does not have any neurologic deficits. No new restrictions were given by either of the physicians.*

*Although the claimant has subjective complaints of pain and falls, there was a lack of functional deficits on physical examination to support the need for restrictions.*

Please review the enclosed report by October 9, 2020, and provide any comments you wish to have considered. If you disagree with September 14, 2020' findings, please detail the specific areas with which you disagree and provide medical documentation to support your position.

We ask that you provide this information by October 9, 2020. Failure to provide the requested

1  of  2

**Lincoln/Mason 0448**

information may result in an adverse benefit determination. The information can be faxed to our office at our secure fax number (603) 430-1926 or mailed to the above address.

Although HIPAA does not apply to disability insurance carriers, we understand your responsibilities under HIPAA as a health care provider, and our associated responsibility of ensuring this information is protected against deliberate or inadvertent misuse or disclosure.

As the insurance carrier providing employer sponsored Long Term Disability (LTD) benefits coverage to your patient, we have enclosed a HIPAA compliant authorization signed by Ms. Mason allowing the release of information to our company. This authorization specifically allows you to release medical information to us and is valid for two years from the date of Ms. Mason' signature.

If you have any questions regarding this matter, please contact me.

Sincerely,

Mary Avrett
Appeals Consultant
Phone No.: (888) 437-7611 Ext. 16371
Secure Fax No.: (603) 430-1926

CC:    Jan Mason

Attachments:    9291624-EMPLOYEE/CLAIMANT-AUTHORIZATION-09.25.2019
                9291624-MEDICAL-MEDICAL RECORDS-09.15.2020

2  of  2

**Lincoln/Mason 0449**



Lincoln Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7213
London, KY 40742-7213
Phone No.: (888) 437-7611
Secure Fax No.: (603) 430-1926

| | |
|---|---|
| Date: September 28, 2020 | |
| To: DR. CHRISTOPHER KUDRON<br>2045 FRANKLIN STREET<br>DENVER CO 80205 | |
| Attn: Urgent - Dr. Kudron | |
| Fax: (303) 831-3705 | |
| From: Mary Avrett<br>Appeals Consultant<br>Phone No.: Phone No.: (888) 437-7611<br>Secure Fax No.: (603) 430-1926 | |
| Total Pages<br>(Including Cover):    20 | |
| RE:<br><br>Claim #:    9291624<br>Claimant:   Jan Mason<br><br>Charter Communications, Inc. | |

This fax, and any attachments thereto, is intended only for the use of the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this fax, you are hereby notified that any dissemination, distribution or copying of this fax, and any attachments thereto, is strictly prohibited. If you have received this fax in error, please notify me by telephone at (888) 437-7611 and permanently shred the original and any copy of any fax and any printout thereof.

**Lincoln/Mason 0450**



Lincoln Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7213
London, KY 40742-7213
Phone No.: (888) 437-7611
Secure Fax No.: (603) 430-1926

September 28, 2020

Dr. Christopher Kudron
2045 FRANKLIN STREET
DENVER, CO 80205

RE:    Long Term Disability (LTD) Benefits
       Charter Communications, Inc.
       Claim #: 9291624
       Claimant: Jan Mason
       Claimant D.O.B.:

Dear Dr. Christopher Kudron:

We are the Disability Claim Administrator for your patient, Jan Mason.
On September 14, 2020 a/an Independent Medical Review was performed to assist us in determining
Ms. Mason'eligibility for Long Term Disability (LTD) benefits. The results of this assessment
demonstrate the following:

> *Since 07/21/2020, the claimant had an MRI of the lumbar spine, which according to Roger
> Sung, MD was stable from the previous. The findings included degenerative disc disease,
> degenerative central spinal stenosis, and degenerative neuroforaminal stenosis. These were all
> mild to moderate in degree. There was no obvious impingement of exiting nerve roots. There
> was no visualized myelomalacia.*

> *She had two subsequent medical visits, one with Michael Huang, MD, and one with Roger
> Sung, MD. She had been feeling worse in terms of her pain and symptomatology. However,
> there were no new physical examination findings. Her most significant and consistent physical
> examination findings include tenderness and decreased range of motion. She does not have any
> neurologic deficits. No new restrictions were given by either of the physicians.*

> *Although the claimant has subjective complaints of pain and falls, there was a lack of
> functional deficits on physical examination to support the need for restrictions.*

Please review the enclosed report by October 9, 2020, and provide any comments you wish to
have considered. If you disagree with September 14, 2020'findings, please detail the specific areas
with which you disagree and provide medical documentation to support your position.

We ask that you provide this information by October 9, 2020. Failure to provide the requested
information may result in an adverse benefit determination. The information can be faxed to our
office at our secure fax number (603) 430-1926 or mailed to the above address.

**Lincoln/Mason 0451**

Although HIPAA does not apply to disability insurance carriers, we understand your responsibilities under HIPAA as a health care provider, and our associated responsibility of ensuring this information is protected against deliberate or inadvertent misuse or disclosure.

As the insurance carrier providing employer sponsored Long Term Disability (LTD) benefits coverage to your patient, we have enclosed a HIPAA compliant authorization signed by Ms. Mason allowing the release of information to our company. This authorization specifically allows you to release medical information to us and is valid for two years from the date of Ms. Mason'signature.

If you have any questions regarding this matter, please contact me.

Sincerely,

Mary Avrett
Appeals Consultant
Phone No.: (888) 437-7611 Ext. 16371
Secure Fax No.: (603) 430-1926

CC:    Jan Mason


Attachments:   9291624-EMPLOYEE/CLAIMANT-AUTHORIZATION-09.25.2019
                9291624-MEDICAL-MEDICAL RECORDS-09.15.2020

**Lincoln/Mason 0452**

3L268190622

 **Lincoln** **Financial Group**®

Liberty Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7207
London, KY 40742-7207
Phone No.: (844) 384-5858
Secure Fax No.: (603) 334-5994

## AUTHORIZATION FOR THE RELEASE OF INFORMATION INCLUDING PROTECTED HEALTH INFORMATION

**I HEREBY AUTHORIZE THE USE OR DISCLOSURE OF INFORMATION ABOUT ME AS DESCRIBED BELOW:**

**Person(s) or group(s) of persons authorized to use or disclose the information:** Any physicians, medical practitioners, hospitals, clinics, HMOs, long-term care facilities, medical or medically-related facilities, pharmacies, insurance companies, credit or consumer reporting agency, financial/educational institutions, current or former employer, governmental agency, MIB Inc., and any insurance support organizations.

**Person(s) or group(s) of persons authorized to collect or otherwise receive the information:** The particular Company in the Lincoln Financial Group of companies to which I am submitting a claim and its authorized representatives, agents and/or employees, the Plan Sponsor (if self-insured Plan) and other organizations providing claims management services.

**Description of the information that may be used or disclosed:** This Authorization specifically includes the release of all information related to:

* My physical and mental health and my insurance policies and claims, including, but not limited to, those containing diagnosis, treatments, prognosis, prescription drug information, alcohol or drug abuse or information regarding communicable or infectious conditions, including HIV/AIDS.
* Job duties, earnings, personnel records and other work related information and credit reports, bank records, and federal and state tax returns.
* Information concerning Social Security benefits, including any records pertaining to me and my dependents

**The information will be used or disclosed only for the following purpose(s):** For purposes of investigating, evaluating and processing my claim, and/or for insurance-related functions.

### STATEMENTS OF UNDERSTANDING & ACKNOWLEDGMENT:

**I understand** that information used or disclosed pursuant to this authorization could be subject to redisclosure as necessary by the recipient and, if so, may not be subject to federal or state law protecting its confidentiality.

**I understand** that I may revoke this authorization in writing at any time by sending a written revocation to the Company in the Lincoln Financial Group of companies to which I have submitted a claim, except to the extent that action has been taken in reliance on this authorization, or to the extent that other law provides the Company with the right to contest a claim. I also understand that the revocation of this authorization will not affect uses and disclosures of my health information for purposes of treatment, payment and health care operations.

**I understand** that authorizing the disclosure of my health information is voluntary and the provision of health care services to me is not conditioned on whether I sign this authorization. If I choose not to sign this authorization, insurance coverage or claim payments may be denied or delayed.

This authorization shall remain in force for 24 months from the date of signature, except to the extent applicable state law imposes or allows a different duration. The information obtained under this authorization will be retained in accordance with the Company's standard retention policy and applicable law. I understand that I may request a copy of this authorization.

Name of claimant (print) _____ JAU K MASU _____

Name of legal representative, if applicable (print) _____ Relationship _____

Signature of claimant or legal representative _____ Jau K Mason _____

Date of Birth: __ _____ Claim Number: __9291624__ Date: __09/14/19__

**A copy of this authorization will be considered as valid as the original.**

**Lincoln/Mason 0453**

3L268190622

 **Lincoln** Financial Group®

Liberty Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7207
London, KY 40742-72097
Phone No.: (844) 384-5858
Secure Fax No.: (603) 334-5994

### AUTHORIZATION FOR THE RELEASE OF PROTECTED HEALTH INFORMATION

**I HEREBY AUTHORIZE THE USE OR DISCLOSURE OF HEALTH INFORMATION ABOUT ME AS DESCRIBED BELOW:**

**Person(s) or group(s) of persons authorized to use or disclose the information:** Any physicians, medical practitioners, hospitals, clinics, HMOs, long-term care facilities, medical or medically-related facilities, pharmacies, insurance companies, Plan Sponsor/ Administrator, governmental agency, MIB Inc., and any insurance support organizations.

**Person(s) or group(s) of persons authorized to collect or otherwise receive the information:** The particular Company in the Lincoln Financial Group of companies to which I am submitting a claim and its authorized representatives, agents and/or employees, the Plan Sponsor (if self-insured Plan) and other organizations providing claims management services.

**Description of the information that may be used or disclosed:** This Authorization specifically includes the release of all psychotherapy notes relating to me, without restriction, including psychotherapy notes recorded in any medium documenting or analyzing the contents of conversations during private counseling sessions and/or group, joint or family counseling sessions.

**The information will be used or disclosed only for the following purpose(s):** For purposes of investigating, evaluating and processing my claim, and/or for insurance-related functions.

### STATEMENTS OF UNDERSTANDING & ACKNOWLEDGMENT:

**I understand** that information used or disclosed pursuant to this authorization could be subject to redisclosure as necessary by the recipient and, if so, may not be subject to federal or state law protecting its confidentiality.

**I understand** that I may revoke this authorization in writing at any time by sending a written revocation to the Company in the Lincoln Financial Group of companies to which I have submitted a claim, except to the extent that action has been taken in reliance on this authorization, or to the extent that other law provides the Company with the right to contest a claim. I also understand that the revocation of this authorization will not affect uses and disclosures of my health information for purposes of treatment, payment and health care operations.

**I understand** that authorizing the disclosure of this health information is voluntary and the provision of health care services to me is not conditioned on whether I sign this authorization. If I choose not to sign this authorization, insurance coverage or claim payments may be denied or delayed.

**This authorization** shall remain in force for 24 months from the date of signature, except to the extent applicable state law imposes or allows a different duration. The information obtained under this authorization will be retained in accordance with the Company's standard retention policy and applicable law. I understand that I may request a copy of this authorization.

Name of claimant (print)   JAU K MASON

Name of legal representative, if applicable (print) _____   Relationship _____

Signature of claimant or legal representative   Jan K Mason

Date of Birth: _____   _____   Claim Number: __9291624__   Date: __08/14/19__

**A copy of this authorization will be considered as valid as the original**

Lincoln/Mason 0454

....................................................................................................................................................................................................

**Daniel Fung, M.D.**
**Board Certified Physical Medicine & Rehabilitation**
**Board Certified Pain Medicine**

**CLAIMANT NAME:** Jan Mason
**ECN #:** 156002-1
**CLAIM #:** 9291624
**DATE OF LOSS:** 04/17/2019
**DATE OF REVIEW:** 09/14/2020
**CASE TYPE:** Long-Term Disability

**DIAGNOSIS:** Pain in right hip

**MEDICAL RECORDS REVIEWED:**
11/11/2015, Job Description, Charter Communications.
12/19/2017, State of Colorado Traffic Accident Report, Richard DuVall, Credentials Not Provided.
07/11/2018, X-Ray Lumbar Spine, Jon Snider, MD.
09/12/2018, MRI Pelvis and Sacroiliac Joints, Joseph Ugorji, DO.
11/27/2018, CT Pelvis, Nicholas Moore, MD.
01/09/2019, Fluoroscopically Guided Injection of the Right Hip Imaging, Jacob Becker, MD.
01/09/2019, Fluoroscopically Guided Injection of the Left Hip Imaging, Jacob Becker, MD.
01/31/2019, Progress Note, Tyler Bron, MD.
02/11/2019, MRI Arthrogram Right Hip, Craig LaBuda, MD.
02/18/2019, Progress Note, Tyler Bron, MD.
03/07/2019, Progress Note, Michael Huang, MD.
04/17/2019, Operative Report, Michael Huang, MD, MD.
04/18/2019, Progress Note, Kristen Reiss, PA-C.
05/02/2019, Progress Note, Kristen Reiss, PA-C.
06/04/2019, Progress Note, Michael Huang, MD.
07/09/2019, Progress Note, Michael Huang, MD.
07/23/2019, Progress Note, Jeffrey Kent, MD.
07/29/2019, Progress Note, James Bee, MD.
08/06/2019, Progress Note, Jeffrey Kent, MD.
08/08/2019, MRI Lumbar Spine, Jacob Becker, MD.
08/19/2019, Progress Note, James Bee, MD.
08/21/2019, Progress Note, Roger Sung, MD.
08/28/2019, Progress Note, David Salek, MD.
09/03/2019, Long-Term Disability Claim Creation Request, Ethan Crockett, Credentials Not Provided.
09/14/2019, Disability Questionnaires an Application for Benefits, Jan Mason.
09/17/2019, Physical Therapy Evaluation, Catherine Bottorff, PT, DPT.
10/03/2019, Nursing Memorandum, Cassandra K., RN.
10/04/2019, Disability Questionnaires an Application for Benefits, Jan Mason.
10/07/2019, Progress Note, Jeffrey Kent, MD.
10/11/2019, Progress Note, Kristen Reiss, PA-C.

1

**Lincoln/Mason 0455**

10/22/2019, MRI Right Hip Arthrogram, John Campbell, MD.
10/25/2019, Progress Note, Michael Huang, MD.
10/27/2019, Peer Review, Richard Avioli, MD.
11/20/2019, Progress Note, Roger Sung, MD.
12/09/2019, Operative Report, Michael Huang, MD.
12/10/2019, Progress Note, Michael Huang, MD.
12/13/2019, Physical Therapy Initial Examination, Taylor Mark Pfeifer, PT, DPT.
12/13/2019, Physical Therapy Plan of Care, Taylor Mark Pfeifer, PT, DPT.
12/13/2019, Physical Therapy Daily Note, Taylor Mark Pfeifer, PT, DPT.
12/17/2019, Physical Therapy Daily Note, Jennifer Mulligan, PT, DPT.
12/23/2019, Progress Note, Phillip Falender, PA-C.
12/24/2019, Physical Therapy Daily Note, Kerri Anne Tiller, PT, DPT.
12/27/2019, Physical Therapy Daily Note, Taylor Mark Pfeifer, PT, DPT.
12/30/2019, Physical Therapy Daily Note, Kerri Anne Tiller, PT, DPT.
12/30/2019, Progress Note, Jeffrey Kent, MD.
01/02/2020, Physical Therapy Note, Sandi Feeney, PT, DPT.
01/06/2020, Physical Therapy Daily Note, Kerri Anne Tiller, PT, DPT.
01/10/2020, Physical Therapy Daily Note, Kerri Anne Tiller, PT, DPT.
01/14/2020, Physical Therapy Daily Note, Jennifer Mulligan, PT, DPT.
01/17/2020, Physical Therapy Daily Note, Taylor Mark Pfeifer, PT, DPT.
01/20/2020, Physical Therapy Daily Note, Kerri Anne Tiller, PT, DPT.
01/21/2020, Progress Note, Kristen Reiss, PA-C.
01/23/2020, Physical Therapy Daily Note, Kerri Anne Tiller, PT, DPT.
01/27/2020, Physical Therapy Daily Note, Kerri Anne Tiller, PT, DPT.
01/29/2020, Physical Therapy Daily Note, Taylor Mark Pfeifer, PT, DPT.
01/30/2020, MRI Left Hip Arthrogram, Nicholas Moore, MD.
01/31/2020, Progress Note, Kelsey Chrane, PA-C.
02/04/2020, Physical Therapy Daily Note, That Jennifer Mulligan, PT, DPT.
02/06/2020, Progress Note, Michael Huang, MD.
02/11/2020, Physical Therapy Daily Note, Ellen Jackson, PT.
02/12/2020, Progress Note, David Salek, MD.
02/20/2020, Physical Therapy Progress Note, Scott Moser, PT, DPT.
02/20/2020, Physical Therapy Daily Note, Scott Moser, PT, DPT.
02/25/2020, Physical Therapy Daily Note, Marc Phillips, PT, DPT.
03/03/2020, Progress Note, Jeffrey Kent, MD.
03/05/2020, Physical Therapy Daily Note, Marc Phillips, PT, DPT.
03/12/2020, Progress Note, Michael Huang, MD.
03/12/2020, Physical Therapy Daily Note, Marc Phillips, PT, DPT.
03/17/2020, Physical Therapy Daily Note, Marc Phillips, PT, DPT.
04/02/2020, Physical Therapy Note, Marc Phillips, PT, DPT.
04/09/2020, Physical Therapy Daily Note, Marc Phillips, PT, DPT.
04/16/2020, Physical Therapy Daily Note, Marc Phillips, PT, DPT.
04/23/2020, Physical Therapy Daily Note, Marc Phillips, PT, DPT.
04/30/2020, Physical Therapy Daily Note, Marc Phillips, PT, DPT.
05/01/2020, Progress Note, Michael Huang, MD.
05/07/2020, Physical Therapy Daily Note, Marc Phillips, PT, DPT.

**Lincoln/Mason 0456**

05/13/2020, Progress Note, Roger Sung, MD.
05/21/2020, Physical Therapy Daily Note, Marc Phillips, PT, DPT.
05/22/2020, Progress Note, Jeffrey Kent, MD.
06/11/2020, Procedure Note, David Salek, MD.
06/18/2020, Physical Therapy Daily Note, Marc Phillips, PT, DPT.
06/23/2020, Disability Questionnaires an Application for Benefits, Jan Mason.
07/01/2020, Progress Note, Roger Sung, MD.
07/01/2020, Medical Questionnaire, Jeffrey Kent, MD.
07/01/2020, Progress Note, Jeffrey Kent, MD.
07/09/2020, Physical Therapy Initial Examination, Marc Phillips, PT, DPT.
07/16/2020, Letter Correspondences, David Monti, MD.
07/16/2020, Peer Review, David Monti, MD.
07/16/2020, Physical Therapy Daily Note, Marc Phillips, PT, DPT.
07/21/2020, Written Request for Review, Jan Mason.
07/23/2020, Letter Correspondence, David Salek, MD.
07/23/2020, Physical Therapy Daily Note, Marc Phillips, PT, DPT.
07/31/2020, MRI Lumbar Spine, José Pizarro, MD.
08/06/2020, Physical Therapy Daily Note, Marc Phillips, PT, DPT.
08/13/2020, Physical Therapy Recertification Note, Marc Phillips, PT, DPT.
08/13/2020, Physical Therapy Daily Note, Marc Phillips, PT, DPT.
08/17/2020, Progress Note, Michael Huang, MD.
08/19/2020, Progress Note, Roger Sung, MD.
08/20/2020, Physical Therapy Daily Note, Marc Phillips, PT, DPT.
08/31/2020, Letter Correspondence, Jeffrey Kent, MD.

**HISTORY:**

I have been asked to review the medical records on behalf of ECN regarding Jan Mason. The claimant is a now 48-year-old female with a long-term disability claim from 04/17/2019. Her job title was Representative 3, Customer Service Billing. This was a sedentary position. Her primary diagnosis was pain in right hip.

On 12/18/2017, the claimant was involved in a motor vehicle accident. She was stopped in heavy traffic in the right through lane when another driver failed to come to a complete stop and collided with the rear passenger side bumper. She complained of hip and lower back pain. Moderate to severe damage was sustained to the rear passenger side bumper and quarter panel of the vehicle.

On 07/11/2018, the claimant had an x-ray the lumbosacral spine interpreted by Jon Snider, MD. This showed L3-L4 retrolisthesis and multilevel spondylosis. There was a metallic fixation of the sacroiliac joint.

On 09/12/2018, the claimant had an MRI of the pelvis and sacroiliac joints interpreted by Joseph Ugorji, DO. The report provided was not completely legible.

**Lincoln/Mason 0457**

On 11/27/2018, the claimant had a CT of the pelvis. This was interpreted by Nicholas Moore, MD. This demonstrated a right sacroiliac joint internal fixation without evidence of a hardware failure. There was bilateral cam type femoroacetabular impingement.

On 01/09/2019, the claimant had a fluoroscopically guided joint injection of the right hip. Her pain went from 5-6/10 to 0/10 in severity after the procedure. This was performed by Tyler Bron, MD.

On 01/09/2019, the claimant had a fluoroscopically guided joint injection of the left hip. Her pain went from 4/10 to 0/10 in severity after the procedure. This was performed by Tyler Bron, MD.

On 01/31/2019, the claimant was evaluated by Tyler Bron, MD. She complained of bilateral hip pain. She was following up after bilateral corticosteroid injections in her hips. For the initial 4-6 hours after the injection she had complete relief of her hip pain. This was only temporary and overall had not noticed any significant improvement from the injection. Her pain was worsening in the right greater than the left. She was also complaining of back pain. On physical examination of the right hip and pelvis, range of motion was limited with flexion 100°, internal rotation 0°, external rotation 15°. Range of motion elicited groin pain. Her pain was most severe with internal rotation. Her quadricep and hamstring strength was 5/5. Plantar and dorsiflexion strength was 5/5. Her sensation was intact over the lower extremity. Physical examination of the left hip and pelvis demonstrated range of motion limited with flexion 100°, internal rotation 0°, external rotation 15°. Range of motion elicited groin pain. Her pain was most severe with internal rotation. Her strength and sensory examination were intact. Her diagnostic testing was reviewed. The diagnoses were pain in right hip and pain in the left hip. Her pain was likely due to osteoarthritis versus labral pathology. An MRI arthrogram of the right hip was ordered.
On 02/11/2019, the claimant had an MRI arthrogram of the right hip. This was interpreted by Craig LaBuda, MD. This demonstrated a right hip anterior superior labral tear. There was mild, superior hip joint space narrowing and small anterior lateral femoral head-neck-osseous bump. There was a right sacroiliac joint fusion.

On 02/18/2019, the claimant followed up with Tyler Bron, MD. Her hip was still very painful. On physical examination of the right hip and pelvis, range of motion was limited with flexion to 100°, internal rotation 0°, external rotation 15°. Range of motion elicited groin pain. Her pain was most severe with internal rotation. Her quadricep and hamstring strength was 5/5. Plantar and dorsiflexion strength was 5/5. Her sensation was intact over the lower extremity. Physical examination of the left hip and pelvis demonstrated range of motion limited with flexion to 100°, internal rotation 0°, external rotation 15°. Range of motion elicited groin pain. Her pain was most severe with internal rotation. Her strength and sensory examination were intact. The MRI arthrogram was reviewed showing an anterior superior labral tear with minimal joint space narrowing, as well as signs of femoral acetabular impingement. The diagnoses were pain in the left hip, and pain in the right hip. She was referred to another physician for possible arthroscopic labral repair.

On 03/07/2019, the claimant was seen by Michael Huang, MD. She reported right hip pain over the posterior buttock area for about two years. She was treated initially for sacroiliac joint pain in

4

**Lincoln/Mason 0458**

September 2017 with sacroiliac joint fusion. She had recovered extremely well with resolution of her symptoms until she was involved in a car accident where she was rear-ended in December 2017. She reported some groin pain but mostly felt her pain in the posterior buttock area. Her symptoms were worse with sitting, but now consistently bothering her with standing and walking. She denied numbness or tingling. She had tried rest, activity modification, anti-inflammatories including ibuprofen without benefit. She tried physical therapy without benefit. She tried chiropractic treatment and massage therapy with limited benefit. She underwent an intra-articular injection and she had four hours of complete pain resolution but did not get any benefit long-term. Her symptoms were sharp, dull, and aching and made worse with sitting and walking. She also had associated stiffness and weakness. On physical examination, her gait was antalgic. Right hip range of motion demonstrated flexion to 115°, external rotation to 55°, and internal rotation to 10°. The anterior impingement test was positive reproducing her posterior buttock pain and somewhat reproducing groin pain. There was tenderness to palpation of the posterior buttock. She had a negative straight leg raise and negative posterior impingement test. At the left hip, range of motion demonstrated flexion to 25°, external rotation to 65°, and internal rotation to 10°. Anterior and posterior impingement tests and straight leg raise were negative. There was no tenderness to palpation. Her diagnostics were reviewed. The diagnoses were pain in the right hip, and other articular cartilage disorders of the right hip. This was further discussed as right hip pain secondary to labral tear and femoral acetabular impingement. Surgical intervention was discussed and planned for.

On 04/17/2019, the claimant had a right hip labral repair, arthroscopic acetabuloplasty, femoroplasty, osteoplasty to remove cam lesion, chondroplasty, synovectomy, capsular plication performed by Michael Huang, MD.

On 04/18/2019, the claimant followed up with Kristen Reiss, PA-C. She was a one-day status post-surgery. Her pain was well-controlled. She was utilizing her post-operative hip braces and crutches. On physical examination, the right hip wounds had minimal drainage. There was mild swelling which was expected. There were no signs of infection. The diagnosis was one-day status post right hip surgery. She was given postoperative instructions and advised to follow-up in two weeks.

On 05/02/2019, the claimant followed up with Kristen Reiss, PA-C. She was two weeks status post hip surgery. Her pain was well-controlled. She was doing well with physical therapy. On physical examination, the surgical wounds were healed without signs of infection. Her sensation was intact. The diagnoses were pain in the right hip, and other articular cartilage disorders of the right hip. Her sutures were removed. She was given further instructions for routine postoperative management. She was given oxycodone.

On 06/04/2019, the claimant followed up with Michael Huang, MD. She was six weeks status post right hip surgery. She reported increasing hip pain worse than her preoperative pain. It began after she started to discontinue the crutches two weeks prior. She also presented with a new complaint of left hip pain. She states having had this since December 2017, with progressive worsening. Her left was feeling worse after bearing more weight after her surgery. The pain was in the groin and worsened with prolonged sitting, prolonged standing, and squatting. Rotational activities also increased pain. She had tried rest, activity modification and ibuprofen. She was

5

Lincoln/Mason 0459

attending physical therapy. On physical examination of the left hip, flexion was to 115°, external rotation to 65° and internal rotation to 10°. The anterior impingement test was positive. She had tenderness in the anterior groin.

The right hip surgical wounds were well healed without signs of infection. Range of motion of the right hip was flexion to 115°, external rotation to 50° and internal rotation to 5° with continued positive anterior impingement test. X-rays of the bilateral hips were ordered. There was well-preserved femoral acetabular joint spacing. At the left hip there was evidence of femoral, acetabular impingement cam type with alpha angle measuring 63°. The diagnoses were pain in the right hip, and other articular cartilage disorders of the right hip. She was advised to go back on crutches for about two weeks. She was given indomethacin for inflammation. In terms of the left hip, there was suspicion for underlying labral tear. They were considering MRI arthrogram of the left hip.

On 07/09/2019, the claimant followed up with Michael Huang, MD. She reported increasing right posterior buttock and lumbar spine pain. She had minimal anterior hip pain. Her hip pain was much better since her previous visit. She was doing physical therapy. She was concerned about her lumbar spine and felt her pain was radiating down her buttock to the posterior thigh and into her calf. At one point in her history, she was considering a spinal stimulator for low back pain. She described her pain as nerve pain and burning. She had occasional mild anterior groin pain with activity which she was tolerating well. On physical examination, the right hip surgical wounds were well healed. Range of motion included flexion to 110°, external rotation to 50°, internal rotation to 10° and abduction of 40°. She had minimal anterior pain with any of these tests. She had significant posterior hip pain over the sacroiliac joint and lumbar spine. Straight leg raise was negative for radicular symptoms but increased her posterior hip buttock and spine pain. She was directly tender over the superior aspect of the sacroiliac joint and the right lumbosacral junction. The diagnoses were pain in right hip and other articular alleged disorders of the right hip. She was advised to continue with physical therapy. She planned on following up with her spine surgeon for an opinion. She was continued on indomethacin.

On 07/23/2019, the claimant was evaluated by Jeffrey Kent, MD. She reported recent labral tear repair. She was having worsening pain since starting to bear weight. She reported pain in her lower back with burning pain into her right leg more than her left leg. She requested a parking pass, Xanax, and Ambien. No physical examination was provided. The diagnoses were osteoarthritis of the spine with radiculopathy, tear of the right acetabular labrum, femoral acetabular impingement of both hips, primary insomnia, and anxiety. She was advised to continue to follow with her specialists, and to continue gabapentin, Xanax, and Ambien.

On 07/29/2019, the claimant was evaluated by James Bee, MD. She complained of pain in her buttock and back. The pain was sharp, burning, and constant. It was made worse with activity such as sitting, standing, walking, and bending. It was made better by lying down. She had done physical therapy, which was stopped due to worsening symptoms. She was taking indomethacin. Her pain was 8/10. Her activities of daily living were limited secondary to her complaints. On physical examination of the lumbar spine, there was no tenderness. The flexion of the lumbar spine brought the fingertips 6 inches from the floor. Extension was approximately 15°. There was some pain at the extremes of flexion and extension. There was pain with palpation along the gluteal musculature right greater than left. There was no pain with axial compression of the head

6

**Lincoln/Mason 0460**

and no pain with trunk rotation through the hips. She had a slow reciprocating gait. She was able to walk on the toes and heels. She moved easily to the examination table without assistance. Her strength throughout the lower extremities was 5/5. Her sensation was intact bilaterally. There were no upper motor signs. Her reflexes were normal. Straight leg raise was negative bilaterally. X-rays of the lumbosacral spine demonstrated a right sacroiliac joint fusion device. There was a collapse of the disc space at L2-L3. There was subtle retrolisthesis of L3 on L4. On flexion and extension, there was no instability. Her previous MRI of the lumbar spine from 05/12/2018 was also reviewed showing degenerative changes. There was no stenosis. The diagnoses were spinal stenosis in the lumbar region with neurogenic claudication, spondylosis without myelopathy or radiculopathy lumbar region, other intervertebral disc degeneration lumbar region, other intervertebral disc degeneration lumbosacral region, and pain in the right hip. A new MRI was ordered.

On 08/06/2019, the claimant was seen by Jeffrey Kent, MD. She continued with back pain that was worse on the right and made worse with walking. Driving and bending also worsened her pain.  She was taking Ambien to facilitate sleep. She was scheduled to have her MRI the next day. She was taking indomethacin. She was requesting FMLA paperwork. She was out of work. On physical examination, she had tenderness over the sacroiliac joints worse on the right. She was referred to physiatry. The diagnosis was acute right-sided low back pain with sciatica. On 08/08/2019, the claimant had an MRI of the lumbar spine interpreted by Jacob Becker, MD. This demonstrated stability since the previous MRI from 05/12/2018. There was mild multilevel degenerative disc disease with bulges and protrusions without high-grade spinal canal or neural foraminal stenosis at any level.

On 08/19/2019, the claimant followed up with James Bee, MD. She had undergone a spinal cord stimulator trial. It had helped some of her complaints but not her mid-back problems. On physical examination, there were no significant abnormalities. Her MRI of the lumbar spine was reviewed showing degenerative changes without obvious stenosis. The diagnoses were spinal stenosis in the lumbar region with neurogenic claudication, spondylosis without myelopathy or radiculopathy lumbar region, other intervertebral disc degeneration lumbar region, other intervertebral disc degeneration lumbosacral region. She was referred back for possible permanent spinal cord stimulator.

On 08/21/2019, the claimant followed up with Roger Sung, MD. She was requesting to go ahead with a spinal cord stimulator. On physical examination, she had diffuse lumbar tenderness extending into the buttock which was not specific to the sacroiliac joint. The diagnoses were low back pain, chronic pain syndrome, and sciatica. A trial for a different spinal cord stimulator.

On 08/28/2019, the claimant was seen by David Salek, MD. Her history was summarized and consistent with previous accounts. She reported pain that was constant, sharp, and burning with radiation down her right leg into the top of her toe. Her buttock pain was more severe than the leg pain. On physical examination, she had full painless range of motion of all major muscle groups and joints. She had a positive Faber test and a positive Fortin finger test. She had positive lumbar quadrant testing. Her strength and sensation were normal. Her reflexes were normal. The diagnoses were status post right sacroiliac joint fusion, status post right hip labral tear repair, low

7

**Lincoln/Mason 0461**

back pain, right lower extremity radicular features, and positive spinal cord stimulator trial with Boston Scientific. A trial for Stimwave was requested.

On 10/07/2019, the claimant followed up with Jeffrey Kent, MD. She complained of chronic low back pain and sacroiliac joint pain. She was considering a spinal cord stimulator. She was requesting FMLA paperwork and a flu vaccine. On physical examination, she had pain and tenderness in the sacroiliac joint areas and the right inguinal region. She had a normal urinalysis. She had x-rays of the hips, which were normal. The diagnoses were chronic low back pain with sciatica. She was advised to continue with her current treatment plan. She was given a flu shot.

On 10/11/2019, the claimant was evaluated by Kristen Reiss, PA-C. She reported pain that was worse than it was prior to her surgery. She was being evaluated for possible spinal cord stimulator. The pain in the posterior buttock radiated down the posterior thigh into her calf and foot. She had a burning pain in the groin area and lateral hip pain. This seemed to increase about a month prior when she started increasing her walking. She was only walking about 2 miles a week. On physical examination, she had an antalgic gait. Her surgical wounds of the right hip were well healed. Right hip flexion was to 110°, external rotation to 50°, internal rotation to 10° and abduction to 40°. She had negative anterior and posterior impingement tests. Her straight leg raise was negative for radicular symptoms but would increase her posterior hip and buttock pain. She was tender over the superior aspect of the sacroiliac joint on the right and lumbosacral junction as well as over the anterior hip and laterally over the greater trochanter. X-rays were completed showing evidence of previous sacroiliac joint fusion in the right sacroiliac joint. The diagnoses were pain in right hip and other articular cartilage disorders of the right hip. An MRI of the right hip was ordered.

On 10/22/2019, the claimant had an MRI of the right hip with arthrogram. This was interpreted by John Campbell, MD. This demonstrated postoperative changes within the right hip. The anterior aspect of the superior labrum was diminutive and blunted. The superior aspect of the anterior labrum was diminutive and irregular. These were likely postoperative. There was no recurrent tear. There was focal intermediate signal nodularity along the acetabular articular surface adjacent to a suture anchor track at the 12 o'clock position. There was a thin linear signal along the anterior capsule just lateral to the superior aspect of the anterior labrum, which could be related to capsular plication. Mild chondral irregularity along the lateral acetabulum likely reflecting postoperative change.

On 10/25/2019, the claimant followed up with Michael Huang, MD. She was there to discuss her recent MRI. On physical examination, she had an antalgic gait. Her surgical wounds of the right hip were well healed. Right hip flexion was to 110°, external rotation to 50°, internal rotation to 10° and abduction to 40°. She had negative anterior and posterior impingement tests. Her straight leg raise was negative for radicular symptoms but would increase her posterior hip and buttock pain. She was tender over the superior aspect of the sacroiliac joint on the right and lumbosacral junction as well as over the anterior hip and laterally over the greater trochanter. Due to the MRI findings, it was felt that she should undergo surgery to repair the labral tissue. The diagnoses were pain in right hip and other articular cartilage disorders of the right hip.

8

**Lincoln/Mason 0462**

On 11/20/2019, the claimant followed up with Roger Sung, MD. She was scheduled for a right hip labrum repair for 12/09/2019. The authorization for the stimulator trial was still pending. On physical examination, she was diffusely tender across her buttocks and lower back. Thoracic and lumbosacral x-rays showing multiple levels of lumbar degeneration.
The diagnoses were pain in the thoracic spine, low back pain, other intervertebral disc degeneration lumbar region, and sciatica. It was recommended that she try the Boston Scientific spinal cord stimulator since her insurance was denying the Stimwave.

On 12/09/2019, the claimant underwent a right hip labral reconstruction, chondroplasty, acetabuloplasty, femoroplasty, osteoplasty to remove cam lesion, synovectomy, capsular closure/plication by Michael Huang, MD.

On 12/10/2019, the claimant followed up with Michael Huang, MD. She was one-day status post right hip labral reconstruction surgery. Her pain was well-controlled. She was utilizing the postoperative crutches and braces. On physical examination, the wounds were intact with minimal drainage. There was mild swelling. The diagnosis was other articular cartilage disorders of the right hip. Physical therapy was initiated.

On 12/23/2019, the claimant followed up with Phillip Falender, PA-C. She was at two weeks status post right hip labral reconstruction surgery. She was progressing well with physical therapy. On physical examination, there were no signs of infection. Hip flexion was to 90°. The Steri-Strips were removed without difficulty. The diagnosis was other articular cartilage disorders of the right hip. She was given further instruction for increasing weight-bearing and advised to continue physical therapy.

On 12/30/2019, the claimant followed up with Jeffrey Kent, MD. She had her right labral repair. She felt worse. Her pain was increased with therapy. She was still considering a spinal stimulator. She had issues with her other hip. She resigned from her cable job. On physical examination, she was tearful at times and in a brace for her right hip. Diagnoses were chronic low back pain with sciatica, sacroiliac joint pain, and tear of the right acetabular labrum. She was advised to continue her current treatment plan.

On 01/21/2020, the claimant was evaluated by Kristen Reiss, PA-C. She was six weeks status post right hip labral reconstruction. She reported her hip pain was improving. Her lower back pain, pain over the sacroiliac joint and radicular symptoms had worsened. She was also following up for her left hip pain. Physical therapy was not helpful for the left hip. On physical examination, right hip flexion was to 100°, external rotation to 40°, and internal rotation to 5°. There was tenderness over the lateral right hip and right sacroiliac joint. The left hip range of motion included flexion to 110°, external rotation to 50°, internal rotation to 5°. She had a positive anterior impingement test. The straight leg raise produced low back pain. There was tenderness over the anterior hip and laterally over the greater trochanter. X-rays were again performed of the right hip. There were no obvious abnormalities other than the previous sacroiliac joint fusion. The diagnoses were other articular cartilage disorders of the right hip, lumbar region radiculopathy, and pain in the left hip. She was advised to continue physical therapy for the right hip. She was advised to follow-up with Roger Sung, MD regarding worsening low back and sacroiliac joint pain. An MR arthrogram of the left hip was ordered.

9

**Lincoln/Mason 0463**

On 01/30/2020, the claimant had an MRI left hip with arthrogram interpreted by Nicholas Moore, MD.
This demonstrated a focal cam deformity of the anterior left femoral head neck junction with associated anterior/anterior superior labral based tear. There was a small right hip joint effusion.

On 01/31/2020, the claimant followed up with Kelsey Chrane, PA-C. Her right hip pain has significantly improved. She continued to have lower back pain interfering with her participation in physical therapy. She had imaging of her left hip. She was still anticipating a spinal cord stimulator placement. On physical examination, there was tenderness along the spinous processes and paraspinal musculature and diffusely throughout the lower back including over the right sacroiliac joint. Motor strength of the lower extremities was intact. There was pain with range of motion, primarily extension. The diagnoses were low back pain, lumbar region spinal stenosis with neurogenic claudication, other intervertebral disc degeneration of the lumbar region, intervertebral disc disorders with radiculopathy lumbar region, sacroiliitis, pain in the right hip, and pain in the left hip. She was advised to call when she was ready to proceed with the spinal cord stimulator.

On 02/06/2020, the claimant followed up with Michael Huang, MD. She was eight weeks status post-surgery. She was now using a cane. She reported achiness of the anterior hip. She had an MR arthrogram of the left hip and had returned to discuss the findings. On physical examination, hip flexion on the right was to 105°, external rotation 40°, internal rotation 5°. There was tenderness of the right lateral hip and over the sacroiliac joint. The left hip range of motion had flexion 115°, external rotation to 55°, internal rotation to 5°. There was a positive anterior impingement test. Straight leg raise caused low back pain. There was tenderness over the anterior hip and laterally over the greater trochanter. The diagnoses were other articular cartilage disorders right hip, other articular cartilage disorders left hip, and pain in the left hip. They discussed options for managing her left hip. It was decided she would continue focusing on her right hip rehabilitation program and manage her left hip pain with anti-inflammatories.

On 02/12/2020, the claimant followed up with David Salek, MD. She was referred back for pain management. She did not want opiates and was looking for alternative care. She inquired about the use of CBD. On physical examination, she had full painless range of motion of all major muscle groups and joints. She had a positive Faber test and a positive Fortin finger test. She had positive lumbar quadrant testing. The diagnoses were status post right sacroiliac joint fusion, status post right hip labral repair, low back pain, right lower extremity radicular features, and positive spinal cord stimulator trial with Boston Scientific. She was prescribed Celebrex and Tylenol.

On 03/12/2020, the claimant followed up with Michael Huang, MD. She was 12 weeks status post right hip labral reconstruction. The right hip was doing well. Her biggest issue was tremendous pain over the right greater than left sacroiliac joint and lumbar spine. She had been in physical therapy but was having difficulty weight-bearing and was using crutches. The left hip also continued to be painful, unchanged since her last visit. On physical examination, hip flexion on the right was to 110°, external rotation 45°, internal rotation 5°. There was tenderness of the right lateral hip and over the sacroiliac joint. The left hip range of motion had flexion 120°,

10

Lincoln/Mason 0464

external rotation to 55°, internal rotation to 5°. There was a positive anterior impingement test. Straight leg raise caused low back pain. There was tenderness over the anterior hip and laterally over the greater trochanter.
The diagnoses were other articular cartilage disorders right hip, other articular cartilage disorders left hip, and pain in the left hip. The claimant decided to return to Roger Sung, MD to discuss any further options regarding her sacroiliac joints.

On 03/03/2020, the claimant followed up with Jeffrey Kent, MD. She continued to have worsening pain in the lower back along the sacroiliac joints. She was considering a consultation with Mayo Clinic. On physical examination, she had pain with range of motion of the hip and pain in the lower back and sacroiliac joints. The diagnoses were sacroiliac joint pain, chronic midline low back pain with sciatica, and tear of the right acetabular labrum. She was advised to continue to follow with her specialists.

On 05/01/2020, the claimant followed up with Michael Huang, MD. She had been working at physical therapy on the sacroiliac joints, which had been worsening her pain. The pain was radiating laterally and anteriorly towards the hip. She continued to have significant posterior pain. She had not yet returned to Roger Sung, MD, due to the coronavirus. She was working on walking around the block. She continued to have difficulty going up and down stairs and lying supine. Her pain was 8-9/10. On physical examination, hip flexion on the right was to 115°, external rotation 45°, internal rotation 5°. There was tenderness of the right lateral hip and over the sacroiliac joint. The left lower extremity was normal with unremarkable range of motion. The diagnoses were other articular cartilage disorders right hip, and right sacroiliitis. She was advised to return to Roger Sung, MD for further evaluation and treatment of the sacroiliac joints, and to continue physical therapy.

On 05/13/2020, the claimant followed up with Roger Sung, MD. She complained of bilateral sacroiliac joint pain. On physical examination, she had tenderness over both sacroiliac joints. The diagnoses were sacroiliitis, chronic pain syndrome, and sciatica. They were going to proceed with a lidocaine-only injection in the left sacroiliac joint. She was advised to continue considering a spinal cord stimulator.

On 05/22/2020, the claimant had a follow-up with Jeffrey Kent, MD. She was doing physical therapy. She reported having a vaginal yeast infection. Her physical examination was done via video conference and was normal. The diagnoses were osteoarthritis of the spine with radiculopathy in the lumbar region, tear of the right acetabular labrum, sacroiliac joint pain, and acute vaginitis. She was given Diflucan and advised to continue following with her specialists.

On 06/11/2020, the claimant underwent a sacroiliac joint injection on the left for the diagnosis of sacroiliitis. This was performed by David Salek, MD.

On 07/01/2020, the claimant followed up with Roger Sung, MD. She had the left sacroiliac joint injection and was pain free for about two hours. On physical examination, she continued to have tenderness along bilateral sacroiliac joints. The diagnoses were other intervertebral disc degeneration lumbar region, low back pain, and sacroiliitis. She was referred back to physical therapy because her treatment was interrupted by Covid-19.

11

**Lincoln/Mason 0465**

On 07/01/2020, the claimant followed up with Jeffrey Kent, MD. She discussed the left-sided diagnostic sacroiliac joint injection.
They discussed needing rehab on the right sacroiliac joint and a possibility of fusing the left sacroiliac joint. She was considering a labral reconstruction on the left hip and a spinal cord stimulator. She continued having the right sacroiliac joint pain. She was applying to Social Security and had been denied. She requested a cyclobenzaprine refill. On physical examination, she had abnormal lower back and sacroiliac joints. The diagnoses were osteoarthritis of the spine with radiculopathy in the lumbar region, sacroiliac joint pain, and femoral acetabular impingement of both hips. Her cyclobenzaprine was refilled. She was advised to continue her current treatment plan with her specialists.

MRI of the lumbar spine from 07/31/2020 interpreted by José Pizarro, MD, demonstrated straightening of the normal lumbar lordosis. There was kyphosis L2-L3. At L1-L2, there was a central disc herniation impinging on the thecal sac causing mild spinal stenosis. At L2-L3, there was a broad central disc herniation causing mild to moderate spinal stenosis. At L3-L4, there was disc desiccation and right proximal neural foraminal disc herniation which were focal. There was mild right neural foraminal stenosis. At L5-S1, there was a central disc herniation with annular tearing, elevating the posterior longitudinal ligament causing mild spinal stenosis.

On 08/17/2020, the claimant followed up with Michael Huang, MD. She reported continued worsening pain. The pain was located over bilateral sacroiliac joint and lumbar spine. Since her last visit she had a diagnostic injection in the left sacroiliac joint, which gave her two hours a complete relief of pain. She has continued physical therapy without improvement. She continued to have bilateral lower extremity symptoms including pain, numbness, and tingling down to both feet. She had an MRI of the lumbar spine. She denied significant groin pain. She had an episode where the right lower extremity gave way resulting in a fall causing temporary numbness in her vaginal area. She rated her pain 8-9/10. She continued to use crutches for weight-bearing.  On physical examination, her gait was antalgic. Hip flexion on the right was to 115°, external rotation 45°, internal rotation 5°. There was tenderness of the right lateral hip and over the sacroiliac joint bilaterally, and lumbar spine. There were no impingement testing signs at the hip with passive range of motion. The left lower extremity was normal with unremarkable range of motion. Her most recent MRI of the lumbar spine from 07/31/2020 was reviewed. The diagnoses were other articular cartilage disorders right hip, and right sacroiliitis. She was advised to continue following with Roger Sung, MD.

On 08/19/2020, the claimant followed up with Roger Sung, MD. She felt worse with physical therapy. Her pain was in the back, both sacroiliac joint and now radiating down her legs. She had a new MRI ordered by her physical therapist. Her physical examination was normal. Her MRI was reviewed and without significant changes from her previous MRI. The diagnoses were low back pain, other intervertebral disc degeneration lumbar region, sacroiliitis, chronic pain syndrome, and sciatica. She was advised to have a new spinal cord stimulator trial due to changes in her pain pattern.

12

**Lincoln/Mason 0466**

**RESPONSE TO QUESTIONS:**

**1. What diagnoses are supported by the medical evidence?**

The medical evidence provided supports the diagnoses of femoroacetabular impingement bilaterally, right hip labral tear, lumbar degenerative disc disease, lumbar spondylosis, and bilateral sacroiliitis.

**2. Taking into consideration the entire clinical picture, including standards of care and evidence-based medicine, and any medication or other treatment side effects, please describe if there are any supported level of impairments which translates into restrictions and limitations from 7/21/2020 to the present? Please explain your medical rationale as to why or why not and provide a detailed explanation.**

Since 07/21/2020, the claimant had an MRI of the lumbar spine, which according to Roger Sung, MD was stable from the previous. The findings included degenerative disc disease, degenerative central spinal stenosis, and degenerative neuroforaminal stenosis. These were all mild to moderate in degree. There was no obvious impingement of exiting nerve roots. There was no visualized myelomalacia.

She had two subsequent medical visits, one with Michael Huang, MD, and one with Roger Sung, MD. She had been feeling worse in terms of her pain and symptomatology. However, there were no new physical examination findings. Her most significant and consistent physical examination findings include tenderness and decreased range of motion. She does not have any neurologic deficits. No new restrictions were given by either of the physicians.

Although the claimant has subjective complaints of pain and falls, there was a lack of functional deficits on physical examination to support the need for restrictions.

**3. If functional impairment is supported, please describe how that translates into restrictions or limitations and for what period(s) of time. Please define in terms of frequency (never, occasional, frequent, constant) and task (sit, stand, lift/carry, type etc.). Please explain your medical rationale for any restrictions or limitations or why restrictions and limitations are not supported.**

Functional impairment is not supported by the documentation from 07/21/2020 to present.

**4. Does the medical documentation support that any medical condition alone, or in combination would preclude the claimant from sustained occupational functioning on a full-time basis? Please explain why or why not.**

Based on the provided medical documentation since 07/21/2020, there is no evidence that would preclude the claimant from sustained occupational functioning on a full-time basis.

**5. When contacting the treating provider please discuss the claimant's condition, treatment, and functional capacity. Please indicate the information reviewed and indicate**

13

**Lincoln/Mason 0467**

**whether or not you reach consensus with the treating provider. If not, please discuss your final assessment after the call.**

**AP CONTACT:**

I called the number listed (719-632-7669) on 9/4/20 at 11:08am CST and left a message for a return call on Kirsten's general office voicemail.

I called the number listed (719-632-7669) on 9/10/20 at 11:10am CST and left a message for a return call on Kirsten's general office voicemail.

I called the number listed (719-278-3627) on 9/4/20 at 11:47am CST and spoke with Jennifer and left a message for a return call.

My staff received a return call from Dr. Kent on 9/9/20 at 4:10pm CST and I was unable to take the call. A message was left for a return call to an alternate number (719-799-0784).

I called the alternate number (719-799-0784) on 9/10/20 at 11:15am CST and left a message for a return call on Dr. Kent's general voicemail.

At the time of submission, no return calls have been received.

**Daniel Fung, M.D.**
**Board Certified Physical Medicine & Rehabilitation**
**Board Certified Pain Medicine**
**License: A107358 CA**

14

**Lincoln/Mason 0468**



Exam Coordinators Network   A division of Genex Services, LLC

Corporate Office

Claimant Name: Jan Mason
Claim Number: 9291624
Case Number: 156002-1

"I, Daniel Fung, MD, am a physician duly licensed to practice medicine in the State of ___CA___ . I am an independent contractor and I am paid to review claim files and render medical opinions. I am not responsible for deciding whether a claimant is entitled to insurance benefits. My role is to provide objective medical opinions to Genex Services, LLC.

I hereby attest that the following statements are true:

- I have the scope of licensure or certification that typically manages the medical condition, procedure, treatment or issue under review
- I have current, relevant knowledge to render an opinion for the case under review
- No financial incentive was received based on the outcome of the opinion
- No delegation of the examination rendered

I attest that no conflict of interest exists, this includes any situation where an individual has a material, professional, familial, or financial conflict of interest regarding any of the following:

- Compensation for IME/Peer Review activities that are dependent in any way on the specific outcome of the case
- Have involvement with the case prior to its referral for review
- The referring entity
- The health benefit plan
- The consumer
- The attending provider or any other advisor previously involved in the case
- The facility at which the recommended healthcare service(s) would be provided
- The developer or manufacturer of the principal drug, device, procedure, or other therapy being recommended for the customer

I declare that the information contained in the above-referenced report was prepared by and is the work product of the undersigned and is true to the best of my knowledge and information. I certify that my medical/professional license is current and is in good standing in the jurisdiction in which my practice is located.

_____        9.14.2020
Signature of Physician                                          Date

Medical/Professional License # A107358 CA

Lincoln/Mason 0469

| From: | LFGNotifications@LFG.com |
|---|---|
| Sent: | Monday, September 28, 2020 11:01:57 AM |
| To: | |
| CC: | |
| BCC: | |
| Subject: | [Send Secure]Charter Communications, Inc. Claim No. 9291624 Jan Mason |
| Attachments: | cc_u3d9x4kp9hk5is8pjqvu_9106544_9368627.pdf; |

This notification contains important information regarding a claim with Lincoln Financial Group company. THIS IS AN AUTOMATED EMAIL. PLEASE DO NOT RESPOND. You may use the contact information in the attached letter to respond if needed.

**Lincoln/Mason 0470**



Lincoln Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7213
London, KY 40742-7213
Phone No.: (888) 437-7611
Secure Fax No.: (603) 430-1926

September 28, 2020

Dr. Christopher Kudron
2045 FRANKLIN STREET
DENVER, CO 80205

RE:     Long Term Disability (LTD) Benefits
        Charter Communications, Inc.
        Claim #: 9291624
        Claimant: Jan Mason
        Claimant D.O.B.:

Dear Dr. Christopher Kudron:

We are the Disability Claim Administrator for your patient, Jan Mason.
On September 14, 2020 a/an Independent Medical Review was performed to assist us in determining
Ms. Mason'eligibility for Long Term Disability (LTD) benefits. The results of this assessment
demonstrate the following:

*Since 07/21/2020, the claimant had an MRI of the lumbar spine, which according to Roger
Sung, MD was stable from the previous. The findings included degenerative disc disease,
degenerative central spinal stenosis, and degenerative neuroforaminal stenosis. These were all
mild to moderate in degree. There was no obvious impingement of exiting nerve roots. There
was no visualized myelomalacia.*

*She had two subsequent medical visits, one with Michael Huang, MD, and one with Roger
Sung, MD. She had been feeling worse in terms of her pain and symptomatology. However,
there were no new physical examination findings. Her most significant and consistent physical
examination findings include tenderness and decreased range of motion. She does not have any
neurologic deficits. No new restrictions were given by either of the physicians.*

*Although the claimant has subjective complaints of pain and falls, there was a lack of
functional deficits on physical examination to support the need for restrictions.*

Please review the enclosed report by October 9, 2020, and provide any comments you wish to
have considered. If you disagree with September 14, 2020'findings, please detail the specific areas
with which you disagree and provide medical documentation to support your position.

We ask that you provide this information by October 9, 2020. Failure to provide the requested
information may result in an adverse benefit determination. The information can be faxed to our
office at our secure fax number (603) 430-1926 or mailed to the above address.

**Lincoln/Mason 0471**

Although HIPAA does not apply to disability insurance carriers, we understand your responsibilities under HIPAA as a health care provider, and our associated responsibility of ensuring this information is protected against deliberate or inadvertent misuse or disclosure.

As the insurance carrier providing employer sponsored Long Term Disability (LTD) benefits coverage to your patient, we have enclosed a HIPAA compliant authorization signed by Ms. Mason allowing the release of information to our company. This authorization specifically allows you to release medical information to us and is valid for two years from the date of Ms. Mason'signature.

If you have any questions regarding this matter, please contact me.

Sincerely,

Mary Avrett
Appeals Consultant
Phone No.: (888) 437-7611 Ext. 16371
Secure Fax No.: (603) 430-1926

CC:    Jan Mason


Attachments:    9291624-EMPLOYEE/CLAIMANT-AUTHORIZATION-09.25.2019
                9291624-MEDICAL-MEDICAL RECORDS-09.15.2020

2  of  2

**Lincoln/Mason 0472**

| | |
|---|---|
| From: | LFGNotifications@LFG.com |
| Sent: | Friday, September 25, 2020 8:03:06 PM |
| To: | |
| CC: | |
| BCC: | |
| Subject: | [Send Secure]Charter Communications, Inc. Claim No. 9291624 Jan Mason |
| Attachments: | l43wanbpajvqfqu21hkc_9101898.pdf; |

This notification contains important information regarding a claim with Lincoln Financial Group company.
THIS IS AN AUTOMATED EMAIL. PLEASE DO NOT RESPOND. You may use the contact information in
the attached letter to respond if needed.

**Lincoln/Mason 0473**



Lincoln Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7213
London, KY 40742-7213
Phone No.: (888) 437-7611
Secure Fax No.: (603) 430-1926

September 25, 2020

Ms. Jan K. Mason

RE:    Long Term Disability (LTD) Benefits
       Charter Communications, Inc.
       Claim #: 9291624

Dear Ms. Jan Mason:

Lincoln Life Assurance Company of Boston (Lincoln) is responsible for managing claims for Long Term Disability (LTD) benefits under Charter Communications, Inc.'s Group Disability Policy. We are writing regarding your claim for LTD benefits.

We are in the process of reviewing your appeal of our denial determination regarding the above-referenced claim. The purpose of this letter and enclosure(s) is to provide you with an opportunity to review and comment on new/additional evidence received before a decision is rendered on your appeal.

Please find attached a copy of a medical review by Dr. Daniel Fung, an independent physician Board Certified in Physical Medicine and Rehabilitation and Pain Medicine which is new or additional evidence in connection with your appeal. You may review the report and provide a response to us, which we will consider in making our decision on your appeal. If we do not receive your response within 21 days of the date of this letter or October 16, 2020, we will proceed with making a determination on your appeal based on the information contained in your file.

Upon receipt of your response, we will promptly complete our review and render a determination on your appeal.

Due to these special circumstances, an extension of time to process your appeal is required and we are exercising our right to take such an extension under the Employee Retirement Income Security Act.

Under the Employee Retirement Income Security Act (ERISA), an appeal determination should be rendered within 45 days of receipt of appeal, unless there are special circumstances beyond Lincoln's control, which require a delay in making a determination. If additional time is needed, ERISA allows for a 45-day extension to evaluate and render an appeal decision. [Pursuant to ERISA Regulations, additional time for a final decision may exceed 90 days to the extent that the timeframe

1 of 2

**Lincoln/Mason 0474**

is tolled while Lincoln is awaiting receipt of requested documentation needed to fully evaluate your claim. (Tolled: accumulation of time is suspended.)]

Please include the claim number listed above in all communications.

If you have any questions regarding this matter, please contact me.

Sincerely,

Mary Avrett
Appeals Consultant
Phone No.: (888) 437-7611 Ext. 16371
Secure Fax No.: (603) 430-1926

Attachments:   9291624-MEDICAL-MEDICAL RECORDS-09.15.2020

**Lincoln/Mason 0475**

........................................................................................................................................................................................................

**Daniel Fung, M.D.**
**Board Certified Physical Medicine & Rehabilitation**
**Board Certified Pain Medicine**

**CLAIMANT NAME:** Jan Mason
**ECN #:** 156002-1
**CLAIM #:** 9291624
**DATE OF LOSS:** 04/17/2019
**DATE OF REVIEW:** 09/14/2020
**CASE TYPE:**Long-Term Disability

**DIAGNOSIS:** Pain in right hip

**MEDICAL RECORDS REVIEWED:**
11/11/2015, Job Description, Charter Communications.
12/19/2017, State of Colorado Traffic Accident Report, Richard DuVall, Credentials Not
Provided.
07/11/2018, X-Ray Lumbar Spine, Jon Snider, MD.
09/12/2018, MRI Pelvis and Sacroiliac Joints, Joseph Ugorji, DO.
11/27/2018, CT Pelvis, Nicholas Moore, MD.
01/09/2019, Fluoroscopically Guided Injection of the Right Hip Imaging, Jacob Becker, MD.
01/09/2019, Fluoroscopically Guided Injection of the Left Hip Imaging, Jacob Becker, MD.
01/31/2019, Progress Note, Tyler Bron, MD.
02/11/2019, MRI Arthrogram Right Hip, Craig LaBuda, MD.
02/18/2019, Progress Note, Tyler Bron, MD.
03/07/2019, Progress Note, Michael Huang, MD.
04/17/2019, Operative Report, Michael Huang, MD, MD.
04/18/2019, Progress Note, Kristen Reiss, PA-C.
05/02/2019, Progress Note, Kristen Reiss, PA-C.
06/04/2019, Progress Note, Michael Huang, MD.
07/09/2019, Progress Note, Michael Huang, MD.
07/23/2019, Progress Note, Jeffrey Kent, MD.
07/29/2019, Progress Note, James Bee, MD.
08/06/2019, Progress Note, Jeffrey Kent, MD.
08/08/2019, MRI Lumbar Spine, Jacob Becker, MD.
08/19/2019, Progress Note, James Bee, MD.
08/21/2019, Progress Note, Roger Sung, MD.
08/28/2019, Progress Note, David Salek, MD.
09/03/2019, Long-Term Disability Claim Creation Request, Ethan Crockett, Credentials Not
Provided.
09/14/2019, Disability Questionnaires an Application for Benefits, Jan Mason.
09/17/2019, Physical Therapy Evaluation, Catherine Bottorff, PT, DPT.
10/03/2019, Nursing Memorandum, Cassandra K., RN.
10/04/2019, Disability Questionnaires an Application for Benefits, Jan Mason.
10/07/2019, Progress Note, Jeffrey Kent, MD.
10/11/2019, Progress Note, Kristen Reiss, PA-C.

1

**Lincoln/Mason 0476**

10/22/2019, MRI Right Hip Arthrogram, John Campbell, MD.
10/25/2019, Progress Note, Michael Huang, MD.
10/27/2019, Peer Review, Richard Avioli, MD.
11/20/2019, Progress Note, Roger Sung, MD.
12/09/2019, Operative Report, Michael Huang, MD.
12/10/2019, Progress Note, Michael Huang, MD.
12/13/2019, Physical Therapy Initial Examination, Taylor Mark Pfeifer, PT, DPT.
12/13/2019, Physical Therapy Plan of Care, Taylor Mark Pfeifer, PT, DPT.
12/13/2019, Physical Therapy Daily Note, Taylor Mark Pfeifer, PT, DPT.
12/17/2019, Physical Therapy Daily Note, Jennifer Mulligan, PT, DPT.
12/23/2019, Progress Note, Phillip Falender, PA-C.
12/24/2019, Physical Therapy Daily Note, Kerri Anne Tiller, PT, DPT.
12/27/2019, Physical Therapy Daily Note, Taylor Mark Pfeifer, PT, DPT.
12/30/2019, Physical Therapy Daily Note, Kerri Anne Tiller, PT, DPT.
12/30/2019, Progress Note, Jeffrey Kent, MD.
01/02/2020, Physical Therapy Note, Sandi Feeney, PT, DPT.
01/06/2020, Physical Therapy Daily Note, Kerri Anne Tiller, PT, DPT.
01/10/2020, Physical Therapy Daily Note, Kerri Anne Tiller, PT, DPT.
01/14/2020, Physical Therapy Daily Note, Jennifer Mulligan, PT, DPT.
01/17/2020, Physical Therapy Daily Note, Taylor Mark Pfeifer, PT, DPT.
01/20/2020, Physical Therapy Daily Note, Kerri Anne Tiller, PT, DPT.
01/21/2020, Progress Note, Kristen Reiss, PA-C.
01/23/2020, Physical Therapy Daily Note, Kerri Anne Tiller, PT, DPT.
01/27/2020, Physical Therapy Daily Note, Kerri Anne Tiller, PT, DPT.
01/29/2020, Physical Therapy Daily Note, Taylor Mark Pfeifer, PT, DPT.
01/30/2020, MRI Left Hip Arthrogram, Nicholas Moore, MD.
01/31/2020, Progress Note, Kelsey Chrane, PA-C.
02/04/2020, Physical Therapy Daily Note, That Jennifer Mulligan, PT, DPT.
02/06/2020, Progress Note, Michael Huang, MD.
02/11/2020, Physical Therapy Daily Note, Ellen Jackson, PT.
02/12/2020, Progress Note, David Salek, MD.
02/20/2020, Physical Therapy Progress Note, Scott Moser, PT, DPT.
02/20/2020, Physical Therapy Daily Note, Scott Moser, PT, DPT.
02/25/2020, Physical Therapy Daily Note, Marc Phillips, PT, DPT.
03/03/2020, Progress Note, Jeffrey Kent, MD.
03/05/2020, Physical Therapy Daily Note, Marc Phillips, PT, DPT.
03/12/2020, Progress Note, Michael Huang, MD.
03/12/2020, Physical Therapy Daily Note, Marc Phillips, PT, DPT.
03/17/2020, Physical Therapy Daily Note, Marc Phillips, PT, DPT.
04/02/2020, Physical Therapy Note, Marc Phillips, PT, DPT.
04/09/2020, Physical Therapy Daily Note, Marc Phillips, PT, DPT.
04/16/2020, Physical Therapy Daily Note, Marc Phillips, PT, DPT.
04/23/2020, Physical Therapy Daily Note, Marc Phillips, PT, DPT.
04/30/2020, Physical Therapy Daily Note, Marc Phillips, PT, DPT.
05/01/2020, Progress Note, Michael Huang, MD.
05/07/2020, Physical Therapy Daily Note, Marc Phillips, PT, DPT.

Lincoln/Mason 0477

05/13/2020, Progress Note, Roger Sung, MD.
05/21/2020, Physical Therapy Daily Note, Marc Phillips, PT, DPT.
05/22/2020, Progress Note, Jeffrey Kent, MD.
06/11/2020, Procedure Note, David Salek, MD.
06/18/2020, Physical Therapy Daily Note, Marc Phillips, PT, DPT.
06/23/2020, Disability Questionnaires an Application for Benefits, Jan Mason.
07/01/2020, Progress Note, Roger Sung, MD.
07/01/2020, Medical Questionnaire, Jeffrey Kent, MD.
07/01/2020, Progress Note, Jeffrey Kent, MD.
07/09/2020, Physical Therapy Initial Examination, Marc Phillips, PT, DPT.
07/16/2020, Letter Correspondences, David Monti, MD.
07/16/2020, Peer Review, David Monti, MD.
07/16/2020, Physical Therapy Daily Note, Marc Phillips, PT, DPT.
07/21/2020, Written Request for Review, Jan Mason.
07/23/2020, Letter Correspondence, David Salek, MD.
07/23/2020, Physical Therapy Daily Note, Marc Phillips, PT, DPT.
07/31/2020, MRI Lumbar Spine, José Pizarro, MD.
08/06/2020, Physical Therapy Daily Note, Marc Phillips, PT, DPT.
08/13/2020, Physical Therapy Recertification Note, Marc Phillips, PT, DPT.
08/13/2020, Physical Therapy Daily Note, Marc Phillips, PT, DPT.
08/17/2020, Progress Note, Michael Huang, MD.
08/19/2020, Progress Note, Roger Sung, MD.
08/20/2020, Physical Therapy Daily Note, Marc Phillips, PT, DPT.
08/31/2020, Letter Correspondence, Jeffrey Kent, MD.

**HISTORY:**

I have been asked to review the medical records on behalf of ECN regarding Jan Mason. The claimant is a now 48-year-old female with a long-term disability claim from 04/17/2019. Her job title was Representative 3, Customer Service Billing. This was a sedentary position. Her primary diagnosis was pain in right hip.

On 12/18/2017, the claimant was involved in a motor vehicle accident. She was stopped in heavy traffic in the right through lane when another driver failed to come to a complete stop and collided with the rear passenger side bumper. She complained of hip and lower back pain. Moderate to severe damage was sustained to the rear passenger side bumper and quarter panel of the vehicle.

On 07/11/2018, the claimant had an x-ray the lumbosacral spine interpreted by Jon Snider, MD. This showed L3-L4 retrolisthesis and multilevel spondylosis. There was a metallic fixation of the sacroiliac joint.

On 09/12/2018, the claimant had an MRI of the pelvis and sacroiliac joints interpreted by Joseph Ugorji, DO. The report provided was not completely legible.

3

**Lincoln/Mason 0478**

On 11/27/2018, the claimant had a CT of the pelvis. This was interpreted by Nicholas Moore, MD. This demonstrated a right sacroiliac joint internal fixation without evidence of a hardware failure. There was bilateral cam type femoroacetabular impingement.

On 01/09/2019, the claimant had a fluoroscopically guided joint injection of the right hip. Her pain went from 5-6/10 to 0/10 in severity after the procedure. This was performed by Tyler Bron, MD.

On 01/09/2019, the claimant had a fluoroscopically guided joint injection of the left hip. Her pain went from 4/10 to 0/10 in severity after the procedure. This was performed by Tyler Bron, MD.

On 01/31/2019, the claimant was evaluated by Tyler Bron, MD. She complained of bilateral hip pain. She was following up after bilateral corticosteroid injections in her hips. For the initial 4-6 hours after the injection she had complete relief of her hip pain. This was only temporary and overall had not noticed any significant improvement from the injection. Her pain was worsening in the right greater than the left. She was also complaining of back pain. On physical examination of the right hip and pelvis, range of motion was limited with flexion 100°, internal rotation 0°, external rotation 15°. Range of motion elicited groin pain. Her pain was most severe with internal rotation. Her quadricep and hamstring strength was 5/5. Plantar and dorsiflexion strength was 5/5. Her sensation was intact over the lower extremity. Physical examination of the left hip and pelvis demonstrated range of motion limited with flexion 100°, internal rotation 0°, external rotation 15°. Range of motion elicited groin pain. Her pain was most severe with internal rotation. Her strength and sensory examination were intact. Her diagnostic testing was reviewed. The diagnoses were pain in right hip and pain in the left hip. Her pain was likely due to osteoarthritis versus labral pathology. An MRI arthrogram of the right hip was ordered.
On 02/11/2019, the claimant had an MRI arthrogram of the right hip. This was interpreted by Craig LaBuda, MD. This demonstrated a right hip anterior superior labral tear. There was mild, superior hip joint space narrowing and small anterior lateral femoral head-neck-osseous bump. There was a right sacroiliac joint fusion.

On 02/18/2019, the claimant followed up with Tyler Bron, MD. Her hip was still very painful. On physical examination of the right hip and pelvis, range of motion was limited with flexion to 100°, internal rotation 0°, external rotation 15°. Range of motion elicited groin pain. Her pain was most severe with internal rotation. Her quadricep and hamstring strength was 5/5. Plantar and dorsiflexion strength was 5/5. Her sensation was intact over the lower extremity. Physical examination of the left hip and pelvis demonstrated range of motion limited with flexion to 100°, internal rotation 0°, external rotation 15°. Range of motion elicited groin pain. Her pain was most severe with internal rotation. Her strength and sensory examination were intact. The MRI arthrogram was reviewed showing an anterior superior labral tear with minimal joint space narrowing, as well as signs of femoral acetabular impingement. The diagnoses were pain in the left hip, and pain in the right hip. She was referred to another physician for possible arthroscopic labral repair.

On 03/07/2019, the claimant was seen by Michael Huang, MD. She reported right hip pain over the posterior buttock area for about two years. She was treated initially for sacroiliac joint pain in

4

**Lincoln/Mason 0479**

September 2017 with sacroiliac joint fusion. She had recovered extremely well with resolution of her symptoms until she was involved in a car accident where she was rear-ended in December 2017. She reported some groin pain but mostly felt her pain in the posterior buttock area. Her symptoms were worse with sitting, but now consistently bothering her with standing and walking. She denied numbness or tingling. She had tried rest, activity modification, anti-inflammatories including ibuprofen without benefit. She tried physical therapy without benefit. She tried chiropractic treatment and massage therapy with limited benefit. She underwent an intra-articular injection and she had four hours of complete pain resolution but did not get any benefit long-term. Her symptoms were sharp, dull, and aching and made worse with sitting and walking. She also had associated stiffness and weakness. On physical examination, her gait was antalgic. Right hip range of motion demonstrated flexion to 115°, external rotation to 55°, and internal rotation to 10°. The anterior impingement test was positive reproducing her posterior buttock pain and somewhat reproducing groin pain. There was tenderness to palpation of the posterior buttock. She had a negative straight leg raise and negative posterior impingement test. At the left hip, range of motion demonstrated flexion to 25°, external rotation to 65°, and internal rotation to 10°. Anterior and posterior impingement tests and straight leg raise were negative. There was no tenderness to palpation. Her diagnostics were reviewed. The diagnoses were pain in the right hip, and other articular cartilage disorders of the right hip. This was further discussed as right hip pain secondary to labral tear and femoral acetabular impingement. Surgical intervention was discussed and planned for.

On 04/17/2019, the claimant had a right hip labral repair, arthroscopic acetabuloplasty, femoroplasty, osteoplasty to remove cam lesion, chondroplasty, synovectomy, capsular plication performed by Michael Huang, MD.

On 04/18/2019, the claimant followed up with Kristen Reiss, PA-C. She was a one-day status post-surgery. Her pain was well-controlled. She was utilizing her post-operative hip braces and crutches. On physical examination, the right hip wounds had minimal drainage. There was mild swelling which was expected. There were no signs of infection. The diagnosis was one-day status post right hip surgery. She was given postoperative instructions and advised to follow-up in two weeks.

On 05/02/2019, the claimant followed up with Kristen Reiss, PA-C. She was two weeks status post hip surgery. Her pain was well-controlled. She was doing well with physical therapy. On physical examination, the surgical wounds were healed without signs of infection. Her sensation was intact. The diagnoses were pain in the right hip, and other articular cartilage disorders of the right hip. Her sutures were removed. She was given further instructions for routine postoperative management. She was given oxycodone.

On 06/04/2019, the claimant followed up with Michael Huang, MD. She was six weeks status post right hip surgery. She reported increasing hip pain worse than her preoperative pain. It began after she started to discontinue the crutches two weeks prior. She also presented with a new complaint of left hip pain. She states having had this since December 2017, with progressive worsening. Her left was feeling worse after bearing more weight after her surgery. The pain was in the groin and worsened with prolonged sitting, prolonged standing, and squatting. Rotational activities also increased pain. She had tried rest, activity modification and ibuprofen. She was

5

**Lincoln/Mason 0480**

attending physical therapy. On physical examination of the left hip, flexion was to 115°, external rotation to 65° and internal rotation to 10°. The anterior impingement test was positive. She had tenderness in the anterior groin.

The right hip surgical wounds were well healed without signs of infection. Range of motion of the right hip was flexion to 115°, external rotation to 50° and internal rotation to 5° with continued positive anterior impingement test. X-rays of the bilateral hips were ordered. There was well-preserved femoral acetabular joint spacing. At the left hip there was evidence of femoral, acetabular impingement cam type with alpha angle measuring 63°. The diagnoses were pain in the right hip, and other articular cartilage disorders of the right hip. She was advised to go back on crutches for about two weeks. She was given indomethacin for inflammation. In terms of the left hip, there was suspicion for underlying labral tear. They were considering MRI arthrogram of the left hip.

On 07/09/2019, the claimant followed up with Michael Huang, MD. She reported increasing right posterior buttock and lumbar spine pain. She had minimal anterior hip pain. Her hip pain was much better since her previous visit. She was doing physical therapy. She was concerned about her lumbar spine and felt her pain was radiating down her buttock to the posterior thigh and into her calf. At one point in her history, she was considering a spinal stimulator for low back pain. She described her pain as nerve pain and burning. She had occasional mild anterior groin pain with activity which she was tolerating well. On physical examination, the right hip surgical wounds were well healed. Range of motion included flexion to 110°, external rotation to 50°, internal rotation to 10° and abduction of 40°. She had minimal anterior pain with any of these tests. She had significant posterior hip pain over the sacroiliac joint and lumbar spine. Straight leg raise was negative for radicular symptoms but increased her posterior hip buttock and spine pain. She was directly tender over the superior aspect of the sacroiliac joint and the right lumbosacral junction. The diagnoses were pain in right hip and other articular alleged disorders of the right hip. She was advised to continue with physical therapy. She planned on following up with her spine surgeon for an opinion. She was continued on indomethacin.

On 07/23/2019, the claimant was evaluated by Jeffrey Kent, MD. She reported recent labral tear repair. She was having worsening pain since starting to bear weight. She reported pain in her lower back with burning pain into her right leg more than her left leg. She requested a parking pass, Xanax, and Ambien. No physical examination was provided. The diagnoses were osteoarthritis of the spine with radiculopathy, tear of the right acetabular labrum, femoral acetabular impingement of both hips, primary insomnia, and anxiety. She was advised to continue to follow with her specialists, and to continue gabapentin, Xanax, and Ambien.

On 07/29/2019, the claimant was evaluated by James Bee, MD. She complained of pain in her buttock and back. The pain was sharp, burning, and constant. It was made worse with activity such as sitting, standing, walking, and bending. It was made better by lying down. She had done physical therapy, which was stopped due to worsening symptoms. She was taking indomethacin. Her pain was 8/10. Her activities of daily living were limited secondary to her complaints. On physical examination of the lumbar spine, there was no tenderness. The flexion of the lumbar spine brought the fingertips 6 inches from the floor. Extension was approximately 15°. There was some pain at the extremes of flexion and extension. There was pain with palpation along the gluteal musculature right greater than left. There was no pain with axial compression of the head

6

**Lincoln/Mason 0481**

and no pain with trunk rotation through the hips. She had a slow reciprocating gait. She was able to walk on the toes and heels. She moved easily to the examination table without assistance. Her strength throughout the lower extremities was 5/5. Her sensation was intact bilaterally. There were no upper motor signs. Her reflexes were normal. Straight leg raise was negative bilaterally. X-rays of the lumbosacral spine demonstrated a right sacroiliac joint fusion device. There was a collapse of the disc space at L2-L3. There was subtle retrolisthesis of L3 on L4. On flexion and extension, there was no instability. Her previous MRI of the lumbar spine from 05/12/2018 was also reviewed showing degenerative changes. There was no stenosis. The diagnoses were spinal stenosis in the lumbar region with neurogenic claudication, spondylosis without myelopathy or radiculopathy lumbar region, other intervertebral disc degeneration lumbar region, other intervertebral disc degeneration lumbosacral region, and pain in the right hip. A new MRI was ordered.

On 08/06/2019, the claimant was seen by Jeffrey Kent, MD. She continued with back pain that was worse on the right and made worse with walking. Driving and bending also worsened her pain. She was taking Ambien to facilitate sleep. She was scheduled to have her MRI the next day. She was taking indomethacin. She was requesting FMLA paperwork. She was out of work. On physical examination, she had tenderness over the sacroiliac joints worse on the right. She was referred to physiatry. The diagnosis was acute right-sided low back pain with sciatica. On 08/08/2019, the claimant had an MRI of the lumbar spine interpreted by Jacob Becker, MD. This demonstrated stability since the previous MRI from 05/12/2018. There was mild multilevel degenerative disc disease with bulges and protrusions without high-grade spinal canal or neural foraminal stenosis at any level.

On 08/19/2019, the claimant followed up with James Bee, MD. She had undergone a spinal cord stimulator trial. It had helped some of her complaints but not her mid-back problems. On physical examination, there were no significant abnormalities. Her MRI of the lumbar spine was reviewed showing degenerative changes without obvious stenosis. The diagnoses were spinal stenosis in the lumbar region with neurogenic claudication, spondylosis without myelopathy or radiculopathy lumbar region, other intervertebral disc degeneration lumbar region, other intervertebral disc degeneration lumbosacral region. She was referred back for possible permanent spinal cord stimulator.

On 08/21/2019, the claimant followed up with Roger Sung, MD. She was requesting to go ahead with a spinal cord stimulator. On physical examination, she had diffuse lumbar tenderness extending into the buttock which was not specific to the sacroiliac joint. The diagnoses were low back pain, chronic pain syndrome, and sciatica. A trial for a different spinal cord stimulator.

On 08/28/2019, the claimant was seen by David Salek, MD. Her history was summarized and consistent with previous accounts. She reported pain that was constant, sharp, and burning with radiation down her right leg into the top of her toe. Her buttock pain was more severe than the leg pain. On physical examination, she had full painless range of motion of all major muscle groups and joints. She had a positive Faber test and a positive Fortin finger test. She had positive lumbar quadrant testing. Her strength and sensation were normal. Her reflexes were normal. The diagnoses were status post right sacroiliac joint fusion, status post right hip labral tear repair, low

7

**Lincoln/Mason 0482**

back pain, right lower extremity radicular features, and positive spinal cord stimulator trial with Boston Scientific. A trial for Stimwave was requested.

On 10/07/2019, the claimant followed up with Jeffrey Kent, MD. She complained of chronic low back pain and sacroiliac joint pain. She was considering a spinal cord stimulator. She was requesting FMLA paperwork and a flu vaccine. On physical examination, she had pain and tenderness in the sacroiliac joint areas and the right inguinal region. She had a normal urinalysis. She had x-rays of the hips, which were normal. The diagnoses were chronic low back pain with sciatica. She was advised to continue with her current treatment plan. She was given a flu shot.

On 10/11/2019, the claimant was evaluated by Kristen Reiss, PA-C. She reported pain that was worse than it was prior to her surgery. She was being evaluated for possible spinal cord stimulator. The pain in the posterior buttock radiated down the posterior thigh into her calf and foot. She had a burning pain in the groin area and lateral hip pain. This seemed to increase about a month prior when she started increasing her walking. She was only walking about 2 miles a week. On physical examination, she had an antalgic gait. Her surgical wounds of the right hip were well healed. Right hip flexion was to 110°, external rotation to 50°, internal rotation to 10° and abduction to 40°. She had negative anterior and posterior impingement tests. Her straight leg raise was negative for radicular symptoms but would increase her posterior hip and buttock pain. She was tender over the superior aspect of the sacroiliac joint on the right and lumbosacral junction as well as over the anterior hip and laterally over the greater trochanter. X-rays were completed showing evidence of previous sacroiliac joint fusion in the right sacroiliac joint. The diagnoses were pain in right hip and other articular cartilage disorders of the right hip. An MRI of the right hip was ordered.

On 10/22/2019, the claimant had an MRI of the right hip with arthrogram. This was interpreted by John Campbell, MD. This demonstrated postoperative changes within the right hip. The anterior aspect of the superior labrum was diminutive and blunted. The superior aspect of the anterior labrum was diminutive and irregular. These were likely postoperative. There was no recurrent tear. There was focal intermediate signal nodularity along the acetabular articular surface adjacent to a suture anchor track at the 12 o'clock position. There was a thin linear signal along the anterior capsule just lateral to the superior aspect of the anterior labrum, which could be related to capsular plication. Mild chondral irregularity along the lateral acetabulum likely reflecting postoperative change.

On 10/25/2019, the claimant followed up with Michael Huang, MD. She was there to discuss her recent MRI. On physical examination, she had an antalgic gait. Her surgical wounds of the right hip were well healed. Right hip flexion was to 110°, external rotation to 50°, internal rotation to 10° and abduction to 40°. She had negative anterior and posterior impingement tests. Her straight leg raise was negative for radicular symptoms but would increase her posterior hip and buttock pain. She was tender over the superior aspect of the sacroiliac joint on the right and lumbosacral junction as well as over the anterior hip and laterally over the greater trochanter. Due to the MRI findings, it was felt that she should undergo surgery to repair the labral tissue. The diagnoses were pain in right hip and other articular cartilage disorders of the right hip.

8

**Lincoln/Mason 0483**

On 11/20/2019, the claimant followed up with Roger Sung, MD. She was scheduled for a right hip labrum repair for 12/09/2019. The authorization for the stimulator trial was still pending. On physical examination, she was diffusely tender across her buttocks and lower back. Thoracic and lumbosacral x-rays showing multiple levels of lumbar degeneration.
The diagnoses were pain in the thoracic spine, low back pain, other intervertebral disc degeneration lumbar region, and sciatica. It was recommended that she try the Boston Scientific spinal cord stimulator since her insurance was denying the Stimwave.

On 12/09/2019, the claimant underwent a right hip labral reconstruction, chondroplasty, acetabuloplasty, femoroplasty, osteoplasty to remove cam lesion, synovectomy, capsular closure/plication by Michael Huang, MD.

On 12/10/2019, the claimant followed up with Michael Huang, MD. She was one-day status post right hip labral reconstruction surgery. Her pain was well-controlled. She was utilizing the postoperative crutches and braces. On physical examination, the wounds were intact with minimal drainage. There was mild swelling. The diagnosis was other articular cartilage disorders of the right hip. Physical therapy was initiated.

On 12/23/2019, the claimant followed up with Phillip Falender, PA-C. She was at two weeks status post right hip labral reconstruction surgery. She was progressing well with physical therapy. On physical examination, there were no signs of infection. Hip flexion was to 90°. The Steri-Strips were removed without difficulty. The diagnosis was other articular cartilage disorders of the right hip. She was given further instruction for increasing weight-bearing and advised to continue physical therapy.

On 12/30/2019, the claimant followed up with Jeffrey Kent, MD. She had her right labral repair. She felt worse. Her pain was increased with therapy. She was still considering a spinal stimulator. She had issues with her other hip. She resigned from her cable job. On physical examination, she was tearful at times and in a brace for her right hip. Diagnoses were chronic low back pain with sciatica, sacroiliac joint pain, and tear of the right acetabular labrum. She was advised to continue her current treatment plan.

On 01/21/2020, the claimant was evaluated by Kristen Reiss, PA-C. She was six weeks status post right hip labral reconstruction. She reported her hip pain was improving. Her lower back pain, pain over the sacroiliac joint and radicular symptoms had worsened. She was also following up for her left hip pain. Physical therapy was not helpful for the left hip. On physical examination, right hip flexion was to 100°, external rotation to 40°, and internal rotation to 5°. There was tenderness over the lateral right hip and right sacroiliac joint. The left hip range of motion included flexion to 110°, external rotation to 50°, internal rotation to 5°. She had a positive anterior impingement test. The straight leg raise produced low back pain. There was tenderness over the anterior hip and laterally over the greater trochanter. X-rays were again performed of the right hip. There were no obvious abnormalities other than the previous sacroiliac joint fusion. The diagnoses were other articular cartilage disorders of the right hip, lumbar region radiculopathy, and pain in the left hip. She was advised to continue physical therapy for the right hip. She was advised to follow-up with Roger Sung, MD regarding worsening low back and sacroiliac joint pain. An MR arthrogram of the left hip was ordered.

9

Lincoln/Mason 0484

On 01/30/2020, the claimant had an MRI left hip with arthrogram interpreted by Nicholas
Moore, MD.
This demonstrated a focal cam deformity of the anterior left femoral head neck junction with
associated anterior/anterior superior labral based tear. There was a small right hip joint effusion.

On 01/31/2020, the claimant followed up with Kelsey Chrane, PA-C. Her right hip pain has
significantly improved. She continued to have lower back pain interfering with her participation
in physical therapy. She had imaging of her left hip. She was still anticipating a spinal cord
stimulator placement. On physical examination, there was tenderness along the spinous
processes and paraspinal musculature and diffusely throughout the lower back including over the
right sacroiliac joint. Motor strength of the lower extremities was intact. There was pain with
range of motion, primarily extension. The diagnoses were low back pain, lumbar region spinal
stenosis with neurogenic claudication, other intervertebral disc degeneration of the lumbar
region, intervertebral disc disorders with radiculopathy lumbar region, sacroiliitis, pain in the
right hip, and pain in the left hip. She was advised to call when she was ready to proceed with the
spinal cord stimulator.

On 02/06/2020, the claimant followed up with Michael Huang, MD. She was eight weeks status
post-surgery. She was now using a cane. She reported achiness of the anterior hip. She had an
MR arthrogram of the left hip and had returned to discuss the findings. On physical examination,
hip flexion on the right was to 105°, external rotation 40°, internal rotation 5°. There was
tenderness of the right lateral hip and over the sacroiliac joint. The left hip range of motion had
flexion 115°, external rotation to 55°, internal rotation to 5°. There was a positive anterior
impingement test. Straight leg raise caused low back pain. There was tenderness over the anterior
hip and laterally over the greater trochanter. The diagnoses were other articular cartilage
disorders right hip, other articular cartilage disorders left hip, and pain in the left hip. They
discussed options for managing her left hip. It was decided she would continue focusing on her
right hip rehabilitation program and manage her left hip pain with anti-inflammatories.

On 02/12/2020, the claimant followed up with David Salek, MD. She was referred back for pain
management. She did not want opiates and was looking for alternative care. She inquired about
the use of CBD. On physical examination, she had full painless range of motion of all major
muscle groups and joints. She had a positive Faber test and a positive Fortin finger test. She had
positive lumbar quadrant testing. The diagnoses were status post right sacroiliac joint fusion,
status post right hip labral repair, low back pain, right lower extremity radicular features, and
positive spinal cord stimulator trial with Boston Scientific. She was prescribed Celebrex and
Tylenol.

On 03/12/2020, the claimant followed up with Michael Huang, MD. She was 12 weeks status
post right hip labral reconstruction. The right hip was doing well. Her biggest issue was
tremendous pain over the right greater than left sacroiliac joint and lumbar spine. She had been
in physical therapy but was having difficulty weight-bearing and was using crutches. The left hip
also continued to be painful, unchanged since her last visit. On physical examination, hip flexion
on the right was to 110°, external rotation 45°, internal rotation 5°. There was tenderness of the
right lateral hip and over the sacroiliac joint. The left hip range of motion had flexion 120°,

10

**Lincoln/Mason 0485**

external rotation to 55°, internal rotation to 5°. There was a positive anterior impingement test. Straight leg raise caused low back pain. There was tenderness over the anterior hip and laterally over the greater trochanter.
The diagnoses were other articular cartilage disorders right hip, other articular cartilage disorders left hip, and pain in the left hip. The claimant decided to return to Roger Sung, MD to discuss any further options regarding her sacroiliac joints.

On 03/03/2020, the claimant followed up with Jeffrey Kent, MD. She continued to have worsening pain in the lower back along the sacroiliac joints. She was considering a consultation with Mayo Clinic. On physical examination, she had pain with range of motion of the hip and pain in the lower back and sacroiliac joints. The diagnoses were sacroiliac joint pain, chronic midline low back pain with sciatica, and tear of the right acetabular labrum. She was advised to continue to follow with her specialists.

On 05/01/2020, the claimant followed up with Michael Huang, MD. She had been working at physical therapy on the sacroiliac joints, which had been worsening her pain. The pain was radiating laterally and anteriorly towards the hip. She continued to have significant posterior pain. She had not yet returned to Roger Sung, MD, due to the coronavirus. She was working on walking around the block. She continued to have difficulty going up and down stairs and lying supine. Her pain was 8-9/10. On physical examination, hip flexion on the right was to 115°, external rotation 45°, internal rotation 5°. There was tenderness of the right lateral hip and over the sacroiliac joint. The left lower extremity was normal with unremarkable range of motion. The diagnoses were other articular cartilage disorders right hip, and right sacroiliitis. She was advised to return to Roger Sung, MD for further evaluation and treatment of the sacroiliac joints, and to continue physical therapy.

On 05/13/2020, the claimant followed up with Roger Sung, MD. She complained of bilateral sacroiliac joint pain. On physical examination, she had tenderness over both sacroiliac joints. The diagnoses were sacroiliitis, chronic pain syndrome, and sciatica. They were going to proceed with a lidocaine-only injection in the left sacroiliac joint. She was advised to continue considering a spinal cord stimulator.

On 05/22/2020, the claimant had a follow-up with Jeffrey Kent, MD. She was doing physical therapy. She reported having a vaginal yeast infection. Her physical examination was done via video conference and was normal. The diagnoses were osteoarthritis of the spine with radiculopathy in the lumbar region, tear of the right acetabular labrum, sacroiliac joint pain, and acute vaginitis. She was given Diflucan and advised to continue following with her specialists.

On 06/11/2020, the claimant underwent a sacroiliac joint injection on the left for the diagnosis of sacroiliitis. This was performed by David Salek, MD.

On 07/01/2020, the claimant followed up with Roger Sung, MD. She had the left sacroiliac joint injection and was pain free for about two hours. On physical examination, she continued to have tenderness along bilateral sacroiliac joints. The diagnoses were other intervertebral disc degeneration lumbar region, low back pain, and sacroiliitis. She was referred back to physical therapy because her treatment was interrupted by Covid-19.

11

Lincoln/Mason 0486

On 07/01/2020, the claimant followed up with Jeffrey Kent, MD. She discussed the left-sided diagnostic sacroiliac joint injection.
They discussed needing rehab on the right sacroiliac joint and a possibility of fusing the left sacroiliac joint. She was considering a labral reconstruction on the left hip and a spinal cord stimulator. She continued having the right sacroiliac joint pain. She was applying to Social Security and had been denied. She requested a cyclobenzaprine refill. On physical examination, she had abnormal lower back and sacroiliac joints. The diagnoses were osteoarthritis of the spine with radiculopathy in the lumbar region, sacroiliac joint pain, and femoral acetabular impingement of both hips. Her cyclobenzaprine was refilled. She was advised to continue her current treatment plan with her specialists.

MRI of the lumbar spine from 07/31/2020 interpreted by José Pizarro, MD, demonstrated straightening of the normal lumbar lordosis. There was kyphosis L2-L3. At L1-L2, there was a central disc herniation impinging on the thecal sac causing mild spinal stenosis. At L2-L3, there was a broad central disc herniation causing mild to moderate spinal stenosis. At L3-L4, there was disc desiccation and right proximal neural foraminal disc herniation which were focal. There was mild right neural foraminal stenosis. At L5-S1, there was a central disc herniation with annular tearing, elevating the posterior longitudinal ligament causing mild spinal stenosis.

On 08/17/2020, the claimant followed up with Michael Huang, MD. She reported continued worsening pain. The pain was located over bilateral sacroiliac joint and lumbar spine. Since her last visit she had a diagnostic injection in the left sacroiliac joint, which gave her two hours a complete relief of pain. She has continued physical therapy without improvement. She continued to have bilateral lower extremity symptoms including pain, numbness, and tingling down to both feet. She had an MRI of the lumbar spine. She denied significant groin pain. She had an episode where the right lower extremity gave way resulting in a fall causing temporary numbness in her vaginal area. She rated her pain 8-9/10. She continued to use crutches for weight-bearing.  On physical examination, her gait was antalgic. Hip flexion on the right was to 115°, external rotation 45°, internal rotation 5°. There was tenderness of the right lateral hip and over the sacroiliac joint bilaterally, and lumbar spine. There were no impingement testing signs at the hip with passive range of motion. The left lower extremity was normal with unremarkable range of motion. Her most recent MRI of the lumbar spine from 07/31/2020 was reviewed. The diagnoses were other articular cartilage disorders right hip, and right sacroiliitis. She was advised to continue following with Roger Sung, MD.

On 08/19/2020, the claimant followed up with Roger Sung, MD. She felt worse with physical therapy. Her pain was in the back, both sacroiliac joint and now radiating down her legs. She had a new MRI ordered by her physical therapist. Her physical examination was normal. Her MRI was reviewed and without significant changes from her previous MRI. The diagnoses were low back pain, other intervertebral disc degeneration lumbar region, sacroiliitis, chronic pain syndrome, and sciatica. She was advised to have a new spinal cord stimulator trial due to changes in her pain pattern.

12

**Lincoln/Mason 0487**

**RESPONSE TO QUESTIONS:**

**1. What diagnoses are supported by the medical evidence?**

The medical evidence provided supports the diagnoses of femoroacetabular impingement bilaterally, right hip labral tear, lumbar degenerative disc disease, lumbar spondylosis, and bilateral sacroiliitis.

**2. Taking into consideration the entire clinical picture, including standards of care and evidence-based medicine, and any medication or other treatment side effects, please describe if there are any supported level of impairments which translates into restrictions and limitations from 7/21/2020 to the present? Please explain your medical rationale as to why or why not and provide a detailed explanation.**

Since 07/21/2020, the claimant had an MRI of the lumbar spine, which according to Roger Sung, MD was stable from the previous. The findings included degenerative disc disease, degenerative central spinal stenosis, and degenerative neuroforaminal stenosis. These were all mild to moderate in degree. There was no obvious impingement of exiting nerve roots. There was no visualized myelomalacia.

She had two subsequent medical visits, one with Michael Huang, MD, and one with Roger Sung, MD. She had been feeling worse in terms of her pain and symptomatology. However, there were no new physical examination findings. Her most significant and consistent physical examination findings include tenderness and decreased range of motion. She does not have any neurologic deficits. No new restrictions were given by either of the physicians.

Although the claimant has subjective complaints of pain and falls, there was a lack of functional deficits on physical examination to support the need for restrictions.

**3. If functional impairment is supported, please describe how that translates into restrictions or limitations and for what period(s) of time. Please define in terms of frequency (never, occasional, frequent, constant) and task (sit, stand, lift/carry, type etc.). Please explain your medical rationale for any restrictions or limitations or why restrictions and limitations are not supported.**

Functional impairment is not supported by the documentation from 07/21/2020 to present.

**4. Does the medical documentation support that any medical condition alone, or in combination would preclude the claimant from sustained occupational functioning on a full-time basis? Please explain why or why not.**

Based on the provided medical documentation since 07/21/2020, there is no evidence that would preclude the claimant from sustained occupational functioning on a full-time basis.

**5. When contacting the treating provider please discuss the claimant's condition, treatment, and functional capacity. Please indicate the information reviewed and indicate**

**Lincoln/Mason 0488**

**whether or not you reach consensus with the treating provider. If not, please discuss your final assessment after the call.**

**AP CONTACT:**

I called the number listed (719-632-7669) on 9/4/20 at 11:08am CST and left a message for a return call on Kirsten's general office voicemail.

I called the number listed (719-632-7669) on 9/10/20 at 11:10am CST and left a message for a return call on Kirsten's general office voicemail.

I called the number listed (719-278-3627) on 9/4/20 at 11:47am CST and spoke with Jennifer and left a message for a return call.

My staff received a return call from Dr. Kent on 9/9/20 at 4:10pm CST and I was unable to take the call. A message was left for a return call to an alternate number (719-799-0784).

I called the alternate number (719-799-0784) on 9/10/20 at 11:15am CST and left a message for a return call on Dr. Kent's general voicemail.

At the time of submission, no return calls have been received.

**Daniel Fung, M.D.**
**Board Certified Physical Medicine & Rehabilitation**
**Board Certified Pain Medicine**
**License: A107358 CA**

14

**Lincoln/Mason 0489**



Corporate Office
6111 Broken Sound Parkway NW, Suite 202
Boca Raton, Florida 33487
Toll Free: (877) 462-0662
Local: (561) 922-5200
Fax: (561) 392-5881

Email: info@ecnime.com  ▲  Web: www.ecnime.com

Exam Coordinators Network  A division of Genex Services, LLC

Claimant Name: Jan Mason
Claim Number: 9291624
Case Number: 156002-1

"I, Daniel Fung, MD, am a physician duly licensed to practice medicine in the State of __CA__ . I am an independent contractor and I am paid to review claim files and render medical opinions. I am not responsible for deciding whether a claimant is entitled to insurance benefits. My role is to provide objective medical opinions to Genex Services, LLC.

I hereby attest that the following statements are true:

- I have the scope of licensure or certification that typically manages the medical condition, procedure, treatment or issue under review
- I have current, relevant knowledge to render an opinion for the case under review
- No financial incentive was received based on the outcome of the opinion
- No delegation of the examination rendered

I attest that no conflict of interest exists, this includes any situation where an individual has a material, professional, familial, or financial conflict of interest regarding any of the following:

- Compensation for IME/Peer Review activities that are dependent in any way on the specific outcome of the case
- Have involvement with the case prior to its referral for review
- The referring entity
- The health benefit plan
- The consumer
- The attending provider or any other advisor previously involved in the case
- The facility at which the recommended healthcare service(s) would be provided
- The developer or manufacturer of the principal drug, device, procedure, or other therapy being recommended for the customer

I declare that the information contained in the above-referenced report was prepared by and is the work product of the undersigned and is true to the best of my knowledge and information. I certify that my medical/professional license is current and is in good standing in the jurisdiction in which my practice is located.

_____     9.14.2020
Signature of Physician                                      Date

Medical/Professional License # A107358 CA _____

Lincoln/Mason 0490

## Mason, Jan K

1 of 3

Office/Outpatient Visit
**Visit Date:** Tue, Sep 8, 2020 01:51 pm
**Provider:** Salek, David R, MD (Supervisor: Salek, David R, MD;  Assistant: Roberts, Tasha, MA)
**Location:** Spinal Diagnostics & Pain Management

Electronically signed by David Salek, MD on  09/08/2020 02:53:08 PM
 Printed on 09/08/2020 at 2:53 pm.

## Subjective:

**CC:** Discuss SCS trial
**HPI:** Patient presents to clinic today to discuss SCS trial per the request of Dr. Sung. She states she has a pain in her lower back that radiates down her right lower extremity that feels like a vibrating sensation. She is using the assistance of a cane to get around. States if she drives or goes up the stairs she feels that her hip joint ball is jabbing into her.

Patient is status post Fluoroscopically-guided injection of the LEFT DIAGNOSTIC sacroiliac joint(s). Notes she received 2 hours of great relief.

She has been following with a Neurologist through Kaiser in Denver and states he ordered a EMG study.

Patient has been in physical therapy since December 2019 and states her symptoms are progressively getting worse.

Notes she did target cryotherapy and that did help the vibrating sensation for a short period. This did not help the SIJ.
**ROS:** CONSTITUTIONAL: Negative for chills, fatigue and fever.
E/N/T: Negative for ear pain.
CARDIOVASCULAR: Negative for chest pain and dizziness.
RESPIRATORY: Negative for shortness of breath.
GASTROINTESTINAL: Negative for anorexia.
MUSCULOSKELETAL: Positive for back pain.
INTEGUMENTARY/BREAST: Negative for pruritis.
NEUROLOGICAL: Negative for ataxia, dizziness, fainting and weakness.
HEMATOLOGIC/LYMPHATIC: Negative for lymphadenopathy.
ENDOCRINE: Negative for increasing size of hands and feet.

### Current Problems:
Sacroiliitis, not elsewhere classified
Low back pain
Myalgia

### Current Medications:
diclofenac sodium
Indomethacin 50 mg oral capsule [Take 1 capsule(s) by mouth bid  ]
celecoxib 200 mg oral capsule [1 po daily ]

## Objective:

**Exams:** GENERAL: well developed; well nourished; well groomed; no apparent distress alert and oriented x3, pleasant, cooperative and appropriately dressed. No apparent acute distress.
EYES: pupils and irises are normal; Sclera are clear and pupils are WNL
RESPIRATORY: normal respiratory rate and pattern with no distress;
CARDIOVASCULAR: no edema or significant varicosities;
MUSCULOSKELETAL: full, painless range of motion of all major muscle groups and joints Positive Faber, positive Fortin finger,
NEUROLOGIC: sensation: normal to touch and pinprick; vibration and proprioception senses intact; No strength deficits noted in bilateral lower extremities.  Normal reflexes
LUMBAR EXAM: Inspection: normal; Positive lumbar quadrant testing
NECK EXAM: Inspection: normal;

CPT® is a registered trademark of the American Medical Association

**Lincoln/Mason 0491**

9/8/2020 3:05 PM  FROM: Fax Spinal Diagnostics _Pain Management  TO: +1 (719) 623-2101  PAGE: 003 OF 004

## Mason, Jan K
2 of 3

Office/Outpatient Visit
**Visit Date:** Tue, Sep 8, 2020 01:51 pm
**Provider:** Salek, David R, MD (Supervisor: Salek, David R, MD;  Assistant: Roberts, Tasha, MA)
**Location:** Spinal Diagnostics & Pain Management

Electronically signed by David Salek, MD on  09/08/2020 02:53:08 PM
Printed on 09/08/2020 at 2:53 p.m.

**Assessment:** #1  Status post right sacroiliac joint fusion procedure 2017
#2  Status post right hip labral repair 2019
#3  Low back pain
#4  Right lower extremity radicular features
#5  history positive SCS trial with Boston

48-year-old female with low back bilateral sacroiliac joint and bilateral hip pain who underwent a right sacroiliac joint fusion and complex right labral reconstruction.  She has had radicular patterns in bilateral legs for quite some time and actually had a very positive trial with Boston spinal cord stimulator system with Dr. Lippert a few years ago however she had been quite resistant to the implantation of any battery into her body.  She is now nearing her "wits end" and would like to proceed with something.  She presents as a referral from Dr. Sung's office for consideration of a retrial of a spinal cord stimulator.  We had previously seen her a few months back for a right diagnostic sacroiliac joint injection which she reports actually went quite well.

We talked about the trial and implant phase we talked about the different stimulator systems.  She states that she is currently undergoing a workup at a neurosurgery office in Denver, and is pending an EMG in the coming few days.  She would like to wait for this workup to complete before pursuing a trial.  We will submit for authorization and have her give us a call when she would like to schedule the trial if appropriate.

Previous imaging:
MRI Thoracic (penrad)
Impression:
IMPRESSION: Minimal degenerative disc disease at T11-T12, with minimal effacement of the CSF but without mass effect otherwise.

MRI Lumbar (penrad)
Impression:
IMPRESSION:
1. No foraminal or canal stenosis. Unchanged minimal spondylolisthesis at L2-L4

Physical therapy/chiropractic/holistic modalities:
Physical therapy

Previous medication trials:


Current pain/psych medications:
Celebrex, Indomethacin, Diclofenac,

Previous injections and result:
left side medial cluneal nerve block.
Diagnostic SIJ

Previous pertinent surgery/neuromodulation:
Right SIJ fusion
Right hip labral repair

PLAN

CPT® is a registered trademark of the American Medical Association

**Lincoln/Mason 0492**

## Mason, Jan K

Office/Outpatient Visit
**Visit Date:** Tue, Sep 8, 2020 01:51 pm
**Provider:** Salek, David R, MD (Supervisor: Salek, David R, MD; Assistant: Roberts, Tasha, MA)
**Location:** Spinal Diagnostics & Pain Management

Electronically signed by David Salek, MD on  09/08/2020 02:53:08 PM
 Printed on 09/08/2020 at 2:53 pm.

SCS trial (nevro) - to cover bilateral sacroiliac bilateral hip and lower extremity radicular symptoms
Celebrex 200 mg daily
Tylenol 500 mg 4 times per day

Extensive education regarding the patient's condition was undertaken. I took the time to review the patient's anatomy using 3-dimensional models in clinic, printed and verbal information with patient handouts. The patient has verbalized a clear understanding of the condition. The patient was informed of spine-health.com in addition to other Internet based resources at their disposal. I took the time to answer the patient's questions to the best of my ability and think they have a good understanding of the benefits and relative risks of the interventional procedures presented, if any. I outlined the patient?s indications for interventional approaches and alternative therapies as well as the expected outcomes of each therapy. A copy of this note will be sent to the patients PCP and referring physician.

The critical nature of a good rehabilitative exercise program was emphasized with the patient. Certainly, this is always a primary objective to avoid more invasive treatments and/or surgery. In order to facilitate this, written instructions were provided as appropriate, as well as possible referral to therapy either formal or informal. In any event, the patient must continue a program on their own for core strengthening, flexibility, endurance, and mobility. This is critical for the recovery as well as for long-term wellness.

Please note that this dictation was completed with computer voice-recognition software. Quite often there are unanticipated grammatical, syntax, homophones, and other interpretive errors that are inadvertently transcribed by the computer software. Please excuse any errors that have escaped final proofreading.

M46.1   Sacroiliitis, not elsewhere classified
M79.1   Myalgia
M54.16   Radiculopathy, lumbar region

## Plan:

### Radiculopathy, lumbar region

25 minutes spent face-to-face with patient, over 50% of time spent in face-to-face discussion about the above assessment and plan.

## Diagnosis and Procedure Summary:

### Primary Diagnosis:
M46.1  Sacroiliitis, not elsewhere classified
M79.1  Myalgia
M54.16  Radiculopathy, lumbar region

 Orders:

CPT® is a registered trademark of the American Medical Association

**Lincoln/Mason 0493**

**From:**Jana M <
**Sent:**Wed, 23 Sep 2020 13:12:40 -0600
**To:**DisabilityDocuments
**Subject:**D-prd-1076499960.PDF.pdf
**Attachments:**D-prd-1076499960.PDF.pdf

***This email is from an external source. Only open links and attachments from a Trusted Sender.***

ATTN:  Mary Avrett. Claim # 9291624. Jan K Mason

****We did not move forward with spinal cord stimulator mentioned in notes because I was having an extensive hip reconstruction and both could not be completed at the same time.  Nerve conduct studies scheduled for 10/08/20.  After this, decisions will be made as to what direction (or which surgery I will be having done next).  Thank you

**Lincoln/Mason 0494**

**From:**Jana M <
**Sent:**Mon, 21 Sep 2020 14:19:45 -0600
**To:**DisabilityDocuments
**Subject:**Attn: Mary Avrett. Claim 9291624. From Jan K Mason

***This email is from an external source. Only open links and attachments from a Trusted Sender.***

Claim #9291624. Attn:  Mary Avrett

---------- Forwarded message ---------
From: **Jana M** <
Date: Mon, Sep 21, 2020, 2:01 PM
Subject:
To: <gaylekpieper@gmail.com>

Notes
Christopher M Kudron, MD at 9/4/2020 12:21 PM
Status: Signed
History:
Jan K Mason is a 48 year old female with PMH significant for SIJ fusion presents for chronic low back and leg pain

Onset: Fall many years ago and ultimately had SIJ pain and had SIJ fusion (9/2017). She had MVA 12/2017 with development of low back and bilateral leg pain
Timing/Course: Worsening
Location:  On a pain diagram, she identifies the central lumbosacral region, bilateral buttocks, and bilateral posterior legs.
Radicular: Yes
Quality:  Nerve pain, buzzing, severe
Pain/function rating: 6/10
Aggravating factors:  Sitting, standing, bending, stairs, any activity
Relieving factors:  Lying down
Associated symptoms: no loss of bowel or bladder control, no progressive loss of balance, no difficulty with fine motor movement, no worsening headaches, and no focal or progressive weakness.

She has a history of chronic low back pain which has been diagnosed to sacroiliac joint pain and ultimately treated with sacroiliac joint fusion.  After her SI joint fusion, she had a subsequent motor vehicle accident has had worsened pain since that time.  She has pain relatively symmetric affecting bilateral legs.  She describes a radiating pain pattern effecting the posterior and lateral aspect of leg.  She was previously cared outside of Kaiser.  She reports extensive interventional treatments including injections, radiofrequency ablation for her symptoms.  She has not had any sustained relief.  She had discussion regarding spinal cord stimulation and underwent a trial with improvement of her leg symptoms but not her back pain.

**Lincoln/Mason 0495**

She has also had extensive orthopedic workup for hip pain.

Prior treatments:
Tried:  Chiropractic, physical therapy, massage
Prior injections:  Numerous procedures outside Kaiser
Prior lumbar spine surgery: Right SIJ fusion 9/2017

Current relevant medications (see chart for full list): None
Medication list reviewed for medications that I prescribe and/or pertain to my field of medical practice.
Allergies: reviewed allergy section in the KP HealthConnect chart

Functional history:
Independent
Employment: not working
Disability: on disability
Litigation: none

Review of Systems: Negative for chest pain and shortness of breath. As noted in HPI, otherwise, review of systems was negative.

Past Medical, Social, Family History:
Past medical history: I have reviewed and confirmed the past medical history in the KP HealthConnect chart.
SH:  Patient is not a smoker. No other drug use. Consumes no alcohol. Sleep: 5 hrs/night
FH: No known family history of pathological spine diseases.

Physical Exam:
Visit Vitals
BP
132/83 (BP Location: RA-RIGHT ARM, Patient Position: SITTING, Cuff Size: Standard Adult)
Pulse
77
Temp
98.4 °F (36.9 °C) (Tympanic)
SpO2
96%
There is no height or weight on file to calculate BMI.
GEN: Well-developed/well-nourished, in no acute distress.
PSYCH: Alert and oriented, pleasant, with appropriate behavior and affect.
PULM: Comfortable respiratory pattern. SKIN: No lesions, erythema or ecchymosis in the areas examined.
NEURO:
Strength:
Right lower: HF 5/5, KE 5/5, ADF 5/5, EHL 5/5, APF 5/5
Left lower: HF 5/5, KE 5/5, ADF 5/5, EHL 5/5, APF 5/5

**Lincoln/Mason 0496**

-Normal bulk and tone.
Reflexes: WNL patellar, achilles. No ankle clonus.
Sensation: Grossly intact and symmetric to LT in bilateral LEs.

MSK:
Functional testing:
-Gait: Normal

Lumbar/Hip:
-Inspection: Normal posture
-Palpation: Positive tenderness throughout bilateral low lumbar and posterior buttock region.
-ROM: Lumbar motion normal.
-Special Tests:
Dural tension signs are negative.

Imaging Reviewed:
Imaging obtained outside Kaiser.  I a.m. unfortunately not able to personally review these images.  We will try alternate computer to download images for personal review.
Imaging reports reviewed.
MRI lumbar spine 7/31/20:  Straightening of normal lordosis.  Multilevel degenerative changes with reported disc herniations impinging anterior thecal sac.  L5-S1 annular tear.  Mild to moderate central canal narrowing at L2-3 reported.  No high-grade foraminal stenosis.
X-ray lumbar spine 7/11/18:  L3-4 retrolisthesis.
MRI pelvis SI joints 9/12/18:  Sacrum intact with uncomplicated right sacroiliac fusion.

No results found for: HGA1C

Assessment:
CHRONIC LOW BACK PAIN > 3 MONTHS  (primary encounter diagnosis)
LUMBAR SPONDYLOSIS
CHRONIC PAIN SYNDROME
MYOFASCIAL PAIN SYNDROME

Chronic low back pain, bilateral leg pain.  Lumbar spondylosis with degenerative disc changes.  She has chronic pain as well as myofascial pain symptoms.  Status post right sacroiliac joint fusion.  Differential for symptoms include nonspecific chronic low back pain, posterior pelvic girdle pain, sacroiliac joint pain, piriformis pain, myofascial pain for, radicular pain.

Orders Placed This Encounter
   XR LUMBAR SPINE COMPLETE (SURGERY VIEWS)
   REF EMG - NEUROSURGERY ONLY

Plan:

**Lincoln/Mason 0497**

1. Discussion: We reviewed her imaging together, discussed the likely cause of her symptoms and the range of treatment options including exercise and therapeutic modalities, medications, injections, and possible indications for surgery.
2.  Obtain lumbar spine x-ray to assess SI joint effusion and instability.
3.  We will attempt to down low her outside MRI images for personal review.  Five would like to personally measure the amount of central or foraminal stenosis reported on outside radiology report.
4.  Consider evaluation with Dr. Rubin for sacroiliac joint fusion questions.
5.  Range electrodiagnostic study of bilateral lower limbs to assess for any lumbar radiculopathy, focal neuropathy.

Follow up after EMG complete

Chris Kudron, MD
Board Certified Physical Medicine and Rehabilitation and Pain Medicine
Department of Neurosurgery

This record was prepared with the assistance of voice recognition technology.  If clarification or correction is needed for patient care, please contact this author.

**Lincoln/Mason 0498**



Lincoln Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7213
London, KY 40742-7213
Phone No.: (888) 437-7611
Secure Fax No.: (603) 430-1926

| | |
|---|---|
| Date: September 18, 2020 | |
| To: MICHAEL HUANG<br>4110 BRIAR GATE PARKWAY STE 30<br>COLORADO SPRING CO 80920 | |
| Attn: Dr. Huang | |
| Fax: (719) 632-0088 | |
| From: Mary Avrett<br>Appeals Consultant<br>Phone No.: Phone No.: (888) 437-7611<br>Secure Fax No.: (603) 430-1926 | |
| Total Pages<br>(Including Cover):    20 | |
| RE:<br><br>Claim #:    9291624<br>Claimant:   Jan Mason<br><br>Charter Communications, Inc. | |

This fax, and any attachments thereto, is intended only for the use of the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this fax, you are hereby notified that any dissemination, distribution or copying of this fax, and any attachments thereto, is strictly prohibited. If you have received this fax in error, please notify me by telephone at (888) 437-7611 and permanently shred the original and any copy of any fax and any printout thereof.

**Lincoln/Mason 0499**



Lincoln Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7213
London, KY 40742-7213
Phone No.: (888) 437-7611
Secure Fax No.: (603) 430-1926

September 18, 2020

Michael J. Huang
4110 BRIAR GATE PARKWAY STE 30
COLORADO SPRING, CO 80920

RE:    Long Term Disability (LTD) Benefits
       Charter Communications, Inc.
       Claim #: 9291624
       Claimant: Jan Mason
       Claimant D.O.B.:

Dear Michael Huang:

We are the Disability Claim Administrator for your patient, Jan Mason.

On September 14, 2020 a/an an Independent Medical Review was performed to assist us in determining Ms. Mason's eligibility for  Long Term Disability (LTD) benefits.  The results of this assessment demonstrate the following:

*Since 07/21/2020, the claimant had an MRI of the lumbar spine, which according to Roger Sung, MD was stable from the previous. The findings included degenerative disc disease, degenerative central spinal stenosis, and degenerative neuroforaminal stenosis. These were all mild to moderate in degree. There was no obvious impingement of exiting nerve roots. There was no visualized myelomalacia.*

*She had two subsequent medical visits, one with Michael Huang, MD, and one with Roger Sung, MD. She had been feeling worse in terms of her pain and symptomatology. However, there were no new physical examination findings. Her most significant and consistent physical examination findings include tenderness and decreased range of motion. She does not have any neurologic deficits. No new restrictions were given by either of the physicians.*

*Although the claimant has subjective complaints of pain and falls, there was a lack of functional deficits on physical examination to support the need for restrictions.*

Please review the enclosed report by September 14, 2020, and provide any comments you wish to have considered.  If you disagree with September 14, 2020's findings, please detail the specific areas with which you disagree and provide medical documentation to support your position.

We ask that you provide this information by October 3, 2020.  Failure to provide the requested

**Lincoln/Mason 0500**

information may result in an adverse benefit determination.  The information can be faxed to our office at our secure fax number (603) 430-1926 or mailed to the above address.

Although HIPAA does not apply to disability insurance carriers, we understand your responsibilities under HIPAA as a health care provider, and our associated responsibility of ensuring this information is protected against deliberate or inadvertent misuse or disclosure.

As the insurance carrier providing employer sponsored Long Term Disability (LTD) benefits coverage to your patient, we have enclosed a HIPAA compliant authorization signed by Ms. Mason allowing the release of information to our company.  This authorization specifically allows you to release medical information to us and is valid for two years from the date of Ms. Mason's signature.

If you have any questions regarding this matter, please contact me.

Sincerely,

Mary Avrett
Appeals Consultant
Phone No.: (888) 437-7611 Ext. 16371
Secure Fax No.: (603) 430-1926

Attachments:   9291624-EMPLOYEE/CLAIMANT-AUTHORIZATION-09.25.2019
9291624-MEDICAL-MEDICAL RECORDS-09.15.2020

**Lincoln/Mason 0501**

3L268190622



Liberty Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7207
London, KY 40742-7207
Phone No.: (844) 384-5858
Secure Fax No.: (603) 334-5994

## AUTHORIZATION FOR THE RELEASE OF INFORMATION INCLUDING PROTECTED HEALTH INFORMATION

**I HEREBY AUTHORIZE THE USE OR DISCLOSURE OF INFORMATION ABOUT ME AS DESCRIBED BELOW:**

**Person(s) or group(s) of persons authorized to use or disclose the information:** Any physicians, medical practitioners, hospitals, clinics, HMOs, long-term care facilities, medical or medically-related facilities, pharmacies, insurance companies, credit or consumer reporting agency, financial/educational institutions, current or former employer, governmental agency, MIB Inc., and any insurance support organizations.

**Person(s) or group(s) of persons authorized to collect or otherwise receive the information:** The particular Company in the Lincoln Financial Group of companies to which I am submitting a claim and its authorized representatives, agents and/or employees, the Plan Sponsor (if self-insured Plan) and other organizations providing claims management services.

**Description of the information that may be used or disclosed:** This Authorization specifically includes the release of all information related to:

* My physical and mental health and my insurance policies and claims, including, but not limited to, those containing diagnosis, treatments, prognosis, prescription drug information, alcohol or drug abuse or information regarding communicable or infectious conditions, including HIV/AIDS.
* Job duties, earnings, personnel records and other work related information and credit reports, bank records, and federal and state tax returns.
* Information concerning Social Security benefits, including any records pertaining to me and my dependents

**The information will be used or disclosed only for the following purpose(s):** For purposes of investigating, evaluating and processing my claim, and/or for insurance-related functions.

## STATEMENTS OF UNDERSTANDING & ACKNOWLEDGMENT:

**I understand** that information used or disclosed pursuant to this authorization could be subject to redisclosure as necessary by the recipient and, if so, may not be subject to federal or state law protecting its confidentiality.

**I understand** that I may revoke this authorization in writing at any time by sending a written revocation to the Company in the Lincoln Financial Group of companies to which I have submitted a claim, except to the extent that action has been taken in reliance on this authorization, or to the extent that other law provides the Company with the right to contest a claim. I also understand that the revocation of this authorization will not affect uses and disclosures of my health information for purposes of treatment, payment and health care operations.

**I understand** that authorizing the disclosure of my health information is voluntary and the provision of health care services to me is not conditioned on whether I sign this authorization. If I choose not to sign this authorization, insurance coverage or claim payments may be denied or delayed.

This authorization shall remain in force for 24 months from the date of signature, except to the extent applicable state law imposes or allows a different duration. The information obtained under this authorization will be retained in accordance with the Company's standard retention policy and applicable law. I understand that I may request a copy of this authorization.

Name of claimant (print) _____JAN K MASON_____

Name of legal representative, if applicable (print) _____—_____ Relationship _____—_____

Signature of claimant or legal representative _____Jan K Mason_____

Date of Birth: __ _____ Claim Number: __9291624__ Date: __09/14/19__

**A copy of this authorization will be considered as valid as the original.**

Lincoln/Mason 0502

3L268190622



Liberty Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7207
London, KY 40742-72097
Phone No.: (844) 384-5858
Secure Fax No.: (603) 334-5994

### AUTHORIZATION FOR THE RELEASE OF PROTECTED HEALTH INFORMATION

**I HEREBY AUTHORIZE THE USE OR DISCLOSURE OF HEALTH INFORMATION ABOUT ME AS DESCRIBED BELOW:**

**Person(s) or group(s) of persons authorized to use or disclose the information:** Any physicians, medical practitioners, hospitals, clinics, HMOs, long-term care facilities, medical or medically-related facilities, pharmacies, insurance companies, Plan Sponsor/ Administrator, governmental agency, MIB Inc., and any insurance support organizations.

**Person(s) or group(s) of persons authorized to collect or otherwise receive the information:** The particular Company in the Lincoln Financial Group of companies to which I am submitting a claim and its authorized representatives, agents and/or employees, the Plan Sponsor (if self-insured Plan) and other organizations providing claims management services.

**Description of the information that may be used or disclosed:** This Authorization specifically includes the release of all psychotherapy notes relating to me, without restriction, including psychotherapy notes recorded in any medium documenting or analyzing the contents of conversations during private counseling sessions and/or group, joint or family counseling sessions.

**The information will be used or disclosed only for the following purpose(s):** For purposes of investigating, evaluating and processing my claim, and/or for insurance-related functions.

### STATEMENTS OF UNDERSTANDING & ACKNOWLEDGMENT:

**I understand** that information used or disclosed pursuant to this authorization could be subject to redisclosure as necessary by the recipient and, if so, may not be subject to federal or state law protecting its confidentiality.

**I understand** that I may revoke this authorization in writing at any time by sending a written revocation to the Company in the Lincoln Financial Group of companies to which I have submitted a claim, except to the extent that action has been taken in reliance on this authorization, or to the extent that other law provides the Company with the right to contest a claim. I also understand that the revocation of this authorization will not affect uses and disclosures of my health information for purposes of treatment, payment and health care operations.

**I understand** that authorizing the disclosure of this health information is voluntary and the provision of health care services to me is not conditioned on whether I sign this authorization. If I choose not to sign this authorization, insurance coverage or claim payments may be denied or delayed.

**This authorization** shall remain in force for 24 months from the date of signature, except to the extent applicable state law imposes or allows a different duration. The information obtained under this authorization will be retained in accordance with the Company's standard retention policy and applicable law. I understand that I may request a copy of this authorization.

Name of claimant (print)    JAL K MASON

Name of legal representative, if applicable (print) _____    Relationship _____

Signature of claimant or legal representative    Jan K Mason

Date of Birth: ___    _____    Claim Number: __9291624__    Date: __08/14/19__

**A copy of this authorization will be considered as valid as the original**

Lincoln/Mason 0503

.................................................................................................................................................................................................................

**Daniel Fung, M.D.**
**Board Certified Physical Medicine & Rehabilitation**
**Board Certified Pain Medicine**

**CLAIMANT NAME:** Jan Mason
**ECN #:** 156002-1
**CLAIM #:** 9291624
**DATE OF LOSS:** 04/17/2019
**DATE OF REVIEW:** 09/14/2020
**CASE TYPE:** Long-Term Disability

**DIAGNOSIS:** Pain in right hip

**MEDICAL RECORDS REVIEWED:**
11/11/2015, Job Description, Charter Communications.
12/19/2017, State of Colorado Traffic Accident Report, Richard DuVall, Credentials Not
Provided.
07/11/2018, X-Ray Lumbar Spine, Jon Snider, MD.
09/12/2018, MRI Pelvis and Sacroiliac Joints, Joseph Ugorji, DO.
11/27/2018, CT Pelvis, Nicholas Moore, MD.
01/09/2019, Fluoroscopically Guided Injection of the Right Hip Imaging, Jacob Becker, MD.
01/09/2019, Fluoroscopically Guided Injection of the Left Hip Imaging, Jacob Becker, MD.
01/31/2019, Progress Note, Tyler Bron, MD.
02/11/2019, MRI Arthrogram Right Hip, Craig LaBuda, MD.
02/18/2019, Progress Note, Tyler Bron, MD.
03/07/2019, Progress Note, Michael Huang, MD.
04/17/2019, Operative Report, Michael Huang, MD, MD.
04/18/2019, Progress Note, Kristen Reiss, PA-C.
05/02/2019, Progress Note, Kristen Reiss, PA-C.
06/04/2019, Progress Note, Michael Huang, MD.
07/09/2019, Progress Note, Michael Huang, MD.
07/23/2019, Progress Note, Jeffrey Kent, MD.
07/29/2019, Progress Note, James Bee, MD.
08/06/2019, Progress Note, Jeffrey Kent, MD.
08/08/2019, MRI Lumbar Spine, Jacob Becker, MD.
08/19/2019, Progress Note, James Bee, MD.
08/21/2019, Progress Note, Roger Sung, MD.
08/28/2019, Progress Note, David Salek, MD.
09/03/2019, Long-Term Disability Claim Creation Request, Ethan Crockett, Credentials Not
Provided.
09/14/2019, Disability Questionnaires an Application for Benefits, Jan Mason.
09/17/2019, Physical Therapy Evaluation, Catherine Bottorff, PT, DPT.
10/03/2019, Nursing Memorandum, Cassandra K., RN.
10/04/2019, Disability Questionnaires an Application for Benefits, Jan Mason.
10/07/2019, Progress Note, Jeffrey Kent, MD.
10/11/2019, Progress Note, Kristen Reiss, PA-C.

1

**Lincoln/Mason 0504**

10/22/2019, MRI Right Hip Arthrogram, John Campbell, MD.
10/25/2019, Progress Note, Michael Huang, MD.
10/27/2019, Peer Review, Richard Avioli, MD.
11/20/2019, Progress Note, Roger Sung, MD.
12/09/2019, Operative Report, Michael Huang, MD.
12/10/2019, Progress Note, Michael Huang, MD.
12/13/2019, Physical Therapy Initial Examination, Taylor Mark Pfeifer, PT, DPT.
12/13/2019, Physical Therapy Plan of Care, Taylor Mark Pfeifer, PT, DPT.
12/13/2019, Physical Therapy Daily Note, Taylor Mark Pfeifer, PT, DPT.
12/17/2019, Physical Therapy Daily Note, Jennifer Mulligan, PT, DPT.
12/23/2019, Progress Note, Phillip Falender, PA-C.
12/24/2019, Physical Therapy Daily Note, Kerri Anne Tiller, PT, DPT.
12/27/2019, Physical Therapy Daily Note, Taylor Mark Pfeifer, PT, DPT.
12/30/2019, Physical Therapy Daily Note, Kerri Anne Tiller, PT, DPT.
12/30/2019, Progress Note, Jeffrey Kent, MD.
01/02/2020, Physical Therapy Note, Sandi Feeney, PT, DPT.
01/06/2020, Physical Therapy Daily Note, Kerri Anne Tiller, PT, DPT.
01/10/2020, Physical Therapy Daily Note, Kerri Anne Tiller, PT, DPT.
01/14/2020, Physical Therapy Daily Note, Jennifer Mulligan, PT, DPT.
01/17/2020, Physical Therapy Daily Note, Taylor Mark Pfeifer, PT, DPT.
01/20/2020, Physical Therapy Daily Note, Kerri Anne Tiller, PT, DPT.
01/21/2020, Progress Note, Kristen Reiss, PA-C.
01/23/2020, Physical Therapy Daily Note, Kerri Anne Tiller, PT, DPT.
01/27/2020, Physical Therapy Daily Note, Kerri Anne Tiller, PT, DPT.
01/29/2020, Physical Therapy Daily Note, Taylor Mark Pfeifer, PT, DPT.
01/30/2020, MRI Left Hip Arthrogram, Nicholas Moore, MD.
01/31/2020, Progress Note, Kelsey Chrane, PA-C.
02/04/2020, Physical Therapy Daily Note, That Jennifer Mulligan, PT, DPT.
02/06/2020, Progress Note, Michael Huang, MD.
02/11/2020, Physical Therapy Daily Note, Ellen Jackson, PT.
02/12/2020, Progress Note, David Salek, MD.
02/20/2020, Physical Therapy Progress Note, Scott Moser, PT, DPT.
02/20/2020, Physical Therapy Daily Note, Scott Moser, PT, DPT.
02/25/2020, Physical Therapy Daily Note, Marc Phillips, PT, DPT.
03/03/2020, Progress Note, Jeffrey Kent, MD.
03/05/2020, Physical Therapy Daily Note, Marc Phillips, PT, DPT.
03/12/2020, Progress Note, Michael Huang, MD.
03/12/2020, Physical Therapy Daily Note, Marc Phillips, PT, DPT.
03/17/2020, Physical Therapy Daily Note, Marc Phillips, PT, DPT.
04/02/2020, Physical Therapy Note, Marc Phillips, PT, DPT.
04/09/2020, Physical Therapy Daily Note, Marc Phillips, PT, DPT.
04/16/2020, Physical Therapy Daily Note, Marc Phillips, PT, DPT.
04/23/2020, Physical Therapy Daily Note, Marc Phillips, PT, DPT.
04/30/2020, Physical Therapy Daily Note, Marc Phillips, PT, DPT.
05/01/2020, Progress Note, Michael Huang, MD.
05/07/2020, Physical Therapy Daily Note, Marc Phillips, PT, DPT.

2

**Lincoln/Mason 0505**

05/13/2020, Progress Note, Roger Sung, MD.
05/21/2020, Physical Therapy Daily Note, Marc Phillips, PT, DPT.
05/22/2020, Progress Note, Jeffrey Kent, MD.
06/11/2020, Procedure Note, David Salek, MD.
06/18/2020, Physical Therapy Daily Note, Marc Phillips, PT, DPT.
06/23/2020, Disability Questionnaires an Application for Benefits, Jan Mason.
07/01/2020, Progress Note, Roger Sung, MD.
07/01/2020, Medical Questionnaire, Jeffrey Kent, MD.
07/01/2020, Progress Note, Jeffrey Kent, MD.
07/09/2020, Physical Therapy Initial Examination, Marc Phillips, PT, DPT.
07/16/2020, Letter Correspondences, David Monti, MD.
07/16/2020, Peer Review, David Monti, MD.
07/16/2020, Physical Therapy Daily Note, Marc Phillips, PT, DPT.
07/21/2020, Written Request for Review, Jan Mason.
07/23/2020, Letter Correspondence, David Salek, MD.
07/23/2020, Physical Therapy Daily Note, Marc Phillips, PT, DPT.
07/31/2020, MRI Lumbar Spine, José Pizarro, MD.
08/06/2020, Physical Therapy Daily Note, Marc Phillips, PT, DPT.
08/13/2020, Physical Therapy Recertification Note, Marc Phillips, PT, DPT.
08/13/2020, Physical Therapy Daily Note, Marc Phillips, PT, DPT.
08/17/2020, Progress Note, Michael Huang, MD.
08/19/2020, Progress Note, Roger Sung, MD.
08/20/2020, Physical Therapy Daily Note, Marc Phillips, PT, DPT.
08/31/2020, Letter Correspondence, Jeffrey Kent, MD.

**HISTORY:**

I have been asked to review the medical records on behalf of ECN regarding Jan Mason. The
claimant is a now 48-year-old female with a long-term disability claim from 04/17/2019. Her job
title was Representative 3, Customer Service Billing. This was a sedentary position. Her primary
diagnosis was pain in right hip.

On 12/18/2017, the claimant was involved in a motor vehicle accident. She was stopped in heavy
traffic in the right through lane when another driver failed to come to a complete stop and
collided with the rear passenger side bumper. She complained of hip and lower back pain.
Moderate to severe damage was sustained to the rear passenger side bumper and quarter panel of
the vehicle.

On 07/11/2018, the claimant had an x-ray the lumbosacral spine interpreted by Jon Snider, MD.
This showed L3-L4 retrolisthesis and multilevel spondylosis. There was a metallic fixation of the
sacroiliac joint.

On 09/12/2018, the claimant had an MRI of the pelvis and sacroiliac joints interpreted by Joseph
Ugorji, DO. The report provided was not completely legible.

3

**Lincoln/Mason 0506**

On 11/27/2018, the claimant had a CT of the pelvis. This was interpreted by Nicholas Moore, MD. This demonstrated a right sacroiliac joint internal fixation without evidence of a hardware failure. There was bilateral cam type femoroacetabular impingement.

On 01/09/2019, the claimant had a fluoroscopically guided joint injection of the right hip. Her pain went from 5-6/10 to 0/10 in severity after the procedure. This was performed by Tyler Bron, MD.

On 01/09/2019, the claimant had a fluoroscopically guided joint injection of the left hip. Her pain went from 4/10 to 0/10 in severity after the procedure. This was performed by Tyler Bron, MD.

On 01/31/2019, the claimant was evaluated by Tyler Bron, MD. She complained of bilateral hip pain. She was following up after bilateral corticosteroid injections in her hips. For the initial 4-6 hours after the injection she had complete relief of her hip pain. This was only temporary and overall had not noticed any significant improvement from the injection. Her pain was worsening in the right greater than the left. She was also complaining of back pain. On physical examination of the right hip and pelvis, range of motion was limited with flexion 100°, internal rotation 0°, external rotation 15°. Range of motion elicited groin pain. Her pain was most severe with internal rotation. Her quadricep and hamstring strength was 5/5. Plantar and dorsiflexion strength was 5/5. Her sensation was intact over the lower extremity. Physical examination of the left hip and pelvis demonstrated range of motion limited with flexion 100°, internal rotation 0°, external rotation 15°. Range of motion elicited groin pain. Her pain was most severe with internal rotation. Her strength and sensory examination were intact. Her diagnostic testing was reviewed. The diagnoses were pain in right hip and pain in the left hip. Her pain was likely due to osteoarthritis versus labral pathology. An MRI arthrogram of the right hip was ordered.
On 02/11/2019, the claimant had an MRI arthrogram of the right hip. This was interpreted by Craig LaBuda, MD. This demonstrated a right hip anterior superior labral tear. There was mild, superior hip joint space narrowing and small anterior lateral femoral head-neck-osseous bump. There was a right sacroiliac joint fusion.

On 02/18/2019, the claimant followed up with Tyler Bron, MD. Her hip was still very painful. On physical examination of the right hip and pelvis, range of motion was limited with flexion to 100°, internal rotation 0°, external rotation 15°. Range of motion elicited groin pain. Her pain was most severe with internal rotation. Her quadricep and hamstring strength was 5/5. Plantar and dorsiflexion strength was 5/5. Her sensation was intact over the lower extremity. Physical examination of the left hip and pelvis demonstrated range of motion limited with flexion to 100°, internal rotation 0°, external rotation 15°. Range of motion elicited groin pain. Her pain was most severe with internal rotation. Her strength and sensory examination were intact. The MRI arthrogram was reviewed showing an anterior superior labral tear with minimal joint space narrowing, as well as signs of femoral acetabular impingement. The diagnoses were pain in the left hip, and pain in the right hip. She was referred to another physician for possible arthroscopic labral repair.

On 03/07/2019, the claimant was seen by Michael Huang, MD. She reported right hip pain over the posterior buttock area for about two years. She was treated initially for sacroiliac joint pain in

4

**Lincoln/Mason 0507**

September 2017 with sacroiliac joint fusion. She had recovered extremely well with resolution of her symptoms until she was involved in a car accident where she was rear-ended in December 2017. She reported some groin pain but mostly felt her pain in the posterior buttock area. Her symptoms were worse with sitting, but now consistently bothering her with standing and walking. She denied numbness or tingling. She had tried rest, activity modification, anti-inflammatories including ibuprofen without benefit. She tried physical therapy without benefit. She tried chiropractic treatment and massage therapy with limited benefit. She underwent an intra-articular injection and she had four hours of complete pain resolution but did not get any benefit long-term. Her symptoms were sharp, dull, and aching and made worse with sitting and walking. She also had associated stiffness and weakness. On physical examination, her gait was antalgic. Right hip range of motion demonstrated flexion to 115°, external rotation to 55°, and internal rotation to 10°. The anterior impingement test was positive reproducing her posterior buttock pain and somewhat reproducing groin pain. There was tenderness to palpation of the posterior buttock. She had a negative straight leg raise and negative posterior impingement test. At the left hip, range of motion demonstrated flexion to 25°, external rotation to 65°, and internal rotation to 10°. Anterior and posterior impingement tests and straight leg raise were negative. There was no tenderness to palpation. Her diagnostics were reviewed. The diagnoses were pain in the right hip, and other articular cartilage disorders of the right hip. This was further discussed as right hip pain secondary to labral tear and femoral acetabular impingement. Surgical intervention was discussed and planned for.

On 04/17/2019, the claimant had a right hip labral repair, arthroscopic acetabuloplasty, femoroplasty, osteoplasty to remove cam lesion, chondroplasty, synovectomy, capsular plication performed by Michael Huang, MD.

On 04/18/2019, the claimant followed up with Kristen Reiss, PA-C. She was a one-day status post-surgery. Her pain was well-controlled. She was utilizing her post-operative hip braces and crutches. On physical examination, the right hip wounds had minimal drainage. There was mild swelling which was expected. There were no signs of infection. The diagnosis was one-day status post right hip surgery. She was given postoperative instructions and advised to follow-up in two weeks.

On 05/02/2019, the claimant followed up with Kristen Reiss, PA-C. She was two weeks status post hip surgery. Her pain was well-controlled. She was doing well with physical therapy. On physical examination, the surgical wounds were healed without signs of infection. Her sensation was intact. The diagnoses were pain in the right hip, and other articular cartilage disorders of the right hip. Her sutures were removed. She was given further instructions for routine postoperative management. She was given oxycodone.

On 06/04/2019, the claimant followed up with Michael Huang, MD. She was six weeks status post right hip surgery. She reported increasing hip pain worse than her preoperative pain. It began after she started to discontinue the crutches two weeks prior. She also presented with a new complaint of left hip pain. She states having had this since December 2017, with progressive worsening. Her left was feeling worse after bearing more weight after her surgery. The pain was in the groin and worsened with prolonged sitting, prolonged standing, and squatting. Rotational activities also increased pain. She had tried rest, activity modification and ibuprofen. She was

5

**Lincoln/Mason 0508**

attending physical therapy. On physical examination of the left hip, flexion was to 115°, external rotation to 65° and internal rotation to 10°. The anterior impingement test was positive. She had tenderness in the anterior groin.

The right hip surgical wounds were well healed without signs of infection. Range of motion of the right hip was flexion to 115°, external rotation to 50° and internal rotation to 5° with continued positive anterior impingement test. X-rays of the bilateral hips were ordered. There was well-preserved femoral acetabular joint spacing. At the left hip there was evidence of femoral, acetabular impingement cam type with alpha angle measuring 63°. The diagnoses were pain in the right hip, and other articular cartilage disorders of the right hip. She was advised to go back on crutches for about two weeks. She was given indomethacin for inflammation. In terms of the left hip, there was suspicion for underlying labral tear. They were considering MRI arthrogram of the left hip.

On 07/09/2019, the claimant followed up with Michael Huang, MD. She reported increasing right posterior buttock and lumbar spine pain. She had minimal anterior hip pain. Her hip pain was much better since her previous visit. She was doing physical therapy. She was concerned about her lumbar spine and felt her pain was radiating down her buttock to the posterior thigh and into her calf. At one point in her history, she was considering a spinal stimulator for low back pain. She described her pain as nerve pain and burning. She had occasional mild anterior groin pain with activity which she was tolerating well. On physical examination, the right hip surgical wounds were well healed. Range of motion included flexion to 110°, external rotation to 50°, internal rotation to 10° and abduction of 40°. She had minimal anterior pain with any of these tests. She had significant posterior hip pain over the sacroiliac joint and lumbar spine. Straight leg raise was negative for radicular symptoms but increased her posterior hip buttock and spine pain. She was directly tender over the superior aspect of the sacroiliac joint and the right lumbosacral junction. The diagnoses were pain in right hip and other articular alleged disorders of the right hip. She was advised to continue with physical therapy. She planned on following up with her spine surgeon for an opinion. She was continued on indomethacin.

On 07/23/2019, the claimant was evaluated by Jeffrey Kent, MD. She reported recent labral tear repair. She was having worsening pain since starting to bear weight. She reported pain in her lower back with burning pain into her right leg more than her left leg. She requested a parking pass, Xanax, and Ambien. No physical examination was provided. The diagnoses were osteoarthritis of the spine with radiculopathy, tear of the right acetabular labrum, femoral acetabular impingement of both hips, primary insomnia, and anxiety. She was advised to continue to follow with her specialists, and to continue gabapentin, Xanax, and Ambien.

On 07/29/2019, the claimant was evaluated by James Bee, MD. She complained of pain in her buttock and back. The pain was sharp, burning, and constant. It was made worse with activity such as sitting, standing, walking, and bending. It was made better by lying down. She had done physical therapy, which was stopped due to worsening symptoms. She was taking indomethacin. Her pain was 8/10. Her activities of daily living were limited secondary to her complaints. On physical examination of the lumbar spine, there was no tenderness. The flexion of the lumbar spine brought the fingertips 6 inches from the floor. Extension was approximately 15°. There was some pain at the extremes of flexion and extension. There was pain with palpation along the gluteal musculature right greater than left. There was no pain with axial compression of the head

6

**Lincoln/Mason 0509**

and no pain with trunk rotation through the hips. She had a slow reciprocating gait. She was able to walk on the toes and heels. She moved easily to the examination table without assistance. Her strength throughout the lower extremities was 5/5. Her sensation was intact bilaterally. There were no upper motor signs. Her reflexes were normal. Straight leg raise was negative bilaterally. X-rays of the lumbosacral spine demonstrated a right sacroiliac joint fusion device. There was a collapse of the disc space at L2-L3. There was subtle retrolisthesis of L3 on L4. On flexion and extension, there was no instability. Her previous MRI of the lumbar spine from 05/12/2018 was also reviewed showing degenerative changes. There was no stenosis. The diagnoses were spinal stenosis in the lumbar region with neurogenic claudication, spondylosis without myelopathy or radiculopathy lumbar region, other intervertebral disc degeneration lumbar region, other intervertebral disc degeneration lumbosacral region, and pain in the right hip. A new MRI was ordered.

On 08/06/2019, the claimant was seen by Jeffrey Kent, MD. She continued with back pain that was worse on the right and made worse with walking. Driving and bending also worsened her pain.  She was taking Ambien to facilitate sleep. She was scheduled to have her MRI the next day. She was taking indomethacin. She was requesting FMLA paperwork. She was out of work. On physical examination, she had tenderness over the sacroiliac joints worse on the right. She was referred to physiatry. The diagnosis was acute right-sided low back pain with sciatica. On 08/08/2019, the claimant had an MRI of the lumbar spine interpreted by Jacob Becker, MD. This demonstrated stability since the previous MRI from 05/12/2018. There was mild multilevel degenerative disc disease with bulges and protrusions without high-grade spinal canal or neural foraminal stenosis at any level.

On 08/19/2019, the claimant followed up with James Bee, MD. She had undergone a spinal cord stimulator trial. It had helped some of her complaints but not her mid-back problems. On physical examination, there were no significant abnormalities. Her MRI of the lumbar spine was reviewed showing degenerative changes without obvious stenosis. The diagnoses were spinal stenosis in the lumbar region with neurogenic claudication, spondylosis without myelopathy or radiculopathy lumbar region, other intervertebral disc degeneration lumbar region, other intervertebral disc degeneration lumbosacral region. She was referred back for possible permanent spinal cord stimulator.

On 08/21/2019, the claimant followed up with Roger Sung, MD. She was requesting to go ahead with a spinal cord stimulator. On physical examination, she had diffuse lumbar tenderness extending into the buttock which was not specific to the sacroiliac joint. The diagnoses were low back pain, chronic pain syndrome, and sciatica. A trial for a different spinal cord stimulator.

On 08/28/2019, the claimant was seen by David Salek, MD. Her history was summarized and consistent with previous accounts. She reported pain that was constant, sharp, and burning with radiation down her right leg into the top of her toe. Her buttock pain was more severe than the leg pain. On physical examination, she had full painless range of motion of all major muscle groups and joints. She had a positive Faber test and a positive Fortin finger test. She had positive lumbar quadrant testing. Her strength and sensation were normal. Her reflexes were normal. The diagnoses were status post right sacroiliac joint fusion, status post right hip labral tear repair, low

7

Lincoln/Mason 0510

back pain, right lower extremity radicular features, and positive spinal cord stimulator trial with Boston Scientific. A trial for Stimwave was requested.

On 10/07/2019, the claimant followed up with Jeffrey Kent, MD. She complained of chronic low back pain and sacroiliac joint pain. She was considering a spinal cord stimulator. She was requesting FMLA paperwork and a flu vaccine. On physical examination, she had pain and tenderness in the sacroiliac joint areas and the right inguinal region. She had a normal urinalysis. She had x-rays of the hips, which were normal. The diagnoses were chronic low back pain with sciatica. She was advised to continue with her current treatment plan. She was given a flu shot.

On 10/11/2019, the claimant was evaluated by Kristen Reiss, PA-C. She reported pain that was worse than it was prior to her surgery. She was being evaluated for possible spinal cord stimulator. The pain in the posterior buttock radiated down the posterior thigh into her calf and foot. She had a burning pain in the groin area and lateral hip pain. This seemed to increase about a month prior when she started increasing her walking. She was only walking about 2 miles a week. On physical examination, she had an antalgic gait. Her surgical wounds of the right hip were well healed. Right hip flexion was to 110°, external rotation to 50°, internal rotation to 10° and abduction to 40°. She had negative anterior and posterior impingement tests. Her straight leg raise was negative for radicular symptoms but would increase her posterior hip and buttock pain. She was tender over the superior aspect of the sacroiliac joint on the right and lumbosacral junction as well as over the anterior hip and laterally over the greater trochanter. X-rays were completed showing evidence of previous sacroiliac joint fusion in the right sacroiliac joint. The diagnoses were pain in right hip and other articular cartilage disorders of the right hip. An MRI of the right hip was ordered.

On 10/22/2019, the claimant had an MRI of the right hip with arthrogram. This was interpreted by John Campbell, MD. This demonstrated postoperative changes within the right hip. The anterior aspect of the superior labrum was diminutive and blunted. The superior aspect of the anterior labrum was diminutive and irregular. These were likely postoperative. There was no recurrent tear. There was focal intermediate signal nodularity along the acetabular articular surface adjacent to a suture anchor track at the 12 o'clock position. There was a thin linear signal along the anterior capsule just lateral to the superior aspect of the anterior labrum, which could be related to capsular plication. Mild chondral irregularity along the lateral acetabulum likely reflecting postoperative change.

On 10/25/2019, the claimant followed up with Michael Huang, MD. She was there to discuss her recent MRI. On physical examination, she had an antalgic gait. Her surgical wounds of the right hip were well healed. Right hip flexion was to 110°, external rotation to 50°, internal rotation to 10° and abduction to 40°. She had negative anterior and posterior impingement tests. Her straight leg raise was negative for radicular symptoms but would increase her posterior hip and buttock pain. She was tender over the superior aspect of the sacroiliac joint on the right and lumbosacral junction as well as over the anterior hip and laterally over the greater trochanter. Due to the MRI findings, it was felt that she should undergo surgery to repair the labral tissue. The diagnoses were pain in right hip and other articular cartilage disorders of the right hip.

8

**Lincoln/Mason 0511**

On 11/20/2019, the claimant followed up with Roger Sung, MD. She was scheduled for a right hip labrum repair for 12/09/2019. The authorization for the stimulator trial was still pending. On physical examination, she was diffusely tender across her buttocks and lower back. Thoracic and lumbosacral x-rays showing multiple levels of lumbar degeneration.
The diagnoses were pain in the thoracic spine, low back pain, other intervertebral disc degeneration lumbar region, and sciatica. It was recommended that she try the Boston Scientific spinal cord stimulator since her insurance was denying the Stimwave.

On 12/09/2019, the claimant underwent a right hip labral reconstruction, chondroplasty, acetabuloplasty, femoroplasty, osteoplasty to remove cam lesion, synovectomy, capsular closure/plication by Michael Huang, MD.

On 12/10/2019, the claimant followed up with Michael Huang, MD. She was one-day status post right hip labral reconstruction surgery. Her pain was well-controlled. She was utilizing the postoperative crutches and braces. On physical examination, the wounds were intact with minimal drainage. There was mild swelling. The diagnosis was other articular cartilage disorders of the right hip. Physical therapy was initiated.

On 12/23/2019, the claimant followed up with Phillip Falender, PA-C. She was at two weeks status post right hip labral reconstruction surgery. She was progressing well with physical therapy. On physical examination, there were no signs of infection. Hip flexion was to 90°. The Steri-Strips were removed without difficulty. The diagnosis was other articular cartilage disorders of the right hip. She was given further instruction for increasing weight-bearing and advised to continue physical therapy.

On 12/30/2019, the claimant followed up with Jeffrey Kent, MD. She had her right labral repair. She felt worse. Her pain was increased with therapy. She was still considering a spinal stimulator. She had issues with her other hip. She resigned from her cable job. On physical examination, she was tearful at times and in a brace for her right hip. Diagnoses were chronic low back pain with sciatica, sacroiliac joint pain, and tear of the right acetabular labrum. She was advised to continue her current treatment plan.

On 01/21/2020, the claimant was evaluated by Kristen Reiss, PA-C. She was six weeks status post right hip labral reconstruction. She reported her hip pain was improving. Her lower back pain, pain over the sacroiliac joint and radicular symptoms had worsened. She was also following up for her left hip pain. Physical therapy was not helpful for the left hip. On physical examination, right hip flexion was to 100°, external rotation to 40°, and internal rotation to 5°. There was tenderness over the lateral right hip and right sacroiliac joint. The left hip range of motion included flexion to 110°, external rotation to 50°, internal rotation to 5°. She had a positive anterior impingement test. The straight leg raise produced low back pain. There was tenderness over the anterior hip and laterally over the greater trochanter. X-rays were again performed of the right hip. There were no obvious abnormalities other than the previous sacroiliac joint fusion. The diagnoses were other articular cartilage disorders of the right hip, lumbar region radiculopathy, and pain in the left hip. She was advised to continue physical therapy for the right hip. She was advised to follow-up with Roger Sung, MD regarding worsening low back and sacroiliac joint pain. An MR arthrogram of the left hip was ordered.

9

**Lincoln/Mason 0512**

On 01/30/2020, the claimant had an MRI left hip with arthrogram interpreted by Nicholas Moore, MD.
This demonstrated a focal cam deformity of the anterior left femoral head neck junction with associated anterior/anterior superior labral based tear. There was a small right hip joint effusion.

On 01/31/2020, the claimant followed up with Kelsey Chrane, PA-C. Her right hip pain has significantly improved. She continued to have lower back pain interfering with her participation in physical therapy. She had imaging of her left hip. She was still anticipating a spinal cord stimulator placement. On physical examination, there was tenderness along the spinous processes and paraspinal musculature and diffusely throughout the lower back including over the right sacroiliac joint. Motor strength of the lower extremities was intact. There was pain with range of motion, primarily extension. The diagnoses were low back pain, lumbar region spinal stenosis with neurogenic claudication, other intervertebral disc degeneration of the lumbar region, intervertebral disc disorders with radiculopathy lumbar region, sacroiliitis, pain in the right hip, and pain in the left hip. She was advised to call when she was ready to proceed with the spinal cord stimulator.

On 02/06/2020, the claimant followed up with Michael Huang, MD. She was eight weeks status post-surgery. She was now using a cane. She reported achiness of the anterior hip. She had an MR arthrogram of the left hip and had returned to discuss the findings. On physical examination, hip flexion on the right was to 105°, external rotation 40°, internal rotation 5°. There was tenderness of the right lateral hip and over the sacroiliac joint. The left hip range of motion had flexion 115°, external rotation to 55°, internal rotation to 5°. There was a positive anterior impingement test. Straight leg raise caused low back pain. There was tenderness over the anterior hip and laterally over the greater trochanter. The diagnoses were other articular cartilage disorders right hip, other articular cartilage disorders left hip, and pain in the left hip. They discussed options for managing her left hip. It was decided she would continue focusing on her right hip rehabilitation program and manage her left hip pain with anti-inflammatories.

On 02/12/2020, the claimant followed up with David Salek, MD. She was referred back for pain management. She did not want opiates and was looking for alternative care. She inquired about the use of CBD. On physical examination, she had full painless range of motion of all major muscle groups and joints. She had a positive Faber test and a positive Fortin finger test. She had positive lumbar quadrant testing. The diagnoses were status post right sacroiliac joint fusion, status post right hip labral repair, low back pain, right lower extremity radicular features, and positive spinal cord stimulator trial with Boston Scientific. She was prescribed Celebrex and Tylenol.

On 03/12/2020, the claimant followed up with Michael Huang, MD. She was 12 weeks status post right hip labral reconstruction. The right hip was doing well. Her biggest issue was tremendous pain over the right greater than left sacroiliac joint and lumbar spine. She had been in physical therapy but was having difficulty weight-bearing and was using crutches. The left hip also continued to be painful, unchanged since her last visit. On physical examination, hip flexion on the right was to 110°, external rotation 45°, internal rotation 5°. There was tenderness of the right lateral hip and over the sacroiliac joint. The left hip range of motion had flexion 120°,

10

**Lincoln/Mason 0513**

external rotation to 55°, internal rotation to 5°. There was a positive anterior impingement test. Straight leg raise caused low back pain. There was tenderness over the anterior hip and laterally over the greater trochanter.
The diagnoses were other articular cartilage disorders right hip, other articular cartilage disorders left hip, and pain in the left hip. The claimant decided to return to Roger Sung, MD to discuss any further options regarding her sacroiliac joints.

On 03/03/2020, the claimant followed up with Jeffrey Kent, MD. She continued to have worsening pain in the lower back along the sacroiliac joints. She was considering a consultation with Mayo Clinic. On physical examination, she had pain with range of motion of the hip and pain in the lower back and sacroiliac joints. The diagnoses were sacroiliac joint pain, chronic midline low back pain with sciatica, and tear of the right acetabular labrum. She was advised to continue to follow with her specialists.

On 05/01/2020, the claimant followed up with Michael Huang, MD. She had been working at physical therapy on the sacroiliac joints, which had been worsening her pain. The pain was radiating laterally and anteriorly towards the hip. She continued to have significant posterior pain. She had not yet returned to Roger Sung, MD, due to the coronavirus. She was working on walking around the block. She continued to have difficulty going up and down stairs and lying supine. Her pain was 8-9/10. On physical examination, hip flexion on the right was to 115°, external rotation 45°, internal rotation 5°. There was tenderness of the right lateral hip and over the sacroiliac joint. The left lower extremity was normal with unremarkable range of motion. The diagnoses were other articular cartilage disorders right hip, and right sacroiliitis. She was advised to return to Roger Sung, MD for further evaluation and treatment of the sacroiliac joints, and to continue physical therapy.

On 05/13/2020, the claimant followed up with Roger Sung, MD. She complained of bilateral sacroiliac joint pain. On physical examination, she had tenderness over both sacroiliac joints. The diagnoses were sacroiliitis, chronic pain syndrome, and sciatica. They were going to proceed with a lidocaine-only injection in the left sacroiliac joint. She was advised to continue considering a spinal cord stimulator.

On 05/22/2020, the claimant had a follow-up with Jeffrey Kent, MD. She was doing physical therapy. She reported having a vaginal yeast infection. Her physical examination was done via video conference and was normal. The diagnoses were osteoarthritis of the spine with radiculopathy in the lumbar region, tear of the right acetabular labrum, sacroiliac joint pain, and acute vaginitis. She was given Diflucan and advised to continue following with her specialists.

On 06/11/2020, the claimant underwent a sacroiliac joint injection on the left for the diagnosis of sacroiliitis. This was performed by David Salek, MD.

On 07/01/2020, the claimant followed up with Roger Sung, MD. She had the left sacroiliac joint injection and was pain free for about two hours. On physical examination, she continued to have tenderness along bilateral sacroiliac joints. The diagnoses were other intervertebral disc degeneration lumbar region, low back pain, and sacroiliitis. She was referred back to physical therapy because her treatment was interrupted by Covid-19.

11

**Lincoln/Mason 0514**

On 07/01/2020, the claimant followed up with Jeffrey Kent, MD. She discussed the left-sided diagnostic sacroiliac joint injection.
They discussed needing rehab on the right sacroiliac joint and a possibility of fusing the left sacroiliac joint. She was considering a labral reconstruction on the left hip and a spinal cord stimulator. She continued having the right sacroiliac joint pain. She was applying to Social Security and had been denied. She requested a cyclobenzaprine refill. On physical examination, she had abnormal lower back and sacroiliac joints. The diagnoses were osteoarthritis of the spine with radiculopathy in the lumbar region, sacroiliac joint pain, and femoral acetabular impingement of both hips. Her cyclobenzaprine was refilled. She was advised to continue her current treatment plan with her specialists.

MRI of the lumbar spine from 07/31/2020 interpreted by José Pizarro, MD, demonstrated straightening of the normal lumbar lordosis. There was kyphosis L2-L3. At L1-L2, there was a central disc herniation impinging on the thecal sac causing mild spinal stenosis. At L2-L3, there was a broad central disc herniation causing mild to moderate spinal stenosis. At L3-L4, there was disc desiccation and right proximal neural foraminal disc herniation which were focal. There was mild right neural foraminal stenosis. At L5-S1, there was a central disc herniation with annular tearing, elevating the posterior longitudinal ligament causing mild spinal stenosis.

On 08/17/2020, the claimant followed up with Michael Huang, MD. She reported continued worsening pain. The pain was located over bilateral sacroiliac joint and lumbar spine. Since her last visit she had a diagnostic injection in the left sacroiliac joint, which gave her two hours a complete relief of pain. She has continued physical therapy without improvement. She continued to have bilateral lower extremity symptoms including pain, numbness, and tingling down to both feet. She had an MRI of the lumbar spine. She denied significant groin pain. She had an episode where the right lower extremity gave way resulting in a fall causing temporary numbness in her vaginal area. She rated her pain 8-9/10. She continued to use crutches for weight-bearing. On physical examination, her gait was antalgic. Hip flexion on the right was to 115°, external rotation 45°, internal rotation 5°. There was tenderness of the right lateral hip and over the sacroiliac joint bilaterally, and lumbar spine. There were no impingement testing signs at the hip with passive range of motion. The left lower extremity was normal with unremarkable range of motion. Her most recent MRI of the lumbar spine from 07/31/2020 was reviewed. The diagnoses were other articular cartilage disorders right hip, and right sacroiliitis. She was advised to continue following with Roger Sung, MD.

On 08/19/2020, the claimant followed up with Roger Sung, MD. She felt worse with physical therapy. Her pain was in the back, both sacroiliac joint and now radiating down her legs. She had a new MRI ordered by her physical therapist. Her physical examination was normal. Her MRI was reviewed and without significant changes from her previous MRI. The diagnoses were low back pain, other intervertebral disc degeneration lumbar region, sacroiliitis, chronic pain syndrome, and sciatica. She was advised to have a new spinal cord stimulator trial due to changes in her pain pattern.

**Lincoln/Mason 0515**

**RESPONSE TO QUESTIONS:**

**1. What diagnoses are supported by the medical evidence?**

The medical evidence provided supports the diagnoses of femoroacetabular impingement bilaterally, right hip labral tear, lumbar degenerative disc disease, lumbar spondylosis, and bilateral sacroiliitis.

**2. Taking into consideration the entire clinical picture, including standards of care and evidence-based medicine, and any medication or other treatment side effects, please describe if there are any supported level of impairments which translates into restrictions and limitations from 7/21/2020 to the present? Please explain your medical rationale as to why or why not and provide a detailed explanation.**

Since 07/21/2020, the claimant had an MRI of the lumbar spine, which according to Roger Sung, MD was stable from the previous. The findings included degenerative disc disease, degenerative central spinal stenosis, and degenerative neuroforaminal stenosis. These were all mild to moderate in degree. There was no obvious impingement of exiting nerve roots. There was no visualized myelomalacia.

She had two subsequent medical visits, one with Michael Huang, MD, and one with Roger Sung, MD. She had been feeling worse in terms of her pain and symptomatology. However, there were no new physical examination findings. Her most significant and consistent physical examination findings include tenderness and decreased range of motion. She does not have any neurologic deficits. No new restrictions were given by either of the physicians.

Although the claimant has subjective complaints of pain and falls, there was a lack of functional deficits on physical examination to support the need for restrictions.

**3. If functional impairment is supported, please describe how that translates into restrictions or limitations and for what period(s) of time. Please define in terms of frequency (never, occasional, frequent, constant) and task (sit, stand, lift/carry, type etc.). Please explain your medical rationale for any restrictions or limitations or why restrictions and limitations are not supported.**

Functional impairment is not supported by the documentation from 07/21/2020 to present.

**4. Does the medical documentation support that any medical condition alone, or in combination would preclude the claimant from sustained occupational functioning on a full-time basis? Please explain why or why not.**

Based on the provided medical documentation since 07/21/2020, there is no evidence that would preclude the claimant from sustained occupational functioning on a full-time basis.

**5. When contacting the treating provider please discuss the claimant's condition, treatment, and functional capacity. Please indicate the information reviewed and indicate**

13

**Lincoln/Mason 0516**

**whether or not you reach consensus with the treating provider. If not, please discuss your final assessment after the call.**

**AP CONTACT:**

I called the number listed (719-632-7669) on 9/4/20 at 11:08am CST and left a message for a return call on Kirsten's general office voicemail.

I called the number listed (719-632-7669) on 9/10/20 at 11:10am CST and left a message for a return call on Kirsten's general office voicemail.

I called the number listed (719-278-3627) on 9/4/20 at 11:47am CST and spoke with Jennifer and left a message for a return call.

My staff received a return call from Dr. Kent on 9/9/20 at 4:10pm CST and I was unable to take the call. A message was left for a return call to an alternate number (719-799-0784).

I called the alternate number (719-799-0784) on 9/10/20 at 11:15am CST and left a message for a return call on Dr. Kent's general voicemail.

At the time of submission, no return calls have been received.

**Daniel Fung, M.D.**
**Board Certified Physical Medicine & Rehabilitation**
**Board Certified Pain Medicine**
**License: A107358 CA**

14

**Lincoln/Mason 0517**



**Corporate Office**

Claimant Name: Jan Mason
Claim Number: 9291624
Case Number: 156002-1

"I, Daniel Fung, MD, am a physician duly licensed to practice medicine in the State of ___CA___. I am an independent contractor and I am paid to review claim files and render medical opinions. I am not responsible for deciding whether a claimant is entitled to insurance benefits. My role is to provide objective medical opinions to Genex Services, LLC.

I hereby attest that the following statements are true:

- I have the scope of licensure or certification that typically manages the medical condition, procedure, treatment or issue under review
- I have current, relevant knowledge to render an opinion for the case under review
- No financial incentive was received based on the outcome of the opinion
- No delegation of the examination rendered

I attest that no conflict of interest exists, this includes any situation where an individual has a material, professional, familial, or financial conflict of interest regarding any of the following:

- Compensation for IME/Peer Review activities that are dependent in any way on the specific outcome of the case
- Have involvement with the case prior to its referral for review
- The referring entity
- The health benefit plan
- The consumer
- The attending provider or any other advisor previously involved in the case
- The facility at which the recommended healthcare service(s) would be provided
- The developer or manufacturer of the principal drug, device, procedure, or other therapy being recommended for the customer

I declare that the information contained in the above-referenced report was prepared by and is the work product of the undersigned and is true to the best of my knowledge and information. I certify that my medical/professional license is current and is in good standing in the jurisdiction in which my practice is located.

_____    9.14.2020
Signature of Physician                               Date

Medical/Professional License # ___A107358 CA___

**Lincoln/Mason 0518**



Lincoln Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7213
London, KY 40742-7213
Phone No.: (888) 437-7611
Secure Fax No.: (603) 430-1926

| | |
|---|---|
| Date: | September 18, 2020 |
| To: | DR JEFFREY KENT<br>9480 BRIAR VILLAGE POINT STE 2<br>COLORADO SPRINGS CO 80920 |
| Attn: | Dr. Kent |
| Fax: | (719) 623-2101 |
| From: | Mary Avrett<br>Appeals Consultant<br>Phone No.: Phone No.: (888) 437-7611<br>Secure Fax No.: (603) 430-1926 |
| Total Pages<br>(Including Cover): | 20 |
| RE:<br><br>Claim #:    9291624<br>Claimant:   Jan Mason<br><br>Charter Communications, Inc. | |

This fax, and any attachments thereto, is intended only for the use of the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this fax, you are hereby notified that any dissemination, distribution or copying of this fax, and any attachments thereto, is strictly prohibited. If you have received this fax in error, please notify me by telephone at (888) 437-7611 and permanently shred the original and any copy of any fax and any printout thereof.

**Lincoln/Mason 0519**



Lincoln Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7213
London, KY 40742-7213
Phone No.: (888) 437-7611
Secure Fax No.: (603) 430-1926

September 18, 2020

Dr. Jeffrey Kent
9480 BRIAR VILLAGE POINT STE 2
COLORADO SPRINGS, CO 80920

RE:    Long Term Disability (LTD) Benefits
       Charter Communications, Inc.
       Claim #: 9291624
       Claimant: Jan Mason
       Claimant D.O.B.:

Dear Dr. Jeffrey Kent:

We are the Disability Claim Administrator for your patient, Jan Mason.

On September 14, 2020 a/an Independent Medical Review was performed to assist us in determining Ms. Mason's eligibility for  Long Term Disability (LTD) benefits.  The results of this assessment demonstrate the following:

*Since 07/21/2020, the claimant had an MRI of the lumbar spine, which according to Roger Sung, MD was stable from the previous. The findings included degenerative disc disease, degenerative central spinal stenosis, and degenerative neuroforaminal stenosis. These were all mild to moderate in degree. There was no obvious impingement of exiting nerve roots. There was no visualized myelomalacia.*

*She had two subsequent medical visits, one with Michael Huang, MD, and one with Roger Sung, MD. She had been feeling worse in terms of her pain and symptomatology. However, there were no new physical examination findings. Her most significant and consistent physical examination findings include tenderness and decreased range of motion. She does not have any neurologic deficits. No new restrictions were given by either of the physicians.*

*Although the claimant has subjective complaints of pain and falls, there was a lack of functional deficits on physical examination to support the need for restrictions.*

Please review the enclosed report by September 14, 2020, and provide any comments you wish to have considered.  If you disagree with September 14, 2020's findings, please detail the specific areas with which you disagree and provide medical documentation to support your position.

We ask that you provide this information by October 3, 2020.  Failure to provide the requested

1  of  2

**Lincoln/Mason 0520**

information may result in an adverse benefit determination.  The information can be faxed to our office at our secure fax number (603) 430-1926 or mailed to the above address.

Although HIPAA does not apply to disability insurance carriers, we understand your responsibilities under HIPAA as a health care provider, and our associated responsibility of ensuring this information is protected against deliberate or inadvertent misuse or disclosure.

As the insurance carrier providing employer sponsored Long Term Disability (LTD) benefits coverage to your patient, we have enclosed a HIPAA compliant authorization signed by Ms. Mason allowing the release of information to our company.  This authorization specifically allows you to release medical information to us and is valid for two years from the date of Ms. Mason's signature.

If you have any questions regarding this matter, please contact me.

Sincerely,

Mary Avrett
Appeals Consultant
Phone No.: (888) 437-7611 Ext. 16371
Secure Fax No.: (603) 430-1926

Attachments:    9291624-EMPLOYEE/CLAIMANT-AUTHORIZATION-09.25.2019
9291624-MEDICAL-MEDICAL RECORDS-09.15.2020

2  of 2

**Lincoln/Mason 0521**

3L268190622



Liberty Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7207
London, KY 40742-7207
Phone No.: (844) 384-5858
Secure Fax No.: (603) 334-5994

### AUTHORIZATION FOR THE RELEASE OF INFORMATION INCLUDING PROTECTED HEALTH INFORMATION

**I HEREBY AUTHORIZE THE USE OR DISCLOSURE OF INFORMATION ABOUT ME AS DESCRIBED BELOW:**
**Person(s) or group(s) of persons authorized to use or disclose the information:** Any physicians, medical practitioners, hospitals, clinics, HMOs, long-term care facilities, medical or medically-related facilities, pharmacies, insurance companies, credit or consumer reporting agency, financial/educational institutions, current or former employer, governmental agency, MIB Inc., and any insurance support organizations.
**Person(s) or group(s) of persons authorized to collect or otherwise receive the information:** The particular Company in the Lincoln Financial Group of companies to which I am submitting a claim and its authorized representatives, agents and/or employees, the Plan Sponsor (if self-insured Plan) and other organizations providing claims management services.
**Description of the information that may be used or disclosed:** This Authorization specifically includes the release of all information related to:
    * My physical and mental health and my insurance policies and claims, including, but not limited to, those containing diagnosis, treatments, prognosis, prescription drug information, alcohol or drug abuse or information regarding communicable or infectious conditions, including HIV/AIDS.
    * Job duties, earnings, personnel records and other work related information and credit reports, bank records, and federal and state tax returns.
    * Information concerning Social Security benefits, including any records pertaining to me and my dependents
**The information will be used or disclosed only for the following purpose(s):** For purposes of investigating, evaluating and processing my claim, and/or for insurance-related functions.

### STATEMENTS OF UNDERSTANDING & ACKNOWLEDGMENT:

**I understand** that information used or disclosed pursuant to this authorization could be subject to redisclosure as necessary by the recipient and, if so, may not be subject to federal or state law protecting its confidentiality.
**I understand** that I may revoke this authorization in writing at any time by sending a written revocation to the Company in the Lincoln Financial Group of companies to which I have submitted a claim, except to the extent that action has been taken in reliance on this authorization, or to the extent that other law provides the Company with the right to contest a claim. I also understand that the revocation of this authorization will not affect uses and disclosures of my health information for purposes of treatment, payment and health care operations.
**I understand** that authorizing the disclosure of my health information is voluntary and the provision of health care services to me is not conditioned on whether I sign this authorization. If I choose not to sign this authorization, insurance coverage or claim payments may be denied or delayed.
This authorization shall remain in force for 24 months from the date of signature, except to the extent applicable state law imposes or allows a different duration. The information obtained under this authorization will be retained in accordance with the Company's standard retention policy and applicable law. I understand that I may request a copy of this authorization.

Name of claimant (print) _____ JAN K MASON _____

Name of legal representative, if applicable (print) _____ Relationship _____

Signature of claimant or legal representative _____ Jan K Mason _____

Date of Birth: __ _____ Claim Number: __9291624__ Date: __09/14/19__

**A copy of this authorization will be considered as valid as the original.**

**Lincoln/Mason 0522**

3L268190622



Liberty Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7207
London, KY 40742-7207
Phone No.: (844) 384-5858
Secure Fax No.: (603) 334-5994

### AUTHORIZATION FOR THE RELEASE OF PROTECTED HEALTH INFORMATION

**I HEREBY AUTHORIZE THE USE OR DISCLOSURE OF HEALTH INFORMATION ABOUT ME AS DESCRIBED BELOW:**

**Person(s) or group(s) of persons authorized to use or disclose the information:** Any physicians, medical practitioners, hospitals, clinics, HMOs, long-term care facilities, medical or medically-related facilities, pharmacies, insurance companies, Plan Sponsor/ Administrator, governmental agency, MIB Inc., and any insurance support organizations.

**Person(s) or group(s) of persons authorized to collect or otherwise receive the information:** The particular Company in the Lincoln Financial Group of companies to which I am submitting a claim and its authorized representatives, agents and/or employees, the Plan Sponsor (if self-insured Plan) and other organizations providing claims management services.

**Description of the information that may be used or disclosed:** This Authorization specifically includes the release of all psychotherapy notes relating to me, without restriction, including psychotherapy notes recorded in any medium documenting or analyzing the contents of conversations during private counseling sessions and/or group, joint or family counseling sessions.

**The information will be used or disclosed only for the following purpose(s):** For purposes of investigating, evaluating and processing my claim, and/or for insurance-related functions.

### STATEMENTS OF UNDERSTANDING & ACKNOWLEDGMENT:

**I understand** that information used or disclosed pursuant to this authorization could be subject to redisclosure as necessary by the recipient and, if so, may not be subject to federal or state law protecting its confidentiality.

**I understand** that I may revoke this authorization in writing at any time by sending a written revocation to the Company in the Lincoln Financial Group of companies to which I have submitted a claim, except to the extent that action has been taken in reliance on this authorization, or to the extent that other law provides the Company with the right to contest a claim. I also understand that the revocation of this authorization will not affect uses and disclosures of my health information for purposes of treatment, payment and health care operations.

**I understand** that authorizing the disclosure of this health information is voluntary and the provision of health care services to me is not conditioned on whether I sign this authorization. If I choose not to sign this authorization, insurance coverage or claim payments may be denied or delayed.

**This authorization** shall remain in force for 24 months from the date of signature, except to the extent applicable state law imposes or allows a different duration. The information obtained under this authorization will be retained in accordance with the Company's standard retention policy and applicable law. I understand that I may request a copy of this authorization.

Name of claimant (print)  ___JAN K MASON___

Name of legal representative, if applicable (print) _____  Relationship _____

Signature of claimant or legal representative  ___Jan K Mason___

Date of Birth: _____  Claim Number: __9291624__  Date: __08/14/19__

**A copy of this authorization will be considered as valid as the original**

**Lincoln/Mason 0523**

........................................................................................................................................................................................................

## Daniel Fung, M.D.
## Board Certified Physical Medicine & Rehabilitation
## Board Certified Pain Medicine

**CLAIMANT NAME:** Jan Mason
**ECN #:** 156002-1
**CLAIM #:** 9291624
**DATE OF LOSS:** 04/17/2019
**DATE OF REVIEW:** 09/14/2020
**CASE TYPE:** Long-Term Disability

**DIAGNOSIS:** Pain in right hip

**MEDICAL RECORDS REVIEWED:**
11/11/2015, Job Description, Charter Communications.
12/19/2017, State of Colorado Traffic Accident Report, Richard DuVall, Credentials Not Provided.
07/11/2018, X-Ray Lumbar Spine, Jon Snider, MD.
09/12/2018, MRI Pelvis and Sacroiliac Joints, Joseph Ugorji, DO.
11/27/2018, CT Pelvis, Nicholas Moore, MD.
01/09/2019, Fluoroscopically Guided Injection of the Right Hip Imaging, Jacob Becker, MD.
01/09/2019, Fluoroscopically Guided Injection of the Left Hip Imaging, Jacob Becker, MD.
01/31/2019, Progress Note, Tyler Bron, MD.
02/11/2019, MRI Arthrogram Right Hip, Craig LaBuda, MD.
02/18/2019, Progress Note, Tyler Bron, MD.
03/07/2019, Progress Note, Michael Huang, MD.
04/17/2019, Operative Report, Michael Huang, MD, MD.
04/18/2019, Progress Note, Kristen Reiss, PA-C.
05/02/2019, Progress Note, Kristen Reiss, PA-C.
06/04/2019, Progress Note, Michael Huang, MD.
07/09/2019, Progress Note, Michael Huang, MD.
07/23/2019, Progress Note, Jeffrey Kent, MD.
07/29/2019, Progress Note, James Bee, MD.
08/06/2019, Progress Note, Jeffrey Kent, MD.
08/08/2019, MRI Lumbar Spine, Jacob Becker, MD.
08/19/2019, Progress Note, James Bee, MD.
08/21/2019, Progress Note, Roger Sung, MD.
08/28/2019, Progress Note, David Salek, MD.
09/03/2019, Long-Term Disability Claim Creation Request, Ethan Crockett, Credentials Not Provided.
09/14/2019, Disability Questionnaires an Application for Benefits, Jan Mason.
09/17/2019, Physical Therapy Evaluation, Catherine Bottorff, PT, DPT.
10/03/2019, Nursing Memorandum, Cassandra K., RN.
10/04/2019, Disability Questionnaires an Application for Benefits, Jan Mason.
10/07/2019, Progress Note, Jeffrey Kent, MD.
10/11/2019, Progress Note, Kristen Reiss, PA-C.

1

**Lincoln/Mason 0524**

10/22/2019, MRI Right Hip Arthrogram, John Campbell, MD.
10/25/2019, Progress Note, Michael Huang, MD.
10/27/2019, Peer Review, Richard Avioli, MD.
11/20/2019, Progress Note, Roger Sung, MD.
12/09/2019, Operative Report, Michael Huang, MD.
12/10/2019, Progress Note, Michael Huang, MD.
12/13/2019, Physical Therapy Initial Examination, Taylor Mark Pfeifer, PT, DPT.
12/13/2019, Physical Therapy Plan of Care, Taylor Mark Pfeifer, PT, DPT.
12/13/2019, Physical Therapy Daily Note, Taylor Mark Pfeifer, PT, DPT.
12/17/2019, Physical Therapy Daily Note, Jennifer Mulligan, PT, DPT.
12/23/2019, Progress Note, Phillip Falender, PA-C.
12/24/2019, Physical Therapy Daily Note, Kerri Anne Tiller, PT, DPT.
12/27/2019, Physical Therapy Daily Note, Taylor Mark Pfeifer, PT, DPT.
12/30/2019, Physical Therapy Daily Note, Kerri Anne Tiller, PT, DPT.
12/30/2019, Progress Note, Jeffrey Kent, MD.
01/02/2020, Physical Therapy Note, Sandi Feeney, PT, DPT.
01/06/2020, Physical Therapy Daily Note, Kerri Anne Tiller, PT, DPT.
01/10/2020, Physical Therapy Daily Note, Kerri Anne Tiller, PT, DPT.
01/14/2020, Physical Therapy Daily Note, Jennifer Mulligan, PT, DPT.
01/17/2020, Physical Therapy Daily Note, Taylor Mark Pfeifer, PT, DPT.
01/20/2020, Physical Therapy Daily Note, Kerri Anne Tiller, PT, DPT.
01/21/2020, Progress Note, Kristen Reiss, PA-C.
01/23/2020, Physical Therapy Daily Note, Kerri Anne Tiller, PT, DPT.
01/27/2020, Physical Therapy Daily Note, Kerri Anne Tiller, PT, DPT.
01/29/2020, Physical Therapy Daily Note, Taylor Mark Pfeifer, PT, DPT.
01/30/2020, MRI Left Hip Arthrogram, Nicholas Moore, MD.
01/31/2020, Progress Note, Kelsey Chrane, PA-C.
02/04/2020, Physical Therapy Daily Note, That Jennifer Mulligan, PT, DPT.
02/06/2020, Progress Note, Michael Huang, MD.
02/11/2020, Physical Therapy Daily Note, Ellen Jackson, PT.
02/12/2020, Progress Note, David Salek, MD.
02/20/2020, Physical Therapy Progress Note, Scott Moser, PT, DPT.
02/20/2020, Physical Therapy Daily Note, Scott Moser, PT, DPT.
02/25/2020, Physical Therapy Daily Note, Marc Phillips, PT, DPT.
03/03/2020, Progress Note, Jeffrey Kent, MD.
03/05/2020, Physical Therapy Daily Note, Marc Phillips, PT, DPT.
03/12/2020, Progress Note, Michael Huang, MD.
03/12/2020, Physical Therapy Daily Note, Marc Phillips, PT, DPT.
03/17/2020, Physical Therapy Daily Note, Marc Phillips, PT, DPT.
04/02/2020, Physical Therapy Note, Marc Phillips, PT, DPT.
04/09/2020, Physical Therapy Daily Note, Marc Phillips, PT, DPT.
04/16/2020, Physical Therapy Daily Note, Marc Phillips, PT, DPT.
04/23/2020, Physical Therapy Daily Note, Marc Phillips, PT, DPT.
04/30/2020, Physical Therapy Daily Note, Marc Phillips, PT, DPT.
05/01/2020, Progress Note, Michael Huang, MD.
05/07/2020, Physical Therapy Daily Note, Marc Phillips, PT, DPT.

**Lincoln/Mason 0525**

05/13/2020, Progress Note, Roger Sung, MD.
05/21/2020, Physical Therapy Daily Note, Marc Phillips, PT, DPT.
05/22/2020, Progress Note, Jeffrey Kent, MD.
06/11/2020, Procedure Note, David Salek, MD.
06/18/2020, Physical Therapy Daily Note, Marc Phillips, PT, DPT.
06/23/2020, Disability Questionnaires an Application for Benefits, Jan Mason.
07/01/2020, Progress Note, Roger Sung, MD.
07/01/2020, Medical Questionnaire, Jeffrey Kent, MD.
07/01/2020, Progress Note, Jeffrey Kent, MD.
07/09/2020, Physical Therapy Initial Examination, Marc Phillips, PT, DPT.
07/16/2020, Letter Correspondences, David Monti, MD.
07/16/2020, Peer Review, David Monti, MD.
07/16/2020, Physical Therapy Daily Note, Marc Phillips, PT, DPT.
07/21/2020, Written Request for Review, Jan Mason.
07/23/2020, Letter Correspondence, David Salek, MD.
07/23/2020, Physical Therapy Daily Note, Marc Phillips, PT, DPT.
07/31/2020, MRI Lumbar Spine, José Pizarro, MD.
08/06/2020, Physical Therapy Daily Note, Marc Phillips, PT, DPT.
08/13/2020, Physical Therapy Recertification Note, Marc Phillips, PT, DPT.
08/13/2020, Physical Therapy Daily Note, Marc Phillips, PT, DPT.
08/17/2020, Progress Note, Michael Huang, MD.
08/19/2020, Progress Note, Roger Sung, MD.
08/20/2020, Physical Therapy Daily Note, Marc Phillips, PT, DPT.
08/31/2020, Letter Correspondence, Jeffrey Kent, MD.

**HISTORY:**

I have been asked to review the medical records on behalf of ECN regarding Jan Mason. The claimant is a now 48-year-old female with a long-term disability claim from 04/17/2019. Her job title was Representative 3, Customer Service Billing. This was a sedentary position. Her primary diagnosis was pain in right hip.

On 12/18/2017, the claimant was involved in a motor vehicle accident. She was stopped in heavy traffic in the right through lane when another driver failed to come to a complete stop and collided with the rear passenger side bumper. She complained of hip and lower back pain. Moderate to severe damage was sustained to the rear passenger side bumper and quarter panel of the vehicle.

On 07/11/2018, the claimant had an x-ray the lumbosacral spine interpreted by Jon Snider, MD. This showed L3-L4 retrolisthesis and multilevel spondylosis. There was a metallic fixation of the sacroiliac joint.

On 09/12/2018, the claimant had an MRI of the pelvis and sacroiliac joints interpreted by Joseph Ugorji, DO. The report provided was not completely legible.

3

**Lincoln/Mason 0526**

On 11/27/2018, the claimant had a CT of the pelvis. This was interpreted by Nicholas Moore, MD. This demonstrated a right sacroiliac joint internal fixation without evidence of a hardware failure. There was bilateral cam type femoroacetabular impingement.

On 01/09/2019, the claimant had a fluoroscopically guided joint injection of the right hip. Her pain went from 5-6/10 to 0/10 in severity after the procedure. This was performed by Tyler Bron, MD.

On 01/09/2019, the claimant had a fluoroscopically guided joint injection of the left hip. Her pain went from 4/10 to 0/10 in severity after the procedure. This was performed by Tyler Bron, MD.

On 01/31/2019, the claimant was evaluated by Tyler Bron, MD. She complained of bilateral hip pain. She was following up after bilateral corticosteroid injections in her hips. For the initial 4-6 hours after the injection she had complete relief of her hip pain. This was only temporary and overall had not noticed any significant improvement from the injection. Her pain was worsening in the right greater than the left. She was also complaining of back pain. On physical examination of the right hip and pelvis, range of motion was limited with flexion 100°, internal rotation 0°, external rotation 15°. Range of motion elicited groin pain. Her pain was most severe with internal rotation. Her quadricep and hamstring strength was 5/5. Plantar and dorsiflexion strength was 5/5. Her sensation was intact over the lower extremity. Physical examination of the left hip and pelvis demonstrated range of motion limited with flexion 100°, internal rotation 0°, external rotation 15°. Range of motion elicited groin pain. Her pain was most severe with internal rotation. Her strength and sensory examination were intact. Her diagnostic testing was reviewed. The diagnoses were pain in right hip and pain in the left hip. Her pain was likely due to osteoarthritis versus labral pathology. An MRI arthrogram of the right hip was ordered.
On 02/11/2019, the claimant had an MRI arthrogram of the right hip. This was interpreted by Craig LaBuda, MD. This demonstrated a right hip anterior superior labral tear. There was mild, superior hip joint space narrowing and small anterior lateral femoral head-neck-osseous bump. There was a right sacroiliac joint fusion.

On 02/18/2019, the claimant followed up with Tyler Bron, MD. Her hip was still very painful. On physical examination of the right hip and pelvis, range of motion was limited with flexion to 100°, internal rotation 0°, external rotation 15°. Range of motion elicited groin pain. Her pain was most severe with internal rotation. Her quadricep and hamstring strength was 5/5. Plantar and dorsiflexion strength was 5/5. Her sensation was intact over the lower extremity. Physical examination of the left hip and pelvis demonstrated range of motion limited with flexion to 100°, internal rotation 0°, external rotation 15°. Range of motion elicited groin pain. Her pain was most severe with internal rotation. Her strength and sensory examination were intact. The MRI arthrogram was reviewed showing an anterior superior labral tear with minimal joint space narrowing, as well as signs of femoral acetabular impingement. The diagnoses were pain in the left hip, and pain in the right hip. She was referred to another physician for possible arthroscopic labral repair.

On 03/07/2019, the claimant was seen by Michael Huang, MD. She reported right hip pain over the posterior buttock area for about two years. She was treated initially for sacroiliac joint pain in

4

**Lincoln/Mason 0527**

September 2017 with sacroiliac joint fusion. She had recovered extremely well with resolution of her symptoms until she was involved in a car accident where she was rear-ended in December 2017. She reported some groin pain but mostly felt her pain in the posterior buttock area. Her symptoms were worse with sitting, but now consistently bothering her with standing and walking. She denied numbness or tingling. She had tried rest, activity modification, anti-inflammatories including ibuprofen without benefit. She tried physical therapy without benefit. She tried chiropractic treatment and massage therapy with limited benefit. She underwent an intra-articular injection and she had four hours of complete pain resolution but did not get any benefit long-term. Her symptoms were sharp, dull, and aching and made worse with sitting and walking. She also had associated stiffness and weakness. On physical examination, her gait was antalgic. Right hip range of motion demonstrated flexion to 115°, external rotation to 55°, and internal rotation to 10°. The anterior impingement test was positive reproducing her posterior buttock pain and somewhat reproducing groin pain. There was tenderness to palpation of the posterior buttock. She had a negative straight leg raise and negative posterior impingement test. At the left hip, range of motion demonstrated flexion to 25°, external rotation to 65°, and internal rotation to 10°. Anterior and posterior impingement tests and straight leg raise were negative. There was no tenderness to palpation. Her diagnostics were reviewed. The diagnoses were pain in the right hip, and other articular cartilage disorders of the right hip. This was further discussed as right hip pain secondary to labral tear and femoral acetabular impingement. Surgical intervention was discussed and planned for.

On 04/17/2019, the claimant had a right hip labral repair, arthroscopic acetabuloplasty, femoroplasty, osteoplasty to remove cam lesion, chondroplasty, synovectomy, capsular plication performed by Michael Huang, MD.

On 04/18/2019, the claimant followed up with Kristen Reiss, PA-C. She was a one-day status post-surgery. Her pain was well-controlled. She was utilizing her post-operative hip braces and crutches. On physical examination, the right hip wounds had minimal drainage. There was mild swelling which was expected. There were no signs of infection. The diagnosis was one-day status post right hip surgery. She was given postoperative instructions and advised to follow-up in two weeks.

On 05/02/2019, the claimant followed up with Kristen Reiss, PA-C. She was two weeks status post hip surgery. Her pain was well-controlled. She was doing well with physical therapy. On physical examination, the surgical wounds were healed without signs of infection. Her sensation was intact. The diagnoses were pain in the right hip, and other articular cartilage disorders of the right hip. Her sutures were removed. She was given further instructions for routine postoperative management. She was given oxycodone.

On 06/04/2019, the claimant followed up with Michael Huang, MD. She was six weeks status post right hip surgery. She reported increasing hip pain worse than her preoperative pain. It began after she started to discontinue the crutches two weeks prior. She also presented with a new complaint of left hip pain. She states having had this since December 2017, with progressive worsening. Her left was feeling worse after bearing more weight after her surgery. The pain was in the groin and worsened with prolonged sitting, prolonged standing, and squatting. Rotational activities also increased pain. She had tried rest, activity modification and ibuprofen. She was

5

**Lincoln/Mason 0528**

attending physical therapy. On physical examination of the left hip, flexion was to 115°, external rotation to 65° and internal rotation to 10°. The anterior impingement test was positive. She had tenderness in the anterior groin.

The right hip surgical wounds were well healed without signs of infection. Range of motion of the right hip was flexion to 115°, external rotation to 50° and internal rotation to 5° with continued positive anterior impingement test. X-rays of the bilateral hips were ordered. There was well-preserved femoral acetabular joint spacing. At the left hip there was evidence of femoral, acetabular impingement cam type with alpha angle measuring 63°. The diagnoses were pain in the right hip, and other articular cartilage disorders of the right hip. She was advised to go back on crutches for about two weeks. She was given indomethacin for inflammation. In terms of the left hip, there was suspicion for underlying labral tear. They were considering MRI arthrogram of the left hip.

On 07/09/2019, the claimant followed up with Michael Huang, MD. She reported increasing right posterior buttock and lumbar spine pain. She had minimal anterior hip pain. Her hip pain was much better since her previous visit. She was doing physical therapy. She was concerned about her lumbar spine and felt her pain was radiating down her buttock to the posterior thigh and into her calf. At one point in her history, she was considering a spinal stimulator for low back pain. She described her pain as nerve pain and burning. She had occasional mild anterior groin pain with activity which she was tolerating well. On physical examination, the right hip surgical wounds were well healed. Range of motion included flexion to 110°, external rotation to 50°, internal rotation to 10° and abduction of 40°. She had minimal anterior pain with any of these tests. She had significant posterior hip pain over the sacroiliac joint and lumbar spine. Straight leg raise was negative for radicular symptoms but increased her posterior hip buttock and spine pain. She was directly tender over the superior aspect of the sacroiliac joint and the right lumbosacral junction. The diagnoses were pain in right hip and other articular alleged disorders of the right hip. She was advised to continue with physical therapy. She planned on following up with her spine surgeon for an opinion. She was continued on indomethacin.

On 07/23/2019, the claimant was evaluated by Jeffrey Kent, MD. She reported recent labral tear repair. She was having worsening pain since starting to bear weight. She reported pain in her lower back with burning pain into her right leg more than her left leg. She requested a parking pass, Xanax, and Ambien. No physical examination was provided. The diagnoses were osteoarthritis of the spine with radiculopathy, tear of the right acetabular labrum, femoral acetabular impingement of both hips, primary insomnia, and anxiety. She was advised to continue to follow with her specialists, and to continue gabapentin, Xanax, and Ambien.

On 07/29/2019, the claimant was evaluated by James Bee, MD. She complained of pain in her buttock and back. The pain was sharp, burning, and constant. It was made worse with activity such as sitting, standing, walking, and bending. It was made better by lying down. She had done physical therapy, which was stopped due to worsening symptoms. She was taking indomethacin. Her pain was 8/10. Her activities of daily living were limited secondary to her complaints. On physical examination of the lumbar spine, there was no tenderness. The flexion of the lumbar spine brought the fingertips 6 inches from the floor. Extension was approximately 15°. There was some pain at the extremes of flexion and extension. There was pain with palpation along the gluteal musculature right greater than left. There was no pain with axial compression of the head

6

**Lincoln/Mason 0529**

and no pain with trunk rotation through the hips. She had a slow reciprocating gait. She was able to walk on the toes and heels. She moved easily to the examination table without assistance. Her strength throughout the lower extremities was 5/5. Her sensation was intact bilaterally. There were no upper motor signs. Her reflexes were normal. Straight leg raise was negative bilaterally. X-rays of the lumbosacral spine demonstrated a right sacroiliac joint fusion device. There was a collapse of the disc space at L2-L3. There was subtle retrolisthesis of L3 on L4. On flexion and extension, there was no instability. Her previous MRI of the lumbar spine from 05/12/2018 was also reviewed showing degenerative changes. There was no stenosis. The diagnoses were spinal stenosis in the lumbar region with neurogenic claudication, spondylosis without myelopathy or radiculopathy lumbar region, other intervertebral disc degeneration lumbar region, other intervertebral disc degeneration lumbosacral region, and pain in the right hip. A new MRI was ordered.

On 08/06/2019, the claimant was seen by Jeffrey Kent, MD. She continued with back pain that was worse on the right and made worse with walking. Driving and bending also worsened her pain.  She was taking Ambien to facilitate sleep. She was scheduled to have her MRI the next day. She was taking indomethacin. She was requesting FMLA paperwork. She was out of work. On physical examination, she had tenderness over the sacroiliac joints worse on the right. She was referred to physiatry. The diagnosis was acute right-sided low back pain with sciatica. On 08/08/2019, the claimant had an MRI of the lumbar spine interpreted by Jacob Becker, MD. This demonstrated stability since the previous MRI from 05/12/2018. There was mild multilevel degenerative disc disease with bulges and protrusions without high-grade spinal canal or neural foraminal stenosis at any level.

On 08/19/2019, the claimant followed up with James Bee, MD. She had undergone a spinal cord stimulator trial. It had helped some of her complaints but not her mid-back problems. On physical examination, there were no significant abnormalities. Her MRI of the lumbar spine was reviewed showing degenerative changes without obvious stenosis. The diagnoses were spinal stenosis in the lumbar region with neurogenic claudication, spondylosis without myelopathy or radiculopathy lumbar region, other intervertebral disc degeneration lumbar region, other intervertebral disc degeneration lumbosacral region. She was referred back for possible permanent spinal cord stimulator.

On 08/21/2019, the claimant followed up with Roger Sung, MD. She was requesting to go ahead with a spinal cord stimulator. On physical examination, she had diffuse lumbar tenderness extending into the buttock which was not specific to the sacroiliac joint. The diagnoses were low back pain, chronic pain syndrome, and sciatica. A trial for a different spinal cord stimulator.

On 08/28/2019, the claimant was seen by David Salek, MD. Her history was summarized and consistent with previous accounts. She reported pain that was constant, sharp, and burning with radiation down her right leg into the top of her toe. Her buttock pain was more severe than the leg pain. On physical examination, she had full painless range of motion of all major muscle groups and joints. She had a positive Faber test and a positive Fortin finger test. She had positive lumbar quadrant testing. Her strength and sensation were normal. Her reflexes were normal. The diagnoses were status post right sacroiliac joint fusion, status post right hip labral tear repair, low

7

Lincoln/Mason 0530

back pain, right lower extremity radicular features, and positive spinal cord stimulator trial with Boston Scientific. A trial for Stimwave was requested.

On 10/07/2019, the claimant followed up with Jeffrey Kent, MD. She complained of chronic low back pain and sacroiliac joint pain. She was considering a spinal cord stimulator. She was requesting FMLA paperwork and a flu vaccine. On physical examination, she had pain and tenderness in the sacroiliac joint areas and the right inguinal region. She had a normal urinalysis. She had x-rays of the hips, which were normal. The diagnoses were chronic low back pain with sciatica. She was advised to continue with her current treatment plan. She was given a flu shot.

On 10/11/2019, the claimant was evaluated by Kristen Reiss, PA-C. She reported pain that was worse than it was prior to her surgery. She was being evaluated for possible spinal cord stimulator. The pain in the posterior buttock radiated down the posterior thigh into her calf and foot. She had a burning pain in the groin area and lateral hip pain. This seemed to increase about a month prior when she started increasing her walking. She was only walking about 2 miles a week. On physical examination, she had an antalgic gait. Her surgical wounds of the right hip were well healed. Right hip flexion was to 110°, external rotation to 50°, internal rotation to 10° and abduction to 40°. She had negative anterior and posterior impingement tests. Her straight leg raise was negative for radicular symptoms but would increase her posterior hip and buttock pain. She was tender over the superior aspect of the sacroiliac joint on the right and lumbosacral junction as well as over the anterior hip and laterally over the greater trochanter. X-rays were completed showing evidence of previous sacroiliac joint fusion in the right sacroiliac joint. The diagnoses were pain in right hip and other articular cartilage disorders of the right hip. An MRI of the right hip was ordered.

On 10/22/2019, the claimant had an MRI of the right hip with arthrogram. This was interpreted by John Campbell, MD. This demonstrated postoperative changes within the right hip. The anterior aspect of the superior labrum was diminutive and blunted. The superior aspect of the anterior labrum was diminutive and irregular. These were likely postoperative. There was no recurrent tear. There was focal intermediate signal nodularity along the acetabular articular surface adjacent to a suture anchor track at the 12 o'clock position. There was a thin linear signal along the anterior capsule just lateral to the superior aspect of the anterior labrum, which could be related to capsular plication. Mild chondral irregularity along the lateral acetabulum likely reflecting postoperative change.

On 10/25/2019, the claimant followed up with Michael Huang, MD. She was there to discuss her recent MRI. On physical examination, she had an antalgic gait. Her surgical wounds of the right hip were well healed. Right hip flexion was to 110°, external rotation to 50°, internal rotation to 10° and abduction to 40°. She had negative anterior and posterior impingement tests. Her straight leg raise was negative for radicular symptoms but would increase her posterior hip and buttock pain. She was tender over the superior aspect of the sacroiliac joint on the right and lumbosacral junction as well as over the anterior hip and laterally over the greater trochanter. Due to the MRI findings, it was felt that she should undergo surgery to repair the labral tissue. The diagnoses were pain in right hip and other articular cartilage disorders of the right hip.

8

**Lincoln/Mason 0531**

On 11/20/2019, the claimant followed up with Roger Sung, MD. She was scheduled for a right hip labrum repair for 12/09/2019. The authorization for the stimulator trial was still pending. On physical examination, she was diffusely tender across her buttocks and lower back. Thoracic and lumbosacral x-rays showing multiple levels of lumbar degeneration.
The diagnoses were pain in the thoracic spine, low back pain, other intervertebral disc degeneration lumbar region, and sciatica. It was recommended that she try the Boston Scientific spinal cord stimulator since her insurance was denying the Stimwave.

On 12/09/2019, the claimant underwent a right hip labral reconstruction, chondroplasty, acetabuloplasty, femoroplasty, osteoplasty to remove cam lesion, synovectomy, capsular closure/plication by Michael Huang, MD.

On 12/10/2019, the claimant followed up with Michael Huang, MD. She was one-day status post right hip labral reconstruction surgery. Her pain was well-controlled. She was utilizing the postoperative crutches and braces. On physical examination, the wounds were intact with minimal drainage. There was mild swelling. The diagnosis was other articular cartilage disorders of the right hip. Physical therapy was initiated.

On 12/23/2019, the claimant followed up with Phillip Falender, PA-C. She was at two weeks status post right hip labral reconstruction surgery. She was progressing well with physical therapy. On physical examination, there were no signs of infection. Hip flexion was to 90°. The Steri-Strips were removed without difficulty. The diagnosis was other articular cartilage disorders of the right hip. She was given further instruction for increasing weight-bearing and advised to continue physical therapy.

On 12/30/2019, the claimant followed up with Jeffrey Kent, MD. She had her right labral repair. She felt worse. Her pain was increased with therapy. She was still considering a spinal stimulator. She had issues with her other hip. She resigned from her cable job. On physical examination, she was tearful at times and in a brace for her right hip. Diagnoses were chronic low back pain with sciatica, sacroiliac joint pain, and tear of the right acetabular labrum. She was advised to continue her current treatment plan.

On 01/21/2020, the claimant was evaluated by Kristen Reiss, PA-C. She was six weeks status post right hip labral reconstruction. She reported her hip pain was improving. Her lower back pain, pain over the sacroiliac joint and radicular symptoms had worsened. She was also following up for her left hip pain. Physical therapy was not helpful for the left hip. On physical examination, right hip flexion was to 100°, external rotation to 40°, and internal rotation to 5°. There was tenderness over the lateral right hip and right sacroiliac joint. The left hip range of motion included flexion to 110°, external rotation to 50°, internal rotation to 5°. She had a positive anterior impingement test. The straight leg raise produced low back pain. There was tenderness over the anterior hip and laterally over the greater trochanter. X-rays were again performed of the right hip. There were no obvious abnormalities other than the previous sacroiliac joint fusion. The diagnoses were other articular cartilage disorders of the right hip, lumbar region radiculopathy, and pain in the left hip. She was advised to continue physical therapy for the right hip. She was advised to follow-up with Roger Sung, MD regarding worsening low back and sacroiliac joint pain. An MR arthrogram of the left hip was ordered.

9

Lincoln/Mason 0532

On 01/30/2020, the claimant had an MRI left hip with arthrogram interpreted by Nicholas Moore, MD.
This demonstrated a focal cam deformity of the anterior left femoral head neck junction with associated anterior/anterior superior labral based tear. There was a small right hip joint effusion.

On 01/31/2020, the claimant followed up with Kelsey Chrane, PA-C. Her right hip pain has significantly improved. She continued to have lower back pain interfering with her participation in physical therapy. She had imaging of her left hip. She was still anticipating a spinal cord stimulator placement. On physical examination, there was tenderness along the spinous processes and paraspinal musculature and diffusely throughout the lower back including over the right sacroiliac joint. Motor strength of the lower extremities was intact. There was pain with range of motion, primarily extension. The diagnoses were low back pain, lumbar region spinal stenosis with neurogenic claudication, other intervertebral disc degeneration of the lumbar region, intervertebral disc disorders with radiculopathy lumbar region, sacroiliitis, pain in the right hip, and pain in the left hip. She was advised to call when she was ready to proceed with the spinal cord stimulator.

On 02/06/2020, the claimant followed up with Michael Huang, MD. She was eight weeks status post-surgery. She was now using a cane. She reported achiness of the anterior hip. She had an MR arthrogram of the left hip and had returned to discuss the findings. On physical examination, hip flexion on the right was to 105°, external rotation 40°, internal rotation 5°. There was tenderness of the right lateral hip and over the sacroiliac joint. The left hip range of motion had flexion 115°, external rotation to 55°, internal rotation to 5°. There was a positive anterior impingement test. Straight leg raise caused low back pain. There was tenderness over the anterior hip and laterally over the greater trochanter. The diagnoses were other articular cartilage disorders right hip, other articular cartilage disorders left hip, and pain in the left hip. They discussed options for managing her left hip. It was decided she would continue focusing on her right hip rehabilitation program and manage her left hip pain with anti-inflammatories.

On 02/12/2020, the claimant followed up with David Salek, MD. She was referred back for pain management. She did not want opiates and was looking for alternative care. She inquired about the use of CBD. On physical examination, she had full painless range of motion of all major muscle groups and joints. She had a positive Faber test and a positive Fortin finger test. She had positive lumbar quadrant testing. The diagnoses were status post right sacroiliac joint fusion, status post right hip labral repair, low back pain, right lower extremity radicular features, and positive spinal cord stimulator trial with Boston Scientific. She was prescribed Celebrex and Tylenol.

On 03/12/2020, the claimant followed up with Michael Huang, MD. She was 12 weeks status post right hip labral reconstruction. The right hip was doing well. Her biggest issue was tremendous pain over the right greater than left sacroiliac joint and lumbar spine. She had been in physical therapy but was having difficulty weight-bearing and was using crutches. The left hip also continued to be painful, unchanged since her last visit. On physical examination, hip flexion on the right was to 110°, external rotation 45°, internal rotation 5°. There was tenderness of the right lateral hip and over the sacroiliac joint. The left hip range of motion had flexion 120°,

10

**Lincoln/Mason 0533**

external rotation to 55°, internal rotation to 5°. There was a positive anterior impingement test. Straight leg raise caused low back pain. There was tenderness over the anterior hip and laterally over the greater trochanter.
The diagnoses were other articular cartilage disorders right hip, other articular cartilage disorders left hip, and pain in the left hip. The claimant decided to return to Roger Sung, MD to discuss any further options regarding her sacroiliac joints.

On 03/03/2020, the claimant followed up with Jeffrey Kent, MD. She continued to have worsening pain in the lower back along the sacroiliac joints. She was considering a consultation with Mayo Clinic. On physical examination, she had pain with range of motion of the hip and pain in the lower back and sacroiliac joints. The diagnoses were sacroiliac joint pain, chronic midline low back pain with sciatica, and tear of the right acetabular labrum. She was advised to continue to follow with her specialists.

On 05/01/2020, the claimant followed up with Michael Huang, MD. She had been working at physical therapy on the sacroiliac joints, which had been worsening her pain. The pain was radiating laterally and anteriorly towards the hip. She continued to have significant posterior pain. She had not yet returned to Roger Sung, MD, due to the coronavirus. She was working on walking around the block. She continued to have difficulty going up and down stairs and lying supine. Her pain was 8-9/10. On physical examination, hip flexion on the right was to 115°, external rotation 45°, internal rotation 5°. There was tenderness of the right lateral hip and over the sacroiliac joint. The left lower extremity was normal with unremarkable range of motion. The diagnoses were other articular cartilage disorders right hip, and right sacroiliitis. She was advised to return to Roger Sung, MD for further evaluation and treatment of the sacroiliac joints, and to continue physical therapy.

On 05/13/2020, the claimant followed up with Roger Sung, MD. She complained of bilateral sacroiliac joint pain. On physical examination, she had tenderness over both sacroiliac joints. The diagnoses were sacroiliitis, chronic pain syndrome, and sciatica. They were going to proceed with a lidocaine-only injection in the left sacroiliac joint. She was advised to continue considering a spinal cord stimulator.

On 05/22/2020, the claimant had a follow-up with Jeffrey Kent, MD. She was doing physical therapy. She reported having a vaginal yeast infection. Her physical examination was done via video conference and was normal. The diagnoses were osteoarthritis of the spine with radiculopathy in the lumbar region, tear of the right acetabular labrum, sacroiliac joint pain, and acute vaginitis. She was given Diflucan and advised to continue following with her specialists.

On 06/11/2020, the claimant underwent a sacroiliac joint injection on the left for the diagnosis of sacroiliitis. This was performed by David Salek, MD.

On 07/01/2020, the claimant followed up with Roger Sung, MD. She had the left sacroiliac joint injection and was pain free for about two hours. On physical examination, she continued to have tenderness along bilateral sacroiliac joints. The diagnoses were other intervertebral disc degeneration lumbar region, low back pain, and sacroiliitis. She was referred back to physical therapy because her treatment was interrupted by Covid-19.

Lincoln/Mason 0534

On 07/01/2020, the claimant followed up with Jeffrey Kent, MD. She discussed the left-sided diagnostic sacroiliac joint injection.
They discussed needing rehab on the right sacroiliac joint and a possibility of fusing the left sacroiliac joint. She was considering a labral reconstruction on the left hip and a spinal cord stimulator. She continued having the right sacroiliac joint pain. She was applying to Social Security and had been denied. She requested a cyclobenzaprine refill. On physical examination, she had abnormal lower back and sacroiliac joints. The diagnoses were osteoarthritis of the spine with radiculopathy in the lumbar region, sacroiliac joint pain, and femoral acetabular impingement of both hips. Her cyclobenzaprine was refilled. She was advised to continue her current treatment plan with her specialists.

MRI of the lumbar spine from 07/31/2020 interpreted by José Pizarro, MD, demonstrated straightening of the normal lumbar lordosis. There was kyphosis L2-L3. At L1-L2, there was a central disc herniation impinging on the thecal sac causing mild spinal stenosis. At L2-L3, there was a broad central disc herniation causing mild to moderate spinal stenosis. At L3-L4, there was disc desiccation and right proximal neural foraminal disc herniation which were focal. There was mild right neural foraminal stenosis. At L5-S1, there was a central disc herniation with annular tearing, elevating the posterior longitudinal ligament causing mild spinal stenosis.

On 08/17/2020, the claimant followed up with Michael Huang, MD. She reported continued worsening pain. The pain was located over bilateral sacroiliac joint and lumbar spine. Since her last visit she had a diagnostic injection in the left sacroiliac joint, which gave her two hours a complete relief of pain. She has continued physical therapy without improvement. She continued to have bilateral lower extremity symptoms including pain, numbness, and tingling down to both feet. She had an MRI of the lumbar spine. She denied significant groin pain. She had an episode where the right lower extremity gave way resulting in a fall causing temporary numbness in her vaginal area. She rated her pain 8-9/10. She continued to use crutches for weight-bearing.  On physical examination, her gait was antalgic. Hip flexion on the right was to 115°, external rotation 45°, internal rotation 5°. There was tenderness of the right lateral hip and over the sacroiliac joint bilaterally, and lumbar spine. There were no impingement testing signs at the hip with passive range of motion. The left lower extremity was normal with unremarkable range of motion. Her most recent MRI of the lumbar spine from 07/31/2020 was reviewed. The diagnoses were other articular cartilage disorders right hip, and right sacroiliitis. She was advised to continue following with Roger Sung, MD.

On 08/19/2020, the claimant followed up with Roger Sung, MD. She felt worse with physical therapy. Her pain was in the back, both sacroiliac joint and now radiating down her legs. She had a new MRI ordered by her physical therapist. Her physical examination was normal. Her MRI was reviewed and without significant changes from her previous MRI. The diagnoses were low back pain, other intervertebral disc degeneration lumbar region, sacroiliitis, chronic pain syndrome, and sciatica. She was advised to have a new spinal cord stimulator trial due to changes in her pain pattern.

12

**Lincoln/Mason 0535**

**RESPONSE TO QUESTIONS:**

**1. What diagnoses are supported by the medical evidence?**

The medical evidence provided supports the diagnoses of femoroacetabular impingement bilaterally, right hip labral tear, lumbar degenerative disc disease, lumbar spondylosis, and bilateral sacroiliitis.

**2. Taking into consideration the entire clinical picture, including standards of care and evidence-based medicine, and any medication or other treatment side effects, please describe if there are any supported level of impairments which translates into restrictions and limitations from 7/21/2020 to the present? Please explain your medical rationale as to why or why not and provide a detailed explanation.**

Since 07/21/2020, the claimant had an MRI of the lumbar spine, which according to Roger Sung, MD was stable from the previous. The findings included degenerative disc disease, degenerative central spinal stenosis, and degenerative neuroforaminal stenosis. These were all mild to moderate in degree. There was no obvious impingement of exiting nerve roots. There was no visualized myelomalacia.

She had two subsequent medical visits, one with Michael Huang, MD, and one with Roger Sung, MD. She had been feeling worse in terms of her pain and symptomatology. However, there were no new physical examination findings. Her most significant and consistent physical examination findings include tenderness and decreased range of motion. She does not have any neurologic deficits. No new restrictions were given by either of the physicians.

Although the claimant has subjective complaints of pain and falls, there was a lack of functional deficits on physical examination to support the need for restrictions.

**3. If functional impairment is supported, please describe how that translates into restrictions or limitations and for what period(s) of time. Please define in terms of frequency (never, occasional, frequent, constant) and task (sit, stand, lift/carry, type etc.). Please explain your medical rationale for any restrictions or limitations or why restrictions and limitations are not supported.**

Functional impairment is not supported by the documentation from 07/21/2020 to present.

**4. Does the medical documentation support that any medical condition alone, or in combination would preclude the claimant from sustained occupational functioning on a full-time basis? Please explain why or why not.**

Based on the provided medical documentation since 07/21/2020, there is no evidence that would preclude the claimant from sustained occupational functioning on a full-time basis.

**5. When contacting the treating provider please discuss the claimant's condition, treatment, and functional capacity. Please indicate the information reviewed and indicate**

13

**Lincoln/Mason 0536**

**whether or not you reach consensus with the treating provider. If not, please discuss your final assessment after the call.**

**AP CONTACT:**

I called the number listed (719-632-7669) on 9/4/20 at 11:08am CST and left a message for a return call on Kirsten's general office voicemail.

I called the number listed (719-632-7669) on 9/10/20 at 11:10am CST and left a message for a return call on Kirsten's general office voicemail.

I called the number listed (719-278-3627) on 9/4/20 at 11:47am CST and spoke with Jennifer and left a message for a return call.

My staff received a return call from Dr. Kent on 9/9/20 at 4:10pm CST and I was unable to take the call. A message was left for a return call to an alternate number (719-799-0784).

I called the alternate number (719-799-0784) on 9/10/20 at 11:15am CST and left a message for a return call on Dr. Kent's general voicemail.

At the time of submission, no return calls have been received.

**Daniel Fung, M.D.**
**Board Certified Physical Medicine & Rehabilitation**
**Board Certified Pain Medicine**
**License: A107358 CA**

14

**Lincoln/Mason 0537**



Corporate Office
6133 Broken Sound Parkway NW, Suite 200
Boca Raton, Florida 33487
Toll Free: (877) 462-8662
Local: (561) 922-5200
Fax: (561) 392-5885

Exam Coordinators Network   A division of Genex Services, LLC       E-mail: info@ecnime.com   ◆   Web: www.ecnime.com

Claimant Name: Jan Mason
Claim Number: 9291624
Case Number: 156002-1

"I, Daniel Fung, MD, am a physician duly licensed to practice medicine in the State of __CA_____. I am an independent contractor and I am paid to review claim files and render medical opinions. I am not responsible for deciding whether a claimant is entitled to insurance benefits. My role is to provide objective medical opinions to Genex Services, LLC.

I hereby attest that the following statements are true:

- I have the scope of licensure or certification that typically manages the medical condition, procedure, treatment or issue under review
- I have current, relevant knowledge to render an opinion for the case under review
- No financial incentive was received based on the outcome of the opinion
- No delegation of the examination rendered

I attest that no conflict of interest exists, this includes any situation where an individual has a material, professional, familial, or financial conflict of interest regarding any of the following:

- Compensation for IME/Peer Review activities that are dependent in any way on the specific outcome of the case
- Have involvement with the case prior to its referral for review
- The referring entity
- The health benefit plan
- The consumer
- The attending provider or any other advisor previously involved in the case
- The facility at which the recommended healthcare service(s) would be provided
- The developer or manufacturer of the principal drug, device, procedure, or other therapy being recommended for the customer

I declare that the information contained in the above-referenced report was prepared by and is the work product of the undersigned and is true to the best of my knowledge and information. I certify that my medical/professional license is current and is in good standing in the jurisdiction in which my practice is located.

_____       9.14.2020
Signature of Physician                                          Date

Medical/Professional License # __A107358 CA_____

**Lincoln/Mason 0538**



Lincoln Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7213
London, KY 40742-7213
Phone No.: (888) 437-7611
Secure Fax No.: (603) 430-1926

| | |
|---|---|
| Date:  September 18, 2020 | |
| To:   ROGER SUNG<br>4110 BRIARGATE DR PARKWAY #300<br>COLORADO SPRINGS CO 80920 | |
| Attn:  Dr. Sung | |
| Fax:   (719) 632-0088 | |
| From: Mary Avrett<br>Appeals Consultant<br>Phone No.: Phone No.: (888) 437-7611<br>Secure Fax No.: (603) 430-1926 | |
| Total Pages<br>(Including Cover):     20 | |
| RE:<br><br>Claim #:     9291624<br>Claimant:   Jan Mason<br><br>Charter Communications, Inc. | |

This fax, and any attachments thereto, is intended only for the use of the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this fax, you are hereby notified that any dissemination, distribution or copying of this fax, and any attachments thereto, is strictly prohibited. If you have received this fax in error, please notify me by telephone at (888) 437-7611 and permanently shred the original and any copy of any fax and any printout thereof.

**Lincoln/Mason 0539**



Lincoln Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7213
London, KY 40742-7213
Phone No.: (888) 437-7611
Secure Fax No.: (603) 430-1926

September 18, 2020

Roger Sung
4110 BRIARGATE DR PARKWAY #300
COLORADO SPRINGS, CO 80920

RE:    Long Term Disability (LTD) Benefits
       Charter Communications, Inc.
       Claim #: 9291624
       Claimant: Jan Mason
       Claimant D.O.B.:

Dear Roger Sung:

We are the Disability Claim Administrator for your patient, Jan Mason.

On September 14, 2020 a/an Independent Medical Evaluation was performed to assist us in determining Ms. Mason's eligibility for Long Term Disability (LTD) benefits. The results of this assessment demonstrate the following:

*Since 07/21/2020, the claimant had an MRI of the lumbar spine, which according to Roger Sung, MD was stable from the previous. The findings included degenerative disc disease, degenerative central spinal stenosis, and degenerative neuroforaminal stenosis. These were all mild to moderate in degree. There was no obvious impingement of exiting nerve roots. There was no visualized myelomalacia.*

*She had two subsequent medical visits, one with Michael Huang, MD, and one with Roger Sung, MD. She had been feeling worse in terms of her pain and symptomatology. However, there were no new physical examination findings. Her most significant and consistent physical examination findings include tenderness and decreased range of motion. She does not have any neurologic deficits. No new restrictions were given by either of the physicians.*

*Although the claimant has subjective complaints of pain and falls, there was a lack of functional deficits on physical examination to support the need for restrictions.*

Please review the enclosed report by September 14, 2020, and provide any comments you wish to have considered. If you disagree with September 14, 2020's findings, please detail the specific areas with which you disagree and provide medical documentation to support your position.

We ask that you provide this information by October 3, 2020. Failure to provide the requested

1  of  2

**Lincoln/Mason 0540**

information may result in an adverse benefit determination.  The information can be faxed to our office at our secure fax number (603) 430-1926 or mailed to the above address.

Although HIPAA does not apply to disability insurance carriers, we understand your responsibilities under HIPAA as a health care provider, and our associated responsibility of ensuring this information is protected against deliberate or inadvertent misuse or disclosure.

As the insurance carrier providing employer sponsored Long Term Disability (LTD) benefits coverage to your patient, we have enclosed a HIPAA compliant authorization signed by Ms. Mason allowing the release of information to our company.  This authorization specifically allows you to release medical information to us and is valid for two years from the date of Ms. Mason's signature.

If you have any questions regarding this matter, please contact me.

Sincerely,

Mary Avrett
Appeals Consultant
Phone No.: (888) 437-7611 Ext. 16371
Secure Fax No.: (603) 430-1926

Attachments:   9291624-EMPLOYEE/CLAIMANT-AUTHORIZATION-09.25.2019
                         9291624-MEDICAL-MEDICAL RECORDS-09.15.2020

2  of 2

**Lincoln/Mason 0541**

3L268190622



Liberty Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7207
London, KY 40742-7207
Phone No.: (844) 384-5858
Secure Fax No.: (603) 334-5994

## AUTHORIZATION FOR THE RELEASE OF INFORMATION INCLUDING PROTECTED HEALTH INFORMATION

**I HEREBY AUTHORIZE THE USE OR DISCLOSURE OF INFORMATION ABOUT ME AS DESCRIBED BELOW:**

**Person(s) or group(s) of persons authorized to use or disclose the information:** Any physicians, medical practitioners, hospitals, clinics, HMOs, long-term care facilities, medical or medically-related facilities, pharmacies, insurance companies, credit or consumer reporting agency, financial/educational institutions, current or former employer, governmental agency, MIB Inc., and any insurance support organizations.

**Person(s) or group(s) of persons authorized to collect or otherwise receive the information:** The particular Company in the Lincoln Financial Group of companies to which I am submitting a claim and its authorized representatives, agents and/or employees, the Plan Sponsor (if self-insured Plan) and other organizations providing claims management services.

**Description of the information that may be used or disclosed:** This Authorization specifically includes the release of all information related to:

* My physical and mental health and my insurance policies and claims, including, but not limited to, those containing diagnosis, treatments, prognosis, prescription drug information, alcohol or drug abuse or information regarding communicable or infectious conditions, including HIV/AIDS.
* Job duties, earnings, personnel records and other work related information and credit reports, bank records, and federal and state tax returns.
* Information concerning Social Security benefits, including any records pertaining to me and my dependents

**The information will be used or disclosed only for the following purpose(s):** For purposes of investigating, evaluating and processing my claim, and/or for insurance-related functions.

## STATEMENTS OF UNDERSTANDING & ACKNOWLEDGMENT:

**I understand** that information used or disclosed pursuant to this authorization could be subject to redisclosure as necessary by the recipient and, if so, may not be subject to federal or state law protecting its confidentiality.

**I understand** that I may revoke this authorization in writing at any time by sending a written revocation to the Company in the Lincoln Financial Group of companies to which I have submitted a claim, except to the extent that action has been taken in reliance on this authorization, or to the extent that other law provides the Company with the right to contest a claim. I also understand that the revocation of this authorization will not affect uses and disclosures of my health information for purposes of treatment, payment and health care operations.

**I understand** that authorizing the disclosure of my health information is voluntary and the provision of health care services to me is not conditioned on whether I sign this authorization. If I choose not to sign this authorization, insurance coverage or claim payments may be denied or delayed.

This authorization shall remain in force for 24 months from the date of signature, except to the extent applicable state law imposes or allows a different duration. The information obtained under this authorization will be retained in accordance with the Company's standard retention policy and applicable law. I understand that I may request a copy of this authorization.

Name of claimant (print)  ___JAN K MASON___

Name of legal representative, if applicable (print) _____    Relationship _____

Signature of claimant or legal representative  ___Jan K Mason___

Date of Birth: __  _____  Claim Number: __9291624__  Date: __09/14/19__

**A copy of this authorization will be considered as valid as the original.**

**Lincoln/Mason 0542**

3L268190622



Liberty Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7207
London, KY 40742-72107
Phone No.: (844) 384-5858
Secure Fax No.: (603) 334-5994

## AUTHORIZATION FOR THE RELEASE OF PROTECTED HEALTH INFORMATION

**I HEREBY AUTHORIZE THE USE OR DISCLOSURE OF HEALTH INFORMATION ABOUT ME AS DESCRIBED BELOW:**

**Person(s) or group(s) of persons authorized to use or disclose the information:** Any physicians, medical practitioners, hospitals, clinics, HMOs, long-term care facilities, medical or medically-related facilities, pharmacies, insurance companies, Plan Sponsor/ Administrator, governmental agency, MIB Inc., and any insurance support organizations.

**Person(s) or group(s) of persons authorized to collect or otherwise receive the information:** The particular Company in the Lincoln Financial Group of companies to which I am submitting a claim and its authorized representatives, agents and/or employees, the Plan Sponsor (if self-insured Plan) and other organizations providing claims management services.

**Description of the information that may be used or disclosed:** This Authorization specifically includes the release of all psychotherapy notes relating to me, without restriction, including psychotherapy notes recorded in any medium documenting or analyzing the contents of conversations during private counseling sessions and/or group, joint or family counseling sessions.

**The information will be used or disclosed only for the following purpose(s):** For purposes of investigating, evaluating and processing my claim, and/or for insurance-related functions.

**STATEMENTS OF UNDERSTANDING & ACKNOWLEDGMENT:**

**I understand** that information used or disclosed pursuant to this authorization could be subject to redisclosure as necessary by the recipient and, if so, may not be subject to federal or state law protecting its confidentiality.

**I understand** that I may revoke this authorization in writing at any time by sending a written revocation to the Company in the Lincoln Financial Group of companies to which I have submitted a claim, except to the extent that action has been taken in reliance on this authorization, or to the extent that other law provides the Company with the right to contest a claim. I also understand that the revocation of this authorization will not affect uses and disclosures of my health information for purposes of treatment, payment and health care operations.

**I understand** that authorizing the disclosure of this health information is voluntary and the provision of health care services to me is not conditioned on whether I sign this authorization. If I choose not to sign this authorization, insurance coverage or claim payments may be denied or delayed.

**This authorization** shall remain in force for 24 months from the date of signature, except to the extent applicable state law imposes or allows a different duration. The information obtained under this authorization will be retained in accordance with the Company's standard retention policy and applicable law. I understand that I may request a copy of this authorization.

Name of claimant (print) _____JAU K MASON_____

Name of legal representative, if applicable (print) _____   Relationship _____

Signature of claimant or legal representative ___Jan K Mason_____

Date of Birth: __ _____  Claim Number: __9291624__  Date: ___08/14/19_____

**A copy of this authorization will be considered as valid as the original**

Lincoln/Mason 0543

........................................................................................................................................................................................................

**Daniel Fung, M.D.**
**Board Certified Physical Medicine & Rehabilitation**
**Board Certified Pain Medicine**

**CLAIMANT NAME:** Jan Mason
**ECN #:** 156002-1
**CLAIM #:** 9291624
**DATE OF LOSS:** 04/17/2019
**DATE OF REVIEW:** 09/14/2020
**CASE TYPE:** Long-Term Disability

**DIAGNOSIS:** Pain in right hip

**MEDICAL RECORDS REVIEWED:**
11/11/2015, Job Description, Charter Communications.
12/19/2017, State of Colorado Traffic Accident Report, Richard DuVall, Credentials Not Provided.
07/11/2018, X-Ray Lumbar Spine, Jon Snider, MD.
09/12/2018, MRI Pelvis and Sacroiliac Joints, Joseph Ugorji, DO.
11/27/2018, CT Pelvis, Nicholas Moore, MD.
01/09/2019, Fluoroscopically Guided Injection of the Right Hip Imaging, Jacob Becker, MD.
01/09/2019, Fluoroscopically Guided Injection of the Left Hip Imaging, Jacob Becker, MD.
01/31/2019, Progress Note, Tyler Bron, MD.
02/11/2019, MRI Arthrogram Right Hip, Craig LaBuda, MD.
02/18/2019, Progress Note, Tyler Bron, MD.
03/07/2019, Progress Note, Michael Huang, MD.
04/17/2019, Operative Report, Michael Huang, MD, MD.
04/18/2019, Progress Note, Kristen Reiss, PA-C.
05/02/2019, Progress Note, Kristen Reiss, PA-C.
06/04/2019, Progress Note, Michael Huang, MD.
07/09/2019, Progress Note, Michael Huang, MD.
07/23/2019, Progress Note, Jeffrey Kent, MD.
07/29/2019, Progress Note, James Bee, MD.
08/06/2019, Progress Note, Jeffrey Kent, MD.
08/08/2019, MRI Lumbar Spine, Jacob Becker, MD.
08/19/2019, Progress Note, James Bee, MD.
08/21/2019, Progress Note, Roger Sung, MD.
08/28/2019, Progress Note, David Salek, MD.
09/03/2019, Long-Term Disability Claim Creation Request, Ethan Crockett, Credentials Not Provided.
09/14/2019, Disability Questionnaires an Application for Benefits, Jan Mason.
09/17/2019, Physical Therapy Evaluation, Catherine Bottorff, PT, DPT.
10/03/2019, Nursing Memorandum, Cassandra K., RN.
10/04/2019, Disability Questionnaires an Application for Benefits, Jan Mason.
10/07/2019, Progress Note, Jeffrey Kent, MD.
10/11/2019, Progress Note, Kristen Reiss, PA-C.

1

**Lincoln/Mason 0544**

10/22/2019, MRI Right Hip Arthrogram, John Campbell, MD.
10/25/2019, Progress Note, Michael Huang, MD.
10/27/2019, Peer Review, Richard Avioli, MD.
11/20/2019, Progress Note, Roger Sung, MD.
12/09/2019, Operative Report, Michael Huang, MD.
12/10/2019, Progress Note, Michael Huang, MD.
12/13/2019, Physical Therapy Initial Examination, Taylor Mark Pfeifer, PT, DPT.
12/13/2019, Physical Therapy Plan of Care, Taylor Mark Pfeifer, PT, DPT.
12/13/2019, Physical Therapy Daily Note, Taylor Mark Pfeifer, PT, DPT.
12/17/2019, Physical Therapy Daily Note, Jennifer Mulligan, PT, DPT.
12/23/2019, Progress Note, Phillip Falender, PA-C.
12/24/2019, Physical Therapy Daily Note, Kerri Anne Tiller, PT, DPT.
12/27/2019, Physical Therapy Daily Note, Taylor Mark Pfeifer, PT, DPT.
12/30/2019, Physical Therapy Daily Note, Kerri Anne Tiller, PT, DPT.
12/30/2019, Progress Note, Jeffrey Kent, MD.
01/02/2020, Physical Therapy Note, Sandi Feeney, PT, DPT.
01/06/2020, Physical Therapy Daily Note, Kerri Anne Tiller, PT, DPT.
01/10/2020, Physical Therapy Daily Note, Kerri Anne Tiller, PT, DPT.
01/14/2020, Physical Therapy Daily Note, Jennifer Mulligan, PT, DPT.
01/17/2020, Physical Therapy Daily Note, Taylor Mark Pfeifer, PT, DPT.
01/20/2020, Physical Therapy Daily Note, Kerri Anne Tiller, PT, DPT.
01/21/2020, Progress Note, Kristen Reiss, PA-C.
01/23/2020, Physical Therapy Daily Note, Kerri Anne Tiller, PT, DPT.
01/27/2020, Physical Therapy Daily Note, Kerri Anne Tiller, PT, DPT.
01/29/2020, Physical Therapy Daily Note, Taylor Mark Pfeifer, PT, DPT.
01/30/2020, MRI Left Hip Arthrogram, Nicholas Moore, MD.
01/31/2020, Progress Note, Kelsey Chrane, PA-C.
02/04/2020, Physical Therapy Daily Note, That Jennifer Mulligan, PT, DPT.
02/06/2020, Progress Note, Michael Huang, MD.
02/11/2020, Physical Therapy Daily Note, Ellen Jackson, PT.
02/12/2020, Progress Note, David Salek, MD.
02/20/2020, Physical Therapy Progress Note, Scott Moser, PT, DPT.
02/20/2020, Physical Therapy Daily Note, Scott Moser, PT, DPT.
02/25/2020, Physical Therapy Daily Note, Marc Phillips, PT, DPT.
03/03/2020, Progress Note, Jeffrey Kent, MD.
03/05/2020, Physical Therapy Daily Note, Marc Phillips, PT, DPT.
03/12/2020, Progress Note, Michael Huang, MD.
03/12/2020, Physical Therapy Daily Note, Marc Phillips, PT, DPT.
03/17/2020, Physical Therapy Daily Note, Marc Phillips, PT, DPT.
04/02/2020, Physical Therapy Note, Marc Phillips, PT, DPT.
04/09/2020, Physical Therapy Daily Note, Marc Phillips, PT, DPT.
04/16/2020, Physical Therapy Daily Note, Marc Phillips, PT, DPT.
04/23/2020, Physical Therapy Daily Note, Marc Phillips, PT, DPT.
04/30/2020, Physical Therapy Daily Note, Marc Phillips, PT, DPT.
05/01/2020, Progress Note, Michael Huang, MD.
05/07/2020, Physical Therapy Daily Note, Marc Phillips, PT, DPT.

**Lincoln/Mason 0545**

05/13/2020, Progress Note, Roger Sung, MD.
05/21/2020, Physical Therapy Daily Note, Marc Phillips, PT, DPT.
05/22/2020, Progress Note, Jeffrey Kent, MD.
06/11/2020, Procedure Note, David Salek, MD.
06/18/2020, Physical Therapy Daily Note, Marc Phillips, PT, DPT.
06/23/2020, Disability Questionnaires an Application for Benefits, Jan Mason.
07/01/2020, Progress Note, Roger Sung, MD.
07/01/2020, Medical Questionnaire, Jeffrey Kent, MD.
07/01/2020, Progress Note, Jeffrey Kent, MD.
07/09/2020, Physical Therapy Initial Examination, Marc Phillips, PT, DPT.
07/16/2020, Letter Correspondences, David Monti, MD.
07/16/2020, Peer Review, David Monti, MD.
07/16/2020, Physical Therapy Daily Note, Marc Phillips, PT, DPT.
07/21/2020, Written Request for Review, Jan Mason.
07/23/2020, Letter Correspondence, David Salek, MD.
07/23/2020, Physical Therapy Daily Note, Marc Phillips, PT, DPT.
07/31/2020, MRI Lumbar Spine, José Pizarro, MD.
08/06/2020, Physical Therapy Daily Note, Marc Phillips, PT, DPT.
08/13/2020, Physical Therapy Recertification Note, Marc Phillips, PT, DPT.
08/13/2020, Physical Therapy Daily Note, Marc Phillips, PT, DPT.
08/17/2020, Progress Note, Michael Huang, MD.
08/19/2020, Progress Note, Roger Sung, MD.
08/20/2020, Physical Therapy Daily Note, Marc Phillips, PT, DPT.
08/31/2020, Letter Correspondence, Jeffrey Kent, MD.

**HISTORY:**

I have been asked to review the medical records on behalf of ECN regarding Jan Mason. The claimant is a now 48-year-old female with a long-term disability claim from 04/17/2019. Her job title was Representative 3, Customer Service Billing. This was a sedentary position. Her primary diagnosis was pain in right hip.

On 12/18/2017, the claimant was involved in a motor vehicle accident. She was stopped in heavy traffic in the right through lane when another driver failed to come to a complete stop and collided with the rear passenger side bumper. She complained of hip and lower back pain. Moderate to severe damage was sustained to the rear passenger side bumper and quarter panel of the vehicle.

On 07/11/2018, the claimant had an x-ray the lumbosacral spine interpreted by Jon Snider, MD. This showed L3-L4 retrolisthesis and multilevel spondylosis. There was a metallic fixation of the sacroiliac joint.

On 09/12/2018, the claimant had an MRI of the pelvis and sacroiliac joints interpreted by Joseph Ugorji, DO. The report provided was not completely legible.

3

**Lincoln/Mason 0546**

On 11/27/2018, the claimant had a CT of the pelvis. This was interpreted by Nicholas Moore, MD. This demonstrated a right sacroiliac joint internal fixation without evidence of a hardware failure. There was bilateral cam type femoroacetabular impingement.

On 01/09/2019, the claimant had a fluoroscopically guided joint injection of the right hip. Her pain went from 5-6/10 to 0/10 in severity after the procedure. This was performed by Tyler Bron, MD.

On 01/09/2019, the claimant had a fluoroscopically guided joint injection of the left hip. Her pain went from 4/10 to 0/10 in severity after the procedure. This was performed by Tyler Bron, MD.

On 01/31/2019, the claimant was evaluated by Tyler Bron, MD. She complained of bilateral hip pain. She was following up after bilateral corticosteroid injections in her hips. For the initial 4-6 hours after the injection she had complete relief of her hip pain. This was only temporary and overall had not noticed any significant improvement from the injection. Her pain was worsening in the right greater than the left. She was also complaining of back pain. On physical examination of the right hip and pelvis, range of motion was limited with flexion 100°, internal rotation 0°, external rotation 15°. Range of motion elicited groin pain. Her pain was most severe with internal rotation. Her quadricep and hamstring strength was 5/5. Plantar and dorsiflexion strength was 5/5. Her sensation was intact over the lower extremity. Physical examination of the left hip and pelvis demonstrated range of motion limited with flexion 100°, internal rotation 0°, external rotation 15°. Range of motion elicited groin pain. Her pain was most severe with internal rotation. Her strength and sensory examination were intact. Her diagnostic testing was reviewed. The diagnoses were pain in right hip and pain in the left hip. Her pain was likely due to osteoarthritis versus labral pathology. An MRI arthrogram of the right hip was ordered.
On 02/11/2019, the claimant had an MRI arthrogram of the right hip. This was interpreted by Craig LaBuda, MD. This demonstrated a right hip anterior superior labral tear. There was mild, superior hip joint space narrowing and small anterior lateral femoral head-neck-osseous bump. There was a right sacroiliac joint fusion.

On 02/18/2019, the claimant followed up with Tyler Bron, MD. Her hip was still very painful. On physical examination of the right hip and pelvis, range of motion was limited with flexion to 100°, internal rotation 0°, external rotation 15°. Range of motion elicited groin pain. Her pain was most severe with internal rotation. Her quadricep and hamstring strength was 5/5. Plantar and dorsiflexion strength was 5/5. Her sensation was intact over the lower extremity. Physical examination of the left hip and pelvis demonstrated range of motion limited with flexion to 100°, internal rotation 0°, external rotation 15°. Range of motion elicited groin pain. Her pain was most severe with internal rotation. Her strength and sensory examination were intact. The MRI arthrogram was reviewed showing an anterior superior labral tear with minimal joint space narrowing, as well as signs of femoral acetabular impingement. The diagnoses were pain in the left hip, and pain in the right hip. She was referred to another physician for possible arthroscopic labral repair.

On 03/07/2019, the claimant was seen by Michael Huang, MD. She reported right hip pain over the posterior buttock area for about two years. She was treated initially for sacroiliac joint pain in

4

September 2017 with sacroiliac joint fusion. She had recovered extremely well with resolution of her symptoms until she was involved in a car accident where she was rear-ended in December 2017. She reported some groin pain but mostly felt her pain in the posterior buttock area. Her symptoms were worse with sitting, but now consistently bothering her with standing and walking. She denied numbness or tingling. She had tried rest, activity modification, anti-inflammatories including ibuprofen without benefit. She tried physical therapy without benefit. She tried chiropractic treatment and massage therapy with limited benefit. She underwent an intra-articular injection and she had four hours of complete pain resolution but did not get any benefit long-term. Her symptoms were sharp, dull, and aching and made worse with sitting and walking. She also had associated stiffness and weakness. On physical examination, her gait was antalgic. Right hip range of motion demonstrated flexion to 115°, external rotation to 55°, and internal rotation to 10°. The anterior impingement test was positive reproducing her posterior buttock pain and somewhat reproducing groin pain. There was tenderness to palpation of the posterior buttock. She had a negative straight leg raise and negative posterior impingement test. At the left hip, range of motion demonstrated flexion to 25°, external rotation to 65°, and internal rotation to 10°. Anterior and posterior impingement tests and straight leg raise were negative. There was no tenderness to palpation. Her diagnostics were reviewed. The diagnoses were pain in the right hip, and other articular cartilage disorders of the right hip. This was further discussed as right hip pain secondary to labral tear and femoral acetabular impingement. Surgical intervention was discussed and planned for.

On 04/17/2019, the claimant had a right hip labral repair, arthroscopic acetabuloplasty, femoroplasty, osteoplasty to remove cam lesion, chondroplasty, synovectomy, capsular plication performed by Michael Huang, MD.

On 04/18/2019, the claimant followed up with Kristen Reiss, PA-C. She was a one-day status post-surgery. Her pain was well-controlled. She was utilizing her post-operative hip braces and crutches. On physical examination, the right hip wounds had minimal drainage. There was mild swelling which was expected. There were no signs of infection. The diagnosis was one-day status post right hip surgery. She was given postoperative instructions and advised to follow-up in two weeks.

On 05/02/2019, the claimant followed up with Kristen Reiss, PA-C. She was two weeks status post hip surgery. Her pain was well-controlled. She was doing well with physical therapy. On physical examination, the surgical wounds were healed without signs of infection. Her sensation was intact. The diagnoses were pain in the right hip, and other articular cartilage disorders of the right hip. Her sutures were removed. She was given further instructions for routine postoperative management. She was given oxycodone.

On 06/04/2019, the claimant followed up with Michael Huang, MD. She was six weeks status post right hip surgery. She reported increasing hip pain worse than her preoperative pain. It began after she started to discontinue the crutches two weeks prior. She also presented with a new complaint of left hip pain. She states having had this since December 2017, with progressive worsening. Her left was feeling worse after bearing more weight after her surgery. The pain was in the groin and worsened with prolonged sitting, prolonged standing, and squatting. Rotational activities also increased pain. She had tried rest, activity modification and ibuprofen. She was

5

**Lincoln/Mason 0548**

attending physical therapy. On physical examination of the left hip, flexion was to 115°, external rotation to 65° and internal rotation to 10°. The anterior impingement test was positive. She had tenderness in the anterior groin.
The right hip surgical wounds were well healed without signs of infection. Range of motion of the right hip was flexion to 115°, external rotation to 50° and internal rotation to 5° with continued positive anterior impingement test. X-rays of the bilateral hips were ordered. There was well-preserved femoral acetabular joint spacing. At the left hip there was evidence of femoral, acetabular impingement cam type with alpha angle measuring 63°. The diagnoses were pain in the right hip, and other articular cartilage disorders of the right hip. She was advised to go back on crutches for about two weeks. She was given indomethacin for inflammation. In terms of the left hip, there was suspicion for underlying labral tear. They were considering MRI arthrogram of the left hip.

On 07/09/2019, the claimant followed up with Michael Huang, MD. She reported increasing right posterior buttock and lumbar spine pain. She had minimal anterior hip pain. Her hip pain was much better since her previous visit. She was doing physical therapy. She was concerned about her lumbar spine and felt her pain was radiating down her buttock to the posterior thigh and into her calf. At one point in her history, she was considering a spinal stimulator for low back pain. She described her pain as nerve pain and burning. She had occasional mild anterior groin pain with activity which she was tolerating well. On physical examination, the right hip surgical wounds were well healed. Range of motion included flexion to 110°, external rotation to 50°, internal rotation to 10° and abduction of 40°. She had minimal anterior pain with any of these tests. She had significant posterior hip pain over the sacroiliac joint and lumbar spine. Straight leg raise was negative for radicular symptoms but increased her posterior hip buttock and spine pain. She was directly tender over the superior aspect of the sacroiliac joint and the right lumbosacral junction. The diagnoses were pain in right hip and other articular alleged disorders of the right hip. She was advised to continue with physical therapy. She planned on following up with her spine surgeon for an opinion. She was continued on indomethacin.

On 07/23/2019, the claimant was evaluated by Jeffrey Kent, MD. She reported recent labral tear repair. She was having worsening pain since starting to bear weight. She reported pain in her lower back with burning pain into her right leg more than her left leg. She requested a parking pass, Xanax, and Ambien. No physical examination was provided. The diagnoses were osteoarthritis of the spine with radiculopathy, tear of the right acetabular labrum, femoral acetabular impingement of both hips, primary insomnia, and anxiety. She was advised to continue to follow with her specialists, and to continue gabapentin, Xanax, and Ambien.

On 07/29/2019, the claimant was evaluated by James Bee, MD. She complained of pain in her buttock and back. The pain was sharp, burning, and constant. It was made worse with activity such as sitting, standing, walking, and bending. It was made better by lying down. She had done physical therapy, which was stopped due to worsening symptoms. She was taking indomethacin. Her pain was 8/10. Her activities of daily living were limited secondary to her complaints. On physical examination of the lumbar spine, there was no tenderness. The flexion of the lumbar spine brought the fingertips 6 inches from the floor. Extension was approximately 15°. There was some pain at the extremes of flexion and extension. There was pain with palpation along the gluteal musculature right greater than left. There was no pain with axial compression of the head

6

**Lincoln/Mason 0549**

and no pain with trunk rotation through the hips. She had a slow reciprocating gait. She was able to walk on the toes and heels. She moved easily to the examination table without assistance. Her strength throughout the lower extremities was 5/5. Her sensation was intact bilaterally. There were no upper motor signs. Her reflexes were normal. Straight leg raise was negative bilaterally. X-rays of the lumbosacral spine demonstrated a right sacroiliac joint fusion device. There was a collapse of the disc space at L2-L3. There was subtle retrolisthesis of L3 on L4. On flexion and extension, there was no instability. Her previous MRI of the lumbar spine from 05/12/2018 was also reviewed showing degenerative changes. There was no stenosis. The diagnoses were spinal stenosis in the lumbar region with neurogenic claudication, spondylosis without myelopathy or radiculopathy lumbar region, other intervertebral disc degeneration lumbar region, other intervertebral disc degeneration lumbosacral region, and pain in the right hip. A new MRI was ordered.

On 08/06/2019, the claimant was seen by Jeffrey Kent, MD. She continued with back pain that was worse on the right and made worse with walking. Driving and bending also worsened her pain.  She was taking Ambien to facilitate sleep. She was scheduled to have her MRI the next day. She was taking indomethacin. She was requesting FMLA paperwork. She was out of work. On physical examination, she had tenderness over the sacroiliac joints worse on the right. She was referred to physiatry. The diagnosis was acute right-sided low back pain with sciatica. On 08/08/2019, the claimant had an MRI of the lumbar spine interpreted by Jacob Becker, MD. This demonstrated stability since the previous MRI from 05/12/2018. There was mild multilevel degenerative disc disease with bulges and protrusions without high-grade spinal canal or neural foraminal stenosis at any level.

On 08/19/2019, the claimant followed up with James Bee, MD. She had undergone a spinal cord stimulator trial. It had helped some of her complaints but not her mid-back problems. On physical examination, there were no significant abnormalities. Her MRI of the lumbar spine was reviewed showing degenerative changes without obvious stenosis. The diagnoses were spinal stenosis in the lumbar region with neurogenic claudication, spondylosis without myelopathy or radiculopathy lumbar region, other intervertebral disc degeneration lumbar region, other intervertebral disc degeneration lumbosacral region. She was referred back for possible permanent spinal cord stimulator.

On 08/21/2019, the claimant followed up with Roger Sung, MD. She was requesting to go ahead with a spinal cord stimulator. On physical examination, she had diffuse lumbar tenderness extending into the buttock which was not specific to the sacroiliac joint. The diagnoses were low back pain, chronic pain syndrome, and sciatica. A trial for a different spinal cord stimulator.

On 08/28/2019, the claimant was seen by David Salek, MD. Her history was summarized and consistent with previous accounts. She reported pain that was constant, sharp, and burning with radiation down her right leg into the top of her toe. Her buttock pain was more severe than the leg pain. On physical examination, she had full painless range of motion of all major muscle groups and joints. She had a positive Faber test and a positive Fortin finger test. She had positive lumbar quadrant testing. Her strength and sensation were normal. Her reflexes were normal. The diagnoses were status post right sacroiliac joint fusion, status post right hip labral tear repair, low

7

**Lincoln/Mason 0550**

back pain, right lower extremity radicular features, and positive spinal cord stimulator trial with Boston Scientific. A trial for Stimwave was requested.

On 10/07/2019, the claimant followed up with Jeffrey Kent, MD. She complained of chronic low back pain and sacroiliac joint pain. She was considering a spinal cord stimulator. She was requesting FMLA paperwork and a flu vaccine. On physical examination, she had pain and tenderness in the sacroiliac joint areas and the right inguinal region. She had a normal urinalysis. She had x-rays of the hips, which were normal. The diagnoses were chronic low back pain with sciatica. She was advised to continue with her current treatment plan. She was given a flu shot.

On 10/11/2019, the claimant was evaluated by Kristen Reiss, PA-C. She reported pain that was worse than it was prior to her surgery. She was being evaluated for possible spinal cord stimulator. The pain in the posterior buttock radiated down the posterior thigh into her calf and foot. She had a burning pain in the groin area and lateral hip pain. This seemed to increase about a month prior when she started increasing her walking. She was only walking about 2 miles a week. On physical examination, she had an antalgic gait. Her surgical wounds of the right hip were well healed. Right hip flexion was to 110°, external rotation to 50°, internal rotation to 10° and abduction to 40°. She had negative anterior and posterior impingement tests. Her straight leg raise was negative for radicular symptoms but would increase her posterior hip and buttock pain. She was tender over the superior aspect of the sacroiliac joint on the right and lumbosacral junction as well as over the anterior hip and laterally over the greater trochanter. X-rays were completed showing evidence of previous sacroiliac joint fusion in the right sacroiliac joint. The diagnoses were pain in right hip and other articular cartilage disorders of the right hip. An MRI of the right hip was ordered.

On 10/22/2019, the claimant had an MRI of the right hip with arthrogram. This was interpreted by John Campbell, MD. This demonstrated postoperative changes within the right hip. The anterior aspect of the superior labrum was diminutive and blunted. The superior aspect of the anterior labrum was diminutive and irregular. These were likely postoperative. There was no recurrent tear. There was focal intermediate signal nodularity along the acetabular articular surface adjacent to a suture anchor track at the 12 o'clock position. There was a thin linear signal along the anterior capsule just lateral to the superior aspect of the anterior labrum, which could be related to capsular plication. Mild chondral irregularity along the lateral acetabulum likely reflecting postoperative change.

On 10/25/2019, the claimant followed up with Michael Huang, MD. She was there to discuss her recent MRI. On physical examination, she had an antalgic gait. Her surgical wounds of the right hip were well healed. Right hip flexion was to 110°, external rotation to 50°, internal rotation to 10° and abduction to 40°. She had negative anterior and posterior impingement tests. Her straight leg raise was negative for radicular symptoms but would increase her posterior hip and buttock pain. She was tender over the superior aspect of the sacroiliac joint on the right and lumbosacral junction as well as over the anterior hip and laterally over the greater trochanter. Due to the MRI findings, it was felt that she should undergo surgery to repair the labral tissue. The diagnoses were pain in right hip and other articular cartilage disorders of the right hip.

8

**Lincoln/Mason 0551**

On 11/20/2019, the claimant followed up with Roger Sung, MD. She was scheduled for a right hip labrum repair for 12/09/2019. The authorization for the stimulator trial was still pending. On physical examination, she was diffusely tender across her buttocks and lower back. Thoracic and lumbosacral x-rays showing multiple levels of lumbar degeneration.
The diagnoses were pain in the thoracic spine, low back pain, other intervertebral disc degeneration lumbar region, and sciatica. It was recommended that she try the Boston Scientific spinal cord stimulator since her insurance was denying the Stimwave.

On 12/09/2019, the claimant underwent a right hip labral reconstruction, chondroplasty, acetabuloplasty, femoroplasty, osteoplasty to remove cam lesion, synovectomy, capsular closure/plication by Michael Huang, MD.

On 12/10/2019, the claimant followed up with Michael Huang, MD. She was one-day status post right hip labral reconstruction surgery. Her pain was well-controlled. She was utilizing the postoperative crutches and braces. On physical examination, the wounds were intact with minimal drainage. There was mild swelling. The diagnosis was other articular cartilage disorders of the right hip. Physical therapy was initiated.

On 12/23/2019, the claimant followed up with Phillip Falender, PA-C. She was at two weeks status post right hip labral reconstruction surgery. She was progressing well with physical therapy. On physical examination, there were no signs of infection. Hip flexion was to 90°. The Steri-Strips were removed without difficulty. The diagnosis was other articular cartilage disorders of the right hip. She was given further instruction for increasing weight-bearing and advised to continue physical therapy.

On 12/30/2019, the claimant followed up with Jeffrey Kent, MD. She had her right labral repair. She felt worse. Her pain was increased with therapy. She was still considering a spinal stimulator. She had issues with her other hip. She resigned from her cable job. On physical examination, she was tearful at times and in a brace for her right hip. Diagnoses were chronic low back pain with sciatica, sacroiliac joint pain, and tear of the right acetabular labrum. She was advised to continue her current treatment plan.

On 01/21/2020, the claimant was evaluated by Kristen Reiss, PA-C. She was six weeks status post right hip labral reconstruction. She reported her hip pain was improving. Her lower back pain, pain over the sacroiliac joint and radicular symptoms had worsened. She was also following up for her left hip pain. Physical therapy was not helpful for the left hip. On physical examination, right hip flexion was to 100°, external rotation to 40°, and internal rotation to 5°. There was tenderness over the lateral right hip and right sacroiliac joint. The left hip range of motion included flexion to 110°, external rotation to 50°, internal rotation to 5°. She had a positive anterior impingement test. The straight leg raise produced low back pain. There was tenderness over the anterior hip and laterally over the greater trochanter. X-rays were again performed of the right hip. There were no obvious abnormalities other than the previous sacroiliac joint fusion. The diagnoses were other articular cartilage disorders of the right hip, lumbar region radiculopathy, and pain in the left hip. She was advised to continue physical therapy for the right hip. She was advised to follow-up with Roger Sung, MD regarding worsening low back and sacroiliac joint pain. An MR arthrogram of the left hip was ordered.

9

**Lincoln/Mason 0552**

On 01/30/2020, the claimant had an MRI left hip with arthrogram interpreted by Nicholas Moore, MD.
This demonstrated a focal cam deformity of the anterior left femoral head neck junction with associated anterior/anterior superior labral based tear. There was a small right hip joint effusion.

On 01/31/2020, the claimant followed up with Kelsey Chrane, PA-C. Her right hip pain has significantly improved. She continued to have lower back pain interfering with her participation in physical therapy. She had imaging of her left hip. She was still anticipating a spinal cord stimulator placement. On physical examination, there was tenderness along the spinous processes and paraspinal musculature and diffusely throughout the lower back including over the right sacroiliac joint. Motor strength of the lower extremities was intact. There was pain with range of motion, primarily extension. The diagnoses were low back pain, lumbar region spinal stenosis with neurogenic claudication, other intervertebral disc degeneration of the lumbar region, intervertebral disc disorders with radiculopathy lumbar region, sacroiliitis, pain in the right hip, and pain in the left hip. She was advised to call when she was ready to proceed with the spinal cord stimulator.

On 02/06/2020, the claimant followed up with Michael Huang, MD. She was eight weeks status post-surgery. She was now using a cane. She reported achiness of the anterior hip. She had an MR arthrogram of the left hip and had returned to discuss the findings. On physical examination, hip flexion on the right was to 105°, external rotation 40°, internal rotation 5°. There was tenderness of the right lateral hip and over the sacroiliac joint. The left hip range of motion had flexion 115°, external rotation to 55°, internal rotation to 5°. There was a positive anterior impingement test. Straight leg raise caused low back pain. There was tenderness over the anterior hip and laterally over the greater trochanter. The diagnoses were other articular cartilage disorders right hip, other articular cartilage disorders left hip, and pain in the left hip. They discussed options for managing her left hip. It was decided she would continue focusing on her right hip rehabilitation program and manage her left hip pain with anti-inflammatories.

On 02/12/2020, the claimant followed up with David Salek, MD. She was referred back for pain management. She did not want opiates and was looking for alternative care. She inquired about the use of CBD. On physical examination, she had full painless range of motion of all major muscle groups and joints. She had a positive Faber test and a positive Fortin finger test. She had positive lumbar quadrant testing. The diagnoses were status post right sacroiliac joint fusion, status post right hip labral repair, low back pain, right lower extremity radicular features, and positive spinal cord stimulator trial with Boston Scientific. She was prescribed Celebrex and Tylenol.

On 03/12/2020, the claimant followed up with Michael Huang, MD. She was 12 weeks status post right hip labral reconstruction. The right hip was doing well. Her biggest issue was tremendous pain over the right greater than left sacroiliac joint and lumbar spine. She had been in physical therapy but was having difficulty weight-bearing and was using crutches. The left hip also continued to be painful, unchanged since her last visit. On physical examination, hip flexion on the right was to 110°, external rotation 45°, internal rotation 5°. There was tenderness of the right lateral hip and over the sacroiliac joint. The left hip range of motion had flexion 120°,

10

**Lincoln/Mason 0553**

external rotation to 55°, internal rotation to 5°. There was a positive anterior impingement test. Straight leg raise caused low back pain. There was tenderness over the anterior hip and laterally over the greater trochanter.

The diagnoses were other articular cartilage disorders right hip, other articular cartilage disorders left hip, and pain in the left hip. The claimant decided to return to Roger Sung, MD to discuss any further options regarding her sacroiliac joints.

On 03/03/2020, the claimant followed up with Jeffrey Kent, MD. She continued to have worsening pain in the lower back along the sacroiliac joints. She was considering a consultation with Mayo Clinic. On physical examination, she had pain with range of motion of the hip and pain in the lower back and sacroiliac joints. The diagnoses were sacroiliac joint pain, chronic midline low back pain with sciatica, and tear of the right acetabular labrum. She was advised to continue to follow with her specialists.

On 05/01/2020, the claimant followed up with Michael Huang, MD. She had been working at physical therapy on the sacroiliac joints, which had been worsening her pain. The pain was radiating laterally and anteriorly towards the hip. She continued to have significant posterior pain. She had not yet returned to Roger Sung, MD, due to the coronavirus. She was working on walking around the block. She continued to have difficulty going up and down stairs and lying supine. Her pain was 8-9/10. On physical examination, hip flexion on the right was to 115°, external rotation 45°, internal rotation 5°. There was tenderness of the right lateral hip and over the sacroiliac joint. The left lower extremity was normal with unremarkable range of motion. The diagnoses were other articular cartilage disorders right hip, and right sacroiliitis. She was advised to return to Roger Sung, MD for further evaluation and treatment of the sacroiliac joints, and to continue physical therapy.

On 05/13/2020, the claimant followed up with Roger Sung, MD. She complained of bilateral sacroiliac joint pain. On physical examination, she had tenderness over both sacroiliac joints. The diagnoses were sacroiliitis, chronic pain syndrome, and sciatica. They were going to proceed with a lidocaine-only injection in the left sacroiliac joint. She was advised to continue considering a spinal cord stimulator.

On 05/22/2020, the claimant had a follow-up with Jeffrey Kent, MD. She was doing physical therapy. She reported having a vaginal yeast infection. Her physical examination was done via video conference and was normal. The diagnoses were osteoarthritis of the spine with radiculopathy in the lumbar region, tear of the right acetabular labrum, sacroiliac joint pain, and acute vaginitis. She was given Diflucan and advised to continue following with her specialists.

On 06/11/2020, the claimant underwent a sacroiliac joint injection on the left for the diagnosis of sacroiliitis. This was performed by David Salek, MD.

On 07/01/2020, the claimant followed up with Roger Sung, MD. She had the left sacroiliac joint injection and was pain free for about two hours. On physical examination, she continued to have tenderness along bilateral sacroiliac joints. The diagnoses were other intervertebral disc degeneration lumbar region, low back pain, and sacroiliitis. She was referred back to physical therapy because her treatment was interrupted by Covid-19.

11

**Lincoln/Mason 0554**

On 07/01/2020, the claimant followed up with Jeffrey Kent, MD. She discussed the left-sided diagnostic sacroiliac joint injection.
They discussed needing rehab on the right sacroiliac joint and a possibility of fusing the left sacroiliac joint. She was considering a labral reconstruction on the left hip and a spinal cord stimulator. She continued having the right sacroiliac joint pain. She was applying to Social Security and had been denied. She requested a cyclobenzaprine refill. On physical examination, she had abnormal lower back and sacroiliac joints. The diagnoses were osteoarthritis of the spine with radiculopathy in the lumbar region, sacroiliac joint pain, and femoral acetabular impingement of both hips. Her cyclobenzaprine was refilled. She was advised to continue her current treatment plan with her specialists.

MRI of the lumbar spine from 07/31/2020 interpreted by José Pizarro, MD, demonstrated straightening of the normal lumbar lordosis. There was kyphosis L2-L3. At L1-L2, there was a central disc herniation impinging on the thecal sac causing mild spinal stenosis. At L2-L3, there was a broad central disc herniation causing mild to moderate spinal stenosis. At L3-L4, there was disc desiccation and right proximal neural foraminal disc herniation which were focal. There was mild right neural foraminal stenosis. At L5-S1, there was a central disc herniation with annular tearing, elevating the posterior longitudinal ligament causing mild spinal stenosis.

On 08/17/2020, the claimant followed up with Michael Huang, MD. She reported continued worsening pain. The pain was located over bilateral sacroiliac joint and lumbar spine. Since her last visit she had a diagnostic injection in the left sacroiliac joint, which gave her two hours a complete relief of pain. She has continued physical therapy without improvement. She continued to have bilateral lower extremity symptoms including pain, numbness, and tingling down to both feet. She had an MRI of the lumbar spine. She denied significant groin pain. She had an episode where the right lower extremity gave way resulting in a fall causing temporary numbness in her vaginal area. She rated her pain 8-9/10. She continued to use crutches for weight-bearing.  On physical examination, her gait was antalgic. Hip flexion on the right was to 115°, external rotation 45°, internal rotation 5°. There was tenderness of the right lateral hip and over the sacroiliac joint bilaterally, and lumbar spine. There were no impingement testing signs at the hip with passive range of motion. The left lower extremity was normal with unremarkable range of motion. Her most recent MRI of the lumbar spine from 07/31/2020 was reviewed. The diagnoses were other articular cartilage disorders right hip, and right sacroiliitis. She was advised to continue following with Roger Sung, MD.

On 08/19/2020, the claimant followed up with Roger Sung, MD. She felt worse with physical therapy. Her pain was in the back, both sacroiliac joint and now radiating down her legs. She had a new MRI ordered by her physical therapist. Her physical examination was normal. Her MRI was reviewed and without significant changes from her previous MRI. The diagnoses were low back pain, other intervertebral disc degeneration lumbar region, sacroiliitis, chronic pain syndrome, and sciatica. She was advised to have a new spinal cord stimulator trial due to changes in her pain pattern.

12

**Lincoln/Mason 0555**

**RESPONSE TO QUESTIONS:**

**1.  What diagnoses are supported by the medical evidence?**

The medical evidence provided supports the diagnoses of femoroacetabular impingement bilaterally, right hip labral tear, lumbar degenerative disc disease, lumbar spondylosis, and bilateral sacroiliitis.

**2.  Taking into consideration the entire clinical picture, including standards of care and evidence-based medicine, and any medication or other treatment side effects, please describe if there are any supported level of impairments which translates into restrictions and limitations from 7/21/2020 to the present? Please explain your medical rationale as to why or why not and provide a detailed explanation.**

Since 07/21/2020, the claimant had an MRI of the lumbar spine, which according to Roger Sung, MD was stable from the previous. The findings included degenerative disc disease, degenerative central spinal stenosis, and degenerative neuroforaminal stenosis. These were all mild to moderate in degree. There was no obvious impingement of exiting nerve roots. There was no visualized myelomalacia.

She had two subsequent medical visits, one with Michael Huang, MD, and one with Roger Sung, MD. She had been feeling worse in terms of her pain and symptomatology. However, there were no new physical examination findings. Her most significant and consistent physical examination findings include tenderness and decreased range of motion. She does not have any neurologic deficits. No new restrictions were given by either of the physicians.

Although the claimant has subjective complaints of pain and falls, there was a lack of functional deficits on physical examination to support the need for restrictions.

**3.  If functional impairment is supported, please describe how that translates into restrictions or limitations and for what period(s) of time. Please define in terms of frequency (never, occasional, frequent, constant) and task (sit, stand, lift/carry, type etc.). Please explain your medical rationale for any restrictions or limitations or why restrictions and limitations are not supported.**

Functional impairment is not supported by the documentation from 07/21/2020 to present.

**4.  Does the medical documentation support that any medical condition alone, or in combination would preclude the claimant from sustained occupational functioning on a full-time basis? Please explain why or why not.**

Based on the provided medical documentation since 07/21/2020, there is no evidence that would preclude the claimant from sustained occupational functioning on a full-time basis.

**5.  When contacting the treating provider please discuss the claimant's condition, treatment, and functional capacity. Please indicate the information reviewed and indicate**

13

**Lincoln/Mason 0556**

**whether or not you reach consensus with the treating provider. If not, please discuss your final assessment after the call.**

**AP CONTACT:**

I called the number listed (719-632-7669) on 9/4/20 at 11:08am CST and left a message for a return call on Kirsten's general office voicemail.

I called the number listed (719-632-7669) on 9/10/20 at 11:10am CST and left a message for a return call on Kirsten's general office voicemail.

I called the number listed (719-278-3627) on 9/4/20 at 11:47am CST and spoke with Jennifer and left a message for a return call.

My staff received a return call from Dr. Kent on 9/9/20 at 4:10pm CST and I was unable to take the call. A message was left for a return call to an alternate number (719-799-0784).

I called the alternate number (719-799-0784) on 9/10/20 at 11:15am CST and left a message for a return call on Dr. Kent's general voicemail.

At the time of submission, no return calls have been received.

**Daniel Fung, M.D.**
**Board Certified Physical Medicine & Rehabilitation**
**Board Certified Pain Medicine**
**License: A107358 CA**

14

**Lincoln/Mason 0557**



Exam Coordinators Network · A division of Genex Services, LLC

Corporate Office

Claimant Name: Jan Mason
Claim Number: 9291624
Case Number: 156002-1

"I, Daniel Fung, MD, am a physician duly licensed to practice medicine in the State of **CA** . I am an independent contractor and I am paid to review claim files and render medical opinions. I am not responsible for deciding whether a claimant is entitled to insurance benefits. My role is to provide objective medical opinions to Genex Services, LLC.

I hereby attest that the following statements are true:

- I have the scope of licensure or certification that typically manages the medical condition, procedure, treatment or issue under review
- I have current, relevant knowledge to render an opinion for the case under review
- No financial incentive was received based on the outcome of the opinion
- No delegation of the examination rendered

I attest that no conflict of interest exists, this includes any situation where an individual has a material, professional, familial, or financial conflict of interest regarding any of the following:

- Compensation for IME/Peer Review activities that are dependent in any way on the specific outcome of the case
- Have involvement with the case prior to its referral for review
- The referring entity
- The health benefit plan
- The consumer
- The attending provider or any other advisor previously involved in the case
- The facility at which the recommended healthcare service(s) would be provided
- The developer or manufacturer of the principal drug, device, procedure, or other therapy being recommended for the customer

I declare that the information contained in the above-referenced report was prepared by and is the work product of the undersigned and is true to the best of my knowledge and information. I certify that my medical/professional license is current and is in good standing in the jurisdiction in which my practice is located.

_____     9.14.2020
Signature of Physician                                              Date

Medical/Professional License # A107358 CA

**Lincoln/Mason 0558**

## Daniel Fung, M.D.
## Board Certified Physical Medicine & Rehabilitation
## Board Certified Pain Medicine

**CLAIMANT NAME:** Jan Mason
**ECN #:** 156002-1
**CLAIM #:** 9291624
**DATE OF LOSS:** 04/17/2019
**DATE OF REVIEW:** 09/14/2020
**CASE TYPE:** Long-Term Disability

**DIAGNOSIS:** Pain in right hip

**MEDICAL RECORDS REVIEWED:**
11/11/2015, Job Description, Charter Communications.
12/19/2017, State of Colorado Traffic Accident Report, Richard DuVall, Credentials Not Provided.
07/11/2018, X-Ray Lumbar Spine, Jon Snider, MD.
09/12/2018, MRI Pelvis and Sacroiliac Joints, Joseph Ugorji, DO.
11/27/2018, CT Pelvis, Nicholas Moore, MD.
01/09/2019, Fluoroscopically Guided Injection of the Right Hip Imaging, Jacob Becker, MD.
01/09/2019, Fluoroscopically Guided Injection of the Left Hip Imaging, Jacob Becker, MD.
01/31/2019, Progress Note, Tyler Bron, MD.
02/11/2019, MRI Arthrogram Right Hip, Craig LaBuda, MD.
02/18/2019, Progress Note, Tyler Bron, MD.
03/07/2019, Progress Note, Michael Huang, MD.
04/17/2019, Operative Report, Michael Huang, MD, MD.
04/18/2019, Progress Note, Kristen Reiss, PA-C.
05/02/2019, Progress Note, Kristen Reiss, PA-C.
06/04/2019, Progress Note, Michael Huang, MD.
07/09/2019, Progress Note, Michael Huang, MD.
07/23/2019, Progress Note, Jeffrey Kent, MD.
07/29/2019, Progress Note, James Bee, MD.
08/06/2019, Progress Note, Jeffrey Kent, MD.
08/08/2019, MRI Lumbar Spine, Jacob Becker, MD.
08/19/2019, Progress Note, James Bee, MD.
08/21/2019, Progress Note, Roger Sung, MD.
08/28/2019, Progress Note, David Salek, MD.
09/03/2019, Long-Term Disability Claim Creation Request, Ethan Crockett, Credentials Not Provided.
09/14/2019, Disability Questionnaires an Application for Benefits, Jan Mason.
09/17/2019, Physical Therapy Evaluation, Catherine Bottorff, PT, DPT.
10/03/2019, Nursing Memorandum, Cassandra K., RN.
10/04/2019, Disability Questionnaires an Application for Benefits, Jan Mason.
10/07/2019, Progress Note, Jeffrey Kent, MD.
10/11/2019, Progress Note, Kristen Reiss, PA-C.

**Lincoln/Mason 0559**

10/22/2019, MRI Right Hip Arthrogram, John Campbell, MD.
10/25/2019, Progress Note, Michael Huang, MD.
10/27/2019, Peer Review, Richard Avioli, MD.
11/20/2019, Progress Note, Roger Sung, MD.
12/09/2019, Operative Report, Michael Huang, MD.
12/10/2019, Progress Note, Michael Huang, MD.
12/13/2019, Physical Therapy Initial Examination, Taylor Mark Pfeifer, PT, DPT.
12/13/2019, Physical Therapy Plan of Care, Taylor Mark Pfeifer, PT, DPT.
12/13/2019, Physical Therapy Daily Note, Taylor Mark Pfeifer, PT, DPT.
12/17/2019, Physical Therapy Daily Note, Jennifer Mulligan, PT, DPT.
12/23/2019, Progress Note, Phillip Falender, PA-C.
12/24/2019, Physical Therapy Daily Note, Kerri Anne Tiller, PT, DPT.
12/27/2019, Physical Therapy Daily Note, Taylor Mark Pfeifer, PT, DPT.
12/30/2019, Physical Therapy Daily Note, Kerri Anne Tiller, PT, DPT.
12/30/2019, Progress Note, Jeffrey Kent, MD.
01/02/2020, Physical Therapy Note, Sandi Feeney, PT, DPT.
01/06/2020, Physical Therapy Daily Note, Kerri Anne Tiller, PT, DPT.
01/10/2020, Physical Therapy Daily Note, Kerri Anne Tiller, PT, DPT.
01/14/2020, Physical Therapy Daily Note, Jennifer Mulligan, PT, DPT.
01/17/2020, Physical Therapy Daily Note, Taylor Mark Pfeifer, PT, DPT.
01/20/2020, Physical Therapy Daily Note, Kerri Anne Tiller, PT, DPT.
01/21/2020, Progress Note, Kristen Reiss, PA-C.
01/23/2020, Physical Therapy Daily Note, Kerri Anne Tiller, PT, DPT.
01/27/2020, Physical Therapy Daily Note, Kerri Anne Tiller, PT, DPT.
01/29/2020, Physical Therapy Daily Note, Taylor Mark Pfeifer, PT, DPT.
01/30/2020, MRI Left Hip Arthrogram, Nicholas Moore, MD.
01/31/2020, Progress Note, Kelsey Chrane, PA-C.
02/04/2020, Physical Therapy Daily Note, That Jennifer Mulligan, PT, DPT.
02/06/2020, Progress Note, Michael Huang, MD.
02/11/2020, Physical Therapy Daily Note, Ellen Jackson, PT.
02/12/2020, Progress Note, David Salek, MD.
02/20/2020, Physical Therapy Progress Note, Scott Moser, PT, DPT.
02/20/2020, Physical Therapy Daily Note, Scott Moser, PT, DPT.
02/25/2020, Physical Therapy Daily Note, Marc Phillips, PT, DPT.
03/03/2020, Progress Note, Jeffrey Kent, MD.
03/05/2020, Physical Therapy Daily Note, Marc Phillips, PT, DPT.
03/12/2020, Progress Note, Michael Huang, MD.
03/12/2020, Physical Therapy Daily Note, Marc Phillips, PT, DPT.
03/17/2020, Physical Therapy Daily Note, Marc Phillips, PT, DPT.
04/02/2020, Physical Therapy Note, Marc Phillips, PT, DPT.
04/09/2020, Physical Therapy Daily Note, Marc Phillips, PT, DPT.
04/16/2020, Physical Therapy Daily Note, Marc Phillips, PT, DPT.
04/23/2020, Physical Therapy Daily Note, Marc Phillips, PT, DPT.
04/30/2020, Physical Therapy Daily Note, Marc Phillips, PT, DPT.
05/01/2020, Progress Note, Michael Huang, MD.
05/07/2020, Physical Therapy Daily Note, Marc Phillips, PT, DPT.

**Lincoln/Mason 0560**

05/13/2020, Progress Note, Roger Sung, MD.
05/21/2020, Physical Therapy Daily Note, Marc Phillips, PT, DPT.
05/22/2020, Progress Note, Jeffrey Kent, MD.
06/11/2020, Procedure Note, David Salek, MD.
06/18/2020, Physical Therapy Daily Note, Marc Phillips, PT, DPT.
06/23/2020, Disability Questionnaires an Application for Benefits, Jan Mason.
07/01/2020, Progress Note, Roger Sung, MD.
07/01/2020, Medical Questionnaire, Jeffrey Kent, MD.
07/01/2020, Progress Note, Jeffrey Kent, MD.
07/09/2020, Physical Therapy Initial Examination, Marc Phillips, PT, DPT.
07/16/2020, Letter Correspondences, David Monti, MD.
07/16/2020, Peer Review, David Monti, MD.
07/16/2020, Physical Therapy Daily Note, Marc Phillips, PT, DPT.
07/21/2020, Written Request for Review, Jan Mason.
07/23/2020, Letter Correspondence, David Salek, MD.
07/23/2020, Physical Therapy Daily Note, Marc Phillips, PT, DPT.
07/31/2020, MRI Lumbar Spine, José Pizarro, MD.
08/06/2020, Physical Therapy Daily Note, Marc Phillips, PT, DPT.
08/13/2020, Physical Therapy Recertification Note, Marc Phillips, PT, DPT.
08/13/2020, Physical Therapy Daily Note, Marc Phillips, PT, DPT.
08/17/2020, Progress Note, Michael Huang, MD.
08/19/2020, Progress Note, Roger Sung, MD.
08/20/2020, Physical Therapy Daily Note, Marc Phillips, PT, DPT.
08/31/2020, Letter Correspondence, Jeffrey Kent, MD.

**HISTORY:**

I have been asked to review the medical records on behalf of ECN regarding Jan Mason. The claimant is a now 48-year-old female with a long-term disability claim from 04/17/2019. Her job title was Representative 3, Customer Service Billing. This was a sedentary position. Her primary diagnosis was pain in right hip.

On 12/18/2017, the claimant was involved in a motor vehicle accident. She was stopped in heavy traffic in the right through lane when another driver failed to come to a complete stop and collided with the rear passenger side bumper. She complained of hip and lower back pain. Moderate to severe damage was sustained to the rear passenger side bumper and quarter panel of the vehicle.

On 07/11/2018, the claimant had an x-ray the lumbosacral spine interpreted by Jon Snider, MD. This showed L3-L4 retrolisthesis and multilevel spondylosis. There was a metallic fixation of the sacroiliac joint.

On 09/12/2018, the claimant had an MRI of the pelvis and sacroiliac joints interpreted by Joseph Ugorji, DO. The report provided was not completely legible.

3

**Lincoln/Mason 0561**

On 11/27/2018, the claimant had a CT of the pelvis. This was interpreted by Nicholas Moore, MD. This demonstrated a right sacroiliac joint internal fixation without evidence of a hardware failure. There was bilateral cam type femoroacetabular impingement.

On 01/09/2019, the claimant had a fluoroscopically guided joint injection of the right hip. Her pain went from 5-6/10 to 0/10 in severity after the procedure. This was performed by Tyler Bron, MD.

On 01/09/2019, the claimant had a fluoroscopically guided joint injection of the left hip. Her pain went from 4/10 to 0/10 in severity after the procedure. This was performed by Tyler Bron, MD.

On 01/31/2019, the claimant was evaluated by Tyler Bron, MD. She complained of bilateral hip pain. She was following up after bilateral corticosteroid injections in her hips. For the initial 4-6 hours after the injection she had complete relief of her hip pain. This was only temporary and overall had not noticed any significant improvement from the injection. Her pain was worsening in the right greater than the left. She was also complaining of back pain. On physical examination of the right hip and pelvis, range of motion was limited with flexion 100°, internal rotation 0°, external rotation 15°. Range of motion elicited groin pain. Her pain was most severe with internal rotation. Her quadricep and hamstring strength was 5/5. Plantar and dorsiflexion strength was 5/5. Her sensation was intact over the lower extremity. Physical examination of the left hip and pelvis demonstrated range of motion limited with flexion 100°, internal rotation 0°, external rotation 15°. Range of motion elicited groin pain. Her pain was most severe with internal rotation. Her strength and sensory examination were intact. Her diagnostic testing was reviewed. The diagnoses were pain in right hip and pain in the left hip. Her pain was likely due to osteoarthritis versus labral pathology. An MRI arthrogram of the right hip was ordered.
On 02/11/2019, the claimant had an MRI arthrogram of the right hip. This was interpreted by Craig LaBuda, MD. This demonstrated a right hip anterior superior labral tear. There was mild, superior hip joint space narrowing and small anterior lateral femoral head-neck-osseous bump. There was a right sacroiliac joint fusion.

On 02/18/2019, the claimant followed up with Tyler Bron, MD. Her hip was still very painful. On physical examination of the right hip and pelvis, range of motion was limited with flexion to 100°, internal rotation 0°, external rotation 15°. Range of motion elicited groin pain. Her pain was most severe with internal rotation. Her quadricep and hamstring strength was 5/5. Plantar and dorsiflexion strength was 5/5. Her sensation was intact over the lower extremity. Physical examination of the left hip and pelvis demonstrated range of motion limited with flexion to 100°, internal rotation 0°, external rotation 15°. Range of motion elicited groin pain. Her pain was most severe with internal rotation. Her strength and sensory examination were intact. The MRI arthrogram was reviewed showing an anterior superior labral tear with minimal joint space narrowing, as well as signs of femoral acetabular impingement. The diagnoses were pain in the left hip, and pain in the right hip. She was referred to another physician for possible arthroscopic labral repair.

On 03/07/2019, the claimant was seen by Michael Huang, MD. She reported right hip pain over the posterior buttock area for about two years. She was treated initially for sacroiliac joint pain in

4

**Lincoln/Mason 0562**

September 2017 with sacroiliac joint fusion. She had recovered extremely well with resolution of her symptoms until she was involved in a car accident where she was rear-ended in December 2017. She reported some groin pain but mostly felt her pain in the posterior buttock area. Her symptoms were worse with sitting, but now consistently bothering her with standing and walking. She denied numbness or tingling. She had tried rest, activity modification, anti-inflammatories including ibuprofen without benefit. She tried physical therapy without benefit. She tried chiropractic treatment and massage therapy with limited benefit. She underwent an intra-articular injection and she had four hours of complete pain resolution but did not get any benefit long-term. Her symptoms were sharp, dull, and aching and made worse with sitting and walking. She also had associated stiffness and weakness. On physical examination, her gait was antalgic. Right hip range of motion demonstrated flexion to 115°, external rotation to 55°, and internal rotation to 10°. The anterior impingement test was positive reproducing her posterior buttock pain and somewhat reproducing groin pain. There was tenderness to palpation of the posterior buttock. She had a negative straight leg raise and negative posterior impingement test. At the left hip, range of motion demonstrated flexion to 25°, external rotation to 65°, and internal rotation to 10°. Anterior and posterior impingement tests and straight leg raise were negative. There was no tenderness to palpation. Her diagnostics were reviewed. The diagnoses were pain in the right hip, and other articular cartilage disorders of the right hip. This was further discussed as right hip pain secondary to labral tear and femoral acetabular impingement. Surgical intervention was discussed and planned for.

On 04/17/2019, the claimant had a right hip labral repair, arthroscopic acetabuloplasty, femoroplasty, osteoplasty to remove cam lesion, chondroplasty, synovectomy, capsular plication performed by Michael Huang, MD.

On 04/18/2019, the claimant followed up with Kristen Reiss, PA-C. She was a one-day status post-surgery. Her pain was well-controlled. She was utilizing her post-operative hip braces and crutches. On physical examination, the right hip wounds had minimal drainage. There was mild swelling which was expected. There were no signs of infection. The diagnosis was one-day status post right hip surgery. She was given postoperative instructions and advised to follow-up in two weeks.

On 05/02/2019, the claimant followed up with Kristen Reiss, PA-C. She was two weeks status post hip surgery. Her pain was well-controlled. She was doing well with physical therapy. On physical examination, the surgical wounds were healed without signs of infection. Her sensation was intact. The diagnoses were pain in the right hip, and other articular cartilage disorders of the right hip. Her sutures were removed. She was given further instructions for routine postoperative management. She was given oxycodone.

On 06/04/2019, the claimant followed up with Michael Huang, MD. She was six weeks status post right hip surgery. She reported increasing hip pain worse than her preoperative pain. It began after she started to discontinue the crutches two weeks prior. She also presented with a new complaint of left hip pain. She states having had this since December 2017, with progressive worsening. Her left was feeling worse after bearing more weight after her surgery. The pain was in the groin and worsened with prolonged sitting, prolonged standing, and squatting. Rotational activities also increased pain. She had tried rest, activity modification and ibuprofen. She was

5

**Lincoln/Mason 0563**

attending physical therapy. On physical examination of the left hip, flexion was to 115°, external rotation to 65° and internal rotation to 10°. The anterior impingement test was positive. She had tenderness in the anterior groin.

The right hip surgical wounds were well healed without signs of infection. Range of motion of the right hip was flexion to 115°, external rotation to 50° and internal rotation to 5° with continued positive anterior impingement test. X-rays of the bilateral hips were ordered. There was well-preserved femoral acetabular joint spacing. At the left hip there was evidence of femoral, acetabular impingement cam type with alpha angle measuring 63°. The diagnoses were pain in the right hip, and other articular cartilage disorders of the right hip. She was advised to go back on crutches for about two weeks. She was given indomethacin for inflammation. In terms of the left hip, there was suspicion for underlying labral tear. They were considering MRI arthrogram of the left hip.

On 07/09/2019, the claimant followed up with Michael Huang, MD. She reported increasing right posterior buttock and lumbar spine pain. She had minimal anterior hip pain. Her hip pain was much better since her previous visit. She was doing physical therapy. She was concerned about her lumbar spine and felt her pain was radiating down her buttock to the posterior thigh and into her calf. At one point in her history, she was considering a spinal stimulator for low back pain. She described her pain as nerve pain and burning. She had occasional mild anterior groin pain with activity which she was tolerating well. On physical examination, the right hip surgical wounds were well healed. Range of motion included flexion to 110°, external rotation to 50°, internal rotation to 10° and abduction of 40°. She had minimal anterior pain with any of these tests. She had significant posterior hip pain over the sacroiliac joint and lumbar spine. Straight leg raise was negative for radicular symptoms but increased her posterior hip buttock and spine pain. She was directly tender over the superior aspect of the sacroiliac joint and the right lumbosacral junction. The diagnoses were pain in right hip and other articular alleged disorders of the right hip. She was advised to continue with physical therapy. She planned on following up with her spine surgeon for an opinion. She was continued on indomethacin.

On 07/23/2019, the claimant was evaluated by Jeffrey Kent, MD. She reported recent labral tear repair. She was having worsening pain since starting to bear weight. She reported pain in her lower back with burning pain into her right leg more than her left leg. She requested a parking pass, Xanax, and Ambien. No physical examination was provided. The diagnoses were osteoarthritis of the spine with radiculopathy, tear of the right acetabular labrum, femoral acetabular impingement of both hips, primary insomnia, and anxiety. She was advised to continue to follow with her specialists, and to continue gabapentin, Xanax, and Ambien.

On 07/29/2019, the claimant was evaluated by James Bee, MD. She complained of pain in her buttock and back. The pain was sharp, burning, and constant. It was made worse with activity such as sitting, standing, walking, and bending. It was made better by lying down. She had done physical therapy, which was stopped due to worsening symptoms. She was taking indomethacin. Her pain was 8/10. Her activities of daily living were limited secondary to her complaints. On physical examination of the lumbar spine, there was no tenderness. The flexion of the lumbar spine brought the fingertips 6 inches from the floor. Extension was approximately 15°. There was some pain at the extremes of flexion and extension. There was pain with palpation along the gluteal musculature right greater than left. There was no pain with axial compression of the head

**Lincoln/Mason 0564**

and no pain with trunk rotation through the hips. She had a slow reciprocating gait. She was able to walk on the toes and heels. She moved easily to the examination table without assistance. Her strength throughout the lower extremities was 5/5. Her sensation was intact bilaterally. There were no upper motor signs. Her reflexes were normal. Straight leg raise was negative bilaterally. X-rays of the lumbosacral spine demonstrated a right sacroiliac joint fusion device. There was a collapse of the disc space at L2-L3. There was subtle retrolisthesis of L3 on L4. On flexion and extension, there was no instability. Her previous MRI of the lumbar spine from 05/12/2018 was also reviewed showing degenerative changes. There was no stenosis. The diagnoses were spinal stenosis in the lumbar region with neurogenic claudication, spondylosis without myelopathy or radiculopathy lumbar region, other intervertebral disc degeneration lumbar region, other intervertebral disc degeneration lumbosacral region, and pain in the right hip. A new MRI was ordered.

On 08/06/2019, the claimant was seen by Jeffrey Kent, MD. She continued with back pain that was worse on the right and made worse with walking. Driving and bending also worsened her pain.  She was taking Ambien to facilitate sleep. She was scheduled to have her MRI the next day. She was taking indomethacin. She was requesting FMLA paperwork. She was out of work. On physical examination, she had tenderness over the sacroiliac joints worse on the right. She was referred to physiatry. The diagnosis was acute right-sided low back pain with sciatica. On 08/08/2019, the claimant had an MRI of the lumbar spine interpreted by Jacob Becker, MD. This demonstrated stability since the previous MRI from 05/12/2018. There was mild multilevel degenerative disc disease with bulges and protrusions without high-grade spinal canal or neural foraminal stenosis at any level.

On 08/19/2019, the claimant followed up with James Bee, MD. She had undergone a spinal cord stimulator trial. It had helped some of her complaints but not her mid-back problems. On physical examination, there were no significant abnormalities. Her MRI of the lumbar spine was reviewed showing degenerative changes without obvious stenosis. The diagnoses were spinal stenosis in the lumbar region with neurogenic claudication, spondylosis without myelopathy or radiculopathy lumbar region, other intervertebral disc degeneration lumbar region, other intervertebral disc degeneration lumbosacral region. She was referred back for possible permanent spinal cord stimulator.

On 08/21/2019, the claimant followed up with Roger Sung, MD. She was requesting to go ahead with a spinal cord stimulator. On physical examination, she had diffuse lumbar tenderness extending into the buttock which was not specific to the sacroiliac joint. The diagnoses were low back pain, chronic pain syndrome, and sciatica. A trial for a different spinal cord stimulator.

On 08/28/2019, the claimant was seen by David Salek, MD. Her history was summarized and consistent with previous accounts. She reported pain that was constant, sharp, and burning with radiation down her right leg into the top of her toe. Her buttock pain was more severe than the leg pain. On physical examination, she had full painless range of motion of all major muscle groups and joints. She had a positive Faber test and a positive Fortin finger test. She had positive lumbar quadrant testing. Her strength and sensation were normal. Her reflexes were normal. The diagnoses were status post right sacroiliac joint fusion, status post right hip labral tear repair, low

7

**Lincoln/Mason 0565**

back pain, right lower extremity radicular features, and positive spinal cord stimulator trial with Boston Scientific. A trial for Stimwave was requested.

On 10/07/2019, the claimant followed up with Jeffrey Kent, MD. She complained of chronic low back pain and sacroiliac joint pain. She was considering a spinal cord stimulator. She was requesting FMLA paperwork and a flu vaccine. On physical examination, she had pain and tenderness in the sacroiliac joint areas and the right inguinal region. She had a normal urinalysis. She had x-rays of the hips, which were normal. The diagnoses were chronic low back pain with sciatica. She was advised to continue with her current treatment plan. She was given a flu shot.

On 10/11/2019, the claimant was evaluated by Kristen Reiss, PA-C. She reported pain that was worse than it was prior to her surgery. She was being evaluated for possible spinal cord stimulator. The pain in the posterior buttock radiated down the posterior thigh into her calf and foot. She had a burning pain in the groin area and lateral hip pain. This seemed to increase about a month prior when she started increasing her walking. She was only walking about 2 miles a week. On physical examination, she had an antalgic gait. Her surgical wounds of the right hip were well healed. Right hip flexion was to 110°, external rotation to 50°, internal rotation to 10° and abduction to 40°. She had negative anterior and posterior impingement tests. Her straight leg raise was negative for radicular symptoms but would increase her posterior hip and buttock pain. She was tender over the superior aspect of the sacroiliac joint on the right and lumbosacral junction as well as over the anterior hip and laterally over the greater trochanter. X-rays were completed showing evidence of previous sacroiliac joint fusion in the right sacroiliac joint. The diagnoses were pain in right hip and other articular cartilage disorders of the right hip. An MRI of the right hip was ordered.

On 10/22/2019, the claimant had an MRI of the right hip with arthrogram. This was interpreted by John Campbell, MD. This demonstrated postoperative changes within the right hip. The anterior aspect of the superior labrum was diminutive and blunted. The superior aspect of the anterior labrum was diminutive and irregular. These were likely postoperative. There was no recurrent tear. There was focal intermediate signal nodularity along the acetabular articular surface adjacent to a suture anchor track at the 12 o'clock position. There was a thin linear signal along the anterior capsule just lateral to the superior aspect of the anterior labrum, which could be related to capsular plication. Mild chondral irregularity along the lateral acetabulum likely reflecting postoperative change.

On 10/25/2019, the claimant followed up with Michael Huang, MD. She was there to discuss her recent MRI. On physical examination, she had an antalgic gait. Her surgical wounds of the right hip were well healed. Right hip flexion was to 110°, external rotation to 50°, internal rotation to 10° and abduction to 40°. She had negative anterior and posterior impingement tests. Her straight leg raise was negative for radicular symptoms but would increase her posterior hip and buttock pain. She was tender over the superior aspect of the sacroiliac joint on the right and lumbosacral junction as well as over the anterior hip and laterally over the greater trochanter. Due to the MRI findings, it was felt that she should undergo surgery to repair the labral tissue. The diagnoses were pain in right hip and other articular cartilage disorders of the right hip.

8

**Lincoln/Mason 0566**

On 11/20/2019, the claimant followed up with Roger Sung, MD. She was scheduled for a right hip labrum repair for 12/09/2019. The authorization for the stimulator trial was still pending. On physical examination, she was diffusely tender across her buttocks and lower back. Thoracic and lumbosacral x-rays showing multiple levels of lumbar degeneration.
The diagnoses were pain in the thoracic spine, low back pain, other intervertebral disc degeneration lumbar region, and sciatica. It was recommended that she try the Boston Scientific spinal cord stimulator since her insurance was denying the Stimwave.

On 12/09/2019, the claimant underwent a right hip labral reconstruction, chondroplasty, acetabuloplasty, femoroplasty, osteoplasty to remove cam lesion, synovectomy, capsular closure/plication by Michael Huang, MD.

On 12/10/2019, the claimant followed up with Michael Huang, MD. She was one-day status post right hip labral reconstruction surgery. Her pain was well-controlled. She was utilizing the postoperative crutches and braces. On physical examination, the wounds were intact with minimal drainage. There was mild swelling. The diagnosis was other articular cartilage disorders of the right hip. Physical therapy was initiated.

On 12/23/2019, the claimant followed up with Phillip Falender, PA-C. She was at two weeks status post right hip labral reconstruction surgery. She was progressing well with physical therapy. On physical examination, there were no signs of infection. Hip flexion was to 90°. The Steri-Strips were removed without difficulty. The diagnosis was other articular cartilage disorders of the right hip. She was given further instruction for increasing weight-bearing and advised to continue physical therapy.

On 12/30/2019, the claimant followed up with Jeffrey Kent, MD. She had her right labral repair. She felt worse. Her pain was increased with therapy. She was still considering a spinal stimulator. She had issues with her other hip. She resigned from her cable job. On physical examination, she was tearful at times and in a brace for her right hip. Diagnoses were chronic low back pain with sciatica, sacroiliac joint pain, and tear of the right acetabular labrum. She was advised to continue her current treatment plan.

On 01/21/2020, the claimant was evaluated by Kristen Reiss, PA-C. She was six weeks status post right hip labral reconstruction. She reported her hip pain was improving. Her lower back pain, pain over the sacroiliac joint and radicular symptoms had worsened. She was also following up for her left hip pain. Physical therapy was not helpful for the left hip. On physical examination, right hip flexion was to 100°, external rotation to 40°, and internal rotation to 5°. There was tenderness over the lateral right hip and right sacroiliac joint. The left hip range of motion included flexion to 110°, external rotation to 50°, internal rotation to 5°. She had a positive anterior impingement test. The straight leg raise produced low back pain. There was tenderness over the anterior hip and laterally over the greater trochanter. X-rays were again performed of the right hip. There were no obvious abnormalities other than the previous sacroiliac joint fusion. The diagnoses were other articular cartilage disorders of the right hip, lumbar region radiculopathy, and pain in the left hip. She was advised to continue physical therapy for the right hip. She was advised to follow-up with Roger Sung, MD regarding worsening low back and sacroiliac joint pain. An MR arthrogram of the left hip was ordered.

9

**Lincoln/Mason 0567**

On 01/30/2020, the claimant had an MRI left hip with arthrogram interpreted by Nicholas Moore, MD.
This demonstrated a focal cam deformity of the anterior left femoral head neck junction with associated anterior/anterior superior labral based tear. There was a small right hip joint effusion.

On 01/31/2020, the claimant followed up with Kelsey Chrane, PA-C. Her right hip pain has significantly improved. She continued to have lower back pain interfering with her participation in physical therapy. She had imaging of her left hip. She was still anticipating a spinal cord stimulator placement. On physical examination, there was tenderness along the spinous processes and paraspinal musculature and diffusely throughout the lower back including over the right sacroiliac joint. Motor strength of the lower extremities was intact. There was pain with range of motion, primarily extension. The diagnoses were low back pain, lumbar region spinal stenosis with neurogenic claudication, other intervertebral disc degeneration of the lumbar region, intervertebral disc disorders with radiculopathy lumbar region, sacroiliitis, pain in the right hip, and pain in the left hip. She was advised to call when she was ready to proceed with the spinal cord stimulator.

On 02/06/2020, the claimant followed up with Michael Huang, MD. She was eight weeks status post-surgery. She was now using a cane. She reported achiness of the anterior hip. She had an MR arthrogram of the left hip and had returned to discuss the findings. On physical examination, hip flexion on the right was to 105°, external rotation 40°, internal rotation 5°. There was tenderness of the right lateral hip and over the sacroiliac joint. The left hip range of motion had flexion 115°, external rotation to 55°, internal rotation to 5°. There was a positive anterior impingement test. Straight leg raise caused low back pain. There was tenderness over the anterior hip and laterally over the greater trochanter. The diagnoses were other articular cartilage disorders right hip, other articular cartilage disorders left hip, and pain in the left hip. They discussed options for managing her left hip. It was decided she would continue focusing on her right hip rehabilitation program and manage her left hip pain with anti-inflammatories.

On 02/12/2020, the claimant followed up with David Salek, MD. She was referred back for pain management. She did not want opiates and was looking for alternative care. She inquired about the use of CBD. On physical examination, she had full painless range of motion of all major muscle groups and joints. She had a positive Faber test and a positive Fortin finger test. She had positive lumbar quadrant testing. The diagnoses were status post right sacroiliac joint fusion, status post right hip labral repair, low back pain, right lower extremity radicular features, and positive spinal cord stimulator trial with Boston Scientific. She was prescribed Celebrex and Tylenol.

On 03/12/2020, the claimant followed up with Michael Huang, MD. She was 12 weeks status post right hip labral reconstruction. The right hip was doing well. Her biggest issue was tremendous pain over the right greater than left sacroiliac joint and lumbar spine. She had been in physical therapy but was having difficulty weight-bearing and was using crutches. The left hip also continued to be painful, unchanged since her last visit. On physical examination, hip flexion on the right was to 110°, external rotation 45°, internal rotation 5°. There was tenderness of the right lateral hip and over the sacroiliac joint. The left hip range of motion had flexion 120°,

10

**Lincoln/Mason 0568**

external rotation to 55°, internal rotation to 5°. There was a positive anterior impingement test. Straight leg raise caused low back pain. There was tenderness over the anterior hip and laterally over the greater trochanter.

The diagnoses were other articular cartilage disorders right hip, other articular cartilage disorders left hip, and pain in the left hip. The claimant decided to return to Roger Sung, MD to discuss any further options regarding her sacroiliac joints.

On 03/03/2020, the claimant followed up with Jeffrey Kent, MD. She continued to have worsening pain in the lower back along the sacroiliac joints. She was considering a consultation with Mayo Clinic. On physical examination, she had pain with range of motion of the hip and pain in the lower back and sacroiliac joints. The diagnoses were sacroiliac joint pain, chronic midline low back pain with sciatica, and tear of the right acetabular labrum. She was advised to continue to follow with her specialists.

On 05/01/2020, the claimant followed up with Michael Huang, MD. She had been working at physical therapy on the sacroiliac joints, which had been worsening her pain. The pain was radiating laterally and anteriorly towards the hip. She continued to have significant posterior pain. She had not yet returned to Roger Sung, MD, due to the coronavirus. She was working on walking around the block. She continued to have difficulty going up and down stairs and lying supine. Her pain was 8-9/10. On physical examination, hip flexion on the right was to 115°, external rotation 45°, internal rotation 5°. There was tenderness of the right lateral hip and over the sacroiliac joint. The left lower extremity was normal with unremarkable range of motion. The diagnoses were other articular cartilage disorders right hip, and right sacroiliitis. She was advised to return to Roger Sung, MD for further evaluation and treatment of the sacroiliac joints, and to continue physical therapy.

On 05/13/2020, the claimant followed up with Roger Sung, MD. She complained of bilateral sacroiliac joint pain. On physical examination, she had tenderness over both sacroiliac joints. The diagnoses were sacroiliitis, chronic pain syndrome, and sciatica. They were going to proceed with a lidocaine-only injection in the left sacroiliac joint. She was advised to continue considering a spinal cord stimulator.

On 05/22/2020, the claimant had a follow-up with Jeffrey Kent, MD. She was doing physical therapy. She reported having a vaginal yeast infection. Her physical examination was done via video conference and was normal. The diagnoses were osteoarthritis of the spine with radiculopathy in the lumbar region, tear of the right acetabular labrum, sacroiliac joint pain, and acute vaginitis. She was given Diflucan and advised to continue following with her specialists.

On 06/11/2020, the claimant underwent a sacroiliac joint injection on the left for the diagnosis of sacroiliitis. This was performed by David Salek, MD.

On 07/01/2020, the claimant followed up with Roger Sung, MD. She had the left sacroiliac joint injection and was pain free for about two hours. On physical examination, she continued to have tenderness along bilateral sacroiliac joints. The diagnoses were other intervertebral disc degeneration lumbar region, low back pain, and sacroiliitis. She was referred back to physical therapy because her treatment was interrupted by Covid-19.

11

**Lincoln/Mason 0569**

On 07/01/2020, the claimant followed up with Jeffrey Kent, MD. She discussed the left-sided diagnostic sacroiliac joint injection.
They discussed needing rehab on the right sacroiliac joint and a possibility of fusing the left sacroiliac joint. She was considering a labral reconstruction on the left hip and a spinal cord stimulator. She continued having the right sacroiliac joint pain. She was applying to Social Security and had been denied. She requested a cyclobenzaprine refill. On physical examination, she had abnormal lower back and sacroiliac joints. The diagnoses were osteoarthritis of the spine with radiculopathy in the lumbar region, sacroiliac joint pain, and femoral acetabular impingement of both hips. Her cyclobenzaprine was refilled. She was advised to continue her current treatment plan with her specialists.

MRI of the lumbar spine from 07/31/2020 interpreted by José Pizarro, MD, demonstrated straightening of the normal lumbar lordosis. There was kyphosis L2-L3. At L1-L2, there was a central disc herniation impinging on the thecal sac causing mild spinal stenosis. At L2-L3, there was a broad central disc herniation causing mild to moderate spinal stenosis. At L3-L4, there was disc desiccation and right proximal neural foraminal disc herniation which were focal. There was mild right neural foraminal stenosis. At L5-S1, there was a central disc herniation with annular tearing, elevating the posterior longitudinal ligament causing mild spinal stenosis.

On 08/17/2020, the claimant followed up with Michael Huang, MD. She reported continued worsening pain. The pain was located over bilateral sacroiliac joint and lumbar spine. Since her last visit she had a diagnostic injection in the left sacroiliac joint, which gave her two hours a complete relief of pain. She has continued physical therapy without improvement. She continued to have bilateral lower extremity symptoms including pain, numbness, and tingling down to both feet. She had an MRI of the lumbar spine. She denied significant groin pain. She had an episode where the right lower extremity gave way resulting in a fall causing temporary numbness in her vaginal area. She rated her pain 8-9/10. She continued to use crutches for weight-bearing.  On physical examination, her gait was antalgic. Hip flexion on the right was to 115°, external rotation 45°, internal rotation 5°. There was tenderness of the right lateral hip and over the sacroiliac joint bilaterally, and lumbar spine. There were no impingement testing signs at the hip with passive range of motion. The left lower extremity was normal with unremarkable range of motion. Her most recent MRI of the lumbar spine from 07/31/2020 was reviewed. The diagnoses were other articular cartilage disorders right hip, and right sacroiliitis. She was advised to continue following with Roger Sung, MD.

On 08/19/2020, the claimant followed up with Roger Sung, MD. She felt worse with physical therapy. Her pain was in the back, both sacroiliac joint and now radiating down her legs. She had a new MRI ordered by her physical therapist. Her physical examination was normal. Her MRI was reviewed and without significant changes from her previous MRI. The diagnoses were low back pain, other intervertebral disc degeneration lumbar region, sacroiliitis, chronic pain syndrome, and sciatica. She was advised to have a new spinal cord stimulator trial due to changes in her pain pattern.

12

Lincoln/Mason 0570

**RESPONSE TO QUESTIONS:**

**1.  What diagnoses are supported by the medical evidence?**

The medical evidence provided supports the diagnoses of femoroacetabular impingement bilaterally, right hip labral tear, lumbar degenerative disc disease, lumbar spondylosis, and bilateral sacroiliitis.

**2.  Taking into consideration the entire clinical picture, including standards of care and evidence-based medicine, and any medication or other treatment side effects, please describe if there are any supported level of impairments which translates into restrictions and limitations from 7/21/2020 to the present? Please explain your medical rationale as to why or why not and provide a detailed explanation.**

Since 07/21/2020, the claimant had an MRI of the lumbar spine, which according to Roger Sung, MD was stable from the previous. The findings included degenerative disc disease, degenerative central spinal stenosis, and degenerative neuroforaminal stenosis. These were all mild to moderate in degree. There was no obvious impingement of exiting nerve roots. There was no visualized myelomalacia.

She had two subsequent medical visits, one with Michael Huang, MD, and one with Roger Sung, MD. She had been feeling worse in terms of her pain and symptomatology. However, there were no new physical examination findings. Her most significant and consistent physical examination findings include tenderness and decreased range of motion. She does not have any neurologic deficits. No new restrictions were given by either of the physicians.

Although the claimant has subjective complaints of pain and falls, there was a lack of functional deficits on physical examination to support the need for restrictions.

**3.  If functional impairment is supported, please describe how that translates into restrictions or limitations and for what period(s) of time. Please define in terms of frequency (never, occasional, frequent, constant) and task (sit, stand, lift/carry, type etc.). Please explain your medical rationale for any restrictions or limitations or why restrictions and limitations are not supported.**

Functional impairment is not supported by the documentation from 07/21/2020 to present.

**4.  Does the medical documentation support that any medical condition alone, or in combination would preclude the claimant from sustained occupational functioning on a full-time basis? Please explain why or why not.**

Based on the provided medical documentation since 07/21/2020, there is no evidence that would preclude the claimant from sustained occupational functioning on a full-time basis.

**5.  When contacting the treating provider please discuss the claimant's condition, treatment, and functional capacity. Please indicate the information reviewed and indicate**

**Lincoln/Mason 0571**

**whether or not you reach consensus with the treating provider. If not, please discuss your final assessment after the call.**

**AP CONTACT:**

I called the number listed (719-632-7669) on 9/4/20 at 11:08am CST and left a message for a return call on Kirsten's general office voicemail.

I called the number listed (719-632-7669) on 9/10/20 at 11:10am CST and left a message for a return call on Kirsten's general office voicemail.

I called the number listed (719-278-3627) on 9/4/20 at 11:47am CST and spoke with Jennifer and left a message for a return call.

My staff received a return call from Dr. Kent on 9/9/20 at 4:10pm CST and I was unable to take the call. A message was left for a return call to an alternate number (719-799-0784).

I called the alternate number (719-799-0784) on 9/10/20 at 11:15am CST and left a message for a return call on Dr. Kent's general voicemail.

At the time of submission, no return calls have been received.

**Daniel Fung, M.D.**
**Board Certified Physical Medicine & Rehabilitation**
**Board Certified Pain Medicine**
**License: A107358 CA**

14

**Lincoln/Mason 0572**



**Corporate Office**
6111 Broken Sound Parkway NW, Suite 207
Boca Raton, Florida 33487
**Toll Free:** (877) 463-9463
**Local:** (561) 922-5200
**Fax:** (561) 392-5881

**E-mail:** info@ecnime.com  •  **Web:** www.ecnime.com

Claimant Name: Jan Mason
Claim Number: 9291624
Case Number: 156002-1

"I, Daniel Fung, MD, am a physician duly licensed to practice medicine in the State of __CA_____. I am an independent contractor and I am paid to review claim files and render medical opinions. I am not responsible for deciding whether a claimant is entitled to insurance benefits. My role is to provide objective medical opinions to Genex Services, LLC.

I hereby attest that the following statements are true:

- I have the scope of licensure or certification that typically manages the medical condition, procedure, treatment or issue under review
- I have current, relevant knowledge to render an opinion for the case under review
- No financial incentive was received based on the outcome of the opinion
- No delegation of the examination rendered

I attest that no conflict of interest exists, this includes any situation where an individual has a material, professional, familial, or financial conflict of interest regarding any of the following:

- Compensation for IME/Peer Review activities that are dependent in any way on the specific outcome of the case
- Have involvement with the case prior to its referral for review
- The referring entity
- The health benefit plan
- The consumer
- The attending provider or any other advisor previously involved in the case
- The facility at which the recommended healthcare service(s) would be provided
- The developer or manufacturer of the principal drug, device, procedure, or other therapy being recommended for the customer

I declare that the information contained in the above-referenced report was prepared by and is the work product of the undersigned and is true to the best of my knowledge and information. I certify that my medical/professional license is current and is in good standing in the jurisdiction in which my practice is located.

_____    9.14.2020
Signature of Physician                                                    Date

Medical/Professional License # __A107358 CA_____

**Lincoln/Mason 0573**



**Exam Coordinators Network**  A division of Genex Services, LLC

Corporate Office
6111 Broken Sound Parkway NW, Suite 207
Boca Raton, Florida 33487
**Toll Free: (877) 463-9463**
Local: (561) 922-5200
Fax: (561) 392-5881

E-mail: info@ecnime.com    Web: www.ecnime.com

**Invoice:**    **BOCA 91551**

*Bill To:*

**Mary Avrett**
**Lincoln Financial-London, KY**
**P.O. Box 7207**
**London, KY  40742**

**Date**    **9/15/2020**

| | |
|---|---|
| **Claim #** | 9291624 |
| **Date of Loss:** | 4/17/2019 |
| **ECN #** | 156002-1 |
| **Account #** | |

**Claimant**    Jan Mason

| | | |
|---|---|---|
| 9/2/2020 | Peer Review - Long Term Disability: Service<br>Provider: Daniel Fung, MD<br>Specialty: PMR/Pain Management | $660.00 |

| | |
|---|---|
| **SubTotal** | $660.00 |
| **Final Invoice Total** | $660.00 |

*Remit To:*
Exam Coordinators Network
440 E. Swedesford Road
Suite 3000
Wayne, PA  19087

THANK YOU FOR THE OPPORTUNITY TO PROVIDE THIS
SERVICE FOR YOU. PLEASE REMIT PAYMENT PROMPTLY.

Terms:  Net 30 days
Tax Id #: 95-3327434

**Lincoln/Mason 0574**

**From:**Clinical Referral and Triage <Shelley.Plaisted@lfg.com>
**Sent:**Tue, 1 Sep 2020 14:09:33 +0000
**To:**Avrett, Mary
**Subject:**Urgent: Send Medicals to Peer Review Claim 9291624

Your referral for claim number 9291624 has been sent to an external vendor as no ICP is available to handle it

- Sent to Vendor: Exam Coordinators – ECN
- Email records to: legacy@ecnime.com

**Lincoln/Mason 0575**

ICP Memo

| Customer Name | Claimant Name | Claim Number |
|---|---|---|
| CHARTER COMMUNICATIONS, INC. | JAN MASON | 9291624 |

| Referred By: | Mary Avrett | Claimant DOB: | |
|---|---|---|---|
| Referral Date: | 08/31/2020 | Job Title: | REP 3, CUST SVC BILLING |
| Due Date: | 09/14/2020 | Medical/ Surgical Condition: | bilateral hip and low back pain |
| Referral Type: | Appeal Referral | Disability Occupational Type: | |
| Reason for Priority Handling: | | Product Type: | LTD |
| Other Considerations | | LDW: | 04/16/2019 |
| Report Date: | | DOD: | 04/17/2019 |
| Physical Demands: | | BBD: | 10/16/2019 |
| Non-Medical Issue: | No | Non-Medical Issue Details: | |

Core Questions

6. If AP contact may clarify any significant areas such as diagnosis, R&L's, treatment opportunities, prognosis, or reason for work absence, the AP contact information is:

Name: Dr. Sung and Dr. Huang       Phone Number: 1 (719) 632 7669 ex -----     Fax Number: (719) 632-0088
Document 2 attempts within 5 business days with initial and final memorandum as indicated, as well as AP letter

Other Dr. Kent (719) 278-3627, fax (719) 623-2101

Additional Questions

Other Questions: 1) What diagnoses are supported by the medical evidence? 2) Taking into consideration the entire clinical picture, including standards of care and evidence based medicine, and any medication or other treatment side effects, please describe if there are any supported level of impairments which translates into restrictions and limitations from 7/21/2020 to the present? Please explain your medical rationale as to why or why not and provide a detailed explanation. 3) If functional impairment is supported, please describe how that translates into restrictions or limitations and for what period(s) of time. Please define in terms of frequency (never, occasional, frequent, constant) and task (sit, stand, lift/carry, type etc). Please explain your medical rationale for any restrictions or limitations

**Lincoln/Mason 0576**

or why restrictions or limitations are not supported. 4) Does the medical documentation support that any medical condition alone, or in combination would preclude the claimant from sustained occupational functioning on a full-time basis?  Please explain why or why not. 5) When contacting the treating provider please discuss the claimant's condition, treatment, and functional capacity. Please indicate the information reviewed and indicate whether or not you reached consensus with the treating provider. If not, please discuss your final assessment after the call.


Other Comments
Other Comments - null

**Lincoln/Mason 0577**



UCHealth Aspen Creek Medical Center
9480 Briar Village Point STE 200
COLORADO SPRINGS CO 80920
O: 719-278-3627
F: 719-623-2101

**uchealth.org**

August 31, 2020
Lincoln financial group
Group benefits disability claims
PO Box 7213
London, KY 40742–7213
Fax 6034301926

Re:        **Jan K Mason** (DOB:              )

To Whom It May Concern:

I am the primary care physician for Ms. Jan Mason. This kind but unfortunate woman has had numerous injuries and chronic low back pain. Patient has a low back pain related to multiple injuries and the surgery. She has had a history of a fall on her tailbone with subsequent SI joint fusion on her R side. She unfortunately had a motor vehicle accident 2 weeks after her SI fusion surgery. This is set her back as significantly. She has gone on to 2 hip surgeries to repair labral tear of the right hip.

All the above injuries and problems have led to continued to difficulties throughout this entire year with her daily tasks. He has ongoing difficulties with mobility with chronic pain. He is being considered for spinal cord stimulator. She has been on numerous other medications but this has been minimized. She continues to have difficulties.

Ms. Mason has had ongoing debility with severe disability out this entire year. He has been unable to work in 2020 and I do not anticipate return to work prior to the end of this year. She needs to remain on long-term disability.

Recent imaging has shown central disc herniations at L1-L2 with spinal stenosis as well as broad central disc herniation at L2-L3 causing moderate spinal stenosis and right neural foraminal disc herniation at L3-L4 and a central disc herniation at L5-S1 with annular tearing and impingement on the thecal sac. These findings are in addition to chronic SI joint pain bilateral hip pain and chronic lower back pain. Please continue her long-term disability benefits throughout this year with reassessment at the end of the year.

If you have any questions or concerns, please don't hesitate to call.

Sincerely,

Electronically signed by:
Jeffrey Kent, MD
Dept: 719-278-3627
8/31/2020, 12:35 AM

Jan K Mason                                    DOB:                              1 of 1

**Lincoln/Mason 0578**

**From:**Jana M <
**Sent:**Mon, 31 Aug 2020 07:59:18 -0600
**To:**DisabilityDocuments
**Subject:**Jan Mason 9291624
**Attachments:**Screenshot_2020-08-31-07-55-51(1).png

***This email is from an external source. Only open links and attachments from a Trusted Sender.***

**Lincoln/Mason 0579**

08/27/2020    10:11 Fyzical/Peyton                                    (FAX)719 495 8685           P.001/010

# FAX

**FYZICAL Therapy and Balance Centers**
506 Golden Street Suite 120
Calhan, CO 80808
P: 719-347-2399 F: 719-495-8685

**FYZICAL**
Therapy & Balance Centers

To: Lincoln
Fax number: 603.430.1926

From: Braelynn
Fax number: 719-495-8685

Date: 8-27-2020

Regarding: Jan Mason

Phone number for follow-up:
719-495-3133 X161

Comments:

Requested medical records

NUMBER OF PAGES ___8___ (Including Cover Sheet)

The information contained on the following pages contains private health
information and is solely intended for the recipient listed below. If you have
mistakenly received this information, please return via US Postal Service to the
address above. Thank you.

PAGE 1/10 * RCVD AT 8/27/2020 1:35:30 PM [Eastern Daylight Time] * SVR: VA1PWFAX201/3 * DNIS:5034301926 * CSID:719 495 8685 * ANI:17194958685 * DURATION (mm-ss):02-48

**Lincoln/Mason 0580**

**Lincoln/Mason 0581**

08/27/2020    10:11 Fyzical/Peyton                          (FAX)719 495 8685          P.003/010

**Fyzical Therapy and Balance Centers -
Gleneagle**
12229 Voyager Pkwy, Suite 150
Colorado Springs, CO 80921-3601
Phone: (719)488-0120                      **Daily Note /**
Fax: (719)488-1427                         **Billing Sheet**
www.falconpt.com

Patient Name: Mason, Jan K.                       Date of Daily Note: 08/20/2020
Date of Birth:                                    Injury/Onset/Change of Status Date: 07/01/2020
Referring Physician(s): Sung, Roger MD            Diagnosis: ICD10: M54.5: Low back pain
Date of Original Eval: 07/09/2020                 Visit No.: 5
Treatment Diagnosis: ICD10: M54.5: Low back pain  Insurance Name: Self Pay

## Subjective

**Current Complaints / Gains:** Patient states her low back pain is very flared up and she is having difficulty doing anything at the house and is unable to drive most of the time.
**Aggravating Factors:** Sitting, Standing, Walking, Stairs - up, Stairs - down, Sit to stand, Bending
**Home Health Care:** No
**Medical History:** High Blood Pressure, please see e-doc
**Complicating/Personal Factors:** Mechanism of injury/ Illness, Multiple Treatment Areas, Patient age
**Mental Status/Cognitive Function Appears Impaired?** No
**Current Medications:** Other (see Edoc)

## Objective

| CPT® Code | Direct Timed Codes | Units |
|---|---|---|
| 97140 | Manual Therapy | 0 |
| | STM | |
| | LE Stretching | |
| | Joint mobilization | |
| | Distraction | |
| $40 | Self pay | 2 |

CPT copyright 2019 American Medical Association. All rights reserved.

## Assessment

**Assessment/Diagnosis:** Patient able to tolerate increased manual therapy allowing for improved movement post treatment.
**Rehab Potential:** Good
**Patient Problems:**
- Difficulty with walking, transfers, bending, sitting, standing
**Short Term Goals:**
1: (4 Weeks) | 25% | Patient will be able to bend over to 75% of normal ROM |
2: (6 Weeks) | 25% | Patient will be able to stand for 15 minutes without difficulty or pain. |
**Long Term Goals:**
1: (8 Weeks) | 25% | Patient will be able to perform transfers without difficulty |
2: (8 Weeks) | 25% | Patient will be able to sit for at least 30 minutes without an increase in pain or difficulty |
3: (12 Weeks) | Patient will be able to walk for at least 10 minutes without an increase in pain or difficulty. |

## Plan

**Instructions:** Progressing Patient Next Visit

*Marc Phillips* PT, DPT, OCS

Marc Phillips, PT, DPT, OCS
License #9745
*Electronically Signed by Marc Phillips, PT, DPT, OCS on August 25, 2020 at 7:30 am*

PAGE 3/10 * RCVD AT 8/27/2020 1:36:30 PM [Eastern Daylight Time] * SVR:VA1PWFAX201/3 * DNIS:5034301926 * CSID:719 495 8685 * ANI:17194958685 * DURATION (mm-ss):02-48

**Lincoln/Mason 0582**

08/27/2020    10:12 Fyzical/Peyton                          (FAX)719 495 8685        P.004/010

**Fyzical Therapy and Balance Centers - Gleneagle**
12229 Voyager Pkwy, Suite 150
Colorado Springs, CO 80921-3601
Phone: (719)488-0120
Fax: (719)488-1427
www.falconpt.com

**Daily Note /**
**Billing Sheet**

**FYZICAL**
Therapy & Balance Centers

**Patient Name:** Mason, Jan K.
**Date of Birth:**
**Referring Physician(s):** Sung, Roger MD
**Date of Original Eval:** 07/09/2020
**Treatment Diagnosis:** ICD10: M54.5: Low back pain

**Date of Daily Note:** 08/13/2020
**Injury/Onset/Change of Status Date:** 07/01/2020
**Diagnosis:** ICD10: M54.5: Low back pain
**Visit No.:** 4
**Insurance Name:** Self Pay

**Subjective**
**Current Complaints / Gains:** Patient has difficulty with walking, working, driving, transfers, sitting and standing.
**Pain Location:** L - spine
   **Pain Scale: Worst:** 6 **Best:** 3 **Current:** 5  *Previous Findings as of 07/09/2020 - Worst:9 Best:2 Current:6
   **Pain Follow-up Plan:** Manual therapy
**Aggravating Factors:** Sitting, Standing, Walking, Stairs - up, Stairs - down, Sit to stand, Bending
**Home Health Care:** No
**Medical History:** High Blood Pressure, please see e-doc
**Complicating/Personal Factors:** Mechanism of injury/ illness, Multiple Treatment Areas, Patient age
**Mental Status/Cognitive Function Appears Impaired?** No
**Current Medications:** Other (see Edoc)

**Objective**

| CPT® Code | Direct Timed Codes | Units |
|---|---|---|
| 97140 | Manual Therapy | 0 |
| | STM | |
| | LE Stretching | |
| | Joint mobilization | |
| | Distraction | |
| $40 | Self pay | 2 |

CPT copyright 2019 American Medical Association. All rights reserved.

**Assessment**
**Assessment/Diagnosis:** Patient is a 48 year old female reporting to PT with continued severe pain in her back, SI region and hips (R>L). Patient has significant functional limitations including, but not limited to mobility, driving, transfers and staying in one position for extended periods of time. Patient is also unable to work at this time due to such significant pain and lumbar dysfunction.
**Rehab Potential:** Good
**Patient Problems:**
- Difficulty with walking, transfers, bending, sitting, standing
**Short Term Goals:**
1: (4 Weeks) | 25% | Patient will be able to bend over to 75% of normal ROM |
2: (6 Weeks) | 25% | Patient will be able to stand for 15 minutes without difficulty or pain. |
**Long Term Goals:**
1: (8 Weeks) | 25% | Patient will be able to perform transfers without difficulty |
2: (8 Weeks) | 25% | Patient will be able to sit for at least 30 minutes without an increase in pain or difficulty |
3: (12 Weeks) | Patient will be able to walk for at least 10 minutes without an increase in pain or difficulty. |

Lincoln/Mason 0583

08/27/2020    10:12 Fyzical/Peyton                                    (FAX)719 495 8685        P.005/010

**Fyzical Therapy and Balance Centers -
Gleneagle**
12229 Voyager Pkwy, Suite 150
Colorado Springs, CO 80921-3601
Phone: (719)488-0120
Fax: (719)488-1427
www.falconpt.com

**Daily Note /
Billing Sheet**

Patient Name: Mason, Jan K.
Date of Birth:
Document Date: 08/13/2020

**Plan**
**Instructions:** Progressing Patient Next Visit

_Marc Phillips_ PT, DPT, OCS

Marc Phillips, PT, DPT, OCS
License #9745
*Electronically Signed by Marc Phillips, PT, DPT, OCS on August 18, 2020 at 9:34 pm*

Lincoln/Mason 0584

08/27/2020    10:12 Fyzical/Peyton                          (FAX)719 495 8685        P.006/010

**Fyzical Therapy and Balance Centers -
Gleneagle**
12229 Voyager Pkwy, Suite 150
Colorado Springs, CO 80921-3601
Phone: (719)488-0120
Fax: (719)488-1427
www.falconpt.com

**Physical Therapy
Recertification
Note**



**Patient Name:** Mason, Jan K.
**Date of Birth:**
**Referring Physician(s):** Sung, Roger MD
**Date of Original Eval:** 07/09/2020
**Treatment Diagnosis:** ICD10: M54.5: Low back pain

**Date of Recertification:** 08/13/2020
**Injury/Onset/Change of Status Date:** 07/01/2020
**Diagnosis:** ICD10: M54.5: Low back pain
**Visit No.:** 4

## Subjective:

**History of Present Condition/Mechanism of Injury:** Patient is a 48 year old female with LBP related to multiple injuries and a surgery. Patient has history of fall on her tailbone and SI joint fusion on R side and subsequent MVA two weeks after SI fusion. Patient also has had two hip surgeries to repair labral tears on her R hip and is now having significant low back pain of a constant nature. Patient states she has difficulty with all daily tasks and has an especially difficult time with mobility.
**Current Complaints / Gains:** Patient has difficulty with walking, working, driving, transfers, sitting and standing.
**Pain Location:** L - spine
  **Pain Scale: Worst: 8 Best: 3 Current: 5** *Previous Findings as of 07/09/2020 - Worst:9 Best:2 Current:6*
  **Pain Follow-up Plan:** Manual therapy
**Aggravating Factors:** Sitting, Standing, Walking, Stairs - up, Stairs - down, Sit to stand, Bending
**General Health:** Fair
**Home Health Care:** No
**Medical History:** High Blood Pressure, please see e-doc
**Complicating/Personal Factors:** Mechanism of injury/ Illness, Multiple Treatment Areas, Patient age
**Medical History Review:** The patient has a history of present problem with a history of 1-2 personal factors and/or comorbidities that impact the plan of care.
**Mental Status/Cognitive Function Appears Impaired?** No
**Current Medications:** Other (see Edoc)

## Objective

**Inspection**

**Patient Consent**
Patient/Parent/Guardian Consent          Yes
**Body Mass Index**
Weight                                   170
Height                                   66
Units                                    lbs/in
Index                                    27.44
Followup Plan                            Encourage activity

**Outcome Measurement Tools**                      *Previous Findings as of 07/09/2020*

**Spine**
Modified Oswestry Low    72% disability            76
Back Pain

**Observation**

**Gait**          Antalgic

**Assistive Device**
Type          Single Point Cane
Hand Used     Left

**Range of Motion**                               *Previous Findings as of 07/09/2020*

Lincoln/Mason 0585

08/27/2020   10:13 Fyzical/Peyton                                    (FAX)719 495 8685        P.007/010

**Fyzical Therapy and Balance Centers -**
**Gleneagle**                                                      Patient Name: Mason, Jan K.
12229 Voyager Pkwy, Suite 150                                      Date of Birth:
Colorado Springs, CO 80921-3601                                    Document Date: 08/13/2020
Phone: (719)488-0120
Fax: (719)488-1427                          **Physical Therapy**
www.falconpt.com                            **Recertification**
                                                  **Note**

**Lumbar AROM**

| | | |
|---|---|---|
| Forward Bending | 25% | 25% |
| Backward Bending | 10% | 10% |
| Right Rotation | 50% | 50% |
| Left Rotation | 25% | 25% |

**Strength**                                               *Previous Findings as of 07/09/2020

**Gross Muscle Tests**
**Lower**

**Hip**

| | Right | Left | | |
|---|---|---|---|---|
| Hip Flexion | 4-/5 | 4/5 | 4-/5 | 4/5 |
| Hip Extension | 3+/5 | 4/5 | 3+/5 | 4/5 |
| Hip Abduction | 3+/5 | 3+/5 | 3/5 | 3+/5 |

**Neuro-Vascular**

| | Right | Left |
|---|---|---|
| Quadrant Testing | Positive | Negative |

**Special Tests**                                          *Previous Findings as of 07/09/2020

| Labrum Integrity Hip | Right | | Left | |
|---|---|---|---|---|
| FABER | Not Tested | Negative | Not Tested | Negative |
| | Due to post op status | | Due to post op status | |

**Palpation**

**Comments**        Patient has pain with palpation over lumbar paraspinals and hip region.

**Assessment**

**Assessment/Diagnosis:** Patient is a 48 year old female reporting to PT with continued severe pain in her back, SI region and hips (R>L). Patient has significant functional limitations including, but not limited to mobility, driving, transfers and staying in one position for extended periods of time. Patient is also unable to work at this time due to such significant pain and lumbar dysfunction.
**Patient Clinical Presentation:** The clinical presentation is evolving with changing characteristics.
**Rehab Potential:** Good
**Patient Problems:**
- Difficulty with walking, transfers, bending, sitting, standing
**Short Term Goals:**
1: (4 Weeks) | 25% | Patient will be able to bend over to 75% of normal ROM |
2: (8 Weeks) | 25% | Patient will be able to stand for 15 minutes without difficulty or pain. |
**Long Term Goals:**
1: (8 Weeks) | 25% | Patient will be able to perform transfers without difficulty |
2: (8 Weeks) | 25% | Patient will be able to sit for at least 30 minutes without an increase in pain or difficulty |
3: (12 Weeks) | Patient will be able to walk for at least 10 minutes without an increase in pain or difficulty. |

**Plan**
**Frequency:** 1-2 times a week

Lincoln/Mason 0586

08/27/2020    10:13 Fyzical/Peyton                                    (FAX)719 495 8685        P.008/010

**Fyzical Therapy and Balance Centers - Gleneagle**
12229 Voyager Pkwy, Suite 150
Colorado Springs, CO 80921-3601
Phone: (719)488-0120
Fax: (719)488-1427
www.falconpt.com

## Physical Therapy Recertification Note

Patient Name: Mason, Jan K.
Date of Birth:
Document Date: 08/13/2020

**Duration:** 12 weeks
**Treatment to be provided:**
**Procedures**
Therapeutic Exercises, Therapeutic Activity, Gait Training, Neuromuscular Rehabilitation, Manual Therapy, Patient Education

**Modalities**
To Improve (Pain Relief, Decrease Inflammation, Increase Blood Flow, Improve Tissue Healing), Electrical Stimulation, Ultrasound/Phonophoresis, Cryotherapy, Hot Packs

**Certification of Medical Necessity:** It will be understood that the treatment plan mentioned above is certified medically necessary by the documenting therapist and referring physician mentioned in this report. Unless the physician indicates otherwise through written correspondence with our office, all further referrals will act as certification of medical necessity on the treatment plan indicated above.

Thank you for this referral. If you have questions regarding this plan of care, please contact me at (719)488-0120.

Please sign and return: Fax#: (719)488-1427

I certify the need for these services furnished under this plan of treatment and while under my care.

___ I have no revisions to the plan of care.
___ Revise the plan of care as follows_____
_____

Marc Phillips, PT, DPT, OCS
License #9745
*Electronically Signed by Marc Phillips, PT, DPT, OCS on August 18, 2020 at 9:34 am*

Physician Signature_____
                              R. Sung, MD

Date:_____    Time:_____

**Lincoln/Mason 0587**

08/27/2020    10:13 Fyzical/Peyton                         (FAX)719 495 8685        P.009/010

**Fyzical Therapy and Balance Centers - Gleneagle**
12229 Voyager Pkwy, Suite 150
Colorado Springs, CO 80921-3601
Phone: (719)488-0120
Fax: (719)488-1427
www.falconpt.com

**Daily Note / Billing Sheet**

**FYZICAL**
Therapy & Balance Centers

**Patient Name:** Mason, Jan K.
**Date of Birth:**
**Referring Physician(s):** Sung, Roger MD
**Date of Original Eval:** 07/09/2020
**Treatment Diagnosis:** ICD10: M54.5: Low back pain

**Date of Daily Note:** 08/06/2020
**Injury/Onset/Change of Status Date:** 07/01/2020
**Diagnosis:** ICD10: M54.5: Low back pain
**Visit No.:** 3
**Insurance Name:** Self Pay

## Subjective

**Current Complaints / Gains:** Patient states her back/hip pain are causing her to have difficulty with walking and stepping up and down stairs.
**Aggravating Factors:** Sitting, Standing, Walking, Stairs - up, Stairs - down, Sit to stand, Bending
**Home Health Care:** No
**Medical History:** High Blood Pressure, please see e-doc
**Complicating/Personal Factors:** Mechanism of injury/ Illness, Multiple Treatment Areas, Patient age
**Mental Status/Cognitive Function Appears Impaired?** No
**Current Medications:** Other (see Edoc)

## Objective

| CPT® Code | Direct Timed Codes | Units |
|---|---|---|
| 97140 | Manual Therapy | 0 |
| | STM | |
| | LE Stretching | |
| | Joint mobilization | |
| | Distraction | |
| $40 | Self pay | 2 |

CPT copyright 2019 American Medical Association. All rights reserved.

## Assessment

**Assessment/Diagnosis:** Patient exhibiting improved core stabilization during ther ex, however has difficulty with transfers due to pain.
**Rehab Potential:** Good
**Patient Problems:**
- Difficulty with walking, transfers, bending, sitting, standing
**Short Term Goals:**
1: (4 Weeks) | Patient will be able to bend over to 75% of normal ROM |
2: (6 Weeks) | Patient will be able to stand for 15 minutes without difficulty or pain. |
**Long Term Goals:**
1: (8 Weeks) | Patient will be able to perform transfers without difficulty |
2: (8 Weeks) | Patient will be able to sit for at least 30 minutes without an increase in pain or difficulty |
3: (12 Weeks) | Patient will be able to walk for at least 10 minutes without an increase in pain or difficulty. |

## Plan

**Instructions:** Progressing Patient Next Visit

*Marc Phillips* PT, DPT, OCS

Marc Phillips, PT, DPT, OCS
License #9745
*Electronically Signed by Marc Phillips, PT, DPT, OCS on August 11, 2020 at 9:36 pm*

Lincoln/Mason 0588

08/27/2020    10:13 Fyzical/Peyton                                      (FAX)719 495 8685        P.010/010

**Fyzical Therapy and Balance Centers -
Gleneagle**
12229 Voyager Pkwy, Suite 150
Colorado Springs, CO 80921-3601
Phone: (719)488-0120
Fax: (719)488-1427
www.falconpt.com

**Daily Note /
Billing Sheet**

FYZICAL
Therapy & Balance Centers

Patient Name: Mason, Jan K.
Date of Birth:
Referring Physician(s): HUANG, MICHAEL J, MD
Date of Original Eval: 12/13/2019
Treatment Diagnosis: ICD10: M25.151: Fistula, right hip

Date of Daily Note: 07/23/2020
Injury/Onset/Change of Status Date: 12/13/2019
Diagnosis: ICD10: M25.151: Fistula, right hip
Visit No.: 34
Insurance Name: KAISER PERMANENTE

## Subjective

Current Complaints / Gains: Patient states she is having difficulty with walking due to pain and muscle tightness.
Home Health Care: No
Medical History: High Blood Pressure, please see e-doc
Complicating/Personal Factors: Mechanism of injury/ Illness, Multiple Treatment Areas, Patient age
Mental Status/Cognitive Function Appears Impaired? No
Current Medications: Other (See Edoc)

## Objective

| CPT® Code | Direct Timed Codes | Units |
|---|---|---|
| GP:97110 | Therapeutic Exercise | 1 |
| | Supine band pull apart around ankles | |
| | Supine ball squeeze | |
| | Supine band pull apart | |
| | 18 min | |
| GP:97140 | Manual Therapy | 3 |
| | STM lumbosacral region | |
| | Lumbar joint mobilization | |
| | HIP PROM | |
| | Hip flexor stretching | |
| | 35 min | |

CPT copyright 2019 American Medical Association. All rights reserved.

## Assessment

Assessment/Diagnosis: Patient able to tolerate manual therapy, however having difficulty with transfers due to pain and muscle tightness.
Rehab Potential: Good

## Plan

Instructions: Progressing Patient Next Visit
Progress ther ex as tolerated with focus on core/pelvic stability.

*Marc Phillips* PT, DPT, OCS

Marc Phillips, PT, DPT, OCS
License #9745
Electronically Signed by Marc Phillips, PT, DPT, OCS on July 29, 2020 at 4:24 pm

Lincoln/Mason 0589

Aug 19 2020 07:25PM HP Fax 7194714415                          page 2

**Fyzical Therapy and Balance Centers - Gleneagle**
12229 Voyager Pkwy, Suite 150
Colorado Springs, CO 80921-3601
Phone: (719)488-0120
Fax: (719)488-1427
www.falconpt.com

**Physical Therapy Recertification Note**



Patient Name: Mason, Jan K.
Date of Birth:
Referring Physician(s): Sung, Roger MD
Date of Original Eval: 07/09/2020
Treatment Diagnosis: ICD10: M54.5: Low back pain

Date of Recertification: 08/13/2020
Injury/Onset/Change of Status Date: 07/01/2020
Diagnosis: ICD10: M54.5: Low back pain
Visit No.: 4

## Subjective

**History of Present Condition/Mechanism of Injury:** Patient is a 48 year old female with LBP related to multiple injuries and a surgery. Patient has history of fall on her tailbone and SI joint fusion on R side and subsequent MVA two weeks after SI fusion. Patient also has had two hip surgeries to repair labral tears on her R hip and is now having significant low back pain of a constant nature. Patient states she has difficulty with all daily tasks and has an especially difficult time with mobility.
**Current Complaints / Gains:** Patient has difficulty with walking, working, driving, transfers, sitting and standing.
**Pain Location:** L - spine
  **Pain Scale: Worst:** 8 **Best:** 3 **Current:** 5 *Previous Findings as of 07/09/2020 - Worst:9 Best:2 Current:6*
  **Pain Follow-up Plan:** Manual therapy
**Aggravating Factors:** Sitting, Standing, Walking, Stairs - up, Stairs - down, Sit to stand, Bending
**General Health:** Fair
**Home Health Care:** No
**Medical History:** High Blood Pressure, please see e-doc
**Complicating/Personal Factors:** Mechanism of injury/ Illness, Multiple Treatment Areas, Patient age
**Medical History Review:** The patient has a history of present problem with a history of 1-2 personal factors and/or comorbidities that impact the plan of care.
**Mental Status/Cognitive Function Appears Impaired?** No
**Current Medications:** Other (see Edoc)

## Objective

### Inspection

**Patient Consent**
Patient/Parent/Guardian Consent          Yes
**Body Mass Index**
Weight                                   170
Height                                   66
Units                                    lbs/in
Index                                    27.44
Followup Plan                            Encourage activity

### Outcome Measurement Tools                  *Previous Findings as of 07/09/2020*

**Spine**
Modified Oswestry Low   72% disability                    *76*
Back Pain

### Observation

**Gait**          Antalgic

**Assistive Device**
Type          Single Point Cane
Hand Used     Left

### Range of Motion                             *Previous Findings as of 07/09/2020*

Lincoln/Mason 0590

Aug 19 2020 07:25PM HP Fax 7194714415                page 3

**Fyzical Therapy and Balance Centers - Gleneagle**
12229 Voyager Pkwy, Suite 150
Colorado Springs, CO 80921-3601
Phone: (719)488-0120
Fax: (719)488-1427
www.falconpt.com

**Physical Therapy Recertification Note**

**Patient Name:** Mason, Jan K.
**Date of Birth:**
**Document Date:** 08/13/2020

**Lumbar AROM**

| | | | |
|---|---|---|---|
| Forward Bending | 25% | | 25% |
| Backward Bending | 10% | | 10% |
| Right Rotation | 50% | | 50% |
| Left Rotation | 25% | | 25% |

**Strength**                                    *Previous Findings as of 07/09/2020*

**Gross Muscle Tests**
**Lower**

**Hip**

| | Right | Left | | |
|---|---|---|---|---|
| Hip Flexion | 4-/5 | 4/5 | 4-/5 | 4/5 |
| Hip Extension | 3+/5 | 4/5 | 3+/5 | 4/5 |
| Hip Abduction | 3+/5 | 3+/5 | 3/5 | 3+/5 |

**Neuro-Vascular**

| | Right | Left |
|---|---|---|
| Quadrant Testing | Positive | Negative |

**Special Tests**                                *Previous Findings as of 07/09/2020*

**Labrum Integrity Hip**

| | Right | | Left | |
|---|---|---|---|---|
| FABER | Not Tested | Negative | Not Tested | Negative |
| | Due to post op status | | Due to post op status | |

**Palpation**

**Comments**       Patient has pain with palpation over lumbar paraspinals and hip region.

**Assessment**

**Assessment/Diagnosis:** Patient is a 48 year old female reporting to PT with continued severe pain in her back, SI region and hips (R>L). Patient has significant functional limitations including, but not limited to mobility, driving, transfers and staying in one position for extended periods of time. Patient is also unable to work at this time due to such significant pain and lumbar dysfunction.
**Patient Clinical Presentation:** The clinical presentation is evolving with changing characteristics.
**Rehab Potential:** Good
**Patient Problems:**
- Difficulty with walking, transfers, bending, sitting, standing
**Short Term Goals:**
1: (4 Weeks) | 25% | Patient will be able to bend over to 75% of normal ROM |
2: (6 Weeks) | 25% | Patient will be able to stand for 15 minutes without difficulty or pain. |
**Long Term Goals:**
1: (8 Weeks) | 25% | Patient will be able to perform transfers without difficulty |
2: (8 Weeks) | 25% | Patient will be able to sit for at least 30 minutes without an increase in pain or difficulty |
3: (12 Weeks) | Patient will be able to walk for at least 10 minutes without an increase in pain or difficulty. |

**Plan**

**Frequency:** 1-2 times a week

**Lincoln/Mason 0591**

**Fyzical Therapy and Balance Centers -**
**Gleneagle**
12229 Voyager Pkwy, Suite 150
Colorado Springs, CO 80921-3601
Phone: (719)488-0120
Fax: (719)488-1427
www.falconpt.com

**Physical Therapy**
**Recertification**
**Note**

**Patient Name:** Mason, Jan K.
**Date of Birth:**
**Document Date:** 08/13/2020

**Duration:** 12 weeks
**Treatment to be provided:**
**Procedures**
Therapeutic Exercises, Therapeutic Activity, Gait Training, Neuromuscular Rehabilitation, Manual Therapy, Patient Education

**Modalities**
To Improve (Pain Relief, Decrease Inflammation, Increase Blood Flow, Improve Tissue Healing), Electrical Stimulation, Ultrasound/Phonophoresis, Cryotherapy, Hot Packs

Certification of Medical Necessity: It will be understood that the treatment plan mentioned above is certified medically necessary by the documenting therapist and referring physician mentioned in this report. Unless the physician indicates otherwise through written correspondence with our office, all further referrals will act as certification of medical necessity on the treatment plan indicated above.

Thank you for this referral. If you have questions regarding this plan of care, please contact me at (719)488-0120.

Please sign and return: Fax#: (719)488-1427

I certify the need for these services furnished under this plan of treatment and while under my care.

___I have no revisions to the plan of care.
___Revise the plan of care as follows_____
_____

Marc Phillips, PT, DPT, OCS
License #9745
*Electronically Signed by Marc Phillips, PT, DPT, OCS on August 18, 2020 at 9:34 am*

Physician Signature_____
                              R. Sung, MD

Date:_____        Time:_____

**Lincoln/Mason 0592**



**North Campus** 4110 Briargate Parkway, Suite 300 Colorado Springs, CO 80920 Phone: 719-632-7669 Fax:  719-632-0088

**South Campus** 1259 Lake Plaza Drive, Suite 100 Colorado Springs, CO  80906 Phone: 719-632-7669 Fax:  719-632-0088

**Colorado Springs Orthopaedic Group**
www.csog.net

Patient Name:  Jan K Mason, 505296

Encounter Date:
2/6/2020

Date of Birth:

---

**Chief Complaint** Bilateral hip pain.

## History of Present Illness

Jan is a 47 year old male who presents today 8 weeks status post right hip labral reconstruction using allograft from 9:00 to 4:00 location, chondroplasty, debridement/shaving acetabulum, labral repair at 4:00 and 9:00 location, arthroscopic acetabuloplasty, arthroscopic femoroplasty, osteoplasty to remove cam lesion, synovectomy, capsular closure/plication performed on 12/09/2019. She has been able to wean off of crutches and is now using a cane. She continues reports some achiness of the anterior hip but it has been improved since her surgery. Unfortunately, her lower back pain, pain over her SI joint, and radicular symptoms have worsened. She feels this is affecting her rehabilitation. The patient is status post sacroiliac joint fusion with Dr. Sung and states that the symptoms feel similar as needed prior to her surgery. She otherwise denies calf pain or cramping bilaterally.

She is also here for follow-up regarding left hip pain. Since her previous visit, the patient was able to obtain a MR Arthrogram from Penrad on 1/30/2020 and is here to discuss the findings and possible further treatment options. In regards to her left hip, the patient states she has had pain in December, 2017, getting progressively worse. Her pain has especially worsened after her recent right hip labral reconstruction procedure due to increased loadbearing. Her pain is located in the groin and worsen with prolonged sitting, prolonged standing and squatting type activities. Rotational activities also increased pain. She has tried rest, activity modification, ibuprofen as an anti-inflammatory without significant benefit. She has also been attending physical therapy without much relief. She denies nausea, vomiting, fever, chills, short of breath, chest pain or abdominal pain.

## Medical History

**Medical Conditions:** Hypertension
**Surgical History:** Tubal 1994; Rhinoplast 2008
**Orthopedic Surgical History:** Right SI Fusion
**Current Medications:** Claritin 10 mg tablet 1 oral, Ambien 5 mg tablet 1 oral, metoprolol succinate ER 50 mg tablet,extended release 24 hr 1 Tb24 oral, losartan 50 mg tablet 1 oral, indomethacin 50 mg capsule 1 by mouth BID Take with food., oxycodone 5 mg tablet 1 tablet(s) by mouth Q4-6h
**Medication and Allergic Reactions:** No known allergies
**Family History:** No significant family history
**Personal and Social History:**
Patient has children, denies tabacco, marijuana, and alcohol use

## Review of Systems

---

**ELECTRONICALLY SIGNED BY Michael Huang, M.D. 2/6/2020**

**Lincoln/Mason 0593**

**Patient Name:** Mason, Jan K **DOB:**

Patient denies fevers, chills, chest pain, shortness of breath, abdominal pain, nausea, diarrhea, constipation. Pertinent positives for review of systems are listed in HPI above, otherwise negative.

**Vital Signs:** Height: 5ft 8.00in, Weight: 190lbs BMI 28.89

**General Exam:**
**Constitutional:** Patient is adequately groomed with no evidence of malnutrition.
**Skin:** There are no rashes, ulcerations or lesions in the regions examined.
**Mental Status:** The patient is oriented to time, place and person. The patient's mood and affect are appropriate.
**Lymphatic:** The lymphatic examination bilaterally reveals all areas to be without enlargement or induration.
**Vascular:** Examination reveals no swelling or calf tenderness. Peripheral pulses are palpable and 2+.
**Neurological:** The patient has good coordination. There is no weakness or sensory deficit. Deep tendon reflexes are intact.

**Right Hip/Pelvis Examination**
Patient is alert and oriented to time, place, medical situation without evidence of distress. Steri-Strips were removed today without difficulty. There is no erythema, ecchymosis, or clinical signs of infection present. The patient has normal sensibility to moving light touch over the superficial peroneal, deep peroneal and tibial nerve distributions. The patient is able to fire EHL, tibialis anterior, gastrocsoleus, peroneals. Dorsalis pedis pulse, 2+. There is no calf swelling or tenderness. Homans sign is negative. No evidence of DVT. Hip flexion to 105°, external rotation to 40°, internal rotation to 5°. Tenderness to palpation over the lateral hip and over the sacroiliac joint.

**Left Hip/Pelvis Examination**
LEFT hip range of motion includes flexion to 115 degrees, external rotation to 55°, internal rotation to 5°. Positive anterior impingement test and negative posterior impingement test. Straight leg raise stressing produces lower back pain. Tenderness of palpation over the anterior hip and laterally over the greater trochanter.

**Diagnostic Test Findings:** X-RAYS, BILATERAL HIP, CSOG, 6/4/19: X-rays ordered, performed, and interpreted previously and reviewed today include AP pelvis, bilateral Dunn views, false profile, and cross table lateral views of the BILATERAL hip. They show well-preserved femoroacetabular joint spacing. Tonnis Grade 0. No evidence of fracture or dislocation. No evidence of avascular necrosis or heterotopic ossification in the right hip. On the left hip, there is evidence of femoroacetabular impingement, cam type with alpha angle measuring 63 degrees.

MR ARTHROGRAM, LEFT HIP, 1/30/2020, PENRAD: Focal Cam deformity of the anterior left femoral head neck junction with associated anterior/anterosuperior labral base tear. Small right hip joint effusion.

**Assessment and Plan:**
**Diagnosis Codes:**
M24.151 Other articular cartilage disorders, right hip Right
M25.552 Pain in left hip Left
M24.152 Other articular cartilage disorders, left hip Left
**Impression:**
1. 8 weeks status post right hip labral reconstruction using allograft from 9:00 to 4:00 location, chondroplasty, debridement/shaving acetabulum, labral repair at 4:00 and 9:00 location, arthroscopic acetabuloplasty, arthroscopic femoroplasty, osteoplasty to remove cam lesion, synovectomy, capsular closure/plication this was performed on 12/09/2019.
2. Left hip pain - labral tear, femoral acetabular impingement

**ELECTRONICALLY SIGNED BY Michael Huang, M.D. 2/6/2020**                                                      **2** of **3**

**Lincoln/Mason 0594**

**Patient Name:** Mason, Jan K **DOB:**

### Treatment Plan:

I reviewed the clinical and radiographic documentation with the patient. Overall, she continues to recover very well after her right hip labral reconstruction. We focused our attention today on the left hip and spent significant time going over both the previous x-rays and the new MRI images available. We went over these images face-to-face on a computer screen. The patient understands that the left hip has a labral tear in the setting of bony hip impingement. This tear will not heal on its own and may continue to deteriorate over time and continue to cause symptoms. The options for treatment of this tear and the bony impingement include continued conservative management versus consideration of surgical intervention. Conservative management includes rest, activity modification, anti-inflammatories, corticosteroid injection and even biologic injection. Surgical intervention would include diagnostic arthroscopy of the hip, labral debridement with repair, acetabuloplasty if needed, chondroplasty if needed and osteoplasty if needed. We discussed the nature of the surgery and the rehabilitation required after surgery. All questions were answered. At this point in time, she will continue to focus on the right hip rehabilitation program and we will manage her left hip pain with anti-inflammatories. In the meantime, they will continue with rest, activity modification and physical therapy.
Patient was provided with patient education on NSAIDs.
The patient is instructed to return if pain or symptoms arise.

### Clinical Quality Reporting:

A stretching regimen was recommended to the patient. A strength training regimen was recommended to the patient. The patient was encouraged to exercise.

Electronically signed by: Michael Huang, M.D.
Date: 2/6/2020 Time: 3:23 PM
☐ Insert Provider Signature

CC: Copies sent along with cover letter sent to the patient's primary care physician.

**Lincoln/Mason 0595**

**North Campus**
4110 Briargate Parkway, Suite 300
Colorado Springs, CO  80920
Phone: 719-632-7669
Fax:  719-632-0088



Colorado Springs
Orthopaedic Group
www.csog.net

**South Campus**
1259 Lake Plaza Drive, Suite 100
Colorado Springs, CO  80906
Phone: 719-632-7669
Fax:  719-632-0088

Patient Name:  Jan K Mason, 505296                Encounter Date:  8/19/2020                Date of Birth:

---

## Chief Complaint
## History of Present Illness
Jan comes in for followup with continued chronic pain. She has been doing physical therapy and has actually gotten worse. She feels it in the back, on both sacroiliac (SI) joints, and now she has pain down her legs. She did manage to get an upright MRI out of Denver, ordered by her physical therapist.

## Medical History
**Medical Conditions:** Hypertension
**Surgical History:** Tubal ligation, Rhinoplasty
**Orthopedic Surgical History:** Rt SI Joint Fusion, Labral Repair, Labral Reconstruction
**Current Medications:** Claritin 10 mg tablet 1 oral, Ambien 5 mg tablet 1 oral, metoprolol succinate ER 50 mg tablet,extended release 24 hr 1 Tb24 oral, losartan 50 mg tablet 1 oral, Junel FE 1/20 (28) 1 mg-20 mcg tablet oral, cyclobenzaprine 10 mg tablet 1 by mouth Q8h spasms
**Medication and Allergic Reactions:** No known allergies
**Family History:** No significant family history.
**Personal and Social History:**
The patient does not smoke or use tobacco products. The patient does not use marijuana, CBD products, or Illicit drugs. The patient currently does not consume alcohol. She is temporarily disabled.

## Review of Systems

**Constitutional:**  The patient denies any unexplained weight loss, weight gain, fever, chills or fatigue.
**Eyes:**  The patient denies any corrective lenses, blurred or double vision, eye pain, redness or watery eyes.
**Ear/Nose/Throat:**  The patient denies any headaches, difficulty swallowing, nose bleeds, ringing in ears or earaches.
**Cardiovascular:**  The patient denies any chest pain, palpitations, fainting or murmurs.
**Respiratory:**  The patient denies any shortness of breath, wheezing, chronic coughing, tightness, inspiration pain or snoring.
**Gastrointestinal:**  The patient denies any heartburn, nausea, vomiting, constipation, diarrhea, or bloody/tarry stools
**Genitourinary:** The patient denies any difficult or painful urination, frequent urination or blood in urine.
**Musculoskeletal:** Admits joint pain and instability.
**Skin:**  The patient denies skin changes, poor healing, rash, itching or redness.
**Neurological:**  The patient denies numbness, tingling, unsteady gait, dizziness, tremors or seizures.
**Psychiatric:**  The patient denies nervousness, anxiety, depression or hallucinations.
**Hematological:** The patient denies bleeding or bruising easily.

---

DICTATED, NOT READ

**Lincoln/Mason 0596**

**Patient Name:** Mason, Jan K
**DOB:**

**Endocrine:** The patient denies excessive thirst, excessive urination or intolerance to heat and cold.

**Vital Signs:** Height: 5ft 8.00in, Weight: 188lbs BMI 28.58

## Lumbar Spine Examination

1. Constitutional:
• Vitals: Height 5 feet 8 inches, weight 188 pounds, respirations not labored.
• General appearance: Well developed, well nourished, with normal grooming.

2. Psychiatric
• Patient is oriented to time, place, person.
• Patient's memory is within normal limits.
• Mood and affect are appropriate.

3. Skin
• General Inspection shows no visible rashes, lesions, ulcers.
• Palpation shows no tightness, induration, nodules.

4. ENT
• External inspection reveals normal appearance and no visible scars.
• Hearing is normal to varying sounds.

5. Musculoskeletal
• Station and gait are normal.
• Motor strength is intact with no obvious atrophy.
• Spine has normal ROM without crepitation. There is normal alignment and no pain to palpation.

6. Neurologic
• Reflexes are intact.
• Sensation is intact to light touch.

The physical examination includes the above body areas and defines normal parameters. For this patient the above detailed examination is within normal limits for all listed elements with exceptions and pertinent additional positive findings listed below.
**Imaging Findings:** 4 views of the lumbar spine were ordered, obtained and interpreted from an orthopedic standpoint. Imaging was reviewed once again.

**Diagnostic Test Findings:** Imaging was reviewed personally. There are no significant changes than her previous MRI.

## Assessment and Plan:
### Diagnosis Codes:
M54.5 Low back pain
M51.36 Other intervertebral disc degeneration, lumbar region

**DICTATED, NOT READ**

Lincoln/Mason 0597

**Patient Name:** Mason, Jan K
**DOB:**

M46.1 Sacroiliitis, not elsewhere classified
G89.4 Chronic pain syndrome
M54.30 Sciatica, unspecified side

**Impression:**
1. Chronic pain syndrome and sciatica.
2. Status post right sacroiliac (SI) joint fusion, September 2017.
3. Status post motor vehicle accident (MVA), 12/18/2017.
4. Bilateral sacroiliitis.

**Treatment Plan:**
Given the fact that her symptoms are getting worse, I actually talked to her about re-trialing her. She had a stimulator trial by Dr. Lippert several years ago but her pain pattern was very different at that time and was not nearly as bad. She works with Dr. Salek now and we will arrange for the stimulator trial.
CC: David Salek, MD
Jeffrey Kent, MD

**Clinical Quality Reporting:**
The patient has not received the influenza vaccination.

Electronically signed by: Roger Sung, M.D.
Date: 8/19/2020 Time:11:15 AM

CC: A copy of the office visit notes will be forwarded to the patient's referring physician. Copies sent along with cover letter sent to the patient's primary care physician.

**DICTATED, NOT READ**

**3** of **3**

**Lincoln/Mason 0598**



**North Campus**
4110 Briargate Parkway, Suite 300
Colorado Springs, CO  80920
Phone: 719-632-7669
Fax:  719-632-0088

**Colorado Springs
Orthopaedic Group**
www.csog.net

**South Campus**
1259 Lake Plaza Drive, Suite 100
Colorado Springs, CO  80906
Phone: 719-632-7669
Fax:  719-632-0088

Patient Name:  Jan K Mason, 505296                Encounter Date:  8/17/2020                Date of Birth:

## Chief Complaint Right hip pain.

## History of Present Illness

Jan Mason is a 48 year old female who presents today 8 months status post right hip labral reconstruction using allograft from 9:00 to 4:00 location, chondroplasty, debridement/shaving acetabulum, labral repair at 4:00 and 9:00 location, arthroscopic acetabuloplasty, arthroscopic femoroplasty, osteoplasty to remove cam lesion, synovectomy, capsular closure/plication performed on 12/09/2019. Since her last visit, she has been having continued worsening pain. She continues to report this pain is over bilateral SI joints and lumbar spine. Since her last visit, she had a diagnostic injection into the left SI joint which gave her 2 hours of complete relief in that location. She has continue with physical therapy but unfortunately this has not improved her symptoms. She continues to have bilateral lower extremity symptoms including pain, numbness and tingling radiating down to both feet. She has also obtained MRI of her lumbar spine that she wanted to be evaluated at today's visit. She really does not complain of significant groin pain currently. She had a episode where she felt like her right lower external he gave way which resulted in a fall and this gave her temporary numbness around her vaginal area. Her pain is rated at 8–9/10. She has been using rest, activity modification, physical therapy without benefit. She tried anti-inflammatories and even Celebrex without benefit and this caused significant gastrointestinal irritation. She continues to use crutches for weightbearing assistance. She denies nausea, vomiting, fever, chills, short of breath, chest pain or abdominal pain.

**Date of Onset:** December, 2017

## Medical History

**Medical Conditions:** Hypertension
**Surgical History:** Tubal ligation, Rhinoplasty
**Orthopedic Surgical History:** Rt SI Joint Fusion, Labral Repair, Labral Reconstruction,
**Current Medications:** Claritin 10 mg tablet 1 oral, Ambien 5 mg tablet 1 oral, metoprolol succinate ER 50 mg tablet,extended release 24 hr 1 Tb24 oral, losartan 50 mg tablet 1 oral, Junel FE 1/20 (28) 1 mg-20 mcg tablet oral, cyclobenzaprine 10 mg tablet 1 by mouth Q8h spasms
**Medication and Allergic Reactions:** No known allergies
**Family History:** No significant family history.
**Personal and Social History:**
The patient does not smoke or use tobacco products. The patient does not use marijuana, CBD products, or Illicit drugs. The patient currently does not consume alcohol. She is temporarily disabled.

## Review of Systems

**ELECTRONICALLY SIGNED BY Michael Huang, M.D.**
**8/17/2020**

**1** of **3**

**Lincoln/Mason 0599**

**Patient Name:** Mason, Jan K
**DOB:**

---

Patient denies fevers, chills, chest pain, shortness of breath, abdominal pain, nausea, diarrhea, constipation. Pertinent positives for review of systems are listed in HPI above, otherwise negative.

**Vital Signs:** Height: 5ft 8.00in, Weight: 180lbs BMI 27.37

## General Exam:
**Constitutional:** Patient is adequately groomed with no evidence of malnutrition.
**Skin:** There are no rashes, ulcerations or lesions in the regions examined.
**Mental Status:** The patient is oriented to time, place and person. The patient's mood and affect are appropriate.
**Lymphatic:** The lymphatic examination bilaterally reveals all areas to be without enlargement or induration.
**Vascular:** Examination reveals no swelling or calf tenderness. Peripheral pulses are palpable and 2+.
**Neurological:** The patient has good coordination. There is no weakness or sensory deficit. Deep tendon reflexes are intact.

## Right Hip/Pelvis Examination
Patient is alert and oriented to time, place, medical situation without evidence of distress. Surgical wounds are well healed without signs of infectiontributions. Gait is antalgic. The patient is able to fire EHL, tibialis anterior, gastrocsoleus, peroneals. Dorsalis pedis pulse, 2+. There is no calf swelling or tenderness. Homans sign is negative. No evidence of DVT. Hip flexion to 115°, external rotation to 45°, internal rotation to 5°. She really does not have any impingement testing signs at the hip with passive range of motion. Tenderness to palpation over the lateral hip and over the sacroiliac joint bilaterally and lumbar spine.

## Additional Exams:
**Left Lower Extremity:** Examination of the left lower extremity does not show any tenderness, deformity or injury. Range of motion is unremarkable. There is no gross instability. Strength and tone are normal.
**Imaging Findings:** X-RAYS, BILATERAL HIP, CSOG, 6/4/19: X-rays ordered, performed, and interpreted previously and reviewed today include AP pelvis, bilateral Dunn views, false profile, and cross table lateral views of the BILATERAL hip. They show well-preserved femoroacetabular joint spacing. Tonnis Grade 0. No evidence of fracture or dislocation. No evidence of avascular necrosis or heterotopic ossification in the right hip. On the left hip, there is evidence of femoroacetabular impingement, cam type with alpha angle measuring 63 degrees.

MR ARTHROGRAM, LEFT HIP, 1/30/2020, PENRAD: Focal Cam deformity of the anterior left femoral head neck junction with associated anterior/anterosuperior labral base tear. Small right hip joint effusion.

New lumbar spine MRI available for review from an outside facility, upright MRI of Colorado dated July 31, 2020 demonstrates moderate spinal stenosis at L2-3, right-sided proximal neuroforaminal disc herniation with right neural foraminal stenosis at L3-4 and L5-S1 mild spinal stenosis due to central disc herniation.

## Assessment and Plan:
**Diagnosis Codes:**
M24.151 Other articular cartilage disorders, right hip Right
M46.1 Sacroiliitis, not elsewhere classified Right

---

**ELECTRONICALLY SIGNED BY Michael Huang, M.D.**
**8/17/2020**

**Lincoln/Mason 0600**

**Patient Name:** Mason, Jan K
**DOB:**

## Impression:

1. 8 months status post right hip labral reconstruction using allograft from 9:00 to 4:00 location, chondroplasty, debridement/shaving acetabulum, labral repair at 4:00 and 9:00 location, arthroscopic acetabuloplasty, arthroscopic femoroplasty, osteoplasty to remove cam lesion, synovectomy, capsular closure/plication this was performed on 12/09/2019.
2. Left hip pain - possible labral tear/FAI
3. Bilateral sacroiliitis with history of previous right SI joint fusion
4. Lumbar spine spondylosis

## Treatment Plan:

I reviewed the clinical and radiographic documentation with the patient. At her request, we went over her knee were MRI of the lumbar spine. All of her symptoms seem to be located posteriorly along the SI joint and lumbar spine and her bilateral lower extremity radicular type symptoms are more consistent with lumbar spine issues rather than intra-articular hip issues. She does understand that the hip itself may never be completely normal but overall, her reconstruction at this point feels reasonable or is masked by her pain coming from other locations. She does have upcoming evaluation with Dr. Sung later this week and I recommended that she see him to get his recommendation on left sided SI joint fusion and what else needs to be done at the lumbar spine level. For now, we have discussed continued rest, activity modification, anti-inflammatories. All questions were answered. She will follow up on as-needed basis.
Patient was provided with patient education on NSAIDs.
The patient is instructed to return if pain or symptoms arise.

## Clinical Quality Reporting:

The patient was encouraged to exercise. A strength training regimen was recommended to the patient. A stretching regimen was recommended to the patient.

Electronically signed by: Michael Huang, M.D.
Date: 8/17/2020 Time:12:15 PM

Kristen E. Reiss, PA-C
Date: 8/17/2020

CC: A copy of the office visit notes will be forwarded to the patient's referring physician. Copies sent along with cover letter sent to the patient's primary care physician.

**Lincoln/Mason 0601**

**From:**Jana M <
**Sent:**Wed, 26 Aug 2020 09:31:19 -0600
**To:**DisabilityDocuments
**Subject:**Hip F_U Exam (2).pdf
**Attachments:**Hip F_U Exam (2).pdf


***This email is from an external source. Only open links and attachments from a Trusted Sender.***

Claim #9291624. Attn: Mary Avrett

**Lincoln/Mason 0602**

**From:**Jana M <
**Sent:**Wed, 26 Aug 2020 08:57:05 -0600
**To:**DisabilityDocuments
**Subject:**D-prd-1060634424.PDF.pdf
**Attachments:**D-prd-1060634424.PDF.pdf


***This email is from an external source. Only open links and attachments from a Trusted Sender.***

Claim # 9291624. Attn:  Mary Avrett

**Lincoln/Mason 0603**

**From:**Jana M <
**Sent:**Wed, 26 Aug 2020 08:54:41 -0600
**To:**DisabilityDocuments
**Subject:**Right Hip F_U Exam.pdf
**Attachments:**Right Hip F_U Exam.pdf

***This email is from an external source. Only open links and attachments from a Trusted Sender.***

Claim # 9291624. Attn:  Mary Avrett

**Lincoln/Mason 0604**

**From:**Jana M <
**Sent:**Wed, 26 Aug 2020 08:51:26 -0600
**To:**DisabilityDocuments
**Subject:**Office Visit - Lumbar Spine (8).pdf
**Attachments:**Office Visit - Lumbar Spine (8).pdf


***This email is from an external source. Only open links and attachments from a Trusted Sender.***

Claim #929162.   Attn: Mary Avrett

**Lincoln/Mason 0605**

| | |
|---|---|
| From: | LFGNotifications@LFG.com |
| Sent: | Tuesday, August 18, 2020 2:32:41 PM |
| To: | |
| CC: | |
| BCC: | |
| Subject: | [Send Secure]Charter Communications, Inc. Claim No. 9291624 Jan Mason |
| Attachments: | v6jndlvjhqypt9lwpgsz_8869881.pdf; |

This notification contains important information regarding a claim with Lincoln Financial Group company.
THIS IS AN AUTOMATED EMAIL. PLEASE DO NOT RESPOND. You may use the contact information in
the attached letter to respond if needed.

**Lincoln/Mason 0606**



Lincoln Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7213
London, KY 40742-7213
Phone No.: (888) 437-7611
Secure Fax No.: (603) 430-1926

August 18, 2020

Ms. Jan K. Mason

RE:    Long Term Disability (LTD) Benefits
       Charter Communications, Inc.
       Claim #: 9291624

Dear Ms. Jan Mason:

Pursuant to our telephone conversation on August 18, 2020, you indicated you will need an additional ten days from Thursday, August 20, 2020 to provide Dr. Sung's updated records and MRI results.

Therefore, extended your time to provide additional documentation to August 31, 2020.  Please contact us should you need additional time.

Per our letter of July 25, 2020, since we are waiting for you to submit additional documentation, the days from July 25, 2020 until we receive your submission are not counted as part of the appeal determination period.

If you have any questions regarding this matter, please contact me.

Sincerely,

Mary Avrett
Appeals Consultant
Phone No.: (888) 437-7611 Ext. 16371
Secure Fax No.: (603) 430-1926

1  of  1

**Lincoln/Mason 0607**

 

6726 South Revere Pkwy • Suite 100 • Centennial, CO • 80112
Office: 303.858.8855 • Fax: 303.649.9689

Patient Name: MASON, JAN K
Date of Service: 31-Jul-2020 03:54:00 PM
MRN: 6923
Date of Birth:                                    Gender: F
Referring Physician: PHILLIPS, MARC DPT

_____

## Addendum

## Exam: MRI LUMBAR SPINE FLEX/EXT WO

**CLINICAL HISTORY:**  MVA on 12-18-**2017**.  Lower back pain and limited range of motion.  Lower extremity pain, weakness and tingling, and instability. History of SI joint fusion in September **2017**.

**TECHNIQUE:**  Multiplanar, multisequence MRI was performed in the neutral sitting position/weight-bearing position with flexion and extension views.

**COMPARISON:**  None.

**FINDINGS:**

There is straightening and kyphosis.  There is kyphosis centered at L2-3.  No fractures, marrow lesions, or cord lesions.  The conus medullaris is normal in signal and location. The cauda equina nerve roots are unremarkable. No solid or cystic lesions. No paraspinal masses.

Detailed analysis of the motion segments is as follows:

T12-L1: There are no disc herniations or spinal canal stenosis. No neural foraminal stenosis. The facets appear normal for age.

L1-2: There is a central disc herniation impinging on the thecal sac.  This causes mild spinal stenosis.  The neural foramina and facets are unremarkable.

L2-3: There is a broad central disc herniation impinging on the thecal sac and causing mild to moderate spinal stenosis. The neural foramina and facets are unremarkable.

L3-4: There is disc desiccation and a right proximal neural foraminal disc herniation which is focal.  There is mild right neural foraminal stenosis and the facets are unremarkable.

**Lincoln/Mason 0608**

  

6726 South Revere Pkwy • Suite 100 • Centennial, CO • 80112
Office: 303.858.8855 • Fax: 303.649.9689

Patient Name: MASON, JAN K
Date of Service: 31-Jul-2020 03:54:00 PM
MRN: 6923
Date of Birth:                                          Gender: F
Referring Physician: PHILLIPS, MARC DPT

_____

L4-5: There are no disc herniations or spinal canal stenosis. No neural foraminal stenosis. The facets appear normal for age.

L5-S1: There is a central disc herniation with annular tearing and impingement on the thecal sac.  This elevates the posterior longitudinal ligament and causes mild spinal stenosis.  The neural foramina and facets are unremarkable.

No dynamic instability or malalignments on flexion or extension imaging.

**IMPRESSION:**

1.    Straightening of the normal lumbar lordosis which can be seen with muscle spasm due to ligamentous sprain and/or disc injury.
2.    There is kyphosis centered at L2-3.  This further supports muscle spasm and injury at this level.
3.    At L1-2, there is a central disc herniation impinging on the thecal sac.  This causes mild spinal stenosis.
4.    At L2-3, there is a broad central disc herniation impinging on the thecal sac and causing mild to moderate spinal stenosis.
5.    At L3-4, there is disc desiccation and a right proximal neural foraminal disc herniation which is focal.  There is mild right neural foraminal stenosis.
6.    At L5-S1, there is a central disc herniation with annular tearing and impingement on the thecal sac.  This elevates the posterior longitudinal ligament and causes mild spinal stenosis.
7.    Annular tearing can represent annular rupture and edema related to acute or subacute disc injury.

Reading physician:

Electronically Signed by PIZARRO, JOSE at 8/12/2020 9:48:30 AM

**Lincoln/Mason 0609**



6726 South Revere Pkwy • Suite 100 • Centennial, CO • 80112
Office: 303.858.8855 • Fax: 303.649.9689

Patient Name: MASON, JAN K
Date of Service: 31-Jul-2020 03:54:00 PM
MRN: 6923
Date of Birth:                                    Gender: F
Referring Physician: PHILLIPS, MARC DPT
_____

Jose Pizarro, MD
Diplomate of the American Board of Radiology
Board Certified in Neuroradiology (CAQ)
Senior Member, American Society of Neuroradiology

Addendum – AH (Corrected DOA and SI joint fusion date)

Amended by PIZARRO, JOSE at 8/14/2020 12:24:12 PM

3 | P a g e

Lincoln/Mason 0610



6726 South Revere Pkwy • Suite 100 • Centennial, CO • 80112
Office: 303.858.8855 • Fax: 303.649.9689

Patient Name: MASON, JAN K
Date of Service: 31-Jul-2020 03:54:00 PM
MRN: 6923
Date of Birth:                            Gender: F
Referring Physician: PHILLIPS, MARC DPT
_____

Lincoln/Mason 0611

**From:**Jana M <
**Sent:**Tue, 18 Aug 2020 11:46:18 -0600
**To:**DisabilityDocuments
**Subject:**MASON JAN ADDENDUM.pdf
**Attachments:**MASON JAN ADDENDUM.pdf

***This email is from an external source. Only open links and attachments from a Trusted Sender.***

Claim # 9291624

**Lincoln/Mason 0612**

**Medical Record Overview**

**⊛ ReleasePoint**

**Date:** August 7, 2020

**Patient Name:** MASON, JAN

**Records From:** David Salek
6685 DELMONICO DR SUITE C
Colorado Springs, CO  80919
(719) 598-7562

**Request Scope:** From January 1, 2020 to Present

**Chart Range:** 02/12/2020 - 06/11/2020

**RP ID:** 6749554

**Client ID:** 9291624

**Source:** LIBMTN

**Req By:** M AVRETT
mary.avrett@lfg.com

**SSN:**

| Classification | From | To | Total | Starts on Page |
|---|---|---|---|---|
| Progress Notes | Feb 12 2020 | Jun 11 2020 | 4 | 2 |
| Request Correspondence | | | 5 | 6 |

**Total Page Count:** 9

**Notes From QC:**

**Lincoln/Mason 0613**

Progress Notes - 06/11/2020                                    :7195932492            # 12/ 12

## Mason, Jan K                                                                1 of 1
Office/Outpatient Visit
**Visit Date:** Thu, Jun 11, 2020 02:53 pm
**Provider:** Salek, David R, MD (Supervisor: Salek, David R, MD;  Assistant: Roberts, Tasha, MA)
**Location:** Spinal Diagnostics & Pain Management

Electronically signed by David Salek, MD on  06/11/2020 03:29:54 PM
 Printed on 08/03/2020 at 10:18 am.

## Objective:

**Procedures:** Fluoroscopically-guided injection of the LEFT DIAGNOSTIC sacroiliac joint(s).

Moderate sedation provided by registered nurse under the supervision of Dr. Salek for the duration of 30 minutes.

After discussing the risks, benefits, and alternatives to the procedure, the patient expressed understanding and wished to proceed. The patient was brought to the fluoroscopy suite and placed in the prone position. Procedural pause conducted to verify: correct patient identity, procedure to be performed and as applicable, correct side and site, correct patient position, and availability of implants, special equipment and special requirements. Using fluoroscopy, the inferior portion of the sacroiliac joint(s) was identified and marked on the skin. The skin was sterilely prepped and draped in the usual fashion using Chlorhexidine. The skin and subcutaneous tissue were anesthetized with lidocaine. Using fluoroscopic guidance, a 3.5-inch 22-gauge spinal needle was advanced into joint. Proper needle positioning was confirmed using multiple fluoroscopic views. After negative aspiration, Isovue contrast was injected, showing intraarticular spread of contrast without any evidence of intravascular uptake. A 2 mL solution consisting of 2% lidocaine was injected slowly and incrementally into the aforementioned joint(s). Following each injection, the needle was withdrawn slightly and flushed with lidocaine as it was withdrawn from the skin. The patient tolerated the procedure well and there were no apparent complications. After appropriate observation, the patient was dismissed in good condition under their own power.

COMMENTS
2% Lidocaine

Charges: 27096 SI joint injection
Dx: M46.1 sacroilitis
Sedation: 99152 (first 15 mins), 99153 (subsequent 15 mins)

## Assessment:

M46.1  Sacroiliitis, not elsewhere classified

## Diagnosis and Procedure Summary:

**Primary Diagnosis:**
M46.1 Sacroiliitis, not elsewhere classified

 Orders:

CPT data is registered trademark of the American Medical Association

**Lincoln/Mason 0614**

Progress Notes - 02/12/2020                                    ;7195932492           # 9/12

## Mason, Jan K                                                        1 of 3

Office/Outpatient Visit
**Visit Date:** Wed, Feb 12, 2020 03:16 pm
**Provider:** Salek, David R, MD (Supervisor: Salek, David R, MD;  Assistant: Roberts, Tasha, MA)
**Location:** Spinal Diagnostics & Pain Management

Electronically signed by David Salek, MD on  02/12/2020 04:01:09 PM
 Printed on 08/03/2020 at 10:18 am.

## Subjective:

**CC:** Follow up
**HPI:** Patient presents to clinic today in follow up. Patient states her chief complaint today is pain management. She has undergone right hip surgery with Dr. Haung and will be undergoing right hip surgery soon.

She is being referred back to help manage her pain. Patient notes she does not want to be on any opiates and is looking for alternative care. Patient states she has tried Tramadol in the past and this medication upset her stomach.

Patient did inquire about the use of CBD.

She states has a "horrible pain right where her fusion is."
**ROS:** CONSTITUTIONAL:  Negative for chills, fatigue and fever.
E/N/T:  Negative for ear pain.
CARDIOVASCULAR:  Negative for chest pain and dizziness.
RESPIRATORY:  Negative for shortness of breath.
GASTROINTESTINAL:  Negative for anorexia.
MUSCULOSKELETAL:  Positive for back pain.
INTEGUMENTARY/BREAST:  Negative for pruritis.
NEUROLOGICAL:  Negative for ataxia, dizziness, fainting and weakness.
HEMATOLOGIC/LYMPHATIC:  Negative for lymphadenopathy.
ENDOCRINE:  Negative for increasing size of hands and feet.

**Current Problems:**
Sacroiliitis, not elsewhere classified
Low back pain
Myalgia

**Current Medications:**
Indomethacin 50mg Capsules [Take 1 capsule(s) by mouth bid  ]

## Objective:

**Exams:** GENERAL: well developed; well nourished; well groomed; no apparent distress alert and oriented x3, pleasant, cooperative and appropriately dressed. No apparent acute distress.
EYES: pupils and irises are normal; Sclera are clear and pupils are WNL
RESPIRATORY: normal respiratory rate and pattern with no distress;
CARDIOVASCULAR: no edema or significant varicosities;
MUSCULOSKELETAL; full, painless range of motion of all major muscle groups and joints Positive Faber, positive Fortin finger,
NEUROLOGIC: sensation: normal to touch and pinprick; vibration and proprioception senses intact; No strength deficits noted in bilateral lower extremities.  Normal reflexes
LUMBAR EXAM: Inspection: normal; Positive lumbar quadrant testing
NECK EXAM: Inspection:  normal;

**Assessment:** #1  Status post right sacroiliac joint fusion procedure 2017
#2  Status post right hip labral repair 2019
#3  Low back pain

CPT® is a registered trademark of the American Medical Association

**Lincoln/Mason 0615**

Progress Notes - 02/12/2020                                    7195932492              # 10/ 12

## Mason, Jan K                                                                          2 of 3
Office/Outpatient Visit
**Visit Date:** Wed, Feb 12, 2020 03:16 pm
**Provider:** Salek, David R, MD (Supervisor: Salek, David R, MD;  Assistant: Roberts, Tasha, MA)
**Location:** Spinal Diagnostics & Pain Management

Electronically signed by David Salek, MD on  02/12/2020 04:01:09 PM
 Printed on 08/03/2020 at 10:18 am.
#4  Right lower extremity radicular features
#5  Positive SCS trial with Boston

Jana is a 47-year-old female seen by me at the request of CSOG for consideration of a stimwave spinal cord stimulator
implant.  She had positive Boston Scientific trial however does not want a battery implanted.  Ultimately we are unable to
get approval for stem wave.  She subsequently underwent right hip labral repair which she was hoping would help with
her back pain but unfortunately continues with burning neuropathic pain in the region of her sacroiliac joint.  She is here
for alternative medications other than opiates as she has a sensitive stomach.  The only medication I can think of that
could be useful for her to something like Celebrex.  She is eagerly awaiting a spinal cord stimulator implant with Dr. Sung
sometime in the next few months.

PLAN
Celebrex 200 mg daily
Tylenol 500 mg 4 times per day

Extensive education regarding the patient's condition was undertaken.  I took the time to review the patient's anatomy
using 3-dimensional models in clinic, printed and verbal information with patient handouts.  The patient has verbalized a
clear understanding of the condition.  The patient was informed of spine-health.com in addition to other Internet based
resources at their disposal.  I took the time to answer the patient's questions to the best of my ability and think they have
a good understanding of the benefits and relative risks of the interventional procedures presented, if any.  I outlined the
patient?s indications for interventional approaches and alternative therapies as well as the expected outcomes of each
therapy.  A copy of this note will be sent to the patients PCP and referring physician.

The critical nature of a good rehabilitative exercise program was emphasized with the patient.  Certainly, this is always a
primary objective to avoid more invasive treatments and/or surgery.  In order to facilitate this, written instructions were
provided as appropriate, as well as possible referral to therapy either formal or informal.  In any event, the patient must
continue a program on their own for core strengthening, flexibility, endurance, and mobility. This is critical for the
recovery as well as for long-term wellness.

Please note that this dictation was completed with computer voice-recognition software.  Quite often there are
unanticipated grammatical, syntax, homophones, and other interpretive errors that are inadvertently transcribed by the
computer software.  Please excuse any errors that have escaped final proofreading.

M46.1  Sacroiliitis, not elsewhere classified
M54.5  Low back pain
M79.1  Myalgia

## Plan:

**Sacroiliitis, not elsewhere classified**

15 minutes spent face-to-face with patient, over 50% of time spent in face-to-face discussion about the above
assessment and plan.

## Diagnosis and Procedure Summary:

**Primary Diagnosis:**
M46.1  Sacroiliitis, not elsewhere classified

CPT® is a registered trademark of the American Medical Association

**Lincoln/Mason 0616**

Progress Notes - 02/12/2020 · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · ·   7195932492            # 11/ 12

## Mason, Jan K                                                            3 of 3

Office/Outpatient Visit
**Visit Date:** Wed, Feb 12, 2020 03:16 pm
**Provider:** Salek, David R, MD (Supervisor: Salek, David R, MD;  Assistant: Roberts, Tasha, MA)
**Location:** Spinal Diagnostics & Pain Management

Electronically signed by David Salek, MD on  02/12/2020 04:01:09 PM
Printed on 08/03/2020 at 10:18 am.

Orders:

M54.5  Low back pain
M79.1  Myalgia

## ADDENDUMS:

**Addendum:** 02/12/2020 04:01 PM - Salek, David R

Visit Note Faxed to:
 Kent, MD, Jeffrey M; Number (719)623-2101
 Sung, MD, Roger D (Orthopedic Surgery Of The Spine); Number (719)632-0088

CPT ® is a registered trademark of the American Medical Association

**Lincoln/Mason 0617**

Request Corresponden_____ _____ 1                                    7195932492        #  4/ 12



From WFI Incorporated 1.626.628.9628 Wed Jul 29 08:38:13 2020 MDT Page 1 of 5

**∩Lincoln**
Financial Group

Lincoln Financial Group
c/o RP Claims Processing
P.O. Box 1390
St. Peters, MO 63376

**SPINAL DIAGNOSTIC AND PAIN MANAGEME**           Date:  Jul 29, 2020
**6685 Delmonico Dr ste C**
**ATTN: MEDICAL RECORDS**                         Re: Long Term Disability Benefits
**COLORADO SPRINGS, CO  80919**                   Claim# 6749554       9291624
                                                  Claimant: MASON, JAN
                                                  Claimant DOB:
                                                   Provider Portal:  https://portal.releasepoint.com
                                                  Access Key:  SPI126

Dear   MR X 3,

Lincoln Financial is the Disability Claim Administrator for your patient, listed above.

To evaluate your patient's eligibility for disability benefits and help facilitate a return to work when
appropriate, we are requesting the following information:
  From January 1, 2020 to Present
  Please provide medical records SEEN BY: David Salek

We ask that you provide this information within a week of the date of this mailing.  Failure to provide
the requested information may result in an adverse benefit or claim determination. The information
can be faxed to our office at our secure fax number  (213) 884-4921     or mailed to the above address.

If prepayment is required, please fax an invoice indicating the number of pages, the Federal TAX ID, and
the amount due.  If you're a hospital, only abstract records are required:  admission, history/physical, OP
reports, DX summaries, etc.  Fees from Copy Services and Hospitals require approval if over $100.00.

Although HIPAA does not apply to disability insurance carriers, we understand your responsibilities
under HIPAA as a health care provider, and our associated responsibility of ensuring this information is
protected against deliberate or inadvertent misuse or disclosure.

As the insurance carrier providing employer sponsored LTD benefits coverage to your patient, we have
enclosed a HIPAA compliant authorization signed by your patient allowing the release of information to
our company. This authorization specifically allows you to release medical information to Lincoln
Financial, and is valid for 2 years from the date of signature.

If you have any questions regarding this matter, please contact me.

Sincerely,
 Renzo Caringal
Disability Information Specialist
Phone No.:  (213) 269-5922
Fax No:  (213) 884-4921



RPID:  6749554

**Lincoln/Mason 0618**



Liberty Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7207
London, KY 40742-7207
Phone No.: (844) 384-5858
Secure Fax No.: (603) 334-5994

## AUTHORIZATION FOR THE RELEASE OF INFORMATION INCLUDING PROTECTED HEALTH INFORMATION

**I HEREBY AUTHORIZE THE USE OR DISCLOSURE OF INFORMATION ABOUT ME AS DESCRIBED BELOW:**

**Person(s) or group(s) of persons authorized to use or disclose the Information:** Any physicians, medical practitioners, hospitals, clinics, HMOs, long-term care facilities, medical or medically-related facilities, pharmacies, insurance companies, credit or consumer reporting agency, financial/educational institutions, current or former employer, governmental agency, MIB Inc., and any insurance support organizations.

**Person(s) or group(s) of persons authorized to collect or otherwise receive the Information:** The particular Company in the Lincoln Financial Group of companies to which I am submitting a claim and its authorized representatives, agents and/or employees, the Plan Sponsor (if self-insured Plan) and other organizations providing claims management services.

**Description of the information that may be used or disclosed:** This Authorization specifically includes the release of all information related to:

* My physical and mental health and my insurance policies and claims, including, but not limited to, those containing diagnosis, treatments, prognosis, prescription drug information, alcohol or drug abuse or information regarding communicable or infectious conditions, including HIV/AIDS.
* Job duties, earnings, personnel records and other work related information and credit reports, bank records, and federal and state tax returns.
* Information concerning Social Security benefits, including any records pertaining to me and my dependents.

**The information will be used or disclosed only for the following purpose(s):** For purposes of investigating, evaluating and processing my claim, and/or for insurance-related functions.

## STATEMENTS OF UNDERSTANDING & ACKNOWLEDGMENT:

I understand that information used or disclosed pursuant to this authorization could be subject to redisclosure as necessary by the recipient and, if so, may not be subject to federal or state law protecting its confidentiality.

I understand that I may revoke this authorization in writing at any time by sending a written revocation to the Company in the Lincoln Financial Group of companies to which I have submitted a claim, except to the extent that action has been taken in reliance on this authorization, or to the extent that other law provides the Company with the right to contest a claim. I also understand that the revocation of this authorization will not affect uses and disclosures of my health information for purposes of treatment, payment and health care operations.

I understand that authorizing the disclosure of my health information is voluntary and the provision of health care services to me is not conditioned on whether I sign this authorization. If I choose not to sign this authorization, insurance coverage or claim payments may be denied or delayed.

This authorization shall remain in force for 24 months from the date of signature, except to the extent applicable state law imposes or allows a different duration. The information obtained under this authorization will be retained in accordance with the Company's standard retention policy and applicable law. I understand that I may request a copy of this authorization.

Name of claimant (print) _____ JAN K MASON _____

Name of legal representative, if applicable (print) _____    Relationship _____

Signature of claimant or legal representative ___ Jan K Mason ___

Date of Birth: ___    _____    Claim Number: __9291624__    Date: __08/14/19__

**A copy of this authorization will be considered as valid as the original.**

RPID: 6749554

**Lincoln/Mason 0619**

Request Corresponden_____ _____ _____ 1                                      ;7195932492          # 6/ 12

From WFI Incorporated 1.626.628.9628 Wed Jul 29 08:38:13 2020 MDT Page 3 of 5



**Lincoln**
**Financial Group®**

Liberty Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7207
London, KY 40742-7207/
Phone No.: (844) 384-5858
Secure Fax No.: (603) 334-5994

## AUTHORIZATION FOR THE RELEASE OF PROTECTED HEALTH INFORMATION

**I HEREBY AUTHORIZE THE USE OR DISCLOSURE OF HEALTH INFORMATION ABOUT ME AS DESCRIBED BELOW:**

Person(s) or group(s) of persons authorized to use or disclose the Information:  Any physicians, medical practitioners, hospitals, clinics, HMOs, long-term care facilities, medical or medically-related facilities, pharmacies, insurance companies, Plan Sponsor/ Administrator, governmental agency, MIB Inc., and any insurance support organizations.

Person(s) or group(s) of persons authorized to collect or otherwise receive the Information: The particular Company in the Lincoln Financial Group of companies to which I am submitting a claim and its authorized representatives, agents and/or employees, the Plan Sponsor (if self-insured Plan) and other organizations providing claims management services.

Description of the Information that may be used or disclosed: This Authorization specifically includes the release of all psychotherapy notes relating to me, without restriction, including psychotherapy notes recorded in any medium documenting or analyzing the contents of conversations during private counseling sessions and/or group, joint or family counseling sessions.

The information will be used or disclosed only for the following purpose(s):  For purposes of investigating, evaluating and processing my claim, and/or for insurance-related functions.

## STATEMENTS OF UNDERSTANDING & ACKNOWLEDGMENT:

I understand that information used or disclosed pursuant to this authorization could be subject to redisclosure as necessary by the recipient and, if so, may not be subject to federal or state law protecting its confidentiality.

I understand that I may revoke this authorization in writing at any time by sending a written revocation to the Company in the Lincoln Financial Group of companies to which I have submitted a claim, except to the extent that action has been taken in reliance on this authorization, or to the extent that other law provides the Company with the right to contest a claim. I also understand that the revocation of this authorization will not affect uses and disclosures of my health information for purposes of treatment, payment and health care operations.

I understand that authorizing the disclosure of this health information is voluntary and the provision of health care services to me is not conditioned on whether I sign this authorization.  If I choose not to sign this authorization, insurance coverage or claim payments may be denied or delayed.

This authorization shall remain in force for 24 months from the date of signature, except to the extent applicable state law imposes or allows a different duration.  The information obtained under this authorization will be retained in accordance with the Company's standard retention policy and applicable law. I understand that I may request a copy of this authorization.

Name of claimant (print)   ___JAY  K  MASON_____

Name of legal representative, if applicable (print) _____   Relationship _____

Signature of claimant or legal representative   ___Jay K Mason_____

Date of Birth: __   _____   Claim Number: __9291624__   Date: ___08/14/19_____

*A copy of this authorization will be considered as valid as the original*

RPID: 6749554

**Lincoln/Mason 0620**

Request Corresponden_ _ _ _ _ _ _ _ _ _ _ ^7195932492    #  7/ 12

From WFI Incorporated 1.626.628.9628 Wed Jul 29 08:38:13 2020 MDT Page 4 of 5


**Lincoln** Financial Group®

Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

**The Lincoln National Life Insurance Company**
Service Office:
8301 Indian Hills Drive
Omaha, NE 68114-4066
toll free (800) 423-2765
www.Lincoln4benefits.com

1/22/2020

To Whom It May Concern,

Lincoln Life Assurance Company of Boston, a Lincoln National Life Insurance company, authorizes ReleasePoint to act on its behalf for obtaining medical records in connection with the administration of your patient's disability claim.

The enclosed Authorization to obtain and release information, as executed by the patient, directs the release of protected medical information to Lincoln Financial Group.

We request that you please send records to ReleasePoint by one of the options below:
- Electronic mail to: charts@releasepoint.com
- Secure fax to: (213)884-4921. There is no limit on the number of pages faxed.

If you have any questions, please contact ReleasePoint at (800) 999-9589.

Sincerely,

*Kathryn Leombruno*
*Director, Claims Operations*
Lincoln Financial Group Claims

ReleasePoint
PO Box 1390
St. Peters, MO 63376

©2016 Lincoln National Corporation www.lincoln4benefits.com
Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates
Affiliates are separately responsible for their own financial and contractual obligations.

RPID: 6749554

**Lincoln/Mason 0621**

Request Corresponden_____ :7196932492    # 8/12

From WFI Incorporated 1.626.628.9628 Wed Jul 29 08:38:13 2020 MDT Page 5 of 5

# Save Time and Avoid Follow-up Calls
# Use our Secure Status and Upload Portal

Using our secure online portal, you can provide us with status information on our request for medical records, and upload records directly to our system.

Here's how it works:

**STEP 1:**     Go to https://portal.releasepoint.com to bring up the portal on your browser.

**STEP 2:**     Enter the RPID and Access Key:

Patient Name:      MASON, JAN
RP ID:             6749554
Access Code:       SPI126

**STEP 3:**     Select either "Upload Records" or "Update Status" and follow the instructions on the screen.

**STEP 4:**     Record your confirmation number, and you're done.

**Thank you for using the ReleasePoint Provider Portal.**

Provider Portal

RPNET PROVIDER PORTAL LOGIN
Enter the 7-digit RP Number and Portal Access Key to Continue:

RP Number:     123A367

Access Key:     CVB702

LOGIN

Powered By 🔘 ReleasePoint

RPID: 6749554

**Lincoln/Mason 0622**

# Quality Assurance Report

## Request Information

Report Date:    August 7, 2020                    RP ID: **6749554**

Patient Name:   MASON, JAN

Provider Name: SPINAL DIAGNOSTIC AND PAIN MANAGEME

## Quality Assurance Information

Scope Requested: **From January 1, 2020 to Present**

Special Request:
  Please provide medical records SEEN BY:David Salek

Special Request Included? YES

Secondary Request Confirmed? YES

QC Notes:

Chart Reviewed By:  JLORE

**Lincoln/Mason 0623**

**From:** Avrett, Mary
**Sent:** Fri, 7 Aug 2020 23:12:04 +0000
**To:** Avrett, Mary
**Subject:** FW: RP ID: 6749554 (LIBMTN) / Pol/Claim ID: 9291624 (MASON, JAN) -- DOWNLOAD Ready
**Importance:** High

_____

From: status@releasepoint.com
Sent: Friday, August 7, 2020 7:11:41 PM (UTC-05:00) Eastern Time (US & Canada)
To: Avrett, Mary
Subject: RP ID: 6749554 (LIBMTN) / Pol/Claim ID: 9291624 (MASON, JAN) -- DOWNLOAD Ready

***This email is from an external source. Only open links and attachments from a Trusted Sender.***

Policy/Claim/Cert:  9291624
RP ID:    6749554
Patient:  MASON, JAN
Ins. Co:  Lincoln Financial Group
Provider: SPINAL DIAGNOSTIC AND PAIN MANAGEME
Req By:  M AVRETT
----------------------------------------------------
Original Provider:  David Salek

Please be advised that ReleasePoint has completed handling of the medical record request on your applicant listed above.  Records  are available for viewing on RPNet.

Thank you.

-----------------------------------------------------------------------------------------

The information contained in this electronic mail message is intended solely for the addressee stated above and may contain information that is confidential, privileged, or otherwise protected from disclosure under applicable law.  If the reader of this message is not the intended recipient or an agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this electronic mail transmission is strictly prohibited.

If you have received this communication in error, please notify us immediately by e-mail to "status@releasepoint.com", and delete the original message.

**Lincoln/Mason 0624**



Lincoln Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7213
London, KY 40742-7213
Phone No.: (888) 437-7611
Secure Fax No.: (603) 334-7973

| | |
|---|---|
| Date: August 7, 2020 | |
| To:    DAVID SALEK<br>PAIN MANAGEMENT<br>6685 DELMONICO DR SUITE C<br>COLORADO SPRINGS CO 80919 | |
| Attn: | |
| Fax:    (719) 598-2775 | |
| From:  Tamie Devlin<br>Sr Customer Info Rep<br>On Behalf Of: Mary Avrett<br>Phone No.: Phone No.: (888) 437-7611<br>Secure Fax No.: (603) 334-7973 | |
| Total Pages<br>(Including Cover):    2 | |
| RE:<br><br>Claim #:    9291624<br>Claimant:   Jan Mason<br><br>Charter Communications, Inc. | |

This fax, and any attachments thereto, is intended only for the use of the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this fax, you are hereby notified that any dissemination, distribution or copying of this fax, and any attachments thereto, is strictly prohibited. If you have received this fax in error, please notify me by telephone at (888) 437-7611 and permanently shred the original and any copy of any fax and any printout thereof.

**Lincoln/Mason 0625**



Lincoln Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7213
London, KY 40742-7213
Phone No.: (888) 437-7611
Secure Fax No.: (603) 334-7973

August 7, 2020

David Salek
Pain Management
6685 DELMONICO DR SUITE C
COLORADO SPRINGS, CO 80919

RE:    Long Term Disability (LTD) Benefits
       Charter Communications, Inc.
       Claim #: 9291624
       Claimant: Jan Mason
       Claimant D.O.B.:

Dear David Salek:

We are the Disability Claims Administrator for the patient listed above. We have received an
invoice for medical records in the amount of $200.00. Lincoln Financial requires a W-9 form in
order to remit payment, including your EIN. We are unable to process this payment until it has been
received.
If you have any questions regarding this matter, please contact her assigned Disability Case Manager
at the number below.

Sincerely,

Tamie Devlin
Sr Customer Info Rep
On Behalf Of: Mary Avrett
Phone No.: (888) 437-7611 Ext. 16371
Secure Fax No.: (603) 334-7973

1  of  1

**Lincoln/Mason 0626**



JOB CODE: CCS112

Rep 3, Cust Svc Billing

JOB SUMMARY
Provides superior customer support related to Charter services, including complex billing inquiries and resolving escalated customer situations. Employees in this role are responsible for establishing and maintaining professional and positive relationships with customers on behalf of Charter and ensuring issues are addressed consistently with company policies and practices. Works independently with minimal supervision.

MAJOR DUTIES AND RESPONSIBILITIES
*Actively and consistently support all efforts to simplify and enhance the customer experience.*

Process customer orders in a courteous, efficient and timely manner.

Effectively present and discuss Charter products and services.

Convey an image of quality, integrity and superior understanding regarding services.

Manage customer interactions professionally and efficiently.

Effectively address customer questions, complaints and concerns within the scope of responsibility with minimal assistance from Lead/Supervisor.

Remain current and knowledgeable on every aspect of supported product.

Facilitate customer issue escalations to local management/support as required. Determine necessity for field visits.

Accurately document customer account records based on actions taken.

Fulfill work schedules as required.

Participate in quality coaching sessions to ensure efficient and effective interactions with customers.

Ensure customer education on Charter's billing and remittance policies and procedures.

Identify video/billing support training and skill gaps, and provide proactive feedback and recommendations for improvement.

Keep supervisor informed of any work-related concerns.

Perform other duties as assigned.

Created 11/11/2015
**Lincoln/Mason 0627**



REQUIRED QUALIFICATIONS
Skills/Abilities and Knowledge
*Ability to read, write, speak and understand English*
Ability to handle multiple tasks
Strong organization and time management skills
Excellent interpersonal skills
Proficiency with PCs, Microsoft Office Suite and general intranet navigation

Education
High school diploma or equivalent

Related Work Experience
Successfully fulfilled Career Progression requirements
Experience working in cable operations and/or telecommunications call center
Successful completion of a minimum of 6 months as a Customer Service Representative, having demonstrated knowledge and proficiency, consistently exceeding all objectives and qualitative requirements of the previous level

PREFERRED QUALIFICATIONS
Skills/Abilities and Knowledge
Ability to effectively train and assist in supervision of other representatives

Related Work Experience
Previous senior or lead customer service experience

WORKING CONDITIONS
Normal office conditions

*EOE Race/Sex/Vet/Disability*
Charter is an equal opportunity employer that complies with the laws and regulations set forth in the following
EEO Is the Law poster: http://www.dol.gov/ofccp/regs/compliance/posters/pdf/eeopost.pdf
Charter is committed to diversity, and values the ways in which we are different.

Created 11/11/2015
**Lincoln/Mason 0628**

**From:** ESCLeaves <Charter.ESCLeaves@charter.com>
**Sent:** Tue, 4 Aug 2020 19:33:05 +0000
**To:** Avrett, Mary
**Subject:** Appeal - Claim 9291624
**Attachments:** Rep 3, Cust Svc Billing - CCS112.docx

***This email is from an external source. Only open links and attachments from a Trusted Sender.***

Jan Mason
1102054
CCS112 Rep 3, Cust Svc Billing

Hello Mary,
Please see the attached document.
Best regards,
Tony



**Tony Todisco** | Supervisor, Employee Service Center, Leave Administration | 704.206.2288
7800 Crescent Executive Drive | Charlotte, NC 28217

**From:** Avrett, Mary [mailto:Mary.Avrett@lfg.com]
**Sent:** Monday, August 3, 2020 7:59 AM
**To:** ESCLeaves <Charter.ESCLeaves@charter.com>
**Subject:** [EXTERNAL] (Secure) - Appeal - Claim 9291624
**Importance:** High

> This message was sent securely using Zix®

**CAUTION:** The e-mail below is from an external source. Please exercise caution before opening attachments, clicking links, or following guidance.

Good Morning,

We have received an appeal for LTD benefits for Jan Mason, Emp ID 1102054.  Can you please provide a copy of her job description as soon as possible?

Thank you so much!

**Please note: Liberty Life Assurance Company of Boston is now a Lincoln Financial Group company.**

**Lincoln/Mason 0629**



**Mary Avrett**
Appeals Consultant
Lincoln Financial Group

1-888-437-7611
Extension 16371
PO Box 7206
London, KY 40742-7206
Mary.Avrett@LFG.com
**LincolnFinancial.com**

**Follow us on:**

  

Notice of Confidentiality: **This E-mail and any of its attachments may contain Lincoln National Corporation proprietary information, which is privileged, confidential, or subject to copyright belonging to the Lincoln National Corporation family of companies. This E-mail is intended solely for the use of the individual or entity to which it is addressed. If you are not the intended recipient of this E-mail, you are hereby notified that any dissemination, distribution, copying, or action taken in relation to the contents of and attachments to this E-mail is strictly prohibited and may be unlawful. If you have received this E-mail in error, please notify the sender immediately and permanently delete the original and any copy of this E-mail and any printout. Thank You.**

This message was secured by **Zix**®.
The contents of this e-mail message and any attachments are intended solely for the addressee(s) and may contain confidential and/or legally privileged information. If you are not the intended recipient of this message or if this message has been addressed to you in error, please immediately alert the sender by reply e-mail and then delete this message and any attachments. If you are not the intended recipient, you are notified that any use, dissemination, distribution, copying, or storage of this message or any attachment is strictly prohibited.

**Lincoln/Mason 0630**

**Medical Record Overview**                                    ⊕ ReleasePoint

Date:      July 31, 2020

Patient Name:    MASON, JAN

Records From:    UC HEALTH ASPEN CREEK MEDICAL        RP ID: 6749555
                 2420 EAST PIKES PEAK
                 COLORADO SPRINGS, CO  80909          Client ID: 9291624
                 (719) 278-3627
                                                      Source: LIBMTN

Request Scope:   From September 1, 2019 to Present    Req By:  M AVRETT
                                                               mary.avrett@lfg.com
Chart Range:     10/07/2019 - 07/01/2020

                                                      SSN:

                                                                    Starts on

| Classification | From | To | Total | Page |
|---|---|---|---|---|
| Progress Notes | Oct 7 2019 | Jul 1 2020 | 67 | 2 |
| Labs/Diagnostics | Oct 7 2019 | Jan 30 2020 | 8 | 69 |
| Operative Reports | Dec 9 2019 | Dec 9 2019 | 6 | 77 |
| Request Correspondence | | | 5 | 83 |

                        Total Page Count:        86

Notes From QC:

**Lincoln/Mason 0631**

Progress Notes - 07/01/2020

**uchealth**

ASPEN CK PRIM CARE OP     Mason, Jan K
MRN: 3925160, DOB:        , Sex: F
Visit date: 5/22/2020

### 05/22/2020 - Video Visit in UCHealth Aspen Creek Medical Center (continued)

Clinical Notes (continued)

### 07/01/2020 - Office Visit in UCHealth Aspen Creek Medical Center

Clinical Notes

Consults

Filed on 7/8/2020  2:02 PM

Document on 7/8/2020  2:01 PM by Wheeler, Chris: MAJOR DYSFUNCTION OF A WEIGHT BEARING JOINT (below)

**Lincoln/Mason 0632**

Progress Notes - 07/01/2020

## uchealth

ASPEN CK PRIM CARE OP    Mason, Jan K
MRN: 3925160, DOB:         Sex: F
Visit date: 7/1/2020

### 07/01/2020 - Office Visit in UCHealth Aspen Creek Medical Center (continued)

Clinical Notes (continued)

MRN: 3925160    CSN: 178473810
Mason, Jan K
Svc Date: 7/01/20

LISTING SL02A - MAJOR DYSFUNCTION OF A WEIGHT BEA

From: *Jeffrey K Kent MD*    *Family Practice*

Re: Jane K. Mason

DOB: ___

Please comment on whether your patient has the following impairment:

> 1.02 Major dysfunction of a joint(s) (due to any cause): Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With:
> A.    Involvement of one major peripheral weight-bearing joint (i.e., hip, knee or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b;

1. Does your patient have major dysfunction of a weight bearing joint characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability)?    ☑ Yes    ☐ No

   If yes, please identify affected joint(s): *(B) Hip + (B)*

   and please identify the dysfunction: ___

2. Is dysfunction confirmed by findings or appropriate medically acceptable imaging?    ☑ Yes    ☐ No

   If yes, please attach findings or describe type of imaging and date performed:
   *MRI + CT + Diagnostic*

3. Does your patient have evidence of chronic joint pain and stiffness in the affected joint(s)?    ☑ Yes    ☐ No

4. Does your patient have any limitation of motion of the affected joint(s)?    ☑ Yes    ☐ No

   If yes, indicate ranges of motion that are limited: ___

From Social Security Disability Practice by Thomas E. Bush, copyright James Publishing.  Used with permission.
For information 800-440-4780 or www.JamesPublishing.com.

Lincoln/Mason 0633

Progress Notes - 07/01/2020



ASPEN CK PRIM CARE OP     Mason, Jan K
MRN: 3925160, DOB:         , Sex: F
Visit date: 7/1/2020

## 07/01/2020 - Office Visit in UCHealth Aspen Creek Medical Center (continued)

Clinical Notes (continued)

MRN: 3926159    CSN:178478518
Mason, Jan K
Svc Date: 7/01/20

Pv: KENT, JEFFREY R

5. Concerning your patient's ability to "ambulate effectively," is your p following on a sustained basis without companion assistance?

A. walk, a block at a reasonable pace on rough or uneven surfaces?
☐ Yes   ☑ No

B. use standard public transportation including climbing into/out of a bus and tolerate the typical jostling on a bus?
☐ Yes   ☑ No

C. carry out routine ambulatory activities including grocery and clothes shopping and banking?
☐ Yes   ☑ No

D. climb several stairs at a reasonable pace with use of only a single hand rail?
☐ Yes   ☑ No

6. Does your patient need an assistive device to ambulate?
☑ Yes   ☐ No

If yes, what type of assistive device:  CANE

7. If the clinical findings do not match all of the findings required above, are your patient's combined impairments medically equivalent to the severity of conditions in the above listed impairment?
☑ N/A   ☐ Yes   ☐ No

If yes, please explain in detail how your patient's impairments are equivalent to the impairment listed above, with reference to specific supporting clinical findings.

Date: 7/1/2020     Signed:

Print Name: Jeffrey K Kent

Address:

**Lincoln/Mason 0634**

Progress Notes - 07/01/2020



ASPEN CK PRIM CARE OP      Mason, Jan K
MRN: 3925160, DOB:          Sex: F
Visit date: 7/1/2020

## 07/01/2020 - Office Visit in UCHealth Aspen Creek Medical Center (continued)

Clinical Notes (continued)

### Progress Notes

Kent, Jeffrey R, MD at 7/1/2020  1:00 PM

| | | |
|---|---|---|
| Author: Kent, Jeffrey R, MD | Service: — | Author Type: Physician |
| Filed: 7/3/2020  9:35 AM | Encounter Date: 7/1/2020 | Status: Signed |
| Editor: Kent, Jeffrey R, MD (Physician) | | |

### Plan
**Assessment and Plan:**

|     |                                                       | ICD-10-CM |
|-----|-------------------------------------------------------|-----------|
| 1.  | **Osteoarthritis of spine with radiculopathy, lumbar region**<br>cont supportive care  fexeril refill. | M47.26 |
| 2.  | Sacroiliac joint pain<br>proceed with specialty plan on spinal cord stimulator; si joint fusion. | M53.3 |
| 3.  | Femoroacetabular impingement of both hips | M25.851 |
|     |                                                       | M25.852 |
|     | needs labral reconstruction on L hip                  |           |

Medications Placed This Encounter
Medications
- cyclobenzaprine (FLEXERIL) 10 mg tablet
- cyclobenzaprine (FLEXERIL) 10 mg tablet

Subjective
**Subjective:**

Pt with L diagnostic SI injection---relieved the pain. Pt to fuse L SI joint. Needing  Rehab the R SI joint first.

Then pt will have labral reconstruction on L hip.

Pt being considered for spiinal cord stimulator.

Pt with ongoing pain R si fusion---?if needs referral to further evaluation

Pt is on long term disability---applying to social security---initial denial ----now doing an appeal

Here for paperwork completion to help with this.

Pt needs refill of cyclobenzaprine

HPI

CURRENT MEDICATIONS:

**Lincoln/Mason 0635**

Progress Notes - 07/01/2020



ASPEN CK PRIM CARE OP     Mason, Jan K
MRN: 3925160, DOB:           , Sex: F
Visit date: 7/1/2020

## 07/01/2020 - Office Visit in UCHealth Aspen Creek Medical Center (continued)

### Clinical Notes (continued)

Current Outpatient Medications

| Medication | Sig |
|---|---|
| • ALPRAZolam (XANAX) 0.5 mg tablet | 1-2 1 hour before procedure |
| • cyclobenzaprine (FLEXERIL) 10 mg tablet | Take 10 mg by mouth 3 times daily as needed for Muscle spasms. |
| • fluCONazole (DIFLUCAN) 150 mg tablet | 1 by mouth now then 2nd pill in 3 day. |
| • LORATADINE (CLARITIN PO) | |
| • losartan (COZAAR) 100 mg tablet | Take 1 tablet by mouth daily. |
| • metoprolol succinate (TOPROL-XL) 100 mg 24 hr tablet | Take 1 tablet by mouth daily. |
| • norethindrone-e estrad-iron (MICROGESTIN FE 1/20, 28,) 1 mg-20 mcg (21)/75 mg (7) per tablet | Take 1 tablet by mouth daily. |
| • zolpidem (AMBIEN) 10 mg tablet | Take 1 tablet by mouth nightly at bedtime for Sleep-Onset Insomnia. |
| • cyclobenzaprine (FLEXERIL) 10 mg tablet | Take 1 tablet by mouth 2 times daily as needed for Muscle spasms. |

No current facility-administered medications for this visit.

**ALLERGIES:** Patient has no known allergies.

I have reviewed, verified and personally updated the past medical, social and ROS history.
reports that she has never smoked. She has never used smokeless tobacco. She reports previous alcohol use. She reports that she does not use drugs.
Review of Systems
Constitutional: Negative for fatigue, fever and unexpected weight change.
HENT: Negative for ear pain, hearing loss, rhinorrhea and tinnitus.
Eyes: Negative for discharge and visual disturbance.
Respiratory: Negative for cough and shortness of breath.
Cardiovascular: Negative for chest pain and palpitations.
Gastrointestinal: Negative for abdominal pain, blood in stool, constipation, diarrhea, nausea and vomiting.
Genitourinary: Negative for dysuria and hematuria.
Musculoskeletal: Positive for arthralgias, back pain and gait problem. Negative for myalgias.
Skin: Negative for rash.
Neurological: Negative for dizziness, syncope and headaches.
Hematological: Negative for adenopathy. Does not bruise/bleed easily.
Psychiatric/Behavioral: Negative for confusion, dysphoric mood and sleep disturbance. The patient is not nervous/anxious

Objective
Objective:
Vital Signs:
**Visit Vitals**

| | |
|---|---|
| BP | (!) 144/97 |
| Pulse | 67 |
| Temp | 37.2 °C (99 °F) (Tympanic) |
| Ht | 1.727 m (5' 8") |
| Wt | 90.3 kg (199 lb) |
| SpO2 | 97% |
| BMI | 30.26 kg/m² |

Printed on 7/29/20 3:01 PM                                                     Page 79

**Lincoln/Mason 0636**

Progress Notes - 07/01/2020



ASPEN CK PRIM CARE OP    Mason, Jan K
MRN: 3925160, DOB:          . Sex: F
Visit date: 7/1/2020

**07/01/2020 - Office Visit in UCHealth Aspen Creek Medical Center (continued)**

Clinical Notes (continued)

**Physical Exam**
Constitutional:
  Appearance: Normal appearance. She is well-developed.
HENT:
  Head: Normocephalic and atraumatic.
  Right Ear: Tympanic membrane and external ear normal.
  Left Ear: Tympanic membrane and external ear normal.
  Nose: Nose normal.
  Mouth/Throat:
  Mouth: Mucous membranes are dry.
Eyes:
  Extraocular Movements: Extraocular movements intact.
  Conjunctiva/sclera: Conjunctivae normal.
  Pupils: Pupils are equal, round, and reactive to light.
Neck:
  Musculoskeletal: Normal range of motion and neck supple.
Cardiovascular:
  Rate and Rhythm: Normal rate and regular rhythm.
  Heart sounds: Normal heart sounds.
Pulmonary:
  Effort: Pulmonary effort is normal.
  Breath sounds: Normal breath sounds.
Abdominal:
  General: Abdomen is flat. Bowel sounds are normal.
  Palpations: Abdomen is soft.
Musculoskeletal: Normal range of motion.
  General: Tenderness present.
  Comments: **Lower back and si joints**

Skin:
  General: Skin is warm and dry.
Neurological:
  General: No focal deficit present.
  Mental Status: She is alert and oriented to person, place, and time.
  Deep Tendon Reflexes: Reflexes are normal and symmetric.
Psychiatric:
  Mood and Affect: Mood normal.
  Behavior: Behavior normal.
  Thought Content: Thought content normal.
  Judgment: Judgment normal.

Procedures

**DATA:**
Results for orders placed or performed in visit on 10/07/19
POCT URINALYSIS AUTOMATED READER CPT 81003-MANUAL RESULT ENTRY

| Result | Value | Ref Range |
|---|---|---|
| Color Urine | yellow | |
| Appearance Urine | Clear | Clear - Clear |
| Glucose Urine POC | Negative | Negative - Negative |
| Bilirubin Urine POC | Negative | negative - negative |
| Ketones Urine POC | Negative | Negative |

Printed on 7/29/20  3:01 PM

Page 80

**Lincoln/Mason 0637**

Progress Notes - 07/01/2020

**uchealth**

ASPEN CK PRIM CARE OP

Mason, Jan K
MRN: 3925160, DOB:        , Sex: F
Visit date: 7/1/2020

### 07/01/2020 - Office Visit in UCHealth Aspen Creek Medical Center (continued)

Clinical Notes (continued)

| | | |
|---|---|---|
| Specific Gravity Urine POC | 1.020 | 1.001 - 1.03 |
| Blood Urine POC | Negative | Negative - Negative |
| pH Urine POC | 5.0 | 4.6 - 8.0 |
| Protein Urine POC | Negative | Negative - Negative mg/dL |
| Urobilinogen Urine POC | 0.2 | 0.2 - 1.0 E.U./dl |
| Nitrite Urine POC | Negative | Negative - Negative |
| Leukocyte Esterase Urine POC | Negative | Negative |

**TIME/COUNSELING:**
N/A
Return to clinic if condition does not improve or worsens
Jeffrey Kent, MD

Electronically signed by Kent, Jeffrey R, MD at 7/3/2020  9:35 AM

**Lincoln/Mason 0638**

Progress Notes - 05/22/2020

**uchealth**

ASPEN CK PRIM CARE OP     Mason, Jan K
MRN: 3925160, DOB: , Sex: F
Visit date: 3/3/2020

---

## 03/03/2020 - Office Visit in UCHealth Aspen Creek Medical Center (continued)

### Clinical Notes (continued)

Jeffrey Kent, MD

Electronically signed by Kent, Jeffrey R, MD at 3/7/2020  7:10 PM

---

## 05/22/2020 - Video Visit in UCHealth Aspen Creek Medical Center

### Clinical Notes

#### Progress Notes

**Kent, Jeffrey R, MD at 5/22/2020 10:30 AM**

| | | |
|---|---|---|
| Author: Kent, Jeffrey R, MD | Service: — | Author Type: Physician |
| Filed: 5/22/2020 11:07 AM | Encounter Date: 5/22/2020 | Status: Signed |
| Editor: Kent, Jeffrey R, MD (Physician) | | |

**Plan**
**Assessment and Plan:**

ICD-10-CM

1. **Osteoarthritis of spine with**     **M47.26**
   **radiculopathy, lumbar region**
   cont care with dr sung. pt is going to physical therapy---helping. no pain
   meds. congrats given to pt.
2. Tear of right acetabular labrum,     S73.191S
   sequela
   cont care with dr huang----L labral tear repair to wait til low back issues
   improve.
3. Sacroiliac joint pain     M53.3
   cont with dr sung on treatment of low back pain
4. Acute vaginitis     N76.0
   diflucan 150mg po now then in 3d

Medications Placed This Encounter
Medications
- fluCONazole (DIFLUCAN) 150 mg tablet

**Subjective**
**Subjective:**

The patient was seen over live interactive videoconferencing and Jan K Mason has been consented for live interactive
videoconferencing. I discussed the use of videoconferencing with the patient including alternative methods for meeting, the limits
of confidentiality and emergency procedures and resources.

The patient was not referred to a higher level of care for further evaluation.

Location of patient: at their home in Colorado
Location of provider: UCHealth Clinic in Colorado

Pt is working again on her si joints. --dr sung

Dr huang is working on her labral repair on the right.

---

Printed on 7/29/20  3:01 PM

Lincoln/Mason 0639

Progress Notes - 05/22/2020

**uchealth**

ASPEN CK PRIM CARE OP     Mason, Jan K
MRN: 3925160, DOB:     , Sex: F
Visit date: 5/22/2020

## 05/22/2020 - Video Visit in UCHealth Aspen Creek Medical Center (continued)

Clinical Notes (continued)

Pt is working with PT..

Pt is having a vaginal yeast infection.

HPI

**CURRENT MEDICATIONS:**
Current Outpatient Medications

| Medication | Sig |
|---|---|
| • ALPRAZolam (XANAX) 0.5 mg tablet | 1-2 1 hour before procedure |
| • LORATADINE (CLARITIN PO) | |
| • losartan (COZAAR) 100 mg tablet | Take 1 tablet by mouth daily. |
| • metoprolol succinate (TOPROL-XL) 100 mg 24 hr tablet | Take 1 tablet by mouth daily. |
| • norethindrone-e estrad-iron (MICROGESTIN FE 1/20, 28,) 1 mg-20 mcg (21)/75 mg (7) per tablet | Take 1 tablet by mouth daily. |
| • zolpidem (AMBIEN) 10 mg tablet | Take 1 tablet by mouth nightly at bedtime. |
| • fluCONazole (DIFLUCAN) 150 mg tablet | 1 by mouth now then 2nd pill in 3 day. |

No current facility-administered medications for this visit.

**ALLERGIES:** Patient has no known allergies.

I have reviewed, verified and personally updated the past medical, social  and ROS history.
 reports that she has never smoked. She has never used smokeless tobacco. She reports previous alcohol use. She reports that she does not use drugs.
Review of Systems
Genitourinary: Positive for vaginal discharge.
Musculoskeletal: Positive for back pain.

**Objective**
Objective:
Vital Signs: There were no vitals taken for this visit.

**Physical Exam**
Constitutional:

Printed on 7/29/20  3:01 PM

Page 73

**Lincoln/Mason 0640**

Progress Notes - 05/22/2020

## uchealth

ASPEN CK PRIM CARE OP    Mason, Jan K
MRN: 3925160, DOB:      , Sex: F
Visit date: 5/22/2020

### 05/22/2020 - Video Visit in UCHealth Aspen Creek Medical Center (continued)

**Clinical Notes (continued)**

Appearance: Normal appearance.
HENT:
  Head: Normocephalic and atraumatic.
  Nose: Nose normal.
  Mouth/Throat:
  Mouth: Mucous membranes are moist.
Eyes:
  Extraocular Movements: Extraocular movements intact.
  Pupils: Pupils are equal, round, and reactive to light.
Neck:
  Musculoskeletal: Normal range of motion and neck supple.
Cardiovascular:
  Rate and Rhythm: Normal rate and regular rhythm.
Pulmonary:
  Effort: Pulmonary effort is normal. No respiratory distress.
  Breath sounds: Normal breath sounds.
Neurological:
  General: No focal deficit present.
  Mental Status: She is alert and oriented to person, place, and time.
Psychiatric:
  Mood and Affect: Mood normal.
  Behavior: Behavior normal.
  Thought Content: Thought content normal.
  Judgment: Judgment normal.

Procedures

**DATA:**
Results for orders placed or performed in visit on 10/07/19
POCT URINALYSIS AUTOMATED READER CPT 81003-MANUAL RESULT ENTRY

| Result | Value | Ref Range |
|---|---|---|
| Color Urine | yellow | |
| Appearance Urine | Clear | Clear - Clear |
| Glucose Urine POC | Negative | Negative - Negative |
| Bilirubin Urine POC | Negative | negative - negative |
| Ketones Urine POC | Negative | Negative |
| Specific Gravity Urine POC | 1.020 | 1.001 - 1.03 |
| Blood Urine POC | Negative | Negative - Negative |
| pH Urine POC | 5.0 | 4.6 - 8.0 |
| Protein Urine POC | Negative | Negative - Negative mg/dL |
| Urobilinogen Urine POC | 0.2 | 0.2 - 1.0 E.U./dl |
| Nitrite Urine POC | Negative | Negative - Negative |
| Leukocyte Esterase Urine POC | Negative | Negative |

**TIME/COUNSELING:**
N/A
Return to clinic if condition does not improve or worsens
Jeffrey Kent, MD

Electronically signed by Kent, Jeffrey R, MD at 5/22/2020 11:07 AM

**Lincoln/Mason 0641**

Progress Notes - 03/03/2020

**uchealth**

ASPEN CK PRIM CARE OP    Mason, Jan K
MRN: 3925160, DOB:        , Sex: F
Visit date: 3/3/2020

## 03/03/2020 - Office Visit in UCHealth Aspen Creek Medical Center (continued)

Clinical Notes (continued)

### Progress Notes

#### Kent, Jeffrey R, MD at 3/3/2020  3:00 PM

Author: Kent, Jeffrey R, MD        Service: —                    Author Type: Physician
Filed: 3/7/2020  7:10 PM           Encounter Date: 3/3/2020      Status: Signed
Editor: Kent, Jeffrey R, MD (Physician)

### Plan
Assessment and Plan:

|   |   | ICD-10-CM |
|---|---|---|
| 1. | Sacroiliac joint pain | M53.3 |

Encouraged patient to seek another opinion at the Mayo Clinic.  Patient likely needs to have pins were removed involving the SI joints.

| 2. | Chronic midline low back pain with sciatica, sciatica laterality unspecified | M54.40 |
|---|---|---|
|   |   | G89.29 |

Continue pain management.  Continue with Dr. Lippert with his spinal cord stimulator trial.

| 3. | Tear of right acetabular labrum, sequela | S73.191S |
|---|---|---|

Consideration of hip replacement surgeries.
No medications were added in this encounter.

### Subjective
Subjective:

Patient with history of chronic pain syndrome and labral tear of the hip as well as chronic lower back/SI joint pain.

Patient has been treated by Dr. Lippert for pain.

Patient had surgery last year involving arthroscopic hip surgery on the right for cam lesion.  Patient has history of bilateral labral tears of the hips.  Patient has undergone extensive physical therapy since her surgery.  Patient is considering hip replacement as it has not fully recovered.

However patient has been having a worsening of pain in the lower back along the SI joint.  Patient apparently has some pins in place and may need to have procedure regarding this.  Patient is considering a consultation with the Mayo Clinic.

Patient is in quite a bit of distress due to the pain and frustration of of not getting well.

Patient is set to have a spinal cord stimulator trial with Dr. Lippert as well.

Patient has seen Dr. Sung in the past regarding her back issues.

HPI

**CURRENT MEDICATIONS:**
Current Outpatient Medications
Medication                    Sig

Printed on 7/29/20  3:01 PM                                    Page 69

**Lincoln/Mason 0642**

Progress Notes - 03/03/2020

**uchealth**

ASPEN CK PRIM CARE OP    Mason, Jan K
MRN: 3925160, DOB:    ; Sex: F
Visit date: 3/3/2020

### 03/03/2020 - Office Visit in UCHealth Aspen Creek Medical Center (continued)

Clinical Notes (continued)

- ALPRAZolam (XANAX) 0.5 mg     1-2 1 hour before procedure
  tablet
- LORATADINE (CLARITIN PO)
- losartan (COZAAR) 100 mg tablet    Take 1 tablet by mouth daily.
- metoprolol succinate (TOPROL-    Take 1 tablet by mouth daily.
  XL) 100 mg 24 hr tablet
- norethindrone-e estrad-iron    Take 1 tablet by mouth daily.
  (MICROGESTIN FE 1/20, 28,) 1
  mg-20 mcg (21)/75 mg (7) per
  tablet
- zolpidem (AMBIEN) 10 mg tablet    Take 1 tablet by mouth nightly at bedtime.

No current facility-administered medications for this visit.

**ALLERGIES:** Patient has no known allergies.

I have reviewed, verified and personally updated the past medical, social and ROS history.
 reports that she has never smoked. She has never used smokeless tobacco. She reports previous alcohol use. She reports that she does not use drugs.
Review of Systems
Constitutional: Negative for fatigue, fever and unexpected weight change.
HENT: Negative for ear pain, hearing loss, rhinorrhea and tinnitus.
Eyes: Negative for discharge and visual disturbance.
Respiratory: Negative for cough and shortness of breath.
Cardiovascular: Negative for chest pain and palpitations.
Gastrointestinal: Negative for abdominal pain, blood in stool, constipation, diarrhea, nausea and vomiting.
Genitourinary: Negative for cysuria and hematuria.
Musculoskeletal: Positive for arthralgias, back pain and gait problem. Negative for myalgias.
Skin: Negative for rash.
Neurological: Negative for dizziness, syncope and headaches.
Hematological: Negative for adenopathy. Does not bruise/bleed easily.
Psychiatric/Behavioral: Positive for dysphoric mood and sleep disturbance. Negative for confusion. The patient is not nervous/anxious

Objective
Objective:
Vital Signs:
**Visit Vitals**
BP          146/82
Pulse       77
Temp        37.1 °C (98.7 °F) (Tympanic)
Ht          1.727 m (5' 8")
Wt          89.8 kg (198 lb)
SpO2        96%
BMI         30.11 kg/m²

**Physical Exam**
Constitutional:
  Appearance: Normal appearance. She is well-developed.
HENT:
  Head: Normocephalic and atraumatic.
  Right Ear: Tympanic membrane and external ear normal.

---

Printed on 7/29/20 3:01 PM                                Page 70

**Lincoln/Mason 0643**

Progress Notes - 03/03/2020



ASPEN CK PRIM CARE OP     Mason, Jan K
MRN: 3925160, DOB:        , Sex: F
Visit date: 3/3/2020

## 03/03/2020 - Office Visit in UCHealth Aspen Creek Medical Center (continued)

**Clinical Notes (continued)**

Left Ear: Tympanic membrane and external ear normal.
Nose: Nose normal.

Eyes:
  Conjunctiva/sclera: Conjunctivae normal.
  Pupils: Pupils are equal, round, and reactive to light.

Neck:
  Musculoskeletal: Normal range of motion and neck supple.

Cardiovascular:
  Rate and Rhythm: Normal rate and regular rhythm.
  Pulses: Normal pulses.
  Heart sounds: Normal heart sounds.

Pulmonary:
  Effort: Pulmonary effort is normal.
  Breath sounds: Normal breath sounds.

Abdominal:
  General: Bowel sounds are normal.
  Palpations: Abdomen is soft.

Musculoskeletal: Normal range of motion.
  General: Tenderness present.
  Comments: **Some pain with range of motion of the hip. Some pain in the lower back/SI joint.**

Skin:
  General: Skin is warm and dry.

Neurological:
  Mental Status: She is alert and oriented to person, place, and time.
  Deep Tendon Reflexes: Reflexes are normal and symmetric.

Psychiatric:
  Behavior: Behavior normal.
  Thought Content: Thought content normal.
  Judgment: Judgment normal.

Procedures

**DATA:**

Results for orders placed or performed in visit on 10/07/19
POCT URINALYSIS AUTOMATED READER CPT 81003 MANUAL RESULT ENTRY

| Result | Value | Ref Range |
|---|---|---|
| Color Urine | yellow | |
| Appearance Urine | Clear | Clear - Clear |
| Glucose Urine POC | Negative | Negative - Negative |
| Bilirubin Urine POC | Negative | negative - negative |
| Ketones Urine POC | Negative | Negative |
| Specific Gravity Urine POC | 1.020 | 1.001 - 1.03 |
| Blood Urine POC | Negative | Negative - Negative |
| pH Urine POC | 5.0 | 4.6 - 8.0 |
| Protein Urine POC | Negative | Negative - Negative mg/dL |
| Urobilinogen Urine POC | 0.2 | 0.2 - 1.0 E.U./dl |
| Nitrite Urine POC | Negative | Negative - Negative |
| Leukocyte Esterase Urine POC | Negative | Negative |

**TIME/COUNSELING:**

N/A
Return to clinic if condition does not improve or worsens

Printed on 7/29/20 3:01 PM                                                Page 71

**Lincoln/Mason 0644**

Progress Notes - 02/06/2020

**uchealth**

ASPEN CK PRIM CARE OP    Mason, Jan K
MRN: 3925160, DOB:        , Sex: F
Visit date: 3/3/2020

---

### 03/03/2020 - Office Visit in UCHealth Aspen Creek Medical Center (continued)

Clinical Notes (continued)

---

North Campus 4110 Briargate Parkway, Suite 200 Colorado Springs, CO
80920 Phone 719-631-7650 Fax  719-632-0068


Colorado Springs
Orthopaedic Group
www.csog.net

South Campus 1259 Lake Plaza Drive, Suite 100 Colorado Springs,
CO 80906 Phone: 719-632-7669 Fax  719-632-0068

Patient Name: Jan K Mason, 503296

Encounter Date:
2/6/2020

Date of Birth

---

**Chief Complaint** Bilateral hip pain.

**History of Present Illness**
Jan is a 47 year old male who presents today 8 weeks status post right hip labral reconstruction using allograft from 9:00 to 4:00 location, chondroplasty, debridement/shaving acetabulum, labral repair at 4:00 and 9:00 location, arthroscopic acetabuloplasty, arthroscopic femoroplasty, osteoplasty to remove cam lesion, synovectomy, capsular closure/plication performed on 12/09/2019. She has been able to wean off of crutches and is now using a cane. She continues reports some achiness of the anterior hip but it has been improved since her surgery. Unfortunately, her lower back pain, pain over her SI joint, and radicular symptoms have worsened. She feels this is affecting her rehabilitation. The patient is status post sacroiliac joint fusion with Dr. Sung and states that the symptoms feel similar as needed prior to her surgery. She otherwise denies calf pain or cramping bilaterally.

She is also here for follow-up regarding left hip pain. Since her previous visit, the patient was able to obtain a MR Arthrogram from Penrad on 1/30/2020 and is here to discuss the findings and possible further treatment options. In regards to her left hip, the patient states she has had pain in December, 2017, getting progressively worse. Her pain has especially worsened after her recent right hip labral reconstruction procedure due to increased loadbearing. Her pain is located in the groin and worsen with prolonged sitting, prolonged standing and squatting type activities. Rotational activities also increased pain. She has tried rest, activity modification, ibuprofen as an anti-inflammatory without significant benefit. She has also been attending physical therapy without much relief. She denies nausea, vomiting, fever, chills, short of breath, chest pain or abdominal pain.

**Medical History**
**Medical Conditions:** Hypertension
**Surgical History:** Tubal 1994; Rhinoplast 2008
**Orthopedic Surgical History:** Right SI Fusion
**Current Medications:** Clarltin 10 mg tablet 1 oral, Ambien 5 mg tablet 1 oral, metoprolol succinate ER 50 mg tablet, extended release 24 hr 1 Tb24 oral, losartan 50 mg tablet 1 oral, indomethacin 50 mg capsule 1 by mouth BID Take with food., oxycodone 5 mg tablet 1 tablet(s) by mouth Q4-6h
**Medication and Allergic Reactions:** No known allergies
**Family History:** No significant family history
**Personal and Social History:**
Patient has children, denies tobacco, marijuana, and alcohol use

**Review of Systems**

---

Printed on 7/29/20  3:01 PM

Page 34

**Lincoln/Mason 0645**

Progress Notes - 02/06/2020

ASPEN CK PRIM CARE OP    Mason, Jan K
MRN: 3925160, DOB:         Sex: F
Visit date: 3/3/2020

## uchealth

### 03/03/2020 - Office Visit in UCHealth Aspen Creek Medical Center (continued)

#### Clinical Notes (continued)

Patient Name: Mason, Jan K DOB

Patient denies fevers, chills, chest pain, shortness of breath, abdominal pain, nausea, diarrhea, constipation. Pertinent positives for review of systems are listed in HPI above, otherwise negative.

Vital Signs: Height 5ft 8.00in, Weight 190lbs BMI 28.89

**General Exam:**
Constitutional: Patient is adequately groomed with no evidence of malnutrition.
Skin: There are no rashes, ulcerations or lesions in the regions examined.
Mental Status: The patient is oriented to time, place and person. The patient's mood and affect are appropriate.
Lymphatic: The lymphatic examination bilaterally reveals all areas to be without enlargement or induration.
Vascular: Examination reveals no swelling or calf tenderness. Peripheral pulses are palpable and 2+.
Neurological: The patient has good coordination. There is no weakness or sensory deficit. Deep tendon reflexes are intact.

**Right Hip/Pelvis Examination**
Patient is alert and oriented to time, place, medical situation without evidence of distress. Steri-Strips were removed today without difficulty. There is no erythema, ecchymosis, or clinical signs of infection present. The patient has normal sensibility to moving light touch over the superficial peroneal, deep peroneal and tibial nerve distributions. The patient is able to fire EHL, tibialis anterior, gastrocsoleus, peroneals. Dorsalis pedis pulse, 2+. There is no calf swelling or tenderness. Homans sign is negative. No evidence of DVT. Hip flexion to 105°, external rotation to 40°, internal rotation to 5°. Tenderness to palpation over the lateral hip and over the sacroiliac joint.

**Left Hip/Pelvis Examination**
LEFT hip range of motion includes flexion to 115 degrees, external rotation to 55°, internal rotation to 5°. Positive anterior impingement test and negative posterior impingement test. Straight leg raise stressing produces lower back pain. Tenderness of palpation over the anterior hip and laterally over the greater trochanter.

**Diagnostic Test Findings:** X-RAYS, BILATERAL HIP, CSOG, 6/4/19: X-rays ordered, performed, and interpreted previously and reviewed today include AP pelvis, bilateral Dunn views, false profile, and cross table lateral views of the BILATERAL hip. They show well-preserved femoroacetabular joint spacing. Tonnis Grade 0. No evidence of fracture or dislocation. No evidence of avascular necrosis or heterotopic ossification in the right hip. On the left hip, there is evidence of femoroacetabular impingement, cam type with alpha angle measuring 63 degrees.

MR ARTHROGRAM, LEFT HIP, 1/30/2020, FINRAD: Focal Cam deformity of the anterior left femoral head neck junction with associated anterior/anterosuperior labral base tear. Small right hip joint effusion.

**Assessment and Plan:**
Diagnosis Codes:
M24.151 Other articular cartilage disorders, right hip Right
M25.552 Pain in left hip Left
M24.152 Other articular cartilage disorders, left hip Left
Impression:
1. 8 weeks status post right hip labral reconstruction using allograft from 9.00 to 4.00 location, chondroplasty, debridement/shaving acetabulum, labral repair at 4:00 and 9:00 location, arthroscopic acetabuloplasty, arthroscopic femoroplasty, osteoplasty to remove cam lesion, synovectomy, capsular closure/plication this was performed on 12/09/2019
2. Left hip pain - labral tear, femoral acetabular impingement

**Lincoln/Mason 0646**

Progress Notes - 02/06/2020

**uchealth**

ASPEN CK PRIM CARE OP    Mason, Jan K
MRN: 3925160, DOB:    Sex: F
Visit date: 3/3/2020

## 03/03/2020 - Office Visit in UCHealth Aspen Creek Medical Center (continued)

Clinical Notes (continued)

Patient Name: Mason, Jan K DOB:

**Treatment Plan:**

I reviewed the clinical and radiographic documentation with the patient. Overall, she continues to recover very well after her right hip labral reconstruction. We focused our attention today on the left hip and spent significant time going over both the previous x-rays and the new MRI images available. We went over these images face-to-face on a computer screen. The patient understands that the left hip has a labral tear in the setting of bony hip impingement. This tear will not heal on its own and may continue to deteriorate over time and continue to cause symptoms. The options for treatment of this tear and the bony impingement include continued conservative management versus consideration of surgical intervention. Conservative management includes rest, activity modification, anti-inflammatories, corticosteroid injection and even biologic injection. Surgical intervention would include diagnostic arthroscopy of the hip, labral debridement with repair, acetabuloplasty if needed, chondroplasty if needed and osteoplasty if needed. We discussed the nature of the surgery and the rehabilitation required after surgery. All questions were answered. At this point in time, she will continue to focus on the right hip rehabilitation program and we will manage her left hip pain with anti-inflammatories. In the meantime, they will continue with rest, activity modification and physical therapy.

Patient was provided with patient education on NSAIDs.

The patient is instructed to return if pain or symptoms arise.

**Clinical Quality Reporting:**

A stretching regimen was recommended to the patient. A strength training regimen was recommended to the patient. The patient was encouraged to exercise.

Electronically signed by Michael Huang, M.D.
Date: 2/6/2020 Time: 3:23 PM
☐ Insert Provider Signature

CC: Copies sent along with cover letter sent to the patient's primary care physician.

**Lincoln/Mason 0647**

Progress Notes - 01/31/2020

uchealth

ASPEN CK PRIM CARE OP

Mason, Jan K
MRN: 3925160, DOB:        Sex: F
Visit date: 3/3/2020

## 03/03/2020 - Office Visit in UCHealth Aspen Creek Medical Center (continued)

Clinical Notes (continued)



Colorade Springs
Orthopaedic Group
www.csog.net

Patient Name: Jan K Mason, 505296

Encounter Date:
1/31/2020

Date of Birth:

**Chief Complaint** Lower back pain

### History of Present Illness

Jan K Mason is a 47 year old female with continued chronic lower back pain. She had a right hip surgery with Dr. Huang in December and is recovering very well from that surgery. She reports that her right hip pain is significantly improved. She continues to have lower back pain that is interfering with participating in physical therapy. She has recently received some imaging for her left hip and will likely need surgical intervention for that hip, as well. She is previously discussed a Boston Scientific spinal cord stimulator with Dr. Song but would like to work out all of her hip pain prior to proceeding with the spinal cord stimulator

She had a successful Boston Scientific spinal cord stimulator trial.

Date of Onset: Many years

### Medical History

Medical Conditions: Hypertension
Surgical History: Tubal 1994, Rhinoplast 2008
Orthopedic Surgical History: Right SI fusion Right hip labral reconstruction using allograft from 0:00 to 4:00 location, chondroplasty, debridement/shaving acetabulum, labral repair at 4:00 and 9:00 location, arthroscopic acetabuloplasty, arthroscopic femeroplasty, osteoplasty to remove cam lesion, synovectomy, capsular closure/plication
Current Medications: Claritin 10 mg tablet 1 oral, Ambien 5 mg tablet 1 oral, metoprolol succinate ER 50 mg tablet, extended release 24 hr 1 Tb24 oral, losartan 50 mg tablet 1 oral, indomethacin 50 mg capsule 1 by mouth BID-Take with food , oxycodone 5 mg tablet 1 tablet(s) by mouth Q4-6h
Medication and Allergic Reactions: No known allergies
Family History: No significant family history
Personal and Social History:
Patient has children, denies tobacco, marijuana, and alcohol use

### Review of Systems

Constitutional: Denies any unplanned weight loss, loss of appetite or fatigue.
Eyes: Denies any blurred vision, double vision or vision loss.
Ear/Nose/Throat: Denies any hearing loss, hoarseness or trouble swallowing.
Cardiovascular: Denies any chest pain or palpitations.

**Lincoln/Mason 0648**

Progress Notes - 01/31/2020

## uchealth

ASPEN CK PRIM CARE OP     Mason, Jan K
MRN: 3925160, DOB:        Sex: F
Visit date: 3/3/2020

### 03/03/2020 - Office Visit in UCHealth Aspen Creek Medical Center (continued)

Clinical Notes (continued)

Patient Name: Mason, Jan K DOB

**Allergy:**
**Respiratory:** Denies any chronic coughing, pneumonia or shortness of breath.
**Gastrointestinal:** Admits constipation.
**Genitourinary:** Denies any painful urination, blood in urine or kidney problems.
**Musculoskeletal:**
**Skin:** Denies any rashes, skin ulcers, lumps or psoriasis.
**Neurological:** Denies any frequent falls, loss of coordination, numbness, dizziness, change in bowel and bladder function.
**Psychiatric:** Denies any depression, drug or alcohol addiction or sleeping disorders.
**Hematological:** Denies any bleeding problems, easy bruising or anemia.

**Vital Signs:** height: 5ft 8.00in, Weight: 190lbs BMI 28.89

**General Exam:**
**Constitutional:** Patient is adequately groomed with no evidence of malnutrition.
**Skin:** There are no rashes, ulcerations or lesions in the regions examined.
**Mental Status:** The patient is oriented to time, place and person. The patient's mood and affect are appropriate.
**Lymphatic:** The lymphatic examination bilaterally reveals all areas to be without enlargement or induration.
**Vascular:** Examination reveals no swelling or calf tenderness. Peripheral pulses are palpable and 2+.
**Neurological:** The patient has good coordination. There is no weakness or sensory deficit. Deep tendon reflexes are intact.

**Lumbar Spine Examination**
**General:** The patient is well-developed, well-nourished in no acute distress. The patient had normal mood and affect and was oriented to time/place/person. Respiration is not labored.
**Musculoskeletal (Back/RLE/LLE):** Examination includes but not limited to station and gait, CV, lymph, sensation, reflexes, coordination, balance, inspection/ palpation, ROM, stability, strength, skin. Examination is within normal limits for this patient except for pertinent positive findings below.
1. There is tenderness along the spinous processes and paraspinal musculature and diffusely throughout the lower back including over the right SI joint.
2. Lower extremity motor strength is intact.
3. There is pain with range of motion, primarily with extension.

**Diagnostic Test Findings:** MRI scan of the LUMBAR spine done at CSOG on 8/2019, shows lumbar degenerative disc disease at multiple levels with mild disc height collapse. Mild neuroforaminal stenosis at multiple levels.

**Diagnosis Codes:**
M54.5 Low back pain, M48.062 Spinal stenosis, lumbar region with neurogenic claudication, M51.36 Other intervertebral disc degeneration, lumbar region, M51.16 intervertebral disc disorders with radiculopathy, lumbar region, M46.1 Sacroiliitis, not elsewhere classified, M25.551 Pain in right hip, M25.552 Pain in left hip.
**Impression:**
1. Chronic pain syndrome and sciatica.
2. Status post right sacroiliac (SI) joint fusion 9/2017
3. Status post motor vehicle accident (MVA), 12/18/2012.

**Lincoln/Mason 0649**

Progress Notes - 01/31/2020

**uchealth**

ASPEN CK PRIM CARE OP    Mason, Jan K
MRN: 3925160, DOB:
Visit date: 3/3/2020

Sex: F

## 03/03/2020 - Office Visit in UCHealth Aspen Creek Medical Center (continued)

Clinical Notes (continued)

Patient Name: Mason, Jan K DOB:

Treatment Plan:

The patient's condition was discussed in detail today. We reviewed all available imaging studies face-to-face on the computer screen. We discussed conservative treatment options in detail including physical therapy, rest, activity modification, and injection options. She has previously had a successful Boston Scientific spinal cord stimulator trial. She would like to work out her hip pathology prior to proceeding with a spinal cord stimulator. She likes to try some additional pain medication to help manage her pain prior to any additional surgery. I put in a referral to Dr. Salek as she is an established patient of his. She would like to call for an appointment when she is ready to proceed with a spinal cord stimulator. She will let us know if her symptoms worsen.

The patient is in agreement with the above plan. The patient was given follow-up instructions. The patient is instructed to call our office if they have any questions or concerns, or if their symptoms change or worsen.

CC: Dr. Salek
Patient was provided with patient education on Bone Health Basics
The patient is instructed to return if pain or symptoms arise.

Clinical Quality Reporting:
The patient has not received the influenza vaccination. The patient was assessed for fall risk.

*Kelsey Chrane MS PA-C*

Electronically signed by: kelsey Chrane, M.S., PA-C
Date: 1/31/2020 Time: 8:30 AM
[ ] Insert Provider Signature

CC: A copy of the office visit notes will be forwarded to the patient's referring physician. Copies sent along with cover letter sent to the patient's primary care physician.

**Lincoln/Mason 0650**

Progress Notes - 01/29/2020

ASPEN CK PRIM CARE OP    Mason, Jan K
MRN: 3925160, DOB:     , Sex: F
Visit date: 3/3/2020

## uchealth

---

### 03/03/2020 - Office Visit in UCHealth Aspen Creek Medical Center (continued)

Clinical Notes (continued)

---

Fyzical Therapy and Balance Centers - Falcon
7622 McLaughlin Rd
Falcon, CO 80831-4710
Phone: (719)495-3133
Fax: (719)495-8685

**Daily Note /
Billing Sheet**

**FYZICAL**
Therapy & Balance Centers

Patient Name: Mason, Jan K.
Date of Birth
Referring Physician(s): HUANG, MICHAEL J. MD
Surgery: (Date/Type) 12/16/2019 R hip scope with labral revision
Visit No.: 13
Insurance Name: KAISER PERMANENTE

Date of Daily Note: 01/29/2020
Injury/Onset/Change of Status Date: 12/13/2019
Diagnosis: ICD10: M25.151 Fistula, right hip
Date of Original Eval: 12/13/2019

Treatment Diagnosis: ICD10: M25.151: Fistula, right hip

**Subjective**
Treatment Side: Right
Current Complaints / Gains: Pt reports to the clinic and states that she is walking a lot better, however, she is still feeling high levels of pain. Pt reports she has an MRI tomorrow on L hip.

2-3/10 pain in hip, 7-8/10 pain level in low back.
Pt: Rehab from s/p R hip scope with labral revision (12/0). Precautions: Pt is currently partial weight bearing at 30%. Hip immobilizer set to 30 deg hip flexion.
Before the injury/onset/change of status date, the patient was able to perform the following activities:
  Mobility: Walking & Moving Around
Current Functional Limitations:
  Mobility: Walking & Moving Around;
Home Health Care: No
Medical History: High Blood Pressure, please see e-doc
Complicating/Personal Factors: Mechanism of injury/ illness, Multiple Treatment Areas, Patient age
Mental Status/Cognitive Function Appears Impaired? No
  Written provider documentation was obtained confirming that current medications with dosages were verified with the patient or authorized representative

**Objective**

| Precautions | No hip flexion past 90 deg and no excessive hip ER. | |
|---|---|---|
| CPT Code | Direct Timed Codes | Units |
| GP 97110 | Therapeutic Exercise | 1 |

To improve hip ROM and room activities:
-Self tennis ball R glute rolling
-Seated LAQ 2x20 each leg

10 mins

HEP:
-Sidestepping // bands
-Mini Squat x10 // Bands
-Standing Hip 3 Way (held)
-Semi Tandem Stance 3x30" ea
-Sit to Stands x20
-AAROM hip add
-AAROM heel slides
-Supine hip IR/ER
-SAQ
-AAROM Strap Abn to 90
-Adduction Ball Squeeze x20
-SLR x20
-Tandem Wt Reassign x20 ea // Cone
-Bilateral Ankle pumps
-Bilateral Quad sets
-Bilateral Glute sets

| GP 97140 | Manual Therapy | 1 |
|---|---|---|

To improve hip mobility:
-Passive hip HS/ITB stretch (avoiding end ranges)
-Incision Site STM
-Glute/ITB STM

30 mins

Powered by **WebPT**

---

**Lincoln/Mason 0651**

Progress Notes - 01/29/2020

uchealth

ASPEN CK PRIM CARE OP

Mason, Jan K
MRN: 3925160, DOB:          , Sex: F
Visit date: 3/3/2020

## 03/03/2020 - Office Visit in UCHealth Aspen Creek Medical Center (continued)

### Clinical Notes (continued)

MRN: 3925160    CSN: 15915735
Mason, Jan K

Fyzical Therapy and Balance Centers - Falcon
7627 McLaughlin Rd
Falcon, CO 80831-4710
Phone: (719)495-3131
Fax: (719)495-8665

**Daily Note /
Billing Sheet**

Svc Date: 3/03/20

Post-Treatment                MHP R hip

**Assessment**
Assessment/Diagnosis: Pt demonstrates R plate discomfort, which is consistent with tonic musculature. STM as well as heat was applied to the area and pt reports slight discomfort relief following. Pt was educated to perform self STM with a tennis ball at home to assist with own tonicity.
Patient Demonstrates Compliance with Prescribed HEP
Rehab Potential: Good
Short Term Goals:
1: (5 Week) | Pt will be independent with initial home exercise program to progress towards discharge. |
2: (5 Weeks) | Pt will be able to ambulate without use of bilateral crutches. |
3: (5 Weeks) | Pt will improve her passive HF to 90 deg to progress towards improved functional mobility. |
Long Term Goals:
1: (10 Week) | Pt will be able to ascend/descend stairs with an alternating pattern. |
2: (10 Weeks) | Pt will improve her R hip active ROM to 115 deg to allow her to return to work with limited duty. |

**Plan**
Instructions: Progressing Patient Next Visit:

*Taylor Pfeife PT, DPT, CSCS*

Taylor Marie Pfeifer, PT, DPT, CSCS
License #DD18575
Electronically Signed by Taylor Marie Pfeifer, PT, DPT, CSCS on January 29, 2020 at 3:25 am

Powered by **WebPT**

**Lincoln/Mason 0652**

Progress Notes - 01/27/2020

**uchealth**

ASPEN CK PRIM CARE OP    Mason, Jan K
MRN: 3925160, DOB:    ; Sex: F
Visit date: 3/3/2020

## 03/03/2020 - Office Visit in UCHealth Aspen Creek Medical Center (continued)

Clinical Notes (continued)

---

Fyzical Therapy and Balance Centers - Falcon
7522 McLaughlin Rd
Falcon, CO 80831-4710
Phone: (719)495-3123
Fax: (719)495-8885

**Daily Note /
Billing Sheet**

**FYZICAL**
Therapy & Balance Centers

Patient Name: Mason, Jan K.
Date of Birth:
Referring Physician(s): HUANG, MICHAEL J. MD
Surgery: (Date/type) 12/03/2019 R hip scope with labral revision
Visit No.: 13
Insurance Name: KAISER PERMANENTE

Date of Daily Note: 01/27/2020
Injury/Onset/Change of Status Date: 12/03/2019
Diagnosis: ICD10: M25.151: Fistula, right hip
Date of Original Eval: 12/13/2019

Treatment Diagnosis: ICD10: M25.151: Fistula, right hip

### SUBJECTIVE

Treatment Side: Right
Current Complaints / Gains: Pt states she was able to walk up stairs and see her son's room for the first time in a while. She reports still having very strong pain in the hip and low back however.

2-3/10 pain in hip, 7-8/10 pain level in her back.
Pt: Pain from s/p R hip scope with labral revision (12/3). Precautions: Pt is currently partial weight bearing at 30%. Hip immobilizer set to 30 deg hip flexion.
Before the injury/onset/change of status date, the patient was able to perform the following activities:
  Mobility: Walking & Moving Around:
Current Functional Limitations:
  Mobility: Walking & Moving Around:
Home Health Care: No
Medical History: High Blood Pressure. please see e-doc
Complicating/Personal Factors: Mechanism of Injury? Illness, Multiple Treatment Areas, Patient age
Mental Status/Cognitive Function Appears Impaired? No
  Written provide documentation was obtained confirming that current medications with dosages were verified with the patient or authorized representative.

### OBJECTIVE

Precautions    **partial weightbearing at 30% and hip immobilizer at 30 deg hip flexion for 4 weeks.
No hip flexion past 90 deg and no excessive hip ER.

| CPT Code | Direct Timed Codes | Units |
|---|---|---|
| 97110 | Therapeutic Exercise | 2 |

To improve hip ROM and mm activation:
-Sidestepping // Bars
-Mini Squat x10 // Bars
-Standing Hip 3 Way (hold)
-Seat Tandem Change 0/30" ea
-Sit to Stands x20

26 mins

HELD:
-AAROM hip abd
-AAROM heel slides
-Supine hip IR/ER
-SAQ
-AAROM Strap Abd to 30
-Adduction Ball Squeeze x20
-SLR x20
-Tandem WB Rocking x20 ea h Bars
-Bilateral Ankle pumps
-Bilateral Quad sets
-Bilateral Glute sets

97140    Manual Therapy    1
To improve hip mobility:
-Passive hip ROM (avoided extension and excessive ER, flexion, and abd motion)
-Incision Site STM
-Glute/ITB STM

15 mins

*CPT copyright 2019 American Medical Association. All rights reserved.*

Powered by **WebPT**

---

**Lincoln/Mason 0653**